LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 329-2140
Facsimile:  (510) 580-9410

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

|  |  |
|---|---|
| KENYON NORBERT, TROY MCALLISTER, MARSHALL HARRIS, ARMANDO CARLOS, MONTRAIL BRACKENS, MICHAEL BROWN, and JOSE POOT, on behalf of themselves individually and others similarly situated, as a class and Subclass,<br><br>Plaintiffs,<br><br>vs.<br><br>SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSY; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, CAPTAIN MCCONNELL and John & Jane DOEs, Nos. 1 - 50.<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES CLASS ACTION**<br><br>**(1) Cruel and Unusual Denial of Outdoor Recreation:** Violations of 8th and 14th amendments of U.S. Constitution and Article I, Sections 7 and 17 of the California Constitution, 15 CCR 1065.<br><br>**(2)  Cruel and Unusual Imposition of Confinement and Denial of Out of Cell Time**<br><br> Violations of 8th and 14th amendments of U.S. Constitution and Article I, Sections 7 and 17 of the California Constitution and 15 CCR 1065.<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

This case arises from the systematic subjection of prisoners in San Francisco's County Jail 4 and County Jail 5 to unconstitutional conditions, policies and procedures by Defendants.  Named Plaintiffs are pretrial detainees, who have been confined in a San Francisco County Jail 4 and 5 up to six and a half years, and during this period of time, were completely denied all access to sunshine, and completely denied any outdoor recreation.  All prisoners in County Jail 4, and some prisoners in County Jail 5, are confined for excessive amounts of time to their cells; these prisoners are permitted out of their cells for only 3 hours a week, total, resulting in being locked up for 165 hours a week, or 98.2% of the time.  Defendants have been, and continue to be, deliberately indifferent to these unconstitutional, cruel and inhumane conditions in their jails.  Their indifference results in an unreasonable risk of serious harm to these prisoners' physical, emotional and mental health.

Plaintiffs, who have been subjected to and harmed by Defendants' constitutionally inadequate and jail-wide policies and procedures, seek to represent the class which includes all prisoners housed at County Jail 4 and County Jail 5, all of whom are completely denied access to the outdoors and sunshine, and the subclass of prisoners in County Jail 4 and 5 who are locked up 98.2% of the time.  Plaintiffs seek a declaration that Defendants' ongoing policies and practices violate their constitutional and statutory rights, and further, seek injunctive relief compelling Defendants to (1) cease the harmful, excessive and unconstitutional use of confinement and isolation; (2) implement procedures to permit more out of cell time for all prisoners, (3) to provide all prisoners with regular outdoor recreation, access to sunshine and sunlight, and for the sub-class to have daily minimum out of cell time; (4) provide all prisoners who require,, appropriate medical treatment for the injuries received.

## JURISDICTION

1.      This action is brought pursuant to the Eighth and Fourteenth Amendments to the United State Constitution, by way of the Civil Rights Acts, 42 U.S.C. §§1981, 1983 et seq., and § 1988.

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (claims arising under the United States Constitution) and §1343 (claims brought to address deprivations, under color of state authority, of rights privileges, and immunities secured by the United States Constitution), and, by pendent jurisdiction, Secs. 52.1, and 50, of the California Civil Code and the aforementioned statutory and constitutional provisions.

3.      Plaintiffs further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

4.      Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 1343, 2201, and 2202, 29 U.S.C. § 794a, 42 U.S.C. §§ 1983 and 12117(a), California Government Code § 11135, and Article I, Sections 7 and 17 of the California Constitution.

5.      Plaintiffs and members of the class filed numerous grievances and exhausted the administrative remedies with the San Francisco Sheriff's Office.  The San Francisco Sheriff's Office accepted some grievances and denied the grievances they permitted to be filed, or refused to accept grievances.  Defendants have taken no action to correct these problems.

6.      Plaintiffs individually and as a group filed a government claim with the CITY AND COUNTY OF SAN FRANCISCO regarding their claims and the claims.  The group claim was filed on March 6, 2019 and rejected on March 19, 2018.

## VENUE AND INTRADISTRICT ASSIGNMENT

7.      The claims alleged herein arose in the County of San Francisco, State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

## JURY DEMAND

8.      Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

**PLAINTIFFS**

9.      Plaintiffs are all current prisoners incarcerated at San Francisco County Jail 4 and County Jail 5.  All plaintiffs are pre-trial detainees.  All Plaintiffs seek to represent a class of prisoners imprisoned at the San Francisco County Jail 4 and San Francisco County Jail 5 at any time since May 20, 2017.

10.      Plaintiffs KENYON NORBERT, MONTRAIL BRACKENS, and JOSE POOT are all incarcerated prisoners in San Francisco County Jail 4.  TROY MCALLISTER, MARSHAL HARRIS, ARMANDO CARLOS, MICHAEL BROWN are all incarcerated prisoners in San Francisco County Jail 5.  KENYON NORBERT, MONTRAIL BRACKENS, JOSE POOT, TROY MCALLISTER, MARSHAL HARRIS, and MICHAEL BROWN are all pretrial detainees. Armando Carlos is a pre-sentence detainee for 7 years incarcerated in San Francisco County Jail 5.

**DEFENDANTS**

**San Francisco County Defendants**

11.      Defendant SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT ("SFCSD") and defendant CITY AND COUNTY OF SAN FRANCISCO are each a "public entity" within the definition of Cal. Govt. Code § 811.2.

