1  LAW OFFICES OF YOLANDA HUANG
   YOLANDA HUANG, SBN 104543
2  528 Grand Avenue
   Oakland, CA 94610
3  Telephone: (510) 329-2140
   Facsimile:  (510) 580-9410
4  Email: yhuang.law@gmail.com

5
   Attorney for Plaintiffs
6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO/OAKLAND DIVISION

11

12

13  KENYON NORBERT, TROY MCALLISTER,        Case No.: 3:19-cv-02724 SK
    MARSHALL HARRIS, ARMANDO CARLOS,
14  MONTRAIL BRACKENS, MICHAEL
    BROWN, and JOSE POOT, on behalf of       NOTICE OF MOTION AND MOTION FOR
15  themselves individually and others similarly   CLASS CERTIFICATION; MEMORANDUM
    situated, as a class and Subclass,        OF POINTS AND AUTHORITIES
16
                         Plaintiffs,          Judge:   Hon. Sallie Kim
17                                            Date:    January 11, 2020
                 vs.                          Time:    9:30 a.m.
18                                            Ctrm.:   C—15th Floor
19  SAN FRANCISCO COUNTY SHERIFF'S
    DEPARTMENT, CITY AND COUNTY OF           Trial Date: February 22, 2022
20  SAN FRANCISCO, SAN FRANCISCO
    SHERIFF VICKI HENNESSEY; CHIEF
21  DEPUTY SHERIFF PAUL MIYAMOTO;
    CAPTAIN JASON JACKSON, CAPTAIN
22  MCCONNELL and John & Jane DOEs, Nos. 1
    - 50.
23

24                       Defendants.

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 2

STATEMENT OF FACTS ................................................................................. 3

INTERIM LITIGATION ................................................................................... 7

LEGAL STANDARD FOR CLASS CERTIFICATION .................................. 8

POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION ............. 9

I.    THE PROPOSED CLASS AND SUBCLASS MEET ALL THE
      REQUIREMENTS OF RULE 23 ............................................................. 9

      a.    The Proposed Class and Subclass Meet All The Requirements of
            Rule 23(a) ..................................................................................... 9

            i.    The Class and Subclass are Sufficiently Numerous ......................... 9

      b.    Commonality Requirement of Rule 23(a)(2) Is Met Because There
            Are Questions of Law and Fact Common to the Class and Subclass
            Capable of Common Resolution ........................................................ 10

            i.    Commonality is Demonstrated by Common Questions of
            Law and Fact 12

            ii.   Challenges By Inmates to Conditions of Confinement
            Qualify for Class Treatment ............................................................. 13

      c.    The Claims of the Class Representatives are Typical of the Claims
            of the Class and Subclass ................................................................ 14

      d.    The Proposed Class Representatives and Class Counsel Will Fairly
            and Adequately Protect the Interests of the Class and Subclass ............ 15

      e.    The Class and Subclass Meet the Requirements of Rule 23(b)(2) ........... 16

      f.    Alternatively, Rule 23(b)(1)'s Requirements Are Met ........................... 18

II.   DEFENDANTS HAVE CONCEDED THE CLASS MEETS RULE 23
      REQUIREMENTS ..................................................................................... 18

III.  CONCLUSION .......................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013)............................................................................ 11

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001)......................................................... 11, 12, 13, 14

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975)............................................................................. 8

*Chavez v. Cty of Santa Clara*,
  No. l:15-cv-05277-RMI (N.D. Cal. September 20, 2016) ........................... 11

*Cole v. Cty of Santa Clara*,
  No. 5:16-cv-06594-LHK (N.D. Cal. Feb. 6, 2018)...................................... 11

*Crown, Cork, & Seal Co. v. Parker*,
  462 U.S. 345 (1983) ........................................................................................ 18

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011)..................................................................... 11, 14

*Gay v. Waiters and Dairy Lunchmen's Union*,
  549 F.2d 1330 (9th Cir. 1977)........................................................................ 10

*General Telephone Co. Of Southwest v. Falcon*,
  457 U.S. 147 (1982) ........................................................................................ 18

*Hanlon v. Chrysler Corp.*,
  150 F. 3d 1011 ......................................................................................... 14, 15

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ............................................................................ 9

*Harper v. Law Office of Harris & Zide LLP*,
  No. 15-CV-01114-HSG, 2016 WL 2344194 (N.D. Cal. May 4, 2016).................... 16

*Hawkins v. S2 Verify*,
  No. C 15-03502 WHA, 2016 WL 3999458 (N.D. Cal. July 26, 2016)...................... 9

*Hernandez v. Cty. of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) ............................................................. 2, 16

*Jewett v. California Forensic Medical Group, Inc.*,
　　No. 2:13-cv-0882 MCE ACP, 2017 WL 980446 (E.D. Cal. March 13, 2017).... 10, 11

*Jordan v. Cnty. of L.A.*,
　　669 F.2d 1311,1323 (9th Cir. 1982)................................................................ 16

*Kim v. Space Pencil, Inc.*,
　　No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012)........................ 16

*Krzesniak v. Cendant Corp.*,
　　No. C05-05156 MEJ, 2007 WL 1795703 (N.D. Cal. June 20, 2007)...................... 15

*In re Nassau County Strip Search Cases*,
　　461 F.3d 219 (2d Cir. 2006)........................................................................ 13

*Nat'lFed'n of the Blind of California v. Uber Techs., Inc.*,
　　No. 14-CV-04086 NC, 2016 WL 9000699 (N.D. Cal. July 13, 2016) ..................... 17

