1   DAVID CHIU, State Bar #189542
    City Attorney
2   MEREDITH B. OSBORN, State Bar #250467
    Chief Trial Attorney
3   SABRINA M. BERDUX, State Bar #248927
    KAITLYN MURPHY, State Bar #293309
4   Deputy City Attorneys
    Fox Plaza
5   1390 Market Street, 6th Floor
    San Francisco, California 94102-5408
6   Telephone:      (415) 554-3929 [Berdux]
    Telephone:      (415) 554-3867 [Murphy]
7   Facsimile:      (415) 554-3837
    E-Mail:         sabrina.m.berdux@sfcityatty.org
8   E-Mail:         kaitlyn.murphy@sfcityatty.org

9   Attorneys for Defendants
    CITY AND COUNTY OF SAN FRANCISCO and
10  VICKI HENNESSY, IN HER OFFICIAL CAPACITY

11                  UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
12

13  KENYON NORBERT, TROY                         Case No. 19-cv-02724-SK (LB)
    MCALLISTER, MARSHALL HARRIS,
14  ARMANDO CARLOS, MONTRAIL               **DEFENDANTS' REPLY IN SUPPORT OF**
    BRACKEN, MICHAEL BROWN AND JOSE        **MOTION FOR SUMMARY JUDGMENT (ECF**
15  POOT, ON BEHALF OF THEMSELVES          **NO. 259) AND OPPOSITION TO PLAINTIFFS'**
    INDIVIDUALLY AND OTHERS                **MOTION FOR SUMMARY JUDGMENT (ECF**
16  SIMILARLY SITUATED, AS A CLASS         **NO. 273)[1]**
    AND SUBCLASS,
                                           Hearing Date:     December 12, 2022
17          Plaintiffs,                    Time:             9:30 a.m.
                                           Place:            Courtroom C, 15th Floor
18          vs.
                                           Trial Date:       March 7, 2023
19  SAN FRANCISCO COUNTY SHERIFF'S
    DEPARTMENT, CITY AND COUNTY OF
20  SAN FRANCISCO, SAN FRANCISCO
    SHERIFF VICKI HENNESSY; CHIEF
21  DEPUTY SHERIFF PAUL MIYAMOTO;
    CAPTAIN JASON JACKSON, CAPTAIN
22  MCCONNELL AND JOHN AND JANE
    DOES, NOS. 1 -50,
23
            Defendants.
24

25
    ───────────────
26        [1] Defendants combine their opposition to Plaintiffs' motion and reply in support of Defendants'
    motion in one filing for the Court's convenience rather than a 25-page opposition and 15-page reply.
27  *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)
    ("[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court,
28  the court must consider the appropriate evidentiary material identified and submitted in support of
    both motions, and in opposition to both motions, before ruling on them.").

1

## **TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ................................................................................................ iii

3   STATEMENT OF FACTS ................................................................................................... 2

          A.     Plaintiff's Injuries Remain Unique and Particularized ............................. 2
4
          B.     County Jail 5 Exercise Space Exceeds Standards ...................................... 3
5
          C.     Recreation and Out-of-Cell Time ............................................................... 4
6
          D.     Fresh Air & Natural Light ........................................................................... 5
7
          E.     COVID-19 and Its Effect on County Jail 5 ................................................ 7
8
          F.     Plaintiffs' Miscellaneous Complaints Are Irrelevant ................................ 9

          G.     Inmates Receive Treatment for Vitamin D Deficiencies .......................... 10
9
   ARGUMENT ...................................................................................................................... 10

10   I.     The Court Should Not Permit Plaintiffs to Benefit from Their Tactical Decision
       to Attach More Than One Thousand Pages of Evidence They Do Not Cite in
11          Their Motion or Opposition ........................................................................................ 10

12   II.    Plaintiffs' Federal and State Law Claims Fail on The Merits ................................. 11

13             A.     Plaintiffs' Fourteenth Amendment Claims Fail ........................................ 12

14                  1.     County Jail 5 Provides Meaningful Opportunities for Recreation. 12

15                  2.     Plaintiffs' Motion Ignores the Government's Legitimate Interest
                     in County Jail 5's Policies, Including Preventing the Spread of
16                        COVID-19 ....................................................................................... 16

17                  3.     There Is No Independent Right to Direct Sunlight Separate from
                     the Right to Recreation .................................................................. 19
18
          B.     Plaintiffs' Claims under Article I Section 7 of the California
19                  Constitution Fail for the Same Reason as Their Fourteenth Amendment
               Claims .......................................................................................................... 20

20             C.     Article I Section 17 of the California Constitution Does Not Apply to
               Pretrial Detainees ....................................................................................... 20
21
   III.   Plaintiffs Cannot Request Summary Judgment for Issues Not Raised in Their
22          Complaint ................................................................................................................... 20

23   IV.   Plaintiffs Do Not Substantively Oppose Defendants' Summary Judgment
       Motion with Respect to Plaintiffs' Prayers for Relief ............................................. 22
24
          A.     The Court Should Strike Plaintiffs' Prayer for Monetary Damages .......... 24
25
          B.     The Court Should Strike Plaintiffs' Prayer for Punitive Damages ............ 28

26             C.     The Court Should Strike Plaintiffs' Prayer for Injunctive Relief as to the
               San Francisco Department of Public Health ............................................... 28
27
   V.    Plaintiffs' Evidentiary Objections are Without Merit ............................................. 29
28
   VI.   Objections to Plaintiffs' Evidence ............................................................................ 30

A.     The Opinions of Dr. Charles Czeisler Must Be Excluded ........................30

     1.     Dr. Czeisler's Opinions Are Irrelevant ...........................................30

     2.     Dr. Czeisler's Second Report Is Untimely.....................................31

     3.     Dr. Czeisler's Report Is Based on Information Obtained in Violation of Court Orders ..............................................................31

B.     Opinions of Dr. Robert M. Bernstein and Lucas Fogarty Must Be Excluded ..................................................................................................32

     1.     Dr. Bernstein and Fogarty's Opinions are Irrelevant....................32

     2.     Dr. Bernstein and Fogarty's Opinions are Duplicative and Cumulative ......................................................................................32

     3.     Dr. Bernstein and Fogarty's Opinions Cannot Be Used To Support Plaintiffs' Case-In-Chief .................................................33

C.     Any and All Opinions of Dr. Jamie Zeitzer Must Be Excluded Because No Opinions of Dr. Jaime Zeitzer Were Disclosed in Expert Discovery ..33

D.     Plaintiffs' Evidence Regarding the California Education Code Must Be Excluded ..................................................................................................34

VII.     Plaintiffs' Request for a Continuance Is Unsupported ..........................................34

CONCLUSION...................................................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**State Cases**

*In re Humphrey*
    11 Cal. 5th 135(2021) ....................................................................................18

**Federal Cases**

*Barnett v. Medina*
    2008 WL 2128204 (N.D. Cal. May 20, 2008) ...........................................35

*Bell v. Wolfish*
    441 U.S. 520 (1979) ......................................................................................16

*Cal. Sportfishing Prot. All. v. Pac. States Indus. Inc.*
    2015 WL 2269073 (N.D. Cal. Sept. 22, 2015) .........................................24

*Carmen v. San Francisco Unified Sch. Dist.*
    237 F.3d 1026 (9th Cir. 2001) .....................................................................10

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ......................................................................................29

*Chappell v. Pliler*
    2017 WL 363002 (E.D. Cal. Jan. 24, 2017) .............................................15

*Cline v. Indus. Maint. Eng'g & Contracting Co.*
    200 F.3d 1223 (9th Cir. 2000) .....................................................................28

*Coleman v. Quaker Oats Co.*
    232 F.3d 1271 (9th Cir. 2000) .....................................................................20

*Cutrera v. Bd. of Supervisors of Louisiana State Univ.*
    429 F.3d 108, 113 (5th Cir. 2005) ..............................................................20

*Danganan v. Am. Family Mutual Ins. Co.*
    2018 WL 3660198 (D. Nev., Aug. 2, 2018) .............................................33

*De La Fuente v. Wyman*
    2018 WL 646958 (W.D. Wash. Jan. 31, 2018) ........................................20

*Dixon v. Legacy Transp. Sys., LLC*
    2017 WL 4004412 (D. Nev. Sept. 11, 2017 .............................................31

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) .......................................................................25

*Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*
    249 F.3d 1132 (9th Cir. 2001) .......................................................................1

*Fraser v. Goodale*
    342 F.3d 1032 (9th Cir. 2003) .....................................................................29

*Gilmour v. Gates, McDonald & Co.*
  382 F.3d 1312 (11th Cir. 2004) ................................................................. 20-21

*Golez v. Kerry, Inc*
  2009 WL 192592 (N.D. Cal. Jan. 27, 2009) ................................................ 23

*Goodman v. Staples The Office Superstore, LLC*
  644 F.3d 817 (9th Cir. 2011) ....................................................................... 31

*Hayward v. Procunier*
  629 F.2d 599 (9th Cir. 1980) ............................................................... 13, 17

*In re Capacitors Antitrust Litig.*
  2017 WL 897340 (N.D. Cal. Mar. 7, 2017) ................................................ 24

*Jack v. Trans World Airlines, Inc.*
  854 F. Supp. 654 (N.D. Cal. 1994) ............................................................. 29

*Jayne v. Bosenko*
  2009 WL 4281995 (E.D. Cal. Nov. 23, 2009) ............................................. 15

*Jenkins v. Cnty. of Riverside*
  398 F.3d 10934 (9th Cir. 2005) ................................................................... 24

*Keenan v. Allan*
  91 F.3d 1275 (9th Cir. 1996) ....................................................................... 10

*Larkin v. Home Depot, Inc.*
  2015 WL 1049716 (N.D. Cal. Mar. 9, 2015) .............................................. 28

*LeMaire v. Maas*
  12 F.3d 1444 (9th Cir. 1993) ................................................................. 13, 14

*Lindner v. Meadow Gold Dairies, Inc.*
  249 F.R.D. 625 (D. Haw. 2008) .................................................................. 33

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000) ..................................................................... 14

*May v. Baldwin*
  109 F.3d 557 (9th Cir. 1997) ................................................................. 13, 14

*Nible v. Fink*
  2020 WL 6441117 (9th Cir. Nov. 3, 2020) .................................................. 21

*Norbert v. San Francisco Sheriff's Dep't*
  10 F.4th 918 (9th Cir. 2021) ............................................................... 13-14, 21

*Norbert v. San Francisco Sheriff's Dep't*
  2020 WL 8675997 (N.D. Cal. Jan. 31, 2020) ............................................. 21

*Norwood v. Vance*
591 F.3d 1062 (9th Cir. 2010) ...................................................................13, 16

*Nurre v. Whitehead*
580 F.3d 1087 (9th Cir. 2009) ...............................................................................21

*Olson v. Montana Rail Link, Inc.*
227 F.R.D. 550 (D. Mont. 2005) ..........................................................................31

*Oracle Am., Inc. v. Google Inc.*
2011 WL 5572835 (N.D. Cal. Nov. 15, 2011) .....................................................33

*Pierce v. Cnty. of Orange*
526 F.3d 1190 (9th Cir. 2008) .......................................................................12, 27

*Poot v. San Francisco County Sheriff's Dep't*
4:19-cv-02722-YGR (N.D. Cal. May 20, 2019)....................................................30

