1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICE OF YOLANDA HUANG**
Yolanda Huang, SBN 104543
PO Box 5475
Oakland, CA 94605
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

**GREENFIRE LAW, PC**
Rachel Doughty, SBN 255904
Richard Brody, SBN 100379
P.O. Box 9055
Berkeley, CA 94707
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
Email: rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| KENYON NORBERT, TROY MCALLISTER, MARSHALL HARRIS, ARMANDO CARLOS, MONTRAIL BRACKENS, MICHAEL BROWN, and JOSE POOT, on behalf of themselves individually and others similarly situated, as a class and Subclass,<br><br>Plaintiffs,<br><br>vs.<br><br>SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSEY; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, CAPTAIN MCCONNELL and John & Jane DOEs, Nos. 1 - 50.<br><br>Defendants. | Case No.: 3:19-cv-02724 SK<br><br>**PLAINTIFFS' NOTICE AND MOTION FOR RECONSIDERATION OF ORDER EXCLUDING PLAINTIFFS' EXPERT WITNESS, JESS GHANNAM, PH.D., FROM TESTIFYING AT TRIAL (ECF NO. 387), AND ORDER DENYING PLAINTIFFS' MOTION FOR CLARIFICATION (ECF NO. 395); DECLARATION OF RICHARD A. BRODY; AND (PROPOSED) ORDER**<br><br>Date:<br>Time:<br>Dept:  Courtroom C-15th Floor<br><br>Trial Date: August 8. 2023 |

**- 1 -**

# Table of Contents

TABLE OF AUTHORITIES ................................................................................................ 3

I.    SUMMARY OF ARGUMENT ................................................................................. 4

II.   LEGAL BASIS FOR RECONSIDERATION ......................................................... 4

III.  STATEMENT OF RELEVANT PROCEDURAL HISTORY ................................. 5

IV.  STATEMENT OF PERTINENT FACTS ................................................................ 6

V.   THE COURT'S EXCLUSION OF DR. GHANNAM IS BASED UPON ERROR
OF FACT AND LAW AND IS MANIFESTLY UNJUST........................................ 8

    A.    The Court Made Errors of Fact and Law in Excluding Dr. Ghannam .......................... 8

    B.    Dr. Ghannam must be allowed to testify because he reached opinions in this case
that are not based on reliance on evidence which the Court has excluded.................. 10

    C.    Excluding Dr. Ghannam's expert testimony is manifestly unjust and is contrary to
longstanding case law regarding the exclusion of expert testimony and expert
witnesses.................................................................................................................... 12

VI.  THE PSYCHOTHERAPIST-PATIENT PRIVILEGE PREVENTS DR. GHANNAM
FROM IDENTIFYING HIS PAST CLIENTS WHO ARE NOT PARTIES TO THIS
LITIGATION ........................................................................................................ 13

VII. THERE IS NO PREJUDICE TO DEFENDANTS IN ALLOWING DR. GHANNAM
TO TESTIFY AT TRIAL....................................................................................... 15

VIII. CONCLUSION ..................................................................................................... 15

# Table of Authorities

## Cases

*Cross v. Superior Court,* 11 Cal.App. 5th 305, 319, 217 Cal.Rptr.3d 569 (2017)...........................14

*Henry v. Gill Indus., Inc.,* 983 F.2d 943 (9th Cir. 1993) .................................................13

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982).........................13

*Olmos v. Ryan,* No. CV-17-3665-PHX-GMS (JFM), 2021 U.S. Dist. LEXIS 104427

(D. Ariz. June 2, 2021) .................................................................................13

## Other Authorities

California Evidence Code §1010(b) ....................................................................13

California Evidence Code §1014(c) ....................................................................13

Section 2900 of Division 2 of the Business and Professions Code ....................................13

## Rules

Civil Local Rule 7-9(a)..................................................................................5

Civil L.R. 7-9 (b) ........................................................................................5

Fed. R. Civ. P. 30(d)(1) .................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      SUMMARY OF ARGUMENT

This Court has imposed the severe sanction of excluding all expert opinion testimony of Jess Ghannam, Ph.D. based upon the finding that Dr. Ghannam relied in part on his review of surveys of approximately 20 class members which were duly provided to Defendants.  In addition, the Court has excluded Dr. Ghannam from testifying because he refused to disclose the names of clients of his who are not Plaintiffs or class members in this case.  The Court has also previously completely excluded two of Plaintiffs' experts (Dr. Bernstein and Lucas Fogarty), and limited the scope of testimony of Dr. Charles Czeisler, Plaintiffs' primary expert.