12.      Defendant VICKI HENNESSY is, and at all times relevant to this Complaint was, the Sheriff of San Francisco County.  An employee of the San Francisco Sheriff's Department since 1975, Defendant HENNESSY started as a Sheriff's Deputy at the old San Bruno jail, and on information and belief, plaintiffs allege that Defendant HENNESSY was aware of and familiar with the outside recreation provided by the Sheriff's Department up to 2006, and the needs and constitutional rights of prisoners, particularly, pretrial detainees to outside recreation and direct access to sunlight.   Defendant HENNESSY at times relevant to this Complaint held command and policy making positions with regard to San Francisco County Jails, including San Francisco County Jail 4 and County Jail 5,  and has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at County Jail 4 and County Jail 5, as described fully below.

4

**COMPLAINT**

*Norbert, et al. v. San Francisco County Sheriff's Department et al.,*  United States District Court, Northern District of California, Case No._____

1    There is a direct causal link between the affirmative acts and omissions of Defendant Sheriff

2    HENNESSY, as the chief supervisory member of the San Francisco Sheriff's Department and the

3    injuries and violations of rights set forth fully below.  Defendant Sheriff HENNESSY has, wholly

4    or in part, directly and proximately caused and will continue in the future, in the absence of the

5    injunctive relief which Plaintiffs seek in this Complaint, to proximately cause the injuries and

6    violations of rights set forth fully below.  HENNESSY, as the chief supervisory and decision-

7    making member of the San Francisco Sheriff's Department is sued in her individual capacity.

8         13.    Defendant Sheriff PAUL MIYAMOTO was and is at all times relevant to this

9    Complaint, the Chief Deputy Sheriff and been the individual ion charge of the Custody Division.

10   The Custody Division is charged with the operation of the San Francisco County Jails.  As Chief

11   Deputy Sheriff in charge of  the Custody Division, Defendant MIYAMOTO has at all times

12   relevant to this Complaint held a command and policy making position with regard to San

13   Francisco County Jails.  Defendant Chief Deputy PAUL MIYAMOTO has caused, created,

14   authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional,

15   and inhumane conditions, actions, policies, customs and practices that prevail at San Francisco

16   County Jails 4 described fully below.  There is a direct causal link between the affirmative acts and

17   omissions of Defendant MIYAMOTO, as the chief supervisory member of the San Francisco

18   Sheriff's Department's Custody Division, and the injuries and violations of rights set forth fully

19   below.  Defendant Chief Deputy PAUL MIYAMOTO has, wholly or in part, directly and

20   proximately caused and will continue in the future, in the absence of the injunctive relief which

21   Plaintiffs seek in this Complaint, to proximately cause the injuries and violations of rights set forth

22   fully below.  Defendant Chief Deputy PAUL MIYAMOTO is sued in his individual capacity.

23        14.    Defendant JASON JACKSON is, and at all times relevant to this Complaint was, the

24   Captain in charge of San Francisco County Jail 4.  At all times relevant to this Complaint,

25   Defendant JACKSON was an employee of the Sheriff who held supervisory, command and/or

26   policy-making positions, and who participated in the supervision and execution of the conduct

27   practiced in County Jail 4, complained of herein.  There is a direct causal link between the

28   affirmative acts and omissions of Defendant Jackson, as the chief supervisory member of County

Jail 4, and the injuries and violations of rights set forth fully below.    Defendant JASON

JACKSON is sued in his individual capacity.

15.    Defendant Captain K. MCCONNELL is and at all times relevant to this Complaint,

was the Captain in charge of San Francisco County Jail 5.  At all times relevant to this Complaint,

Defendant MCCONNELL was an employee of the Sheriff who held the supervisory, command

and/or policy-making positions for County Jail 5, and who participated in the supervision and

execution of the conduct complained of herein at County Jail 5.  There is a direct causal link

between the affirmative acts and omissions of Defendant Jackson, as the chief supervisory member

of County Jail 5, and the injuries and violations of rights set forth fully below.  Defendant

MCCONNELL is sued in his individual capacity.

16.    Each and every Defendant named herein was at all times relevant to this Complaint

an officer or employee of the San Francisco County Sheriff's Office, acting under the color of law

within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of ASCO and within

the scope of their employment with ASCO.

17.    Each and every individual Defendant was a command officer who had within his or

her own powers, to choose action or inaction, and had the power and authority for the training,

supervision and control of his or her subordinates in the manner in which Plaintiffs and members of

the Plaintiff class were held in custody.  Every individual Defendant's actions or inactions was a

primary or significant causal factor in the constitutional deprivations alleged herein, and the injuries

and harms complained of.  Each individual Defendant had the power to effectuate the necessary

change to prevent the constitutional deprivations and injuries and harms complained of, but failed

and refused to do so.  The actions or inactions of these individual, supervisory defendants set in

motion a series of acts by others, including his or her subordinates, which the individual supervisors

knew or reasonably should have known would cause others to inflict the constitutional injuries

complained of herein.  The actions or inactions each individual Defendant took were

demonstrations of reckless or callous indifference to the rights of Plaintiffs and members of the

Plaintiff class.

**COMPLAINT**
*Norbert, et al. v. San Francisco County Sheriff's Department et al.,*  United States District Court, Northern District of California, Case No._____

## CLASS ACTION ALLEGATIONS

18.     Pursuant to Rules 23(a), (b2) and (b)(3) of the Federal Rules of Civil Procedure, the named Plaintiffs seek to represent a Plaintiff class consisting of all inmates incarcerated at San Francisco County Jail 4 ("CJ4") and San Francisco County Jail 5 ("CJ5") from 2017 to the present. All inmates are denied access to sunlight.  No inmate was provided with access to outdoor recreation.