*Parsons v. Ryan*,
　　754 F.3d 657 (9th Cir. 2014)................................................................. 11, 17

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
　　No. 14-cv-05596- JST, 2015 WL 5569462 (N.D. Cal. Sept. 22, 2015).................... 16

*Rodriguez v. Hayes*,
　　591 F.3d 1105 (9th Cir. 2010)......................................................... 12, 13, 17

*Rosas v. Baca*,
　　No. CV 12-00428 DDP, 2012 WL 2061694 (C.D. Cal. June 7, 2012)..................... 10

*Spain v. Procunier*,
　　600 F.2d 189 (9th Cir. 1979)......................................................................... 3

*Thomas v. Baca*,
　　231 F.R.D. 397 ....................................................................................... 17

*Topete v. Cty of San Bernardino*,
　　No. 5:16- cv-00355-VAP-DTB (C.D. Cal. Jan. 27, 2017)........................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
　　564 U.S. 338 (2011) ..................................................................... 8, 11, 13

*Walters v. Reno*,
　　145 F.3d 1032 (9th Cir. 1998)........................................................... 15, 17

*Washington Mobilization Committee v. Cullinane*,
　　400 F.Supp. 186 (D.D.C.1975) .................................................................. 17

iii

*Wehner v. Syntex Corp.*,
    117 F.R.D. 641 (N.D.Cal. 1987) ................................................................................ 14

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................................. 14

TO ALL COUNSEL AND THE COURT:

NOTICE IS HEREBY GIVEN that on January 11, 2019 at 9:30 a.m.., in Courtroom C 15th Floor, or as soon thereafter as the matter may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Plaintiffs Kenyon Norbert, Troy McAllister, Marshall Harris, Armando Carlos, Montrail Brackens, Michael Brown, and Jose Poot ("Plaintiffs") will move the Court for entry of an Order:

1. Certifying that this action is maintainable as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) as to each of Plaintiffs' causes of action;

2. Certifying a class of "All adults who have been incarcerated since May 20, 2017, or who will be incarcerated in the future, in the San Francisco County Jail 4 and County Jail 5 ("Inmate Class");

3. Certifying a subclass of "All inmates in County Jail 5 who are detained in administrative segregation and in their cells more than 23 hours per day ("Excessive Confinement Subclass"); and

4. Certifying the named Plaintiffs as representatives of the Inmate Class and named Plaintiffs Kenyon Norbert, Troy McAllister, Marshall Harris, Armando Carlos, Montrail Brackens, Michael Brown, and Jose Poot, as representatives of the Excessive Confinement Subclass and their counsel of record as class counsel for the Inmate Class and the Excessive Confinement Subclass.

This motion is based on the Complaint (Dkt. 1, filed on May 20, 2019) and Defendants' Answer to Plaintiffs' Complaint (Dkt. 125, filed on February 26, 2020), this Notice of Motion and Motion, the Memorandum of Points and Authorities, and the Declaration of Yolanda Huang and associated documents, filed and served herewith.

DATED: December 4, 2020          LAW OFFICE OF YOLANDA HUANG


__/s/ Yolanda Huang_____
Yolanda Huang
Counsel for Plaintiffs

# INTRODUCTION

Plaintiffs allege that the San Francisco County Jail system systemically subjects inmates—prisoners and detainees—in County Jail 4 and County Jail 5 to unconstitutional conditions, policies, and procedures. Named Plaintiffs are pretrial detainees who have been confined in either County Jail 4 or County Jail 5 for up to several years. During this period, they were completely denied all access to sunshine and completely denied any outdoor recreation. In addition, all inmates in County Jail 4, and some inmates in County Jail 5, are confined to their cells for excessive amounts of time. They are permitted out of their cells for only 3 hours a week total, resulting in their being locked up for 165 hours a week, or 98.2% of the time. Plaintiffs have alleged that Defendants have systematically failed to comply with the Eighth and Fourteenth Amendments of the U.S. Constitution, and Article I, Sections 7 and 17 of the California Constitution. They also allege that Defendants were negligent and intentionally inflicted emotional distress on the Plaintiffs through their policies and practices. Compl. ¶¶ 68-92.

This case seeks both damages and injunctive relief and presents the kinds of systemic legal and factual issues for which class certification was intended. Jails are unique facilities because every aspect of an inmate's daily life is heavily and centrally controlled from the moment they enter the Jail. Inmates and staff at San Francisco County Jails are subject to centralized and standard policies and practices regarding intake procedures, housing assignments, tracking processes, grievance procedures, programming, classification, and the provision and/or denial of mental health services, psychiatric care, and disability-related accommodations. Custody and mental health staff at Santa Rita are further subject to a central chain of command, standard training, and standard accountability and disciplinary policies. Unlike in the outside world, inmates must rely on Defendants to plan for and provide essential services such as safe living conditions and access to fresh air and sunlight. These centralized policies and standard practices make this case particularly appropriate for class certification under Federal Rule of Civil Procedure 23(b)(2). *See Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 155 (N.D. Cal. 2015) (certifying prisoner class and a subclass of prisoners with disabilities where a central question of injury was "whether Defendants' policies and

practices reflect deliberate indifference as to Plaintiffs' medical care, mental health care, and safety needs.").

Plaintiffs now seek class certification pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. They seek certification of a Plaintiff Class consisting of:

All adults who have been incarcerated since May 20, 2017, or who will be incarcerated in the future, in the San Francisco County Jail 4 and County Jail 5 ("Inmate Class").