*Prock v. Warden*
2013 WL 5553349 (E.D. Cal. Oct. 8, 2013) .........................................................21

*Progressive Sols., Inc. v. Stanley*
2017 WL 8294287 (N.D. Cal. Dec. 12, 2017) ......................................................23

*Richards v. Combined Ins. Co.*
55 F.3d 247 (7th Cir. 1995) ...................................................................................10

*Richardson v. Runnels*
594 F.3d 666 (9th Cir. 2010) .........................................................................13, 16

*Rodriguez v. Walt Disney Parks and Resorts U.S., Inc.*,
2008 WL 3532906 (C.D. Cal., July 2, 2018).........................................................33

*Shorter v. Baca*
895 F.3d 1176 (9th Cir. 2018) ..................................................................11, 12, 19

*Spain v. Procunier*
600 F.2d 189 (9th Cir. 1979) .........................................................................12, 13

*Spinelli v. Gaughan*
12 F.3d 853 (9th Cir. 1993) ...................................................................................27

*Swi-Co Constr., Inc. v. Amco Ins. Co.*
2011 WL 13269710 (N.D. Cal. Sept. 19, 2011) ...................................................23

*Theoharis v. Rongen*
2014 WL 3563386 (W.D. Wash., July 18, 2014) ..................................................33

*Varela v. San Francisco City & Cnty.*
2007 WL 205069 (N.D. Cal. Jan. 25, 2007) .........................................................23

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011)............................................................................................24, 25

*Whitley v. Albers*
  475 U.S. 312 (1986)............................................................................................16

*Wilkins v. Gaddy*
  559 U.S. 34 (2010)..............................................................................................16

*Williamson v. Maciol*
  2021 WL 79168 (2nd Cir. Jan. 11, 2021) ...........................................................35

*Wright v. Kaiser Found. Hosps.*
  2021 WL 4097738 (N.D. Cal. Sept. 17, 2012) ....................................................24

*Yeti by Molly Ltd. v. Deckers Outdoor Corp.*
  259 F.3d 1101 (9th Cir. 2001) .............................................................................31

*Zinser v. Accufix Rsch. Inst., Inc.*
  253 F.3d 1180 (9th Cir. 2001) .............................................................................25

**Federal Statutes**
42 United States Code § 1983.................................................................................9

Federal Rule of Evidence Rule 401 ............................................................30, 32, 34

Federal Rule of Evidence Rule 402 ............................................................30, 32, 34

Federal Rule of Evidence Rule 403 ............................................................30, 32, 34

Federal Rules of Civil Procedure 12 ........................................................................23

Federal Rules of Civil Procedure 23(b)(2).............................................23, 24, 25, 27

Federal Rules of Civil Procedure 23(b)(3).........................................................23, 27

Federal Rules of Civil Procedure 26(a) ...................................................................31

Federal Rules of Civil Procedure 26(a)(2)..................................................31, 33, 34

Federal Rules of Civil Proceudre 26(b)(2)(C)(i) .....................................................32

Federal Rules of Civil Procedure 37(c) ...................................................................31

Federal Rules of Civil Procedure 37(c)(1) ...............................................................31

**State Statutes & Codes**
California Education Code § 461148........................................................................34

California Penal Code § 1320.18 .............................................................................18

**State Regulations**

California Code of Regulations, Title 24 § 1231.2.10........................................................4, 20, 21

**Constitutional Provisions**

California Constitution, art. I, § 7 ...................................................................................12

United States Constitution, 14th Amend. .............................................................. *passim*

Plaintiffs' filings do not dispute, or even engage with, the key facts Defendants presented in their motion. (ECF No. 259 ("Def. MSJ").) It remains undisputed that San Francisco County Jail 5 provides fresh air to inmates both inside the gym and through the building's HVAC system. It remains undisputed that County Jail 5 provides inmates access to sunlight through the grates in the gym and through the exterior windows in each cell. Because the cell doors are clear, the cell windows also provide access to sunlight and views of the outdoors when an inmate is using the pod's common areas. It remains undisputed that County Jail 5 provides recreation and exercise time to all pretrial inmates. County Jail 5 has and continues to provide sunlight, fresh air, and recreation while also protecting inmates from the individual and community risk of COVID-19. The evidence shows the jail's polices in response to COVID-19 were developed in consultation with the Department of Public Health and are dynamic, permitting out of cell and exercise time for inmates as the public health emergency evolved. Rather than engage with these undisputed, dispositive facts, Plaintiffs' Motion for Summary Judgment (ECF No. 273 ("Pl. MSJ")) and their Opposition to Defendants' Motion for Summary Judgment (ECF No. 266 ("Pl. Opp.")) instead ignore the facts presented and misstate the controlling case law.

Despite the more than one thousand pages attached to Plaintiffs' filings, their motion and opposition are based principally on Plaintiffs' own self-serving declarations. This incomplete, one-sided record strategically ignores extensive documentary evidence that disputes Plaintiffs' recollections and supports Defendants' position. In particular, Plaintiffs ignore the evidence of an inmate's opportunity to exercise in their cell separate and apart from their opportunity for exercise in the designated gym and ignore the very real public health risks COVID-19 posed in a jail setting. As described below, even when Plaintiffs do engage with the issues, Plaintiffs simply do not provide any competent evidence to establish the elements of their claims or to oppose Defendants' arguments, thus failing to carry their burden of production. These omissions are fatal to Plaintiffs' Fourteenth Amendment claims, their claims under the California Constitution, and their prayers for relief.

Plaintiffs' failure to carry their burden on factual issues aside, Plaintiffs' motion and opposition also fail in their legal analyses. Plaintiffs misstate what the Fourteenth Amendment requires in terms of exercise, recreation, and sunlight. Controlling case law permits the jail to meet its obligations in one

of two ways: by providing outdoor exercise space or by providing otherwise meaningful indoor recreation. None of the caselaw Plaintiffs cite shows that County Jail 5's opportunity for indoor recreation is so utterly inadequate that it falls short of the "meaningful" indoor recreation standard. To the contrary, the evidence shows each pod includes a gym and common areas and that inmates have access to fresh air and windows.

Contrary to Plaintiffs' formulation, there is no independent right to direct sunlight, and this factor is properly considered as part of the Court's analysis regarding whether indoor recreation is "meaningful." As is the case with County Jail 5, where inmates are afforded indoor recreation areas with fresh air directly from outside, and are provided cells with windows and an HVAC system that utilizes fresh air, those factors weigh in favor of finding that the various methods of indoor recreation provided by the jail satisfy the Fourteenth Amendment.

Plaintiffs also have no claim regarding an alleged violation under the California Building Code. Not only is no such claim alleged in the complaint, it is not cognizable under California law. Further, the state agency tasked with enforcing those regulations, the Bureau of State and Community Corrections ("BSCC"), audits County Jail 5 every two years and found the jail compliant with the building code provisions Plaintiffs present.

Finally, Plaintiffs have not substantively addressed the concerns Defendants raised with Plaintiffs' prayer for relief. Rather than engaging with Defendants' arguments and caselaw, Plaintiffs raise unsubstantiated procedural objections that cannot carry the day. Their opportunity to support their prayers for relief has passed. Plaintiffs did not raise this issue in their own motion and have already filed their sole reply to Defendants' motion. Accordingly, Defendants' motion for summary judgment should be granted in its entirety.

## STATEMENT OF FACTS

### A.    Plaintiff's Injuries Remain Unique and Particularized

Plaintiffs have utterly failed to provide competent evidence that the specific injuries claimed by individual Plaintiffs were caused either by denial of outdoor access or out-of-cell time. Plaintiffs do not dispute that the harm alleged by each of them is particularized and unique. (ECF Nos. 259-13 [Interrogatory No. 3]; 261-4 [Dr. Mathis Report] (reviewing individualized medical records of each

putative class representative).) Plaintiffs' five (5) experts with advanced medical training, had available to them thousands of pages of medical records for seven individuals. (ECF No. 196-1.) Beyond vaguely opining that a number of jail conditions (including unrelated sleep disruptions) may cause inmates harm, there is no opinion that specific medical conditions of particular individuals were caused by a lack of out-of-cell time or outdoor access let alone apportionment between outdoor access versus out-of-cell time or the myriad of other unrelated complaints like thin mattresses or nightly disturbances. This failure to provide evidence, to a reasonable degree of medical certainty, that the class-wide injuries Plaintiffs allege were caused by the conditions of confinement at issue in this case, and that those injuries would be remedied by the injunctive relief Plaintiffs request is, in and of itself, fatal to their case.

Plaintiff Armando Carlos, erroneously named in Plaintiffs' brief as Armando Castro, alleges that his skin has become transparent due to lack of light during his incarceration. (Pl. Opp. at 3:14-15.) In fact, Plaintiff Carlos' video-recorded deposition taken on November 22, 2021—nine years into his incarceration—shows his skin has maintained its pigmentation. (Berdux Decl. Ex. W.)

Similarly, Plaintiff Jose Poot declares under oath in a declaration attached to Plaintiffs' summary judgment papers that he has "lost all color in his skin." (Pl. Opp. at 3:16-17.) In fact, the videos of his depositions taken on January 1, 2022 and March 3, 2022, make abundantly clear that he too has maintained pigmentation in his skin. (Berdux Decl. Exs. X, Y.) The other Plaintiffs similarly do not provide competent or credible evidence linking their alleged ailments due to the challenged conditions of confinement.

### B.    County Jail 5 Exercise Space Exceeds Standards

For the first time in this litigation, at summary judgment, after three years of litigation and after the close of fact discovery, Plaintiffs complain that the gym space is too small for meaningful exercise. (Pl. MSJ at 10:19.) In support of this newly raised allegation, Plaintiffs rely on improper math. Plaintiffs' calculations are based on the false premise that all 768 inmates that may be housed at County Jail 5 use one gym in one pod. This is false. It is undisputed that each pod houses up to 48 inmates, and only those 48 inmates use the gym in the pod. It is also undisputed that each pod has its own gym.

Doing the math correctly, the exercise space required for 80 percent of 48 inmates over 10 hours per day, only requires 192 square feet of exercise area (48 inmates x 80% x 50 square feet / 10 hours = 192 square feet). The length of each gym measures 36 feet to the lavatory area and the width starts from fourteen feet and extends to over twenty-one feet. (ECF No. 42-1, Ex. A, Answer No. 31.) This exceeds the Title 24 standards.

Beyond these unfounded allegations using deceptive math, there is no evidence that the inmates' use of the gyms at County Jail 5 does not adequately allow them to engage in the large muscle activities required by any applicable standard.

Plaintiffs allege that Defendants do not comply with Title 24 Section 1231.2.10 (Exercise Area) requirements. However, Plaintiffs do not dispute that throughout the entirety of this litigation, BSCC, the entity charged with regulating jails in California, found that County Jail 5 met its requirements for recreation space, recreation time, and out-of-cell time including in findings from the biennial inspections conducted for the years 2016-2018 and 2018-2020. (ECF No. 259-11, 259-12, Exs. J and K.) These audits specifically address Title 24's requirements. There is no evidence that the exercise space, recreation time, or out-of-cell time at County Jail 5 ever failed a biennial BSCC inspection.

## C. Recreation and Out-of-Cell Time

Plaintiffs' evidence, including inmate declarations, do not dispute the adequacy of the Sheriff's Office's recreation policy and out-of-cell time policies. (ECF No. 259-8 [Custody Division Policy CDCM 7.13], ¶ 8.) Rather, the inmate declarations provided describe an evolving response to the various stages of the ongoing COVID-19 pandemic.