This is deeply prejudicial to Plaintiffs, a class of pre-trial inmates at the San Francisco Jail who have been deprived, many for years, of all access to sunlight and to any meaningful ability to exercise, with grave implications for their physical and mental wellbeing. The Court has imposed these evidentiary sanctions upon mistake of both law and fact and has failed to consider less severe sanctions or to adequately justify the bases for excluding key facts in accordance with the well settled policy of determining cases upon their merits.  Plaintiffs therefore respectfully request that the Court grant this Motion for Reconsideration of its prior rulings excluding Dr. Ghannam from testifying at the trial of this matter (ECF Nos. 387 and 395) and allow Dr. Ghannam to testify at trial.

This motion is made pursuant to Federal Rule of Civil Procedure 60(b)(6) and Northern District Local Rule 7-9(b)(3) on the grounds that there was a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order"; that this Court relies on a mistake of fact and law that materially affects the Orders of the Court in excluding pertinent information to the Order; that this Court failed to consider less dire and severe alternatives before imposing the severe discovery sanction of the total exclusion of expert opinion testimony by Plaintiffs' expert witness Dr. Ghannam, and that such exclusion is manifestly unjust, unduly harsh, and severely prejudicial to Plaintiffs.

## II.     LEGAL BASIS FOR RECONSIDERATION

Federal Rule of Civil Procedure 60(b)(6) provides that:

- **4 -**

1  "On motion and just terms, the court may relieve a party or its legal representative from a

2  final judgment, order, or proceeding for the following reasons:

3  (6) any other reason that justifies relief."

4  Local Rule 7-9(a) provides that: "Before the entry of a judgment adjudicating all of the

5  claims and the rights and liabilities of all the parties in a case, any party may make a motion before

6  a Judge requesting that the Judge grant the party leave to file a motion for reconsideration of any

7  interlocutory order on any ground set forth in Civil L.R. 7-9 (b). No party may notice a motion for

8  reconsideration without first obtaining leave of Court to file the motion."

9  Civil L.R. 7-9(b) allows for reconsideration if the moving party acts with reasonable

10  diligence and shows one of the following:

11       (1) That at the time of the motion for leave, a material difference in fact or law
12       exists from that which was presented to the Court before entry of the
         interlocutory order for which reconsideration is sought. The party also must
13       show that in the exercise of reasonable diligence the party applying for
         reconsideration did not know such fact or law at the time of the interlocutory
14       order; or

15       [. . .]

16       (3) A manifest failure by the Court to consider material facts or dispositive
17       legal arguments which were presented to the Court before such interlocutory
         order.

18  **III.    STATEMENT OF RELEVANT PROCEDURAL HISTORY**

19        On July 6, 2023, the Court issued its Order Regarding Motions *in Limine*.  The Court's

20  Order states in pertinent part that: "Plaintiffs cannot offer *these opinions* at trial." (ECF No. 387,

21  pg. 5:7-10, emphasis added).

22        Plaintiffs' counsel interpreted the Court's Order to mean that Dr. Ghannam could testify at

23  trial, but that his opinion testimony was subject to limitation.  Defendants interpreted the Court's

24  Order to completely bar Dr. Ghannam from testifying at trial.  After meet and confer efforts with

25  defense counsel confirmed this difference of interpretation, Plaintiffs filed their Administrative

26  Motion for Clarification on July 14, 2023.  (ECF No. 394).

27

28

On July 17, 2023, the Court issued its Order Regarding Request for Clarification.  In this Order, the Court stated that "the Court hereby clarifies that Ghannam is entirely barred from testifying at trial." (ECF No. 395, pg. 1:15-16).