### Numerosity: Fed. R. Civ. P. 23(a)(1)

19.     The members of the class are so numerous as to render joinder impracticable.  CJ4 has a daily capacity of over 400 inmate and on information and belief plaintiffs assert that approximately over 10,000 individuals are held at various times throughout each year at SFCJ4. CJ5 has a daily capacity of 768 inmates and on information and belief plaintiffs assert that approximately over 20,000 individuals are held at various times throughout each year at CJ5.  In total, over 1,100 individuals are in a San Francisco County Jail on a daily basis, and on information and belief, plaintiffs assert that over 30,000 individuals on an annual basis are subjected to the wrongs complained of.

20.     In addition,  joinder is impracticable because, upon information and belief, many members of the class are not aware of the fact that their constitutional rights were violated and that they have the right to seek redress in court.  Many members of the class are without the means to retain an attorney to represent them in a civil rights lawsuit.  There is no appropriate avenue for the protection of the class members' constitutional rights other than a class action.

21.     The Prisoner Class members are identifiable using records maintained in the ordinary course of business by Defendants.

### Commonality: Fed. R. Civ. P. 23(a)(2)

22.     The class members share a number of questions of law and fact in common, including, but not limited to:

   a)      whether the members of the class are denied all access to sunshine;

   b)      whether the members of the class are denied any access to outdoor recreation;

7

**COMPLAINT**
*Norbert, et al. v. San Francisco County Sheriff's Department et al.,*  United States District Court, Northern District of California, Case No._____

c)      whether the members of the class are denied and prevented from having sufficient quantities of Vitamin D, which is an essential vitamin for human health;

d)      whether SFCSD implemented a policy, practice and custom of denying and preventing all inmates from access to sunshine; outdoor recreation and Vitamin D;

e)      whether the members of the sub-class are locked in their cells for excessive amounts of time, and denied access to phone calls, social interactions, and access to community space;

f)      whether the members of the class were prevented from engaging in the right to file grievances against unlawful practices at SFCJ4.

## Typicality: Fed. R. Civ. P. 23(a)(3)

23.     The Plaintiffs' claims are typical of those of the class.  Like the other members of the class, the Plaintiffs were victims of the Defendants' policy, practice, and/or custom of denying all prisoners access to outside recreation, denying all prisoners access to sunlight and sunshine, and forcing members of the subclass to be excessively confined in their cells.

24.     The legal theories under which the Plaintiffs seek relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the Plaintiffs are typical of the harms suffered by the class members.

## Adequacy: Fed. R. Civ. P. 23(a)(4)

25.     The Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interests with members of the class, and will fairly and adequately protect the interests of the class.  The Plaintiffs have all been subjected to conditions of confinement that violate the Eighth and Fourteenth Amendments of the U.S. Constitution.

26.     The Plaintiffs are represented by experienced civil rights and class action counsel. Plaintiffs' Counsel have the resources, expertise, and experience to prosecute this action.  Plaintiffs' Counsel know of no conflicts among members of the class or between the attorneys and members of the class.

Fed. R. Civ. P. 23(b)

27.     The Plaintiff class should be certified pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to class members, the interests of the Plaintiffs and potential class members are aligned, and a class action is superior to other available methods for fairly and efficiently adjudicating the case.

28.     All of the Jails' policies are centrally promulgated, disseminated, and enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the Prisoner Class.

29.     The claims of the named plaintiffs are typical of the claims of the class.  The claims of the class members arise from the actions that resulted in damages to the class representatives and are based on the same legal theories.

**PRISONER SUB-CLASS ACTION ALLEGATIONS**

**(Prisoners Excessively Confined to Their Cells and Unconstitutionally Denied Out of Cell Time and Exercise Opportunity)**

30.     All Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class of all prisoners in CJ4 and select housing pods in CJ5, currently 7 and 4 who are now, or will be in the future, incarcerated in the San Francisco County Jails ("Excessive Confinement Sub-Class").

Numerosity: Fed. R. Civ. P. 23(a)(1)

31.     The Excessive Confinement Sub-Class is sufficiently numerous that joinder of all members of the class is impracticable and unfeasible.   All prisoners at CJ4 (400 prisoners) and approximately 96 prisoners in Pod 7A and 4A are members of the Excessive Confinement Sub-Class, so that the current sub-class numbers almost 500 prisoners.  Within a year's time, plaintiffs assert that San Francisco County Jail processes and houses approximately 10,000 plus prisoners through CJ4 and the designated housing Pods 2A and 4A at CJ5.  These prisoners are subjected to the same deprivation of sunlight, outdoor recreation, and outdoor air as all prisoners.  In addition, this sub-class is subjected to excessive confinement wherein they are allowed out of their cells for only three to three and a half hours per week.   These prisoners are required to live, eat, sleep and defecate entirely within their cells.   Due to these policies and procedures, the prisoners in the Excessive Confinement Sub-class are currently harmed or are at substantial risk of being injured by these Jail practices.

9

32.     The Excessive Confinement Sub-class members are identifiable using records maintained in the ordinary course of business by Defendants.

Commonality: Fed. R. Civ. P. 23(a)(2)

33.     There are multiple questions of law and fact common to the Excessive Confinement Sub-class, including, but not limited to:

a)     Whether the jail's requirement that prisoners be confined in cells where they are required to live, eat, sleep and defecate violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

b)     Whether Defendants' scheduling to provide for only three hours out of cell per week violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

c)     Whether Defendants' policies and practices of forcing prisoners at CJ5 to choose between exercise and access to the telephone so that prisoners at CJ5 generally receive only one and a half hours of exercise violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution;

d)     Whether Defendants' policies and practices of providing the prisoners at CJ4 with only one opportunity each week for exercise because access to the gym is provided in one three-hour block, violates the Due the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the of the Eighth Amendment to the United States Constitution, and Article I, Sections 7 and 17 of the California Constitution and 15 CCR §1065;

e)     Whether Defendants have been deliberately indifferent to the Excessive Confinement Sub-class, members' risk of injury and harm from the excessive confinement and the limitations and manner of providing access to the limited exercise, insufficient as it is;

34.     Defendants are expected to raise common defenses to these claims, including denying that their actions violate the law.