Plaintiffs also seek certification of a Plaintiff Subclass consisting of

All inmates in San Francisco County Jail 4 and County Jail 5 who are detained in their cells more than 23 hours per day ("Excessive Confinement Subclass").

Due to Defendants' centralized policies and practices, this matter will necessarily involve numerous questions of fact and law that are common to the proposed class and subclass. These questions, in turn, will generate common answers. Certification of the Inmate Class and Excessive Confinement Subclass is therefore the most efficient and desirable way to address these issues.

## STATEMENT OF FACTS

In the interim, between the time Plaintiffs filed the complaint and the filing of this motion, defendants have closed County Jail 4.   Therefore, Plaintiffs will only address the conditions at County Jail 5.  San Francisco County Jail 5 providesf zero opportunities for inmates to access natural sunlight, swathing them instead in artificial fluorescent lighting twenty-four hours a day. Compl. ¶¶ 41-43, 48, 54-64. This practice occurs even though the Ninth Circuit held "(t)hat the denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment." *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). In addition, some of the inmates housed in County Jail 4 and County Jail 5 are retained in their cells for up to 23.5 hours per day—essentially solitary confinement—and given only a half hour of outside cell time daily (or a single three-hour block per week at random hours), during which they are expected to both exercise and make phone calls to lawyers and family and friends. Compl. ¶¶ 44-45, 48-50, 54-64.

County Jail 5 is located on watershed land on the outskirts of San Mateo County. *Id.* Built in 2006, County Jail 5 replaced the former San Bruno Jail. *Id.* County Jail 5 has a capacity of 768

inmates. *Id.* County Jail 5 incarcerates only men. *Id.* In 2018, 85% of all inmates in San Francisco County Jails were pre-trial and non-sentenced.[1] Compl. ¶ 51.

The old San Bruno Jail had an ample outdoor field with a footprint that was approximately the same size as the building itself. Compl. ¶ 40. Not only was there an outside yard, but the defendants encouraged prisoners to engage in outdoor activities. *Id.* In 1982, a sheriff's deputy started the San Francisco County Jail Garden Project, which operated through 1992 and wherein prisoners cultivated plants for use on public works projects. *Id.* However, during the construction of County Jail 5, which was completed in 2006, the County made the inexplicable, deliberate decision to design the new facility in such a manner for the purpose of preventing and denying all prisoner access to the outdoors, to sunshine, and even to indirect daylight. Compl. ¶ 41. The old San Bruno jail building remains standing, as does the old, spacious outdoor yard adjacent to it. *Id.* Plaintiffs allege that access to this yard could be provided to current prisoners in County Jail 5. *Id.*

Without any access to an outdoor yard, Plaintiffs contend that prisoners in County Jail 5 are bathed twenty-four hours a day, seven days a week, wholly in artificial fluorescent lighting. Compl. ¶ 42. This jail has sixteen housing pods with 24 cells in each pod. *Id.*; Defs.' Answer ¶ 42. Each cell houses two prisoners, and therefore each housing pod has the capacity of 48 prisoners. *Id.* The layout of each pod is a semi-circle, with the cells on two tiers facing toward an open center, a sheriff's deputy station opposite to the cells, and a common area in between. *Id.* Each housing pod also has one room named a gym, which is roughly the size of the paint area of a basketball court and which prisoners access during "pod" time. *Id.* Inside the gym, there is an air vent on the wall very close to the ceilings. Compl. ¶ 43; Answer ¶ 43. The vent permits outside air and some light for illumination, but it never lets in direct sunlight. Compl. ¶ 43. The vent is so high that prisoners cannot see the outside. *Id.*

Plaintiffs next allege that they are locked in their cells for excessive periods of time. Depending on the housing pod in County Jail 5, prisoners have varying amounts of out-of-cell time and access to the gym. Compl. ¶ 43; Answer ¶ 43. In Housing Pod 7A (Intake) and 4A

---

[1] Board of State and Community Corrections, Jail Population Trends for 2018. http://www.bscc.ca.gov/m_dataresearch/

1  (Administrative Segregation), prisoners are permitted out of their cells for only a half hour total per

2  day. Compl. ¶ 43. Stated another way, they are in their cells for 23.5 hours a day. *Id.*

3       These conditions result in severe isolation and limited access to services. In Housing Pod

4  4A in County Jail 5, each cell is unlocked one at a time, so the two prisoners in each cell have no

5  opportunity to socialize or communicate with anyone other than themselves or jail guards. Compl. ¶

6  44. Since there is no shower or phone in these cells, prisoners have to share the one phone in the

7  pod to call lawyers and family. *Id.* However, if their half-hour out-of-cell time is in the early

8  morning, then there is no real opportunity to make legal calls or calls to family. *Id.* The limitation of

9  a half-hour also leaves them with little time to use the gym room and exercise. *Id.* These cells do

10  not have showers, so prisoners are provided access to showers, every other day, for approximately

11  10 minutes each. *Id.* These prisoners are required to eat all of their meals inside their cells. *Id.* They

12  live, sleep, eat, and defecate in these same small cells. *Id.* These cells are solid in all directions so

13  that even sound has limited penetration into their cell. *Id.*

14       In Housing Pod 7A in County Jail 5, the bottom tier is allowed out as a group for a half hour

15  per day of pod time. Compl. ¶ 45. During this time, the twelve prisoners have to share access to