Plaintiff Montrial Brackens, who is housed in administrative segregation, confirms that he is "scheduled to get out one hour a day out of the cell…" (ECF No. 274-3, ¶¶ 2, 5.) Plaintiff Troy McAllister and witness Nicky Garcia confirm the current out-of-cell time for inmates in general population is two and a half hours per day, and inmates that are in educational or other programs have additional out of cell time for programming. (ECF No. 274-4 [McAllister Decl.] ¶ 2; No. 274 [Garcia Decl.] ¶ 10.)

The "lock downs," complained of by Plaintiffs that are either due to staff shortages "or something happening in the jail," do not negate the policy as currently practiced, which is that general population inmates are given out of cell time at least two and a half hours every day. (ECF No. 274-4 [McAllister Decl.] ¶ 2.)

Plaintiff Jose Poot confirmed that before the COVID-19 pandemic, the Sheriff's Office changed its out-of-cell policy to provide at least one hour of out-of-cell time every day for inmates housed in administrative segregation. (ECF No. 274-1 [Poot Decl.] ¶ 4.) He also confirmed that the current out-of-cell time for inmates in administrative segregation is one and a half hours every day. (*Id*. at ¶ 13.) Additionally, Mr. Poot confirmed that his English teacher has resumed coming to teach him since the COVID-19 pandemic initially suspended the program, further increasing his time out of his cell. (*Id*. at ¶ 20.)

Witness Joshua Beloy confirms the evolving nature of out-of-cell time to respond to the COVID-19 pandemic, confirming that one hour of out-of-cell time was increased to two and a half hours per day, before a COVID-19 outbreak during the summer of 2022 required further restrictions. (ECF No. 274-2 [Beloy Decl.] ¶ 3.) Beloy states that only allowing eight inmates in the gym at the same time prevents access by all inmates to use it, implying that more than eight inmates are out of their cells at the same time. However, he also confirmed the same declaration that that only four cells are given out of cell time at once, a maximum eight inmates. (ECF No. 274-2, ¶ 5, 18.) Thus, his declaration is internally inconsistent. When four cells holding up to eight inmates are released for out-of-cell time for two and a half hours, all eight inmates may all use the gym for exercise if they choose.

### D. Fresh Air & Natural Light

Plaintiffs do not dispute that the gym in each housing pod has an open window with a grate that allows unobstructed and unfiltered fresh air to enter the gym. (ECF No. 204 [Response No. 7]; ECF No. 271-2 [Photograph C].) Plaintiffs also do not dispute, and have provided no evidence, that contradicts the fresh air that is pumped into the housing units. (ECF No. 204 [Response 10].)

In a departure from their preliminary injunction allegations, Plaintiffs can no longer dispute that there is a window in each cell that provides a view to the outside and allows every inmate access to natural light. (*See e.g.,* ECF No. 128-3 [photographs of exterior window].) Plaintiffs do not dispute

that the windows allow inmates to observe the passage of time and observe the change from day to night. (*Id.*, ECF Nos. 259-4 [photographs], 259-15 [Brackens Dep. Tr.] at 82:22-23; 83:19-22; 259-16 [McAllister Dep. Tr.] at 204:12-205:25.) Although, in an effort to distract from the fundamental point, Plaintiffs take issue with the size of the window, the plumbing chase space between the cell window and the exterior window, the security striping, and the pleasantness of their view from the window, they cannot and do not dispute the key point that they unequivocally receive natural light.

Despite all of the voluminous briefing, at the end of the day there is no dispute that inmates receive fresh air and natural light as depicted in the photographs below:





E.      **COVID-19 and Its Effect on County Jail 5**

Plaintiffs do not dispute the danger of the COVID-19 pandemic, or that the jail is a congregate living setting, a fact that the Sheriff's Office had to consider and accommodate when implementing health protocols, or that COVID-19 protocols were implemented in the jail. In fact, Plaintiffs' expert, former Sheriff Ross Mirkarimi, confirmed that he does not have any criticism of the Sheriff's Office's COVID-19 protocols. (Berdux Decl. Ex. AD [Mirkarimi Dep. Tr.] at 86:17-19.) Plaintiffs do not dispute that the Sheriff's response to COVID resulted in a successful handling of COVID, likely saving the lives and health of many inmates.

What Plaintiffs do dispute is whether the safety measures that are ongoing remain necessary. However, Plaintiffs offer no medical or public health evidence whatsoever that the continuing

COVID-19 protocols and response to the ongoing pandemic are not necessitated by the ongoing public health emergency. None of Plaintiffs' five experts with advanced medical training have criticized the jail's policies and implementation of protocols to curb the spread of COVID-19 in jail. (ECF Nos. 275-1, 275-2, 275-3, 275-4, 275-5, 275-6, 275-7.) Plaintiffs rely on expert Ross Mirkarimi for this proposition. However, Mr. Mirkarimi is not a physician. It is telling that none of Plaintiffs' five medical professional experts have opined that COVID-19 protocols should be extinguished or that jail operations should return to "normal." (*Id*.)

There is no dispute that the Sheriff's Office, under the leadership of Sheriff Miyamoto, was in constant contact with the Public Health Department to respond to the ongoing changes that have occurred over the course of the pandemic. (ECF No. 259-9.)

In responding to the COVID-19 pandemic, Sheriff Miyamoto has to balance the "twin risks" of the virus itself and the mental health challenge to inmates. (Berdux Decl. AY, ECF No. 204-1 [Mirkarimi Decl.] ¶ 3.) He has done this throughout the pandemic and in collaboration with the Department of Public Health. (*Id*. ¶ 10.) The Sheriff's Office has had to comply with all of the public health orders that apply to San Francisco. (*Id*. ¶ 8) And as those public health orders have changed, so did the Sheriff's Office policies and procedures regarding recreation and out-of-cell time. (*Id*.) A year into the COVID-19 pandemic, the Sheriff's Office began efforts to return to a pre-pandemic "normal" and notified all custody staff of that intent on February 24, 2021. (ECF No. 206-1) Still, certain protocols have remained necessary on the advice of Jail Medical Services. (ECF No. 206-2.) Obviously, the course of the pandemic and the required responses to it have changed as new variants emerged. It is common knowledge that COVID-19 has caused serious and fatal harm in jails that did not take the pandemic seriously; it seems disingenuous for Plaintiffs to bring suit alleging that the Sheriff's Office did *too much* to protect them.

Plaintiffs seem to suggest that the COVID-19 protocols are being driven by staffing issues rather than the pandemic itself. To the extent Plaintiffs allege staffing allocation is improper, they have adduced no evidence of how staffing should be allocated. (ECF No. 275-8.) Plaintiffs' expert regarding jail operations, Ross Mirkarimi, fails to offer any solutions to the problems he perceives

occurring and fails to provide any evidence that the Sheriff's Office could, in fact, have reallocated staffing to address the harms alleged. (*Id*.)

Plaintiffs seem to allege that the public outside of jail has returned to "normal" but that the jail has not. Whether or not that is true (as courthouses and certain businesses continue to require masks and people choose to adhere to social distancing guidelines), County Jail 5 remains a congregant living setting that is unique with requirements that differ significantly from most non-incarcerated individuals' living situations. While Plaintiffs assert that vaccines are widely available, they neglect to acknowledge that the Sheriff's Office cannot mandate vaccinations of inmates as it has with its employees. (Berdux Decl. Ex. AY, ECF No. 204-1, ¶ 11.) Without the ability to ensure vaccination of the entire inmate population, inmates with significant health conditions, like Montrail Brackens with diabetes, remain at increased risk for developing complications from COVID-19. Were the Sheriff's Office to remove all restrictions and a vulnerable inmate contracted COVID-19, the Sheriff's Office would be facing a very different lawsuit under Section 1983. Plaintiffs' argument here appears to be that the Sheriff's Office has *overvalued* the health of vulnerable inmates. It does not state a cause of action.

As has been made clear, the Sheriff's Office is "constantly assessing and reassessing all aspects of our operating procedures…" (Berdux Decl. Ex. AY, ECF No. 204-1, ¶ 14.) The COVID-19 restrictions will be reduced and/or removed when appropriate for a congregant living situation with a highly vulnerable population in consultation with the Department of Public Health.

### F.    Plaintiffs' Miscellaneous Complaints Are Irrelevant

The various witness and Plaintiff declarations in support of Plaintiffs' pleadings include a number of complaints regarding the quality of food, having dirty or untidy cellmates, preferring to play soccer instead of basketball, and a number of other conditions they deem unpleasant. Defendants do not dispute that living in jail is not a pleasant experience. But food preferences, sports preferences, or cellmate preferences, simply do not give rise to Constitutional violations and are tangential, at best, to the claims Plaintiffs present.

1

### G.    Inmates Receive Treatment for Vitamin D Deficiencies

2

3        Plaintiffs do not dispute that inmates are screened for medical needs and pre-existing

4   conditions when they are brought into jail and housed. (ECF Nos. 259-14 [Dr. Pratt Decl.] 13; 259-10

5   [Pratt Dep. Tr.].) Plaintiffs also do not dispute that they are scheduled for ongoing medical care as

6   needed and are specifically screened and tested for Vitamin D deficiency if they are at high risk. (*Id.*)

7   And Plaintiffs do not dispute that Vitamin D supplements are administered in jail to treat a Vitamin D

8   deficiency, (*id.*), or that Vitamin D supplements are an effective treatment for Vitamin D deficiency.

9   (ECF No. 261-4 [Dr. Mathis Report].) Thus, to the extent Plaintiffs base a claim on Vitamin D, the

10  Sheriff's Office already has a protocol in place. Plaintiffs' failure to seek treatment or take the

11  necessary supplements is not the fault of the Sheriff's Office.

### ARGUMENT

12

### I.    The Court Should Not Permit Plaintiffs to Benefit from Their Tactical Decision to Attach More Than One Thousand Pages of Evidence They Do Not Cite in Their Motion or Opposition

13

14       At the outset, Defendants address the deluge of documents Plaintiffs submitted in support of

15  their filings yet did not cite in their motion or opposition. (ECF Nos. 283, 284.) Plaintiffs cannot get

16  by with minimal citations in their papers simply by attaching voluminous evidence to their motion and

17  putting the burden on Defendants and the Court to parse through those supporting documents to guess

18  at which facts Plaintiffs intended to rely on in their arguments. It is not the Court's task "to scour the

19  record in search of a genuine issue of triable fact" and the defense and court must be able to "rely on

20  the nonmoving party to identify with reasonable particularity the evidence that precludes summary

21  judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins.*

22  *Co*., 55 F.3d 247, 251 (7th Cir. 1995)); *see also Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d

23  1026, 1030 (9th Cir. 2001) (holding an attorney at summary judgment "may easily show a judge, in

24  the opposition, the evidence that the lawyer wants the judge to read," but it would be "absurdly

25  difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for

26  such evidence"). Plaintiffs have not met their burden to adequately identify the documents supporting

27  their positions and thus have failed their burden of production.