## IV.    STATEMENT OF PERTINENT FACTS

Jess Ghannam, Ph.D. is a Clinical Professor of Psychiatry in the Department of Psychiatry and Behavioral Sciences at the University of California San Francisco.  He is an expert in the fields of the impact of trauma, Post Traumatic Stress Disorder, brain injury, torture and solitary confinement.  (ECF 273-4, Page 2 of 3:3-11).  It is Dr. Ghannam's expert opinion that the conditions sustained by Plaintiffs in the past and at the time he prepared his expert report in this case dated September 2, 2022, constitute solitary confinement. It is Dr. Ghannam's further expert opinion that those conditions of confinement have caused and contributed to a worsening of Plaintiffs' overall mental health that could result in profound chronic, life-long disability and chronic psychiatric and neurocognitive impairments.  (ECF 273-4, Page 2 of 3:17-25).

Dr. Ghannam was deposed on November 7, 2022, and January 20, 2023. Dr. Ghannam testified for the full 7-hour time allowed by Fed. R. Civ. P. 30(d)(1).  (Decl. of Richard A. Brody). Defendants have identified only one instance in which Dr. Ghannam refused to answer one question, and that was when it sought confidential information protected by the psychotherapist/patient privilege. (ECF 349-3, portions of the deposition testimony of Dr. Jess Ghannam taken on November 7, 2022, pp. 98:15-99:11).

In its Order Regarding Motions *in Limine* (ECF 387), the Court granted Defendants' Motion *in Limine* No. 1 as to Plaintiffs' expert witness Dr. Jess Ghannam.  The Court's Order as to Dr. Ghannam (ECF 387, pg. 5:6-10) states the following:

> Defendant's motion is GRANTED.  Ghannam states that he formed opinions independently of the inadmissible survey results but refuses to disclose the basis of his opinions for "privacy reasons" and patient confidentiality. Thus, Defendant was not able to examine him fully, and Plaintiffs cannot offer these opinions at trial.

In his expert report, Dr. Ghannam states that he relied on numerous sworn declarations in reaching his opinions in this case.  Specifically, Dr. Ghannam states that he relied on the sworn

- 6 -

declarations from Messrs. Carlos, Poot, McFarland, Beloy, Harris, Alexis, Garcia and Norbert. (ECF 349-2, pp. 4-7).  The Court has not excluded these declarations.  In his expert report, Dr. Ghannam also lists a large number of documents that he reviewed in addition to the surveys. Those documents include various docket entries, health records relating to Plaintiffs Montrail Brackens, Jose Poot and Troy McAllister, as well as demonstrative evidence including floor plans of a jail pod section and photographs taken at the jail.  (ECF 349-2, pp. 42 and 43 of 43).  The Court has not excluded this evidence.  Dr. Ghannam acknowledges that he reviewed diagnostic test information of approximately 20 incarcerated individuals provided to him by Plaintiffs' counsel.  (ECF 349-2, pg. 7).  Over objections by Plaintiffs' counsel, the Court has excluded these surveys.  Dr. Ghannam also states that over his 25-year career he has interviewed and evaluated over 100 incarcerated individuals at the county, state and federal districts, many of whom were subjected to the same conditions of confinement as the plaintiffs in this case have alleged.  (ECF 349-2, pg. 7).  The Court has not excluded this foundational evidence pertaining to Dr. Ghannam's knowledge, training, background and experience.

In testimony provided to the Court by Defendants (but not cited by Defendants in their Motion *in Limine* No. 1), Dr. Ghannam testified to his understanding that, prior to the onset of Covid, individuals in administrative segregation were locked down 23 hours per day and only allowed out of their cell for one hour a day.  That understanding came from both conversations with Plaintiffs' counsel and from his own work with clients of his at the jail separate and apart from the present case.  (ECF 349-3, pg. 98:5-14).   The testimony that inmates in Administrative Segregation were limited to one hour of out of cell time in the past was confirmed in this case by Defendants' own medical expert witness Dr. David Mathis. (ECF 266, pg. 15:13-18; Exh. 17 to ECF 266, pp. 108:18-109:10).

In refusing to identify the names of his own clients who provided information on out of cell time prior to Covid, Dr. Ghannam testified that those individuals were not part of this class. (ECF 349-3, pp. 98:15-99:11).  The testimony by Dr. Ghannam concerns evidence that Defendants have actual knowledge of and do not dispute because they are the entities that operate and control the conditions of confinement at the San Bruno jail.  Plaintiffs' understanding is that Defendants

do not dispute that prisoners in administrative segregation were locked down for 23 hours per day prior to the onset of the pandemic.