Typicality: Fed. R. Civ. P. 23(a)(3)

35.     The claims of the named Plaintiffs are typical of the claims of the members of the Excessive Confinement Sub-class, as their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law as the Prisoner Class claims.

Adequacy: Fed. R. Civ. P. 23(a)(4)

36.     Plaintiffs will fairly and adequately represent and protect the interests of the Excessive Confinement Sub-class, and diligently service as Class Representatives. Plaintiffs' interests are co-extensive with those of the Excessive Confinement Sub-class, and Plaintiffs have no conflict(s) of interest that would be antagonistic to those of the other class members. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and prisoner's rights litigation and who possess the resources necessary to fairly and adequately represent the Prisoner Class.

Fed. R. Civ. P. 23(b)

37.     This action is also maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants' policies, practices, actions, and omissions that form the basis of the claims of the Prisoner Class and Excessive Confinement  Sub-class, are common to and apply generally to all members of the Prisoner Class. All of the Jails' policies are centrally promulgated, disseminated, and enforced by Defendants. The injunctive and declaratory relief sought is appropriate and will apply as a whole to all members of the Excessive Confinement Sub-class.

38.     The claims of the named plaintiffs are typical of the claims of the Excessive Confinement  Sub-class.  The claims of the Excessive Confinement Sub-class arise from the actions that resulted in damages to the class representatives and are based on the same legal theories.

**STATEMENT OF FACTS**

39.     San Francisco County operates two main detention jails, County Jail 4 and County Jail 5.  County Jail 4 is on the 7th floor of the Hall of Justice, which is located at 850 Bryant Street. The Hall of Justice and County Jail 4 were constructed in 1962.  The Hall of Justice is still in operation along with County Jail 4.  County Jail 4 has a capacity for 402 inmates and holds both pretrial and sentenced prisoners.  County Jail 5 is located on watershed land on the outskirts of San Mateo County.  Built in 2006, County Jail 5 replaced the former San Bruno Jail, and has a capacity of 768 inmates.  Both County Jail 4 and County Jail 5 incarcerate only men.

40.     The old San Bruno Jail had an ample outdoor field with a footprint that was approximately the same size as the building itself.  Not only was there an outside yard, but the defendants encouraged prisoners to engage in outdoor activities and a sheriff's deputy, Catherine Sneed, started the San Francisco County Jail Garden Project, which operated from 1982 through 1992 wherein prisoners cultivated plants for use on public works projects; each year, hundreds of young children visit the farm to experience farm-based educational programming.   The San Francisco Sheriff's Department understood that engaging in productive outdoor activities was one means of reducing recidivism amongst prisoners.

41.     However, during the construction of County Jail 5, completed in 2006, the County made the inexplicable, deliberate decision to design the new facility in such a manner for the purpose of preventing and denying all prisoner access to the outdoors, denying all prisoner access to sunshine, and even to indirect daylight.   This was 17 years after the 9th Circuit held "(t)hat the denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment," see *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979).  The old San Bruno jail building remains standing.  The old, spacious outdoor yard is still there.  Access to this yard could be provided to current prisoners in County Jail 5.

42.     Prisoners in County Jail 5 are now bathed, 24/7, wholly in artificial fluorescent lighting.  There are sixteen housing pods with 24 cells each.  Cells hold two prisoners, so each housing pod has the capacity of 48 prisoners.  Each Pod is a semi-circle.  The cells are on two tiers, facing toward an open center.  Along the opposite wall is the sheriff deputy's station, and between the deputy's station and the cells is the common area, usually containing tables, benches and chairs.  In each housing pod, there is one room which is named a gym.  Approximately the size of the paint area of a basketball court, prisoners have access to the gym during what is called "pod" time.  The gym has a basketball hoop and limited exercise equipment.

43.     Inside the gym, there is a glass slit on the wall, very close to the ceilings.  The slit permits outside air to enter, and while it lets in some light, it never lets in sunlight.  The glass is so high that prisoners cannot see the outside through the window except for a small sliver of the sky from limited angles.  Depending on the housing pod, prisoners have varying amounts of out of cell

time and access to the gym.  In Housing Pod 7A (Intake), and 4A (Ad Seg) prisoners are locked in their cell for excessive amounts of time.  These prisoners are permitted out of their cells, a half hour total, per day.

44.     In 4A, each cell is unlocked one at a time, so the two prisoners in each cell have no opportunity to socialize or communicate with anyone other than themselves or jail guards.  Since there is no shower or phone in these cells, prisoners have to share the one phone in the POD to call lawyers and family.  And if their half hour out of cell time is in the early morning, then there is no real opportunity to make legal calls or calls to family.  The limitation of a half hour also leaves them with little time to use the gym room and exercise.  These cells do not have showers, so prisoners are provided access to showers, every other day, for approximately 10 minutes each. These prisoners are required to eat all of their meals inside their cells.  They live, sleep, eat and defecate in these same small cells.  These cells are solid in all directions so that even sound has limited penetration into their cell.

45     In 7A, the bottom tier is allowed out as a group for a half hour per day of Pod time. During this time, the 12 prisoners have to share access to phones and the gym.  Otherwise, they are completely locked inside their cells for the remaining 23.5 hours of the day.