16  phones and the gym. *Id.* Otherwise, they are completely locked inside their cells for the remaining

17  23.5 hours of the day. *Id.*

18       In the County Jail 4 12-person cells, the cells contain a shower and toilets. Compl. ¶49;

19  Answer ¶ 49. These prisoners are permitted out of their cells, at most, three hours a week to access

20  the gym. *Id.* Access is all in one three-hour chunk, and sometimes the times for access are early

21  morning or other hours which are not conducive to exercise. Compl. ¶ 49. The other, smaller cells

22  in County Jail 4 do not have a shower, so the prisoners in cells smaller than the 12-person cell, in

23  addition to one three hour block for access to the gym, are provided access to a shower twice a

24  week for ten minutes each. *Id.*; Cmpl. ¶ 49. The remainder of the time, all prisoners in County Jail 4

25  are locked up in their cells, forced to live, eat, sleep, urinate and defecate in place and remain caged.

26  *Id.*

27       Limited to their cells for excessive periods of time, prisoners are forced to meet their

28  exercise needs in their cells. However, all San Francisco County Jail cells are small, primarily

5

**PLAINTIFFS' NOTICE AND MOTION FOR CLASS CERTIFICATION**
*Norbert, et al. v. San Francisco County Sheriff's Dept. et al.,*  United States District Court, Northern District of California, Case No. 3:19-cv-02724 SK

occupied by metal beds and a toilet. Compl. ¶ 50. There is no room for active movement, large muscle group movement, or walking. *Id.* Prisoners cannot walk for more than one or two seconds before being obstructed by hard objects, the walls, the bed, the toilet, or, in the case of County Jail 4, other prisoners. *Id.*

Extreme detention as alleged here is roundly condemned, deemed a form of extreme social and sensory isolation and environmental deprivation. *See* Compl. ¶¶ 46-47. The American Correctional Association calls confinement of at least 22 hours per day to be segregation or solitary confinement.[2]  The United Nations standards, also called the Mandela Rules[3], say:

> Every prisoner who is not employed in outdoor work shall have at least one
> hour of suitable exercise in the open air **daily** if the weather permits.

Compl. ¶ 46 (emphasis added).

The U.S. State Department created a handbook to provide embassy officials around the world with a basic understanding of international standards for correctional systems. That handbook states, "The prisoners should have access to recreation for **no less than one hour per day**."[4] Compl. ¶ 47 (emphasis added).

As a result of these conditions, prisoners suffer from a number of illnesses as a result of the excessive confinement, lack of access to meaningful exercise, and complete denial of outdoor exercise and sunshine. Compl. ¶¶ 52-64. These health issues include cardiovascular disease, hypertension, negative impacts on blood sugar including adult onset diabetes and lowered insulin sensitivity, headaches, migraines, anxiety and depression, weight increase and obesity. *Id.* Lack of exercise also predisposes the prisoners to non-cardiovascular chronic diseases including colon cancer. *Id.* As individuals who have low levels of physical activity and fitness, these prisoners are subject to a higher death rate. *Id.*

On information and belief, Plaintiffs allege that all prisoners in CJ5 are deficient in Vitamin D, and suffer from a variety of health issues resulting from Vitamin D deficiency, including soft bones, muscle weakness, bone pain, cardiovascular disease, and cognitive impairment (inability to

---

[2] American Correctional Association (ACA) Restricted Housing Standard 2016 ACA p. 3
[3] Mandela Rules, Rule 43 at 12/33.
[4] *A Practical Guide to Understanding and Evaluating Prison Systems*, United States Department of State, page 23.

think clearly and analyze logically). Compl. ¶ 53. Whereas all the prisoners are allegedly accused by the State of making bad choices, Defendants are purposely creating an environment where Plaintiffs and members of the class are deprived of the fundamental building blocks, such as Vitamin D, necessary for clear thinking and rational, logical decision making, and creating an environment to set Plaintiffs and members of the class, to repeatedly fail. *Id.*

Plaintiffs thus allege that, by policy and practice, Defendants have violated their rights by failing to provide access to outdoor exercise and sunlight and by further requiring that certain inmates remain in their cells for up to 23.5 hours per day. These policies and practices constitute deliberate indifference and present a significant risk of serious harm to all inmates housed in County Jail 4 and County Jail 5, in violation of the U.S. and California Constitutions. Plaintiffs further allege that Defendants were negligent in failing to exercise the ordinary care or skill in the management of County Jail 4 and County Jail 5. They also intentionally inflicted emotional distress on the Plaintiffs by forcing them to live under these conditions of confinement.

## INTERIM LITIGATION

Plaintiffs filed a motion for preliminary injunction.  The Court issued its Order (ECF 110) and ordered as follows:

"Thus, the Court ORDERS Defendant the City and County of San Francisco to provide all pretrial detainees in the general population and administrative segregation who have been incarcerated for more than four years access to direct sunlight at least one hour a week, absent disciplinary issues such as placement in disciplinary lockdown or other emergency issues that prevent this access. This injunction does not apply to inmates in disciplinary lockdown." )ECF 110, p. 38-39);

"The Court ORDERS that the City and County of San Francisco provide inmates in administrative segregation in County Jails 4 and 5 exercise in the gym for at least one hour a day, five days a week, unless there are disciplinary reasons or other emergency situations that prevent compliance. The Court ORDERS the City and County of San Francisco provide any pretrial detainee who had been confined for more than four years access to direct sunlight for at least one

hour a week, again unless there are disciplinary reasons or other emergency situations that prevent compliance."