28

This is true for Plaintiffs' motion and opposition, but the prejudice to Defendants is especially significant with respect to Plaintiffs' opposition because, as discussed below, it is coupled with Plaintiffs' failure to address or attempt to distinguish the caselaw Defendants cited, thereby depriving Defendants of an opportunity to use this reply brief to meaningfully respond. It would be improper for Plaintiffs to now claim that somewhere buried in the thousand pages of exhibits submitted there was some uncited evidence that rebuts Defendants' arguments when Defendants no longer have the opportunity to respond.

## II.   Plaintiffs' Federal and State Law Claims Fail on The Merits

The Ninth Circuit held in in *Shorter v. Baca*, 895 F.3d 1176 (9th Cir. 2018), that a jail can provide "outdoor recreation opportunities, **or otherwise meaningful recreation**." *Id.* at 1185 (emphasis added). County Jail 5 provides such opportunities. Each county jail has a large space in each pod dedicated to recreation. (Berdux Decl. Ex. AJ, ECF No. 42-1 [Resp. to Court Questions] No. 31 [stating gym is 14 feet wide at its entrance and its width at the back of the basketball court is 21 feet two inches].) The gyms in each pod have grates on the ceiling that allow in fresh air and some direct light. (Berdux Decl. Ex. AX. ECF No. 204 [Answers to Court Questions], Resp. No. 7; ECF No. 271-2 [Photograph C].) Inmates also have access to fresh air and sunlight in their cells. *Shorter* makes clear that recreational facilities like those in County Jail 5, which include fresh air, a large exercise space, and natural light, are compliant with the Fourteenth Amendment.

Not only do Plaintiffs make no attempt to distinguish *Shorter* – the leading case in this Circuit on the subject at hand – they do not even cite the case in their motion or their opposition to Defendants' motion. Their failure to address, or engage with, controlling caselaw speaks volumes and shows why Defendants' motion should be granted and Plaintiffs' cross-motion should be denied.

As explained in detail below, a review of the caselaw Plaintiffs do cite shows their claims would stretch the Fourteenth Amendment far beyond the Ninth Circuit's rulings on this issue. There is no unequivocal right to outdoor recreation, especially where inmates have access to meaningful opportunities for indoor recreation via an indoor gym coupled with access to windows and fresh air in their cells. *Shorter*, 895 F.3d at 1185. There are also no cases showing a jail cannot implement temporary restrictions on recreation during a once-in-a-century pandemic spread by respiration. To the

extent the Fourteenth Amendment speaks to an inmate's access to sunlight, courts have interpreted the issue as a factor in the overall analysis of whether the inmate is provided otherwise meaningful opportunities for recreation, not as separate standalone constitutional right as Plaintiffs presents it. Realizing they cannot win under the law as it currently stands, Plaintiffs try to make new law out of whole cloth.

Plaintiffs' state law claims fare no better. First, as to Plaintiffs' claim under Article I Section 7 of the California Constitution, the parties agree this claim rises or falls with Plaintiffs' Fourteenth Amendment claim and it therefore fails for the reasons discussed above. Cal. Const. art. I, § 7. Second, Plaintiffs concede that their claim under Article I Section 17 is inappropriate given the class of pretrial detainees the Court certified. Cal. Const. art. I, § 17.

### A.    Plaintiffs' Fourteenth Amendment Claims Fail

#### 1.    County Jail 5 Provides Meaningful Opportunities for Recreation

The primary case Plaintiffs cite to support their papers is *Spain v. Procunier*, 600 F.2d 189 (9th Cir. 1979). In *Spain*, the Court declined to consider whether the deprivation of outdoor exercise is a per se constitutional violation, (*id*. at 189), a question the Court later addressed in *Shorter*, holding that it is not. *See also Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1212-1213 (9th Cir. 2008) (reaffirming *Spain's* holding that "we need not hold that there is a specific minimum amount of weekly exercise that must be afforded to detainees who spend the bulk of their time inside their cells").

*Spain* considered the appeal of an injunction issued after a 29-day trial, not summary judgment, and the court's order applied only to inmates assigned to the jail's adjustment center, not to the entire facility. The exercise opportunities made available to inmates in *Spain* were more much limited than what County Jail 5 provided prior to COVID-19. *Spain* involved a linear style jail where inmates were housed in cells, organized in blocks, with no shared common areas. "[F]or recreation the plaintiffs were permitted to exercise one at a time in a corridor fronting on eight or nine cells" and received recreation for less than one hour and less frequently than five days a week. *Spain*, 600 F.2d at 199. In contrast, inmates in County Jail 5 have a gym in each pod. Although the jail was required to suspend access to the gym in compliance with the Department of Public Health orders during COVID-19, the jail still managed to provide inmates with opportunities for exercise and recreation in their cells, and

1   moved aggressively to re-open the common areas of the pod to walk groups as soon as practicable.

2   Plaintiffs acknowledge that general population inmates are currently out of their cell for multiple hours

3   per day and have resumed access to programming opportunities that were paused during the early

4   months of COVID-19. (ECF No. 274-4 [McAllister Decl.], ¶ 2; No. 274 [Garcia Decl.] ¶ 10.) Plaintiff

5   Poot's own testimony also confirms that inmates in administrative segregation are out of their cells 90

6   minutes per day and have had their educational opportunities resume. (ECF No. 274-1 [Poot Decl.] ¶¶

7   13, 20.)

8        *Spain* also recognized that the jail's exercise requirements were dependent on the general

9   atmosphere of the inmate's confinement. The Ninth Circuit's holding was based on the fact that

10  prisoners were in continuous segregation, spending virtually 24 hours every day in their cells and were

11  without affirmative programs for training or rehabilitation. *Spain*, 600 F.2d at 199. County Jail 5, in

12  contrast, provides general population inmates with multiple hours of non-segregated pod time each

13  day and access to educational and rehabilitation programs, as well as recreational books and games

14  prior to COVID-19. (ECF No. 11 at 8:1-3 [citing ECF No. 11-2 ¶ 8]; ECF No. 259-17 [Harris Dep.

15  Tr.], 57:20-58:9; Berdux Decl. Ex. AV, ECF No. 198-16 [McConnell Decl.] ¶¶ 17-19.)  *Spain* did not

16  discuss whether the jail provided inmates with fresh air and/or the presence or absence of windows in

17  the jail. *Spain* is thus materially distinguishable.

18        Additionally, the cases Plaintiffs cite that refer to outdoor recreation, do not do so in contrast to

19  available indoor recreation in a gym and cells that have windows and fresh air. These cases all

20  consider recreation at a facility where the only recreation space is outdoors and therefore did not

21  address the question Plaintiffs present here: whether indoor recreation facilities can satisfy the

22  Fourteenth Amendment. *See LeMaire v. Maas*, 12 F.3d 1444 (9th Cir. 1993) (no indication that inmate

23  was given opportunity to exercise indoors but outside of his cell or that the court considered the

24  possibility that the inmate would be offered exercise in indoor locations with natural light and fresh

25  air); *May v. Baldwin*, 109 F.3d 557 (9th Cir. 1997) (court did not consider the distinction between

26  indoor and outdoor exercise; *Richardson v. Runnels*, 594 F.3d 666 (9th Cir. 2010) (no discussion of

27  outdoor versus indoor recreation); *Norwood v. Vance*, 591 F.3d 1062 (9th Cir. 2010) (same); *Hayward

28  v. Procunier*, 629 F.2d 599 (9th Cir. 1980) (same); *Norbert v. San Francisco Sheriff's Dep't*, 10 F.4th

918, 929-930 (9th Cir. 2021) (recognizing that in *Spain* "it is apparent that the prison in *Spain* did not have adequate indoor recreation options").

The cases Plaintiffs cite that do consider alternative exercise options (or the lack thereof), favor Defendants' summary judgment motion. For example, in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000), the plaintiff alleged prison officials violated his rights by denying him access to outdoor exercise during his recovery from an injury. Not only was there no discussion of indoor verses outdoor exercise, but the court noted that although the plaintiff was denied access to recreation to protect his own safety, there was no discussion of why he "was not given some other opportunity for outdoor exercise." *Id.* at 1133. San Francisco has made efforts to provide inmates in administrative segregation access to exercise opportunities even when it was not safe or appropriate for them to exercise in the same size exercise groups as inmates in the general population. Rather than withholding all exercise and recreation opportunities, the jail permits inmates in administrative segregation to use the common areas and gyms in smaller groups. (ECF No. 259-6 [McConnell Decl.] ¶ 6.) Their time is therefore necessarily more restricted than inmates in general population because what distinguishes inmates classified in general population from those classified in administrative segregation is that there are safety, security, and administrative concerns that prevent inmates in administrative segregations from congregating with other inmates in their pod. By providing inmates in administrative segregation access to some recreation time even if they cannot be afforded the same amount as inmates in general population, County Jail 5 does just what the Court in *Lopez* was searching for by creating "some other opportunity" for exercise and recreation even if it is not the same as inmates in general population. *Lopez*, 203 F.3d at 1133.

Still other cases Plaintiffs cite, such as *LeMaire* and *May*, are distinguishable because they concern plaintiffs who lost their recreation opportunities as part of a disciplinary process, not those housed in general population or administrative segregation. *Lemaire*, 12 F.3d at 1457 (inmate lost out-of-cell exercise privileges for disciplinary reasons); *May*, 109 F.3d at 565, 566 (ruling in favor of public entity on plaintiff's claim he was denied the opportunity to exercise while he was housed in disciplinary segregation). Additionally, *May* resolved in favor of the public entity, not the Plaintiff. *Id.* San Francisco County Jail does have a housing classification for inmates whose privileges are

withheld for disciplinary reasons: disciplinary segregation.  Plaintiffs' two sub-classes do not include inmates classified in disciplinary segregation. They include inmates housed in general population or administrative segregation, neither of which is a disciplinary placement. An administrative classification is not punishment. Instead, it accounts for the unique security and psychiatric needs require additional protection. (ECF No. 259-6 [McConnell Decl.] ¶ 8; ECF No. 259-24 [Garcia Decl.] ¶ 9.) Therefore, *LeMaire* and *May* do not support Plaintiffs' claims in this case.

The two district court cases Plaintiffs cite for this proposition fare no better. Both were decided before *Shorter* and did not have the benefit of the Ninth Circuit's holding regarding otherwise meaningful recreation. *Jayne v. Bosenko*, No. 2:08-cv-2767 MSB, 2009 WL 4281995 (E.D. Cal. Nov. 23, 2009); *Chappell v. Pliler,* No. 2:04-cv-1183 TLN DBP, 2017 WL 363002 (E.D. Cal. Jan. 24, 2017)*, report and recommendation adopted,* No. 2:04-CV-01183 TLN-DB, 2017 WL 784996 (E.D. Cal. Mar. 1, 2017). Plaintiffs also overlook that *Jayne* rejected the pretrial detainee's claim regarding the denial of natural sunlight where the jail had painted over his cell windows because he "does not allege the complete denial of light." *Jayne*, 2009 WL 4281995 at *8. The windows in San Francisco County Jail let in more natural light than the amount that the court accepted in *Jayne*. (ECF Nos. 259-3 [photos]; 259-4 [same]; 259-7 [same].)  And *Chappell* is silent regarding the type of recreation that is required. The court analyzed the length of recreation deprivation where the plaintiff's medical condition was affected by the deprivation, but the question before the court was one of access to any recreation, not outdoor recreation versus recreation in a gym. Additionally, in denying the defendants' summary judgment motion, the *Chapell* court noted that the defendants "make no attempt to argue" in response to the cases cited in the court's order. *Chappell*, 2017 WL 363002, at *14. Here, Defendants present just such argument that the cases Plaintiffs cite are distinguishable or misconstrued. Thus, *Chappell* should have no influence on this Court's analysis of whether recreation opportunities in San Francisco County Jail are constitutionally required to occur outdoors. On these facts, the cases Plaintiffs cite are insufficient to support their motion and favor Defendants' cross-motion.