In addition, there was nothing that prevented Defendants from asking Dr. Ghannam questions about the information obtained from those non-class members that did not involve their identification.  Such questions could have included matters such as when such individuals were incarcerated at the San Bruno Jail, their classification status at the time of incarceration and the foundation for their ability to testify as to out of cell time.  Yet, Defendants did not submit evidence in their Motion *in Limine* Number 1 that they were prevented from asking such questions during the deposition of Dr. Ghannam.  As such, there is absolutely no prejudice to the Defendants from Dr. Ghannam's adherence to his ethical obligations as a psychologist asserting psychotherapist/patient privilege.

In his Declaration in Support of Plaintiffs' Opposition to Defendants' Motion *in Limine* No. 1, Dr. Ghannam states that:

> My opinion is supported by evidence independent of the surveys. The subject surveys confirmed my opinion, but do not change my expert opinion in this matter. Without the surveys, my opinion stands that the conditions at the San Bruno jail "constitute solitary confinement…. it is my further expert opinion that the conditions of confinement experienced by the current plaintiffs have caused and contributed to a worsening of their overall mental health that could result in profound chronic, life-long disability, and chronic psychiatric and neurocognitive impairments." (ECF 368, pg. 2:6-11).

Thus, there is ample evidence that Dr. Ghannam's expert opinions derive from a multitude of concededly admissible sources.  The Court should therefore grant this Motion and allow Dr. Ghannam to testify at trial.

## V. THE COURT'S EXCLUSION OF DR. GHANNAM IS BASED UPON ERROR OF FACT AND LAW AND IS MANIFESTLY UNJUST

### A. The Court Made Errors of Fact and Law in Excluding Dr. Ghannam

The Court's Orders (ECF 395 and ECF No 395) completely exclude all expert testimony and opinions from Jess Ghannam, Ph.D.  Specifically, the Court's Orders:

**- 8 -**

1.      Exclude Dr. Ghannam from testifying at the trial of this matter on the grounds that Dr. Ghannam "formed opinions independently of the inadmissible survey results but refuses to disclose the basis of his opinions for 'privacy reasons' and patient confidentiality.  Thus, Defendant was not able to examine him fully, and Plaintiffs cannot offer these opinions at trial." (ECF No. 387, pg. 5:6-10); and

2.      Confirm that "Ghannam is entirely barred from testifying at trial.  Ghannam's opinions relied on improperly gathered and inadmissible surveys and on independent data that Ghannam did not disclose to Defendant" (ECF 395, pg. 1:15-17).

However, Dr. Ghannam should be allowed to testify for numerous reasons, including the following:

1.      Dr. Ghannam was deposed on November 7, 2022, and January 20, 2023.  He refused to answer <u>one question</u> at deposition according to Defendants' Motion *in Limine* No. 1 (ECF No. 349-3, pp. 98:15-99:11).  Answering that question would have required Dr. Ghannam to identify patients of his who are not parties to this litigation, in breach of his ethical duties to maintain the patient/psychotherapist privilege.

2.      The question which Dr. Ghannam was ethically unable to answer was one to which Defendants know the answer and which is believed to be undisputed in this case, namely that prior to the onset of the Covid-19 pandemic, inmates in administrative segregation were held in lockdown 23 hours per day. (ECF 349-3, portions of the deposition testimony of Dr. Jess Ghannam taken on November 7, 2022, pp. 98:15-99:11).  It is undisputed that Defendant San Francisco Sheriff's Office has had control over all daily activities of pretrial detainees at the San Bruno Jail at all times relevant to this case.  Thus, Defendants are in far better position than Plaintiffs and Dr. Ghannam to know the answer to this one single question.