46.     Suffering confinement for 23.5 hours a day is a form of extreme social and sensory isolation, and environmental deprivation.  The American Correctional Association calls confinement of at least 22 hours per day to be segregation or solitary confinement.[1]  The United Nations standards, also called the Mandela Rules, say:

> Every prisoner who is not employed in outdoor work shall have at least one hour of suitable exercise in the open air **daily** if the weather permits. (emphasis added)[2]

47.     The U.S. State Department created a handbook to provide embassy officials around the world with a basic understanding of international standards for correctional systems. That handbook states:

[1] American Correctional Association (ACA) Restricted Housing Standard 2016 ACA p. 3
[2] Mandela Rules, Rule 43 at 12/33.

The prisoners should have access to recreation for **no less than one hour per day**. (Emphasis added)[3].

48.    County Jail 4's layout is in corridors with cells lining the corridors.  Cell sizes can be for a single prisoner, two prisoners, six prisoners or 12 prisoners.  No prisoner in County Jail 4 has access to the outdoors or sunshine.  Only prisoners in one row of Cells, A block, even have access to natural light and outside air because there are some windows across the hall from A block.   All the other cells in County Jail 4 have no access to natural light or fresh air.  None of the prisoners in County Jail 4 ever have access to outdoor recreation or direct sunlight.

49.    In the CJ4 12-person cells, the cells contain a shower and toilet.  For these prisoners, they are permitted out of their cells at most, three hours a week to access the gym.  Access is all in one three-hour chunk, and sometimes the times for access are early morning or other hours which are not conducive to exercise.  The other smaller cells in CJ4 do not have a shower, so the prisoners in cells smaller than the 12-person cell, in addition to one three hour block for access to the gym, are provided access to a shower, twice a week for ten minutes each.  The remainder of the time, all prisoners in CJ4 are completely locked up in their cells, forced to live, eat, sleep, urinate and defecate in place and remain caged.

50.    All San Francisco County Jail cells are small, and primarily occupied by metal beds and a toilet.   There is no room for active movement, or large muscle group movement.  There is no room for walking.  Prisoners cannot walk for more than one or two seconds before being obstructed by hard objects, the walls, the bed, the toilet,  or in CJ4, other prisoners.

51.    In 2018, 85% of all inmates in San Francisco County Jails were pre-trial and non-sentenced.[4]

**EFFECTS ON INMATES OF EXCESSIVE CONFINEMENT**

52.    Prisoners at SFCJ4 suffer from a number of illnesses as a result of the excessive confinement,  lack of access to meaningful exercise, and complete denial of outdoor exercise and sunshine.  These health issues include cardiovascular disease, hypertension, negative impacts on

---

[3] *A Practical Guide to Understanding and Evaluating Prison Systems*, United States Department of State, page 23.

[4] Board of State and Community Corrections, Jail Population Trends for 2018. http://www.bscc.ca.gov/m_dataresearch/

blood sugar including adult onset diabetes and lowered insulin sensitivity, headaches, migraines, anxiety and depression, weight increase and obesity.   Lack of exercise also predisposes the prisoners to non-cardiovascular chronic diseases including colon cancer.  As individuals who have low levels of physical activity and fitness, these prisoners are subject to a higher death rate.

53.     On information and belief, plaintiffs allege that all prisoners in CJ4 and CJ5 are deficient in Vitamin D, and suffer from a variety of health issues resulting from Vitamin D deficiency, including soft bones, muscle weakness, bone pain, cardiovascular disease and cognitive impairment (inability to think clearly and analyze logically).  Whereas all the prisoners are allegedly accused by the State of making bad choices, defendants are purposely creating an environment where plaintiffs and members of the class are deprived of the fundamental building blocks, such as Vitamin D, necessary for clear thinking and rational, logical decision making, and creating an environment to set plaintiffs and members of the class, to repeatedly fail.

54.     **KENYON NORBERT** is currently a prisoner in County Jail 4.  Previously he was incarcerated in County Jail 5.  He has been in custody, as a pretrial detainee since July 8, 2014.  Since his arrest, he has spent 1,788 days without ever feeling the sun on his skin or being outdoors.  In addition, during his incarceration, for the majority of time which was in County jail 5, he only received 30 minutes per day of out of cell time, and now that he is in County Jail 4, he is in a two-person cell, so he receives 3 hours per week of access to the gym, and two showers a week.

55.     **KENYON NORBERT** has a criminal case in which he is in pro per, and handling the legal representation.  Therefore, it is essential that he have access to the phone.  Because there was only one phone available while he was held in County Jail 5, he and his cell mate split the phone access time, and he was able to use the phone only for 15 minutes and have access to the gym for 15 minutes a day.  Therefore, in reality, he never received 3 hours a week of exercise opportunity, and had at most 1 hour and 30 minutes a week due to the competing need to access the telephone.  In the 255 weeks he has been incarcerated, he has received on approximately only 3.5 hours out of cell time per week.  From his prolonged isolation, he has and continues to suffer significant harm.

56.   **KENYON NORBERT** has gained almost 100 pounds,  has a hard time sleeping, experiences chronic insomnia, experiences depression, anxiety and agitation and believes himself to be deficient in Vitamin D.  He considers himself factually innocent of the crimes he is charged with and is actively working to prove his innocence at trial.  Therefore, being held in an environment that significantly contributes to reduced health, reduced mental health and reduced mental acuity seriously impedes his ability to prove his innocence.

57.   **TROY MCALLISTER** is currently a prisoner in County Jail 5.  He has been in custody since July 29, 2015.  He is a pretrial detainee.  During this period of time he has availed himself to every program and every course offered.  For the past year, he has been an exemplary inmate worker.