Subsequently, defendants filed a notice of appeal from a portion of the Court's order only, that portion requiring that defendants provide all inmates who have been incarcerated for four years or more, one hour of direct sunlight per week.  Defendants did not appeal from the portion of the court's order requiring one hour out of cell exercise, five days per week, for inmates in administrative segregation.  As part of their appeal, defendants contend that the order for preliminary injunction is improper because it was issued prior to class certification.

## LEGAL STANDARD FOR CLASS CERTIFICATION

In accordance with Federal Rule of Civil Procedure 23, class certification is proper where the party seeking certification demonstrates that (1) each of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and (2) the proposed class satisfies at least one of the requirements listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011) (hereinafter "*Dukes*"). The moving party meets this burden by providing the court with a sufficient basis for forming a "reasonable judgment" that each of these requirements has been met. *Blackie v. Barrack*, 524 F.2d 891, 900-01 (9th Cir. 1975).

Here, Plaintiffs seek to certify the following class of individuals pursuant to Federal Rule of Civil Procedure 23(b)(2):

All adults who have been incarcerated since May 2017, including those who will be incarcerated in the future, in the San Francisco County Jail 4 and County Jail 5 ("Inmate Class").

Plaintiffs also seek certification of a Plaintiff Subclass consisting of:

All inmates in San Francisco County Jail 4 and County Jail 5 who are detained in their cells more than 23 hours per day. (Excessive Confinement Subclass).

Plaintiffs submit that the proposed Inmate Class and Excessive Confinement Subclass satisfy each of the Rule 23(a) requirements: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Plaintiffs further submit that the proposed Inmate Class and Excessive Confinement Subclass also satisfy at least one of the requirements listed in Rule 23(b) because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

### POINTS AND AUTHORITIES IN SUPPORT OF CLASS CERTIFICATION

**I.   THE PROPOSED CLASS AND SUBCLASS MEET ALL THE REQUIREMENTS OF RULE 23**

**a.   The Proposed Class and Subclass Meet All The Requirements of Rule 23(a)**

**i.   The Class and Subclass are Sufficiently Numerous**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs need not establish that joinder is impossible, but merely that joining all class members would be difficult or inconvenient. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Although there are no absolute numerical limitations, courts have found that numerosity is satisfied when the prospective class includes at least forty members. *E.g.*, *Hawkins v. S2 Verify*, No. C 15-03502 WHA, 2016 WL 3999458, at *3 (N.D. Cal. July 26, 2016) (citing *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010)).

The proposed Inmate Class is sufficiently numerous that joinder of all members of the class would be impracticable and unfeasible. County Jail 5 has a daily capacity of 768 inmates. *Id.* On information and belief, Plaintiffs assert that approximately 20,000 individuals are held at various times throughout each year at County Jail 5. *Id.* On a daily basis, then, over 1,100 individuals are in a San Francisco County Jail. On a yearly basis, this amounts to over 30,000 individuals in a San Francisco County Jail.

The Proposed Excessive Confinement subclass is also sufficiently numerous. At the time of the filing of the complaint, all prisoners at County Jail 4 (400 prisoners) and approximately 96 prisoners in Pod 7A and 4A are members of the Excessive Confinement Subclass, so that the subclass

numbers nearly 500 prisoners at the time the complaint was filed. Compl. ¶ 31. With the combination of County Jail 5 and County Jail 5, and the advent of covid-19, Plaintiffs have not been able to ascertain the exact number of individuals currently housed in administrative segregation or held in cells for 23 or more hours per day.  Within a year's time, Plaintiffs assert that San Francisco County Jail processes and houses approximately 10,000 who qualify for the sub-class of Excessive Confinement.  *Id.* These prisoners are subjected to the same deprivation of sunlight, outdoor recreation, and outdoor air as all prisoners.

Plaintiffs thus seek to certify a class and subclass of several thousand individuals who were incarcerated at County Jail 4 and County Jail 5, and those who are incarcerated in County jail 5 now. It would be impracticable, and a waste of judicial resources, to require each member of the class to litigate these questions. *See, e.g.*, *Gay v. Waiters and Dairy Lunchmen's Union*, 549 F.2d 1330, 20 1332 (9th Cir. 1977) (reversing denial of class certification for lack of numerosity  of class of 184 plaintiffs, noting that "[c]ertification of a class under Rule 23 has been granted many times on lesser numbers than in the present case," and citing as an example, *Sagers v. Yellow Freight System, Inc.*, 529 F.2d 721 (5th Cir. 1976) [110 members "clearly a sufficient number").)  The numerosity requirement is satisfied.

Additionally, Courts routinely find numerosity satisfied where, as here, the proposed class comprises current and future inmates who seek declaratory and injunctive relief. *See, e.g.*, *Rosas v. Baca*, No. CV 12-00428 DDP (SHx), 2012 WL 2061694 at *2 (C.D. Cal. June 7, 2012) (finding a class of inmates sufficiently numerous where "the Jails currently house thousands of inmates, and are certain to house many more in the future"); *Jewett v. California Forensic Medical Group, Inc.*, No. 2:13-cv-0882 MCE ACP, 2017 WL 980446 at *5 (E.D. Cal. March 13, 2017) (presumption of impracticability of joinder "especially true where, as here, the class includes future, unknowable class members") (citing *Hernandez*, 305 F.R.D. at 153). Given the thousands of individuals held at San Francisco County Jails on a daily basis, the proposed Inmate Class and Excessive Confinement Subclass clearly meet the numerosity requirement of Rule 23(a)(1).