///

///

///

2.   **Plaintiffs' Motion Ignores the Government's Legitimate Interest in County Jail 5's Policies, Including Preventing the Spread of COVID-19**

Plaintiffs ignore the repeated and weighty command that courts considering conditions of confinement cases should give sufficient deference to the particular expertise of jail administrators even where reminders of this deference appear in the cases Plaintiffs cite. For example, in *Richardson*, 594 F.3d 666, the plaintiff challenged his placement in administrative segregation and lockdown on several instances because of race-based violence in the jail. *Id*. at 669-670. The court confirmed that prison officials must be afforded deference in their decisions regarding lockdowns. *Id*. at 672 ("Indisputably, prison officials have, and must have, discretion to deal with disruption and they deserve deference in their exercise of discretion.") (internal citations omitted). *Norwood*, 591 F.3d 1062, fares no better for Plaintiffs because it resolved in favor of the correctional facility, reversing the denial of a jury instruction regarding deference to the prison officials. The plaintiff there challenged his confinement in his cell and suspension of normal programs, including a denial of exercise, for a period of months. *Id*. at 1065. The Ninth Circuit found that the trial court erred by refusing to give the jury an instruction regarding deference to prison officials holding that "[p]rison officials are entitled to deference whether a prisoner challenges excessive force or conditions of confinement. Indeed, conditions of confinement and use of force are often flip slides of the same coin: A more restrictive confinement may diminish the needs for force and vice versa." *Id*. at 1067 (internal citations omitted). Rather than remanding the matter for a new trial, the court resolved the claim in defendants' favor on the basis of qualified immunity.

These Ninth Circuit decisions are consistent with the Supreme Court's teachings. As the Court held in *Bell v. Wolfish,* 441 U.S. 520 (1979), "[The] problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions" and so administrators "should be accorded wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." *Id. at* 548. The Court reaffirmed this opinion several years later holding that neither a judge nor jury may "freely substitute their judgment for that of officials who have made a considered choice." *Whitley v. Albers*, 475 U.S. 312, 322 (1986), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).

The final case Plaintiffs cite in connection with their Fourteenth Amendment analysis, *Hayward,* 629 F.2d at 603, shows why Defendants' heightened government interest in the context of COVID-19 supports summary judgment in Defendants' favor. *Hayward* affirmed a denial of the inmate's recreation claims based on a five-month lockdown of his facility. In response to a series of violent attacks within the jail, administrators initially confined inmates to their cells 24 hours a day, and "[g]radually . . . the regimen was relaxed" with inmates receiving additional out-of-cell opportunities over time so that "[s]ome yard exercise was permitted within a month after the lockdown began, and the normal exercise routine was restored" within five months. *Id*. at 600. The court affirmed judgment in favor of the prison officials by relying on the language in *Spain* that permitted an exception to normal recreation time "unless inclement weather, unusual circumstances, or disciplinary needs made that impossible," holding the security needs of the prison "confronts [the court] with the unusual circumstances reserved in *Spain*; this lockdown was in response to a genuine emergency." *Id*. at 603.

The COVID-19 pandemic created a similar "unusual circumstance" that required the jail to modify its procedures in the name of inmate safety. Like in *Hayward*, the jail did not completely eliminate all out-of-cell time until the pandemic has passed. Instead, it flexibly eased its restrictions over time in response to the evolving medical understanding of COVID-19 and updated public health information. In addition to increasing inmates' out-of-cell and recreation time, the jail also worked to increase other avenues for stimulation, education, and connection.

Plaintiffs ignore the jail's policies designed to prevent the spread of COVID-19 and argue that the lockdown was in fact caused by staffing issues. (Pl. Opp. at 14:17-18:21.) This is a red herring. Defendants presented specific evidence from Sheriff Paul Miyamoto that the jail's policies in response to COVID-19 were driven by the "twin" risks posed to inmates from infection and mental health concerns. (Berdux Decl. Ex. AY, [Miyamoto Decl.] ¶¶ 3, 10, 17.) None of Plaintiffs' expert testimony criticizes Defendants' COVID-19 response from a public health perspective. The reality is that Defendants' quick and thoughtful responses to the pandemic likely saved lives. (ECF No. 259-19 [COVID-19 statistics].) Plaintiffs offer no evidence to dispute this. Plaintiffs' reference to staffing

issues cannot distract from, or change, the uncontroverted evidence regarding the public health concerns that animated the jail's policy changes during COVID-19.

While the class representatives make much of the length of time they have been incarcerated in County Jail 5, Plaintiffs ignore the fact that the length of their incarceration is a result of the decisions they made in their own criminal cases. The named Plaintiffs are outliers in terms of the length of their incarceration. As of October 2019, 35% of County Jail 5's population (or 191 inmates) had been housed longer than one year; 20% (111 inmates) had been housed longer than two years; 11% (61 inmates) had been housed longer than three years; and only 6% (33 inmates) had been housed longer than four years. (Berdux Decl. Ex. AJ [Resp. to Court Questions] Nos. 27-30.) The reason the named Plaintiffs have been incarcerated longer than average is because they have chosen, often repeatedly, to waive their speedy trial rights in their underlying criminal cases. (Berdux Decl. Ex. AC [Pl. Resp. to RFA No. 3].) The San Francisco County Jail is at the mercy of the criminal court. It only houses inmates when the criminal court orders an inmate detained pending trial. The SFSO has no control over how long an inmate will remain in their custody. That decision rests with the inmate who chooses whether or not to waive time in their criminal case. When a criminal trial concludes, the SFSO relies on the Court to either order an inmate released or order the SFSO to transfer them into the custody of a state or federal prison.[2] Under these circumstances, it would be inequitable to require the Sheriff's Office to alter the physical characteristics of its jail to accommodate inmates who voluntarily choose to waive time on their underlying criminal case, the resolution of which would either result in their

---

[2] During the time period at issue in this litigation, inmates charged with misdemeanors were rarely remanded into custody awaiting trial. *See* Cal. Penal Code § 1320.18 (permitting the court to detain an individual pending trial where: (1) the crime for which the person was arrested was a crime of violence, involved the use of a deadly weapon, or inflicted great bodily injury; (2) at the time of arrest the defendant was on postconviction supervision; (3) at the time of arrest the defendant was subject to a pending trial or sentencing on a felony matter; (4) the defendant intimidated or threatened retaliation against a witness or victim; or (5) there is "substantial reason to believe that no nonmonetary condition or combination of conditions of pretrial supervision will reasonably assure protection of the public or a victim, or the appearance of the defendant in court as required."); *see also In re Humphrey*, 11 Cal. 5th 135, 156 (2021) ("an arrestee may not be held in custody pending trial unless the court has made an individualized determination that (1) the arrestee has the financial ability to pay, but nonetheless failed to pay, the amount of bail the court finds reasonably necessary to protect compelling government interests; or (2) detention is necessary to protect victim or public safety, or ensure the defendant's appearance, and there is clear and convincing evidence that no less restrictive alternative will reasonably vindicate those interests").

release or transfer to a state prison, especially when the inmate has chosen to do so for a period of years.

### 3. There Is No Independent Right to Direct Sunlight Separate from the Right to Recreation[3]

Plaintiffs' motion seeks summary judgment as to the question of whether an inmate is required to "experience direct sunlight." (Pl. Mot. at 1-2, ¶¶ 6-7.) None of the cases Plaintiffs establish an independent right regarding sunlight outside the context of exercise and recreation, let alone the right to "direct sunlight" Plaintiffs assert. The Court should not invent one here, especially where Plaintiffs have not shown why access to direct sunlight unfiltered through a window is materially different than sunlight through a window in combination with fresh air. Plaintiffs are prohibited from arguing that jails must provide access to direct sunlight by letting inmates outdoors rather than through a window post-*Shorter* where the Ninth Circuit expressly acknowledges that jails can meet their Fourteenth Amendment obligations even where they have no outdoor facilities. *Shorter*, 895 F.3d at 1185. And Plaintiffs have presented no evidence of medical benefits they would experience from louvered windows that they do not experience through the windows in the pods.

Even if there were such a right to direct sunlight, Defendants provide inmates access to sunlight through the exterior windows in their cells. (ECF Nos. 259-4 [photos]; 259-7 [same].) Because the cell doors are clear, those windows are also visible in the pod common areas. (ECF No. 259-3 [photos of common area showing light from cell windows].)  Thus, at all times inmates are in their pod they can see windows to the outdoors. These windows are sufficient for inmates to see the passage of time, from day to night and to observe the scenery. (ECF No. 259-4 [photos]; 259-7 [same]; 259-15 [Brackens Dep. Tr.] at 82:22-23; 83:19-22; 259-16 [McAllister Dep. Tr.] at 204:12-205:25.) Accordingly, the Court should deny Plaintiffs' motion for summary judgment on these claims regarding a right to direct sunlight.

---

[3] Plaintiffs make no corollary claim regarding a right to fresh air and in any event, presented no evidence disputing that inmates have access to fresh air throughout the jail. (Berdux Decl. Ex. AJ [Resp. to Court Questions], Nos. 7, 10.)

1

2

**B.      Plaintiffs' Claims under Article I Section 7 of the California Constitution Fail for the Same Reason as Their Fourteenth Amendment Claims**

3

4

5

6

7

8

The parties agree that Plaintiffs' claims under the Article I Section 7 parallel their Fourteenth Amendment claims. (Pl. MSJ at 20:12-17.) Plaintiffs have not cited any additional facts or caselaw in support of their Article I Section 7 claim other than those discussed as part of their Fourteenth Amendment argument. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claims under Article I Section 7 of the California Constitution for the same reasons as they are entitled to summary judgment on Plaintiffs' Fourteenth Amendment claims.

9

10

**C.      Article I Section 17 of the California Constitution Does Not Apply to Pretrial Detainees**

11

12

13

Plaintiffs admit their claims under Article I Section 17 of the California Constitution should be dismissed because this provision applies only to convicted prisoners, not pretrial detainees. (Pl. Opp. at 22:9-14.) Defendants are therefore entitled to summary judgment on this claim.