3.      In his expert report, Dr. Ghannam states that he relied on materials that were not the subject of Defendants' Motion *in Limine* No. 1.  Specifically, Dr. Ghannam's expert report states that he relied on the sworn declarations from Messrs. Carlos, Poot, McFarland, Beloy, Harris, Alexis, Garcia and Norbert. (ECF 349-2, pp. 4-7).  In his expert report, Dr. Ghannam also lists a large number of documents that he reviewed in addition to the surveys.  Those documents include

various docket entries, health records relating to Plaintiffs Montrail Brackens, Jose Poot and Troy McAllister, as well as demonstrative evidence including floor plans of a jail pod section and photographs taken at the jail.  (ECF 349-2, pp. 42 and 43 of 43).  Dr. Ghannam acknowledges that he reviewed diagnostic test information of 20 incarcerated individuals provided to him by Plaintiffs' counsel.  (ECF 349-2, pg. 7).  Dr. Ghannam also states that over his 25-year career he has interviewed and evaluated over 100 incarcerated individuals at the county, state and federal districts, many of whom were subjected to the same conditions of confinement as the plaintiffs in this case have alleged.  (ECF 349-2, pg. 7).  Thus, it was an error of fact for the Court to conclude that all of Dr. Ghannam's opinions were based upon either inadmissible material or on interviews with clients who are not parties to this lawsuit whom he would not identify due to ethical obligations.  Similarly, it was an error of law for the Court to conclude that all of Dr. Ghannam's opinions were based upon either inadmissible material or on interviews with clients who are not parties to this lawsuit whom he would not identify due to ethical obligations.

4.      Plaintiffs' counsel is entitled to interview their clients, including by use of surveys, and to share information with Plaintiffs' expert witnesses including Dr. Ghannam;

5.      The sanction of precluding all of Dr. Ghannam's expert testimony entirely is manifestly unjust, unnecessarily harsh, and draconian, and not warranted; and

6.      No less severe sanctions were considered by the Court before excluding Dr. Ghannam.

**B.      Dr. Ghannam must be allowed to testify because he reached opinions in this case that are not based on reliance on evidence which the Court has excluded**

In his expert report, Dr. Ghannam states that he relied on numerous sworn declarations in reaching his opinions in this case.  Specifically, Dr. Ghannam states that he relied on the sworn declarations from Messrs. Carlos, Poot, McFarland, Beloy, Harris, Alexis, Garcia and Norbert. (ECF 349-2, pp. 4-7).  The Court has not excluded this evidence.  In his expert report, Dr. Ghannam also lists a large number of documents that he reviewed in addition to the surveys. Those documents include various docket entries, health records relating to Plaintiffs Montrail Brackens, Jose Poot and Troy McAllister, as well as demonstrative evidence including floor plans

1    of a jail pod section and photographs taken at the jail.  (ECF 349-2, pp. 42 and 43 of 43).  This

2    evidence has also not been excluded by the Court.  Dr. Ghannam acknowledges that he reviewed

3    diagnostic test information of 20 incarcerated individuals provided to him by Plaintiffs' counsel.

4    (ECF 349-2, pg. 7).  Testimony based upon those surveys has been excluded by the Court over the

5    objections of Plaintiffs.

6            The Court has previously indicated that it is familiar with the issues pertaining to those

7    surveys.  Therefore, Plaintiffs incorporate by reference their arguments pertaining to the

8    admissibility of this survey information, including the specific arguments that the conducting of

9    the surveys did not violate Court orders, that the survey information provided to Plaintiffs' experts

10   was provided to Defendants, that Plaintiffs' counsel are entitled to communicate with their clients

11   (including through the use of surveys) without hindrance from opposing counsel or the Court, and

12   that there is no prejudice to Defendants from reliance upon these surveys.  (ECF Nos. 325 [Order

13   Denying in Part Motion for Summary Judgment], 330 and 330-1 [Plaintiffs' Motion for Leave to

14   File Motion for Reconsideration and proposed Motion for Reconsideration], 365 [Plaintiffs'

15   Opposition to Defendants' Motion *in Limine* No. 1], 366 [Declaration of Yolanda Huang in

16   Support of Opposition to Defendants' Motion *in Limine* No. 1], and 367 [Declaration of Rachel

17   Doughty in Support of Opposition to Defendants' Motion *in Limine* No. 1].

18           Dr. Ghannam also states that over his 25-year career he has interviewed and evaluated over

19   100 incarcerated individuals at the county, state and federal districts, many of whom were

20   subjected to the same conditions of confinement as the plaintiffs in this case have alleged.  (ECF

21   349-2, pg. 7).  The Court has not excluded this foundational evidence as to Dr. Ghannam's

22   education, training, background and experience.