58.   **TROY MCALLISTER** is falling into despair, not having had the opportunity for outdoor recreation and to be in the sun for 3 years 10 months.  He is concerned that despite all his efforts, he will have no future.  As a black man, already subject to poor health outcomes, he is concerned about his health, particularly the long-term negative health effects due to his lack of access to sunlight and Vitamin D deficiency, and the prospect of early mortality.

59.   **MARSHALL HARRIS** is currently a prisoner in County Jail 5.  He has been in custody since August 16, 2017.  He is a pretrial detainee.  He is currently in Housing Unit 7A, and permitted only 30 minutes a day of out of cell time.  As a pretrial detainee who has not yet even had a preliminary hearing, he is concerned that the long-term denial of access to sunlight is detrimental to his ability to remember details, to be cognitively clear, and to communicate well, all abilities he needs to assist in his defense.

60.   **ARMANDO CARLOS** is currently a prisoner in County Jail 5.  He has been in custody since July 18, 2011.  He was previously incarcerated at CJ4, and transferred to CJ5 in July, 2016 after he developed an abcess due to exposure to sewage at CJ4.  He was a pretrial detainee from his arrest through September 2018.  He was convicted of one count of robbery in September 2018, and remains pre-sentenced.  Armando is Filipino, and prior to his incarceration was a person with brown skin.   During his almost 8 years in custody, he has never had the sunshine on him.  He has never been exposed to sunlight.  Armando's skin is now colorless, almost translucent.  Looking

at his arm, you can see through his skin and see all of his blue veins.   Armando is afraid of what will happen, if he ever gets into the sun since it has been so long since his skin has experienced any sunlight.  Since 2012, he has been experiencing migraine headaches for which he is give Excedrin or some other over the counter pain medication.  He has also suffered nerve damage, for which the Jail has not diagnosed.  His right arm has lost sensation and mobility.  In addition, he is now being held in an isolation cell which has contributed to the harm he has suffered and continues to suffer.  He feels passive, has lost interest in life, he has no energy and is fatigued all the time.  He has experienced loss of social skills, anxiety, agitation and depression.

61.    **ARMANDO CARLOS** has been incarcerated in Housing Unit 2 since September 2018; during this time, he has been locked in his cell with his cell mate for 23.5 hours a day, and allowed out only a half hour each day.  With only a half hour a day out of cell, he receives less than 3 hours per week of exercise opportunity.  When he is let out of his cell, he has to choose between calling family and friends and trying to maintain social connections, which is increasingly difficult He is not motivated to move, and with the confinement in isolation, and the ensuing sensory deprivation, he has lost interest and motivation to exercise.

62.    **MONTRAIL BRACKENS** is a pretrial detainee in CJ4.  He has been incarcerated since December 11, 2012.  He is pretrial.  He has spent 2,371 days without exposure to sunshine.  As an inmate in CJ4, of the 56,904  hours he has spent in his cell, he has been allowed out only 1016 hours for exercise, a mere 1.7% and none of that small amount of time was for outdoor recreation.

63.    **MICHAEL BROWN** is a pretrial detainee currently incarcerated in CJ5.  He has been incarcerated for almost one year.  He was incarcerated in CJ4 for three and a half months, before being transferred to CJ5.  While incarcerated in CJ4, he was allowed out of his cell once a week for 3 hours to exercise.  Now at CJ5, he is permitted out of his cell only for half hour a day.  He has had no access to outdoor recreation, not a minute of sunlight, and has been required to eat, live, and defecate in his cell.   The social, sensory and environmental deprivation of being locked in a solid cell for 23.5 hours a day, the difficulty of accessing the telephone, and the competing

limitation of access to exercise has exacerbated his asthma, caused him to experience significant

body pain, including back pain in his kidney region, depression, anxiety and agitation.

64.     **JOSE POOT** is a pretrial detainee in CJ4.  He has been incarcerated since June 14,

2016.  He has spent 1,062 days without exposure to sunshine.  As an inmate in CJ4, he has spent

25,488 hours in his cell, where he is required to eat, sleep, defecate and live.  In total, he has been

allowed out for only 453 hours for exercise, a mere 1.7% of time spent incarcerated, and none of

that small amount of time was for outdoor recreation.  In the time that he has been incarcerated,

because he has been completely denied sunlight and sunshine, he has lost all color in his skin,

which is now completely white.  In addition, because he is primarily Spanish speaking, being

locked up in a cell for 24 hours a day has seriously contributed to his isolation and the injuries he is

suffering due to his long-term denial of social interaction, including regular and frequent headaches.

## CITY AND COUNTY OF SAN FRANCISCO'S RESPONSES

65.     In 2015, defendant City and County of San Francisco refused a grant to help pay for

a new facility to replace CJ4.  Instead, defendant City and County of San Francisco formed a work

group tasked with ultimately closing CJ4, due in large part to its dilapidation and lack of required

facilities for the health and well-being of prisoners.  Instead of closing CJ4, for the past three and a

half years, defendants have operated CJ4, kept the prisoner population full, and continually

subjected prisoners in CJ4 to inhumane and unconstitutional conditions.  The Eighth Amendment

requires that prisoners be treated as human beings.  The American Society for the Protection of

Animals (ASPCA) promulgated standards that dogs kept in animal shelters be provided with the

opportunity for exercise outside of their cells, daily[5].  Defendants do far less for human beings

under their control and custody.

66.     Defendant Hennessy is quoted in a San Francisco Chronicle article on October 26,

2018 as stating, "County Jail No. 4 is an embarrassment – it's an embarrassment to the city."  Yet,

during her tenure as Sheriff, she has taken no steps to improve or ameliorate the conditions at

County Jail 4.

67.     Upon receiving these grievances, defendants' responses included:

---

[5] https://www.aspcapro.org/resource/shelter-checklists-based-asv-guidelines

- "County Jail#5 nor the jails in the SF Sheriff's system are designed for outdoor recreation."