  **b. Commonality Requirement of Rule 23(a)(2) Is Met Because There Are Questions of Law and Fact Common to the Class and Subclass Capable of Common Resolution**

Federal Rule of Civil Procedure 23(a)(2) requires that "there [be] questions of law or fact common to the class." Class claims must "depend upon a common contention ... that [] is capable of classwide resolution ... meaning] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "Put another way, the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350) (emphasis in original). However, to satisfy the commonality requirement "[a]ll questions of fact and law need not be common." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (internal quotation marks and citation omitted); *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) ("So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2).") (internal quotation marks and citation omitted).

The nature of this suit and the relief requested support a finding of commonality. In a civil rights lawsuit brought by inmates, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). When such system-wide policies exist, "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Id.*; *see also Parsons*, 754 F.3d at 678 (affirming certification of statewide prisoner class where plaintiffs "set forth numerous common contentions whose truth or falsity [could] be determined in one stroke: whether the specified statewide policies and practices to which they are all subjected by [the State] expose them to a substantial risk of harm"); *Jewett*, 2017 WL 1356054 (order granting class certification); *Topete v. Cty of San Bernardino*, No. 5:16- cv-00355-VAP-DTB (C.D. Cal. Jan. 27, 2017) (order granting class certification); *Chavez v. Cty of Santa Clara*, No. l:15-cv-05277-RMI (N.D. Cal. September 20, 2016) (order granting class certification); *Cole v. Cty of Santa Clara*, No. 5:16-cv-06594-LHK (N.D. Cal. Feb. 6, 2018) (order granting class certification).

The case at hand—in which Plaintiffs' claims rest upon a common set of policies, practices, and procedures governing access to outdoor recreation and sunlight and out-of-cell rights—is a quintessential civil rights class action alleging systemic issues with the conditions of confinement.

Because these constitutional obligations, by their very nature, require an examination of Defendants' programs, policies, practices and facilities on a system-wide basis, such claims are particularly well suited for class-wide determination.

### i.   Commonality is Demonstrated by Common Questions of Law and Fact

In a civil rights suit, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members . . . . In such circumstance, individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality." *Armstrong*, 275 F.3d at 868; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("We have found '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class'") (citations omitted).

In the present case, all class members were subjected to the same condition, which was solely under the control of Defendants, and which resulted from the same circumstances, namely a policy or practice that denies access to sunlight and/or outdoor recreation.  As to the subclass, there are additional common questions, including whether they were locked in their cells for excessive amounts of time; whether they were forced to choose between exercise and access to the telephone; and whether inmates were provided only one opportunity each week for exercise. Both class members and subclass members were forced to endure common conditions that amounted to unconstitutional conditions of confinement.

Plaintiff's claims are premised on a common set of policies, practices, and procedures. It is thus a quintessential civil rights class action alleging systemic issues that violate the class members' constitutional rights. Because the Defendants' constitutional obligations, by their very nature, require an examination of Defendants' programs, policies, practices and facilities on a system-wide basis, such claims are particularly well suited for class-wide determination.

In addition, the members of the Inmate Class and the Excessive Confinement Subclass share, at a minimum, the following common legal questions raised in the Complaint and the Defendants' Answer:

- Whether Defendants' policies and practices, as set forth in the Complaint, amount to cruel and unusual punishment and violate the 8th and 14th Amendments of the U.S. Constitution and Article I of the California Constitution.
- Whether Defendants are failing to provide minimally adequate access to sunlight and/or outdoor recreation in violation of the 8th and 14th Amendments of the U.S. Constitution and Article I of the California Constitution, as set forth in the Complaint.
- Whether Defendants are failing to provide Due Process to inmates, in violation of the 14th Amendment to the U.S. Constitution and Article I of the California Constitution, by improperly housing inmates in restrictive housing units, as set forth in the Complaint.
- Whether Defendants' policies and practices subject inmates to a substantial risk of serious harm, as set forth in the Complaint.

These common questions of law and fact depend on common contentions and are not affected by the circumstances of any individual class or subclass member. Thus, such questions are capable of generating common answers and hence are appropriate for class-wide resolution. *Dukes*, 564 U.S. at 350.

### ii. Challenges By Inmates to Conditions of Confinement Qualify for Class Treatment

Challenges to general jail conditions have been found appropriate for class treatment. For example, a class was certified consisting of former and current county jail detainees who were forced to sleep on cell floors. *See e.g.*, *In re Nassau County Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006) (abuse of discretion to refuse to certify Rule 23(b)(3) strip search class for liability pursuant to Rule 23(c)(4)(A) where there was a blanket strip search policy; on remand, district court should reconsider whether damages component of case should also be certified). Any minor factual differences among members of the class with respect to their individual length of incarceration do not undermine commonality. *See Armstrong*, 275 F.3d at 868 (rejecting defendant's argument that class was improperly certified in prison case alleging several forms of systemic disability discrimination and stating that "individual factual differences among the individual litigants or groups of litigants will not preclude a finding of commonality").

*Rodriguez*, *supra*, is instructive on this point. In *Rodriguez*, the plaintiff sought certification of a class of individuals held in immigration detention in California for more than six months without a hearing. 591 F.3d at 1111. The Ninth Circuit rejected the argument that class certification should be denied because each individuals' case turned on "divergent questions of statutory interpretation and consideration of different factual circumstances," finding that "the commonality requirement asks us to look only for some shared legal issue or a common core of facts." *Id*. at 1122. As the Ninth Circuit

observed, where plaintiffs allege that they were required to endure similar conditions of confinement, the courts have found that the commonality element was met.