14

**III.     Plaintiffs Cannot Request Summary Judgment for Issues Not Raised in Their Complaint**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Notice in support of their Motion for Summary Judgment seeks summary judgment as to nine topics. (Pl. MSJ at 1:8-2:12.) Topics 3 and 8 inappropriately seek summary judgment as to Defendants' alleged violation of the California Building Code ("Title 24 Section 1231.2.10") with regard to County Jail 5's gyms. There are no claims in the Complaint based on Title 24 Section 1231.2.10. Therefore, it is inappropriate for Plaintiffs to seek resolution of this issue through summary judgment. *See e.g., Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1292 (9th Cir. 2000) (agreeing with Third Circuit that "adding a new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability"); *De La Fuente v. Wyman,* No. C16-5801 BHS, 2018 WL 646958, at *7 (W.D. Wash. Jan. 31, 2018) ("The Court will not consider claims not raised in the complaint, nor does the Court have authority to grant leave to amend at summary judgment when a party has failed to either request it or show good cause for their delay in doing so."); *Cutrera v. Bd. of Supervisors of Louisiana State Univ*., 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court"); *Gilmour v. Gates,*

*McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

In addition to first alleging this issue at the summary judgment stage, Plaintiffs also seek to use Defendants' alleged violation of this California Building Code as evidence in support of their underlying Fourteenth Amendment claims. (*See* Pl. Opp. at 12:8-15:2.) As the Court has already ruled, this is improper; it would violate the well-settled principles of federalism and the Supremacy Clause to argue, as Plaintiffs do, that a BSCC requirement could set the boundaries of the rights and obligations set out in the federal constitution. *See e.g., Norbert v. San Francisco Sheriff's Dep't*, No. 19-CV-02724-SK, 2020 WL 8675997, at *20 (N.D. Cal. Jan. 31, 2020), *aff'd in part, appeal dismissed in part sub nom. Norbert v. City & Cnty. of San Francisco*, 10 F.4th 918 (holding "it is axiomatic that compliance with a state law or regulation does not necessarily equal compliance with the U.S. Constitution"). Courts in this district have also held that BSCC regulations do not create any protected liberty interest on the part of an inmate, let alone one that feeds into the Fourteenth Amendment. *See, e.g., id.*, at *24 (referring to Title 15 and holding "[t]he Court finds that the state regulation at issue does not create a liberty interest").

Even if such a claim had been alleged in the Complaint, which it was not, Plaintiffs have no right to seek relief under this provision because jail regulations like Title 15 and Title 24 do not create a private right of action. *See, e.g., Nible v. Fink*, 828 F. App'x. 463, 464 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *4 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred.")

Additionally, Defendants did not violate the cited regulation. Title 24 Section 1231.2.10 is administered by the BSCC. BSCC inspects jails every two years to determine their compliance with Title 24, including Section 1231.2.10. The results of the BSCC inspections from 2016 through 2020 show that the BSCC found the jail's gym to be compliant. (ECF Nos. 259-11, 259-12.) The 2016-2018

Inspection Report states as to County Jail 5, the facility at issue in this case, that Regarding Title 24: "Inspected against the 1999 Title 24 regulations, there were no non-compliance issues." (ECF No. 259-11 at 5, 52 [CCSF-Norbert_033725, CCSF-NORBERT_033772].) The 2019-2020 Inspection Report similarly found no Title 24 violations as to County Jail 5. (ECF No. 259-12 at 4, 141 [CCSF-Norbert_033817, CCSF-NORBERT_033954].) These reports confirm the declaration from Captain McConnell stating BSCC confirmed the jail complied with Title 24 including its regulations regarding the available size and nature of the jail's exercise facilities. (ECF No. 259-6 [McConnell Decl. ¶ 3].) In contrast, Plaintiffs have not cited any authority for their interpretation of Title 24 Section 1231.2.10 nor presented the Court with any BSCC audit holding that County Jail 5 was found to be out of compliance with the BSCC regulations. Accordingly, Plaintiffs have not met their burden to show they are entitled to summary judgment as to this issue even if it had been properly raised.

**IV.    Plaintiffs Do Not Substantively Oppose Defendants' Summary Judgment Motion with Respect to Plaintiffs' Prayers for Relief**

Defendants moved for summary judgment as to three categories of relief Plaintiffs sought in their complaint: compensatory damages, punitive damages, and injunctive relief in the form of an order requiring further medical care or modification to the Department of Public Health's policies and procedures regarding inmate healthcare. (Def. Mot. at 19:2-14.) Defendants have not sought summary judgment on Plaintiffs' remaining prayers for injunctive relief.

Plaintiffs' opposition on this point is concerned with form rather than substance. Plaintiffs argue Defendants' motion should be denied as to all three forms of relief because Defendants should have brought their arguments in a "Motion to Strike or some other direct challenge to the pleadings." (Pl. Opp. at 23:8-14.) This argument, which Plaintiffs do not attempt to support with caselaw, ignores the practices of this district, which show that summary judgment a proper avenue for challenging a plaintiff's prayer for relief. And more to the point, although Defendants' motion gave Plaintiffs fair notice of the merits of Defendants' arguments and the case law in support, Plaintiffs did not substantively oppose the motion nor did they make any attempt to distinguish the caselaw Defendants cited. They have thus forfeited any opposition, and summary judgment in favor of Defendants is appropriate.

Plaintiffs are incorrect that courts in this district do not consider challenges to a prayer for relief unless they are filed separately as a motion to strike. *See e.g., Swi-Co Constr., Inc. v. Amco Ins. Co.*, No. C 10-3122 PJH, 2011 WL 13269710, at *10 (N.D. Cal. Sept. 19, 2011) (granting summary judgment with respect to plaintiff's prayer for relief). Plaintiffs' suggestion that Defendants should have presented this issue with its Motion to Dismiss or in Opposition to Plaintiffs' Motion for a Preliminary Injunction ignores the fact that those motions apply different legal standards. Defendants' motion as to Plaintiffs' prayer for relief is now ripe for judicial consideration because Plaintiffs' prayers are not supported by the record adduced through the close of fact discovery, something that was not yet available when Defendants opposed Plaintiffs' Motion for a Preliminary Injunction in July of 2019 (Berdux Decl. Ex. AG, ECF No. 11) or when Defendants filed their Motion to Dismiss in August 2019. (Berdux Decl. Ex. AI, ECF No. 37). Thus, Rule 12 of the Federal Rules of Civil Procedure does not prohibit Defendants from raising the issue now. Plaintiffs also ignore that the class was not certified until July of 2022 (ECF No 238) and Defendants' arguments seeking summary judgment as to Plaintiffs' prayer for monetary relief is predicated on the injunctive relief class the Court ultimately certified under Rule 23(b)(2) rather than the Rule 23(b)(3) class Plaintiffs sought. Defendants therefore could not have raised this issue with the Court at the times Plaintiffs suggest.

If Plaintiffs were correct, no defendant could ever seek summary judgement as to a prayer for punitive damages where the original complaint alleged facts that would have supported the prayer, even if the evidence adduced through discovery unambiguously showed that those initial allegations were unsupported. This is not the case. Courts in this district regularly consider and grant summary judgment motions as to a plaintiff's prayer for relief. *See e.g., Progressive Sols., Inc. v. Stanley*, No. 16-CV-04805-SK, 2017 WL 8294287, at *10 (N.D. Cal. Dec. 12, 2017) (granting motion for partial summary judgment as to request for punitive damages); *Golez v. Kerry, Inc.,* No. C 07-05984 SI, 2009 WL 192592, at *2 (N.D. Cal. Jan. 27, 2009) (same); *Varela v. San Francisco City & Cnty.*, No. C 06-01841 WHA, 2007 WL 205069, at *1 (N.D. Cal. Jan. 25, 2007) (same). It is often the case, as is true here, that the facts which a defendant must accept as true on a motion to dismiss, are not borne out through discovery.

Plaintiffs should not be allowed to raise new arguments in their reply as to this issue. Plaintiffs have not moved for summary judgment on their prayers for relief and therefore are not entitled to raise arguments regarding this issue in their reply, which is the only briefing remaining on the cross-motions. "Raising new arguments in a reply brief is classic sandbagging, and the Court will not tolerate it." *Cal. Sportfishing Prot. All. v. Pac. States Indus. Inc.*, No. 15-cv-01482-JD, 2015 WL 5569073 , at *2 (N.D. Cal. Sept. 22, 2015); *see also In re Capacitors Antitrust Litig.,* No. 14-cv-03264-JD, 2017 WL 897340, at *2 (N.D. Cal. Mar. 7, 2017) (refusing to consider arguments raised for the first time in reply and rejecting argument that rather than rejecting previously undisclosed argument the Court should permit other party a further opportunity to respond); *Wright v. Kaiser Found. Hosps.*, No. C-12-00663 WHA, 2021 WL 4097738, at *2 (N.D. Cal. Sept. 17, 2012) (refusing to consider argument made for the first time in reply). It would therefore be inappropriate and prejudicial for Plaintiffs to use their pending reply in support of their affirmative motion to raise issues or arguments that should have properly been presented in their opposition to Defendants' motion, and even more inappropriate to claim that an issue was raised by burying it within a thousand pages of exhibits. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (holding that a plaintiff abandons claims by not raising them in an opposition to a motion for summary judgment).

### A.    The Court Should Strike Plaintiffs' Prayer for Monetary Damages

Plaintiffs admit, as they must, that their California Constitutional claims cannot support a claim for monetary damages. Plaintiffs argue that monetary damages are nevertheless appropriate in this case because they can be recoverable in a federal civil rights action. Their argument is true as far as it goes. But the issue here is not whether monetary relief is ever appropriate in a federal civil rights action, but whether monetary relief is appropriate for a class certified as an injunctive relief class under Rule 23(b)(2) of the Federal Rules of Civil Procedure.[4] Plaintiffs sought certification under both

---

[4] Plaintiffs appear to have relinquished any claim for monetary damages in this case through their opposition to the motion to relate cases filed after their opposition to Defendants' motion for summary judgment. (ECF No. 290.) In opposing the motion to relate, Plaintiffs argue relation is inappropriate because the Vincent action seeks monetary damages while the Norbert class is "seeking injunctive relief on behalf of a class." (*Id*. at 3:5-8.) Plaintiffs also incorrectly argue that Vincent could opt-out of the Norbert class. (*Id*. at 3:9-15.) While putative class members have the right to opt-out of a Rule 23(b)(3) class, there is no right to opt-out of a Rule 23(b)(2) class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3) class" because "[t]he procedural protections attending the (b)(3) class" including "the right to

Rule 23(b)(2) and (b)(3), but after the Court denied Plaintiffs' motion (Berdux Decl. Ex. AZ, ECF No. 228 [Minute entry]), the class was only certified under Rule 23(b)(2). (Berdux Decl. Ex BA, ECF No. 238 [Court Order].)

The law is clear that certification under Rule 23(b)(2) limits the relief available to class members. Claims for monetary relief cannot proceed under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). This is a fair bargain. In exchange for limiting their prayers for relief as part of a Rule 23(b)(2) class, plaintiffs seeking class certification under this rule do not have to satisfy the rigorous predominance requirement of Rule 23(b)(3)—a requirement the Court already held Plaintiffs failed to meet in this case when it denied Plaintiffs' motion for class certification. (Berdux Decl. Ex. AZ, ECF No. 228.)

Assigning monetary damages to class members in this case would require an individualized assessment for each class member because whether each class member was entitled to money damages, and if so how much, would depend on how, if at all, that individual was physically impacted by the conditions of confinement at issue. Those are inherently individualized determinations that would require careful review of each class member's medical records by competing physicians. *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (holding Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages"); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011) (vacating district court class certification order that did not focus on whether the class would require "individualized determinations of each employee's eligibility for [monetary damages]"); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1196 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (affirming rejection of Rule 23(b)(2) certification where plaintiffs sought "the establishment of a reserve fund for past and future damages, compensation for future medical treatment, plus other compensatory and punitive damages").

---

opt out—are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*") (emphasis in original).