23           In testimony provided to the Court by Defendants (but not cited by Defendants), Dr.

24   Ghannam testified to his understanding that, prior to the onset of Covid, individuals in

25   administrative segregation were locked down 23 hours per day and only allowed out of their cell

26   for one hour a day.  That understanding came from both conversations with Plaintiffs' counsel and

27   from his own work with clients of his at the jail separate and apart from the present case.  (ECF

28   349-3, pg. 98:5-14).   The testimony that inmates in Administrative Segregation were limited to

- 11 -

1   one hour of out of cell time in the past was confirmed in this case by Defendants' own expert

2   witness Dr. David Mathis. (ECF 266, pg. 15:13-18; Exh. 17 to ECF 266, pp. 108:18-109:10).

3          In a sworn Declaration previously filed with the Court, Dr. Ghannam made clear that his

4   opinions in this case are not based entirely on the information gleaned from the surveys:

6          My opinion is supported by evidence independent of the surveys. The subject
           surveys confirmed my opinion, but do not change my expert opinion in this matter.
7          Without the surveys, my opinion stands that the conditions at the San Bruno jail "constitute
           solitary confinement…. it is my further expert opinion that the conditions of confinement
8          experienced by the current plaintiffs have caused and contributed to a worsening of their
           overall mental health that could result in profound chronic, life-long disability, and chronic
9          psychiatric and neurocognitive impairments." (ECF No. 368, pg. 2:6-11).

10         In refusing to identify the names of his own clients who provided information on out of

11  cell time <u>prior to</u> Covid, Dr. Ghannam testified that those individuals were not part of this class.

12  (ECF 349-3, pp. 98:15-99:11).  The testimony by Dr. Ghannam concerns evidence that Defendants

13  have actual knowledge of and do not dispute because they are the entities that operate and control

14  the conditions of confinement at the San Bruno jail.  Plaintiffs' understanding is that Defendants

15  do not dispute that prisoners in administrative segregation were locked down for 23 hours per day

16  prior to the onset of the pandemic.  Defendants did not submit evidence in their Motion *in Limine*

17  Number 1 that they were prevented from asking questions regarding the individuals from whom

18  Dr. Ghannam received information (other than their names or other specific identifying

19  information) during the deposition of Dr. Ghannam.  As such, there is absolutely no prejudice to

20  the Defendants from Dr. Ghannam's adherence to his ethical obligations as a psychologist

21  asserting psychotherapist/patient privilege.

22         Thus, there is ample evidence that Dr. Ghannam's expert opinions derive from a multitude

23  of concededly admissible sources.

24  **C.     Excluding Dr. Ghannam's expert testimony is manifestly unjust and is contrary
           to longstanding case law regarding the exclusion of expert testimony and expert
25         witnesses**

27         There was a  manifest failure by the Court to consider material facts or dispositive legal

28  arguments which were presented to the Court before such interlocutory order because the Court

- 12 -

apparently did not consider the five required factors regarding discovery sanctions at the time it issued the Orders in question, nor did it apparently consider the imposition of lesser sanctions.

The Ninth Circuit has set forth five factors a district court must weigh in analyzing discovery sanctions, even when justified: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997). "[T]he key factors are prejudice and the availability of lesser sanctions." *Henry v. Gill Indus., Inc*., 983 F.2d 943, 948 (9th Cir. 1993) (citations and quotations omitted). "[A]ny sanction must be just." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (internal quotations omitted). The standard for deciding whether a particular sanction is "just" depends upon whether it is "severe." *Olmos v. Ryan,* No. CV-17-3665-PHX-GMS (JFM), 2021 U.S. Dist. LEXIS 104427, at *19 (D. Ariz. June 2, 2021).

Because the Court's Orders do not contain a discussion of these five factors or a discussion of the availability of lesser sanctions, the required factors set forth in Civil L.R. 7-9(b) have been met and Plaintiffs should be granted leave to file the attached Motion for Reconsideration.

## VI.   THE PSYCHOTHERAPIST-PATIENT PRIVILEGE PREVENTS DR. GHANNAM FROM IDENTIFYING HIS PAST CLIENTS WHO ARE NOT PARTIES TO THIS LITIGATION

In a civil case such as this one, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.  Fed. R. Evid. 501.