- "Your basketball area complies with Title 15 which states that inmates shall have available a recreational area separate to the housing area that allows them to exercise the large muscle groups at least three hours in a seven-day period."

- "When County Jail Five was built, the SFSD applied for and was granted a waiver by the State Board of Community Corrections.  This waiver was granted based on the alternate design that allows for the flow of fresh air directly into the gym area."

- "When County Jail Four was constructed there was no requirement for gym or outdoor recreation.  In the mid-1980's a gym was added to the seventh floor for the required recreation per Title 15 and was approved by the State."

**FIRST CLAIM FOR RELIEF**

**EIGHTH AMENDMENT - DEPRIVATION OF FEDERAL CIVIL RIGHTS**

**UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS**

68.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs 1-67 with the same force and effect as if fully set forth herein.

69.     At all relevant times herein, SFCSD has been responsible for operating the San Francisco County Jail 4 and County Jail 5.

70.     At all relevant times herein, Defendants SFCSD, HENNESSY,  MIYAMOTO, JACKSON, and MCCONNELL have established and/or followed policies, procedures, customs, and/or practices that subject Plaintiffs and all class members to the harmful and inhumane effects of confinement and total denial of access to sunlight and sunshine; denial even to natural daylight; and isolation from the outdoors.  Defendants subject Plaintiffs and the Prisoner Class to a substantial risk of serious harm and injury by depriving Plaintiff and the Prisoner Class to an essential vitamin, Vitamin D.  Defendants further subject the Prisoner sub-class to the harm caused by excessive confinement, inadequate physical exercise, social isolation and environmental deprivation through forcing members of the sub-class to suffer confinement of up to 23.5 hours a day in small, inadequate cells, including eating, sleeping and defecating in these cells.   These policies and practices have been, and continue to be, implemented by Defendants HENNESSY,  MIYAMOTO;

1   JACKSON, MCCONNELL and their agents, officials, employees and all persons acting in concert

2   with them under color of state law, and are the proximate cause of Plaintiffs' and the Prisoner

3   Class' ongoing deprivation of rights secured by the United States Constitution under the Eighth

4   Amendment.

5       71.   Defendants have been and are aware of all of the deprivations complained of herein,

6   and have condoned or been deliberately indifferent to such conduct.

7                           **SECOND CLAIM FOR RELIEF**

8       **FOURTEENTH AMENDMENT - DEPRIVATION OF FEDERAL CIVIL RIGHTS**

9               **UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS**

10      72.   Plaintiffs repeat and re-allege each and every allegation contained in the above

11  paragraphs 1-67 with the same force and effect as if fully set forth herein.

12      73.   At all relevant times herein, SFCSD has been responsible for operating the San

13  Francisco County Jail 4 and County Jail 5.

14      74.   At all relevant times herein, Defendant SFCSD, HENNESSY,  MIYAMOTO,

15  JACKSON, and MCCONNELL have established and/or followed policies, procedures, customs,

16  and or practices that subject Plaintiffs and all class members to excessive confinement and the

17  harmful and inhumane effects of total denial of access to sunlight and sunshine; denial even to

18  natural daylight; and isolation from the outdoors.  Defendants subject Plaintiff and the Prisoner

19  Class to a substantial risk of serious harm and injury by depriving Plaintiff and the Prisoner Class to

20  an essential vitamin, Vitamin D. Defendants further subject the Prisoner sub-class to the harm

21  caused by excessive confinement, inadequate physical exercise, social isolation and environmental

22  deprivation through forcing members of the sub-class to suffer confinement of up to 23.5 hours a

23  day in small, inadequate cells, including eating, sleeping and defecating in these cells. These

24  policies and practices have been, and continue to be, implemented by Defendants HENNESSY,

25  MIYAMOTO; JACKSON, MCCONNELL and their agents, officials, employees and all persons

26  acting in concert with them under color of state law, and are the proximate cause of Plaintiffs' and

27  the Prisoner Class' ongoing deprivation of rights secured by the United States Constitution under

28  the Fourteenth Amendment.

75.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and the Prisoner Class they represent request relief as outlined below.

### THIRD CAUSE OF ACTION

### (Article I, Section 7 of the California Constitution)

### (ALL PLAINTIFFS and the Prisoner Class Against ALL DEFENDANTS)

76.     Plaintiffs re-allege and incorporate by reference herein all allegations previously made above in paragraphs 1-67.

77.     Incarceration without any access to sunlight, sunshine, outdoor exercise, and in other situations total lacking of outdoor air, coupled with isolation and confinement in excess of 23 hours a day, imposes an atypical, substantial, and different hardship on the prisoner in relation to the ordinary incidents of incarcerated life, so as to create a liberty interest protected by due process.

78.     By their policies and practices described above, Defendants subject Plaintiffs and the Prisoner Class they represent, to a substantial risk of harm due to the denial of due process in relationship to housing decisions and incarceration conditions, including placement in cells for excessive amounts of time and complete lack of access to natural air and light, and adequate exercise. These policies and practices have been, and continue to be, implemented by Defendants HENNESSY,  MIYAMOTO; JACKSON, MCCONNELL and their agents, officials, employees and all persons acting in concert with them under color of state law, and are the proximate cause of Plaintiffs' and the Prisoner Class' ongoing deprivation of rights secured by California Constitution, Article I, Section 7.

79.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and the Prisoner Class they represent request relief as outlined below.

### FOURTH CAUSE OF ACTION

### (Article I, Section 17 of the California Constitution)

### (ALL PLAINTIFFS and the Prisoner Class Against ALL DEFENDANTS)

80.     Plaintiffs re-allege and incorporate by reference herein all allegations previously made above in paragraphs 1-67.