### c. The Claims of the Class Representatives are Typical of the Claims of the Class and Subclass.

Class certification is proper under Rule 23(a)(3) when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." While the claims of the entire class need not be identical, the class representatives must generally "possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks and citation omitted); *see Wolin v. Jaguar Land Rover N. Am.,LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class.") (internal quotation marks and citation omitted); *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011,

Typicality exists when (1) the named plaintiffs and other class members have the same or similar injury, (2) the action is based on conduct which is not unique to the named plaintiffs, and (3) other class members have been injured by the same course of conduct as the named plaintiffs. *Ellis*, 657 F.3d at 984. Commonality and typicality are closely related, such that a finding of one usually requires a finding of the other. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987). As with commonality, factual differences among class members do not defeat typicality provided there are legal questions common to all class members. *See Armstrong*, 275 F.3d at 869 (recognizing that a class of putative prisoners subject to discriminatory treatment by defendants would suffer different injuries due to different disabilities, but those "minor" differences were "insufficient to defeat typicality").

Here, the named plaintiffs allege that they have experienced the same or similar harm, rely on the same legal theories, and seek the same declaratory and injunctive relief that is broadly applicable to all members of the proposed class and subclass. All of the named plaintiffs have been or are currently incarcerated in San Francisco County Jail 4 and/or County Jail 5. Each alleges that he was a victim of the Defendants' policy, practice, and/or custom of denying prisoners access to outside recreation, denying all prisoners access to sunlight and sunshine, and forcing members of the subclass

to be excessively confined in their cells. The named plaintiffs possess the "same interest and suffer the same injury" as class members, thus satisfying the typicality requirement. *Krzesniak v. Cendant Corp.*, No. C05-05156 MEJ, 2007 WL 1795703 at *7 (N.D. Cal. June 20, 2007) (citation omitted); *Hanlon*, 150 F.3d at p. 1020.

### d. The Proposed Class Representatives and Class Counsel Will Fairly and Adequately Protect the Interests of the Class and Subclass.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Under Ninth Circuit precedent, adequacy depends on the resolution of two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members," and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020 (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978)). Satisfying Rule 23(a)(4) thus depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (internal citation omitted).

The Plaintiffs have a strong personal interest in the outcome of this action, have no conflicts of interests with members of the class, and will fairly and adequately protect the interests of the class. The Plaintiffs have all been subjected to conditions of confinement that violate the Eighth and Fourteenth Amendments of the U.S. Constitution. Each named Plaintiff is willing to perform the duties of a class representative and to pursue this lawsuit vigorously on behalf of the class and subclass. There is no basis on which to argue that their interests are antagonistic to those of the class. There is no suggestion of collusion between the named Plaintiffs and any of the Defendants. Undersigned counsel is aware of no conflicts of interest between herself and members of the class and subclass. *See Decl. of Y. Huang in Supp. Mot. Class Cert. § 7.*

Plaintiffs' counsel also meet the requirements of Rule 23(g), and should therefore be appointed class counsel for the Inmate Class and Excessive Confinement Subclass. Under Rule 23(g), in appointing class counsel, a court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

Fed. R. Civ. P. 23(g)(1)(A). Class counsel is found to be adequate if they do not have "any conflicts of interest with other class members" and if they will "prosecute the action vigorously on behalf of the class." *Hernandez*, 305 F.R.D. at 161 (internal quotation marks and citation omitted).

Here, the Plaintiffs are represented by experienced civil rights and class action counsel. Plaintiffs' Counsel have the resources, expertise, and experience to prosecute this action. Counsel has performed extensive work investigating the claims in this action for nearly two years, is well-versed in prisoner's rights litigation, and has more than sufficient resources to vigorously prosecute this case. *See Huang Decl., ¶ 6.* Class counsel also has extensive experience in litigation involving county jail conditions of confinement on behalf of prisoners and arrestees and has significant experience in class action and complex litigation. *See Jordan v. Cnty. of L.A.*, 669 F.2d 1311,1323 (9th Cir. 1982) (holding that adequacy of counsel can be met by showing that the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct litigation). *See also Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2016 WL 2344194, at *4 (N.D. Cal. May 4, 2016) (finding adequacy of class counsel where Plaintiffs' attorney appointed class counsel in numerous class actions around the country, including those brought under the same federal laws); *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *3 (N.D. Cal. Nov. 28, 2012) (finding adequacy of class counsel where counsel "have regularly engaged in major complex litigation and have extensive experience in [] class action lawsuits that are similar in size, scope and complexity to the present case"). Further, no conflicts or collusion exist between opposing counsel, Plaintiffs, and the proposed class members that would compromise their ability to represent the class.

For all these reasons, counsel is adequate for the purposes of class certification under Rule 23(a)(4) and should be appointed class counsel for the Inmate Class and Excessive Confinement Subclass under Rule 23(g)(1) and (4).

### e.   The Class and Subclass Meet the Requirements of Rule 23(b)(2)

In addition to meeting the requirements under Rule 23(a), Plaintiffs must also establish at least one of the grounds for maintaining a class action under Rule 23(b) before a class will be certified. *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, No. 14-cv-05596-JST, 2015 WL 5569462, at *4 (N.D. Cal. Sept. 22, 2015). Here, Plaintiffs submit that class certification is warranted under Rule 23(b)(2).