Plaintiffs state—without any citation to the record—that "through their own testimony and that of the expert witnesses retained on their behalf, they have demonstrated that there is a genuine issue of material fact as to physical and emotional damages caused by the actions of Defendants." (Pl. Opp. at 23:5-7.) As noted above, it would be impossible for Defendants to intuit what Plaintiffs intended to reference here without any specific page reference to Plaintiffs' more than one thousand pages of exhibits. But such review of their filings is unnecessary because even if there were an issue of fact as to the physical and emotional damages the alleged conditions of confinement caused some class members, that is not enough to prevent summary judgment in favor of Defendants since Plaintiffs have not shown each alleged class member suffered an identical compensable injury incidental to the injunctive relief sought. Even among the named Plaintiffs, their discovery responses identify very different *alleged* physical injuries, putting aside the question of whether the Plaintiffs actually suffered any of the alleged injuries and whether any of the alleged injuries could potentially be caused by the alleged harms and would be remedied by the injunctive relief Plaintiffs seek:

| Kenyon Norbert | Depression, lack of energy, lack of motivation, frequent headaches, total lack of color in the skin, skin discoloration, body physical pains, blood sugar irregularities including pre-diabetes, circulatory and cardiovascular impairment, feet swelling, inability to fall asleep, inability to stay asleep, frequently waking up, tired all the time, misunderstanding other people's communications, poor communication with others. |
| --- | --- |
| Troy McAllister | NONE IDENTIFIED |
| Marshall Harris | Low in Vitamin D, inflammation, infections, low energy, no motivation, lack of curiosity, feeling bad, swelling in urethra. |
| Armando Carlos | NONE IDENTIFIED |
| Montrail Brackens | Diabetes, depression, lack of energy, lack of motivation, frequent headaches, total lack of color in the skin, skin discoloration, inability to fall asleep, inability to stay asleep, frequently waking up, tired all the time, misunderstanding other people's communications, poor communication with others. |
| Michael Brown | Depressed, can't think clearly, skin breaking out, getting rashes (due to lack of sunshine, skin feels unhealthy), headaches, vision blurry, hands numb, always in pain, can't sleep. |

| Jose Poot | Depression, lack of energy, lack of motivation, frequent headaches, total lack of color in the skin, skin appears translucent, tired all the time, irritability, misunderstanding other people's communications, poor communication with others, hard to mentally focus and think, increased memory loss. |
|---|---|

(ECF No. 259-13, Berdux Decl. Ex. L [Plaintiffs' Resp. to Special Interrogatories] No. 3.) This is exactly the type of individualized damages inquiry that Rule 23(b)(2) does not permit. Plaintiffs did not bring a mass action. They cannot convert their class action into one now.

Plaintiffs also have not responded to any of the caselaw Defendants cited showing that claims for monetary relief would not be appropriate on the specific circumstances of this case. (Def. MSJ at 19:15-21:21). This includes *Pierce*, 526 F.3d 1190, where the court addressed a nearly identical situation and permitted the case to proceed only as to class-wide injunctive relief and not individualized claims for monetary damages. Plaintiffs made no attempt to distinguish this case at all and simply ignored it in their opposition.

As a last-ditch attempt to implore the Court to ignore Defendants' meritorious arguments for summary judgment as to Plaintiffs' prayer for monetary relief, Plaintiffs argue that Defendants should not be permitted to raise this argument because their answer "does not challenge Plaintiffs' right to seek compensatory damages." (Pl. Opp. at 23:23-25.) Defendants were not required to do so. Plaintiffs' failure to prove they are entitled to compensatory damages is not an affirmative defense that Defendants would have needed to plead, especially where Defendants' prayer for relief in their answer stated Defendants pray "[t]hat plaintiffs take nothing from defendants." (Berdux Decl. Ex. AM, ECF No. 125 [Defendants' Answer] at 21.) The basis for Defendants' motion is the fact that the class was ultimately certified under Rule 23(b)(2) rather than Rule 23(b)(3). That certification did not happen until years after Defendants answered the Complaint on February 26, 2020. Accordingly, Plaintiffs' procedural argument is without merit.

There is considerable reason for the Court to resolve this question at the summary judgment stage. If Plaintiffs' only remaining claims are those seeking injunctive relief, they have no right to a jury trial. *Spinelli v. Gaughan*, 12 F.3d 853, 858 (9th Cir. 1993) (affirming that for an equitable right "a jury trial was not required"). Thus, resolution of this issue will substantially shape the

administrative and logistical issues for the Court and the parties to the extent any portion of Plaintiffs'

claims proceed to trial.

**B.     The Court Should Strike Plaintiffs' Prayer for Punitive Damages**

Defendants demonstrated, and Plaintiffs did not contest, that an additional showing above and

beyond what is necessary to state a Fourteenth Amendment claim is required to demonstrate that

Plaintiffs are entitled to punitive damages. *See Larkin v. Home Depot, Inc.*, No. 13-CV-2868-LB, 2015

WL 1049716, at *1 (N.D. Cal. Mar. 9, 2015) (granting summary judgment as to punitive damages

claims even where it was denied as to underlying causes of action because "[f]rom a decision that the

plaintiff adduced sufficient proof to withstand summary judgment on basic liability, it does not follow

that he adduced sufficient proof to warrant submitting his punitive-damages request to a jury").

However, aside from their procedural objections discredited above, Plaintiffs did not make any

argument as to why their claim for punitive damages should go forward. (*See* Pl. Opp. at 22:15-24:11.)

Defendants met their initial burden by "showing—that is, point[ing] out to the district court—that

there is an absence of evidence to support" Plaintiffs' prayer for punitive damages and it was then

Plaintiffs' obligation to "go beyond the pleadings and identify facts which show a genuine issue for

trial). *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (internal

citations omitted).

Plaintiffs failed to make any attempt to show how they might be entitled to punitive damages

as part of their opposition briefing. Therefore, summary judgment in favor of Defendants as to

Plaintiffs' prayer for punitive damages is appropriate.

**C.     The Court Should Strike Plaintiffs' Prayer for Injunctive Relief as to the San Francisco Department of Public Health**

Plaintiffs' opposition to Defendants' motion for summary judgment as to Plaintiffs' prayer for

injunctive relief regarding medical care meets the same fate. Other than the procedural objections

disposed of above and the conclusory statement that "the record in this case dating from the

submission of Plaintiffs' successful Motion for Preliminary Injunction has documented that the

Defendants and the Department of Public Health are not providing adequate medical care to inmates,"

(Pl. Opp. at 24:8-11), Plaintiffs did not provide any citation to support their opposition:[5] no declaration, no deposition transcript, no document. This is a significant omission given that the jail's medical policies were produced in discovery and Plaintiffs deposed the Director of Jail Health, Dr. Lisa Pratt. The legal standard for summary judgment is clear. Once Defendants raised the argument that there was a lack of evidence to support Plaintiffs' prayer, it was Plaintiffs' affirmative obligation to point to sufficient facts to create a genuine issue as to the question of whether or not County Jail 5's medical practices meet the standards set by the Fourteenth Amendment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is appropriate where a party opposing summary judgment "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Not only did Plaintiffs fail to meet this burden, they failed to even try. This case has always concerned County Jail 5's policies for exercise and recreation. There is no place for Plaintiffs' prayer for injunctive relief in the form of modifications to the jail's medical policies and as such, Defendants are entitled to summary judgment on these prayers for relief.

## V.    Plaintiffs' Evidentiary Objections are Without Merit

Plaintiffs' objection to Paragraph 3 in Captain McConnell's declaration regarding the BSCC's inspection of the jail's compliance with Titles 15 and 24 should be overruled. (Pl. Opp. at 24:12-19.) First, Plaintiffs ignore that "[a]t the summary judgment stage, [the court] do[es] not focus on the admissibility of the evidence's form" and instead "focus[es] on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Jack v. Trans World Airlines, Inc*., 854 F. Supp. 654, 658 (N.D. Cal. 1994) (permitting parties to rely on "an unsworn declaration made under penalty of perjury" to support a summary judgment motion). Plaintiffs' dispute is about the form in which Defendants submitted its evidence, Captain McConnell's declaration, not the admissibility of the underlying content of his declaration if submitted in a different form.

---

[5] The only reference to medical care in Plaintiffs' Opposition is the testimony of Dr. Bernstein and Mr. Fogarty regarding Mr. Brackens (Pl. Opp. at 8:6-28), but even if credited, this testimony as to Plaintiff Brackens cannot support the class-wide injunctive relief Plaintiffs seek.

Second, Captain McConnell's declaration is supported by Inspection Reports from the BSCC submitted with Defendants' motion. (ECF Nos. 259-11, 259-12.) As discussed in more detail above in Section III, these Inspection Reports, to which Plaintiffs raised no evidentiary objection, show that the jail complied with each of the BSCC's inspection criteria regarding Title 1231.2.10. Plaintiffs have not produced any contrary BSCC reports. Therefore, the Court can and should consider Captain McConnell's declaration in ruling on Defendants' motion.

## VI.   Objections to Plaintiffs' Evidence

### A.   The Opinions of Dr. Charles Czeisler Must Be Excluded[6]

#### 1.   Dr. Czeisler's Opinions Are Irrelevant

The opinions of Dr. Czeisler should be excluded under Federal Rule of Evidence Rules 401, 402, and 403. In opposing Defendants' motion and bringing their own, Plaintiffs rely on six opinions of Dr. Czeisler. (ECF No. 266, at 12:2-13:7; ECF No. 273, at 10:17-21.) The subject matter of those opinions, numbered two through six, relate to noise and disturbances at night, ambient temperatures in cells, improper sleep surfaces, meal timing and nutritional content of meals, and opining that these conditions are adverse to health. (*Id.*) These are not issues in this case. Rather, Plaintiffs' counsel (and one of Plaintiffs here) filed an entirely different lawsuit regarding sleep conditions, including issues regarding the amount of time of light at night, the jail's lighting schedule, sleep disruptions or disturbances, timing of breakfast, timing of diabetic testing, and sleep deprivation. *Poot v. San Francisco County Sheriff's Dep't*, Case No. 4:19-cv-02722-YGR (N.D. Cal. May 20, 2019).

Plaintiffs' Complaint, and the current class certification, encompasses conditions regarding a lack of outdoor access and excessive time in cells. (ECF Nos. 1, 238.) These are patently separate issues.

Dr. Czeisler's opinions regarding sleep disturbances, meals, and other jail conditions that are not outdoor access or out-of-cell time are simply irrelevant; they are related to an entirely different case brought by Plaintiffs' counsel. They should be excluded.

---

[6] To the extent any portion of Plaintiffs' claims survive, Defendants intend to present full Daubert motions, motions in limine, or motions to strike and/or exclude testimony from many of Plaintiffs' disclosed experts. However, Defendants additionally raise concerns with these expert's testimony here given that Plaintiffs rely on them in support of their summary judgment filings.

## 2.    Dr. Czeisler's Second Report Is Untimely

Dr. Czeisler's second report must be excluded from any consideration. Rule 26(a)(2). Rule 37(c)(1) provides that failure to comply with Rule 26(a) or a scheduling order—e.g., untimely, inadequate, or otherwise improper expert disclosures—precludes the use of the expert information at issue "to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c). That is, "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Olson v. Montana Rail Link, Inc*., 227 F.R.D. 550, 552 (D. Mont. 2005). Rule 37(c)(1) "is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011), *superseded by statute on other grounds as recognized in Dixon v. Legacy Transp. Sys., LLC*, No. 2:15-cv-01359-JAD-PAL, 2017 WL 4004412, at *7–8 (D. Nev. Sept. 11, 2017).