Jess Ghannam, Ph.D. has been a Licensed Clinical Psychologist in the State of California since 1986.  (ECF 349-2, pg. 12 of 43).  As such, he meets the definition of "psychotherapist" contained in California Evidence Code §1010(b)(a person licensed as a psychologist under Section 2900 of Division 2 of the Business and Professions Code).  California Evidence Code §1014(c) provides in pertinent part that:

> …the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and psychotherapist if the privilege is claimed by:
> (c) The person who was the psychotherapist at the time of the confidential communication

**- 13 -**

The psychotherapist-patient conveys broader protection than even the physician-patient privilege under California law:

> Psychoanalysis and psychotherapy are dependent upon the fullest revelation of the most intimate and embarrassing details of the patient's life. Research on mental or emotional problems requires similar disclosure. Unless a patient or research subject is assured that such information can and will be held in utmost confidence, he will be reluctant to make the full disclosure upon which diagnosis and treatment or complete and accurate research depends.

*Cross v. Superior Court,* 11 Cal.App. 5th 305, 319, 217 Cal.Rptr.3d 569 (2017).

Dr. Ghannam was therefore required by statute and by professional ethics to withhold the names of his former patients who are not parties to this litigation.  Defendants did not submit evidence in their Motion *in Limine* No. 1 showing that they attempted to elicit testimony from Dr. Ghannam about information derived from these conversations that might not have been privileged, i.e. general, non-identifying information about where these patients had been incarcerated, the years of incarceration and other non-privileged information which would have allowed them to test the veracity of Dr. Ghannam's testimony.  Of course, Defendants themselves, who control and operate the San Bruno Jail, are the ones most knowledgeable about the amount of time inmates spent confined to their cells prior to the onset of the Covid pandemic.

Dr. Ghannam is also Certified for National Security Cases requiring a TS/SCI/SAP Clearance and has been so qualified since 2012.  (ECF No. 349-2, pg. 12 of 43).    Thus, he is qualified and knowledgeable about his duties to withhold confidential information affecting the national security of the United States.

In a sworn Declaration which he provided to the Court, Dr. Ghannam explained that he could not ethically disclose the names of individuals he had treated and consulted with prior to Covid.  But Dr. Ghannam confirmed that "I was always happy to provide Ms. Berdux with the basis of my opinions, which did not depend or were not reliant on the conversations I had with other inmates." (ECF No. 372).

Dr. Ghannam upheld his legal and ethical obligations at the two sessions of his deposition in this case by refusing to identify patients who are not parties to this lawsuit and to withhold information whose disclosure may have been injurious to the national security of the United

- 14 -

States.  Defendants have not shown any prejudice from this testimony of Dr. Ghannam.  The Court did not consider any lesser remedies if it felt that there was something inappropriate about Dr. Ghannam's actions.  The plaintiffs in this action should not be penalized because their expert is an ethical professional.

## VII. THERE IS NO PREJUDICE TO DEFENDANTS IN ALLOWING DR. GHANNAM TO TESTIFY AT TRIAL

Defendants will not be prejudiced by the granting of this Motion for Reconsideration. Defendants deposed Dr. Ghannam over two days.  They were not prevented from inquiring into Dr. Ghannam's opinions in this case.  There is no evidence that Defendants expected Dr. Ghannam to violate his ethical obligations by identifying patients who are not plaintiffs in this case. Plaintiffs have identified Dr. Ghannam's expert report and supporting documents as exhibits for trial.

By contrast, not granting this Motion sends a message to defendants in other cases that they may cripple cases brought by adversaries who rely upon testimony from psychologists and psychiatrists by asking those professionals to violate their statutory and ethical obligations to not disclose confidential information.  The Court has the ability to prevent this miscarriage of justice by granting this Motion for Reconsideration.

## VIII. CONCLUSION

Plaintiffs respectfully request that this Motion for Reconsideration be granted and that Dr. Ghannam be permitted to testify at trial in accordance with the proposed Order attached hereto.

Respectfully submitted,

July 28, 2023                                    GREENFIRE LAW

By:    /s/ Richard A. Brody
Rachel Doughty
Richard A. Brody

Attorneys for Plaintiffs and the Class

**- 15 -**