81.     By their policies and practices described above, Defendants subject Plaintiffs and the Prisoner Class they represent, to a serious harm and injury from the harmful and inhumane effects of total denial of access to sunlight and sunshine; denial even to natural daylight; and isolation from the outdoors.  Defendants subject Plaintiff and the Prisoner Class to a substantial risk of serious harm and injury by depriving Plaintiff and the Prisoner Class to an essential vitamin, Vitamin D.  Defendants further subject the Prisoner sub-class to the harm caused by excessive confinement, inadequate physical exercise, social isolation and environmental deprivation through forcing members of the sub-class to suffer confinement of up to 23.5 hours a day in small, inadequate cells, including eating, sleeping and defecating in these cells.   These policies and practices have been, and continue to be, implemented by Defendants and their agents or employees in their official capacities, and are the proximate cause of Plaintiffs' and the Prisoner Class's ongoing deprivation of rights secured by the California Constitution, Article I, Section 17.

82.     Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

WHEREFORE, Plaintiffs and the Prisoner Classes they represent request relief as outlined below.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE

83.     PLAINTIFFS and all class and sub-class members they represent repeat and re-allege herein all allegations previously made above in paragraphs 1-67.

84.     The Fifth Cause of Action is asserted by Plaintiffs and the class and sub-class members against all Defendants.

85.     Each Defendant had a legal duty to maintain custody and control of Plaintiffs and the class members they represent, so as to not violate their constitutional rights, including the right to not be subjected to cruel and unusual punishment, or to have their rights violated so as to raise a due process claim including the right to time out of cell, outdoor recreation, exercise, sunlight and sunshine; and not be subjected to social and environmental deprivations.

86.     At all relevant times herein, each Defendant failed to exercise the ordinary care or skill in the management of CJ4 and CJ5 by failing or refusing to provide Plaintiffs and the class members they represent with access to the outdoors and sunshine, and forcing members of the sub-class to suffer social and environmental deprivation through confinement of up to 23.5 hours a day in small, inadequate cells, including eating, sleeping and defecating in these cells.

87.     At all relevant times herein, named Plaintiffs and class members herein have been injured by the regular and daily social and environmental and physical deprivations that was and continues to be caused by defendants and each of their failure to exercise the ordinary care or skill in the management of the properties and facilities commonly known as CJ4 and CJ5.

88.     At all relevant times herein, named Plaintiffs' and class members' injuries were proximately caused by Defendants and each of their failures to exercise ordinary care or skill in the management of the properties and facilities commonly known as CJ4 and CJ5; these injuries include, but are not limited to, headaches, severe depletion of Vitamin D, increased body pain, headaches, loss of mental acuity, depression, anxiety, and depletion of melanin in their skin.

WHEREFORE, Plaintiffs and class members pray for relief as hereunder appears.

## SIXTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress

(Cal. Gov. Code § 820(a))

89.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs 1-67 with the same force and effect as if fully set forth herein.

90.     Defendants' conduct in adopting a policies, customs, and practices of incarcerating inmates where they are completely denied all access to outdoor recreation, to outdoor light , sunshine and sunlight, where some inmates are forced to live, eat and sleep in small, cramped cells up to 23.5 hours a day is extreme and outrageous conduct that intentionally or recklessly disregards the probability of causing emotional distress.

91.     Defendants and their policies, customs, and practices of incarcerating inmates where they are completely denied all access to outdoor recreation, to outdoor light , sunshine and sunlight, where some inmates are forced to live, eat and sleep in small, cramped cells up to 24 hours a day are the proximate cause of severe and extreme emotional trauma and distress suffered by Plaintiffs and class members.

92.     Defendants and their policies, customs, and practices of incarcerating inmates where they are completely denied all access to outdoor recreation, to outdoor light, sunshine and sunlight, where some inmates are forced to live, eat and sleep in small, cramped cells up to 24 hours a day exceed all bounds of conduct that is usually tolerated in a civilized community for treatment of persons who are pre-trial, not been convicted, and presumed innocent.

WHEREFORE, Plaintiffs and class members prays for relief as hereunder appears.

## REQUEST FOR RELIEF

Plaintiffs and the class and subclass they represent have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the constitutions and laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the constitutions and laws of the United States and the State of California.

WHEREFORE, PLAINTIFFS and all class members pray for judgment and the following relief against DEFENDANTS as follows:

1.     Injunctive relief directing DEFENDANTS, absent exigent circumstances to:

    a. Prohibit locking any inmate in a cell, in excess of 20 hours per day;

    b. Order defendants to provide every inmate with no less than one hour per day of outdoor recreation, daily;

    c. Provide every inmate who requests, a physical examination including test necessary to determine each inmate's level of Vitamin D and where needed, Vitamin D supplements;

    d. Provide every inmate who requests it, the necessary physical and mental health care;

2.     Award compensatory and punitive damages;

3.     Award declaratory relief according to proof;

1       4.    Award PLAINTIFFS costs and expenses of this action and reasonable attorney's fees

2   in accordance with 42 U.S.C. § 1988 and other appropriate authority;

3       5.    An order retaining jurisdiction of this case until Defendants have fully complied with

4   the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply

5   in the future absent continuing jurisdiction; and

6       6.    Such other and further relief as the case requires and the Court deems just and proper.

7

8   DATED: May 20, 2018          LAW OFFICE OF YOLANDA HUANG

9

10                                   __/s/ Yolanda Huang_____

11                                   Yolanda Huang
                                Counsel for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**
*Norbert, et al. v. San Francisco County Sheriff's Department et al.,*  United States District Court, Northern District of California, Case No._____