A class action may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed R. Civ. P. 23(b)(2). "[T]he primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. For a class to be certified under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class," even if not all class members have been injured by the challenged practice. *Walters*, 145 F.3d at 1047. The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Nat'l Fed'n of the Blind of California v. Uber Techs., Inc.*, No. 14-CV-04086 NC, 2016 WL 9000699, at *6 (N.D. Cal. July 13, 2016) (quoting *Parsons*, 754 F.3d at 687-88).

The claims brought in this case are precisely the type of claims that Rule 23(b)(2) was intended to cover. Here, Plaintiffs seek broad declaratory and injunctive relief—system-wide improvements in the Defendants' policies, procedures, and programs—on behalf of a large and transitory class of inmates. All members of the Inmate Class and Excessive Confinement Subclass are allegedly exposed to a substantial risk of serious harm due to Defendants' policies and practices related to conditions of confinement, classification, and housing. All members of the Excessive Confinement are similarly allegedly subject to unconstitutional conditions due to Defendants' system-wide policies and practices restricting out-of-cell time. While each of Defendants' policies and practices may not affect every member of the proposed Inmate Class or Excessive Confinement Subclass in exactly the same way, they constitute shared grounds for all inmates in the proposed class and subclass. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) ("The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2).").

The fact that the plaintiffs are also seeking monetary compensation does not alter the conclusion that this is an appropriate (b)(2) class. A claim of this type is routinely certified as a (b)(2) class action. (See cases cited at §V(A) supra; *Washington Mobilization Committee v. Cullinane*, 400 F. Supp. 186, 218 (D.D.C.1975) aff'd in part, reversed in part on other grounds 566 F.2d 107 (D.C. Cir. 1977) (certifying injunctive relief class consisting of consisting of all persons who have participated in or observed and who intend to participate in or observe lawful, peaceful, orderly and non-obstructive public demonstrations); *Thomas v. Baca*, *supra*, 231 F.R.D. 397 (certifying class of LASD detainees forced to sleep on the floor under both (b)(2) and (b)(3)).

17

**PLAINTIFFS' NOTICE AND MOTION FOR CLASS CERTIFICATION**
*Norbert, et al. v. San Francisco County Sheriff's Dept. et al.,* United States District Court, Northern District of California, Case No. 3:19-cv-02724 SK

Therefore, certification of the proposed Inmate Class and Excessive Confinement Subclass under Rule 23(b)(2) is proper.

### f.  Alternatively, Rule 23(b)(1)'s Requirements Are Met

Rule 23(b)(1) provides that a class action may be maintained where prosecution by or against individual class members would create a risk of either (a) inconsistent or varying adjudications that could establish incompatible standards, or (b) adjudication with respect to individual class members that would, as a practical matter, dispose of others' claims or substantially impair or impede their ability to defend their interests. Although certification under this rule is relatively rare, it has been expressly applied in protest cases. *See, e.g.*, *Chang*, *supra*, 217 F.R.D. at p. 273 n.5.

## II.   DEFENDANTS HAVE CONCEDED THE CLASS MEETS RULE 23 REQUIREMENTS

Defendants have only appealed from a portion of this Court's preliminary injunction, the portion requiring that defendants provide prisoners with direct sunlight, which applies to the class as a whole.  Defendants have not appealed the portion of the preliminary injunction requiring that all prisoners in administrative segregation receive one hour out of cell time, 5 days a week, for exercise, which applies to the Excessive Confinement Subclass.

By not challenging the preliminary injunction as to the  Excessive Confinement Subclass, defendants have in fact conceded that the class meets the Rule 23 requirements.

## III.   CONCLUSION

The putative class satisfies all the prerequisites and requirements of Federal Rules of Civil Procedure 23(a) and (b).  Certification here will conserve court resources, avoid a multiplicity of actions, and enable those whose rights were violated to assert small claims that could not otherwise be litigated individually. (See, *Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345, 349 3 (1983); *General Telephone Co. Of Southwest v. Falcon*, 457 U.S. 147, 155 (1982).)

For the above stated reasons, Plaintiffs respectfully request that this Court enter an order certifying this action as a class action and certifying:

All adults who have been incarcerated since May 20, 2017, or who will be incarcerated in the future, in the San Francisco County Jail 4 and County Jail 5 ("Inmate Class").

18

**PLAINTIFFS' NOTICE AND MOTION FOR CLASS CERTIFICATION**

*Norbert, et al. v. San Francisco County Sheriff's Dept. et al.,*   United States District Court, Northern District of California, Case No. 3:19-cv-02724 SK

1    Plaintiffs also seek certification of a Plaintiff Subclass consisting of

2    All inmates in San Francisco County Jail 4 and County Jail 5 who are detained in their cells

3 more than 23 hours a day.  ("Excessive Confinement Subclass").

4    Plaintiffs further request that they be certified as the representatives of the Class and that

5 their counsel be certified

6 Dated:  Dec. 4, 2020            LAW OFFICES OF YOLANDA HUANG

8                    By:  /s/ Yolanda Huang
                         YOLANDA HUANG
9                         Attorney for Norbert, et al. Plaintiffs

**PLAINTIFFS' NOTICE AND MOTION FOR CLASS CERTIFICATION**
*Norbert, et al. v. San Francisco County Sheriff's Dept. et al.,*   United States District Court, Northern District of California, Case No. 3:19-cv-02724 SK