Plaintiffs rely on two reports of Dr. Czeisler. However, Dr. Czeisler's second report is exceptionally untimely. After a number of extensions, expert reports were due to be exchanged on September 2, 2022. (ECF Nos. 241, 254.) Rebuttal reports were due on October 7, 2022. (*Id.*) Dr. Czeisler's second report was not completed until October 31, 2022. (ECF No. 275-2.) It must thus be excluded.

## 3.    Dr. Czeisler's Report Is Based on Information Obtained in Violation of Court Orders

Dr. Czeisler formed his opinions based on gathered data that included "Coded Psychological data collected from inmates," "Coded data on SSFCS inmates (8-31-22)," "Coded data on SFCJ inmates, (Revised 9-2-22)," "Interview Questions & Surveys," and "Coded psychological data file on inmates." (ECF No. 275-1, at 6-7.) Dr. Czeisler confirmed that he received interview results conducted by Julianna Di Miceli, a student in psychology. (*Id*. at 70.) This data collection was conducted after and in violation of multiple express orders from this Court. (Berdux Decl. Ex. AK, ECF No. 107; Berdux Decl. AF, ECF No. 251.) Plaintiffs brought motions to compel psychological examinations of Plaintiffs but failed to comply with supplying further information necessary for the Court to evaluate the usefulness of the information to be obtained, ensure the inmates privacy, and ensure Defendants

1    had adequate opportunity to investigate and defend against the results of the date, if needed. (*Id.*)

2    Plaintiffs simply went forth with the data collection, and then gave that data to their experts.

3    **B.    Opinions of Dr. Robert M. Bernstein and Lucas Fogarty Must Be Excluded**

4    **1.    Dr. Bernstein and Fogarty's Opinions are Irrelevant**

5            The opinions of Dr. Bernstein and Fogarty should be excluded under Federal Rule of Evidence

6    Rules 401, 402, and 403. In opposition to Defendants' motion, Plaintiffs rely on three opinions of Dr.

7    Bernstein. Each of those three opinions relate to the medical treatment administered to Plaintiff

8    Montrail Brackens in jail, or the alleged lack thereof. (ECF No. 266, at 14:12-23.) Specifically, Dr.

9    Bernstein opines that Mr. Brackens has not received appropriate medical care in jail, that he has an

10   early indicator of kidney damage that could have been delayed or prevented with treatment, and that

11   the serious complications from diabetes can be prevented with early treatment. (*Id.*) None of these

12   relate to the outdoor exercise claims in this case. Similarly, Mr. Fogarty's opinion that Mr. Brackens

13   has not received appropriate medical care for his diabetes is not an issue in this case. (ECF No. 266, at

14   14:27-28.)

15           Plaintiffs have asserted no claim that the medical treatment offered in jail is insufficient,

16   improper, or constitutes any constitutional violation. (ECF No. 1.) There has been no discovery

17   regarding the adequacy of medical treatment in jail because it was never raised as a claim in this

18   lawsuit. (*Id.*)

19           Of note, Dr. Bernstein does not opine that outdoor access or out of cell time caused Mr.

20   Brackens diabetes, or the current status thereof. (ECF Nos. 267-1; 283 at 1086-1091.) Thus, his

21   opinions are irrelevant to the questions at issue in this case.

22   **2.    Dr. Bernstein and Fogarty's Opinions are Duplicative and Cumulative**

23           Dr. Bernstein's and Mr. Fogarty's opinions must be excluded under Rule 403. The Court has

24   authority to limit the extent of discovery otherwise allowed by federal or local rules if "the discovery

25   sought is unreasonably cumulative or duplicative. . ." Fed. R. Civ. P. 26(b)(2)(C)(i).

26           In opposition to Defendants' motion, Plaintiffs rely on Mr. Fogarty's opinion that "the San

27   Francisco Sheriff's Department has not provided Plaintiff Montrail Brackens with appropriate

28

treatment and care for his diabetes." (ECF No. 266 at 14:27-28.) This is identical to the opinion of Dr. Bernstein. (*Id*. at 14:12-14.) These experts' testimony is needlessly cumulative of one another.

### 3.     Dr. Bernstein and Fogarty's Opinions Cannot Be Used To Support Plaintiffs' Case-In-Chief

If Plaintiffs sought to relate any diagnosis of diabetes to the conditions of confinement, such evidence, reports, and opinions must have been disclosed as part of expert disclosures exchanged on September 2, 2022. Fed. R. Civ. P. 26(a)(2). Dr. Robert M. Bernstein and Lucas Fogarty were disclosed as rebuttal experts and submitted rebuttal reports. (Berdux Decl. Ex. Z; ECF No. 275-7 [Fogarty Report]; ECF No. 276-5 [Bernstein Report].) Plaintiffs may not rely on these experts to support a motion for summary judgment. Rebuttal experts may not testify in their parties' case-in-chief. *See, e.g., Lindner v. Meadow Gold Dairies, Inc*., 249 F.R.D. 625, 636 (D. Haw. 2008); *see also Oracle Am., Inc. v. Google Inc*., No. C 10-03561 WHA, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011) ("A party with the burden of proof on an issue should not be allowed to secretly prepare an army of "rebuttal" experts to attack the opposition reports"); *Rodriguez v. Walt Disney Parks and Resorts U.S., Inc*., Case No. 8:17-cv-01314-JLS-JDEx, 2018 WL 3532906, at *1 (C.D. Cal., July 2, 2018). A rebuttal report cannot be used to establish Plaintiffs' case-in-chief, and a rebuttal expert may only testify after an opposing expert has testified. *Danganan v. Am. Family Mutual Ins. Co.,* Case No. 2:17-cv-02786-RFB-PAL, 2018 WL 3660198, at *1 (D. Nev., Aug. 2, 2018). At a bare minimum, a rebuttal expert cannot offer testimony unless the expert whom she rebuts has offered testimony. *Theoharis v. Rongen,* No. C13–1345RAJ*,* 2014 WL 3563386, at *3 (W.D. Wash., July 18, 2014).

### C.     Any and All Opinions of Dr. Jamie Zeitzer Must Be Excluded Because No Opinions of Dr. Jaime Zeitzer Were Disclosed in Expert Discovery

In their underlying motion for summary judgment and opposition to Defendants' motion for summary judgment, Plaintiffs rely on a declaration provided by Dr. Jamie Zeitzer more than three years ago. (Pl. Opp. at 13:13-23; Pl. MSJ at 10:22-11:3; 22:3-19.) However, Dr. Zeitzer's expert report does not contain any opinions. (Berdux Decl. Ex. AA; ECF Nos. 275-5 [light readings], 275-6 [Zeitzer

CV].) Plaintiffs submitted new expert opinions of Dr. Zeitzer for the first time in their Opposition. (Berdux Decl. Ex. AA, ECF No. 267-5 [Zeitzer Decl.].)

Dr. Zeitzer confirmed in deposition that he does not intend to offer any opinions at trial. (Berdux Decl. Ex. AB [Zeitzer Dep. Tr.] at 17:1-25.) When asked in deposition regarding the effects of the lighting in jail on human biology, Dr. Zeitzer confirmed he would not be offering those opinions at trial. (*Id*., at 61:18-63:19.) Accordingly, any opinion testimony by Dr. Zeitzer must be excluded for purposes of considering Plaintiffs' motion or opposition. Fed. R. Civ. P. 26(a)(2). Dr. Zeitzer was first contacted to work on this case in 2018. (Berdux Decl. Ex. AB [Zeitzer Dep. Tr.] at 13:16-23.) Obviously, Plaintiffs had the opportunity to disclose the opinions from Dr. Zeitzer that they intend to use and offer. They simply did not.

### D. Plaintiffs' Evidence Regarding the California Education Code Must Be Excluded

Plaintiffs' reliance on California Education Code section 461148 must be excluded under Federal Rules of Evidence Rules 401, 402, and 403. Plaintiffs are not adolescents, Plaintiffs are not students, and the living circumstances for students are entirely different. Plaintiffs' rationale is based on hearsay and political arguments. No expert in this case has relied upon the California Education Code.

### VII. Plaintiffs' Request for a Continuance Is Unsupported

Plaintiffs seek leave to supplement their opposition with additional information to be obtained at a later date. (Pl. Opp. at 24:21-25:4.) The request should be denied because Plaintiffs never raised a concern with Defendants that the deposition schedule for expert discovery would preclude them from completing any necessary discovery prior to filing their motion for summary judgment, and Plaintiffs have not shown why they were unable to obtain any necessary evidence through a declaration. As an example, Plaintiffs state they "will seek leave of the Court to supplement this Opposition with excerpts from Mr. Lomba's deposition once the transcript is available," (Pl. Opp. at 17 at fn. 3; *see also* 17:14 ("Mr. Lomba's testimony at deposition is expected to be"; 17:20 ("Mr. Lomba is expected to testify"; 18:2 (same)), but Mr. Lomba is Plaintiffs' disclosed expert. If Plaintiffs needed information from Mr. Lomba to support their opposition, they were free to contact him and request a declaration. They did not. This is no basis to permit Plaintiffs a second bite at the summary judgment apple.

1    Plaintiffs' request should also be viewed in context. Plaintiffs also have a track record of

2    requesting sur-replies and additional briefing opportunities in this case. No such modification is

3    required here. Plaintiffs' request for additional time ignores that Defendants' summary judgment

4    motion was due two weeks before Plaintiffs' filings, which means that to the extent there was any

5    prejudice from the parties not having the opportunity to complete expert discovery before their cross-

6    motions for summary judgment filing deadlines, Defendants felt the strain more acutely. Therefore,

7    the Court should decline Plaintiffs' invitation to drag out the summary judgment briefing on this

8    matter any further, but to the extent the Court is inclined to provide Plaintiffs an opportunity for

9    further briefing, it should provide Defendants the same.

10                                          **CONCLUSION**

11    "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and

12    the commitment of resources; absent substantial evidence to the contrary, courts should defer to prison

13    officials' judgment regarding prison security and administration." *Barnett v. Medina*, No. C 07-04071

14    CW (PR), 2008 WL 2128204, at *2 (N.D. Cal. May 20, 2008) (internal citations omitted). "Congress

15    has specifically instructed federal courts to be highly conscious of the unique security needs of prisons

16    and, accordingly, to be deferential to the judgment of administrators who have unique expertise."

17    *Williamson v. Maciol*, 839 F. App'x 633, 638 (2d Cir. 2021). For the foregoing reasons, County Jail

18    5's exercise and recreation opportunities, including inmate access to fresh air and sunlight,

19    ///

20    ///

21    ///

22

23

24

25

26

27

28

1  exceed the constitutional and state law requirements. Summary judgment in favor of Defendants is

2  therefore appropriate.

3  Dated:  November 21, 2022

4                                                          DAVID CHIU
                                                           City Attorney
5                                                          MEREDITH B. OSBORN
                                                           Chief Trial Deputy
6                                                          SABRINA M. BERDUX
                                                           KAITLYN MURPHY
7                                                          Deputy City Attorneys

8                                                   By:*/s/ Sabrina M. Berdux*_____
9                                                          SABRINA M. BERDUX

10                                                         Attorneys for Defendants
                                                          CITY AND COUNTY OF SAN FRANCISCO and
11                                                        VICKI HENNESSY, IN HER OFFICIAL CAPACITY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28