# Exhibit 11

# 2022
# San Francisco Building Code

**Amendments to the**

**2022 California Building Code, Title 24, Part 2**

**Operative date:  January 1, 2023**

# 2022
# San Francisco Residential Code

## Amendments to the

## 2022 California Residential Code, Title 24, Part 2.5

## Operative date:  January 1, 2023

**The 2022 California Residential Code (CRC) as amended by the City & County of San Francisco is herein printed as Chapter 36 of the San Francisco Building Code which serves as a directory of where such provisions may be found in the other chapters of the San Francisco Building Code. Provisions of the California Residential Code have been relocated as amendments to the 2022 California Building Code under the specific applicable sections and are noted and referenced to the CRC.**

# PROPOSED SAN FRANCISCO BUILDING CODE AMENDMENTS

## 2022 Edition

**Text Format:**

> *Explanatory remarks are boxed and italicized.*

Unchanged language from the 2022 California Codes is shaded, and may include **bold** and/or *italicized* formatting.

San Francisco amendments are printed in unformatted ("plain") text, and may include **bold** and/or *italicized* formatting.

Repealed San Francisco amendments appear in ~~plain and strikeout~~.

New San Francisco amendments appear <u>underlined</u>.

**Marginal Markings:**

[←]   An arrow represents the location of language that has been deleted by San Francisco from the 2022 California Code.

# Chapter 1
# SCOPE AND ADMINISTRATION

## Division I
## CALIFORNIA ADMINISTRATION

*No San Francisco Building Code Amendments.*

## Division II
## SCOPE AND ADMINISTRATION

*See Chapter 1A for the Administration provisions of the San Francisco Building Code.*

*Add chapter as follows:*

# Chapter 1A
# SAN FRANCISCO ADMINISTRATION

The City and County of San Francisco adopts the following Chapter 1A for the purpose of administration of the ~~2019~~ 2022 San Francisco Building Code. Certain specific administrative and general code provisions as adopted by various state agencies may be found in Chapter 1, Divisions I and II of this code.

## SECTION 101A – TITLE, SCOPE AND GENERAL

**101A.1 Title.** These regulations shall be known as the "~~2019~~ 2022 San Francisco Building Code," may be cited as such and will be referred to herein as "this code." The ~~2019~~ 2022 San Francisco Building Code amends the ~~2019~~ 2022 California Building Code and the ~~2019~~ 2022 California Residential Code which is Part 2 & 2.5 respectively of the 12 parts of the official compilation and publication of the adoption amendment and repeal of the building regulations to the California Code of Regulations, Title 24, also referred to as the California Building Standards Code. The California Building Code and California Residential Code incorporates by adoption the ~~2018~~ 2021 International Building Code and ~~2018~~ 2021 International Residential Code respectively of the International Code Council with necessary California amendments.

**101A.2 Purpose.** The purpose of this code is to establish the minimum requirements to safeguard the public health, safety and general welfare through structural strength, means of egress facilities, stability, access to persons with disabilities, sanitation, adequate lighting and ventilation and energy conservation, and safety to life and property from fire and other hazards attributed to the built environment; to regulate and control the demolition of all buildings and structures, and the quarrying, grading, excavation, and filling of land; and to provide safety to fire fighters and emergency responders during emergency operations.

2

The further purpose of this code is to ensure that barrier-free design is incorporated in all buildings, facilities, site work and other developments to which this code applies and to ensure that they are accessible to and usable by persons with disabilities.

**101A.3 Scope.** The provisions of this code shall apply to the construction, alteration, movement, enlargement, replacement, repair, equipment, use and occupancy, location, maintenance, removal and demolition of every building or structure or any appurtenances connected or attached to such buildings or structures.

**101A.3.1 Non-state-regulated buildings, structures and applications.** Except as modified by local ordinance pursuant to Section 1.1.8, the following standards in the California Code of Regulations, Title 24, Parts ~~2, 2.5, 3, 4, 5, 6, 9, 10, and 11~~ 2, 2.5, 3, 4, 5, 6, 8, 9, 10, 11, and 12 shall apply to all occupancies and applications not regulated by a state agency.

**101A.4** ~~Effective Date of this code.~~ **Effective Date of this code.**

**101A.4.1** Only those standards approved by the California Building Standards Commission and code amendments, additions or deletions adopted by the City and County of San Francisco that are effective at the time an application for building permit is deemed acceptable for building plan review by the Department of Building Inspection shall apply to the plans and specifications for, and to the construction performed under, that permit. For the effective dates of the provisions contained in this code, see History Notes page of this code.

**101A.4.2 Appendices.** Provisions contained in the appendices of this code shall not apply unless specifically adopted by a state agency or adopted by a local enforcing agency in compliance with Health and Safety Code Section 18901 *et seq.* for Building Standards Law, Health and Safety Code Section 17950 for State Housing Law and Health and Safety Code Section 13869.7 for Fire Protection Districts.

**101A.5 Validity.** If any chapter section, subsection, sentence, clause or phrase of this code is for any reason held to be unconstitutional, contrary to statute, exceeding the authority of the state as stipulated by statutes, or otherwise inoperative, such decision shall not affect the validity of the remaining portion of this code.

**101A.6 Reference Documents.** The codes, standards and publications adopted and set forth in this code, including other codes, standards and publications referred to therein are, by title and date of publication, hereby adopted as standard reference documents of this code.

When this code does not specifically cover any subject relating to building design and construction, recognized architectural or engineering practices shall be employed. The National Fire Codes and Fire Protection Handbook of the National Fire Protection Association are permitted to be used as authoritative guides in determining recognized fire-prevention engineering practices.

In the event of any differences between these building standards and the standard reference documents, the text of these building standards shall govern.

**101A.7 Order of Precedence.**

**101A.7.1 Specific provisions.** Where a specific provision varies from a general provision, the specific provision shall apply.

**101A.7.2 Conflicts.** When the requirements of this code conflict with the requirements of any other part of the California Building Standards Code, Title 24, any provision contained elsewhere in the San Francisco Municipal Code, or any regulation or requirement adopted by the Public Utilities Commission or other City agency under its Charter authority, the most restrictive requirement shall prevail.

**101A.7.3 Fire codes.** Nothing in these building standards shall diminish the requirements of the state fire marshal.

**Sections 101A.8 – 101A.19 are reserved.**

**101A.20 Central Permit Bureau.** A Central Permit Bureau is hereby established in the Department of Building Inspection. The Central Permit Bureau shall process applications for permits required in Section 106A.1 of this code and for certain other permits required by ordinance or regulation for other departments and bureaus of the City and County of San Francisco. Permit processing procedures are detailed in an Administrative Bulletin issued by the Building Official in cooperation with other departments and bureaus. The Central Permit Bureau shall arrange for the review of permit applications, the issuance of permits and the collection of fees as fixed by law.

The fees collected by the Central Permit Bureau shall be credited to the account of the department or bureau authorized by ordinance or Charter to approve such permits. The Controller, in conjunction with the Central Permit Bureau and the concerned departments and bureaus, shall analyze the cost to the City and County of San Francisco of regulation and inspection required by each such class of permit and shall propose the rates to be fixed therefor by ordinance, which shall not be less than the cost to the City and County of San Francisco of such regulation and inspection.

**101A.21 Safety Assessment Placards.** This section establishes standard placards to be used to indicate the condition of a building or structure after a natural or human-created disaster. A description of the placards to be used is set forth in this Section. The Building Official and their authorized representatives are authorized to post the appropriate placard at each entry point to a building or structure upon completion of a safety assessment. A safety assessment is a visual, nondestructive examination of a building or structure for the purpose of determining the condition for continued occupancy.

**101A.21.1 Application of provisions.** The provisions of this section are applicable to all buildings and structures of all occupancies regulated by the City and County of San Francisco.

**101A.21.2 Description of placards.** The Department of Building Inspection shall use the form of standard placards that the Applied Technology Council has recommended and revises from time to time. The actual placards shall be in a form that the Building Official approves. In addition, the ordinance number, the name of the department, its address, and phone number shall be permanently affixed to each placard. In addition, each placard shall include the following language or its equivalent as determined by the Building Official: Any unauthorized removal, alteration, or covering of this placard shall be considered a violation of the San Francisco Building Code and the responsible person(s) shall be subject to applicable penalties set forth in the code. A general description of the placards is as follows:

1. **INSPECTED – LAWFUL OCCUPANCY PERMITTED.** This placard is to be posted on any building or structure where no apparent structural hazard has been found. This placard is not intended to mean that there is no damage to the building or structure.

2. **RESTRICTED USE.** This placard is to be posted on each building or structure that is damaged to such an extent that restrictions on continued occupancy are required. The person or persons authorized to post this placard will note in general terms the type of damage encountered and will note with specificity any restrictions on continued occupancy.

3. **UNSAFE – DO NOT ENTER OR OCCUPY.** This placard is to be posted on each building or structure that is damaged to such an extent that continued occupancy poses a threat to life safety. Buildings or structures posted with this placard shall not be entered under any

4

circumstance except as authorized in writing by the Building Official of Building Inspection or his or her authorized representative. Authorized safety assessment individuals or teams may enter these buildings at any time. This placard is not to be used or considered to be a demolition order. The person or persons authorized to post this placard will note in general terms the type of damage encountered.

**101A.21.3 Removal or alteration prohibited.** Once it has been attached to a building or structure, a placard is not to be removed, altered, or covered except by an authorized representative of the Department or upon written notification from the Department. Any unauthorized removal, alteration, or covering of a placard shall be considered a violation of this code and the responsible person(s) shall be subject to the penalties set forth herein.

# SECTION 102A – UNSAFE BUILDINGS, STRUCTURES OR PROPERTY

All buildings, structures, property, or parts thereof, regulated by this code that are structurally unsafe or not provided with adequate egress, or that constitute a fire hazard, or are otherwise dangerous to human life, safety, or health of the occupants or the occupants of adjacent properties or the public by reason of inadequate maintenance, dilapidation, obsolescence or abandonment, or by reason of occupancy or use in violation of law or ordinance, or were erected, moved, altered, constructed or maintained in violation of law or ordinance are, for the purpose of this chapter, unsafe.

Whenever the Building Official determines by inspection that property or properties either improved or unimproved are unstable because of landslide, subsidence or inundation or that such occurrences are deemed imminent as described above, the Building Official shall give written notice to the owner or owners that said property or properties are unsafe. The notice shall specify the conditions creating the unsafe classification.

All such unsafe buildings, structures, property, or portions thereof, are hereby declared to be public nuisances and shall be vacated, repaired, altered or demolished as hereinafter provided.

**102A.1 Fire Hazard.** No person, including but not limited to the state and its political subdivisions, operating any occupancy subject to these regulations shall permit any fire hazard, as defined in this section, to exist on premises under their control, or fail to take immediate action to abate a fire hazard when requested to do so by the enforcing agency.

**Note:** "Fire hazard" as used in these regulations means any condition, arrangement or act which will increase, or may cause an increase of, the hazard or menace of fire to a greater degree than customarily recognized as normal by persons in the public service of preventing, suppressing or extinguishing fire; or which may obstruct, delay or hinder, or may become the cause of obstruction, delay or hindrance to the prevention, suppression or extinguishment of fire.

**102A.2 Authority to Enforce.** Subject to other provisions of law, for administration, enforcement, actions, proceedings, abatement, violations and penalties in structures subject to State Housing Law, refer to Health and Safety Code Sections 17910 through 17995.5 and California Code of Regulations, Title 25, Division 1, Chapter 1, Subchapter 1.

**102A.2.1 Mobilehome parks and special occupancy parks.** Subject to other provisions of law, for administrative, enforcement, actions, proceedings, abatement, inspections and penalties applicable to the Mobilehome Parks Act, refer to California Health and Safety Code, commencing with Section 18200 and California Code of Regulations, Title 25, Division 1, Chapter 2.

**102A.2.2 Employee Housing.** Subject to other provisions of law, for administrative, enforcement, actions, proceedings, violations and penalties applicable to the Employee Housing Act, refer to Safety Code, Sections 17000 through 17062.5 and California Code of Regulations, Title 25, Division 1, Chapter 1, Subchapter 3.

**102A.3 Inspections.** The Building Official may inspect or cause the inspection of any building, structure or property for the purpose of determining whether it is unsafe whenever:

   (a)   The Building Official, with reasonable discretion, determines that such inspection is necessary or desirable; or,

   (b)   Any person or any agency or department of the City submits to the Building Official a complaint which, in the Building Official's opinion, establishes reasonable cause to believe that the building, structure or property or any portion thereof is unsafe.

**102A.3.1 Dwelling Units constructed or installed without required permit(s).** In the case of an unauthorized Dwelling Unit constructed or installed in an existing building without the required permit or permits, in addition to the above requirements the written notice of violation shall order the property owner to file an application for a building and other permits required to legalize the unit pursuant to Building Code Section 106A.3.1.3 and Planning Code Section 207.3.

**EXCEPTIONS:**

   1.   Removal of the unit has been approved by the Planning Commission pursuant to Planning Code Section 317; or

   2.   After performing a screening under Section 106A.3.1.3(a) of this Code, the Department has determined that the unauthorized Dwelling Unit is not able to be legalized under Section 106A.3.1.3 of this Code; or

   3.   The Building Official has determined that a serious and imminent hazard under Section 102A.16 of this Code exists on the subject property.

   Upon submission of an application for legalization or removal of an unauthorized Dwelling Unit by the owner or the owner's authorized agent, the Department will suspend a notice of violation issued pursuant to this Section 102A.3.1 pending a decision on the application unless the Building Official has determined that a serious and imminent hazard exists on the property. If approval of either legalization or removal of the unauthorized Dwelling Unit occurs within one year of issuance of the notice of violation, the notice of violation and any liens recorded against the property with respect to the violation will be rescinded. The Building Official may extend this time if a delay in obtaining approval is not the fault of the property owner.

**102A.4 Notice of Municipal Code Violation.**

   (a)   When the Building Official observes or otherwise determines any condition which renders the building, structure or property unsafe, the Building Official shall, within 15 days, serve a Notice of Municipal Code Violation ("NOV") upon the building owner. The Building Official shall not issue successive NOVs for the same violation or violations as a means of extending the filing time or the enforcement process or as a means of following up with the building owner.

   (b)   The NOV shall identify each violation observed or otherwise established, including the violations which render the building, structure or property unsafe, and shall state a deadline for the building owner to abate the violations and a date for reinspection. The NOV shall also set forth the penalties, fees and costs as prescribed in Sections 102A.7(d) and 103A of this code. The NOV shall be a public record subject to disclosure pursuant to Administrative Code Chapter 67.

   (c)   The Building Official shall mail a copy of the NOV to the building owner by first class mail at the address listed with the Assessor-Recorder's Office. The Building Official shall post

6

the NOV in a conspicuous place on the subject property and make a copy of the NOV available to each tenant of the subject property.

**102A.5 Notice of Administrative Hearing.**

   (a)   If the Building Official determines that the building owner has not corrected the code violations by the deadline provided in the NOV, the Building Official shall schedule an administrative hearing on the violations, to be heard within 60 days of the deadline, unless the building owner demonstrates to the Building Official's satisfaction that the building owner has made substantial progress in abating the violations.

   (b)   The Building Official shall issue a Notice of Administrative Hearing ("Hearing Notice") to the building owner. The Hearing Notice shall state the date, hour and place of the hearing and contain a conspicuous warning setting forth the penalties, fees and costs prescribed in Sections 102A.7(d) and 103A of this Code. The Hearing Notice shall include a copy of the NOV. The Hearing Notice shall inform all interested parties who desire to be heard in the matter that they may appear to show cause why the property, building or structure, or portion thereof, should not be ordered repaired, altered, vacated and repaired or altered, or vacated and demolished.

   (c)   The Building Official shall serve the Hearing Notice on the building owner by certified mail to the building owner at the address listed with the Assessor-Recorder's Office and shall post the NOV in a conspicuous place on the subject property. The Building Official shall mail the Hearing Notice on the building owner at least 10 days prior to the date set for the hearing.

   (d)   In addition to serving the NOV on the building owner, the Building Official shall send a copy of the NOV by certified mail to:

   (1)   The person, if any, in real or apparent charge and control of the premises involved;

   (2)   The holder of any mortgage, deed of trust, lien or encumbrance of record;

   (3)   The owner or holder of any lease of record; and,

   (4)   The record holder of any other estate or interest in the building, structure or property, or the land upon which it is located.

   The failure of any owner or other person to receive such notice shall not affect in any manner the validity of any proceedings taken hereunder.

   (e)   The person serving the Hearing Notice shall complete a declaration under penalty of perjury, certifying the date and manner in which such Hearing Notice was given, and the Building Official shall retain the certified mail receipt card, if any, for the Hearing Notice.

   (f)   In addition to the Hearing Notice, the Building Official shall provide the building owner with an information sheet regarding the enforcement process, the building owner's rights and duties prior to the hearing, and the information the building owner must bring to the hearing.

**102A.6 Conduct of Administrative Hearing.**

   (a)   The Building Official shall conduct the Administrative Hearing, or may designate a Hearing Officer who shall have the same authority as the Building Official to hear and decide the case and to make any orders consistent with this Code. For purposes of Sections 102A.6 through 102A.7, "Hearing Officer" shall include the Building Official if the Building Official conducts the Administrative Hearing. The Hearing Officer shall not be the same individual who signed the NOV.

   (b)   The Hearing Officer shall hold the Administrative Hearing at the time and place designated in the Hearing Notice. The Hearing Officer may, in his or her discretion and for good cause shown, continue the hearing one time, for a period not to exceed 30 days. All persons having an interest in the building, structure or property or having knowledge of facts material to the allegations of the NOV, including the list of code violations, may present evidence for

7

consideration by the Hearing Officer, subject to any rules adopted by the Hearing Officer for the orderly conduct of the hearing.

**102A.7 Administrative Order.**

(a)   Within 30 days following the conclusion of the Administrative Hearing, the Hearing Officer shall issue a written decision ("Administrative Order").

(b)   The Administrative Order shall state in reasonable detail which conditions render the building, structure, or property, or portion thereof, unsafe, and shall state the work required to be done to satisfy the Administrative Order. The Administrative Order shall include a copy of the NOV. The Administrative Order may direct the building owner to repair, alter, vacate, and/or demolish the subject property.

(c)   The Administrative Order shall specify the time within which the building owner shall repair, alter, vacate, and/or demolish the building, structure, or property, or portion thereof, or otherwise comply with the Order. The time for compliance with the Administrative Order shall not to exceed[1] 180 days from permit issuance. The Hearing Officer may, in his or her discretion and for good cause shown, extend the time for compliance with the Administrative Order once, for a period limited to the minimum time necessary for completion and not to exceed 90 days, following a written request by the building owner.

(d)   In addition to any monetary penalties authorized in Section 103A, the Department shall be entitled to its costs of preparation for and appearance at the Administrative Hearing, and all prior and subsequent attendant and administrative costs, and the Department shall assess these costs upon the building owner monthly, at the rates set under Section 110A, Tables 1A-D (Standard Hourly Rates) and 1A-K (Penalties, Hearings, Code Enforcement Assessments), until the costs are paid in full. In addition, the Department shall be entitled to its attorneys fees and costs, including but not limited to expert witness fees, incurred in bringing the administrative enforcement action. The violations cited in the Administrative Order will not be deemed legally abated until the building owner makes full payment of the penalties and costs, and failure to pay the assessment of costs shall result in tax lien proceedings against the property.

(e)   The Hearing Officer shall serve the Administrative Order on the building owner in the same manner as the Hearing Notice. The Building Official shall record a copy of the Administrative Order in the Assessor-Recorder's Office. When the Building Official determines that the work required under the Administrative Order has been completed and the building, structure, or property, or portion thereof, no longer is unsafe, the Building Official shall issue and record a rescission of the Administrative Order with the Assessor-Recorder's Office.

(f)   Any person may appeal an Administrative Order pursuant to Section 105A.2. The Hearing Officer shall inform the building owner, at the Administrative Hearing and in the Administrative Order, of the right of appeal to the Abatement Appeals Board provided that the appeal is made in writing and filed with the Secretary of the Abatement Appeals Board within 15 days after the Order is posted and served. The 15-day limitation shall not apply when any type of a moratorium authorized in Section 105A.2 is sought. Where construction materials, methods, types of construction, or compliance with the time limits set forth in Table No. 16B-A are the bases, in whole or in part, of the Building Official's finding that an unreinforced masonry building, or portion thereof, is unsafe, the Abatement Appeals Board shall refer these matters to the Board of Examiners established in Section 105A.1 of this Code. Where construction materials, methods, and types of construction are the bases, in whole or in part, of the Building Official's finding that the building, or structure, or portion thereof, is unsafe, the Abatement Appeals Board shall refer these matters to the Board of Examiners for its examination and determination with respect to

such materials, methods, and types of construction. The Board of Examiners shall approve or disapprove such materials, methods, and types of construction, and may attach conditions to its approval, and shall forward a copy of its report to the Abatement Appeals Board. The Abatement Appeals Board shall include in its decision the findings of the Board of Examiners.

**102A.8 Remedies are Non-Exclusive.** Notwithstanding the provisions of Sections 102A.4 through 102A.7, the City Attorney may institute civil proceedings for injunctive and monetary relief, including civil penalties, against a building owner for violations of the Municipal Code under any circumstances, without regard to whether a complaint has been filed or the Building Official has issued a NOV or an Administrative Order. In any civil action filed by the City Attorney under this Section 102A.8, the City Attorney may seek recovery of and the court may award the City its attorneys fees and costs, including but not limited to expert witness fees, incurred in bringing the proceedings.

*Editor's Note:*

  *Sections 102A.9 and 102A.10 are reserved.*

**102A.11 Violation – Penalties for Dis**
**regarding Order.**

**102A.11.1 Failure to comply.** The owner of any building, structure, or property or portion thereof determined by the Building Official to be unsafe who has failed to comply with any order shall be guilty of a misdemeanor as set forth in Section 103A.

**102A.11.2 Failure to vacate.** The occupant or lessee in possession who fails to comply with the order to vacate said building or portion thereof in accordance with any order given as provided for hereinabove shall be guilty of a misdemeanor as set forth in Section 103A.

**102A.11.3 Removal of notice.** Any person who removes any notice or order posted as required in this section shall be guilty of a misdemeanor as set forth in Section 103A.

**102A.12 Costs of Abatement by the City and County of San Francisco.** Whenever the Building Official, pursuant to authority conferred by this code, causes a building, structure, or property, or portion thereof, to be barricaded, secured, repaired or altered, demolished, or have other actions taken by the Department or its contractor to remedy an unsafe condition, the cost thereof shall be paid from the Repair and Demolition Fund and assessed against said property.

**102A.13 Repair and Demolition Fund.** A special revolving fund, to be known as the Repair and Demolition Fund, may be used for the purpose of defraying the costs and expenses (including Department administrative costs) which may be incurred by the Building Official in carrying out the actions described in Section 102A.12.

  The Board of Supervisors may, by transfer or by appropriation, establish or increase the special revolving fund with such sums as it may deem necessary in order to expedite the performance of the work of securing, repairing, altering or demolition. The Repair and Demolition Fund shall be replenished with all funds collected under the proceedings hereinafter provided for, either upon voluntary payments or as the result of the sale of the property after delinquency, or otherwise. Balances remaining in the Repair and Demolition Fund at the close of any fiscal year shall be carried forward in such fund.

**102A.14 Failure to Comply with Order.** Whenever an order to repair, alter, vacate and alter or repair, or vacate and demolish any building, structure or property, or portion thereof, has not been complied with within the time set by the Building Official, or within such additional time as the Building Official may for good cause extend, or within the time fixed by the Abatement Appeals Board, the Building Official shall have the power, in addition to any other remedy provided herein or by law or any other ordinance, to:

1.  Cause the building, structure, property, or portion thereof, to be vacated, barricaded, or otherwise secured against use or occupancy pending the correction of all conditions ordered to be corrected, or pending demolition; or

2.  Cause the building, structure, property, or portion thereof, to be dismantled or demolished and the site cleared by such means as the Building Official shall deem advisable; or

3.  Cause the building, structure, property, or portion thereof, to be repaired or altered, so as to render it safe and in compliance with applicable laws and ordinances, by such means as the Building Official shall deem advisable.

Any work done pursuant to the authority herein shall be performed in accordance with the limitations as to repair expenditure as contained in Section 102A.16 and with the established practices applicable to the Department.

**102A.15 Forfeiture of Owner's Right to Do Work.** Whenever, pursuant to Section 102A.14, the Building Official intends to cause to be done any of the work described therein, the Building Official shall provide notice in the manner set forth in Section 102A.4, of the Building Official's intention to do such work, and shall specify a date certain upon which the Building Official shall solicit bids to accomplish the necessary work, which shall be not sooner than 10 days from the date such notice is given. From and after said date certain the owner and every other person having charge or control over said building, structure or property shall be deemed to have forfeited all right to do such work and is thereafter prohibited from doing any such work except as the Building Official may allow.

**102A.16 Serious and Imminent Hazards – Emergency Orders.** Notwithstanding any other provisions of this chapter, whenever, in the judgment of the Building Official, it appears from an inspection or notice of violation that there exists in, on, or near any building, structure, property, or portion thereof, any condition constituting an imminent and substantial hazard to the life, health or safety of the occupants or other persons, or to such building, structure, or property requiring prompt action to correct said condition, the Building Official shall have the power to issue an order in writing detailing the serious and imminent hazard conditions and requiring:

1.  That the building, structure, property, or portion thereof, be vacated and thereafter be kept vacant until the Building Official gives written permission that the same may be reoccupied, without giving the notice and holding the hearing prescribed in Sections 102A.4 through 102A.6, whenever, by reason of serious and imminent danger, prompt vacating of the premises, building, structure or property, or a portion thereof, appears necessary in the judgment of the Building Official;

2.  That the building, structure, property, or a portion thereof, be barricaded, boarded up, or otherwise secured against entry, occupancy or use by all persons, except as permitted by said order;

3.  That the building, structure, property, or a portion thereof, be demolished or that serious and imminent hazard conditions be repaired, altered, corrected or eliminated in accordance with the particulars set forth in the order.

The order shall contain time frames required for compliance with the order and shall set forth the street address of the building or structure and a description of the building, structure, or property sufficient for identification.

In such cases of serious and imminent hazard, the order may be issued by the Building Official without giving the notice and holding the hearing specified in Sections 102A.4 through 102A.6. A copy of said order shall be posted in a conspicuous place upon the building, structure, or

10

property, a copy shall be served in the manner prescribed in Section 102A.4, and a copy shall be recorded in the Assessor-Recorder's Office.

The Building Official shall have the further power under this section to cause or compel the work required under the order to be undertaken by such means as the Building Official may deem advisable if the owner and all other persons having an interest in the building, structure, or property have failed, for a period of not more than 48 hours after the posting and service of the order, to comply with the order.

Whenever the Building Official orders that repairs or alterations be made pursuant to this Section, the authority of the Building Official to repair or alter, or cause repairs or alterations to be made to comply with the order, shall be limited to repairs or alterations whose cost does not exceed 50 percent of the value, as defined by the Assessor, of the building, structure, property, or portion thereof.

**102A.16.1 Continuing or Recurring Conditions Creating a Fire Hazard in a Residential Building of Three or More Dwelling Units; Authority of the Building Official.** In addition to any other power or remedy available under this Code or other applicable laws, the Building Official may issue a Fire Life Safety Notice and Order pursuant to the provisions of this Section 102A.16.1 and Sections 102A.16.1.1 and 102A.16.1.2 that requires the owner of a residential building with three or more dwelling units to install, improve, or upgrade the building's fire safety systems.

**102A.16.1.1 Fire Life Safety Notice and Order.** The Building Official may issue a Fire Life Safety Notice and Order in cases where the Building Official has determined that:

(a)   notwithstanding the Department's issuance of two or more NOVs and Administrative Orders under Sections 102A.4 and 102A.7 of this Code for violation of the fire safety requirements enforced by the Department of Building Inspection, a fire hazard (as defined in Section 102A.1) continues to exist or recurs after abatement in a residential building with three or more dwelling units; and

(b)   while the cited code violations have not risen to the level of an imminent hazard that requires issuance of an emergency order under Section 102A.16, the violations are so extensive and of such a nature (including but not limited to conditions such as a nonworking fire alarm or sprinkler system, a nonworking or chronically blocked fire escape, or locked or chronically blocked exits or egress system) that the health and safety of the residents and/or the general public is substantially endangered; and

(c)   the property owner either has failed to abate or mitigate the violations in a timely way in accordance with an Administrative Order issued pursuant to Section 102A.7 of this Code, or the violations recur after abatement.

**102A.16.1.1.1 Legal Status of Previously Issued NOVs.** A Fire Life Safety Notice and Order issued pursuant to Section 102A.16.1.1 is in lieu of a Notice of Municipal Code Violation ("NOV") and an Administrative Order issued pursuant to Sections 102A.4 and 102A.7 of this Code. However, such an Order does not replace any NOVs that have previously been issued and remain unabated. Any previously-issued NOVs shall require abatement pursuant to their terms.

**102A.16.1.1.2 Required Provisions of a Fire Life Safety Notice and Order.** The Fire Life Safety Notice and Order issued pursuant to Section 102A.16.1.1 shall require the building owner to do one or more of the following:

(a)   install a new fire sprinkler system;

(b)   improve an existing fire sprinkler system or upgrade it to current code requirements;

(c)   install a new fire alarm and/or detection system;

11

(d)   improve an existing fire alarm and/or detection system or upgrade it to current code requirements.

Prior to ordering any such installation, improvement, or upgrade, the Building Official shall provide the notice required by Section 102A.16.1.1.3 below and consult with the local fire code official. The local fire official shall approve any installation, improvement, or upgrade ordered by the Building Official.

**102A.16.1.1.3 Warning Statements and Letter Prior to Issuance of Fire Life Safety Notice and Order.** Each NOV or Administrative Order issued pursuant to Sections 102A.4 and 102A.7 of this Code that includes a fire safety violation shall provide information about Section 102A.16.1 *et seq.* and the consequences for not abating fire safety violations within the specified compliance period. In addition, prior to issuance of a Fire Life Safety Notice and Order, the Building Official shall send a letter by regular and certified mail to the building owner at the address listed with the Assessor-Recorder's Office and to the persons or entities listed in Section 102A.16.1.2(b) below informing them that because the building has been cited with two or more fire-safety related NOVs and Administrative Orders under Sections 102A.4 and 102A.7 of this Code, the owner is a potential recipient of a Fire Life Safety Notice and Order.

**102A.16.1.2 Notice and Hearing Procedures.** All the notice and hearing procedures set forth in Sections 102A.4 through 102A.7 shall apply to a Fire Life Safety Notice and Order, except as that procedure may be modified below.

(a)   The Fire Life Safety Notice and Order shall:

(1)   be signed by the Building Official;

(2)   set forth the street address of the building and a description of the building or property sufficient for identification;

(3)   identify each code violation that the Building Official has determined is a fire hazard substantially endangering the health and safety of the residents and/or the general public;

(4)   specify the fire safety installation, improvement, and/or upgrades required; and

(5)   contain time frames required for compliance with the Notice and Order.

(b)   The Building Official shall serve the Fire Life Safety Notice and Order by certified mail on the building owner(s) at the address listed with the Assessor-Recorder's Office, and shall send a copy by certified mail to:

(1)   the person, if any, in real or apparent charge and control of the premises involved;

(2)   the holder of any mortgage, deed of trust, lien, or encumbrance of record; and

(3)   the owner or holder of any other estate or interest in the building or property, or the land on which it is located.

(c)   The Building Official shall post a copy of the Fire Life Safety Notice and Order in a conspicuous place on the subject property and either mail or deliver a copy to the resident(s) of each unit on the subject property.

(d)   Unless the building owner demonstrates to the Building Official's satisfaction that the owner has made substantial progress in complying with the Fire Life Safety Notice and Order, if the building owner has not complied with said Notice and Order according to the required time frames the Building Official shall schedule an Administrative Hearing to be held no later than 14 days after the compliance deadline.

(e)   If an Administrative Hearing is held, a designee of the Building Official shall attend the hearing, which shall be conducted by a designated Hearing Officer. A written decision signed by the Building Official shall be issued no later than 30 days after the hearing.

12

**102A.16.1.3 Appeals.** A Fire Life Safety Notice and Order may be appealed to the Abatement Appeals Board pursuant to the provisions of Section 105A.2 of this Code; provided, however, that

   (a)  an appeal of a Fire Life Safety Notice and Order shall be scheduled for hearing within 14 days after the date of filing the appeal, and

   (b)  if the Abatement Appeals Board had heard an appeal of any previously-issued Order of Abatement pursuant to Section 102A for substantially the same code violations as are cited in the Fire Life Safety Notice and Order, and the Abatement Appeals Board had upheld the Order of Abatement in whole or substantial part, the decision of the Abatement Appeals Board shall be effective immediately upon issuance of the Board's findings and decision with no right to request rehearing.

**102A.16.1.4 Recording of final Notice and Order; referral to City Attorney.** Upon issuance of the Abatement Appeals Board decision, a copy of the final Fire Life Safety Notice and Order shall be recorded in the Assessor-Recorder's Office. The Department shall refer the case to the City Attorney for its review and possible action within 90 days after recording said Notice and Order.

**102A.17 Assessment of Costs.** The Building Official shall take action to have the costs of all work done or caused to be done pursuant to the provisions of Section 102A.14 or Section 102A.16 assessed against the parcel or parcels of land upon which said building, structure, property or portion thereof is situated. Such costs shall include, in addition to the cost of barricading, securing, repairing, or demolishing the building and the clearing of the site, the cost to the City and County of San Francisco of administration and supervision of such work. See Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for applicable rates.

**102A.18 Report of Costs, Notice of Hearing on Confirmation.**

**102A.18.1 Preparation of delinquency report.** If any penalty or assessment imposed pursuant to Section 102A is not received within the required time period, the Building Official shall initiate proceedings to make the penalty or assessment, plus accrued interest, a special assessment lien against the real property which is the subject of the penalty or assessment. The Building Official shall prepare a delinquency report for the Board of Supervisors. For each delinquent account, the report shall contain the owner's name, the amount due, including interest, and a description of the real property. The report shall also indicate which of the delinquent accounts should be exempted from the lien procedure because of the small amounts involved, or because another debt collection procedure is more appropriate. The descriptions of the parcels shall be those used for the same parcels on the Recorder/Assessor's Office records for the current year.

**102A.18.2 Notice.** Five days prior to forwarding the delinquency report to the Board of Supervisors, the Building Official shall serve copies of the report in the manner prescribed in Section 102A.4 and shall post the report at the subject properties. Upon receipt of the report, the Board of Supervisors shall fix a time, date and place for hearing the report and any protests or objections thereto, and shall mail notice of the hearing not less than ten days prior to the date of hearing to each owner of real property described in the report.

**102A.19 Hearing and confirmation of report for special assessment of costs.**

**102A.19.1 Hearing and confirmation.** The Board of Supervisors shall hold a hearing on the report along with protests or objections by the representatives of the real property liable to be assessed for such delinquent accounts. The Board of Supervisors may make such revisions,

corrections, or modifications of the report as it may deem just, after which, by motion or resolution, the report shall be confirmed. The Board of Supervisor's decision on the report and on all protests or objections thereto shall be final and conclusive and shall constitute confirmation of the report; provided, however, that any delinquent account may be removed from the report by payment in full at any time prior to confirmation of the report. The Clerk of the Board of Supervisors shall cause the confirmed report to be verified in form sufficient to meet recording requirements.

**102A.19.2 Collection of assessment.** Upon confirmation of the report by the Board of Supervisors, the delinquent charges contained therein shall constitute a special assessment against the property identified in the report. Each such assessment shall be subordinate to all existing special liens previously imposed upon such property and shall be paramount to all other liens except those for State, County and municipal taxes with which it shall be in parity. The lien shall continue until the assessment and all interest due and payable thereon are paid. All laws applicable to the levy, collection and enforcement of municipal taxes shall be applicable to said special assessment.

**102A.19.3 Recordation charges.** The Clerk of the Board of Supervisors shall cause the confirmed and verified report to be recorded in the Assessor-Recorder's Office within 10 days of its confirmation. The special assessment lien on each parcel or property described in said report shall include additional charges for administrative expenses. See Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for Lien Recordation charges.

**102A.19.4 Filing with Controller and Tax Collector; distribution of proceeds.** After the report is recorded, the Clerk of the Board of Supervisors shall file a certified copy with the Controller and Tax Collector, whereupon it shall be the duty of said officers to add the amount of said special assessment to the next regular bill for taxes levied against said parcel or parcels, and thereafter said amount shall be collected at the same time and in the same manner as ordinary taxes are collected for the City and County of San Francisco, and shall be subject to the same penalties and the same procedures for foreclosure and sale in case of delinquency as is provided for property taxes.

**102A.19.5 Release of lien, recording fee.** Upon payment to the Tax Collector of the special assessment, the Tax Collector shall cause a release lien to be recorded with the Assessor-Recorder's Office, and from the sum collected pursuant to Section 102A.19.3 above, shall pay to the Assessor-Recorder's Office the required recording fee.

**102A.20 Continuance of Gas and Electricity.** In the event that electricity or gas service to a building, structure, property, or portion thereof is about to be discontinued by the utility company for nonpayment of bills, the Building Official, through the issuance of an Emergency Order, may order that the utility company continue said service to protect the life, health and safety of the occupants. Said order shall be issued pursuant to the provisions of Section 102A.16 of this code and shall remain in force for six months, unless otherwise specified by the Building Official.

   The funds for the continuance of said services shall be provided from the Repair and Demolition Fund. Said costs and administrative costs incurred by the City and County of San Francisco shall be assessed against the parcel or parcels of land upon which said building, structure or property is situated. See Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for applicable rate.

   If payment is not received from the property owner within the required time period, a Report of Costs pursuant to Section 102A.18 shall be prepared for all such costs. Submittal, confirmation,

recordation and collection of the special assessment shall follow the procedures provided in Section 102A.19.

The provisions of Section 102A.20 shall only apply to buildings, structures, property, or portions thereof for which the owner, and not the tenant, is responsible for payment of said utility bills.

# SECTION 103A – VIOLATIONS

It shall be unlawful for any person, firm or corporation to erect, construct, enlarge, alter, repair, move, improve, remove, convert or demolish, equip, use, occupy or maintain any building, structure, property, or portions thereof or cause or permit the same to be done in violation of this code.

Any person, the owner or the owner's authorized agent, who violates, disobeys, omits, neglects, or refuses to comply with, or resists or opposes the execution of any of the provisions of this code, shall be liable for a civil penalty, not to exceed $500 for each day such violation is committed or permitted to continue, which penalty shall be assessed and recovered in a civil action brought in the name of the people of the City and County of San Francisco by the City Attorney in any court of competent jurisdiction. Any penalty assessed and recovered in an action brought pursuant to this paragraph shall be paid to the City Treasurer and credited to the Department's Special Fund.

Any person, the owner or the owner's authorized agent, who violates, disobeys, omits, neglects, or refuses to comply with, or who resists or opposes the execution of any of the provisions of this code, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not exceeding $500, or by imprisonment not exceeding six months, or by both such fine and imprisonment, unless otherwise provided in this code, and shall be deemed guilty of a separate offense for every day such violation, disobedience, omission, neglect or refusal shall continue. Any person who shall do any work in violation of any of the provisions of this code, and any person having charge of such work who shall permit it to be done, shall be liable to the penalty provided.

It shall be unlawful for any person to interfere with the posting of any notice provided for in this code, or to tear down or mutilate any such notice posted by the Department.

**103A.1** Pursuant to Health and Safety Code Section 13112, any person who violates any order, rule or regulation of the state fire marshal is guilty of a misdemeanor punishable by a fine of not less than $100.00 or more than $500.00, or by imprisonment for not less than six months, or by both. A person is guilty of a separate offense each day during which he or she commits, continues or permits a violation of any provision of, or any order, rule or regulation of, the state fire marshal as contained in this code.

Any inspection authority who, in the exercise of his or her authority as a deputy state fire marshal, causes any legal complaints to be filed or any arrest to be made shall notify the state fire marshal immediately following such action.

**103A.2 Actions and proceedings.** Subject to other provisions of law, California Code of Regulations, Title 25, Division 1, Chapter 1 commencing with Section 1 and Health and Safety Code, Sections 17980 through 17995.5 address punishments, penalties and fines for violations of building standards in structures subject to the State Housing Law.

**103A.2.1 Actions and proceedings.** Subject to other provisions of law, California Code of Regulations, Title 25, Division 1, Chapter 2 commencing with Section 1000 and Health and

Safety Code, Section 18700 addresses punishments, penalties and fines for violations of building standards subject to the Mobilehome Parks Act.

**103A.2.2 Actions and proceedings.** Subject to other provisions of law, California Code of Regulations, Title 25, Division 1, Chapter 1 commencing with Section 600 and Health and Safety Code, Sections 17060 through 17062.5 address punishments, penalties and fines for violations of building standards subject to the Employee Housing Act.

**103A.3 Restrictions of unlawful residential demolition replacement.**

**103A.3.1 Demolition without permit.** Whenever the demolition of any building or structure containing one or more residential units takes place without the issuance of a demolition permit as required by this code, the site on which the unlawful demolition occurred shall be subject to the following restriction: For five years from the date of the unlawful demolition, no permit authorizing the construction or alteration of any building or structure for that site shall be issued, except for a permit for the construction or alteration of a building or structure with the same number of residential units, with the same proportion of residential to nonresidential units, and with the same or fewer square feet as the building or structure that was unlawfully demolished.

**103A.3.2 Definitions.** For the purposes of this section, the following definitions shall apply:

*DEMOLITION* means the total tearing down or destruction of a building containing one or more residential units, or any alteration which destroys or removes, as those terms are defined by the Building Official of the Department of Building Inspection, principal portions of an existing structure containing one or more residential units.

*PRINCIPAL PORTION* means that construction which determines the shape and size of the building envelope (such as the exterior walls, roof and interior bearing elements), or that construction which alters two-thirds or more of the interior elements (such as walls, partitions, floors or ceilings).

*RESIDENTIAL UNIT* means any dwelling unit, as defined in this code, or any guest room, as defined in the San Francisco Housing Code, other than the following:

1.   Any guest room in a building classified as a residential hotel pursuant to the Residential Hotel Unit Conversion and Demolition Ordinance.

2.   Any residential unit in a building where the demolition or alteration is required to comply with this code, the Housing Code or the City Planning Code.

**103A.3.3 Hearing.** The Building Official shall hold a hearing within a reasonable period of time after discovering that an unlawful demolition may have taken place. The Building Official shall cause notice to be given to the owners of the affected property, and to the owners and occupants of property on the same block as the affected property's site and across the street from the site for one block (that is, on lots which abut the same street as that which abuts the site to the nearest intersections on either side of the site), using the names and addresses of the owners as shown on the last assessment rolls of the City and County of San Francisco. For corner lots, notice shall be provided to the owners and occupants of property on the same block as the affected property's site and for one block along both streets which the lot abuts (that is, on lots which abut the two streets which the site abuts to the nearest intersection on either side of the site) and, in addition, to the other corner lots at the intersection where the site is located. Notice may be given either by personal service or any mail, not less than 30 days before the scheduled date of the hearing. Immediately after giving such notice, the Building Official shall cause a copy of the notice, printed on a card of not less than 8 inches by 10 inches (203.2 mm × 254 mm), to be posted in a conspicuous place on the affected property. The notice shall specify the date and nature of the hearing and that the following issues will be determined at the hearing: whether an unlawful

demolition has taken place as described in Sections 103A.3.1 and 103A.3.2, and, if so, the number of residential units that existed on the site, the proportion of residential to nonresidential units that existed on the site and the total square feet of the building or structure that existed on the site. Upon determination that an unlawful demolition has taken place, the Building Official shall promptly record a notice in the official records of the Recorder of the City and County of San Francisco; the recorded notice shall state that the property is subject to the restrictions set forth in Section 103A.3.1 of this code.

Upon determination that an unlawful demolition has taken place, the Building Official shall assess the owner all costs incurred by the City and County of San Francisco in detecting violations of this section and conducting the Building Official's hearing by sending a notice of payment due to the property owner at the address shown on the City's last assessment rolls. The notice shall list the costs incurred by the City in detecting violations of the ordinance and conducting the Building Official's hearing, advise the owner that he or she is liable for these costs and advise the owner that payment to the City is due within 60 days of the mailing date of the notice. The notice shall also advise that, if payment of the costs is not received within 30 days of the due date, a lien may be imposed on the property pursuant to the report and confirmation procedure set forth in Sections 102A.18 and 102A.19 of this code.

**103A.3.4 Civil penalties.** Any agent, contractor or other person acting on behalf of the owner of a building or structure containing one or more residential units who causes or permits the demolition of the building or structure with the knowledge that a demolition permit has not been issued as required by this code shall be subject to a civil penalty of $5,000. Any owner who causes or permits the demolition of his or her building or structure containing one or more residential units with the knowledge that no demolition permit has been issued as required by this code shall be subject to a civil penalty of $1,000.

**103A.3.5 Penalties nonexclusive.** The penalties set forth in this section are not exclusive, but are in addition to any other penalties set forth in this code.

**103A.4 Vacant or abandoned buildings – Annual registration; registration fee; maintenance and security requirements.**

**103A.4.1 Definition.** A building shall be defined as a vacant or abandoned if it (1) is unoccupied and unsecured; or (2) is unoccupied and secured by boarding or other similar means; or (3) is unoccupied and unsafe as defined in Section 102A of this Code; or (4) is unoccupied and has multiple code violations; or (5) has been unoccupied for over 30 days. A building which is partially unoccupied and has been cited for blight under Chapter 80 of the San Francisco Administrative Code, shall also be deemed a vacant or abandoned building that is subject to this Section. Commercial Storefronts, as defined in Section 103A.5.1 of this Code, located within vacant or abandoned buildings shall be subject to the enforcement provisions in Sections 103A.5-103A.5.6 of this Code.

For purposes of this Section 103A.4 a building shall not be considered vacant or abandoned if:

(1)   There is a valid building permit for repair, rehabilitation, or construction of a building on the parcel and the owner completes the repair, rehabilitation, or construction within one year from the date the initial permit was issued; or

(2)   The building complies with all codes, does not contribute to blight as defined in Chapter 80 of the San Francisco Administrative Code, is ready for occupancy, and is actively being offered for sale, lease, or rent.

(3)   The building complies with all codes, does not contribute to blight as defined in Chapter 80 of the San Francisco Administrative Code, and is undergoing a probate process that does not

17

exceed two years. Upon expiration of the two-year period, the building shall become subject to the requirements of Section 103A.4.

**103A.4.2 Property owner's obligation to register a vacant or abandoned building.** The owner of a building defined as vacant or abandoned under Section 103A.4.1 shall register that building with the Department 30 days after it has become vacant or abandoned on a form provided by the Department. The form shall describe the methods by which the owner has secured the property against unauthorized entry, declare any future plans for the property, state whether or not there is fire and liability insurance coverage, and provide such other information as the Department may require. A registration fee shall be paid at the time of registration and annually thereafter. See Section 110A, Table 1A-J for applicable fee.

**103A.4.3 Notice.** Whenever the Director has probable cause to believe, based upon an inspection, complaint, or report from another agency of the City and County of San Francisco or other governmental agency, that a building is vacant or abandoned and it has not been registered as required by this Section 103A.4, the Director shall serve the owner of record, as shown on the Assessor's Records, or authorized agent with a written notice requiring the owner to register the building with the Department as vacant or abandoned and pay the registration fee within the period of time specified in the notice, which shall be no greater than 30 days.

**103A.4.4 Sign posting.** The owner of record of the vacant or abandoned building is required to post a sign at the front of the building, in a conspicuous location protected from the weather, that provides the current name, address, and phone number of the owner of record and authorized agent if different from the owner. If a notice of default or foreclosure has been recorded for the property, the lender's name, address, and telephone number must also be provided. The sign shall be no smaller than 8-1/2 inches by 11 inches.

**103A.4.5 Maintenance and security requirements.** The following maintenance and security requirements shall apply to a vacant or abandoned building. The Director has the discretion to modify these requirements in the case of a partially vacant building, and to modify or waive some or all of these requirements in the case of a building that has been damaged by fire, a natural disaster, or other calamity.

**103A.4.5.1 Maintenance of property – exterior.** The property owner shall actively maintain and monitor the exterior of the building and the grounds so that they remain in continuing compliance with all applicable codes and regulations, and do not contribute to and are not likely to contribute to blight as defined in Chapter 80 of the Administrative Code. Active maintenance and monitoring shall include, but not be limited to:

  (1)  Maintenance of landscaping and plant materials in good condition;

  (2)  Regular removal of all exterior trash, debris, and graffiti;

  (3)  Maintenance of the exterior of the building in a good condition that is structurally safe and preserves the physical integrity of the structure, including but not limited to paint and finishes, foundation, roof, chimneys, flues, gutters, downspouts, scuppers, flashing, skylights, windows, exterior stairs and decks;

  (4)  Prevention of criminal activity on the premises and trespass by unauthorized persons; and

  (5)  Turning off all utilities that are not necessary for the upkeep and maintenance of the building.

**103A.4.5.2 Maintenance of property – interior.** The property owner shall preserve the interior of the building from damage by the elements or plumbing leaks, and keep it free from accumulation of garbage and other debris, and from infestation by rodents, insects, or other pests.

**103A.4.5.3 Security.** The building shall be secured against unauthorized entry. The methods of security shall be as approved by the Director, who shall take into consideration whether the property has been cited for nuisance activities or criminal conduct by another department of the City and County of San Francisco or other government agency.

**103A.4.6 Insurance.** The owner of record shall maintain whatever fire and liability insurance coverage the Director determines is necessary. Any insurance policy shall require notice to the Department in the event of cancellation of insurance or a reduction in coverage.

**103A.4.7 Violation a public nuisance; enforcement.** A property in violation of the provisions of this section is deemed to be a public nuisance and subject to enforcement by the Department and penalties under Section 102A and 103A of this Code or under other applicable sections of the San Francisco Municipal Code.

**103A.5 Vacant or Abandoned Commercial Storefronts – Annual Registration; Registration Fees; Maintenance and Security Requirements.**

**103A.5.1 Definitions.** For the purposes of Section 103A.5, including Sections 103A.5.1-103A.5.7:

   *COMMERCIAL STOREFRONT.* A Commercial Storefront shall be any area within a building that may be individually leased or rented for any purpose other than Residential Use as defined in Planning Code Sections 790.88 and 890.88.

   *VACANT OR ABANDONED.* A Commercial Storefront shall be Vacant or Abandoned if it (1) is unoccupied and unsecured; or (2) is unoccupied and secured by boarding or other similar means; or (3) is unoccupied and unsafe as defined in Section 102A of this Code; or (4) is unoccupied and has multiple code violations; or (5) has been unoccupied for over 30 days. Notwithstanding the foregoing sentence, a Commercial Storefront shall not be considered Vacant or Abandoned if

   (1)  There is a valid building permit for repair, rehabilitation, or construction of the Commercial Storefront and the owner completes the repair, rehabilitation, or construction within one year from the date the initial permit was issued, unless the Department, in its sole discretion, determines that the owner needs additional time to complete the repair, rehabilitation, or construction of the Commercial Storefront; or

   (2)  The owner or leaseholder has filed an application for, and is actively seeking to obtain, authorization, permits, or a license required by state or local law permitting the lawful use and occupancy of the Commercial Storefront.

**103A.5.2 Property owner's obligation to register a vacant or abandoned commercial storefront; registration fee.** The owner of a Vacant or Abandoned Commercial Storefront shall, within 30 days after it has become vacant or abandoned, register the Commercial Storefront with the Department on a form provided by the Department. The form shall describe the methods by which the owner has secured the Commercial Storefront against unauthorized entry, provide a contact phone number for the Commercial Storefront owner or party responsible for maintenance of the Commercial Storefront, state the most recent legal use of the Commercial Storefront, state the square footage of the Commercial Storefront, declare any future plans for the Commercial Storefront, state whether there is fire and liability insurance coverage, and provide such other information as the Department may require. The owner shall pay an annual registration fee, which shall be due when the owner submits the registration form to the Department ("registration payment deadline"). The registration payment deadline will serve as the date for subsequent annual renewals of registration each year the Commercial Storefront remains Vacant or Abandoned ("annual renewal date"). The annual registration fee shall be paid on or before the

annual renewal date. However, if the owner rents the Commercial Storefront to a tenant who occupies the premises in a manner that complies with all provisions of state and local law prior to the registration payment deadline, the Commercial Storefront shall be removed from the Department's registry and the owner shall be refunded up to half of the registration fee based on any remaining days before the Commercial Storefront's annual renewal date. The registration fee shall be equal to the amount due under Section 103A.4.2 of this Code. See Section 110A, Table 1A-J for applicable fees.

**103A.5.3 Annual Report.** The owner of a registered Vacant or Abandoned Commercial Storefront shall provide a report from a licensed professional confirming the storefront's interior and exterior has been maintained, as specified in Sections 103A.4.5.1 and 103A.4.5.2 of this Code ("annual report"). The annual report shall be provided to the Department when the owner renews the storefront's registration and pays the annual renewal fee.

**103A.5.4 Maintenance of vacant or abandoned commercial storefront registry.** The Department shall maintain a registry of all Vacant or Abandoned Commercial Storefronts within the City and shall furnish a copy of the registry to the Office of Economic and Workforce Development at least once per fiscal quarter.

**103A.5.5 Notice.** Whenever the Director has probable cause to believe, based upon an inspection, complaint, or report from another agency of the City or other governmental agency, that a Commercial Storefront is Vacant or Abandoned and has not been registered as required by Section 103A.5.2, the Director shall serve the owner of record, as shown on the Assessor's Records, or authorized agent with a written notice requiring the owner to register the Commercial Storefront with the Department as Vacant or Abandoned and pay the registration fee within the period of time specified in the notice, which shall be no greater than 30 days. The Department shall issue a Notice of Violation ("NOV") pursuant to Section 102A.4 of this Code to owners that fail to register within the period of time specified in the notice. See Section 110A, Table 1A-K, Failure to register vacant commercial storefront, for the applicable penalty.

**103A.5.6 Sign posting, maintenance, security, and insurance.** All requirements listed in Sections 103A.4.4-103A.4.6 of this Code shall also apply to Vacant or Abandoned Commercial Storefronts. All such requirements shall be fulfilled by the owner within 30 days of the Commercial Storefront becoming Vacant or Abandoned, or within 30 days of the issuance of notice to register.

**103A.5.7 Violation a public nuisance; enforcement.** A Commercial Storefront in violation of this Section 103A.5, including Sections 103A.5.1-103A.5.7, is deemed to be a public nuisance and subject to enforcement by the Department and penalties under Sections 102A and 103A and Section 110A, Table 1A-K of this Code or other applicable sections of the Municipal Code.

**103A.6 Expanded Compliance Control and permit review.**

**103A.6.1 Significant violation tracking reports.** When a building inspector issues a Notice of Violation in which there is an instance of:

  (1)  Misrepresentation of existing conditions or project scope that results in circumvention of notification or review requirements;

  (2)  Structural work or demolition of structural features without or beyond the scope of a building permit;

  (3)  Work under permit performed by a party without required license; or

  (4)  Other substantial non-compliance;

Inspection Services Division shall log the violation and identify all individuals, agents, and other entities associated with the permit and/or project in the Permit Tracking System or known to be

associated with the permit and/or project at the time the Notice of Violation is issued in the Compliance Control Tracking File maintained by the Inspection Services Division. The Compliance Control Tracking File is for internal purposes only; an individual, agent, or entity's presence in the file does not indicate responsibility for any violation or misconduct.

**103A.6.2 Candidates for Expanded Compliance Control.**

(1)   The Inspection Services Division shall review the Compliance Control Tracking File on a monthly basis to determine if any project, individual, agent, or entity has been associated with three or more reported violations described in 103A.6.1 within the last 18 months. Any such project, individual, agent, or entity shall be a candidate for Expanded Compliance Control.

(2)   Even if the three-or-more-violations standard is not met during the 18-month period, the Department, in consultation with the City Attorney, may designate a project, individual, agent, or entity as a candidate for Expanded Compliance Control for any violation or violations that the Department determines, individually or together, to be egregious and create significant risk to health, safety, or property.

**103A.6.3 Expanded Compliance Control List.**

**103A.6.3.1 Factors.** In determining whether to include any candidate on the Expanded Compliance Control List, the following factors shall be considered: the candidate's role and conduct that contributed to the violations; any impacts on individual or public health, and safety; whether the misrepresentation of existing conditions or the misrepresentation of project scope was reckless or intentional to avoid permit review or notification requirements; the extent of the demolition or work that occurred without or beyond the scope of a building permit or without the necessary license or certification; any impacts on historically significant structures; prospective undervaluation of the construction cost that resulted in lower permit fees from the violations; and the number, frequency, and severity of violations.

**103A.6.3.2 Process.** For each project, individual, agent, or entity designated as a candidate for Expanded Compliance Control, the following actions shall be taken:

(1)   Inspection Services staff, designated by the Director of the Department of Building Inspection, shall notify the candidate and request any exculpatory information as to why Expanded Compliance Control is not warranted and shall draft a summary report detailing the violation(s) and exculpatory evidence or arguments, if any, relevant to whether the candidate warrants Expanded Compliance Control.

(2)   The summary report shall conclude with a determination:

(a)   that the candidate should be placed on the Expanded Compliance Control List, and provide written findings, including but not limited to findings in response to the factors described in 103A.6.3.1, supporting that determination; or

(b)   that the candidate should not be placed on the Expanded Compliance Control List, and provide written findings, including but not limited to findings in response to the factors described in 103A.6.3.1, for why the candidate does not warrant Expanded Compliance Control.

(3)   The Director of the Department of Building Inspection shall review all Expanded Compliance Control determinations made by designated staff and shall make a final determination either affirming or overruling the ir determination. The Director shall either adopt the staff findings or issue the Director's own written findings detailing the basis for the final determination. The Department shall notify the candidate in writing of the Director's final determination and shall post the final determination on the Department's website in a manner that complies with section 104A.6.

(4)   Any person may appeal the Director's final determination to the Building Inspection Commission pursuant to the provisions of Chapter 77 of the Administrative Code.

(5)   The Director shall maintain the Expanded Compliance Control List on the Department's website and shall provide the list to the Building Inspection Commission on a quarterly basis commencing when the first project, individual, agent, or entity is placed on the list.

**103A.6.4 Expanded Compliance Control Provisions.**

**103A.6.4.1 Duration.** Any project, individual, agent, or entity placed on the Expanded Compliance Control List ("listee") shall remain on the list for five years. Any subsequent significant violation(s), as defined in subsection 103A.6.1, by a listee shall extend the period of Expanded Compliance Control for that listee by five years from the date of the subsequent violation(s).

**103A.6.4.2 Measures.** Upon placing a project, individual, agent, or entity on the Expanded Compliance Control List, the Department shall take the following actions:

(1)   Refer the listee to any applicable licensing board or regulatory agency with the Director's final determination and written findings;

(2)   Require all existing permit applications and addenda and any new applications or addenda submitted by or containing reference to the listee undergo Expanded Compliance Control by senior Plan Review Services staff and multi-station (all permit stations applicable to a given permit) review at intake and after the Planning Department approves the Site Permit (if applicable); and notify all parties listed on the applications or addenda for these permits of the Expanded Compliance Control requirement;

(3)   Require site inspections by the Department of Building Inspection and Planning Department prior to issuing any permit submitted by or containing reference to the listee;

(4)   Require that a licensed contractor be named on the permit prior to issuance, unless the applicant is filing for the permit as an Owner-Builder, in conformance with California Health and Safety Code Section 19825;

(5)   Dedicate a Senior Inspector to perform inspections and respond to any complaints or requests regarding the listee; and

(6)   If warranted, consult with the City Attorney about any additional enforcement actions.

**103A.6.5 Permit review staff training.** No later than September 30, 2021, the Department shall provide written guidance and conduct training sessions for all plan review staff on how to recognize and flag permits that signal potential abuse.  All guidance and training materials and procedures shall be prepared with a goal of being sensitive to the cultural differences of individuals, agents, and other entities associated with permits and/or projects as well as current and future building occupants, workers, or adjacent neighbors. Further, the Department shall create and implement guidelines for staff to escalate any permits that indicate potential abuse to senior review staff for their review and refer such permits to the Planning Department to ensure they are consistent with preceding Planning Department approvals.

# SECTION 104A – ORGANIZATION AND ENFORCEMENT

**104A.1 Enforcement agency.** The Department of Building Inspection shall be the administering and enforcing agency under this code.

**104A.2 Powers and duties of Building Official.**

**104A.2.1 General.** The Building Official is hereby authorized and directed to enforce all the provisions of this code. For such purposes, the Building Official shall have the powers of a law enforcement officer.

Pursuant to Health and Safety Code Section 13108, upon the written request of the chief fire official of any city, county or fire-protection district, the State Fire Marshal may authorize such chief fire official and his or her authorized representatives, in their geographical area of responsibility, to make fire-prevention inspections of state-owned or state-occupied buildings, other than state institutions, for the purpose of enforcing the regulations relating to fire and panic safety adopted by the State Fire Marshal pursuant to this section and building standards relating to fire and panic safety published in the California Building Standards Code. Authorization from the State Fire Marshal shall be limited to those fire departments or fire districts which maintain a fire-prevention bureau staffed by paid personnel.

Pursuant to Health and Safety Code Section 13108, any requirement or order made by any chief fire official who is authorized by the State Fire Marshal to make fire-prevention inspections of state-owned or state occupied buildings, other than state institutions, may be appealed to the State Fire Marshal. The State Fire Marshal shall, upon receiving an appeal and subject to the provisions of Chapter 5 (commencing with Section 18945) of Part 2, 5 of Division 13 of the Health and Safety Code, determine if the requirement or order made is reasonably consistent with the fire and panic safety regulations adopted by the Office of the State Fire Marshal and building standards relating to fire and panic safety published in the California Building Code.

The Building Official shall have the power to render interpretations of this code and to adopt and enforce rules and supplemental regulations to clarify the application of its provisions. Such interpretations, rules and regulations shall be in conformance with the intent and purpose of this code. Such rules and regulations, commonly referred to as Code Rulings and Administrative Bulletins supplemental to this code shall not take effect until approved by the Building Inspection Commission and signed by the Building Official except in unusual circumstances where the Building Official has determined that there is an immediate need to protect the public health and safety. When the Building Official finds that such circumstances exist, the Building Official may order immediate enforcement of a particular rule or regulation. The Building Official shall arrange for a subscription service to such rules and regulations, the entire cost of which is to be borne by the subscribers.

*NOTE:* "Code Rulings" and "Administrative Bulletins" may be found in the Department's Rules and Regulations printed at the back of this code.

**104A.2.2 Deputies.** In accordance with prescribed procedures and with the approval of the appointing authority, the building official may appoint such number of technical officers and inspectors and other employees as shall be authorized from time to time. The building official may deputize such inspectors or employees as may be necessary to carry out the functions of the code enforcement agency.

**104A.2.3 Right of entry.** When it is necessary to make an inspection to enforce the provisions of this code or other codes or ordinances, or when the Building Official has reasonable cause to believe that there exists in a building or upon a premises a condition that is contrary to or in violation of this code or other codes or ordinances that makes the building or premises unsafe, dangerous or hazardous, the Building Official may enter the building or premises at reasonable times to inspect or to perform the duties imposed by this code or other codes or ordinances, provided that if such building or premises be occupied that credentials be presented to the occupant and entry requested. If such building or premises be unoccupied, the Building Official shall first make a reasonable effort to locate the owner or other person having charge or control of the building or premises and request entry. If entry is refused, the Building Official shall have recourse to the remedies provided by law to secure entry.

23

**104A.2.4 Stop orders.**

   (a)   Whenever any work is being done contrary to the provisions of this code, or other pertinent laws or ordinances implemented through the enforcement of this code, the building official may order the work stopped by notice in writing served on any persons engaged in the doing or causing such work to be done, and any such persons shall forthwith stop such work until authorized by the building official to proceed with the work.

   (b)   If the building official determines that a project has a history of repeated violations of this code or other pertinent laws or ordinances implemented through the enforcement of this code, the building official may stop all work on the project until all the code violations have been fully investigated and resolved. The director of any department with permitting authority for the project, including but not limited to the Director of Public Works and the Director of Planning, may request the building official to stop all work on the project pending an investigation and resolution of the code violations at issue.

**104A.2.5 Occupancy violations.** Whenever any building, structure, property or portion thereof regulated by this code is being used contrary to the provisions of this code or the code in effect at the time the use was commenced, the Building Official may order such use discontinued and the building, structure, property or portion thereof, vacated by notice served on any person involved in said use or causing such use to be continued. Such person shall discontinue the use within the time prescribed by the Building Official after receipt of such notice to make the building, structure, property or portion thereof, comply with the requirements of this code; provided, however, that in the event of an unsafe building, structure or property the provisions of Section 102A shall apply.

**104A.2.6 Liability.** The Building Official charged with the enforcement of this code, acting in good faith and without malice in the discharge of the duties required by this code or other pertinent law or ordinance shall not thereby be rendered personally liable for damages that may accrue to persons or property as a result of an act or by reason of an act or omission in the discharge of such duties. A suit brought against the building official or employee because of such act or omission performed by the building official or employee in the enforcement of any provision of such codes or other pertinent laws or ordinances implemented through the enforcement of this code or enforced by the code enforcement agency shall be defended by this jurisdiction until final termination of such proceedings, and any judgment resulting therefrom shall be assumed by this jurisdiction.

   This code shall not be construed to relieve from or lessen the responsibility of any person owning, operating or controlling any building or structure for any damages to persons or property caused by defects, nor shall the code enforcement agency or its parent jurisdiction be held as assuming any such liability by reason of the inspections authorized by this code or any permits or certificates issued under this code.

**104A.2.7 Modifications.** When there are practical difficulties involved in carrying out the provisions of this code, the building official may grant modifications for individual cases. The building official shall first find that a special individual reason makes the strict letter of this code impractical and that the modifications are in conformance with the intent and purpose of this code and that such modifications does not lessen any fire-protection requirements or any degree of structural integrity. The details of any action granting modifications shall be recorded and entered in the files of the code enforcement agency.

**104A.2.7.1 Local equivalencies.** Due to unique topographical conditions in the City and County of San Francisco, including but not limited to the City's built environment and historic pattern of

development, equivalencies to certain code requirements have been developed by the Department and are approved on an individual basis if specific conditions are met. Wherever in this code a reference to Local Equivalency is made, details of the equivalency to the specific code requirement may be found in the Department's Rules and Regulations printed at the back of this code.

**104A.2.8 Alternate materials, design, and methods of construction.** The provisions of this code are not intended to prevent the use of any material, alternate design or method of construction not specifically prescribed by this code, provided any alternate has been approved and its use authorized by the building official.

The building official may approve any such alternate, provided the building official finds that the proposed design is satisfactory and complies with the provisions of this code and that the material, method or work offered is, for the purpose intended, at least the equivalent of that prescribed in this code in suitability, strength, effectiveness, fire resistance, durability, safety and sanitation.

The building official shall require that sufficient evidence or proof be submitted to substantiate any claims that may be made regarding its use. The details of any action granting approval of an alternate shall be recorded and entered in the files of the code enforcement agency.

**104A.2.8.1 Alternate for materials, design, tests and methods of construction.** Subject to other provisions of law, alterations, repairs, replacements, occupancy, use and maintenance provisions, and moved buildings are referenced in the State Housing Law, Health and Safety Code, Sections 17912, 17920.3, 17922(c), 17922.3, 17958.8 and 17958.9 and California Code of Regulations, Title 25, Chapter 1 commencing with Section 1. Health and Safety Code Sections 17958.8 and 17958.9 are repeated here to provide clarity and read as follows:

**Section 17958.8.** Local ordinances or regulations governing alterations and repair of existing buildings shall permit the replacement, retention, and extension of original materials and the use of original methods of construction for any building or accessory structure subject to this part, including a hotel, lodging house, motel, apartment house, or dwelling, or portions thereof, as long as the portion of the building and structure subject to the replacement, retention, or extension of original materials and the use of original methods of construction complies with the building code provisions governing that portion of the building or accessory structure at the time of construction, and the other rules and regulations of the department or alternative local standards governing that portion at the time of its construction and adopted pursuant to Section 13143.2 and the building or accessory structure does not become or continue to be a substandard building.

**Section 17958.9.** Local ordinances or regulations governing the moving of apartment houses and dwellings shall, after July 1, 1978, permit the retention of existing materials and methods of construction so long as the apartment house or dwelling complies with the building standards for foundation applicable to new construction, and does not become or continue to be a substandard building.

**104A.2.8.2 Reserved.**

**104A.2.8.3 Approval and evaluation of materials or systems, methods and types of construction, fabricators, and testing or plan review agencies. General.** This section is applicable to evaluations conducted and to approvals granted by the Department, for use in San Francisco, for alternate materials not covered in this code; for plant fabrications of building components which normally require special inspection; for testing or plan review agencies; for evaluation of materials, product methods and types of construction.

Any approval shall be void if, after approval, the design or nature of the device or material, the method of construction, the quality control program, or the capabilities of the agency, are found to deviate in any way from that represented to the Department or the conditions of approval, without first obtaining written authorization from the Building Official.

Any approval may be suspended or revoked if the Building Official finds the approved device or material, method of construction, or quality control program does not meet the requirements of Sections 104A.2.8 or 1701 to such an extent that the approval should not have been granted. See Section 110A, Table 1A-J – Product Approvals – for applicable fees. The fees specified are application fees and are not refundable regardless of whether the action taken is an approval or a denial or whether a subsequent request for hearing by the Board of Examiners is filed, except for the case where an application was filed at the request or on the advice of the Department for situations which subsequently are determined to not require an approval.

Each approval shall become null and void unless renewed within the specified period.

**104A.2.9 Tests.** Whenever there is insufficient evidence of compliance with any of the provisions of this code or evidence that any material or construction does not conform to the requirements of this code, the building official may require tests as proof of compliance to be made at no expense to this jurisdiction.

Test methods shall be as specified by this code or by other recognized test standards. If there are no recognized and accepted test methods for the proposed alternate, the building official shall determine test procedures.

All tests shall be made by an approved agency. Reports of such tests shall be retained by the building official for the period required for the retention of public records.

**104A.2.10 Cooperation of other officials and officers.** The building official may request, and shall receive, the assistance and cooperation of other officials of this jurisdiction so far as is required in the discharge of the duties required by this code or other pertinent law or ordinance.

**104A.2.11 Code revision process.** An amendment to the text of the Building Code, Electrical Code, Housing Code, Plumbing Code, Mechanical Code, Green Building Code, or other Code enforced by the Department of Building Inspection may be initiated by introduction by a member of the Board of Supervisors of a proposed ordinance approved as to form by the City Attorney, or by a recommendation of the Building Official to the Building Inspection Commission pursuant to Section 104A.2.11.2.

**104A.2.11.1. Code revisions initiated by the Board of Supervisors; transmittal to the Building Inspection Commission.** Upon introduction of an ordinance amending the Codes cited above in Section 104A.2.11, the Clerk of the Board of Supervisors shall transmit the proposed ordinance to the Building Inspection Commission for a public hearing pursuant to Section D3.750-5 of the San Francisco Charter.

**104A.2.11.1.1. Commission hearing and recommendation.** The Building Inspection Commission shall hold a hearing on the proposed code amendment or amendments and make a recommendation of approval or disapproval of the proposed amendment(s), in whole or in part, to the Board of Supervisors within 90 days from the date of their referral by the Board to the Commission. Failure of the Commission to act within the prescribed time shall be deemed to constitute disapproval, except that the Board may, by resolution, extend the prescribed time within which the Commission is to render its decision. In the case of Commission's approval or disapproval, in whole or in part, of the proposed amendment(s), the Board may adopt the ordinance by majority vote.

**104A.2.11.1.2. Referral back to the Building Inspection Commission.** In acting upon any proposed amendment to the text of the Codes cited in Section 104A.2.11 above, the Board of Supervisors may modify said amendment but shall not take final action upon any material modification that has not been approved or disapproved by the Building Inspection Commission. If the Board of Supervisors makes such a material modification, the amended ordinance approved as to form by the City Attorney shall be referred back to the Commission. In all such cases of referral back, the amendment with the proposed modification shall be heard by the Building Inspection Commission according to the requirements for a new proposal set forth in Section 104A.2.11.1.1.

**104A.2.11.2. Code Revisions recommended by the Building Official.** The Building Official shall transmit to the Building Inspection Commission, at intervals not exceeding three years, recommendations for changes to this code, based on studies of the following:

1.   Requests of the Board of Examiners for modifications from the code, and for approvals of alternate materials, alternate designs and methods of construction.

2.   Code changes recommended by the Board of Examiners.

3.   Code changes recommended by the Code Advisory Committee or other bodies subordinate to the Building Inspection Commission.

4.   Results obtained and problems encountered in legal actions taken to correct code violations.

5.   Changes or improvements in materials, methods of construction or design, and changes proposed by interested persons.

6.   Investigations of fire and structural damage to buildings, and of determination of unsatisfactory building performance.

7.   Periodic changes to the California Building Code and other State regulations which may affect this code.

8.   Administrative Bulletins and Code Rulings currently in effect.

9.   Violations of the code found on inspections or investigations.

**104A.3 Service of notices.**

**104A.3.1 Notices sent.** Whenever a notice is required to be given under this code, unless different provisions are otherwise specifically made, such notice may be given either by personal delivery to the person to be notified or by deposit in the United States mail in a sealed envelope, postage prepaid, addressed to the person to be notified at such person's last known business or residence address. Service by mail shall be deemed to be have been completed at the time of deposit in the United States mail.

**104A.3.2 Proof of notice.** Proof of giving any notice may be made by the certificate of any officer or employee of the City and County of San Francisco or by affidavit of any person over the age of eighteen years, which shows service in conformity with the San Francisco Municipal Code or other provisions or law applicable to the subject matter concerned.

**104A.4 Code enforcement and rehabilitation fund.**

**104A.4.1 Establishment.** There is hereby established in the Treasury of the City and County of San Francisco a special fund to be known and designated as the Code Enforcement and Rehabilitation Fund, into which shall be deposited all funds allocated by the State Controller from the Local Agency Code Enforcement and Rehabilitation Fund.

**104A.4.2 Use of funds.** The Code Enforcement and Rehabilitation Fund shall be used exclusively to defray costs incurred in the enforcement of local code provisions mandated by State law.

**104A.5 Building Inspection Fund.** All fees collected pursuant to this code shall be deposited into the Building Inspection Fund established by the City Controller pursuant to Section 10.117-78 of the San Francisco Administrative Code. This fund shall be used by the Department, subject to the approval of the Building Inspection Commission, to defray costs incurred for, but not limited to, personnel, supplies, and equipment used in evaluating the applications, maintaining files and records, and for disseminating information, reviewing plans and making inspections to determine compliance with the conditions of approvals. Any charges established by the Building Official or the Building Inspection Commission for copies of approvals, publications or other Department records shall be deposited into this fund.

**104A.6 Multiple Languages in Notices.**

**104A.6.1 Definitions.** For the purposes of this section, the following definitions shall apply:

*DEDICATED TELEPHONE NUMBER* means a telephone number for a recorded message in a language of limited English proficient residents. The recorded message shall advise callers as to what information they should leave on the message machine so that the Department may return the call with information about the notice in the requested language.

*LANGUAGE OF LIMITED ENGLISH PROFICIENT RESIDENTS* means each of the two languages other than English spoken most commonly by San Francisco residents of English proficiency as determined by the Planning Department based on its annual review of United States census and other data as required by San Francisco Administrative Code Section 91.2(j).

**104A.6.2 Applicability of multiple language requirement.** The requirements of Section 104A.6.3 shall apply to the following notices:

1.  Notices required by Section 103A.3.3 that are mailed or personally served.
2.  Notices required by Section 106A.3.2.2.1.
3.  Notices required by Section 106A.3.2.3.
4.  Notices required by Section 106A.4.6, Subsection 2.
5.  Notices required by Section 106A.4.6, Subsection 3.
6.  Notices required by San Francisco Existing Building Code Section 328.3.2.
7.  Any other notices required by the Building Code to be mailed or personally served to property owners or occupants adjacent to or near a property for which Building Department development approval is sought.

**104A.6.3 Multiple language statement in notices.** The Building Department shall prepare a cover sheet as specified below and include it with each notice of the type listed in Section 104A.6.2 that is mailed or personally served. For posted notices listed in Section 104A.6.2, the Department shall post the cover sheet next to the posted notice. The cover sheet shall contain the following statement, printed in each language of limited English proficient residents and, to the extent available Department resources allow, such other languages that the Department determines desirable, with the name of the language in which the statement is made, the time period for a decision on the matter and the dedicated telephone number for the language of the statement inserted in the appropriate blank spaces:

"The attached notice is provided under the Building Code. It concerns property located at the address shown on the attached notice. A hearing may occur, a right to request review may expire or a development approval may become final unless appealed within [insert days until a hearing or deadline for requesting review or appealing a decision]. To obtain information about this notice in [insert name of language] please call [insert dedicated telephone number]. Please be advised that the Building Department will require at least one business day to respond to any call. Provision of information in [insert name of language] is provided as a service by the

Building Department and does not grant any additional rights or extend any time limits provided by applicable law."

The Department shall maintain a dedicated telephone number for each language of limited English proficient residents. The Department shall place a return telephone call by the end of the following business day to each person who leaves a message concerning a neighborhood notice at a dedicated telephone number and, when the caller is reached, provide information to the caller about the notice in the language spoken by the caller.

# SECTION 105A – BOARDS, COMMISSIONS AND COMMITTEES

**105A.1 Board of Examiners.**

**105A.1.1 Establishment.** There is hereby created a Board of Examiners who are qualified by experience and training to pass upon matters pertaining to building design and construction. The functions of the Board of Examiners shall be:

**105A.1.1.1** To determine whether specific new materials, new methods and types of construction comply with the standards of safety established by this code, and to recommend the approval or disapproval of such new materials, new methods and types of construction.

**105A.1.1.2** To determine whether variances from the requirements of this code should be approved for specific cases where new materials, new methods and types of construction are not involved, and where the enforcement of compliance therewith would result in unreasonable hardship.

**105A.1.1.3** To recommend to the Building Official reasonable interpretations of the provisions of this code.

**105A.1.1.4** To hear appeals from any Abatement Order of the Building Official involving construction methods, assemblies or materials or where safety is involved.

A copy of the findings of the Board of Examiners shall be forwarded to the Abatement Appeals Board.

Matters involving compliance with Chapters 16B and 16C and other related structural provisions of this code regulating the strengthening of unreinforced masonry bearing wall buildings shall be heard by the Board of Examiners as provided in Section 105A.1.

**105A.1.2 Definition.** The term "***standard of safety***," as used in this section, shall mean the general degree of safety conforming to the provisions of this code as required to safeguard life or limb, health and public welfare.

**105A.1.3 Intent.** It is the intent of this section that new materials, new methods and types of construction which do not comply with the standards of safety established by this code shall in no event be approved; but that the requirements of this code, other than those involving such standards of safety, may be modified or waived under the circumstances set forth in this section.

**105A.1.4 Membership.** The Board of Examiners shall consist of 13 members, which shall include one plumbing member and one electrical member, who shall serve only when cases related to plumbing or electrical code issues are being considered, and one high-rise sprinkler member who shall serve only when cases related to high-rise sprinkler issues are being considered, and three seismic improvement members who shall serve only when cases related to San Francisco Existing Building Code Chapter 4D seismic retrofit issues are being considered. All members are to be appointed by the Building Inspection Commission and shall serve at the Building Inspection Commission's pleasure for a three-year term or until a successor is appointed. The present members shall be continued in office until the expiration of their terms.

In the event a vacancy occurs during the term of office of any member of the Board of Examiners, a new appointment shall be made in a manner similar to that described herein for new members.

The membership shall consist of:

1.   A registered structural engineer.
2.   A registered mechanical engineer.
3.   A registered electrical engineer.
4.   A registered fire protection engineer.
5.   A licensed general contractor.
6.   A licensed architect.
7.   A building trades representative.
8.   As the plumbing member, a licensed plumbing contractor.
9.   As the electrical member, a licensed electrical contractor.
10.   As a high-rise sprinkler member, one building owner representative.
11.   As a Seismic Improvement member, one tenant also a licensed or registered architect, civil or structural engineer.
12.   As a Seismic Improvement member, one property owner also a licensed or registered architect, civil or structural engineer.
13.   As a Seismic Improvement member, one registered structural engineer specializing in seismic improvement.

The terms "registered" and "licensed" shall be understood to mean by the State of California. The Building Inspection Commission shall make such appointments after giving careful consideration to nominations made by technical associations and general contractor organizations including the Consulting Engineers Association of California, the Structural Engineers Association of Northern California, the San Francisco District of the Associated General Contractors of California, the Plumbing and Mechanical Cooling Contractors of San Francisco, the San Francisco Electrical Contractors Association, the San Francisco Chapter of the American Institute of Architects, and the San Francisco Building Trades Council. Each member of the Board of Examiners shall receive compensation of $125 per meeting attended.

The following shall constitute *ex officio* members of the Board of Examiners, without vote and without compensation: The Building Official, who shall act as Secretary of the Board of Examiners, and the Fire Marshal.

In the event a member cannot attend meetings of the Board of Examiners for a period of three or more consecutive meetings due to illness, work away from San Francisco, or any other valid reason, the Building Inspection Commission may appoint an alternate member representing the same profession or trade as the absent member and meeting the same registration or licensing requirements as the absent member. The appointment of such alternate need not require solicitation of nominees from the respective organizations. The alternate shall serve on the Board of Examiners until the return of the absent member or until the expiration of the absent member's term, whichever comes first. The compensation indicated in section 4 above shall be paid the alternate member for each meetings attended. The alternate member shall, during the time of service on the Board of Examiners, have all the rights, duties, and privileges of a duly appointed member of the Board of Examiners.

**105A.1.5 Board of Examiners's authority with respect to applications for approval of materials, methods and types of construction.** Where application has been made to the Building Official to approve new materials, new methods and types of construction which the

applicant believes meet the standards of safety set by this code, and where the approval of such application has been denied by the Building Official, the Board of Examiners shall have authority, at the request of the applicant, to determine whether such materials, methods and types of construction comply therewith.

**105A.1.5.1** The Board of Examiners shall adopt rules and specifications for examining and testing proposed materials and methods of construction. A copy of such rules and specifications shall be furnished to the applicant.

**105A.1.5.2** The applicant shall cause to be made, at the applicant's expense, all reasonable tests and examinations required by the Board of Examiners to substantiate the applicant's claims that any proposed new materials, new methods and types of construction comply with the standards of safety established by this code.

**105A.1.5.3** The Board of Examiners shall have power to call upon such experts as it deems necessary to consider and report upon the technical matters concerning such application. The engagement of the services of such experts shall be with the consent of and at the expense of the applicant, and the Board of Examiners shall have power to require security for the payment of such expense. Such expense shall be in addition to the required filing fees as set forth in Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments. Any official or employee of the City and County of San Francisco called upon by the Board of Examiners shall serve without compensation beyond their normal salary.

**105A.1.5.4** The Board of Examiners shall certify the results of examinations and tests, together with its recommendation on the application, to the Building Official. If the Board of Examiners recommends approval, the Building Official shall thereupon approve the materials or methods of construction. The Board of Examiners shall have power to attach such conditions to its recommendations as it deems necessary in the interest of public safety, and the Building Official's approval shall be granted subject to such conditions.

**105A.1.6 Board of Examiners' authority with respect to applications for variances from code requirements.** Where new materials, new methods and types of construction are not involved, the Board of Examiners shall have authority to consider the application for a permit, the approval of which would require a variance from the provisions of this code.

   If the Board of Examiners finds that such variance will not result in a condition less safe and less desirable from the viewpoint of public welfare than would result from the enforcement of compliance with such provisions, it shall recommend to the Building Official the approval of such permit. Upon receipt of such recommendation, the Building Official shall approve such permit. The Board of Examiners may attach to such recommendations any conditions which public safety and welfare may require, and the Building Official in approving such permit shall incorporate such conditions therein.

**105A.1.7 Application for consideration by Board of Examiners.** All applications to the Board of Examiners shall be made in writing and shall be filed with the Secretary of the Board of Examiners. The Board of Examiners shall act upon each application without unreasonable or unnecessary delay. See Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for applicable fee.

**105A.1.8 Procedure.** The Board of Examiners shall establish reasonable rules and regulations for its own procedures not inconsistent with the provisions of this code and the Charter of the City and County of San Francisco. The Board of Examiners, by a majority vote, shall choose its officers, which shall consist of the President and Vice-President.

**105A.1.9 Meetings.** Meetings of the Board of Examiners shall be held at the call of the Secretary of the Board of Examiners and at such times and places as the Board of Examiners may determine. All meetings of the Board of Examiners shall be public meetings.

**105A.1.10 Quorum.** Four members of the Board of Examiners shall constitute a quorum, and action of the Board of Examiners shall require the affirmative votes of not less than three members. No member of the Board of Examiners shall pass upon any question in which the member, or any corporation in which the member is a shareholder or holds an interest.

**105A.1.11 Decisions by resolution.** Every decision and recommendation of the Board of Examiners shall be by resolution filed with the Building Official. A copy shall be mailed to the applicant. A copy shall also be sent to other interested bureaus or departments charged with the enforcement of this code. The Board of Examiners shall arrange for a subscription service to its agenda and decisions, the entire cost of which shall be borne by the subscribers.

**105A.1.12 Record of meetings.** The Board of Examiners shall maintain a tape recording of each meeting. Upon request, these tape recordings shall be made available for duplication by independent agencies with proper security afforded as determined by the Building Official. All costs of duplication shall be borne by the party requesting duplication.

**105A.2 Abatement Appeals Board.**

**105A.2.1 Establishment.** There is hereby established an Abatement Appeals Board, consisting of the seven members of the Building Inspection Commission, to pass upon matters pertaining to housing, building and construction.

**105A.2.2 Membership.** Members of the Abatement Appeals Board shall be the Building Inspection Commission who are appointed and serve for the terms as prescribed by the Charter of the City and County of San Francisco. The Building Official or designee shall act as Secretary to the Abatement Appeals Board.

**105A.2.3 Powers.** Except for cases involving disabled access, which shall be heard by the Access Appeals Commission, the Abatement Appeals Board shall have the power to hear and decide appeals from Orders of Abatement after public hearing by the Building Official of Building Inspection, and to hear appeals regarding the issuance of a final bill for assessment of costs imposed pursuant to Section 102A upon a showing of substantial error by the Department. Appeals for assessment of cost must be filed by the property owner in writing with the Secretary of the Abatement Appeals Board within 15 days of the mailing of the assessment of cost notice. See Section 110A, Table 1A-D – Standard Hourly Rates, and Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for applicable fees. The Abatement Appeals Board may uphold, modify or reverse such orders, provided that the public health, safety and public welfare are secured most nearly in accordance with the intent and purpose of this code and the San Francisco Housing Code.

**105A.2.4 Procedure.** The Abatement Appeals Board shall establish reasonable rules and regulations for its own procedures consistent with the provision of this code and the Charter of the City and County of San Francisco. The Abatement Appeals Board, by majority vote, shall choose its officers which shall consist of the President and Vice-President.

**105A.2.5 Quorum.** Four members of the Abatement Appeals Board shall constitute a quorum. Any action of the Abatement Appeals Board shall require the concurrence of four members. No member of the Abatement Appeals Board shall pass upon any case in which the member, or any corporation in which the member is a shareholder, or holds an interest.

**105A.2.6 Hearings.** All hearings of the Abatement Appeals Board shall be public hearings. Within 10 days after the filing of an appeal, the Abatement Appeals Board shall fix the time and

place for a hearing, which shall not be more than 30 days after the date of filing. The notice of the hearing of such appeal shall be posted in a conspicuous place upon the property that is the subject of the appeal and shall be served upon the appellant and transmitted to the Building Official of Building Inspection at least 10 days prior to the date set for the hearing. Once an appeal is filed, the order of the Building Official shall be stayed until a decision is rendered.

For good cause shown, one continuance of a hearing may be granted by the Abatement Appeals Board; such continuance shall not exceed 60 days.

**105A.2.7 Rehearing.** The Abatement Appeals Board may rehear an appeal upon which a decision has been rendered, provided a request for a rehearing has been made in writing within 10 days of the date of issuance of the decision.

**105A.2.8 Findings and decisions.** The Abatement Appeals Board shall issue its findings and decisions no later than 10 days after the conclusion of the hearing. Such findings and decisions shall within five days thereafter be posted in a conspicuous place upon the property that is the subject of the appeal, served on the appellant, and transmitted to the Building Official.

**105A.2.8.1 Failure of appellant to appear.** In the event the appellant fails to appear at the hearing or if the Abatement Appeals Board fails to issue its findings and decisions within the time set forth above, or denies the appeal, the order of the Building Official shall be immediately effective from the date the order was issued; however the time that the matter was under appeal shall not be counted toward the time set in the order for compliance.

*EXCEPTION:* Except in cases of lack of quorum, failure of the Abatement Appeals Board to meet any of the time periods specified herein shall result in the Building Official's order taking effect immediately.

**105A.2.8.2 Life-safety hazards.** In any appeal of a decision where the Abatement Appeals Board finds that there exists in, on, or near any building, structure or property, any condition constituting a serious and imminent hazard to the life, health, or safety of any person, structure, or property, any decision of the Abatement Appeals Board modifying the order of the Building Official shall provide for immediate protection of the public, and that work to correct each such hazard commence within 30 days and be completed within 90 days after service of such decision. With respect to violations which are not found by the Abatement Appeals Board to constitute a serious and imminent hazard, any decision of the Abatement Appeals Board modifying the order of the Building Official shall provide that the work to repair such violations commence within 60 days and be completed within a reasonable time, not to exceed 18 months.

**105A.2.8.3 Moratorium – financial hardship.** In any case of extreme financial hardship, the Abatement Appeals Board may grant a moratorium to correct conditions which are not serious and imminent hazards. Such a moratorium shall be granted only to an owner occupant of a single- or two-family dwelling where all such serious and imminent hazards, as found by the Building Official, have been corrected. The decision of the Abatement Appeals Board in any case in which a moratorium is granted shall contain the duration of the moratorium and the conditions for its termination. A copy of the decision granting a moratorium shall be recorded in the Assessor-Recorder's Office.

**105A.2.8.4 Moratorium – displacement.** Notwithstanding the provisions of this code and the San Francisco Housing Code, the Abatement Appeals Board, upon the written appeal of any person, may grant a moratorium from enforcement of an order of the Building Official made pursuant to Section 102A in order to prevent displacement of low and moderate income persons from affordable housing, if the Board finds that:

1.   The Building Official's order from which the appeal is taken was issued after April 1, 1986; and

2.   The property is a Group R, Division 1 building as defined in this code; and

3.   The building was constructed prior to January 1, 1956; and

4.   The condition does not constitute a serious and imminent hazard or a life hazard as defined in Section 213 of this code; and

5.   The condition does not violate the Fire Code or any code other than this code and the San Francisco Housing Code; and

6.   The condition does not affect adequate egress from the building; and

7.   The condition does not endanger the life, limb, health, property, safety, or welfare of the public or the occupants of the building; and

8.   Fifty percent or more of the households living in the building are paying annual rent equal to or less than 30 percent of the annual rent of low and moderate income as determined in Section 104A.4 of the Building Code; and

9.   The abatement of the condition will have a reasonable probability of resulting in the displacement of occupants who are of low and moderate income as defined above.

**105A.2.8.5 Findings.** The Board shall serve the Building Official, the property owner, and the person requesting the moratorium if other than the property owner, by sending a copy of its findings and decision by certified mail to such persons at their last known address. A copy of the findings and the decision granting a moratorium shall be recorded in the Assessor-Recorder's Office.

**105A.2.8.6 Term of moratorium.** The maximum term of the moratorium shall be 10 years from the date that the Board's findings and decision are served on the Building Official. At any time during the term of a moratorium under this section, any person may request that the Abatement Appeals Board extend the moratorium for one or more five-year periods by filing a written request with the Secretary of the Board. The Board shall hold a hearing on the request and shall issue separate findings and decisions regarding each request for an extension. The findings must address the nine criteria listed in this section. Any request for an extension of the moratorium shall be subject to the notice and hearing procedures of this section.

**105A.2.8.7 Rescission of moratorium.** At any time during the term of a moratorium, any person, including the Building Official, may request that the Abatement Appeals Board rescind the moratorium by filing a written request with the Board. The Board shall hold a hearing on the request and issue separate findings and decisions regarding each such request for a rescission. Any request for a rescission of the moratorium shall be subject to the notice and hearing procedures of this section.

**105A.2.8.8 Violations listed.** The moratorium shall apply only to those code violations expressly listed therein. All other violations which exist and are not so listed in the findings and decisions granting the moratorium shall be abated in accordance with Section 102A.

**105A.2.8.9 Duration.** Once the Board's order granting a moratorium is issued, the building is no longer considered a nuisance or a substandard building for the duration of the moratorium with respect to those code violations expressly listed in the Board's findings and decisions.

**105A.2.9 Failure to comply.** Upon the failure of any owner to comply with the order of the Building Official or the Abatement Appeals Board, the matter shall be referred within five days to the City Attorney's Office for appropriate legal action.

**105A.2.10 Compensation.** The members of the Abatement Appeals Board shall serve without compensation.

**105A.3 Access Appeals Commission.**

**105A.3.1 Establishment; composition; purpose.** Pursuant to the provisions of Section 19957.5 of the Health and Safety Code of the State of California, there is hereby established an Appeals Board to be known as the Access Appeals Commission composed of five members to hear written appeals brought by any person regarding action taken by the Department in the enforcement of the requirements of Part 5.5 (commencing with Section 19955), Division 13 of the Health and Safety Code of the State of California, including the exceptions contained in Section 19957 thereof, as well as action taken by the Department in the enforcement of the disabled access and adaptability provisions of this code.

**105A.3.2 Appointments; qualifications; terms; vacancies; compensation.** Members of the Access Appeals Commission shall be qualified and appointed as follows:

1.  Two members of the Access Appeals Commission shall be persons with a physical disability, two members shall be experienced in construction, and one member shall be a public member. All shall be appointed by the Building Inspection Commission and serve at its pleasure. The terms shall be staggered and the term of each member shall be four years. Members shall continue in office until the expiration of his or her term and until his or her successor is appointed and qualified.

2.  Upon a vacancy occurring in the membership of the Access Appeals Commission and upon the expiration in the term of office of any member, a successor shall be appointed by the Building Inspection Commission. When a vacancy occurs for any reason other than the expiration of a term of office, the appointee to fill such vacancy shall hold office for the unexpired term of his or her predecessor. The members of the Access Appeals Commission shall be reimbursed at $125 per meeting attended. The Building Official or his or her designated representative shall act as Secretary of the Access Appeals Commission, without vote and without additional compensation. The Department shall provide necessary staff service to the Access Appeals Commission.

**105A.3.3 Powers and duties; finality.** The Access Appeals Commission shall conduct hearings on written appeals made under Section 105A.3.4 hereof. In hearing such appeals, the Access Appeals Commission may approve or disapprove the Department's interpretations of Part 5.5, Division 13 of the Health and Safety Code of the State of California and of the disability access and adaptability requirements of this code and actions taken by the Department to enforce said requirements and abate violations. The Commission shall also make determinations on equivalent facilitation, technical infeasibility, unreasonable hardship, extensions of time, and such other matters as Chapter 11D – Mandatory Accessibility Improvements for Buildings with a Place of Public Accommodation may require or authorize. All such approvals or disapprovals shall be final and conclusive as to the Department, in the absence of fraud or prejudicial abuse of discretion. See Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for applicable fee.

**105A.3.4 Form of appeal – action on.** All appeals to the Access Appeals Commission shall be made in writing and shall be filed with the Secretary of the Access Appeals Commission. The Access Appeals Commission shall act upon each appeal without unreasonable or unnecessary delay.

**105A.3.4.1 Rehearings.** The Access Appeals Commission may rehear an appeal upon which a decision has been rendered upon motion of a member of the Access Appeals Commission and upon the affirmative vote of at least three of its members, provided that a request for a rehearing

has been made in writing within 10 days of the date of the decision. See Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for applicable fee.

**105A.3.5 Procedure.** The Access Appeals Commission shall establish reasonable rules and regulations for its own procedure not inconsistent with the provisions of this code and the Charter of the City and County of San Francisco. The Access Appeals Commission, by a majority vote, shall choose its officers, other than the Secretary.

**105A.3.6 Meetings.** Meetings of the Access Appeals Commission shall be at such times as the Access Appeals Commission may determine. All meetings of the Access Appeals Commission shall be public meetings.

**105A.3.7 Agenda and record.** The Access Appeals Commission shall arrange for the maintenance of a record of its agenda, actions and recommendations which shall be available to the public upon request for the cost of reproduction.

**105A.3.8 Decisions by resolution.** Every decision and recommendation of the Access Appeals Commission shall be by resolution, which shall be retained as part of the Access Appeals Commission's official records. A copy shall be mailed to the appellant.

**105A.3.9 Waiver of fee.** An exemption from paying the Access Appeals Commission Filing Fees specified in Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – may be granted upon the appellant's filing with the Department a declaration of indigency under penalty of perjury. The declaration shall be made on a form provided by the Department and shall be accompanied by such documentary proof as the Building Official shall require.

**105A.3.10 Notice to Mayor's Office of Disability.** Materials for each matter to be decided by the Commission shall be sent to the Mayor's Office of Disability, together with a copy of the meeting agenda, at the same time and in the same manner as the materials and agenda are provided to members of the Commission.

**105A.4 Code Advisory Committee.**

**105A.4.1 Establishment.** There is hereby created a Code Advisory Committee consisting of seventeen members who are qualified by experience and training to pass upon matters pertaining to the development and improvement of the content of the California Building Standards Code and the San Francisco Housing Code and their related rules and regulations as well as provisions of other parts of the Municipal Code that the Building Official and the Building Inspection Commission determine have an impact on construction permits.

**105A.4.2 Functions.** Unless the Building Official and Chair of the Building Inspection Commission specifically waive review by the Code Advisory Committee because the proposed code changes or rules and regulations are solely administrative and non-technical in nature, the Code Advisory Committee shall:

  1.  hear and review recommendations for code changes made by the Building Official and the Building Inspection Commission pursuant to Section 104A.2.11;

  2.  hear and review or develop and make recommendations for code changes to the Building Official and the Building Inspection Commission;

  3.  review rules and regulations promulgated by the Building Official and the Building Inspection Commission pursuant to Section 104A.2.1;

  4.  recommend to the Building Official and the Building Inspection Commission, within 30 days after the effective date of a new edition of a code, which existing Section 104A.2 rules and regulations should remain in effect, be modified or be canceled; and

5.   hear and review, and make recommendations to the Building Inspection Commission on, legislation proposed by the Board of Supervisors. If the Code Advisory Committee fails to make its recommendations to the Building Inspection Commission within the period of time required for the Commission to complete its action under Section 104A.2.11.1.1 of this Code or any extension of time authorized by the Board of Supervisors, the Chair of the Commission may waive the Code Advisory Committee's review and calendar the legislation for action by the Commission.

**105A.4.3 Membership.** The Code Advisory Committee shall consist of 17 members appointed by the Building Inspection Commission to serve at the Building Inspection Commission's pleasure for a three-year term or until a successor is appointed and qualified.

**105A.4.3.1 Members.** In the event that a vacancy occurs during the term of office of any member of the Code Advisory Committee, a new member shall be appointed in a manner similar to that described herein for new members. The membership shall consist of:

1.   A licensed architect whose practice is primarily in the area of major commercial and institutional projects of Type I and II construction.

2.   A licensed architect whose practice is primarily in the area of smaller commercial and residential projects of Type III and V construction.

3.   A registered civil engineer whose practice is primarily in the area of major commercial and institutional projects of Type I and II construction and who has the authority to use the title "Structural Engineer."

4.   A registered civil engineer whose practice is primarily in the area of smaller commercial and residential projects of Type III and V construction.

5.   A registered mechanical engineer or licensed mechanical contractor.

6.   A registered fire protection engineer who practices in the area of fire protection.

7.   A registered electrical engineer or licensed electrical contractor.

8.   A representative of a licensed general contractor whose work is primarily in the area of major commercial and institutional projects of Type I and II construction.

9.   A representative of a licensed general contractor whose work is primarily in the area of alterations, remodeling or restoration.

10.   A representative of a licensed general contractor whose work is primarily the construction of single- and multifamily residential construction for its own account.

11.   A commercial property owner or a person practicing in the area of property management.

12.   A representative of the general business community.

13.   A person qualified in the area of historical preservation.

14.   A person, preferably with a disability, who is knowledgeable about disability access regulations.

15.   Three at-large members who may, but need not, possess technical skills or knowledge.

The terms "registered" and "licensed" shall be understood to mean registered or licensed by the State of California.

The Building Inspection Commission shall make appointments after giving careful consideration to nominations made by technical associations and other organizations, including the San Francisco Chapter of the American Institute of Architects, the Structural Engineers Association of Northern California, the Society of Fire Protection Engineers, the San Francisco District of the Associated General Contractors of California, American Society of Heating, Refrigerating and Air-Conditioning Engineers, Inc., Sheet Metal and Air Conditioning Contractors National Association, San Francisco Bay Area Chapter of the National Association

of the Remodeling Industry, National Electrical Contractors Association, the Residential Builders Association of San Francisco, Inc., the San Francisco Chapter of the Building Owners and Managers Association of California, the San Francisco Chamber of Commerce and the Foundation for San Francisco's Architectural Heritage.

The following shall constitute *ex officio* members of the Code Advisory Committee without vote: The Building Official of the Department, who shall act as Secretary of the Code Advisory Committee, and the Fire Marshal.

**105A.4.4 Procedure.** The Code Advisory Committee shall establish reasonable rules for its own procedures not inconsistent with the provisions of this code and the Charter of the City and County of San Francisco. The Code Advisory Committee, by a majority vote, shall choose its officers, which shall consist of the Chairperson and the Vice-Chairperson.

**105A.4.4.1 Quorum.** A majority of the voting members of the Code Advisory Committee shall constitute a quorum. Any action taken by the Code Advisory Committee shall require an affirmative vote of not less than a majority of the Code Advisory Committee members present and voting. No member of the Code Advisory Committee shall pass upon any question in which the member, the firm that employs the member or any corporation in which the member is a shareholder, holds a financial interest.

**105A.4.4.2 Meetings.** Meetings of the Code Advisory Committee shall be scheduled at a regular place and time but not less than once monthly. The exact time and place shall be established by the Code Advisory Committee in its rules and regulations of procedure. All meetings of the Code Advisory Committee shall be open to the public.

**105A.4.4.3 Agenda and record.** The Code Advisory Committee shall arrange for the maintenance of a record of its agenda, actions and recommendations which shall be available to the public upon request for the cost of reproduction.

**105A.5 Reserved.**

**105A.6 Structural Advisory Committee.**

**105A.6.1 Establishment.** There is hereby created a three-member Structural Advisory Committee, to advise the Building Official on matters pertaining to the design and construction of buildings with special features or special design procedures. Upon request by the Building Official, the engineer of record for such a project shall demonstrate to the Structural Advisory Committee how the structural concepts, designs, details, erection methods and quality control will produce a structure that would meet the intent of Section 101A.2.

**105A.6.2 Members.** For consideration of each building with such special features, the Structural Advisory Committee shall consist of members who are knowledgeable in the structural engineering and construction issues presented by those special features. Members shall be selected from a list of qualified engineers submitted by the Structural Engineers Association of Northern California and approved by the Building Official. One member shall be selected by the Building Official, one member shall be selected by the owner, and the third member shall be selected jointly. Compensation of the Structural Advisory Committee members shall be by the owner. However, when the project for which Committee review is required is located in the Edgehill Mountain Slope Protection Area, as defined by Building Code Section 106A.4.1.2 or the Northwest Mt. Sutro Slope Protection Area as defined by Building Code Section 106A.4.1.3 or is subject to Committee review pursuant to the Slope Protection Act, Building Code Section 106A.4.1.4.5, (a) the Committee shall consist of a structural engineer, a geologist and a geotechnical engineer; (b) the Committee shall consult with an architect, who shall be a voting member of the Committee; (c) the selection of the Committee members shall be as follows: one

member shall be selected jointly by the Building Official and the Director of Public Works, one member shall be selected solely by the Building Official and one member shall be selected by the Building Official and the owner from recommendations made by interested persons, including but not limited to residents of the neighborhood surrounding the project location; and (d) to the extent feasible, the Committee members should be selected from a list submitted by the Structural Engineers Association of Northern California.

**105A.6.3 Report.** The Structural Advisory Committee shall submit to the Building Official a written report which shall include professional opinions concerning, but not limited to, the following:

1. The validity and appropriateness of the structural design concepts and criteria.

2. An evaluation of the structural design of the building or structure to determine its capability to perform satisfactorily beyond the elastic stresses stipulated by the code, with sufficient redundancy to accommodate overloads or failures of specific structural components.

3. The constructability of proposed structural details and erection methods.

4. The sufficiency of the proposed inspection, testing and monitoring to be provided during prior to and during construction.

**105A.7 Reserved.**

**105A.8 Appellate authority of the Building Inspection Commission.** The appellate authority of the Building Inspection Commission is as set forth in Section D3.750-4 of the San Francisco Charter, as implemented by Chapter 77 of the San Francisco Administrative Code.

# SECTION 106A – PERMITS

**106A.1 Permits required.** Except as specified in Section 106A.2, no building or structure regulated by this code shall be erected, constructed, enlarged, altered, repaired, moved, improved, removed, converted or demolished unless a separate permit for each building or structure has first been obtained from the Building Official.

When considering an application for a permit for development of "dwellings" as defined in Chapter 87 of the San Francisco Administrative Code, the Department of Building Inspection shall comply with that chapter which requires, among other things, that the Department of Building Inspection not base any decision regarding the development of "dwellings" in which "protected class" members are likely to reside on information which may be discriminatory to any member of a "protected class" (as all such terms are defined in Chapter 87 of the San Francisco Administrative Code).

**106A.1.1 Separate permits required.** Where buildings or structures are constructed on top of a base structure, and such structures are likely to have their own addresses or functional identities, separate permits shall be required for the base structure and for each of the top buildings or structures.

**106A.1.2 Permit and fees for grading, excavation, or filling of land.** The valuation for the permit shall be based on the volume of material to be handled, and on a cost schedule posted in the Department. The permit issuance and plan review fees shall be the same as those for new construction. See Section 110A, Table 1A-A – Building Permit Fees, and Table 1A-B – Other Building Permit and Plan Review Fees. See Chapter 33 and Appendix J for general grading provisions.

**106A.1.3 Permits and fees for subsidewalk space.** A building permit shall be obtained for construction of subsidewalk space. The fee for said permit shall be the fee set for building permits. See Section 110A, Table 1A-F – Specialty Permit Fees – for applicable fees.

Permits for the use of subsidewalk space, except for subsurface space used to connect a building, structure or property with the San Francisco Bay Area Rapid Transit district facilities, shall be granted after approval by the Building Official and the City Engineer. Permission for the use of subsurface space to connect with the San Francisco Bay Area Rapid Transit District facilities, shall be granted only as set forth in Section 106A.1.3.1. The City may reserve any part of the subsidewalk space for its own use or the use of the public. The Board of Supervisors reserves the right to suspend or annul the privilege of maintaining such subsidewalk space or to exact a license or rental for the use thereof. The granting of a permit to use the subsidewalk space shall carry with it the right to excavate the space and to build the necessary retaining walls. If the street in front of the building is paved, a deposit will be required of the subsidewalk space. See Section 110A, Table 1A-F – Specialty Permit Fees – for required deposit. The deposit will be refunded to the permittee upon the endorsement of the permit issued therefor and a certificate from the Department of Public Works, Bureau of Engineering, certifying to the satisfactory condition of such roadway at the end of two years after the time the pavement was restored. Should the permittee fail to restore any pavement, the Director of the Department of Public Works may, after 10 days' notice in writing posted on the building, restore the pavement and deduct the cost of such restoration from the deposit. In lieu of the deposit required herein, a bond in the amount of the deposit may be accepted in the manner set forth in Article 8 of the San Francisco Public Works Code.

No permit shall hereafter be issued by any officer, board or commission of San Francisco to make use of the subsidewalk space within the street lines of Market Street between Steuart Street and Castro Street, except a permit may be granted for the use as subsidewalk space for the following:

1.   The space lying contiguous to the property line and extending along a line parallel thereto and up to 22 feet distant therefrom wherever such space is located in Market Street between Steuart Street and Van Ness Avenue.

2.   The space lying contiguous to the property line and extending along a line parallel thereto and up to 10 feet distant therefrom wherever such space is located in Market Street between Van Ness Avenue and Castro Street.

Due consideration shall be given to the needs and requirements for the use of subsidewalk space by public utilities.

The remainder of the subsidewalk space is hereby expressly reserved for public use.

**106A.1.3.1 Subsurface connection to San Francisco Bay Area Rapid Transit District facilities.** Permission to use subsurface space to connect any building or structure or premises with the San Francisco Bay Area Rapid Transit District facilities shall be first obtained from the Board of Supervisors of San Francisco by resolution, prior to filing a permit to construct the connection. The Board of Supervisors reserves the right to suspend or annul the permission to use any subsurface space to connect any building, structure or premises with the San Francisco Bay Area Rapid Transit District facilities or to exact a license or rental for the use thereof. Upon the Board of Supervisors passing a resolution approving the connection, an application for a building permit to construct the connection shall be filed with the Department. The application, together with plans and specifications, shall be referred for approval to the Planning Department, the Department of Public Works, Bureau of Engineering, and any other department having jurisdiction. If approved, the approvals shall be endorsed in writing on the application by the respective departments and bureaus. The Department shall issue a building permit when the application has been approved by the Building Official, and upon payment of all required permit

fees. In addition to the building permit and plan checking fees, the deposit required in Section 106A.1.3 shall also be paid to the Department and refunded as set forth in Section 106A.1.3, provided that all work under the building permit has been satisfactorily completed.

**106A.1.4 Permits and fees for moving buildings.**

**106A.1.4.1 General.** The applicant for a permit for moving a building shall pay a permit fee for documentation and inspection of the moving work. See Section 110A, Table 1A-F – Specialty Permit Fees – for applicable fee. A permit and plan review fee for work required at the building's new site shall be per Section 110A, Table 1A-A – Building Permit Fees, and Table 1A-B – Building Permit Application and Plan Review Fees.

**106A.1.4.2 Permit application for new site.** Before a permit may be issued for moving a building, a building permit must be obtained for the necessary alterations and additions to the building on the new site. The application for the alterations at the new site is to be accompanied by complete plans showing floor plans, elevations, plot plan, and such other information as contained in Section 106A.3.3 as may be required by the Building Official.

**106A.1.5 Permit and fees for demolition of buildings.** A permit shall be required for demolishing any structure. See Section 110A, Table 1A-F – Specialty Permit Fees – and Section 110, Table 1A-L – Public Information – for applicable fees. See Section 3303 for general requirements.

**106A.1.6 Permits and fees for chimneys, flues.** A flue permit shall be required to erect, construct, alter or repair any chimney or flue except when it is a Type 1 grease hood or is constructed of masonry. A separate flue permit shall be required for each flue or chimney. Grease and masonry flues and chimneys shall require building permits per Section 106A. See Section 110A, Table 1A-F – Specialty Permit Fees – for applicable fees.

**106A.1.6.1 Permits for boiler flues.** A boiler flue permit shall be required to:

1. Install, alter, or replace any boiler flue or section thereof;
2. Install any approved type heat reclaimer or other approved type device within a boiler gas flue.

**106A.1.7 Permits and fees for temporary buildings or structures.** A permit is required for the construction and erection of temporary reviewing stands, bleachers, grandstands and other miscellaneous structures. The Building Official may require that any temporary building or structure be inspected by a registered civil engineer and found to be in compliance with all provisions of this code before it is permitted to be used by the public. See Section 110A, Table 1A-F – Specialty Permit Fees – for applicable fee.

**106A.1.8 Garage door permits and fees.** A garage door permit shall be required for the installation of such doors in existing buildings. See Section 110A, Table 1A-F – Specialty Permit Fees – for applicable fee.

The provisions of this section shall not apply where structural alterations are made, or are required in connection with the installation of garage doors. This section also shall not apply to the alteration, repair, or replacement of garage doors in public garages. In all these cases, the permit and fee requirements of Sections 106A, 107A and 110A shall apply.

**106A.1.9 Permits and fees for signs.**

**106A.1.9.1 General.** A sign regulated under Chapter 31 shall not be erected or altered until a sign permit has been obtained for such work. Application for a permit shall be made at the Department on supplied forms. Where signs are illuminated by electric lighting, a separate permit shall be obtained as required in the Electrical Code. Replacement of copy on the face of a

sign, without affecting the structural members or the attachment to a building, structure, or the ground, shall not require a sign permit.

**106A.1.9.2 Permit fees.** Permit fees for signs shall be based upon job valuation. See Section 110A, Table 1A-A – Building Permit Fees – for applicable fees.

**106A.1.9.3 Plan review fees for signs.** See Section 110A, Table 1A-A – Building Permit Fees – for applicable fee.

**106A.1.10 Permit and fees for residential elevators and lifts.**

**106A.1.10.1 General.** An elevator or lift regulated under Chapter 30 shall not be installed or altered until a building permit has been obtained for such work.

**106A.1.10.2 Fees.** The permit fees and plan review fees shall be those required in Section 110A, Tables 1A-A and 1A-B. The valuation shall be based on the total installation, including those portions, if any, which are regulated by the State.

**106A.1.10.3 Exemption.** Elevators regulated by the State of California are exempt from permits and the provisions of this code. However, the elevator shafts and enclosures, and any structural alterations or strengthening work to accommodate the installation, shall comply with the permit and other requirements of this code.

**106A.1.11 Permit and fees for boilers.** A separate building permit shall be required for a new boiler installation or replacement except where a building permit has been issued which included such work, the fee for which shall be the minimum fee per Section 110A, Table 1A-A – Building Permit Fees. In addition, a permit to operate the boiler is required and shall be charged a fee based on the schedule in Section 110A, Table 1A-M – Boiler Fees. The fee for renewal of a permit to operate shall be based on the same schedule. Such fee shall be paid whether or not a permit to operate is issued. All fees shall be paid at the time of application for permits. Any additional fees billed will be increased to twice the billed amount when payment is not received by the Department within 30 days of billing. Failure to pay required fees will result in cancellation of the issued permit to operate. See Chapter 10 of the Mechanical Code for boiler requirements.

**106A.1.12 Permit and fees for change in occupancy or use.** Whenever a change in occupancy or use is made, a building permit shall be required to legalize the changed use or occupancy. The fee shall be the minimum fee required for filing for a permit and must be secured prior to the change of occupancy.

   In the event any alteration work is required, the alteration permit shall be considered sufficient for this requirement and no additional permit will be required or additional fee required for the change in use or occupancy except as set forth in Section 109A.8.

**106A.1.13 Permits and fees for construction of an impervious surface in a front yard setback; penalties for violation of requirements.**

   (a)   **General.** It shall be unlawful for any person, firm, or corporation to commence or proceed with the construction of an impervious surface in a front yard setback area, other than a driveway as defined in Planning Code Section 136(c)(30), unless a permit is first obtained. See Section 110A, Table 1A-F – Specialty Permit Fees – for applicable fee.

   (b)   **Referral to Planning Department.** The Department shall refer all applications for a permit pursuant to this Section 106A.1.13 to the Planning Department for a determination regarding the proposed construction's compliance with Sections 132(g) and 136(c)(30) of the Planning Code. The Department may not issue the permit unless Planning determines the proposed construction to be compliant with the Planning Code requirements.

(c)   **Verification of compliance during inspections.** In performing the inspections required under Section 108A.1 of this Code, the inspector shall also verify that an impervious surface has not been constructed in the front yard setback area in violation of this Section 106A.1.13. If the inspector finds that there is a violation of Section 106A.1.13, the violation shall be required to be corrected under that existing permit.

(d)   **Penalties for violation.**

1.   **Notice of Municipal Code Violation ("NOV").** The Department shall issue an NOV pursuant to Section 102A.4 of this Code to the owner of the property determined to be in violation of the provisions of subsection (a) above. The NOV shall require the owner or the owner's authorized representative to apply for and obtain a permit to bring the existing surface in the front yard setback area into compliance with current Municipal Code requirements, including but not limited to the Building and Planning Codes.

2.   **Investigation Fees.** Violations of this Section 10~~6~~2A.1.13 shall be subject to the fees set forth in Table 1A-K of this Code for either work without permit or work exceeding the scope of the approved permit.

3.   **Civil and criminal penalties.** Any person, including the owner or the owner's authorized representative, who violates, disobeys, omits, neglects, or refuses to comply with, or resists or opposes the execution of the provisions of this Section 106A.1.13 shall be subject to the civil penalty of up to $500 per day and the criminal penalties that are set forth in Section 103A of this Code.

4.   **Costs of Abatement.** In addition to any monetary penalties authorized by Section 103A of this Code, the Department shall be entitled to recover its costs of abatement pursuant to Section 102A.7(d).

**106A.1.14. Damaged apartment houses where residential occupants have been displaced, preliminary information and Action Plan required.** Whenever an Apartment House, as defined in the Housing Code, has been damaged by fire or other emergency that results in the displacement of residential occupants, the property owner shall submit to the Department's Building Inspection Division, with a copy to the Housing Inspection Division, the following information and an Action Plan within the timeframe specified. The Department shall include a statement in all applicable Notices of Violation issued pursuant to this Section that allowing the residential occupants to retrieve their personal property in a safe manner through a visit supervised by the property owner's engineer, general contractor, or other industry professional for a short duration is not in conflict with the issued Notice of Violation.

**106A.1.14.1. Information submittal.** Within 72 hours of the posting of a Notice of Violation on the subject site, the property owner shall provide the following information in writing:

(a)   a description of the steps taken and the methods used to stabilize and secure the subject building and premises, including but not limited to the following, as appropriate: (1) fencing the building perimeter, (2) securely barricading all windows, openings, and other points of entry to the building from the outside, (3) assessing the property at least weekly to ensure that no unauthorized entry is occurring and that any fencing and barricades are secure and remain in place, and (4) providing 24-hour security;

(b)   if the City has determined that the subject building, or portions thereof, is unsafe for occupancy, a description of the steps taken and the methods used to either secure the personal property of the residential occupants or allow them to retrieve their personal property, including but not limited to the following: (1) fencing the building perimeter, barricading all points of entry, or taking the other steps listed in Section 106A.1.14.1(a) above, and (2) obtaining the

recommendations of a structural engineer or other appropriate consultant for allowing the residential occupants access to the building or undamaged portions thereof, for the purpose of obtaining their personal belongings; and

(c) the name and contact information of the owner or an agent of the owner who is able to respond to questions and concerns from the residential occupants and others.

**106A.1.14.2. Action Plan submittal.** Within 30 days from release of the scene by the Fire Department and other emergency responders, the property owner shall submit an Action Plan in the form required by the Department that contains the following elements:

(a)   a description of the steps taken and the methods used to stabilize and secure the subject building and premises, including supporting documentation by a structural engineer or other industry professional as specified in the Notice of Violation, including but not limited to the following, as appropriate: (1) fencing the building perimeter, (2) securely barricading all windows, openings, and other points of entry to the building from the outside, (3) assessing the property at least weekly to ensure that no unauthorized entry is occurring and that any fencing and barricades are secure and remain in place, and (4) providing 24-hour security;

(b)   a summary of the extent of fire or water damage to the building, describing with specificity the damage to individual dwelling units that were occupied prior to the damage by fire or other emergency;

(c)   a description of the repairs necessary to bring the building into compliance with any Notices of Violation issued by the Department of Building Inspection, Fire Department, or Health Department;

(d)   a general schedule and description of the permits that will be filed to comply with (c̲3̶) above;

(e)   the contact information of the individuals who will perform the work under (c̲3̶) above, which information shall be updated as necessary and kept current;

(f)   an estimated date (month and year) when the displaced residential occupants can reoccupy the building. The estimated date shall be within a time reasonably necessary to accomplish the required repairs;

(g)   proof that the owner has complied with the notice requirements of Section 106A.1.14.3; and

(h)   information about prior complaints, notices of violation, and the status of their abatement or compliance with code requirements.

**106A.1.14.3. Updating information.** Within 90 days from the submission of the Action Plan to the Department required by Section 106A .1.14.2, and every 90 days thereafter, the property owner shall provide to the Department any new or corrected information concerning items (a) through (h) in Section 106A.1.14.2 above, including but not limited to any change to the estimated date by which the displaced residential occupants can reoccupy the building.

**106A.1.14.4. Notice of filing of Action Plan.** Within 72 hours of the filing of the required Action Plan with the Department, the property owner shall (a) post a notice of the filing in a prominent location at the building site and (b) mail or personally deliver a notice of the filing to each displaced residential occupant at their last known location.

**106A.1.14.5. Re-inspection of the premises.** Following a fire that has resulted in the displacement of residential occupants, the Department shall re-inspect the premises at least every 90 days until the property owner has responded to and abated all pending Notices of Violation. If the property owner does not give the Department access to the premises necessary to conduct

such re-inspection(s), the Department shall request assistance from the City Attorney to gain access to the premises or take such other action as the City Attorney deems appropriate.

**106A.1.15 Solar energy systems.**

**106A.1.15.1 Definitions.** For purposes of this Section 106A .1.15, the following definitions apply:

*"Solar energy system,"* as defined in California Government Code Section 65850.5(j) and Civil Code Section 801.5(a), means either of the following:

1.   Any solar collector or other solar energy device whose primary purpose is to provide for the collection, storage, and distribution of solar energy for space heating, space cooling, electric generation, or water heating.

2.   Any structural design feature of a building, whose primary purpose is to provide for the collection, storage, and distribution of solar energy for electricity generation, space heating or cooling, or for water heating.

*"Small residential rooftop solar energy system,"* as defined in California Government Code Section 65850.5(j), means a solar energy system that:

1.   is no larger than 10 kilowatts alternating current nameplate rating or 30 kilowatts thermal;

2.   is installed on a single or duplex family dwelling;

3.   has a solar panel or module array that does not exceed the maximum legal building height in applicable City codes;

4.   conforms to all applicable state fire, structural, electrical, and other building codes as adopted or amended by the City and County of San Francisco; and

5.   conforms to all state and City health and safety standards.

**106A.1.15.2 Permit and fees.** An electrical permit is required to install or alter a solar energy system. See Section 110A, Table 1A-E – Electrical Permit Fee Issuance and Inspection Fee Schedule for applicable fee. The fee for a building, plumbing, mechanical, or other permit, if required, shall be the fee established in the Section 110A fee tables for that permit.

*EXCEPTION:* An electrical permit is not required to make minor alterations to an existing solar energy system unless the alterations materially change the size, type, or components of the system in such a way as to require new permitting.

**106A.1.15.3 General requirements.**

1.   A solar energy system and its installation shall comply with Article 690 and other applicable sections of the Electrical Code, and any applicable sections of the Mechanical Code, Plumbing Code, Building Code, or other codes enforced by the Department of Building Inspection.

2.   A solar energy system for producing electricity shall meet all applicable safety and performance standards for such systems established by the Electrical Code, the Institute of Electrical and Electronics Engineers, and accredited testing laboratories such as Underwriters Laboratories and, where applicable, rules of the Public Utilities Commission regarding safety and reliability.

3.   A solar energy system used for heating water in single-family residences or for heating water in swimming pools shall be certified by an accredited listing agency as defined by the Plumbing and Mechanical Codes.

4.   A solar energy system proposed for installation on a building that is (a) a designated landmark, (b) a contributory resource in a designated historic district, or (c) on the National Register or State Register, or deemed eligible for listing on the National or State Register, requires a building permit and shall be reviewed by the Planning Department to ensure

compliance with Article 10 of the Planning Code and, if required, referral to the Historic Preservation Commission pursuant to the provisions of Section 1005 of the Planning Code.

   5.   Installation of a solar hot water system requires a plumbing permit.

**106A.1.15.4 Permit application submittal documentation; expedited review.** Except as set forth in Section 106A.1.15.3(4) above, upon submittal of the application and the documentation listed in paragraphs 1 through 4 below, an application for a permit to install a solar energy system is deemed complete and eligible for expedited review in accordance with the Department's Priority Permit Processing Guidelines. (See Administrative Bulletin 004.)

   1.   a standard plan contained in the most current version of the California Solar Permitting Guidebook and adopted by the Governor's Office of Planning and Research or other plan acceptable to the Building Official;

   2.   the information required by the checklists contained in the most current version of the California Solar Permitting Guidebook and adopted by the Governor's Office of Planning and Research;

   3.   verification, using standard engineering techniques, that the support structure for the solar energy system is stable and adequate to transfer all wind, seismic, and dead and live loads associated with the system to the building foundation; and

   4.   verification, using standard electrical inspection techniques, that the existing electrical system including existing line, load, ground and bonding wiring, as well as main panel and subpanel sizes, are adequately sized, based on the existing electrical system's current use, to carry all new photovoltaic electrical loads.

   The application, and the documentation required by this Section 106A.1.15.4, may be submitted electronically.

**106A.1.15.5 Permit review and issuance.** A permit for a solar energy system that is 4 kilowatts or less is issued over the counter if the application meets all requirements and a public health or safety issue has not been identified. A larger system requires review by the Electrical Division, and a review by other Divisions may be required depending on the system. An application for installation of a solar energy system on a building that is (a) a designated landmark, (b) a contributory resource in a designated historic district, or (c) on the National Register or State Register, or deemed eligible for listing on the National or State Register, requires review by the Planning Department to ensure compliance with Article 10 of the Planning Code and, if required, referral to the Historic Preservation Commission pursuant to the requirements of Section 1005 of the Planning Code.

**106A.1.15.6 Inspections.** Only one inspection is required for a small residential rooftop energy system that is eligible for expedited review under Section 106A.1.15.4. An inspection will be scheduled within three business days of a request and provide a two-hour inspection window. If the system fails inspection, a subsequent inspection is required.

**106A.1.15.7 Separate approval required to connect a Solar Energy System to the electricity grid.** Approval of a permit for installation of a solar energy system does not authorize the applicant to connect the system to the local utility provider's electricity grid. The applicant is responsible for obtaining such approval or permission from the local utility provider.

**106A.1.15.8 Denial of permit; permit conditions.** Pursuant to Government Code Section 65850.5(c), if the Department or other agency of the City denies an application for a solar energy system use permit, it shall make written findings, based upon substantial evidence in the record, that the proposed installation would have a specific, adverse impact upon the public health or safety or a historic resource and there is no feasible method to satisfactorily mitigate or avoid the

specific, adverse impact. The findings shall include the basis for the rejection of potential feasible alternatives for preventing the adverse impact. Any conditions imposed on the permit shall be designed to mitigate the specific, adverse impact upon the public health and safety at the lowest cost possible.

**106A.1.16 Electric Vehicle (EV) Supply Equipment; permit and fee.** An electrical permit obtained by a California state licensed Electrical Contractor is required to install Electric Vehicle Supply Equipment (EVSE) defined in Section 202 of this Code, and the alteration or modification of any portion of the electrical system on the property. See Section 110A, Table 1A-E – Electrical Permit Fee Issuance and Inspection Fee Schedule for the applicable fees.

   *EXCEPTION:* A permit is not required to install a Residential Electrical Vehicle Charger when a plug in type charger is utilizing a previously approved receptacle outlet.

**106A.1.16.1 General requirements.**

  1.  The EV Charging Station and its installation shall comply with Article 625 and other applicable sections of the Electrical Code, and all applicable sections of the Mechanical Code, Building Code, and Fire Code. The installation shall also meet any safety and performance standards established by the Society of Automotive Engineers, the National Electrical Manufacturers Association, accredited testing laboratories such as Underwriters Laboratories, and the California Public Utilities Commission that the Building Official determines shall apply.

  2.  New construction and certain major alterations, as those terms are defined in Section 202 of the Green Building Code, are subject to the requirements of Sections 4.103.3.3 and 5.103.3 and other applicable sections of the Green Building Code, per Ordinance No. 92-17, enacted in April 2017.

  3.  All electrical materials, devices, fittings, and associated equipment shall be listed by a nationally recognized testing laboratory.

  4.  Level 2 EVSE shall be connected and fastened in place per the manufacturer's instructions and Section 625.44 of the Electrical Code. The anchorage of either floor-mounted or wall-mounted stations shall comply with the Building Code and Electrical Code.

  5.  For indoor locations, the coupling means of the EVSE shall be stored at a height of not less than 18 inches and not more than 48 inches above the finished floor level.

  6.  For outdoor locations, the coupling means of the EVSE shall be stored or located at a height of not less than 24 inches above grade level.

**106A.1.16.2 Application submittal requirements.**

  1.  Consistent with existing procedures, the Department shall continue to allow a California state licensed Electrical Contractor registered with the Department to obtain an electrical permit for installation of electrical materials, devices, fittings, and associated equipment. Where the scope of a project, including installation of an EV Charger, solely requires an electrical permit, such a permit shall continue to be available electronically and over the counter to licensed Electrical Contractors registered with the Department. The Department shall publish guidance clarifying conditions where an electrical permit is sufficient.

  2.  For projects which require additional review or permits, the Department shall publish guidance clarifying when any or all of the following are required in order for an EV Charging Station permit to be complete. The application, and the information and documentation required by this Section 106A.1.16.2, may be submitted electronically.

    (a)  an electrical plan and calculations signed and stamped by either a California registered Electrical Engineer or the licensed Electrical Contractor who is responsible for design and installation of the system;

(b)   a line diagram that includes all relevant information regarding the electrical charger, panels, raceways, wire types and sizes, utility service main breaker ampacity, and utility service voltage;

(c)   if applicable, identification of the type of EV Charger being installed;

(d)   current manufacturer specification sheets for major components of the system;

(e)   information from the manufacturer indicating whether or not ventilation is required;

(f)   if ventilation is required, a mechanical plan signed and stamped by either a California registered Mechanical Engineer or the licensed Mechanical Contractor responsible for the ventilation design;

(g)   a site plan approximately to scale that includes the locations of new and existing panels, meter, charging unit, and associated items;

(h)   a completed Department service load calculation form;

(i)   an electrical panel schedule; and

(j)   listing and labeling information from an approved nationally recognized testing laboratory.

**106A.1.16.3 Inspections.** Inspections by the Electrical Division are required for EV Charging Station installations, and for any alteration or modification of the electrical system on the property, including the installation of EVSE.

**106A.1.17 Mixed-Fuel Buildings.** The Building Official shall not issue permits for construction of any new Mixed-Fuel Building that submitted an initial application on or after June 1, 2021. Permits for new construction that submit initial applications on or after that date may only be obtained for All-Electric Buildings or Projects. For purposes of this subsection, the initial application shall be the first site or building permit application associated with the project.

  **EXCEPTIONS:** The Building Official may issue a permit for construction of a new Mixed-Fuel Building in the following circumstances, and provided that the building shall be Electric-Ready as specified in the Design Guidelines for Electric-Ready Buildings published by the Department of Building Inspection:

(1)   Upon the Building Official's finding that constructing an All-Electric Building or Project is physically or technically infeasible and that a modification pursuant to section 104A.2.7 is warranted. Financial considerations shall not be a sufficient basis to determine physical or technical infeasibility. Modifications from this section 106A.1.17 shall only be issued under this exception where the Building Official finds: sufficient evidence was submitted to substantiate the infeasibility of an All-Electric Building or Project design; the installation of natural gas piping systems, fixtures and/or infrastructure is strictly limited to the system and area of the building for which All-Electric Building or Project design is infeasible; and that the project's modified design provides equivalent health, safety and fire-protection to All-Electric Building or Project design; or

(2)   The Building Official may issue a permit for a new Mixed Fuel Building that includes an area specifically designated for occupancy by a commercial food service establishment (A-2 Occupancy) that is a Mixed-Fuel Building solely because it provides gas piping systems, fixtures and/or infrastructure exclusively for cooking equipment within the designated commercial food service area where the initial application was submitted prior to January 1, 2022.

  (i)   For initial applications submitted on or after this date, the Building Official may issue a permit for such a new Mixed-Fuel Building—that is a Mixed-Fuel Building solely because it provides gas piping systems, fixtures and/or infrastructure exclusively for cooking equipment within the designated commercial food service area—upon finding that the applicant has

submitted sufficient evidence that such gas systems are necessary for the specific commercial food service establishment that will operate the food service area. Applicants may appeal determinations made by the Building Official to the Board of Examiners, pursuant to section 105A.1.

   **REPORTING:** No later than July 15, 2022 and annually thereafter until 2025, the Building Official shall provide to the Department of Environment a report listing the status of all permits granted or in process to construct a new Mixed-Fuel Building pursuant to the above exceptions. The reports shall be cumulative and shall include a brief description of the circumstances for which the applicant seeks or has been granted an exception.

**106A.1.17.1 Conversion to Mixed-Fuel Buildings.** The Building Official shall not issue permits that would convert an All-Electric Building or Project into a Mixed-Fuel Building where the initial application was submitted after June 1, 2021.

**106A.1.17.2 Municipal New Construction.** The provisions in section 106A.1.17 do not apply to Municipal New Construction as defined by Chapter 7 of the Environment Code that are subject to Section 706 of the Environment Code.

**106A.1.18. Labor Compliance Bonds for Certain Residential Projects.** With respect to a building or structure that is a Project as defined by Police Code Section 3300O.3, as may be amended from time to time, a permit shall not be issued under Section 106A on or after the effective date of Police Code Article 33O until the Department has received written confirmation from the Controller that the surety bond required under Police Code Section 3300O.5(a) has been filed.

**106A.2 Work exempt from permit.** [Section 105.2 of the California Building Code.] Exemptions from the permit requirements of this code shall not be deemed to grant authorization for any work to be done in any manner in violation of the provisions of this code or any other laws or ordinances of this jurisdiction. A building permit shall not be required for the following:

   1.   One-story detached accessory buildings or structures used as tool and storage sheds, playhouses and similar uses, provided the projected roof area does not exceed 100 square feet (9.29 m$^2$).

   2.   Fences not over 6 feet (1829 mm) high located at the rear and side lot lines at the rear of the property, and all fences not over 3 feet (914.4 mm) in height.

   3.   Amusement devices not on fixed foundations.

   4.   Movable cases, counters and partitions not over 5 feet 9 inches (1753 mm) high.

   5.   Retaining walls that are not over 4 feet (1219 mm) in height measured from the bottom of the footing to the top of the wall, unless supporting a surcharge or impounding Class I, II or III-A liquids.

   6.   Water tanks supported directly upon grade if the capacity does not exceed 5,000 gallons (18927 L) and the ratio of height to diameter or width does not exceed 2.1.

   7.   Platforms, sidewalks, walks and driveways when not part of an exit, and not more than 30 inches (762 mm) above grade and not over any basement or story below and which, for residential buildings required to be accessible to persons with disabilities, are not part of a required accessible route.

   8.   Painting, papering and similar finish work.

   9.   Temporary motion picture, television and theater stage sets and scenery.

   10.   Minor repairs to existing interior plaster or wallboard, except when part of a fire-resistive assembly.

11.   Prefabricated swimming pools accessory to a Group R, Division 3 Occupancy in which the pool walls are entirely above the adjacent grade and if the capacity does not exceed 5,000 gallons (18927 L).

12.   State-owned buildings under the jurisdiction of the state fire marshal. Unless otherwise exempted, separate plumbing, electrical and mechanical permits will be required for the above-exempted items.

13.   Reroofing without the installation, repair or removal of roof sheathing, if the total surface area of the roof reroofed in any 12-month period does not exceed 25 percent of the entire surface area of the roof.

14.   Surface mounting of readily removable materials on interior walls.

15.   Work performed on structures owned and occupied by the Federal or State government. This exemption shall not apply to privately operated structures erected on government-owned land, or to privately owned land or structures leased to the Federal or State government, or to structures owned and operated by State educational institutions unless such structures are owned and used exclusively for educational purposes or other uses related to the institution's educational purposes, such as student cafeterias or dormitories.

16.   Installations or replacement of floor coverings in areas other than bathrooms and toilet rooms not requiring the removal of existing required flooring.

17.   Repair and replacement of glazing in conformity with this code, and provided wire glass shall be replaced in kind.

18.   Replacement of doors, except garage doors, in all occupancies, provided they are not part of fire-resistive assemblies required by this code.

19.   Work performed on structures owned or leased by the City and County of San Francisco where the construction or modification of said structure is financed in whole or in part by the issuance of lease revenue bonds prior to July 1, 1989.

20.   See Section 3107.1.1 for exempt signs.

21.   See Section J103.2 for grading permit exemptions.

22.   See Section 106A.1.10.3 for Elevators regulated by the state exemption.

23.   Construction or repair of a homeless shelter located on City owned or leased land during a declared shelter crisis where the work complies with all the following alternative approval process conditions: (a) the City agency proposing the construction or repair submits written notice to the Clerk of the Board of Supervisors of the agency's intention to invoke this subsection 106A.2(23) and 60 days elapse without the City enacting an ordinance restricting the agency's invocation of this subsection; (b) the City agency proposing the siting, construction, or repair submits all information required under Section 106A.3.1 to the Department; (c) the Department routes the information regarding the proposed work to all bureaus, departments, or agencies that are required to review and approve such construction or repair as required under applicable ordinances and laws, including the Fire Marshal, Chief Harbor Engineer of the Port of San Francisco (if applicable), and the Departments of Public Works, Planning, and Public Health; (d) the Department receives written confirmation from the Directors of each applicable bureau, department, and agency that the proposed work complies with all ordinances and laws subject to their authority; (e) the Department confirms that the proposed work complies with all applicable provisions of this Building Code and that the Department has received written confirmation of compliance from all applicable bureaus, departments, and agencies; and (f) the Department issues a written determination of compliance that contains all the information required under Section 106A.4.

24.   A small residential rooftop solar energy system, as defined in Section 106A.1.15.1, installed on a building that is not (a) a designated landmark, (b) a contributory resource in a designated historic district, or (c) on the National Register or State Register, or deemed eligible for listing on the National or State Register. An electrical permit or other permit may be required depending on the system.

**106A.3.1 Application.** To obtain a permit, the applicant shall first file an application therefor in writing on a form furnished by the code enforcement agency for that purpose. Every such application shall:

1.   Identify and describe the work to be covered by the permit for which application is made.

2.   Describe the land on which the proposed work is to be done by legal description, street address or similar description that will readily identify and definitely locate the proposed building or work.

3.   For new buildings or structures, indicate the use or occupancy of all parts of the building or structure for which the proposed work is intended. For alteration work, indicate the proposed use or occupancy and the most current legal use or occupancy of all portions of the building or structure affected by or relevant to the proposed work.

4.   Be accompanied by plans, diagrams, computations and specifications and other data as required in Section 106A.3.2.

5.   State the valuation of any new building or structure or any addition, remodeling or alteration to an existing building.

6.   Be signed by the owner, or the owner's authorized agent, who may be required to submit evidence to indicate such authority. Such agent shall be responsible for advising the owner of all conditions attached to the application by the various approving agencies.

7.   Give such other data and information as may be required by the building official.

8.   Include, when available, the name, address and telephone number of the owner or contractor. When applicable, State and City license numbers shall be indicated.

9.   Contain an agreement by the owner of the premises to hold harmless the City and County of San Francisco and its officials and employees from all costs, liability and damages resulting, whether directly or indirectly, from use or occupancy of the sidewalk, street or subsidewalk space, or from anything in connection with the work included in the permit. The agreement shall run with the land and be binding on all of the owner's successors in title.

10.   Include an affidavit, signed under penalty of perjury, that the owner, or the owner's authorized representative, is not removing a legal or illegal dwelling unit, as defined in the Housing Code, when the work included in the permit is removal of a stove, kitchen, as defined in the Housing Code, or bathroom, as defined in the Housing Code. Such affidavit shall be posted prominently for at least fifteen (15) days in a conspicuous common area within the building where the work is proposed and shall be provided via hand delivery or U.S. mail to all tenants residing in the building.

**106A.3.1.1 Application processing.** The application, plans, specifications and other information submitted shall be referred for such review and approval as is required under applicable ordinances and laws. Each such reviewing bureau, department or agency shall indicate in a manner determined by the Building Official its approval, approval with conditions, or disapproval.

**106A.3.1.2 Transfer of application.** Applications are transferable with payment of additional fees when the new owner submits a letter to the Department agreeing to all conditions of approval, stipulations and agreements contained on the application, per Table 1A-D.

**106A.3.1.3 Authorization of dwelling units installed without a permit.**

(a)   **Screening required.** Prior to filing a permit application to legalize an existing unauthorized dwelling unit under Section 207.3 of the Planning Code, the owner of the building or the owner's authorized agent shall submit the following information to the Department for the purpose of determining whether the unauthorized dwelling unit can comply with the requirements of this Code or other codes administered and enforced by the Department, or whether equivalencies from Code requirements can be obtained:

(1)   a Dwelling Unit Legalization Checklist form, created by the Department, together with floor plans for the entire building and a plan showing the location of all structures on the subject lot;

(2)   evidence from the San Francisco Water Department, telephone, gas or electric records, written lease agreements, or other evidence acceptable to the Department showing that the dwelling unit for which approval is sought existed prior to January 1, 2013;

(3)   an assessment prepared by a licensed contractor, architect, or engineer that outlines a plan to comply with all applicable requirements of the Building Code and other Codes administered and enforced by the Department; and

(4)   other information as the Building Official shall require.

(b)   **Imminent and substantial hazard.** If the Department identifies an imminent and substantial hazard as described in Section 102A.16 of this Code during the screening process, the Department shall inform the applicant of the appropriate remedial actions and notifications to tenants. The Department shall not pursue remedial code enforcement actions and notifications to tenants based solely on information provided by the applicant during the screening process, unless the Department identifies an imminent and substantial hazard or the applicant consents.

(c)   **Application process; required permit(s).** After completion of the screening process required by subsection (a) a property owner or the owner's authorized agent may file applications with the Department, Fire Department, or other City department for any building or other permits that are required in order to legalize one existing unauthorized dwelling unit on the property. The application(s) shall refer explicitly to this Section 106A.3.1.3 and Section 207.3 of the Planning Code. If there is more than one existing unauthorized unit on the site, the owner or agent shall designate the unauthorized unit for which legalization is sought. The approval, issuance, expiration, or cancellation of an application filed pursuant to this Section 106A.3.1.3 and any resulting permits shall be in accordance with the provisions of all City codes, except as provided below. Cancellation or disapproval of the application or any resulting permit shall terminate all rights under this Section created by the application. A dwelling unit is not lawful unless and until all necessary approvals have been obtained.

(d)   **Notices of violation.** If the Department has issued a notice of violation for the unauthorized unit for which legalization is being sought and all violations would be corrected by legalization of the unit, the Director shall:

(1)   temporarily suspend the notice of violation and enforcement action upon initiation of the process set forth in subsection (a) by the owner or owner's authorized agent and acceptance of the required applications by the City; and

(2)   rescind the notice of violation and remove any related liens on the property if legalization of the unit is approved within one year of initiation of the process set forth in subsection (a).

(e) **Funding resources information.** The Department shall provide information about the Mayor's Office of Housing and Community Development Code Enforcement Rehabilitation Fund and other potential funding sources that may be available for code compliance.

**106A.3.2 Submittal documents.** Plans, specifications, engineering calculations, diagrams, soil investigation reports, special inspection and structural observation programs and other data shall constitute the submittal documents for a permit. When such plans are not prepared by an architect, land surveyor, or an engineer, the Building Official may require the applicant submitting such plans or other data to demonstrate that state law does not require that the plans be prepared by a licensed architect, land surveyor, or engineer. The Building Official may require plans, computations and specifications to be prepared and designed by an engineer or architect licensed by the state to practice as such even if not required by State law. Materials submitted by a licensed architect, land surveyor, or engineer must be signed and sealed ~~with an original signature on the first sheet of each set of documents, and facsimile stamps plus the required registration seal of the architect, land surveyor, or engineer on the balance of the~~ on all plan sheets.

Two complete sets of plans ~~and~~ which may include specifications and three copies of the soil investigation report (when required) shall be submitted. Additional complete sets of plans and specifications may be required for special permit processing services that may be offered by the City and County of San Francisco.

**EXCEPTIONS:**

1. The requirements for plans or specifications may be waived by the Building Official, provided that the nature and extent of the proposed construction can be clearly described in writing, and such a description is filed with the application.

2. In addition to all other requirements of Section 106A.3.2, the following requirements shall apply to: (a) applications for construction of new buildings or structures, and to alterations that involve a substantial increase in the building envelope of an existing building or structure, within the Edgehill Mountain Slope Protection Area, created by Building Code Section 106A.4.1.2, and within the Northwest Mt. Sutro Slope Protection Area, created by Section 106A.4.1.3 and (b) application for construction on property subject to the Slope Protection Act created by Building Code Section 106A.4.1.4:

The Building Official may not waive the requirements for submittal documents set forth in Section 106A.3.2.

Submittal documents shall substantiate that the building or structure will comply with applicable codes and regulations.

Submittal documents shall include (1) plans prepared by a State-licensed architect, land surveyor, or engineer and (2) a construction/staging plan establishing that the proposed construction will not compromise the health, safety or welfare of neighboring property owners. Submittal documents shall demonstrate to the satisfaction of the Building Official, based on consultation with and written communications from appropriate City officials, including the Director of the Department of Public Works, that there is sufficient infrastructure (including utilities and streets) to support the proposed residential development and that the proposed emergency vehicle access routes comply with the standards in use by the Fire Department or similar agency in effect at the time the application is submitted.

**106A.3.2.1 Incomplete applications.** The Department will not process an application which is not completely or properly filled out pursuant to the requirements of this section. When the

submittal documents do not contain the information required by this the application shall not be accepted.

**106A.3.2.2 Demolition.** An application for a permit to demolish a building or structure shall not be deemed complete until (a) the applicant declares under penalty of perjury that every party who has a recorded interest in the property that is the subject of the application has been notified of the filing of the application. See Section 110A, Table 1A-L – Public Information – for fee to defray the cost of maintaining records of such declarations and other attendant costs and (b) the Department receives written notice from the Department of Environment that the Department of the Environment has approved the applicant's waste diversion plan in accordance with Chapter 14 of the Environment Code.

**106A.3.2.2.1 Demolition application and notification.** Upon receipt of an application which would authorize the tearing down or demolition of a building or structure, the Department shall mail written notice to the owners of properties at least 300 feet (91.44 m) in every direction from the edge of the property on which the proposed demolition work will take place, as shown on the last annual tax roll, and shall provide notice to each residential tenant of the property that is the subject of the application and of the property immediately adjacent to such property. Said notice shall include the street address of the proposed work and the name and address of the property owner and, if known, of the contractor.

**106A.3.2.2.2 Notice to interested parties.** Any of the following organizations or groups may request notification of the receipt by the Department of an application for a demolition permit and of the issuance thereof:

1.  Architectural or historic preservation or housing conservation groups.
2.  Recycling companies.

Such request shall be in writing to the Department, on forms furnished by the Department. The organization or group shall specify the area(s) of the City and County of San Francisco for which notification is requested, and the Building Official shall establish the boundaries of such areas for purposes of such notification. Requests shall be made annually, within 30 days after July 1 of each year. See Section 110A, Table 1A-L – Public Information – for fees. Fees may be prorated by the Department for any requests which are received at other times during the year.

**106A.3.2.3 Substantial alterations – Notification, sign posting and affidavits.** In addition to any other requirements for notice set forth in this code, the following shall apply:

Any person filing an application to (1) substantially alter, as that term is defined by the Building Official, an apartment house or residential hotel (as defined in Section 41.4 of the Administrative Code) that contains five or more dwelling units, or (2) remove a legal or illegal dwelling unit, as defined in the Housing Code, shall post a sign at least 15 inches by 15 inches (381 mm × 381 mm) in a conspicuous common area of the apartment house or residential hotel for at least 15 days with the following information: notice that the application has been made, the nature of the work to be performed, the means of obtaining information from the Department, and the procedure for appealing the issuance of building permits. When the permit application proposes to remove a legal or illegal dwelling unit, the posted sign shall also contain a list of tenant counseling or legal services that can provide assistance to tenants with understanding and participating in the City's processes, and notice of such application shall be delivered via hand delivery or U.S. mail to all tenants in the building. Such notice shall also include contact information for translation services into Spanish, Chinese, and Russian. In occupied residential unreinforced masonry buildings, required signs shall also include specified information provided by the Building Official. The applicant shall thereafter submit an affidavit signed under penalty

of perjury stating that the sign has been posted as required by this section. See Section 110A, Table 1A-L – Public Information – for fee to defray the cost of maintaining records of said affidavits. The Building Official shall not approve the application until this affidavit is submitted. If there is reason to believe that the sign was not posted as required, the Building Official shall investigate the matter, shall provide the applicant an opportunity to respond to any complaint of noncompliance, shall determine whether the requirements of this section have been substantially met, and shall cancel an application or revoke the permit if it is determined they have not been substantially met.

### 106A.3.2.4 Hazardous Substances.

**106A.3.2.4.1 Soil and/or groundwater sampling and analysis required.** Applicants for any building or grading permit which involves the disturbance of at least 50 cubic yards (38.23 m$^3$) of soil shall comply with the requirements for soil and/or groundwater sampling and analysis of Article 22A of the Health Code, unless such property is subject to Health Code 22A.9 when any part of the work will occur

(a)  bayward of the 1851 high-tide line as indicated on the Map of the City and County of San Francisco (adopted June 27, 1986) (see Figure 1A-1) which is maintained for public distribution by the Building Official;

(b)  in any area of the City designated by the Director of Public Health under Article 22A of the Health Code;

(c)  on any lot within the City either presently or previously zoned for industrial use as defined in Article 22A of the Health Code;

(d)  on any lot within the City either presently or previously permitted for industrial use;

(e)  on any lot within the City within 150 feet of any of the elevated portions of the following highways: U.S. Highway 101, Interstate 80, Interstate 280;

(f)  on any lot in the City known or suspected by the Department of Public Health to contain hazardous substances in the soil and/or groundwater, using the definition of hazardous substance contained in Article 22A of the Health Code, or;

(g)  on any lot of the City known or suspected by the Department of Public Health to contain or to be within 100 feet of an underground storage tank.

*Note:* Figure 1A-1 is included at the end of this chapter.

**106A.3.2.4.2 Permit approval.**

(a)  Except as provided in subsection (b), no building permit application subject to the requirements of this Section shall be considered acceptable for review and approved until the Department receives written notification from the Director of Public Health that the applicant has complied with all applicable provisions of Article 22A of the Health Code that can be completed without a permit, or that the requirements have been waived.

(b)  Subsection (a) does not apply to the following extent:

(1)  The Building Official may consider an application acceptable for review and issue a site permit pursuant to Section 106A.3.4.2 prior to the time an applicant complies with this Section.

(2)  The Building Official may consider an application acceptable for review and issue site permit addenda and other permit(s) to undertake soil sampling or mitigation measures to comply with this section.

**106A.3.2.4.3 No time limits.** For the purposes of completing the requirements of this Section, the time limitations set forth in Section 106A.3.7 of the San Francisco Building Code do not apply.

**106A.3.2.4.4 Permit notification and warning.**

(a)   The Building Department shall provide information to all permit applicants of Bay Area Air Quality Management District and California Air Resources Board regulations, as well as San Francisco Health Code Article 22B and Building Code requirements regarding construction dust control to mitigate potential adverse public health effects from dust in general, and from naturally occurring asbestos that may be released during construction activities.

(b)   All building permits and grading permits issued by the Building Department under this Section 106A.3.2.4 shall bear the following printed warning:

**WARNING**

Under San Francisco Building Code Section 106A.3.2.4.2, certain building permits may be issued only after the permittee analyzes the soil and/or groundwater for the presence of hazardous substances and, where applicable, the Department of Public Health has approved the permittee's site mitigation plan. In issuing this permit, neither the City nor any of its officers or employees make any representation that the soil and/or groundwater on or about the site is free from the presence of hazardous substances. Nor does the City's implementation of this process relieve any person from their duties and responsibilities relating to hazardous substance contamination under state and federal law~~low~~. Neither subsurface soil analysis under Building Code Section 106A.3.2.4.2 nor the issuance of this permit is intended to alter, extinguish, or transfer these responsibilities.

**106A.3.2.5 Hunters Point Shipyard.**

**106A.3.2.5.1 Compliance required.** Applicants for any building or grading permit for Hunters Point Shipyard, which involves subsurface disturbance of soil or the extraction or management of groundwater, except where such permit is for purposes of environmental characterization, and except, in the case of property determined by the applicable ROD to be suitable for unrestricted residential use, where such permit involves subsurface disturbance of less than 50 cubic yards (38.23 m$^3$) of soil, shall comply with the requirements of Article 31 of the Health Code. Hunters Point Shipyard is that area of the City and County of San Francisco shown on Article 31 Map-Figure 1, which is maintained for public distribution by the Building Official. A copy of said Figure is on file with the Clerk of the Board of Supervisors in File No. 100577.

**106A.3.2.5.2 Permit approval.** No building permit application subject to the requirements of this section shall be deemed to be complete until the Department receives written notification from the Director of Public Health that the applicant has complied with all applicable provisions of Article 31 of the Health Code. Approvals or conditions imposed in writing by the Department of Public Health shall become conditions of the permit issued by the Department, and violation of such approvals or conditions shall be deemed a violation of the permit.

**EXCEPTION:**

1.   The Building Official may issue a site permit pursuant to Section 106A.3.4.2 prior to the time an applicant complies with this section.

2.   Site permit addenda and other permit(s) may be issued to excavate soil or undertake soil sampling or implement other requirements of Article 31 of the Health Code.

**106A.3.2.5.3 No time limits.** For the purposes of completing the requirements of this section, the time limitations set forth in Section 106A .3.7 of the San Francisco Building Code do not apply.

**106A.3.2.5.4 Permit notification.** All building permits and grading permits issued by the Department of Building Inspection shall bear notice of the above requirements and of the permittee's responsibility to comply.

**106A.3.2.6 Construction dust control.**

**106A.3.2.6.1 Dust control required.** All applicants for a building, demolition, excavation, grading, foundation, or other permit required by this Code to construct a new building, to demolish a building, to substantially alter or to add to an existing building shall comply with the requirements for dust control and, in addition, for projects over a half acre the applicant will be required to submit a Dust Control Plan for approval by the San Francisco Health Department as set forth in Article 22B of the San Francisco Health Code.

**106A.3.2.6.2 Permit approval.** For projects of over one half acre in size, no building or other permit application subject to the requirements of this section shall be approved until the Department of Building Inspection receives either

(a)   written notification from the Director of Public Health that the applicant either has a site-specific dust control plan for the project approved by the Director of Public Health or the Director of Public Health has waived the requirement or

(b)   the applicant qualifies as an interior only tenant improvement project that will not produce exterior visible dust and therefore is exempt from complying with Article 22B of the San Francisco Health Code.

*EXCEPTION:* The Director may issue a site permit pursuant to Section 106A.3.4.2 prior to the time an applicant complies with this section.

**106A.3.2.6.3 General dust control requirements.**

(a)   All site preparation work, demolition or construction activities within the City and County of San Francisco that have the potential to create dust or will expose or disturb more than 10 cubic yards or 500 square feet of soil shall comply with the requirements of this Section whether or not the activity requires a permit from the Department of Building Inspection.

(b)   For projects over one half acre in size, the project sponsor shall designate a person or persons who will be responsible for monitoring compliance with dust control requirements. The designated person or persons shall be on the site or available by telephone or other means during all times that site preparation, demolition or construction activities may be in progress, including holidays and weekends. The name and telephone number where such person or persons may be reached at all times shall be provided to the Director and to the Director of Public Health prior to commencement of work on the project.

(c)   The project sponsor and the contractor responsible for construction activities at the project site shall use the following practices to control construction dust on the site or other practices that result in equivalent dust control that are acceptable to the Director.

(1)   Water all active construction areas sufficiently to prevent dust from becoming airborne. Increased watering frequency may be necessary whenever wind speeds exceed 15 miles per hour. Reclaimed water must be used if required by Article 21, Section 1100 *et seq.* of the San Francisco Public Works Code. If not required, reclaimed water should be used whenever possible.

(2)   Provide as much water as necessary to control dust (without creating run-off) in any area of land clearing, earth movement, excavation, drillings, and other dust-generating activity.

(3)   During excavation and dirt-moving activities, wet sweep or vacuum the streets, sidewalks, paths, and intersections where work is in progress at the end of the workday.

(4)   Cover any inactive (no disturbance for more than seven days) stockpiles greater than ten cubic yards or 500 square feet of excavated materials, backfill material, import material, gravel, sand, road base, and soil with a 10 mil (0.01 inch) polyethylene plastic or equivalent tarp and brace it down or use other equivalent soil stabilization techniques.

(5)   Use dust enclosures, curtains, and dust collectors as necessary to control dust in the excavation area.

**106A.3.2.6.4 Large projects.** If the project is over one half acre in size and the project does not qualify for an interior only tenant improvement project exemption or the Department of Public Health has not issued a waiver for a site-specific dust control plan for the project; construction, demolition, excavation, grading, foundation work, or other permitted activities may not commence until the owner or the owner's agent has submitted to the Department a copy of the Director of Public Health's written approval of the dust control plan. All site preparation and construction activities on the job site shall comply with the general requirements for dust control and the site-specific dust control plan approved by the Director of Public Health. The failure to comply with all provisions of the approved site-specific dust control plan shall be considered a violation of this Code.

**106A.3.2.6.5 Waiver of requirements for compliance for small sites; rescission of waiver.** For sites less than a half acre in size:

(a)   The Director may waive these requirements if the applicant demonstrates to the Director's satisfaction that the proposed site preparation, demolition or construction activities are unlikely to result in any visible windblown dust.

(b)   If at any time, contrary to the applicant's assertions, the construction activities produce visible windblown dust, the Director may issue a written order rescinding the waiver. A copy of the rescission order shall be personally served on the owner of the property at the address on file with the Department of Building Inspection and posted on the job site.

(c)   If the Director orders rescission of the waiver, the owner of the property and the contractor or other persons responsible for construction activities at the site shall comply immediately with the above dust control requirements.

**106A.3.2.6.6 Permit notification.** All building, demolition, excavation, grading, foundation, or other permit subject to this section issued by the Department of Building Inspection shall bear notice of the above requirements and of the owner's responsibility to control construction dust on the site.

**106A.3.2.6.7 Violations.** Upon receipt of complaints, the Director is authorized to administer and enforce all provisions of this Section and may enforce the provisions of this Section by any lawful means available for such purpose, including taking actions authorized pursuant to Section 103A of this Code.

**106A.3.2.6.8 Fees.** The Department shall determine and recommend to the Board of Supervisors the amount of fee that is required to compensate the Department for the costs of enforcing these dust control requirements.

**106A.3.3 Information on plans and specifications.** Plans and specifications shall be drawn to scale on substantial paper of a size not less than 11-inch by 17-inch (279.4 mm × 431.8 mm) and shall be of sufficient clarity to indicate the location, nature and extent of the work proposed and show in detail that it will conform to the provisions of this code and all relevant laws, ordinances, rules and regulations. Specific plans and information required shall include any of the following that is appropriate for the work being proposed:

1.   The Assessor's block and lot number on the first sheet or page of each set of plans and other submittal documents.

2.   A dimensioned plot plan showing sidewalk widths, street widths, lot lines, locations of proposed or existing buildings or structures on the property, and full widths, heights and setbacks of buildings on adjacent properties where their locations or heights affect the code requirements

of the subject building or structure. Locations of parking or loading spaces and of aboveground hydrants and utility poles shall also be shown. The Building Official may require the owner to have the lot surveyed and staked by a registered land surveyor or registered civil engineer so that the proper location of the building on the lot may be determined. A copy of this survey shall be filed with the application for the permit.

3.   All existing and future finished grades for new buildings or structures and additions to existing buildings or structures, including official curb and street grades.

4.   Complete dimensioned exterior elevations showing types of wall materials, locations and sizes of wall openings, roof heights and setbacks from property lines. The existing and future exterior grade profiles on each side of the building extending to any adjoining buildings, structures or properties which might be affected by this work shown on the elevations unless a topographic map prepared by a licensed surveyor is submitted.

5.   Dimensioned architectural floor plan for each floor, basement and roof unless the floor plans are identical. The scale shall be not less than 1/8 inch (3.175 mm) to 1 foot (304.8 mm) unless otherwise permitted by the Building Official. The floor plan shall show the gross area of each use area on each floor, and the total area of each floor. Structural, mechanical and other detailed information shall not be superimposed unless the resultant floor plans are clearly legible and understandable.

6.   For alteration work, all existing partitions and construction that are to be removed or altered and all that are to remain unchanged.

7.   Identification on the architectural floor plans of the use or occupancy classifications of all new and existing areas of the building.

8.   Cross-sections as necessary, including information on location and depth of footings of adjacent buildings or structures which might be affected by this work.

9.   Information regarding all architectural and structural materials to be installed in the building.

10.   Details of all fire-resistive assemblies and elements, and provisions for maintaining the integrity of fire-resistive assemblies or elements where penetrated.

11.   Information regarding the installation, location and support of building utilities, including plumbing systems, and electrical equipment, wiring and systems.

12.   Structural plans and calculations detailing all components of the vertical load carrying system, including joists, beams, girders, columns, bearing walls and locations and depths of footings. Connection details and cross-sections to show how the loads are transferred and carried from the roof to the foundation. Live load clearly designated on the plan for each use area.

13.   Structural plans and calculations detailing all elements of the lateral force resisting system, including horizontal and vertical diaphragms, connections and details that completely identify the lateral force load path from the roof to the foundation.

14.   Special inspection and structural observation program required by Sections 106A.3.5, 1704 and 1709.

15.   Geotechnical report when work involves significant grading, excavation or fill, or uses special foundations; or when the site is included in the State of California Seismic Hazard Zones Map, Special Soils Map or other area identified by the Building Official. See Appendix J, for additional grading permit requirements.

16.   Hydraulic design drawings and calculations for sprinkler systems and standpipes.

17.   Information on plans demonstrating compliance with energy conservation requirements.

18.   Information on plans demonstrating compliance with applicable sound transmission requirements.

19.   Information on plans demonstrating compliance with applicable disabled access requirements.

20.   Information on plans demonstrating compliance with water conservation and reclamation requirements.

21.   Landscaping and irrigation plans, when required by the Planning Department, Department of Public Works or other agencies.

22.   Photographs when required by the Planning Department or other agencies.

23.   For a building that is an unsafe structure as defined in Section 102A, sufficient information to show how all unsafe conditions will be corrected.

24.   Information on plans demonstrating compliance with the lactation room requirements of Section ~~1209~~1210.5 of the Building Code.

25.   All other information necessary for determining compliance with applicable codes and regulations.

**106A.3.4 Architect or engineer of record.**

**106A.3.4.1 General.** When it is required that documents be prepared by an architect or engineer, the building official may require the owner to engage and designate on the building permit application an architect or engineer who shall act as the architect or engineer of record. If the circumstances require, the owner may designate a substitute architect or engineer of record who shall perform all of the duties required of the original architect or engineer of record. The building official shall be notified in writing by the owner if the architect or engineer of record is changed or is unable to continue to perform the duties.

The architect or engineer of record shall be responsible for reviewing and coordinating all submittal documents prepared by others, included deferred submittal items, for compatibility with the design of the building.

**106A.3.4.2 Site permit.** A site permit may be issued for the construction or major alteration, as that term is defined by the Building Official, of a building or structure upon approval of preliminary drawings and before the entire working drawings and specifications of the building or structure have been completed and submitted for approval.

Such preliminary drawings and specifications shall clearly indicate the nature, character and extent of the work proposed. The application procedure shall comply with Sections 106A.1 through 106A.4 except for the completeness of plans. The permit issuance fees and plan review fees shall be as set forth in Section 110A, Table 1A-A – Building Permit Fees, and Table 1A-B – Other Building Permit and Plan Review Fees, and shall be calculated on the basis of the total valuation of the work. No construction work shall be done under the site permit. Construction may proceed after the appropriate addenda have been issued. In no case shall construction exceed the scope of the issued addenda.

Site Permit must be issued prior to submittal of 1st addendum.

Plans for construction may be divided and submitted in accordance with an addenda schedule submitted on the site permit drawings or on the first addendum drawings. See Section 110A, Table 1A-B – Other Building Permit and Plan Review Fees – for applicable fee.

The holder of such permit and addenda shall proceed with approved addenda work at the permittee's own risk, without assurance that approvals for the remaining addenda or for the entire building or structure will be granted.

Each addendum must be approved and issued before work shown on that addendum may commence. The time allowed for review, approval and issuance of all addenda is governed by the maximum time allowed per Section 106A.4.4 and Table B – Maximum Time Allowed to Complete All Work Authorized by Building Permit. The extension times may be applied upon payment of fee per Section 110A, Table 1A-J – Miscellaneous Fees. If all required addenda are not approved and issued by the maximum time allowed, the site permit, all previously approved addenda, and all remaining addenda shall be deemed to be canceled. When a site permit has been canceled, an alteration work application shall be required to resume processing. The provisions of Section 107A.3.3 shall apply to such alteration work application.

**106A.3.5 Inspection and observation program.** When special inspection is required under Chapter 17, the architect or engineer of record shall prepare an inspection program that shall be submitted to the building official for approval prior to issuance of the building permit. The inspection program shall designate the portions of the work that require special inspection and the name or names of the individuals or firms who are to perform the special inspections, and indicate the duties of the special inspectors.

The special inspector shall be employed by the owner, the engineer or architect of record, or an agent of the owner, but not the contractor or any other person responsible for the work.

When structural observation is required under Chapter 17, the inspection program shall name the individuals or firms who are to perform structural observation and describe the stages of construction at which structural observation is to occur.

The inspection program shall include samples of inspection reports and provide time limits for submission of reports.

**106A.3.6 Permit facilitator.** Any permit applicant may use the services of a Permit Facilitator. The Permit Facilitator shall be under the jurisdiction of the Building Official. The duties of the Permit Facilitator include distributing permit application submittals to various review disciplines, departments or agencies; and providing the project sponsor with a single point of contact regarding permit application status, procedures or requirements. The fee for such service shall be per Table 1A-B – Other Building Permit and Plan Review Fees – and shall be paid upon filing of a permit application.

**106A.3.7 Application expiration.** The Building Official may hold in abeyance or reject any application, plans, or specifications filed which in the Building Official's opinion, do not provide the necessary information in a clear and concise manner as required in Section 106A.3.3, and shall cancel such an application upon the expiration of the time period set forth per Table A.

At the time the application has been deemed acceptable for building plan review by the Department of Building Inspection, any corrections, additional information, plans or documents that are necessary to complete the processing by the Department of Building Inspection shall be submitted and approved within the following time limitations:

**TABLE A – APPLICATION EXPIRATION**

| Valuation | Time Limitation | Extension Limitation |
|---|---|---|
| $1.00 to $1 million | 360 calendar days | 360 calendar days |
| Over $1 million | 720 calendar days | 720 calendar days |

The time limitation shall apply until the application has been approved and permit is issued. A one-time extension per Table A may be granted by the Building Official at any point during the approval process, upon written request by the applicant and payment of fee. Additional extensions may be granted by the Building Official prior to extension expiration upon written

request from the applicant and payment of fee. See Section 110A, Table 1A-J – Miscellaneous Fees – for applicable fee. In the event an extension of time extends the life of an application beyond the effective date of the adoption of a new code, the Building Official may require that all or part of the application be subject to the provisions of the new code and payment of an additional plan review fee per Table 1A-A – Building Permit Fees. In the event the application has not been approved and issued within 60 days before the end of the stated time period in Table A, the Department shall notify the applicant that the application will be canceled in 60 days unless the application is extended. An application which exceeds the stated or extended time period after such notice shall be deemed canceled without further action by the Department.

**EXCEPTIONS:**

1.  For applications resulting from enforcement actions initiated by the Building Official to abate code violations, the above time limits shall be reduced to 30 days and 10 days, respectively. The Building Official may grant an extension for hardship or procedural error. Upon cancellation, such cases shall be referred to the City Attorney for legal action.

2.  The above time limits shall not apply to applications which are subject to the work without permit investigation fee per Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments. Such applications shall be canceled only through specific action by the Building Official.

3.  The above time limits shall be suspended whenever an application is returned to the Planning Department for review due to a design change that the Building Code(s) requires.

**106A.3.8 Disapproval of application.** Any application that does not meet the requirements of this code or any other laws, ordinances or regulations enforced by any interested departments or agencies shall be disapproved by the Building Official or upon request by the applicant. If such a request is not made by the applicant to disapprove an application, the Building Official shall notify the applicant that the application will be cancelled in 60 days.

**106A.3.8.1 Withdrawal of application.** Applications filed for permits may be withdrawn by the owner, provided that no part of the work proposed on the application has been performed. All applicable fees must be paid before an application can be withdrawn.

**106A.4 Permits issuance.**

**106A.4.1 Issuance.** The application, plans, specifications, computations and other data filed by an applicant for a permit shall be reviewed by the building official. Such plans may/shall be reviewed by other departments of this jurisdiction to verify compliance with any applicable laws under their jurisdiction. If the Building Official finds that the work described in an application for a permit and the plans, specifications and other data filed therewith conform to the requirements of this code and other pertinent laws and ordinances, and that the fees specified in Section 107A have been paid, the building official shall issue a permit therefor to the applicant.

When the building official issues the permit where plans are required, the building official shall stamp each page of the plans and the first page of the specifications APPROVED. Such approved plans and specifications shall not be changed, modified or altered without authorizations from the building official, and all work regulated by this code shall be done in accordance with the approved plans.

The building official may issue a permit for the construction of part of a building or structure before the entire plans and specifications for the whole building or structure have been submitted or approved, provided adequate information and detailed statements have been filed complying with all pertinent requirements of this code. The holder of a partial permit shall proceed without assurance that the permit for the entire building or structure will be granted.

**106A.4.1.1 Transfer of permit.** Permits are transferable without payment of fees per Table 1A-D when the new owner submits a letter to the Department agreeing to all conditions of approval, stipulations and agreements contained on the approved application.

**106A.4.1.2 Edgehill Mountain Slope Protection Area.**

**106A.4.1.2.1 Creation.** There is hereby created the Edgehill Mountain Slope Protection Area, which is generally bounded by Garcia Avenue, Vasquez Avenue, Kensington Way and Ulloa Street and traversed by Edgehill Way. The Edgehill Mountain Slope Protection Area is comprised of the following Assessor's Block Numbers: 2875, 2876, 2923, 2933, 2934, 2935, 2936A and 2936B. Heightened review of certain permit applications, as provided in this section, shall be made in this area.

**106A.4.1.2.2 Purpose.** Because landslides, earth movement, ground shaking and subsidence are likely to occur on or near the Edgehill Mountain Slope Protection Area, causing severe damage and destruction to public and private improvements, the Board of Supervisors finds that the public health, safety and welfare is best protected if the Building Official of Building Inspection causes permit applications within the Edgehill Mountain Slope Protection Area for either (1) construction of new buildings or structures or (2) alterations that involve a substantial increase in the envelope of an existing building or structure, to be peer reviewed for structural integrity and effect on hillside stability. The requirements herein for projects in the Edgehill Mountain Slope Protection Area are in addition to all other applicable laws and regulations, including any and all requirements for environmental review under the California Environmental Quality Act; compliance with the requirements contained herein does not excuse a project sponsor from compliance with any other applicable laws and regulations.

**106A.4.1.2.3 Mandatory review by Structural Advisory Committee and other city officials.** All permit applications submitted to the Central Permit Bureau for construction of new buildings or structures or alterations that involve a substantial increase in the envelope of an existing building or structure (as determined by the Building Official) within the Edgehill Mountain Slope Protection Area shall be submitted to and reviewed by the Structural Advisory Committee, as defined by Building Code Section 105A.6. No permits for such properties located within the Edgehill Mountain Slope Protection Area shall be issued unless and until the Building Official has consulted with and received a written communication from representatives of the Department of Planning, Department of Public Works and Fire Department, each of whom has made a visit to the site for which the project is proposed, and the Building Official has received a written report from the Structural Advisory Committee concerning the safety and integrity of the proposed design and construction. As part of its review, the Structural Advisory Committee shall consider the effect that construction activity related to the proposed project will have on the safety and stability of the Edgehill Mountain Slope Protection Area.

**106A.4.1.2.4 Mandatory denial by Building Official.** In the event that the Structural Advisory Committee determines that there is a reasonable likelihood that the proposed design and construction would result in unsafe conditions or would increase the likelihood of hillside instability, and such unsafe conditions or instability cannot be mitigated to the satisfaction of the Structural Advisory Committee, the Building Official shall deny the permit. The Building Official's decision to deny the permit is appealable only to the Board of Appeals.

**106A.4.1.3 Northwest Mt. Sutro Slope Protection Area.**

**106A.4.1.3.1 Creation.** There is hereby created the Northwest Mt. Sutro Slope Protection Area, which is generally bounded on the east by Crestmont Drive and its undeveloped northern extension, on the south along Oak Park to its intersection with Christopher Boulevard, west to

Warren Drive, north along Warren Drive to the 6th Avenue and Kirkham Street intersection, and Kirkham Street in an easterly direction to its end at the undeveloped extension of Crestmont Drive. The Northwest Mt. Sutro Slope Protection Area is comprised of the following Assessor's Block Numbers: 1850, 1851, 2635, 2636, 2638, 2674, 2675, 2676, 2677, and 2686. Heightened review of certain permit applications, as provided in this section, shall be made in this area.

**106A.4.1.3.2 Purpose.** Because landslides, earth movement, ground shaking and subsidence are likely to occur on or near the Northwest Mt. Sutro Slope Protection Area, causing severe damage and destruction to public and private improvements, the Board of Supervisors finds that the public health, safety and welfare is best protected if the Building Official of Building Inspection causes permit applications within the Northwest Mt. Sutro Slope Protection Area for either (1) construction of new buildings or structures or (2) alterations that involve a substantial increase in the envelope of an existing building or structure, to be peer reviewed for structural integrity and effect on hillside stability. The requirements herein for projects in the Northwest Mt. Sutro Slope Protection Area are in addition to all other applicable laws and regulations, including any and all requirements for environmental review under the California Environmental Quality Act; compliance with the requirements contained herein does not excuse a project sponsor from compliance with any other applicable laws and regulations.

**106A.4.1.3.3 Mandatory review by Structural Advisory Committee and other city officials.** All permit applications submitted to the Central Permit Bureau for construction of new buildings or structures or alterations that involve a substantial increase in the envelope of an existing building or structure (as determined by the Building Official) within the Northwest Mt. Sutro Slope Protection Area shall be submitted to and reviewed by the Structural Advisory Committee, as defined by Building Code Section 105A.6. No permits for such properties located within the Northwest Mt. Sutro Slope Protection Area shall be issued unless and until the Building Official has consulted with and received a written communication from representatives of the Department of Planning, Department of Public Works and Fire Department, each of whom has made a visit to the site for which the project is proposed, and the Building Official has received a written report from the Structural Advisory Committee concerning the safety and integrity of the proposed design and construction. As part of its review, the Structural Advisory Committee shall consider the effect that construction activity related to the proposed project will have on the safety and stability of the Northwest Mt. Sutro Slope Protection Area.

**106A.4.1.3.4 Mandatory denial by Building Official.** In the event that the Structural Advisory Committee determines that there is a reasonable likelihood that the proposed design and construction would result in unsafe conditions or would increase the likelihood of hillside instability, and such unsafe conditions or instability cannot be mitigated to the satisfaction of the Structural Advisory Committee, the Building Official shall deny the permit. The Building Official's decision to deny the permit is appealable only to the Board of Appeals.

**106A.4.1.4 The Slope and Seismic Hazard Zone Protection Act.** This Section of the San Francisco Building Code shall be known as the Slope and Seismic Hazard Zone Protection Act.

**106A.4.1.4.1 Creation.** The Slope and Seismic Hazard Zone Protection Act shall apply to all property within San Francisco that exceeds an average slope of 4 horizontal to 1 vertical grade or falls within certain mapped areas of the City, except those properties already subject to the Edgehill Mountain Slope Protection Area or the Northwest Mt. Sutro Slope Protection Area. For purposes of this Section "property" shall mean a legal lot of record. Heightened review of certain permit applications, as provided in this section, shall be given to all property subject to this Act.

64

**106A.4.1.4.2 Purpose.** Because landslides, earth movement, ground shaking, drainage issues, and subsidence are likely to occur on or near steeply sloped properties and within other defined areas causing severe damage and destruction to public and private improvements, the Board of Supervisors finds that the public health, safety, and welfare is best protected if the Building Official causes permit applications for the construction of new buildings or structures and certain other construction work on property subject to the Slope and Seismic Hazard Zone Protection Act to undergo additional review for structural integrity and effect on hillside or slope stability. The requirements for projects subject to the Slope and Seismic Hazard Zone Protection Act are in addition to all other applicable laws and regulations, including any and all requirements for environmental review under the California Environmental Quality Act; compliance with the requirements contained herein does not excuse a project sponsor from compliance with any other applicable laws and regulations.

**106A.4.1.4.3 Scope.**

  (a)   Properties are subject to these requirements where: (1) any portion of the property lies within the areas of "Earthquake-Induced Landslide" in the Seismic Hazard Zone Map, released by the California Department of Conservation, Division of Mines and Geology, dated November 17, 2000, or amendments thereto or (2) the property exceeds an average slope of 4 horizontal to 1 vertical slope.

  (b)   Proposed construction work that is subject to these requirements includes the construction of new buildings or structures having over 1,000 square feet of new projected roof area and horizontal or vertical additions having over 500 square feet of new projected roof area. In addition, these requirements shall apply to the following activity or activities: shoring, underpinning, excavation, or retaining wall work; grading, including excavation or fill, of over 50 cubic yards of earth materials; or any other construction activity that, in the opinion of the Building Official, may have a substantial impact on the slope stability of any property.

**106A.4.1.4.4 Mandatory submittal and review of reports review.**

  (a)   All permit applications submitted to the Central Permit Bureau for construction work on properties subject to the Slope and Seismic Hazard Zone Protection Act shall include report(s) prepared and signed by both a licensed geologist and a licensed geotechnical engineer identifying areas of potential slope instability, defining potential risks of development due to geological and geotechnical factors, including information required by this section 106A.4.1.4.4 and Departmental guidelines and regulations, and making recommendations regarding the proposed development. These reports shall undergo review as deemed appropriate by the Building Official or by their designated staff. Such review shall involve an internal review by Departmental staff. The Building Official, in their discretion, may require third party peer review from a licensed geotechnical engineer. After third party peer review, the Building Official, in their discretion, may establish a Structural Advisory Committee, as defined by Building Code section 105A.6, to review the project. If there is a history of landslides in the vicinity of the project, the Building Official shall require third party peer review and establish a Structural Advisory Committee to review the project. For purposes of the preceding sentence, "vicinity" shall mean any property tangent to the subject project site that also appears on the current version of the California Department of Conservation's Seismic Hazard Zone Map identified in section 106A.4.1.4.3. The Building Official's or the Building Official's designee's decision(s) concerning the level of review for a particular project or activity shall: (1) be in writing, (2) identify Departmental staff involved in the decision, (3) be consistent with the criteria set forth in

the Slope and Seismic Hazard Zone Protection Act and any Departmental guidance adopted under section 106A.4.1.6, and (4) describe the basis for the decision.

   (b)   All such project reviews required under section 106A.4.1.4.4(a) shall verify that appropriate geological and geotechnical issues have been considered and that appropriate slope instability mitigation strategies, including drainage plans if required, have been proposed. Review also shall consider any other factors relevant to mitigation slope instability, including, but not limited to, the ground slope, soil type at the project site, the geologic conditions, the history of landslides in the vicinity, the nature of the planned excavation and construction, the proximity and type of adjacent construction, and the effect that construction activity related to the proposed project will have on the safety and stability of the subject property and properties within the vicinity of such property.

   (c)   No permits as specified above for properties subject to the Slope and Seismic Hazard Zone Protection Act that involve review by the Structural Advisory Committee shall be issued unless and until the Building Official has consulted with and received a written communication from representatives of the Departments of Planning and Public Works, and the Fire Department, each of whom has made a visit to the site for which the project is proposed, and the Building Official has received a written report from the Structural Advisory Committee concerning the safety and integrity of the proposed design and construction. As part of its review, the Structural Advisory Committee shall make findings concerning the review criteria and analysis set forth in this section 106A.4.1.4.4 and Departmental guidelines and regulations regarding slope and seismic hazards.

**106A.4.1.4.5 Mandatory denial by the Building Official.** In the event that the Building Official establishes a Structural Advisory Committee and such Committee determines that there is a reasonable likelihood that the proposed design and construction would result in unsafe conditions or would increase the likelihood of hillside or slope instability, and such unsafe conditions or instability cannot be mitigated to the satisfaction of the Committee, the Building Official shall deny the permit. The Building Official's decision to deny the permit is appealable only to the Board of Appeals.

**106A.4.1.4.6 Regulations to implement the Slope and Seismic Hazard Zone Protection Act.** The Building Official is hereby authorized to adopt rules, regulations, administrative bulletins, or other written guidelines to assist the Department in implementing this Section 106A .4.1.4, provided that any such guidance shall be in addition to the criteria set forth in section 106A .4.1.4.4 or elsewhere in this Act and shall not conflict with or diminish any of the permit review criteria in this Building Code. Such guidance may provide objective criteria to exempt certain projects and activities from discretionary third party peer or Structural Advisory Committee review where the soil at the project site is dune sand or Colma Formation and the project or activity presents circumstances that would not necessitate more extensive review.

**106A.4.2 Retention of approved construction documents.** One set of approved construction documents shall be provided to the party obtaining the permit. The owner shall be responsible for keeping these documents on the building site at all times and making them available for inspection and use by the inspector during such construction until final inspection has been made; failure to do so shall result in stoppage of work. The approved construction documents shall not be changed, modified or altered without authorization from the Building Official; all work shall be done in accordance with these documents.

   One set of approved construction documents for all building permits shall be retained by the Department in reproducible form as public records.

**106A.4.3 Validity of permit.** The issuance of a permit or approval of plans and specifications shall not be construed to be a permit for, or an approval of, any violation of any of the provisions of this code or of any other applicable laws and regulations. Permits presuming to give authority to violate or cancel the provisions of this code or other ordinances of the jurisdiction shall not be valid.

The issuance of a permit based on plans, specifications and other data shall not prevent the Building Official from thereafter requiring the correction of errors in said plans, specifications and other data, or from preventing building operations being carried on thereunder when in violation of this code or other applicable laws and regulations.

**106A.4.4 Permit expiration.** Every permit issued by the Building Official under the provisions of this code, unless an extension of time has been specifically approved by the Building Official, shall expire by limitation and become null and void when the time allowed in Table B is reached, or when any of the following circumstances is applicable:

1. For Building Official-initiated code compliance permits, the work shall start within 30 days from the date of such permit.

2. If the building or work authorized is suspended or abandoned at any time after the work has started, for a period as follows:

   2.1. Thirty days for Building Official-initiated code compliance permits.

   2.2. One-hundred-eighty days for all other permits.

3. An extension of time from the stated periods may be permitted for good reason, provided such requests for an extension are submitted to the Building Official in writing prior to the end of the time period accompanied by payment of a fee. Unless approved by the Building Official, no more than one extension of time may be granted.

   3.1. For all other permits, see Table B – Maximum Time Allowed to Complete All Work Authorized by Building Permit. The maximum time allowed for Building Official-initiated code compliance permits shall be 12 months for all permits exceeding $25,000 total valuation.

4. A demolition permit shall expire 180 days after issuance. Only one extension of time of 180 days shall be granted upon written request to the Building Official, accompanied by payment of a fee. If there is a permit for a replacement structure, the demolition permit shall expire concurrently with the permit for that replacement structure.

5. The Building Official may administratively authorize the processing of applications involving compliance actions initiated by the Department, in a manner other than set forth in this code, so as to effect said compliance most expeditiously; provided, however, that due process is assured all applicants. In this regard, the Building Official may reduce the time periods set forth in this section as they apply to a second application and permit required by the Building Official to effect full compliance with this code and other applicable laws and regulations if by doing so code compliance would be more expeditiously accomplished.

*EXCEPTION:* In order to avoid repetitive filings and processing of applications to effect code compliance, the Building Official is hereby authorized to establish alternate procedures and extensions of time from cancellation pursuant to Section 106A.4.1 and from expiration pursuant to this section; provided, however, that the Building Official, in establishing alternate procedures and extension of time, shall proceed as expeditiously as possible toward abatement of the violations.

When a permit is issued but delayed due to actions before the Board of Appeals or other City agencies, or cases in any court of competent jurisdiction, or is under review by a State or

67

regional regulatory body, the time allowable shall be computed from the date of the final action of the agency or court of jurisdiction.

**TABLE B – MAXIMUM TIME ALLOWED TO COMPLETE ALL WORK AUTHORIZED BY BUILDING PERMIT**

| Valuation | Time Allowed (1) | Extension Limitation |
|---|---|---|
| $1.00 to $100,000 | 360 days | 360 days |
| $100,001 to $2,499,999 | 1,080 days | 720 days |
| $2,500,000 and above | 1,440 days | 720 days |

**NOTES:**

(1)   For site permits with a valuation of $2,500,000 or more, the time allowed to complete work authorized by the building permit may be increased by 50 percent. For site permits with a valuation less than $2,500,000, use Table B.

**106A.4.4.1 Commencement of work on permit expired due to work not started.** Before work can be commenced on an expired permit on which no work was performed, a new application shall be filed and a new permit shall be obtained. If not more than one year has elapsed since the expiration of the original permit, the applicant is eligible for reduced fee on the new permit. See Section 110A – Table 1A-B – Commencement of Work Not Started. All other applicable fees in Section 110A – Table 1A-A or any other table in this code, shall be collected in the full amount. To qualify for the reduced fees, the original approved plans and specifications in the possession of the owner shall be submitted with the new application, together with a notarized certification that there are no changes made on those plans and specifications.

   In the event a refund has been granted upon the request of the applicant prior to the commencement of the work, the provisions of this section shall not apply and a new permit shall be applied for and all fees will be required to be paid.

**106A.4.4.2 Recommencement of work on permit expired due to work not completed.** An alteration permit shall be secured for the work not completed. See Section 110A, Table 1A-F – Specialty Permit Fees – for applicable fee to defray cost of certifying site conditions. The permit fee shall be based upon the valuation of the uncompleted work. When the permit is for completing the work as shown on the original approved plans, no additional plan review fee shall be required.

**106A.4.5 Suspension or revocation.** The building official may, in writing, suspend or revoke a permit issued under the provisions of this code whenever the permit is issued in error or on the basis of incorrect information supplied, or in violation of any ordinance or regulation of any of the provisions of this code.

   Any permit issued for which less than the correct permit and plan checking fees were paid shall be considered an invalid permit and shall be suspended until the complete bill of fees has been paid. Failure to pay the correct fees shall be sufficient grounds for denial of a temporary permit of occupancy or a permit of occupancy.

**106A.4.6 Notice of permit issuance.** Within 24 hours after the issuance of a building permit authorizing the types of work described below, notice of such issuance shall be given in the manner set forth below.

   1.   For permits to demolish or erect a building or structure, or to move a structure to a new site, the permittee shall obtain from the Department a sign containing the following information: permit number; filing date; address and phone number of the agency to contact for information

regarding permit issuance; the date of permit issuance; address and phone of agency to contact to appeal issuance of permit; name, address and phone number of the permittee.

For unreinforced masonry buildings, additional information shall be provided, as required by the Building Official.

See Section 110A, Table 1A-L – Public Information – for applicable fee.

The permittee shall cause the sign to be erected on the site of the property to which the application applies.

**Location of sign.** The sign shall be clearly visible to passing motorists and passing pedestrians. In the case of moved buildings, the sign shall be posted at the site onto which the building is to be moved. The minimum dimensions shall be 30 inches by 30 inches (762 mm × 762 mm), unless the permit relates to a vacant site or a vacant building, in which case the Building Official may require a sign up to 8 feet (2.438 m) wide and 4 feet (1.219 m) high upon a determination that the larger sign will provide better public notice. If a larger sign is required, the permittee shall provide it, and it shall contain the information set forth above. The sign required herein shall be installed as follows: The bottom edge of the sign shall be at least 6 feet (1.829 m) above grade; the face of the sign shall be parallel to the main street frontage and shall be located 5 feet (1.524 m) or less from the street property line; the sign shall be attached to one or more posts substantially embedded into the ground in order to withstand wind or other load factors, or may be attached to an existing front building wall. The background color of the sign shall be white, and the color of the text shall be black; the letter size of the first line shall be a minimum of 8 inches (203.2 mm) high; the size and style of the text shall be such that the message is clear and legible from a distance of 10 feet (3.048 m) to a viewer with normal vision.

**Duration of sign posting.** The permittee shall cause the sign to be erected within 24 hours after a permit is issued. The sign shall remain posted until either the conclusion of the hearing on the permit before the Board of Appeals or the time for filing such appeal has lapsed without an appeal being filed. Except for work performed pursuant to a Conditional Use authorization from the Planning Commission, work under a demolition permit shall not begin until 15 days after the date on which the permit is issued.

2.   For a permit which would authorize a structural addition to an existing building, the Department shall mail written notice to the owners of properties immediately adjacent to the subject building as shown on the current tax roll. See Section 110A, Table 1A-L – Public Information – for applicable fee.

3.   For a permit which would authorize the demolition or moving of a building or structure, written notice shall be mailed to the owners of properties within 300 feet (91.44 m) in every direction from the edge of the property on which the proposed demolition work will take place, or from which the building will be moved. Owners notified shall be as shown on the last annual tax roll. Notice to interested organizations or groups shall be made as provided in Section 106A.4 of this code.

4.   For changes in occupancy per this code, notice shall be provided as specified in Section 6 of the San Francisco Business and Tax Regulations Code. See Section 110A, Table 1A-L – Public Information – for applicable fee.

5.   For a permit that would authorize removal of a legal or illegal dwelling unit, as defined in the Housing Code, permittee shall post a sign at least 15 inches by 15 inches (381 mm x 381 mm) in a conspicuous common area of the building where the work will occur, with the following information: permit number; filing date; address and phone number of the agency to contact for information regarding permit issuance; the date of permit issuance; address and

phone number of agency to contact to appeal issuance of permit; name, address and phone number of permittee. The sign shall also contain a list of tenant counseling or legal services that can provide assistance to tenants with understanding and participating in the City's processes. The sign shall remain posted until either the conclusion of the hearing on the permit before the Board of Appeals or the time for filing such appeal has lapsed without an appeal being filed. Such notice shall also include contact information for translation services into Spanish, Chinese, and Russian.

**Revocation for noncompliance.** The Building Official shall, after providing the permittee an opportunity to respond to any complaint of noncompliance, revoke any permit where the applicant has not substantially complied with the provisions of this section or Section 106A.3.2.3 requiring notice of permit application and issuance.

The requirements contained in this code relating to notice are not intended to give any right to any person to challenge in any administrative or judicial proceeding any action for which notice is given if such person would not otherwise have the legal right to do so.

**106A.4.7 Additional work, permit required.** When an approved permit has been issued, a separate permit for alteration work shall be required for any change in work or additional work as set forth hereafter. The fees for such additional work shall be as set forth in Section 110A, fee tables, based on the difference in the valuation between the changed work and that of the original permit. The valuation shall be not less than $1. Situations which require a separate permit include the following:

1. Construction differing from the approved construction documents sufficiently to require revised plans or additional plans to be submitted to the Department for approval, including changes in partition layout that impact other code requirements, changes in framing directions, spans, and locations of concentrated loads, and changes in types of materials used. See Section 110A, Table 1A-F – Specialty Permit Fees – for the assessment for this type of additional work.

2. Changes proposed to any building or structure which alter the exterior dimensions more than 6 inches (152.4 mm) either in vertical or horizontal dimension, alter the visual appearance through changes in exterior wall materials or windows, change the number of residential dwelling units or decrease the amount of off-street parking provided.

3. Value of additional work or of changes exceeding 10 percent of the valuation of the approved permit work or $50,000 whichever is the lesser amount.

4. A change in occupancy or use, as defined in this code.

5. A change in the construction type of any portion of the building.

6. An unusual condition requiring a permit procedure to protect the interest of the public.

A separate alteration permit shall not be required where the change or additional work is required by the Board of Appeals as a condition of approving an appealed permit; however, revised plans and plan review fees, including back check fees, shall be required for any such change or additional work. The Board of Appeals may require, as a condition of approval, that revised plans be submitted to the Board for review.

**106A.4.8 Replacement of approved construction documents.** When the permit holder's set of approved construction documents is not available as required by Section 106A.4.2, a duplicate set of documents shall be submitted to the Department along with a notarized certification that such documents are identical to the approved construction documents except for notations by City agencies. The Department shall then copy such notations from its retained set to the duplicate set and shall stamp the duplicate set APPROVED.

See Section 110A, Table 1A-L – Public Information – for applicable fee.

**106A.4.9 Preapplication plan review or inspection.** When a party wishes to discuss specific design issues or submit preliminary designs for review and comment by the Department prior to formal application for a permit, a request for preapplication plan review must be submitted in writing to the Building Official. See Section 110A , Table 1A-B – Other Building Permit and Plan Review Fees – for applicable fees. Payment of the minimum fee must be submitted with the letter of request.

In cases where on-site discussion with a field inspector is desired, the same request requirements apply. See Section 110A, Table 1A-G – Inspections, Surveys and Reports – for applicable fee.

**106A.4.10 Review of mechanical plans.** When an application for a permit contains a mechanical component (separate from or in addition to energy conservation design) sufficient in scope or complexity to require review by a mechanical specialist, a fee for this service shall be assessed and is payable before issuance of the permit. See Section 110A , Table 1A-B – Other Building Permit and Plan Review Fees – for applicable fee.

**106A.4.11 Review of electrical plans.** When an application for a permit contains an electrical component (separate from or in addition to energy conservation design) sufficient in scope or complexity to require review by an electrical specialist, a fee for this service shall be assessed and is payable before issuance of the permit. See Section 110A , Table 1A-B – Other Building Permit and Plan Review Fees – for applicable fee.

**106A.4.12 Review of plumbing plans.** When an application for a permit contains a plumbing component sufficient in scope or complexity to require review by a plumbing plan reviewer, a fee for this service shall be assessed and is payable before issuance of the permit. See Section 110A , Table 1A-B – Other Building Permit and Plan Review Fees – for applicable fee.

**106A.4.13 Premium plan review.** At the request of the applicant and upon payment of an additional fee per Table 1A-B – Other Building Permit Application and Plan Review Fees, building permit applications shall be reviewed by the Department of Building Inspection within a guaranteed plan review time set by the Building Official. This building plan review time will be less than normal turnaround times and will be developed on a case-by-case basis depending on the scope of work and the quality of completeness of the submittal documents. At or before the due date of the guaranteed building plan review time, a thorough set of plan review comments and/or corrections will be sent to the applicant for response. Premium Plan Review does not guarantee plan review times during the recheck process, nor building permit approval and issuance. If the Department fails to complete its plan review within the guaranteed plan review time, the additional fee paid shall be refunded to the applicant upon written request by the applicant. This service is offered for plan review by the Department of Building Inspection only and does not commit any other City agencies or departments to the turnaround times.

# SECTION 107A – FEES

**107A.1 General.** Fees shall be assessed in accordance with the provisions of this section or shall be as set forth in the fee schedule adopted by the jurisdiction.

**107A.1.2 Exemption from fees.** The fees provided for in this chapter shall not apply to permits issued to perform work on buildings which are owned and occupied by the Federal or State governments. The San Francisco Housing Authority shall be exempt from all permit fees in this chapter except State mandated fees and record retention fees. Permits required under this code for buildings and sites owned or leased by the City and County of San Francisco shall be subject to all fees set forth in this chapter.

**107A.2 Permit Issuance Fees.** The minimum permit fee per Section 110A, Table 1A-A – Building Permit Fees – shall be paid at the time an application for a building permit is issued. The New Construction Permit Fee Schedule applies to new buildings or structures. The Alteration Permit Fee Schedule applies to alterations, repairs, additions or other work on an existing building or structure, or to the modification of the scope of an approved permit as required by Section 106A.4.7.

   The determination of value or valuation under any of the provisions of this code shall be made by the Building Official. The value to be used in computing the permit issuance and plan review fees shall be the final valuation upon completion of all construction work for which the permit is issued, as well as all finish work, painting, roofing, mechanical, electrical, plumbing, heating, air conditioning, elevators, fire-extinguishing systems and all other permanently installed equipment and construction, even though other permits to perform such work may be required.

   The valuation shall be calculated at the time of permit issuance according to a cost schedule posted in the office of the Department or by actual construction cost, whichever is greater. The valuation shall be recalculated at the time of any addenda and/or revision issuance. Any additional fees due resulting from the recalculation of valuation shall be paid prior to addenda and/or revision issuance. The cost schedule shall be adjusted annually based on construction cost data reported by a variety of sources, including without limitation, local contractors, design professionals, cost estimators or nationally published construction cost data books or websites. Contractor overhead and profit shall be reflected in the schedule. The Building Inspection Commission is authorized to waive the annual cost schedule adjustment if it determines that increasing the fees will exceed the cost of providing the services for which the fees are paid.

**107A.3 Plan review fees.**

   (a)   When submittal documents are required by Section 106A.3.2, a plan review fee shall be paid at the time of filing an application for a permit for which plans are required pursuant to Section 106A.3.2. Said plan review fee shall be based on the valuation determined by Section 107A.1. See Section 110A, Table 1A-A – Building Permit Fees – for applicable fee.

   The plan review fees specified in this section are separate fees from the permit issuance fees specified in Section 107A.2 and are in addition to the permit fees.

   When submittal documents are incomplete or changed so as to require additional plan review or when the project involves deferred submittal items as defined in Section 106A.3.4.2, an additional plan review fee shall be charged as shown in Section 110A, Table 1A-B – Other Building Permit and Plan Review Fees.

   (b)   If a project involves voluntary seismic retrofit upgrades to soft-story, wood-frame buildings, as defined by the Building Official, the applicant for said project shall be exempt from the proportionate share of plan review fees specified under this Chapter that is related to such retrofit work, provided all permit conditions and timelines are met.

**107A.3.1 Reduced plan review fee.** A reduced plan review fee shall be collected for reviewing submittal documents identical to those filed within one year of the original approved construction documents for which the full plan review fee was paid. For this purpose, plans may be considered identical when they contain only such minor differences as exterior finishes, or if they are identical but opposite hand. See Section 110A, Table 1A-B – Other Building Permit and Plan Review Fees – for the second and each subsequent set of identical submittal documents within the stated time period. To obtain this reduction, the applicant shall submit a copy of the original approved construction documents for which the full plan review fee was paid.

When the submittal documents are substantially changed from those that were previously approved, an additional full plan review fee shall be charged. See Section 110A, Table 1A-B – Other Building Permit and Plan Review Fees – for applicable fee.

**107A.3.2 Tenant improvement work.** An application for tenant improvement work shall state at the time of filing whether the permit is to include the partition and other improvement work for the entire building. If this work is not to be included, the valuation shall be reduced accordingly. The installation of such work shall then require permits for alteration work, the fees for which shall be in accordance with Section 110A, Table 1A-A – Building Permit Fees.

**107A.3.3 Improvement work.** When the application is for first-time improvement work in a new building and the valuation of such work was included in the valuation of the original building permit, the valuation for each alteration permit for part or all of such work shall be shown as $500, and the permit fee shall be collected accordingly.

**107A.3.4 Site permit and addenda fees.** The permit fee for projects submitted under the site permit and addenda process shall be based on Section 110A, Table 1A-A – Building Permit Fees and additional fees as stated in Table 1A-B – Other Building Permit and Plan Review Fees. Twenty-five percent of the plan review fee shall be paid at the time of site permit application submittal, and shall be credited toward the final plan review fee payment at the time of the first construction addendum submittal as determined by the Building Official. One hundred percent of the permit issuance fee shall be paid at the time of the first construction addendum issuance as determined by the Building Official.

**107A.4 Expiration of plan review.** (See Section 106A.3.7.)

**107A.5 Investigation Fees: Work Without a Permit.** Whenever any work, for which a permit is required under the provisions of this code, has been started without a permit and where no specific additional fees are imposed as penalties as provided in this chapter, a special investigation shall be made before a permit may be issued for such work. See Section 110A, Table 1A-K – Penalties, Hearings, Code Enforcement Assessments – for applicable fee. Where only a portion of the work has been commenced without a permit, the investigation fee shall be based upon the portion of the work done without a permit. The cost of any penalty for any work done, in conjunction with the investigation fee, shall be borne by the owner.

The owner or owner's agent may appeal the amount of the investigation fee if they can provide just cause, such as unfamiliarity with this code or demonstrable negligence on the part of one of their employees.

The Building Official may reduce the investigation fee to two times the amount of the permit fee as called for in Section 110A, Table 1A-A – Building Permit Fees – of this code for work that was constructed prior to the current building ownership, provided that substantiating documentation is provided.

Where the Building Official rules against the applicant, appeals of such investigation fee shall be filed with the Board of Appeals in the manner provided in Section 8 *et seq.* of the Business & Tax Regulations Code. Such filing shall be subject to the fees and rules of the Board of Appeals. The Board of Appeals, in reviewing the appeal of the investigation fee assessed for doing work without a permit, may reduce the amount of said fee, but in no case shall such reduced investigation fee be less than two times the amount of the permit fee as called for in Section 110A, Table 1A-A – Building Permit Fees – of this code.

**107A.6 Fee refunds.** When no work has been done and the project has been abandoned or the permit expired per Section 106A.4.4, by limitation, a portion of the building issuance fee paid

shall be refunded upon written request of the owner when such request is made within six months of permit expiration. See Section 110A, Table 1A-R – Refunds – for applicable refund.

**107A.6.1 Plan review fees.** When an application is withdrawn, the plan review fee paid may be partially refunded upon written request in the case no site inspection had been made by Department personnel, and plan review had not started within any division of the Department. See Section 110A, Table 1A-R – Refunds – for applicable refund. For other cases, the amount of refund, if any, shall be determined by the Building Official, based on the amount of permit processing work already completed on the application at the time it was withdrawn. Requests for refunds must be made within 30 days of withdrawal by the applicant to the Building Official.

**107A.6.2 Fees in error.** If the Building Official determines that an error has been made in the assessment of fees, a refund for the portion determined to be in error may be made upon written request by the applicant. See Section 110A, Table 1A-R – Refunds – for applicable refund.

**107A.7 Strong Motion Instrumentation Program Fee.** Pursuant to the provisions of Section 2705 of the Public Resources Code of the State of California, a fee shall be assessed for all building permits except demolitions. See Section 110A , Table 1A-F – Specialty Permit Fees – for applicable fee. All such fees collected shall be handled in accordance with the provisions of Section 2706 of said Public Resources Code.

**107A.7.1 Strong Motion Revolving Fund.** That portion of the strong motion instrumentation fee retained by the Department as provided for in Section 2705 of the Public Resources Code of the State of California shall be deposited into a special Strong Motion Revolving Fund established by the City Controller. Funds from this revolving fund shall be used, subject to the approval of the Building Official and the Building Inspection Commission, to defray personnel and equipment costs incurred in carrying out the State mandate. The Strong Motion Revolving Fund shall continue from year to year, and shall not be included in the Cash Reserve Fund.

**107A.7.2 California Building Standards Commission administration fee.** Pursuant to the provisions of California Health and Safety Code Sections 18930.5, 18931.6, 18931.7 and 18938.39 relating to building materials, cities and counties are required to assess a fee for all building permits. See Section 110A , Table 1A-J for applicable fee. All such fees shall be handled in accordance with the provisions of Section 18931.7 of said Health and Safety Code.

**107A.7.2A California Building Standards Commission Fund.** That portion of the fee assessed pursuant to Section 107A.7.2 relating to building materials that is retained by the Department of Building Inspection shall be deposited into the California Building Standards Commission Fund established by the City Controller. Funds from this category 2 fund shall be used, subject to the approval of the Building Official and the Building Inspection Commission, for administrative costs and code enforcement education, including but not limited to, certification in the voluntary construction inspector certification program. The California Building Standards Commission Fund shall continue from year to year and shall not be included in the Cash Reserve Fund.

**107A.7.3 Technology surcharge on permits.** A technology surcharge is hereby established on the cost of permit applications that the Department of Building Inspection processes for all departments and bureaus of the City and County of San Francisco. The surcharge proceeds are to be used solely for the implementation and maintenance of the City-wide Permit and Project Tracking System. The funds shall continue from year to year and shall not be included in the Cash Reserve Fund. See Section 110A , Table 1A-J for the applicable surcharge.

**107A.8 Delinquent fees/dishonored checks.** Permits will not be issued to any person having outstanding or delinquent balances or dishonored checks on file with the Department of Building Inspection.

**107A.9 Survey.** A building survey may be requested when a building inspector's assistance is desired to establish code compliance of existing or proposed construction. See Section 110A , Table 1A-G – Inspections, Surveys and Reports – for applicable fees.

**107A.10 Building numbers and fees.** Every person shall obtain an official street number assignment at the time the person files a permit application or establishes a new parcel and shall place the numbers so assigned on the building in such a position that the number is easily visible to approaching emergency vehicles. The numerals shall not be less than 4 inches (101.6 mm) in height with a minimum stroke width of 1/2 inch (12.7 mm) [Reference California Residential Code Section R319.1] and shall be a contrasting color to the background. All numbers must be made of substantial and permanent material and must be so affixed as not to be easily effaced or removed. Any additional or changed numbers assigned to a building shall be subject to the provisions of this section. See Section 110A, Table 1A-J – Miscellaneous Fees – for applicable fee.

**107A.11 Fees for reproduction of reports, records and documents for the public.**

**107A.11.1 General.** In order to provide for the cost of reproducing inspection reports, records, documents and other material in the Department files for the public, including but not limited to records on microfilm, a fee shall be required, payable in advance. Fees shall be chargeable to all persons, as well as City departments; when such reproduction is in response to subpoenas of records, the attorney requesting such records shall pay the fees. All fees collected shall be deposited into the Building Inspection Fund.

**107A.11.2 Reproduction fees.** The fees shall be determined based upon the number of pages, type of record, size of microfilm reproduced and the number of copies required. All costs of reproduction shall require the pickup of said reproduced material at the office of the Department unless costs of delivery are provided. The Building Official may make any other rules or regulations necessary to provide for the reproduction of material consistent with the intent of this section. See Section 110A, Table 1A-L – Electrostatic Reproduction – for applicable fees.

**107A.12 Fees for services and regulatory functions of the Department.** Fees for all services and regulatory functions of the Department as established in various chapters of the San Francisco Municipal Code shall be imposed pursuant to Section 110A *et seq.*

**107A.13 Development impact and in-lieu fees.**

**107A.13.1 Definitions.**

  (a)   The following definitions shall govern interpretation of this Section:

    (1)   "*City*" shall mean the City and County of San Francisco.

    (2)   "*Department*" shall mean the Department of Building Inspection.

    (3)   "*Development fee*" shall mean either a development impact fee or an in-lieu fee. It shall not include a fee for service or any time and material charges charged for reviewing or processing permit applications.

    (4)   "*Development impact fee*" shall mean a fee imposed on a development project as a condition of approval by the various departments and agencies of the City and levies against development projects by the San Francisco Unified School District under Section 17620 of the California Education Code and other provisions of State law to mitigate the impacts of increased demand for public services, facilities or housing caused by the development project that may or may not be an impact fee governed by the California Mitigation Fee Act (California Government Code Section 66000 *et seq.*)

    (5)   "*Development impact requirement*" shall mean a requirement to provide physical improvements, facilities or below market rate housing units imposed on a development project as

75

a condition of approval to mitigate the impacts of increased demand for public services, facilities or housing caused by the development project that may or may not be governed by the California Mitigation Fee Act (California Government Code Section 66000 *et seq.*).

(6)   "***Development project***" shall mean a project that is subject to a development impact or in-lieu fee or development impact requirement.

(7)   "***First certificate of occupancy***" shall mean either a temporary certificate of occupancy or a Certificate of Final Completion and Occupancy as defined in San Francisco Building Code Section 109A, whichever is issued first.

(8)   "***First construction document***" shall mean the first building permit issued for a development project or, in the case of a site permit, the first building permit addendum issued or other document that authorizes construction of the development project. Construction document shall not include permits or addenda for demolition, grading, shoring, pile driving, or site preparation work.

(9)   "***In-lieu fee***" is a fee paid by the project sponsor in lieu of complying with a City requirement that is not a development impact fee within the meaning of the Mitigation Fee Act.

(10)   "***Neighborhood Infrastructure Seed Fund***" shall mean the fund or funds established by the Controller's Office for the purpose of collecting the 20 percent pre-paid portion of the development fees intended to fund pre-development work on any neighborhood infrastructure project funded by any of the six neighborhood infrastructure impact development fees listed in Subsection 107A.13.~~13~~.1.1. In addition, third-party grant monies or loans may also be deposited into this fund for the purpose of funding pre-development or capital expenses to accelerate the construction start times of any neighborhood infrastructure project funded by any of the six neighborhood infrastructure impact development fees listed in Subsection 107A.13.~~13~~.1.1.

(11)   "***Project sponsor***" or "***sponsor***" shall mean an applicant seeking approval for construction of a development project subject to this Section, such applicant's successor and assigns, and/or any entity which controls or is under common control with such applicant.

(12)   "***Unit***" shall mean the Department's Development Fee Collection Unit.

**107A.13.2 Collection by Department.** The Department shall be responsible for collecting all development impact and in-lieu fees, including (a) fees levied by the San Francisco Unified School District if the District authorizes collection by the Department, and (b) fees levied by the San Francisco Public Utilities Commission, if the Commission's General Manager authorizes collection by the Department, deferral of payment of any development fee, and/or resolution of any development fee dispute or appeal in accordance with this Section 107A.13.

**107A.13.3 Timing of development fee payments and satisfaction of development impact requirements.**

(a)   All development impact or in-lieu fees owed for a development project shall be paid by the project sponsor prior to issuance of the first construction document; provided, however, that the project sponsor may elect to defer payment of said fees under Section 107A.13.3.1.

(b)   Any development impact requirement shall be completed prior to issuance of the first certificate of occupancy for the development project.

**107A.13.3.1 Fee deferral program; development fee deferral surcharge.** A project sponsor may elect to defer payment of any development impact or in-lieu fee collected by the Department to a due date prior to issuance by the Department of the first certificate of occupancy; provided, however, that the project sponsor shall pay 15 percent of the total amount of the development fees owed prior to issuance of the first construction document. If a project is subject to one of the six neighborhood infrastructure impact development fees listed in

Subsection 107A.13.3.1.1, the project sponsor shall pay 20 percent of the total amount of the development fees owed prior to issuance of the first construction document. These pre-paid funds shall be deposited as provided in Subsection 107A.13.3.1.1 below. A project sponsor that received project approval prior to July 1, 2010 and has not yet paid a development impact or in-lieu fee may elect to defer payment under the provisions of this Section notwithstanding a condition of approval that required the fee to be paid prior to issuance of a building or site permit.

This option to defer payment may be exercised by (1) submitting a deferral request to the Department on a form provided by the Department prior to issuance of the first construction document, and (2) agreeing to pay a Development Fee Deferral Surcharge. This deferral option shall not be available to a project sponsor who paid the fee prior to the operative date of July 1, 2010; the project sponsor's reapplication for a building or site permit after expiration of the original permit and refund of the development fees paid shall not authorize the project sponsor to elect the deferral option. The deferral option shall expire on July 1, 2013 unless the Board of Supervisors extends it.

**107A.13.3.1.1 Deposit of pre-paid portion of deferred development fees.** If a development project is not subject to one of the six neighborhood infrastructure impact fees listed below, the pre-paid portion of the development fees shall be deposited into the appropriate fee account. If there is more than one fee account, the pre-paid portion of the fees shall be apportioned equally.

If a development project is subject to one of the six neighborhood infrastructure impact development fees listed below, the entire 20 percent development fee pre-payment shall be deposited in the appropriate neighborhood infrastructure impact fee account. These pre-paid funds shall be dedicated solely to replenishing the Neighborhood Infrastructure Seed Fund for that specific neighborhood infrastructure impact fee account. In no event shall a neighborhood infrastructure impact fee specific to one Area Plan be mixed with neighborhood infrastructure impact fees specific to a different Area Plan. lf the 20 percent development fee pre-payment exceeds the total amount owed for the neighborhood infrastructure impact fee account, the remaining pre-paid portion of the 20 percent development fee pre-payment shall be apportioned equally among the remaining applicable development fees.

The neighborhood infrastructure development fees subject to the 20 percent pre-payment provision of this Subsection 107A.13.3.1.1 are as follows: (1) the Rincon Hill Community Infrastructure Impact Fee, as set forth in Planning Code Section 418.3(b)(1); (2) the Visitacion Valley Community Facilities and Infrastructure Fee, as set forth in Planning Code Section 420.3(b); (3) the Market and Octavia Community Infrastructure Fee, as set forth in Planning Code Section 421.3(b); (4) the Balboa Park Community Infrastructure Impact Fee, as set forth in Planning Code Section 422.3(b); (5) the Eastern Neighborhoods Infrastructure Impact Fee, as set forth in Planning Code Section 423.3(b); and (6) the Van Ness and Market Neighborhood Infrastructure Impact Fee, as set forth in Planning Code Section 424.3(b)(ii).

**107A.13.3.2 Payment of development fees; payment and calculation of Development Fee Deferral Surcharge.** Except for any pre-paid fees, all deferred development fees remaining unpaid shall be paid in full prior to issuance of the first certificate of occupancy at the end of the deferral period. The Development Fee Deferral Surcharge shall be paid when the deferred fees are paid and shall accrue at the Development Fee Deferral Surcharge Rate.

The Development Fee Deferral Surcharge Rate shall be calculated monthly by the Unit as a blended interest rate comprised of 50% of the Treasurer's yield on a standard two-year investment and 50% of the latest updated Monthly Earned Income Yield Rate for the City and

County of San Francisco's Pooled Funds, as posted on the San Francisco Treasurer's website and 50% of the Annual Infrastructure Construction Cost Inflation Estimate published by the Office of the City Administrator's Capital Planning Group and approved by the City's Capital Planning Committee consistent with its obligations under Section 409(b) of the San Francisco Planning Code. The annual Infrastructure Construction Cost Inflation Estimate shall be updated by the Office of the City Administrator's Capital Planning Group on an annual basis, in consultation with the Capital Planning Committee, with the goal of establishing a reasonable estimate of construction cost inflation for the next calendar year for a mix of public infrastructure and facilities in San Francisco. The Capital Planning Group may rely on past construction cost inflation data, market trends, and a variety of national, state and local commercial and institutional construction cost inflation indices in developing their annual estimates for San Francisco. Commencing on the effective date of this ordinance, the Unit shall publish the Development Fee Deferral Surcharge on the Department of Building Inspection website at or near the beginning of each month. The accrual of any deferred development fees begins on the first day that a project sponsor elects to defer development fees, but never later than immediately after issuance of the first construction document. The Development Fee Deferral Surcharge shall calculate the final Development Fee Deferral Surcharge for individual projects by multiplying the total development fees otherwise due prior to issuance of the construction document by the Development Fee Deferral Surcharge Rate by the actual day count of the entire Development Fee Deferral Period, which shall be the number of days between the project sponsor's election to defer to final payment of the deferred development fees. The Development Fee Deferral Surcharge shall be apportioned among all development fee funds according to the ratio of each development fee as a percentage of the total development fees owed on the specific project.

**107A.13.4 Development Fee Collection Unit.** There shall be a Development Fee Collection Unit established within the Department. The Unit's duties include: (1) receiving and organizing information from various City agencies concerning the amount of development fees owed or specific development impact requirements imposed under various sections of the San Francisco Municipal Code or other legal authority, (2) working with the project sponsor and relevant agencies to resolve any disputes or questions concerning the development fees or development impact requirements applied to specific development projects, (3) ensuring that the first construction document, or first certificate of occupancy if the project sponsor elects to defer payment, is not issued prior to payment of all development fees that are due and owing, (4) confirming with the Planning Department that any outstanding development impact requirements are satisfied prior to issuance of the first certificate of occupancy for projects subject to such requirements, (5) generating Project Development Fee Reports, (6) processing any development fee refunds, (7) publishing and updating the Citywide Development Fee Register, (8) initiating lien proceedings to collect any unpaid development impact or in-lieu fees, and (9) performing such other duties as the Building Official requires. The fee for the Department's services shall be as provided in Section 107A.13.14.

**107A.13.5 Citywide Development Fee Register.** The Unit shall publish a Citywide Development Fee Register that lists all current San Francisco development impact and in-lieu fees. The Unit shall update the Register whenever a development impact or in-lieu fee is newly enacted, rescinded or amended. The Unit shall make the Register available to the public upon request, including but not limited to posting it on the Department's website.

**107A.13.6 Required City Agency or Department Notice to Development Fee Collection Unit.** Prior to issuance of any building or site permit for a project, any department or agency

responsible for calculating a development fee collected by the Unit or imposing a development impact requirement shall send written or electronic notification to the Development Fee Collection Unit that (i) identifies the development project, (ii) lists which specific development fees and/or development impact requirements are applicable and the legal authorization for their application, (iii) specifies the amount of the development fee or fees that the department or agency calculates is owed to the City or that the project sponsor has elected to satisfy a development impact requirement through the direct provision of public benefits, and (iv) lists the name and contact information for the staff person at each agency or department responsible for calculating the development fee or monitoring the development impact requirement.

**107A.13.7 Project Development Fee Report.** Prior to the issuance of the building or site permit for a development project that owes a development fee or fees or is subject to development impact requirements, and at any time thereafter, the Development Fee Collection Unit shall prepare and provide to the project sponsor, or any member of the public upon request, a Project Development Fee Report. The Report shall: (i) identify the development project, (ii) list which specific development fees and/or development impact requirements are applicable and the legal authorization for their application, (iii) specify the amount of the development fee or fees that the department or agency calculates is owed or that the project sponsor has elected to satisfy a development impact requirement through the direct provision of physical improvements, (iv) list the name and contact information for the staff person at each agency or department responsible for calculating the development fee or monitoring the development impact requirement, and (v) state whether the development fee or fees are due and payable prior to issuance of the first construction document or whether the project sponsor has requested deferral under Section 107A.13.3.1, and note the status of payment. A copy of the Project Development Fee Report shall always be made available to the project sponsor immediately prior to issuance of the site or building permit for a development project subject to any development fee or fees to provide adequate notice of the proposed development fee or fees. The Development Fee Collection Unit shall not issue a Final Development Fee Report and the respective site or building permit for a development project until it has received written confirmation from the First Source Hiring Administration (FSHSA) that the project sponsor has executed a first source hiring agreement(s) with the FSHSA consistent with Administrative Code Section 83.11.

**107A.13.8 Failure to give notice of a development fee owed or development impact requirement.** The failure of the Unit or a fee-assessing department or agency to give any notice of a development fee owed or development impact requirement shall not relieve the project sponsor of the obligation to pay the development fee when it is due. The procedure set forth in this Section is not intended to preclude enforcement of the development fee or development impact requirements pursuant to any other section of this Code, the Planning Code or other parts of the Municipal Code or under the laws of the State of California.

**107A.13.9 Development fee dispute resolution; appeal to Board of Appeals.**

**107A.13.9.1 Procedure for resolution by Development Fee Collection Unit.** If a dispute or question arises concerning the accuracy of the final Project Development Fee Report, including the mathematical calculation of any development fee listed thereon, the Development Fee Collection Unit shall attempt to resolve it in consultation with the department or agency affected by the disputed fee and the project sponsor. A person protesting the accuracy of the Report must submit the issue or issues in writing to the Unit with a copy to the department or agency whose development fee is in dispute. Any public notice of the issuance of the building or site permit

shall notify the public of the right to request a copy of the Project Development Fee Report and of the right of appeal to the Board of Appeals under Section 107A.13.9.2.

**107A.13.9.2 Appeal to Board of Appeals.**

(a)   If the Development Fee Collection Unit is unable to resolve the dispute or question, the project sponsor or a member of the public may appeal the Project Development Fee Report to the Board of Appeals within 15 days of the issuance of the building or site permit under Article 8 *et seq.* of the San Francisco Business & Tax Regulations Code.

(b)   In cases where a project sponsor is not using the site permit process and is required to pay a development fee or fees prior to issuance of the development project's building permit, and chooses not to defer payment under Section 107A.13.3.1, the sponsor may pay a disputed fee under protest and file an appeal within 15 days of the issuance of the permit.

(c)   In order to appeal to the Board of Appeals under this Section, a project sponsor appellant must first have attempted to resolve the dispute or question by following the procedure in Section 107A.13.9.1. Evidence of this prior attempt must be submitted to the Board of Appeals in order for the Board to accept the appeal. Members of the public may file an appeal under this Section without providing such evidence.

(d)   Promptly after an appeal has been filed, the Board of Appeals shall notify the department or agency whose development fee or development impact requirement is at issue of the fact that an appeal has been filed and the date scheduled for hearing. A representative of the Department of Building Inspection and of the department or agency whose development fee or development impact requirement is in dispute must be present at the appeal hearing.

(e)   In hearing any appeal of the Project Development Fee Report, the Board's jurisdiction is strictly limited to determining whether the mathematical calculation of the development fee or the scope of a development impact requirement is accurate and resolving any technical disputes over the use, occupancy, floor area, unit count and mix, or other objective criteria that calculation of the challenged development fee or development impact requirement is based upon.

(f)   If a decision by the Board of Appeals requires a refund of all or any portion of the disputed development fee, the refund shall be processed promptly by the Development Fee Collection Unit under Section 107A.13.11. If a decision requires a new determination regarding the scope of a development impact requirement, such new determination shall be made by the relevant City agency or department prior to issuance of the first certificate of occupancy. Where the Board determines that an additional amount of the fee or fees is due and owing, the additional amount shall be paid prior to issuance of the first certificate of occupancy for the development project.

**107A.13.10 Violation of this section deemed a violation of the Building Code.** In addition to the lien proceedings authorized Section 107A.13.15, a violation of this Section 107A.13 shall be deemed a violation of the Building Code and subject to the provisions of Section 103A and any investigation or other fees authorized under other sections of this Code to compensate the Department for the cost of abating violations.

**107A.13.11 Development fee refunds.** Upon notification by the property owner or project sponsor and confirmation by the applicable department or agency that a fee refund is due, the Unit shall process the refund. The fee for processing the refund shall be as set forth in Table 1A-D – Other Building Permit and Plan Review Fees.

**107A.13.12 Development fee information a public record.** Any notice of development fees due or development impact requirements imposed sent to the Development Collection Unit by any fee-assessing departments and agencies, the Project Development Fee Report issued by the

Unit, and any development fee refunds or development impact requirement revisions made are a matter of public record.

**107A.13.13 Administrative fee.** The fee for services provided by the Department under this Section 107A.13 shall be the standard hourly rate for administration set forth in Table 1A-D of this Code. The administrative fee is payable within 30 days of the Department's notice that payment is due.

**107A.13.14 Administrative procedures.** The Building Official is empowered to adopt such administrative procedures as he or she deems necessary to implement this Section. Such administrative procedures shall be generally consistent with the procedural requirements set forth in this Section 107A.

**107A.13.15 Wrongful issuance of first construction document or certificate of occupancy; assessment lien; notice.** In addition to any other remedy established in this Code or under other authority under the laws of the State of California, if DBI inadvertently or mistakenly issues the first construction document or first certificate of occupancy, whichever applies, for a development project that has not paid a development fee that is due and owing and payment has not been received within 30 days following notice that payment is due, or, in the case where a sponsor has elected to satisfy a development impact requirement through direct provision of physical improvements and where non-compliance with any such requirement is not corrected within 30 days following notice, the Department shall initiate proceedings in accordance with Article XX of Chapter 10 of the San Francisco Administrative Code to make the entire unpaid balance of the fee that is due, including interest at the rate of one and one-half percent per month or fraction thereof on the amount of unpaid fee, a lien against all parcels used for the development project. The penalty fee provisions of this section shall also apply to projects that have elected to provide physical improvements in lieu of paying a development fee, as if they had elected to pay the relevant development fee.

The Department shall send all notices required by Article XX to the owner or owners of the property and to the project sponsor if different from the owner. The Department shall also prepare a preliminary report, and notify the owner and sponsor of a hearing by the Board of Supervisors to confirm such report at least ten days before the date of the hearing. The report shall contain the owner and sponsor's names, a description of the development project, a description of the parcels of real property to be encumbered as set forth in the Assessor's Map Books for the current year, a description of the alleged violation of this Section, and shall fix a time, date, and place for hearing. The Department shall mail this report to the sponsor and each owner of record of the parcels of real property subject to the lien.

Any notice required to be given to an owner or sponsor shall be sufficiently given or served upon the owner or sponsor for all purposes in this Section if personally served upon the owner or sponsor or if deposited, postage prepaid, in post office letterbox addressed to the owner or sponsor at the official address of the owner or sponsor maintained by the Tax Collector for the mailing of tax bills or, if no such address is available, to the sponsor at the address of the development project, and to the applicant for the site or building permit at the address on the permit application.

Except for the release of the lien recording fee authorized by Administrative Code Section 10.237, all sums collected by the Tax Collector under this Section shall be held in trust by the Treasurer and deposited in the City's appropriate fee account.

**107A.14 Third-Party Experts and Other Permit Related Actions Fee.** Actions requiring third-party experts or other actions not specified above, shall be charged a fee based on actual

costs that the Department incurs in administering and processing the action or procedure and shall be charged on a time and materials basis. The Department shall provide the applicant with a written estimate of said costs at the time of application, and the applicant shall pay such fees prior to the time that the application is deemed complete. To the extent that the estimated fees do not cover actual costs, any outstanding amount due shall be a condition of the Department's final decision on the action or procedure. To the extent that the estimated fees exceeded the actual costs, the Department shall refund the excess amount to the applicant within a reasonable period after the Department's final decision on the action or procedure.

**107A.15 Building Code fee waivers for accessory dwelling unit projects on lots containing single-family homes.** Notwithstanding any fee provision of the Building Code to the contrary, the following provisions shall apply to accessory dwelling unit projects located on a lot containing a single-family home.

  (a)   Building inspection fees, plan review fees, records retention fees, and site surcharge fees shall be waived. For purposes of this subsection (a), building inspection fees do not include electrical and plumbing fees.

  (b)   For purposes of this Section 107A.15, "accessory dwelling unit" shall have the meaning set forth in Planning Code Section 102, as amended from time to time. The applicant for the accessory dwelling unit is eligible under subsection (a) for fee waivers or proportionate fee waivers, if applicable (collectively, "fee waivers") solely for the establishment or modification of the accessory dwelling unit, and not for any other work on the applicant's property that is subject to the Building Code.

  (c)   Upon the operative date of the ordinance establishing this Section 107A.15 to provide fee waivers forcertain accessory dwelling unit projects, which is on file with the Clerk of the Board of Supervisors in File No. 210030, the fee waivers provided for under subsection (a) shall apply retroactively as of January 1, 2021. The Department of Building Inspection shall refund any applicable fees paid after January 1, 2021 for projects eligible under subsection (a) for fee waivers or proportionate fee waivers. The fee waivers also shall apply to accessory dwelling unit projects that applied for building permits on or before January 1, 2021 but did not receive a final certificate of occupancy by January 1, 2021; provided, however, that the fee waivers shall apply only to applicable Building Code fees that have not been paid as of January 1, 2021. The Department of Building Inspection shall not refund any fees paid for such projects prior to January 1, 2021.

  (d)   Subject to the exception in subsection (e), this Section 107A.15 shall expire by operation of law on either (1) July 1, 2023, or (2) the first day of any fiscal year for which the Board of Supervisors has not appropriated monies or authorized expenditures necessary to fund the fee waivers established by this Section 107A.15, whichever is earlier. Upon its expiration, the City Attorney shall cause this Section 107A.15 to be removed from the Building Code.

  (e)   Any accessory dwelling unit projects that apply for a building permit during the period beginning on January 1, 2021 and ending on the date that this Section 107A.15 expires are eligible for all applicable fee waivers, even if such fees are due after this Section 107A.15 expires as set forth in subsection (d).

  (f)   To the extent the Department is aware that a project qualifies for a fee waiver under this Section 107A.15, the Department shall individually inform the applicant about the fee waiver. The Department also shall post notice, on its website and at various locations in its offices where the notice will be visible to applicants, of the fee waivers available under this Section 107A.15.

(g)   Department of Building Inspection Reports. On March 1, 2022, the Department of Building Inspection shall submit a report to the Board of Supervisors and the Building Inspection Commission on the operation of the fee waiver program established by this Section 107A.15 for the period of calendar year 2021. On March 1, 2023, the Department of Building Inspection shall submit a report to the Board of Supervisors and the Building Inspection Commission on the operation of the fee waiver program established by this Section 107A.15 for the period of calendar year 2022. The reports shall include, but need not be limited to, the number of projects taking advantage of one or more fee waivers, the type and location of such projects, the total amount of fees waived or projected to be waived during the term of this Section 107A.15, and any administrative impacts associated with the Department's processing of such waivers. The report also shall include the following information in regard to an ADU: (a) the length of time the applicant has owned the property; (b) whether the applicant is an individual or a business; (c) whether the applicant intends to rent the ADU, and if so, whether the applicant has under consideration a price range for rent; (d) whether the applicant has submitted building permit applications for other residential properties in the City within the last 10 years; (e) whether the ADU received a waiver of code requirements and is subject to the San Francisco Residential Rent Stabilization and Arbitration Ordinance pursuant to Planning Code Section 207(c)(4)(G), and (f) whether the applicant owns, in whole or in part, any other residential property in San Francisco either as an individual or as part of a partnership or corporation. The Director of the Department of Building Inspection shall decide how best to obtain the information required by this subsection (g), which may include self-reporting by applicants.

# SECTION 108A – INSPECTIONS

**108A.1 General.** All construction or work for which a permit is required shall be subject to inspection by the building official, and all such construction or work shall remain accessible and exposed for inspection purposes until approved by the building official. In addition, certain types of construction shall have continuous inspection by special inspectors as specified in Section 1701.

Approval as a result of an inspection shall not be construed to be an approval of a violation of the provisions of this code or of other ordinances of the jurisdiction. Inspections presuming to give authority to violate or cancel the provisions of this code or of other ordinances of the jurisdiction shall not be valid.

It shall be the duty of the permit applicant to cause the work to remain accessible and exposed for inspection purposes. Neither the building official nor the jurisdiction shall be liable for expense entailed in the removal or replacement of any material required to allow inspection.

In the absence of evidence as to the proper location of the lot on which a building is to be erected, for which a building permit has been or may be issued, the Building Official may require the owner to have the lot surveyed and staked by a registered land surveyor, or registered civil engineer, so that the proper location of the building on the lot may be determined. A copy of this survey shall be filed with the application for the permit.

**108A.2 Inspection record card.** Any work requiring a permit shall not begin until the permit holder or the permit holder's agent posts an inspection record "Job Card," on the site. This card shall be issued at the time of permit issuance by the Department. The card must be posted in a conspicuous, readily accessible location to allow inspectors to make necessary entries; it must remain on the job site until a final inspection of all work stated in that permit has been

completed. After final inspection, the card may be removed and retained as part of the building owner's record.

**108A.3 Inspection requests.** It shall be the duty of the person doing the work authorized by a permit to notify the building official that such work is ready for inspection. The building official may require that every request for inspection be filed at least one working day before such inspection is desired. Such request may be in writing or by telephone at the option of the building official.

It shall be the duty of the person requesting any inspections required by this code to provide access to and means for inspections of such work.

**108A.3.1 Off-hour inspections.** Those desiring inspections outside normal business hours (7:30 a.m. to 4:00 p.m., Monday through Friday, excluding legal holidays) may avail themselves of this service by prior arrangement and prepayment. See Section 110A, Table 1A-G – Inspections, Surveys and Reports – for applicable fee.

**108A.3.2 Permits by other departments.** Those applying for permits issued by other City departments which require an inspection, certification or report by the Department as a condition of issuance of said permits shall apply to the Department for said inspection, certification or report and pay a fee at the Department of Building Inspection. See Section 110A, Table 1A-G – Inspections, Surveys and Reports – for applicable fee.

**108A.4 Approval required.** No work shall be done on any part of the building or structure beyond the point indicated in each successive inspection without first obtaining the approval of the Building Official. Such approval shall be given only after an inspection shall have been made of each successive step in the construction as indicated by each of the inspections required in Section 108A.5. Any portions which do not comply with the provisions of this code and with the approved construction documents shall be corrected, and no such portion shall be covered or concealed until approved.

**108A.5. Required inspections.**

**108A.5.1 General.** The structural framework of any part of any building or structure shall not be covered or concealed without first obtaining the approval of the building official.

Protection of joints and penetrations in fire-resistive assemblies shall not be concealed from view until inspected and approved.

**108A.5.2 Foundation inspection.** Inspection shall be made after excavations for footings is complete and any required reinforcing steel is in place. For concrete foundations, any required forms shall be in place prior to inspection. All materials for the foundation shall be on the job site; however, where concrete is ready mixed in accordance with approved nationally recognized standards, the concrete need not be on the job site. Where the foundation is to be constructed of approved treated wood, additional inspections may be required by the building official.

**108A.5.3 Concrete slab or under-floor inspection.** Inspection shall be made after all in-slab or under-floor reinforcing steel building service equipment, conduit, piping accessories and other ancillary equipment items are installed, before any concrete is placed or floor sheathing installed, including the subfloor.

**108A.5.4 Reinforcing steel.** Inspection shall be made when reinforcing steel is in place in walls, floor and roof framing and other concrete members, and before any concrete is poured or placed. All reinforcing steel shall be visible for inspection.

**108A.5.5 Structural steel.** Inspection shall be made when structural steel framework, or any structural steel member of a building, is in place and before being covered or concealed in any manner.

**108A.5.6 Frame inspection.** Inspection shall be made after the roof, roof deck or sheathing, all framing, fire blocking and bracing are in place and all conduits, plumbing pipes, chimneys and vents to be concealed are complete and the rough electrical, plumbing, and heating wires, conduits, plumbing pipes and ducts are approved.

**108A.5.7 Lath or gypsum board inspection.** Inspection shall be made after all lathing and gypsum board, interior and exterior, are in place, but before any plastering is applied or before gypsum board joints and fasteners are taped and finished.

**108A.5.8 Fire-rated suspended ceilings.** Inspection shall be made after the installation of the hangers, lighting fixtures and air diffusers, the protective fixture boxes and main suspended ceiling members and before the ceiling is installed.

**108A.5.9 Final inspection.** A final inspection shall be made when the construction work has been completed, and the structure is ready for occupancy, but before it is occupied. There shall be a final inspection and approval on all buildings and structures when completed and ready for occupancy or use after plumbing, electrical and special inspection, and any other applicable approvals have been obtained. See Section 109A for certificate of occupancy requirements.

An exclusive electrical or plumbing final approval shall not be given or posted unless it is ascertained by the Building Official that no building permit is required.

**108A.6 Special inspections.** For special inspections, see Chapter 17.

**108A.7 Other inspections.** In addition to the called inspections specified above, the building official may make or require other inspections of any construction work to ascertain compliance with the provisions of this code and other laws which are enforced by the code enforcement agency.

**108A.7.1 Concealed work.** Whenever any work for which called inspections are required is covered or concealed without inspection, or whenever work is performed and concealed without a permit, and in cases where it is necessary to determine if the building or parts thereof are considered unsafe due to any of the conditions as set forth in Section 102A, the Building Official may require that such work be exposed for examination. The work of exposing or recovering or reconstructing such portions of the building or structure shall not entail expense to the City and County of San Francisco or any of its officials or employees, but shall be at the expense of the owner.

**108A.8 Reinspection.** A reinspection fee shall be assessed for each inspection or reinspection made necessary by any of the following conditions:

1. When such portion of work for which inspection is called is not complete.
2. When corrections called for are not made.
3. When the inspection record "Job Card" is not properly posted on the work site.
4. When the approved plans are not readily available to the inspector.
5. For failure to provide access on the date for which inspection is requested.
6. For deviating from plans requiring the approval of the Building Official.

The first reinspection for failure to comply with requirements shall not be assessed a reinspection fee. All subsequent reinspections on a job for the same or subsequent errors or omissions shall be charged a reinspection fee.

Subsequent to inspector determination of reinspection fee requirements, no required or requested inspections shall be made nor shall the job be given a Certificate of Final Completion and Occupancy or final approval until the required fees are paid at the Central Permit Bureau. See Section 110A, Table 1A-G – Inspections, Surveys and Reports – for applicable fee.

# SECTION 109A – CERTIFICATE OF OCCUPANCY; AMENDED CERTIFICATE OF OCCUPANCY FOR EXISTING BUILDING

**109A.1 Use and occupancy.** No building or structure shall be used or occupied, and no change in the existing occupancy classification of a building or structure or portion thereof shall be made until the building official has issued a certificate of final completion and occupancy or an amended certificate of final completion and occupancy therefor as provided herein, or otherwise has been approved for use by the Department of Building Inspection.

Issuance of a certificate of final completion and occupancy or an amended certificate of final completion and occupancy shall not be construed as an approval of a violation of the provisions of this code or of other ordinances of the jurisdiction. Certificates presuming to give authority to violate or cancel the provisions of this code or other ordinances of the jurisdiction shall not be valid. It shall be the duty of the Police Department, when called upon by the Building Official, to enforce this provision.

**109A.2 Change in occupancy or use.** Changes in the character or use of a building shall not be made except as specified in San Francisco Existing Building Code Section 407 of this code. A certificate of final completion and occupancy shall be required for changes in use or occupancy as set forth in San Francisco Existing Building Code Section 407, except for Group R-1 and R-2 Occupancies; Group R-1 and R-2 occupancies shall be subject to the requirements of Sections 109A.7 and 109A.8.

**109A.3 Certificate issued.** The Building Official shall issue certificates of final completion and occupancy for buildings or structures erected or enlarged; for each change in occupancy classification in any building, structure or portion thereof; and for buildings or structures seismically upgraded in accordance with the provisions of this code. An amended certificate of final completion and occupancy shall be issued for an existing building where there is an increase in the number of legal dwelling units resulting in a change of occupancy. The amended certificate of final completion and occupancy shall indicate the date the first certificate of occupancy and any subsequent certificates of occupancy for the building or structure were issued. If there is no original certificate of occupancy, the amended certificate of final completion and occupancy shall refer to the date of initial construction on file in the records of the Department. The provisions of this section shall not be available for use in RH-1 or RH-1(D) zoning districts, nor shall it apply to any residential dwelling that is inconsistent with existing law.

*EXCEPTION:* For Group R-1 and R-2 Occupancies, see Sections 109A.7 and 109A.8.

**109A.4 Temporary certificate.** Temporary certificates of occupancy may be issued if the Building Official finds that no substantial hazard will result from occupancy of any building, or portion thereof, before the same is completed and satisfactory evidence is submitted that the work could not have been completed prior to occupancy. The request for such temporary certificate shall be in writing, and no occupancy of the building shall be made until such certificate is issued. Such temporary certificate shall be valid for a period not to exceed 12 months, unless an extension of time is approved by the Building Official. See Section 110A , Table 1A-G – Inspections, Surveys and Reports – for applicable fee.

**109A.5 Posting.** No requirements.

**109A.6 Revocation.** The building official may, in writing, suspend or revoke a certificate of occupancy or an amended certificate of occupancy issued under the provisions of this code

whenever the certificate is issued in error, or on the basis of incorrect information supplied, or when it is determined that the building or structure or portion thereof is in violation of any ordinance or regulation or any of the provisions of this code.

**109A.7 Certificate or amended certificate of final completion and occupancy, Group R-1 and R-2 occupancy.** Before the Department may issue a certificate of final completion and occupancy for a newly-erected building or structure, an amended certificate of final completion and occupancy for an existing building pursuant to Section 109A.3, or Apartment House/Hotel License, a written report of compliance with applicable codes, standards and regulations and any conditions of approval to the building, structure or property shall be obtained from those agencies having jurisdiction. An amended certificate of final completion and occupancy issued for changes to an existing building shall indicate the date the first certificate of occupancy and any subsequent certificates of occupancy for the building or structure were issued. If there is no original certificate of occupancy, the amended certificate of final completion and occupancy shall refer to the date of initial construction on file in the records of the Department.

   Where any permit for the building, structure or property was appealed to the Board of Appeals and the Board imposed conditions on appeal, the Department may not issue a certificate of final completion and occupancy, an amended certificate of final completion and occupancy, or apartment house/hotel license until it determines that the conditions have been met. A copy of the certificate of final completion and occupancy or amended certificate of final completion and occupancy shall be forwarded to the Board of Appeals.

**109A.8 Group R-1 and R-2 occupancy, apartment house/Hotel License.** A license shall be required for every Group R-1 and R-2 occupancy structure. The license shall be obtained by paying the necessary fees as set forth in Section 110A, Table 1A-P – apartment house and hotel license fees.

   The apartment house/hotel license is not transferable, and a new license must be applied for by the new owner within 30 days of change of ownership.

   The apartment house/hotel license shall not be construed as authority to violate, cancel, alter or set aside any of the provisions or requirements of any laws or ordinances of the City and County of San Francisco, nor shall such issuance thereafter prevent requiring corrections of errors or of violations of any applicable law or ordinance of the City and County of San Francisco.

## SECTION 110A – SCHEDULE OF FEE TABLES

1A-A   Building Permit Fees
1A-B   Other Building Permit and Plan Review Fees
1A-C   Plumbing/Mechanical Permit Issuance and Inspection Fees
1A-D   Standard Hourly Rates
1A-E   Electrical Permit Issuance and Inspection Fee Schedule
1A-F   Specialty Permit Fees
  1.   Bleachers Permit Fee Table
  2.   Chimney and Flue Permits
  3.   Demolition Permit Fee Table
  4.   Extra Permit Work
  5.   Garage Door Permits
  6.   Grading Permits
  7.   House Moving Permit Fee
  8.   Recommencement of Work Not Completed

9.   Reroofing Permits
10.   Strong Motion Instrumentation Program Fee
11.   Subsidewalk Construction
12.   Construction of Impervious Surface in Front Yard Setback Area
1A-G   Inspections, Surveys and Reports
1.   Standard Inspection Fee
2.   Off-Hours Inspection
3.   Pre-Application Inspection
4.   Reinspection Fee
5.   Report of Residential Records (3R)
6.   Survey of Nonresidential Buildings
7.   Survey of Residential Buildings for any Purpose or Condominium Conversion
8.   Temporary Certificate of Occupancy
1A-H   Sign Permit Fees
1A-I   Reserved
1A-J   Miscellaneous Fees
1.   Central Permit Bureau Processing Fee
2.   Building Numbers
3.   Extension of Time: Application Cancellation and Permit Expiration
4.   Product Approvals
5.   California Building Standards Commission Fee
6.   Vacant Building
1A-K   Penalties, Hearings, Code Enforcement Assessments
1.   Abatement Appeals Board Hearing, Filing Fee
2.   Board of Examiners Filing Fees
3.   Building Official's Abatement Orders
4.   Emergency Order
5.   Exceeding the Scope of the Approved Permit
6.   Access Appeals Commission Filing Fee
7.   Lien Recordation Charges
8.   Work without Permit: Investigation Fee; Penalty
9.   Building Commission Hearing Fees
10.   Additional Hearings Required by Code
11.   Violation Monitoring
1A-L   Public Information
1.   Public Notification and Record Keeping Fees
2.   Demolition
3.   Notices
4.   Reproduction and Dissemination of Public Information
5.   Replacement of Approved Plans/Specifications
6.   Records Retention Fee
1A-M   Boiler Fees
1A-N   Energy Conservation
1A-O   Reserved
1A-P   Residential Code Enforcement and License Fees
1A-Q   Hotel Conversion Ordinance Fees

1A-R   Refunds
1A-S   Unreinforced Masonry Building Retrofit


# TABLE 1A-A – BUILDING PERMIT FEES

| | NEW CONSTRUCTION [1, 3] | | ALTERATIONS [1, 2, 3] | | NO PLANS [1, 2, 3] |
| --- | --- | --- | --- | --- | --- |
| TOTAL VALUATION | PLAN REVIEW FEE | PERMIT ISSUANCE FEE | PLAN REVIEW FEE | PERMIT ISSUANCE FEE | PERMIT ISSUANCE FEE |
| | NEW CONSTRUCTION [1, 3] | | ALTERATIONS [1, 2, 3] | | NO PLANS [1, 2, 3] |
| TOTAL VALUATION | PLAN REVIEW FEE | PERMIT ISSUANCE FEE | PLAN REVIEW FEE | PERMIT ISSUANCE FEE | PERMIT ISSUANCE FEE |
| $1.00 to $2,000.00 | $131.29 for the first $500.00 plus $5.42 for each additional $100.00 or fraction thereof, to and including $2,000.00 | $56.27 for the first $500.00 plus $2.33 for each additional $100.00 or fraction thereof, to and including $2,000.00 | $144.85 for the first $500.00 plus $2.93 for each additional $100.00 or fraction thereof, to and including $2,000.00 | $62.08 for the first $500.00 plus $1.26 for each additional $100.00 or fraction thereof, to and including $2,000.00 | $167.40 for the first $500.00 plus $3.72 for each additional $100.00 or fraction thereof, to and including $2,000.00 |
| $2,001.00 to $50,000.00 | $212.59 for the first $2,000.00 plus $13.02 for each additional $1,000.00 or fraction thereof, to and including $50,000.00 | $91.22 for the first $2,000.00 plus $5.58 for each additional $1,000.00 or fraction thereof, to and including $50,000.00 | $188.80 for the first $2,000.00 plus $17.77 for each additional $1,000.00 or fraction thereof, to and including $50,000.00 | $80.98 for the first $2,000.00 plus $7.62 for each additional $1,000.00 or fraction thereof, to and including $50,000.00 | $223.20 for the first $2,000.00 plus $5.42 for each additional $1,000.00 or fraction thereof, to and including $50,000.00 |
| $50,001.00 to $200,000.00 | $837.55 for the first $50,000.00 plus $8.68 for each additional $1000.00 or fraction thereof, to and including $200,000.00 | $359.06 for the first $50,000.00 plus $3.72 for each additional $1000.00 or fraction thereof, to and including $200,000.00 | $1,041.76 for the first $50,000.00 plus $10.63 for each additional $1000.00 or fraction thereof, to and including $200,000.00 | $446.74 for the first $50,000.00 plus $4.56 for each additional $1000.00 or fraction thereof, to and including $200,000.00 | $483.36 for the first $50,000.00 plus $2.66 for each additional $1000.00 or fraction thereof, to and including $200,000.00 |
| $200,001.00 to $500,000.00 | $2,139.55 for the first $200,000.00 plus $6.07 for each additional $1000.00 | $917.06 for the first $200,000.00 plus $2.60 for each additional $1000.00 | $2,636.26 for the first $200,000.00 plus $8.68 for each additional $1000.00 | $1,130.74 for the first $200,000.00 plus $3.72 for each additional $1000.00 | Plans Required for Submittal |

| | | | | | |
|---|---|---|---|---|---|
| | or fraction thereof, to and including $500,000.00 | or fraction thereof, to and including $500,000.00 | or fraction thereof, to and including $500,000.00 | or fraction thereof, to and including $500,000.00 | |
| $500,001.00 to $1,000,000.00 (1M) | $3,960.55 for the first $500,000.00 plus $5.42 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | $1,697.06 for the first $500,000.00 plus $2.33 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | $5,240.26 for the first $500,000.00 plus $5.97 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | $2,246.74 for the first $500,000.00 plus $2.56 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | Plans Required for Submittal |
| $1,000,001.00 to $5,000,000.00 (5M) | $6,670.55 for the first $1,000,000.00 plus $4.77 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | $2,862.06 for the first $1,000,000.00 plus $2.05 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | $8,225.26 for the first $1,000,000.00 plus $5.42 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | $3,526.74 for the first $1,000,000.00 plus $2.33 for each additional $1,000.00 or fraction thereof, to and including $1,000,000.00 | Plans Required for Submittal |
| $5,000,001.00 (5M) to $50 M | $25,751.00 for the first $5,000,000.00 plus $1.86 for each additional $1,000.00 or fraction thereof | $11,062.00 for the first $5,000,000.00 plus $1.04 for each additional $1,000.00 or fraction thereof | $29,905.00 for the first $5,000,000.00 plus $1.67 for each additional $1,000.00 or fraction thereof | $12,847.00 for the first $5,000,000.00 plus $0.94 for each additional $1,000.00 or fraction thereof | Plans Required for Submittal |
| $50M to $100M | $109,451.00 for the first $50,000,000.00 plus $1.88 for each additional $1,000.00 or fraction thereof | $57,862.00 for the first $50,000,000.00 plus $1.34 for each additional $1,000.00 or fraction thereof | $105,055.00 for the first $50,000,000.00 plus $2.05 for each additional $1,000.00 or fraction thereof | $55,147.00 for the first $50,000,000.00 plus $1.47 for each additional $1,000.00 or fraction thereof | Plans Required for Submittal |
| $100M to $200M | $203,451.00 for the first $100,000,000.00 plus $0.84 for each additional $1,000.00 or fraction thereof | $124,862.00 for the first $100,000,000.00 plus $0.92 for each additional $1,000.00 or fraction thereof | $207,555.00 for the first $100,000,000.00 plus $0.75 for each additional $1,000.00 or fraction thereof | $128,647.00 for the first $100,000,000.00 plus $0.84 for each additional $1,000.00 or fraction thereof | Plans Required for Submittal |
| $200M and up | $287,451.00 for the first $200,000,000.00 plus $1.54 for each additional $1,000.00 or fraction thereof | $216,862.00 for the first $200,000,000.00 plus $1.89 for each additional $1,000.00 or fraction thereof | $282,555.00 for the first $200,000,000.00 plus $1.59 for each additional $1,000.00 or fraction thereof | $212,647.00 for the first $200,000,000.00 plus $1.93 for each additional $1,000.00 or fraction thereof | Plans Required for Submittal |

NOTES:
1. These permit fees do not include other fees that may be required by other Departments: Public Works, Planning, Fire, Public Health, etc., nor do they include plumbing, electrical or mechanical permit fees unless so stated in the other fee tables.

2. A surcharge of $5.00 shall be added to those alteration permits sought for buildings classified as R3 (one/two-family dwelling) and E3 (licensed day care) that were constructed prior to 1979 to implement the interior lead safe work practices provisions of Section 3407 *et seq.* of this code.

3. All permit fees related to reviewing the structural integrity of awning replacements for permits submitted "over the counter" at the Central Permit Bureau are hereby waived for any permit issued to a Small Business Enterprise for such activities during the month of May. For purposes of this Section, a Small Business Enterprise shall be a business that has 100 or fewer employees. The Planning Department and the Department of Building Inspection shall establish process by which those two departments will certify that an applicant is a Small Business Enterprise for the purpose of this Section and Section 355 of the Planning Code.

**Editor's Notes:**

*Ordinance 92-20, File No. 200113, approved 6/26/2020, effective 7/27/2020, and retroactive to 1/1/2020, provides, in part:*

*"Notwithstanding any provision of the Building Code, including the fee schedules of Tables 1A-A and 1A-E, the Plan Review Fee related to reviewing permit applications, or a portion of a permit application, seeking to legalize existing dwelling units that were constructed without the required permits is hereby waived for any permit issued for such activities between January 1, 2020 and December 31, 2024, inclusive; provided that other fees, including but not limited to fees for applications to undertake structural work or excavation activities or any fees required by State law, shall not be waived."*

*See Section 2(b) of the ordinance.*

*Ordinance 146-15 provides in part as follows:*

*Notwithstanding any provision of the Building Code, including the fee schedules of Tables 1A-A and 1A-E, the Plan Review Fee related to reviewing permit applications, or a portion of a permit application, seeking to legalize existing dwelling units that were constructed without the required permits is hereby waived for any permit issued for such activities prior to January 1, 2020; provided that other fees, including but not limited to fees for applications to undertake structural work or excavation [activities] or any fees required by State law, shall not be waived.*

## TABLE 1A-B – OTHER BUILDING PERMIT AND PLAN REVIEW FEES

| | |
|---|---|
| 1.  Plan Review Fees Not Covered in Table 1A-A: | Plan Review Hourly Rate - Minimum One Hour |
| 2.  Back Check Fee: | Plan Review Hourly Rate - Minimum One Hour |
| 3.  Commencement of work not started: | See SFBC Section 106A.4.4.1 Note: Compliance with additional codes is required. |
| a.  Building, Plumbing, Mechanical, or Electric Permit Fee: | 75% of current fee |
| b.  Plan Review Fee: | 100% of current fee |
| 4.  Permit Facilitator Fee: | Plan Review Hourly Rate Hourly - Minimum Three Hours See SFBC Section 106A.3.6 |
| 5.  Pre-application Plan Review Fee: | Plan Review Hourly Rate - Minimum Two Hours Per Employee |
| 6.  Reduced Plan Review Fee: | 50% of the Plan Review Fee |
| 7.  Sign Plan Review Fee: | See Table 1A-A– Building Permit Fees |
| 8.  Site Permit Fee: | 25% of Plan Review Fee based on Table 1A-A. Minimum fee $500.00 |
| 9.  Premium Plan Review Fee– Submitted application: | 50% of Plan Review Fee plus $1,000.00 |
| 10.  Premium Plan Review Fee– Over the counter building plan review by appointment: | 50% of Plan Review Fee plus $400.00 |

| 11.  Third-Party Experts and Other Permit Related Actions Fee: | Actual costs that the Department incurs in administering and processing the action or procedure on a time and materials basis. |
|---|---|
| 12.  Other Services: | Hourly Rates per Table 1A-D |

**NOTES:**
1. See Table 1A-D – Standard Hourly Rates.
2. "Back check" is defined as: (1) that time spent reviewing applicant-initiated revisions to plans that do not affect the valuation, scope or size of the project; or (2) any additional plan review performed on required corrections to plans beyond the standard review process, as determined by the Building Official. Plan review required for applicant-initiated revisions eaffecting valuation, scope, or size ofr project may be assessed a new plan review fee in addition to the initial plan review fee as determined by the Building Official.

## TABLE 1A-C – PLUMBING/MECHANICAL PERMIT ISSUANCE AND INSPECTION FEES

A.  Permit applicants shall show a complete itemization of the proposed scope of work and select the appropriate fee category.
B.  A separate permit is required for each structure, condominium unit, existing apartment unit, high-rise office floor, suite, or tenant space.
C.  Standard hourly issuance/inspection rates will apply for installations not covered by the fee categories below.
D.  Fees shall be paid in full prior to approval for occupancy, job card signature, gas tags, or final signoff, as applicable.
E.  See Table 1A-R for refund policy.


1.  Permit Issuance Fees by Category:


| CATEGORY 1P | Single Residential Unit– water service, sewer replacement, single plumbing fixture installation, shower pan installation, or kitchen or bathroom remodels | $148.80 |
|---|---|---|
| CATEGORY 1M | Single Residential Unit– mechanical gas appliance (furnace, hydronic heat, heat pump) | $139.50 |
| CATEGORY 2PA | Plumbing installation for residential construction with 6 or less dwelling units or guest rooms; without underground plumbing installation (includes water, gas, waste, and vent) | $255.75 |
| CATEGORY 2PB | Plumbing installation for residential construction with 6 dwelling units or guest rooms or less; with underground plumbing installation (includes water, gas, waste, and vent) | $372.00 |
| CATEGORY 2M | Mechanical gas appliances for residential construction with 6 dwelling units or guest rooms or less | $223.20 |
| CATEGORY 3PA | 7– 12 Dwelling Units | $534.75 |
| CATEGORY 3PB | 13– 36 Dwelling Units | $1,069.50 |

| CATEGORY 3PC | Over 36 Dwelling Units | $4,464.00 |
|---|---|---|
| CATEGORY 3MA | 7– 12 Dwelling Units | $534.75 |
| CATEGORY 3MB | 13– 36 Dwelling Units | $1,069.50 |
| CATEGORY 3MC | Over 36 Dwelling Units | $4,464.00 |
| CATEGORY 4PA | Fire sprinklers– one and two family dwelling units | $139.50 |
| CATEGORY 4PB | Fire sprinklers– 3 or more dwelling units or guest rooms, commercial and office– per floor | $232.50 |
| CATEGORY 5P/5M | Office, mercantile & retail buildings: New or Tenant Improvements; heating/cooling equipment to piping connected thereto– per tenant or per floor, whichever is less | $302.25 |
| CATEGORY 6PA | Restaurants (new and remodel) fee includes 5 or less drainage and or gas outlets– no fees required for public or private restroom | $289.23 |
| CATEGORY 6PB | Restaurants (new and remodel) fee includes 6 or more drainage and/or gas outlets– no fees required for public or private restroom | $818.40 |
| CATEGORY 8 | New boiler installations over 200 kbtu | $255.75 |
| CATEGORY 9P/M | Surveys | $279.00 |
| CATEGORY 10P/M | Condominium conversions | $339.45 |
| BOILER MAINTENANCE PROGRAM | (Permit to operate– PTO) See Table 1A-M– Boiler Fees for additional boiler-related fees. | $48.36 each |
| 2. | Standard inspection fees Reinspection or additional inspection per SFBC Section 108A.8 | Hourly inspection rate |

A permit may include more than one category, and each category will be charged separately.


## TABLE 1A-D – STANDARD HOURLY RATES

1. Plan Review      $173.91 per hour
2. Inspection      $158.10 per hour, $167.40 per hour for OSHPD inspection
3. Administration   $96.72 per hour, with a minimum charge of $48.36 for 30 minutes or less

## TABLE 1A-E – ELECTRICAL PERMIT ISSUANCE AND INSPECTION FEE SCHEDULE

A.  Permit applicants are required to itemize the proposed scope of work and select the appropriate category and fee amount.
B.  Separate permits are required for each structure, condominium unit, existing dwelling unit (except in R3 occupancies), common area, commercial office floor or individual tenant space.

C.  Standard hourly permit issuance and inspection rates shall apply for installations not covered by this fee schedule.

D.  Fees shall be paid in full prior to obtaining: occupancy approval, job card signature, permission to energize, or final signoff, as applicable.

E.  For the purpose of fee calculation: appliances and utilization equipment each count as one outlet or device in addition to receptacles, switches, and light outlets.

F.  All permit fees related to reviewing the installation of pedestrian level lighting are hereby waived for any permit issued for such activities for Small Business Enterprises during the month of May. For purposes of this Section, a Small Business Enterprise shall be a business that has 100 or fewer employees. The Planning Department and the Department of Building Inspection shall establish process by which those two departments will certify that an applicant is a Small Business Enterprise for the purpose of this Section and Section 355 of the Planning Code.

See Table 1A-R for refund policy.
See Table 1A-J for permit extensions.


**Category 1**
**General Wiring: Residential Buildings up to 10,000 sq. ft.**


Up to 10 outlets and/or devices   $148.80
11 to 20 outlets and/or devices   $223.20
Up to 40 outlets and/or devices, includes up to 200 Amp service upgrade   $279.00
* More than 40 outlets and/or devices   $390.60
* Buildings of 5,000 to 10,000 sq. ft.   $558.00


**Category 2**
**General Wiring: Nonresidential Buildings & Residential Buildings over 10,000 sq. ft.**


Up to 5 outlets and/or devices   $223.20
6 to 20 outlets and/or devices   $334.80
* Areas up to 2,500 sq. ft.   $446.40
* 2,501 to 5,000 sq. ft.   $669.60
* 5,001 to 10,000 sq. ft.   $1,116.00
* 10,001 to 30,000 sq. ft.   $2,232.00
* 30,001 to 50,000 sq. ft.   $4,464.00
* 50,001 to 100,000 sq. ft.   $6,696.00
* 100,001 to 500,000 sq. ft.   $13,392.00
* 500,001 to 1,000,000 sq. ft.   $30,132.00
* More than 1,000,000 sq. ft.   $60,264.00
* Includes Category 3 & 4 installations in new buildings or major remodel work


**Category 3**
**Service Distribution and Utilization Equipment**

94

**Includes: Generators, UPS, Transformers and Fire Pumps
(Use Category 3 for installations separate from the scope of work in Categories 1 or 2)**

225 amps rating or less   $223.20
250 to 500 amps   $334.80
600 to 1000 amps   $446.40
1,200 to 2,000 amps   $669.60
More than 2,000 amps   $892.80
600 volts or more   $892.80
150 kva or less   $223.20
151 kva or more   $334.80
Fire Pump installations   $446.40

**Category 4
Installations of Fire Warning and Controlled Devices
(Use Category 4 for installations separate from the scope of work in Categories 1 or 2)**

Up to 2,500 sq. ft.   $223.20
2,501 to 5,000 sq. ft.   $334.80
5,001 to 10,000 sq. ft.   $669.60
10,001 to 30,000 sq. ft.   $1,116.00
30,001 to 50,000 sq. ft.   $2,232.00
50,001 to 100,000 sq. ft.   $4,464.00
100,001 to 500,000 sq. ft.   $6,696.00
500,001 to 1,000,000 sq. ft.   $15,066.00
More than 1,000,000 sq. ft.   $30,132.00

**Fire Warning and Controlled Devices (Retrofit Systems)**

Buildings of not more than 6 dwelling units   $334.80
Buildings of not more than 12 dwelling units   $446.40
Buildings with more than 12 dwelling units and non-residential occupancy
   Building up to 3 floors   $669.60
   4-9 floors   $1,339.20
   10-20 floors   $2,232.00
   21-30 floors   $4,464.00
   More than 30 floors   $6,696.00

**Category 5
Miscellaneous Installations**
Installation of EV Charging Station   Same fee as is applicable for Category 3 –
   Service Distribution and Utilization
   Equipment.

95

Remodel/Upgrade of Existing Hotel Guest/SRO Rooms
Up to 6 rooms   $279.00
Each additional group of 3 rooms   $139.50


Data, Communications, and Wireless Systems
10 cables or less   Exempt
11 to 500 cables   $158.10
Each additional group of 100 cables   $23.25


Security Systems, 10 components or less   $158.10
Each additional group of 10 components   $9.30
        Includes installations and devices that interface with life safety systems; excludes
        installations in R3 Occupancies


Office Workstations, 5 or less   $158.10
Each additional group of 10 workstations   $46.50


Temporary Exhibition Wiring, 1 to 100 booths (1 inspection)   $223.20
Each additional group of 10 booths   $23.25


Exterior Electrical Sign   $158.10
Interior Electrical Sign   $158.10
Each Additional Sign, at the same address   $37.20
Garage Door Operator (Requiring receptacle installation)   $158.10


Quarterly Permits   $348.75
   Maximum five outlets in any one location


Survey, per hour or fraction thereof   $158.10
Survey, Research, and Report preparation, per hour or fraction thereof   $279.00


Witness Testing: life safety, fire warning, emergency, and energy management systems
Hourly Rate   $158.10
Additional hourly rate   $158.10
Off-hour inspections: (two hour minimum)   $316.20
Additional off-hourly rate   $237.15


Energy Management, HVAC Controls, and Low-Voltage Wiring Systems
1-10 floors (3 inspections)   $446.40
Each additional floor   $46.50

96

Solar Photovoltaic Systems
10 KW rating or less   $158.10
Each additional 10 KW rating   $93.00
Standard Hourly Inspection Rate   See Table 1A-D

*Editor's Notes*

*Ordinance 92-20, File No. 200113, approved 6/26/2020, effective 7/27/2020, and retroactive to 1/1/2020, provides, in part:*

*"Notwithstanding any provision of the Building Code, including the fee schedules of Tables 1A-A and 1A-E, the Plan Review Fee related to reviewing permit applications, or a portion of a permit application, seeking to legalize existing dwelling units that were constructed without the required permits is hereby waived for any permit issued for such activities between January 1, 2020 and December 31, 2024, inclusive; provided that other fees, including but not limited to fees for applications to undertake structural work or excavation activities or any fees required by State law, shall not be waived."*

*See Section 2(b) of the ordinance.*

## TABLE 1A-F – SPECIALTY PERMIT FEES

| | |
|---|---|
| 1.  Bleachers Permit Fee: | See Table 1A-A for New Construction Fees |
| 2.  Chimney and Flue Permit Fee: | See Table 1A-A for New Construction Fees |
| 3.  Demolition Permit Fee: | See Table 1A-A for New Construction Fees |
| 4.  Extra Permit Work:<br>        (exceeding scope) | 2 times the standard fees for work remaining to be done or not covered in original permit scope |
| 5.  Garage Door Permit Fee:<br>        Each garage door in an existing building | $148.80 |
| 6.  Grading Permit Fee: | See Table 1A-A for New Construction Fees |
| 7.  House Moving Permit Fee: | Standard Hourly Inspection Rate - Minimum 3 Hours |
| 8.  Recommencement of Work Not Completed: | Standard Inspection Fee per Table 1A-G; See also Table 1A-B– Commencement of Work Not Started |
| 9.  Reroofing Permit Fee: | $148.80 for Single-Family homes and duplexes<br>$223.20 for all others |
| 10.  Strong Motion Instrumentation Program Fee: | |
| Group R Occupancies of 3 stories or less, except hotels and motels | 0.00013 times the valuation |
| Hotels and motels, all buildings greater than 3 stories, all occupancies other than Group R | 0.00024 times the valuation |
| Minimum fee | $1.60 |
| 11.  Subsidewalk Construction Permit Fee: | |
| Construction | See Table 1A-A for New Construction Fees |

| 12. Construction of impervious surface in the required front and setback area | $148.80 |
|---|---|

## TABLE 1A-G – INSPECTIONS, SURVEYS AND REPORTS

| 1. Standard Hourly Rate | See Table 1A-D |
|---|---|
| 2. Off-hours inspection | Standard Hourly Inspection Rate - Minimum Two Hours plus permit fee |
| 3. Pre-application inspection | Standard Hourly Inspection Rate - Minimum Two Hours |
| 4. Re-inspection fee | Standard Hourly Inspection Rate |
| 5. Report of residential records (3R) | $148.80 |
| 6. Survey of nonresidential buildings: | Standard Hourly Inspection Rate - Minimum Two Hours |
| 7. Survey of residential buildings for any purpose or Condo Conversions: | |
| Single unit | $1,627.50 |
| Two to four units | $2,139.00 |
| Five + units | $2,139.00 plus Standard Hourly Inspection Rate |
| Hotels: | |
| Includes 10 guestrooms | $1,627.50 |
| 11 + guestrooms | $2,139.00 plus $39.53 per guestroom over 11 |
| 8. Temporary Certificate of Occupancy | Standard Hourly Inspection Rate - Minimum Two Hours |

## TABLE 1A-H – SIGN PERMIT FEES

Nonelectric and electric sign permit fee– See Table 1A-A for New Construction Fees
*NOTE*: See also Table 1A-E for required Electrical Sign Permits and Inspections

## TABLE 1A-I – RESERVED

## TABLE 1A-J – MISCELLANEOUS FEES

| 1. Central Permit Bureau Processing Fee for Miscellaneous Permits from other disciplines | Standard Administration Hourly Rate - Minimum One-Half Hour |
|---|---|
| 2. Building numbers (each entrance) | $96.72 NEW ADDRESSES<br>$195.30 CHANGE OF EXISTING ADDRESS OR LOT NUMBER |
| 3. Extension of time: application cancellation and permit expiration: | |
| Each application extension (in plan review) | $148.80 plus 20% of All Plan Review Fees |
| Each permit extension | $148.80 plus 10% of All Permit Issuance Fees |
| 4. Product approvals: | |
| General approval - initial or reinstatement | Standard Hourly Plan Review Rate - Minimum Three Hours |
| General approval - modification or revision | Standard Hourly Plan Review Rate - Minimum Three Hours |
| General approval - biannual renewal | Standard Hourly Plan Review Rate - Minimum Three Hours |
| 5. California Building Standards Commission Fee | Pursuant to the provisions of California Health and Safety Code Sections 18930.5, 18931.6, 18931.7 and 18938.39 |
| 6. Vacant building - Initial and annual registration fee | Standard Inspection Hourly Rate - Minimum Four and One-Half Hours |

## TABLE 1A-K – PENALTIES, HEARINGS, CODE ENFORCEMENT ASSESSMENTS

| 1. Abatement Appeals Board hearing, filing fee | $158.10 per case |
|---|---|
| 2. Board of Examiners filing fees: | |
| Each appeal for variance from interpretation of code requirements | Standard Hourly Plan Review Rate - Minimum Two Hours |
| Each appeal for approval of substitute materials or methods of construction | Standard Hourly Plan Review Rate - Minimum Four Hours |
| 3. Building Official's abatement order hearing | Standard Hourly Plan Review Rate - Minimum Two Hours |
| 4. Emergency order | Standard Hourly Plan Review Rate - Minimum Two Hours |
| 5. Exceeding the scope of the approved permit | 2 times the issuance fee |
| 6. Access Appeals Commission: | |

| | |
|---|---|
| Filing fee | Standard Hourly Plan Review Rate - Minimum Two Hours per appeal |
| Request for a rehearing | Standard Hourly Plan Review Rate - Minimum Two Hours |
| 7.  Lien recordation charges | $173.91 or 10 percent of the amount of the unpaid balance, including interest, whichever is greater |
| 8.  Work without permit: investigation fee: | |
| Building, Electrical, Plumbing or Mechanical Code violations | 9 times the Permit Issuance Fee plus the original permit fee |
| 9.  Building Inspection Commission hearing fees: | |
| Notice of appeal | Standard Hourly Plan Review Rate - Minimum Four Hours |
| Request for jurisdiction | Standard Hourly Plan Review Rate - Minimum Four Hours |
| Request for rehearing | Standard Hourly Plan Review Rate - Minimum Two Hours |
| 10.  Additional hearings required by Code | Standard Hourly Plan Review Rate - Minimum Four Hours |
| 11.  Violation monitoring fee (in-house) | Standard Administration Hourly Rate– Minimum One-Half Hour Monthly |
| 12.  Failure to register vacant commercial storefront | 4 times the registration fee |

## TABLE 1A-L – PUBLIC INFORMATION

| | |
|---|---|
| 1.  Public notification and record keeping fees: | |
| Structural addition notice | Standard Administration Hourly Rate - Minimum One-Half Hour |
| Affidavit record maintenance | $15.00 |
| Posting of notices (change of use) | Standard Administration Hourly Rate - Minimum One-Half Hour |
| Requesting notice of permit issuance (each address) per year | Standard Administration Hourly Rate - Minimum One-Half Hour |
| 30-inch by 30-inch (762 mm by 762 mm) sign | $15.00 |
| 2.  Demolition: | |
| Notice of application and permit issuance by area/interested parties: | |
| 1 area (1 area = 2 blocks) | $96.72 per annum per each area |
| 3.  Notices: | |

| 300-foot (91.44 m) notification letters | Standard Administration Hourly Rate - Minimum One and One-Half Hour |
|---|---|
| Residential tenants notification | Standard Administration Hourly Rate - Minimum One-Half Hour |
| 4.   Reproduction and dissemination of public information: | |
| Certification of copies: | |
| 1 to 10 pages | $15.00 |
| Each additional 10 pages or fraction thereof | $3.50 |
| Electrostatic reproduction: | |
| Each page photocopy | $0.10 |
| 35 mm duplicards from microfilm rolls (Diazo card) | $3.50 |
| Hard copy prints: | |
| 8 1/2 inch by 11 inch copy from microfilm roll | $0.10 |
| 11 inch by 17 inch copy of plans | $0.10 |
| 8 1/2 inch by 11 inch copy from aperture cards or from electronic copies of building records (scanned or computer generated) | $0.10 |
| 5.   Replacement of approved construction documents: | |
| Each sheet of plans (Larger than 11 × 17) | ACTUAL COST CHARGED BY VENDOR |
| 6.   Records Retention Fee | |
| Each page of plans per page of plans | $3.00 |
| Each page of supporting documentation (e.g., soil reports, structural calculations, acoustical reports, energy calculations, etc.) per page of documentation | $0.10 |

## TABLE 1A-M – BOILER FEES

| Permit to install or replace | See Table 1A-C - Category 8 |
|---|---|
| Permit to operate (certificate issued) | Standard Administration Hourly Rate - Minimum One-Half Hour |
| Renew permit to operate (certificate issued) | Standard Administration Hourly Rate - Minimum One-Half Hour |
| Replacement of issued permit to operate | Standard Administration Hourly Rate - Minimum One-Half Hour |
| Connection to utility company provided steam (includes permit to operate) | Standard Administration Hourly Rate - Minimum One-Half Hour |
| Boiler Maintenance Program | $48.36 |

Renewal required:
1.  Low-pressure boilers every 12 months. (See definition of low-pressure boilers in Chapter 2.)
2.  Water heaters when alteration or replacement permits are issued.

## TABLE 1A-N – ENERGY CONSERVATION

|  | INITIAL INSPECTION | COMPLIANCE INSPECTION |
|---|---|---|
| Single-family dwellings and two-family dwellings | $158.10 | $79.05 |
| Apartment houses and residential hotels: |  |  |
| Up to 20 rooms | $237.15 | $118.58 |
| Each additional 10 rooms or portion thereof | $79.05 | $48.36 |
| Energy reports and certificates: |  | $48.36 |
| Filing fee for appeals: |  | $96.72 |
| Certification of qualified energy inspector: |  | $186.00 |

## TABLE 1A-O – RESERVED

## TABLE 1A-P – RESIDENTIAL CODE ENFORCEMENT AND LICENSE FEES

| 1.   One- and Two-family dwelling unit fees: | $52.00 per rental unit |
|---|---|
| 2.   Apartment house license fees: |  |
| Apartment houses of 3 to 12 units | $326.00 per annum |
| Apartment houses of 13 to 30 units | $488.00 per annum |
| Apartment houses of more than 30 units | $488.00 and $55.00 for each additional 10 units or portion thereof |
| 3.   Hotel license fees: |  |
| Hotels of 6 to 29 rooms | $256.00 per annum |
| Hotels of 30 to 59 rooms | $470.00 per annum |
| Hotels of 60 to 149 rooms | $584.00 per annum |
| Hotels of 150 to 200 rooms | $660.00 per annum |
| Hotels of more than 200 rooms | $660.00 and $55.00 for each additional 25 rooms or portion thereof |

## TABLE 1A-Q – HOTEL CONVERSION ORDINANCE FEES

| | |
|---|---|
| Annual unit usage report | $96.72 |
| 1.   Appeal of initial or annual status determination: | Standard Inspection Hourly Rate pursuant to Section 110A of this code shall apply for Department Inspector's work on such request plus fees for Hearing Officer |
| 2.   Challenge to claims of exemption: | |
| Usage report | $48.36 |
| Claim of exemption based on low-income housing | $316.20 |
| Claim of exemption based on partially completed conversion | $474.30 |
| 3.   Complaint of unlawful conversion | $48.36 |
| Determination by Department of Real Estate and cost of independent appraisals | Actual costs |
| 4.   Initial unit usage report | $316.20 |
| 5.   Permit to convert | $474.30 |
| 6.   Request for hearing to exceed 25% tourist season rental limit: | |
| Inspection staff review - standard hourly inspection fee | Standard Inspection Hourly Rate |
| Statement of exemption - Hearing Officer fee | $316.20 |
| 7.   Unsuccessful challenge: | |
| Usage report: | |
| Inspection staff review - standard hourly inspection fee | Standard Inspection Hourly Rate |
| Statement of exemption - Hearing Officer fee | $316.20 |
| Request for winter rental: | |
| Standard hourly inspection fee | Standard Inspection Hourly Rate |

## TABLE 1A-R – REFUNDS

Partial or complete refunds of only those fees contained herein will be given, provided the applicant meets the refund requirements of the applicable section of this code. No other fees are refundable, except as follows:

| | |
|---|---|
| 1.   Application or Permit Issuance Fee: | |
| Building, plumbing, electrical or mechanical permit issuance fee | Amount paid less $160.00 or actual costs, whichever is greater. No refunds given after work started. |

| Plan Review Fees (each) | Amount determined by the Building Official less $160.00<br>No Refund due after application deemed acceptable for<br>Department of Building Inspection Plan Review |
| --- | --- |
| 2.   Miscellaneous Fees: | Amount paid less $52.00<br>No refunds less than $52.00 |

No existing permittee who paid a fee under the fee schedules in effect at the time the fee was paid shall be eligible for a refund or subject to a fee reassessment as a result of an amendment to the fee schedules. If the Building Official determines that an error has been made in the assessment of fees, a refund for the portion determined to be in error may be made upon written request by the applicant.

## TABLE 1A-S – UNREINFORCED MASONRY BEARING WALL BUILDING RETROFIT

| Review of Inventory Form (Section 1604B.2.1) | Standard Plan Review Hourly Rate - Minimum Two Hours |
| --- | --- |
| Review of the summary of the engineering report (Section 1604B.2.3) | Standard Plan Review Hourly Rate - Minimum Two Hours |
| Board of Examiners filing fees (Section 105A7.4): | |
| Each appeal for a variance from or interpretation of code requirements | Standard Plan Review Hourly Rate - Minimum Two Hours |
| Each appeal for the approval of substitute materials or methods of design or construction (Section 105A.7.3) | Standard Plan Review Hourly Rate - Minimum Four Hours |

## FIGURE 1A-I – 1851 HIGH-TIDE LINE MAP





# Chapter 2
# DEFINITIONS

## SECTION 202 – DEFINITIONS

*202 Add this definition as follows:*

***ALL-ELECTRIC BUILDING OR PROJECT.*** A building or project that uses a permanent supply of electricity as the source of energy for all space conditioning (including heating and cooling), water heating (including pools and spas), cooking appliances, and clothes drying appliances. An All-Electric Building or Project may not install natural gas or propane piping systems, fixtures or infrastructure for those purposes in or in connection with the building, structure, or within property lines of the premises, extending from the point of delivery at the gas meter.

***ELECTRIC-READY.*** A building, project, or portion thereof that contains electrical systems and designs that provide capacity for a future retrofit of a Mixed-Fuel Building to an All-Electric

Building. Electric-Ready includes sufficient space, drainage, electrical conductors or raceways, bus bar capacity, and overcurrent protective devices to provide capacity for a future retrofit to an All-Electric Building as specified in the Design Guidelines for Electric-Ready Buildings published by the Department of Building Inspection.

*KITCHEN, RESIDENTIAL.* That portion in a residential dwelling unit that is a room or area used for cooking, food storage and preparation and washing dishes, including associated counter tops and cabinets, refrigerator, stove, ovens and floor area.

*MIXED-FUEL BUILDING.* A building that uses natural gas or propane as fuel for space heating or cooling, exterior heating, decorative uses and lighting, water heating (including pools and spas), cooking appliances or clothes drying appliances, onsite generation of electricity (except where primarily fueled by onsite digestion of organic material), or contains fixtures, piping systems, or infrastructure for natural gas or propane equipment for such uses.

---

*202 Revise the first sentence of the following two definitions under* **STANDPIPE SYSTEM**:

*STANDPIPE SYSTEM, CLASSES OF.* Standpipe classes are as follows:

*Class I system.* A system providing 3" (76.2 mm) hose connections to supply water for use by fire departments and those trained in handling heavy fire streams.

*Class III system.* A system providing 1-1/2-inch (38 mm) hose stations to supply water for use by building occupants and 3" (76.2 mm) hose connections to supply a larger volume of water for use by fire departments and those trained in handling heavy fire streams.

## Chapter 3
## USE AND OCCUPANCY CLASSIFICATION

*No San Francisco Building Code Amendments*

## Chapter 4
## SPECIAL DETAILED REQUIREMENTS BASED ON OCCUPANCY AND USE

## SECTION 406 – MOTOR-VEHICLE-RELATED OCCUPANCIES

---

*406.3 Change the section numbering to include the new added section:*

**406.3 Private garages and carports.** Private garages and carports shall comply with Section 406.3.1 through [←] 406.3.7.

---

*406.3.7 406.3 Add the following section:*

**406.3.7 406.3.4 Ventilation.**

Ventilation shall be provided as follows: Natural ventilation shall be required, and such space shall be provided with ventilation outlets in the walls or exterior doors. The total net area of such ventilation outlets shall be 200 square inches (0.129 m$^2$) for a space up to 1,000 square feet

(92.903 m$^2$) in area and shall be increased 30 square inches (0.0194 m$^2$) for each additional 200 square feet (18.58 m$^2$) of floor area up to maximum floor area of 3,000 square feet (278.709 m$^2$).

## SECTION 435 – SPECIAL PROVISIONS FOR LICENSED 24-HOUR CARE FACILITIES IN A GROUP R-2.1, R-3.1, R-4

*435.3 Add the following section:*

**435.3.5** For detached one- and two-family dwellings, and townhouses not more than three stories above grade plane in height with a separate means of egress, buildings housing protective social-care homes or in occupancies housing inmates who are not restrained need not be of one-hour fire-resistive construction when not more than two stories in height. In no case shall individual floor areas exceed 3,000 square feet (279 m$^2$). The fire-resistive protection of the exterior walls shall not be less than one hour where such walls are located within 5 feet (1524 mm) of the property line. Openings within such walls are not permitted. Openings within non-rated walls need not be protected. [California Residential Code Section R335.9]

## SECTION 456 – FENCES

*456 Add the following section:*

**456.1 Fences.** Fences on any property containing a Group R Occupancy shall not be higher than 10 feet (3048 mm). Fences located less than 10 feet (3048 mm) from any public sidewalk shall not be higher than 10 feet (3048 mm) unless they are of open-type materials such as chain link fabric. Fence height shall be measured from the level of general existing adjacent ground of the general area prior to the improvement of the properties. A fence or railing placed on top of the retaining wall shall be measured from the top of the wall.

Fences constructed wholly or in part of barbed wire are prohibited, except when permitted with the express written permission of the Building Official, and the Fire Department in the following situations:

1.  On top of a fence more than 7 feet (2.134 m) high, protecting a dangerous or hazardous area.

2.  Within a private area, enclosed by a seven-foot- high (2.134 m) fence, such that entry to the area is limited by the outer, nonbarbed fence.

3.  In special instances for localized protection, and in areas within or atop a building to isolate dangerous conditions.

## Chapter 5
## GENERAL BUILDING HEIGHTS AND AREAS

*No San Francisco Building Code Amendments*

## Chapter 6
## TYPES OF CONSTRUCTION

*No San Francisco Building Code Amendments*

# Chapter 7
# FIRE AND SMOKE PROTECTION FEATURES

## SECTION 707 – FIRE BARRIERS

*707.1 Add a second paragraph to this section as follows:*

Information technology rooms shall be in accordance with the Fire Code and Electrical Code.

# Chapter 7A [SFM]
# MATERIALS AND CONSTRUCTION METHODS FOR EXTERIOR WILDFIRE EXPOSURE

*No San Francisco Building Code Amendments*

# Chapter 8
# INTERIOR FINISHES

*No San Francisco Building Code Amendments*

# Chapter 9
# FIRE PROTECTION AND LIFE SAFETY SYSTEMS

## SECTION 901 – GENERAL

*901.4 Add a second paragraph as follows:*

Notwithstanding any other provisions of the California Building Code or other codes or regulations, Fire Department connections shall have 3-inch (76.2 mm) National Standard hose threads.

## SECTION 903 – AUTOMATIC SPRINKLER SYSTEMS

*903.2.8 Add exception 5 as follows:*

5.   An automatic residential fire sprinkler system shall not be required when additions or alterations are made to existing townhouses, one- and two- family dwellings not more than three stories above grade plane that do not have an automatic residential fire sprinkler system installed. [California Residential Code Sections 1.1.3 R101.2, R313.1, R313.2]

*Table 903.2.11.6 Add a line to the end of the Table as follows:*

**TABLE 903.2.11.6**
**ADDITIONAL REQUIRED SUPPRESSION SYSTEMS**

| *SECTION* | *SUBJECT* |
|---|---|
| 3202.3.4 | Pedestrian Walkways over Public Streets |

# SECTION 905 – STANDPIPE SYSTEMS

*905.3.4 Revise this section as follows:*

**905.3.4 Stages.** Stages greater than 1,000 square feet in area (93 m²) shall be equipped with a Class III wet standpipe system with 1-1/2-inch and 3-inch (38 mm and 76.2 mm) hose connections on each side of the stage.

# SECTION 907 – FIRE ALARM AND DETECTION SYSTEMS

*907.2.9.1 Revise Item 3 and Item 4 as follows:*

3. The building contains more than 6 dwelling units or sleeping units.
4. Congregate living facilities or congregate residences three or more stories in height or having an occupant load of 11 or more.

*907.2.9.5 Add the following section:*

**907.2.9.5 Automatic smoke detection system.** An automatic smoke detection system that activates the occupant notification system in accordance with Section 907.6 907.5 shall be installed throughout all interior corridors serving sleeping units.
**Exceptions:**
   1. An automatic smoke detection system is not required in buildings that do not have interior corridors serving sleeping units and where each sleeping unit has a means of egress door opening directly to an exit or to an exterior exit access that leads directly to an exit.
   2. An automatic smoke detection system is not required in buildings when all of the following conditions are met:
      2.1. The building is equipped throughout with a supervised automatic sprinkler system installed in accordance with Section 903.3.1.1 or 903.3.1.2.
      2.2. The notification devices will activate upon sprinkler water flow; and
      2.3. At least one manual pull station is installed in an approved location.

*907.2.10.2.1 907.2.11.2 Add the following section:*

**907.2.10.2.1 907.2.11.2.7 Group R-3 Congregate Living Facilities.**
Group R-3 congregate living facilities having an occupant load of 6 or more shall be provided with a manual fire alarm system.

# SECTION 912 – FIRE DEPARTMENT CONNECTIONS

*912 Add the following section:*

**912.7 Number of connections required.** Sprinkler systems requiring a 4-inch (101.6 mm) or larger water service shall have two or more inlet connections as necessary to meet hydraulic demand.

# Chapter 10
# MEANS OF EGRESS

## SECTION 1010 – DOORS, GATES AND TURNSTILES

*1010.1.2 Revise item 4 as follows:*

4.   Other than the main egress door at the primary entry, doors within or serving a single dwelling unit in Groups R-2 and R-3.

## SECTION 1011 – STAIRWAYS

*1011.5.5 Modify the first sentence of the first paragraph as follows:*

For all occupancies except R-3 one and two family dwellings and townhouses nosings shall have a curvature or bevel of not less than 1/16 inch (1.6 mm) but not more than 9/16 inch (14.3 mm) from the foremost projection of the tread. Risers shall be solid and vertical or sloped under the tread above from the underside of the nosing above at an angle not more than 30 degrees (0.52 rad) from the vertical.

*1011.5.5 Add a second paragraph as follows:*

For R-3 one- and- two family dwellings and townhouses, the radius of curvature at the nosing shall be no greater than 9/16 inch (14 mm). A nosing not less than 3/4 inch (19 mm) but not more than 1-1/4 inches (32 mm) shall be provided on stairways with solid risers. The greatest nosing projection shall not exceed the smallest nosing projection by more than 3/8 inch (9.5 mm) between two stories, including the nosing at the level of floors and landings. Beveling of nosings shall not exceed 1/2 inch (12.7 mm).
   *Exception:* A nosing projection is not required where the tread depth is not less than 11 inches (279 mm). [*CRC R311.7.5.3*]

*1011.5.5.1 Modify the first sentence of the first paragraph as follows:*

For all occupancies except R-3 one- and two- family dwellings and townhouses the leading edge (nosings) of treads shall project not more than 1¼ inches (32 mm) beyond the tread below.

*1011.12 Add a sentence to the end of the Exception as follows:*

   *Exception:* Other than where required by Section 1011.12.1, in buildings without an occupied roof access to the roof from the top story shall be permitted to be by an alternating tread device, a

ships ladder or a permanent ladder. Stairs or ladders used only to attend equipment or window wells are exempt from the requirements of this chapter.

*1011.12.3 Add section as follows:*

**1011.12.3 Stairway replacement.** Stairways that replace existing stairways in residential occupancies and which complied with the code in effect at the time they were constructed, and which have been adequately maintained and increased in relation to any increase in occupant load, alteration or addition, or any change in occupancy, may be reconstructed in the same configuration and construction as the existing stairways.

## SECTION 1012 – RAMPS

*1012.2 Add an exception as follows:*

*Exception:* For R-3 one- and two- family dwellings and townhouses, where it is technically infeasible to comply because of site constraints, ramps may have a maximum slope of one unit vertical in eight units horizontal (12.5 percent). [CRC R311.8.1]

## SECTION 1013 – EXIT SIGNS

*1013.1 Add the following sentence after the exceptions:*

Doorways or other openings leading to a fire escape, except within individual dwelling units, shall be provided with a sign reading "FIRE ESCAPE" in letters not less than 6 inches (152 mm) high, in high contrast with the background.

## SECTION 1015 – GUARDS

*1015.4 Revise exception 1 as follows:*

1.   For occupancies other than R-3 or Ttownhouses, from a height of 36 inches (914 mm) to 42 inches (1067 mm), guards shall not have openings which that allow passage of a sphere 4 3/8 inches (111 mm) in diameter.

## SECTION 1016 – EXIT ACCESS

*1016.2 Add item 7 as follows:*

7.   [Reference CRC R311.1] For one- and two-family dwellings and townhouses, the means of egress is allowed to pass through rooms and intervening spaces except garages. [CRC R311.1]

*1016.3 Add a section as follows:*

**1016.3 [Reference CRC R311.4] Vertical egress.** For habitable levels or basements in R-3 occupancies or townhouses that are located more than one story above or more than one story below an egress door, the maximum travel distance from any occupied point to a stairway or

112

ramp that provides egress from such habitable level or basement shall not exceed 50 feet (15240 mm). [CRC R311.4]

---

*Add chapter as follows:*

# Chapter 10A
# SECURITY REQUIREMENTS

## SECTION 1001A – SCOPE

**1001A.1 General.** This chapter shall apply to all Group R, Division 1 and R, Division 2 Occupancies.

**1001A.2 Apartment houses.** Apartment houses (Group R, Division 1 and R, Division 2 Occupancies) and buildings containing more than two residential condominium units shall meet the security requirements of this chapter.

**1001A.3 Hotels and motels.** Hotels and motels shall comply with the security requirements of this chapter. For the purpose of this chapter, any building open to the public and offering accommodations to transient persons for compensation shall be considered as a hotel or motel.

## SECTION 1002A – DEFINITIONS

For the purpose of this chapter, certain terms are defined as follows:

*AUXILIARY LOCKING DEVICE* is a secondary locking system added to the primary locking system to provide additional security.

*BURGLARY-RESISTANT GLAZING MATERIALS* are materials which are defined in ANSI/UL Standard 972.

*DEADBOLT* is a lock bolt which must be actuated by a key, a knob or thumb-turn and when projected becomes locked against return by end pressure, and does not have spring action, as a latch bolt does. A *SINGLE CYLINDER DEADBOLT* is a deadbolt lock which is activated from the outside by a key and from the inside by a knob, thumb-turn lever or similar mechanism. A *DOUBLE CYLINDER DEADBOLT* is a deadbolt which can only be activated by a key from both interior and exterior.

*DEADLATCH* or *DEADLOCKING LATCH BOLT* is a spring-actuated latch bolt having a beveled end and an incorporated plunger which, when depressed, automatically locks the projected latch bolt against return by end pressure.

*PRIMARY LOCKING DEVICE* is the single locking system on a door or window unit whose function is to prevent unauthorized intrusion.

*WINDOW LOCKING DEVICE* is part of a window assembly which is intended to prevent movement of the movable sash, and may be the sash lock or sash operator.

## SECTION 1003A – GENERAL REQUIREMENTS FOR SECURITY

**1003A.1 Clearances.** The clearance between the door and the frame and between meeting edges of doors swinging in pairs shall not exceed 1/8 inch (3.2 mm). The clearance between the door and the floor with either flush or raised sill shall be not more than 3/4 inch (19.1 mm).

113

**1003A.2 Door assemblies.** Excluding main entry doors, all exterior swinging doors, and swinging interior and exterior entry doors, including assemblies and related hardware, which are directly accessible from the ground level or by stairs or by ramp, or from roof areas, or parking lot, or garage areas, shall meet the requirements of Grade 20 of ANSI/ASTM F476, Standard Test Methods for Security of Swinging Door Assemblies.

All such doors shall be self-closing continuously locked, and openable from the interior with no special effort or knowledge or key. Where electrically operated locks are used, they must be self-latching and locking and shall have manual release capability from the interior requiring no special effort or knowledge or key.

**1003A.2.1 Main entrance.** All main entry doors, including electrically operated main entry doors, shall be provided with a primary locking device. "Main entry doors" shall be defined as exterior doors leading directly into the lobby, registration areas or employee entrances.

**1003A.2.2 Viewer.** Each door shall be provided with a minimum 135-degree viewer which does not have sighting capability when viewed from the outside. Mounting height shall not exceed 58 inches (1473 mm).

**1003A.3 Fire-rated door assemblies.** Fire-rated door assemblies shall meet the requirements of Grade 20, ANSI/ASTM F476.

**1003A.4 Glazing.** All glazing within 40 inches (1016 mm) of any locking mechanism of exterior and interior dwelling unit doors shall be of safety glass or burglar-resistant glazing. This requirement shall not exempt the swinging door assembly standards of Grade 20 of ANSI/ASTM F476.

**1003A.5 Metal gates.** Metal gates shall conform to the following:

1. Latch bolt protected by a security plate.
2. Hinges, bolts, screws shall be nonremovable.
3. Areas within 40 inches (1016 mm) of latch mechanism protected by mesh screen or approved equal.
4. Interior release mechanism protected with cover.
5. For electrically operated locks, see Section 1003A.2.

**1003A.6 Sliding glass doors.** Sliding glass door assemblies shall be so designed that the door cannot be lifted from the track when the door is in a locked position.

In addition to the primary locking device, all sliding glass doors shall have an auxiliary locking device permanently mounted and not accessible from the exterior of the building but easily accessible from the interior.

**1003A.7 Sliding glass windows.** Sliding glass window assemblies shall be so designed that the moving panel cannot be lifted from the track while in a closed position.

**1003A.8 Parking areas.** Parking space numbering shall not correspond to the guest room or dwelling unit number.

Exterior parking areas and access thereto shall be provided with a minimum of 1/2 foot-candle (5.38 lx) of light on the parking surface when the area is unoccupied. Lighting devices shall be protected by weather- and vandalism-resistant covers.

# SECTION 1004A – SPECIAL HOTEL AND MOTEL SECURITY REQUIREMENTS

**1004A.1 Entry doors to guest rooms.**

114

*EXCEPTION:* Residential care facilities licensed by the State of California under Title 22 of the California Code of Regulations shall not be required to comply with the requirements of this subsection.

Locks shall be a combination of minimum 1/2-inch (12.7 mm) throw deadlatch with a minimum 1-inch (25.4 mm) deadbolt.

All locks shall be capable of locking out all keys, except the emergency keys for guest privacy while inside the room, and so constructed that both deadlatch and deadbolt are retracted simultaneously by a single knob or lever.

**1004A.2 Communicating door between guest rooms.** Communicating doors between guest rooms if not required to be fire-rated shall meet the requirements of Grade 20 of ANSI/ASTM F476 and be of minimum 1 3/8-inch (35 mm) bonded wood core or approved equal.

**1004A.3 Roof openings.** All skylights leading directly to guest rooms, offices and enclosed commercial space shall be provided with burglary-resistant glazing as defined in Section 1002A.

**1004A.4 Message and key box – front desk.** The message and room key location at the front desk shall not be visible from public view so as to determine an unoccupied room.

## SECTION 1005A – SPECIAL APARTMENT HOUSE AND CONDOMINIUM SECURITY REQUIREMENTS

**1005A.1 Voice communications.** A two-way voice communication system shall be provided between the common entry door and all interior dwelling units. All systems shall provide direct communication.

**1005A.2 Lighting.** Lighting shall be a minimum of 1/2 foot-candle (5.38 lx) of light on the ground surface from the street to the entry door. Lighting devices shall be protected by weather- and vandalism-resistant covers.

**1005A.3 Master keying.** Exterior and main entrance door locks shall not be on any master key system.

**1005A.4 Entry doors.** Entry doors and door assemblies shall comply with the following:

**1005A.4.1** Locks shall be combination 1/2-inch (12.7 mm) throw deadlatch with a minimum 1-inch (25.4 mm) throw deadbolt, and so constructed that both the deadlatch and deadbolt retract simultaneously by knob or lever. The deadbolt shall have the ability to be thrown from the exterior.

**1005A.5 Exit doors.** All exit doors from corridors to exit stairways and from interior stairwells and interior fire escapes shall meet the requirements of Grade 20 of ANSI/ ASTM F476 and be continuously locked from the outside.

Locking devices shall be self-latching or self-locking and shall be openable from the interior with no special effort or knowledge or key. [See Section ~~1008.1.9~~1010.1.9.]

**1005A.6 Glazed openings.** Glazed openings accessible from the ground level, by stairs, ramps, parking lots or garage areas, shall be with approved safety glass or burglar-resistant glazing as defined in Section 1002A. Protective iron grill work may only be installed where it does not interfere with the required means of egress.

**1005A.7 Roof openings.** All skylights leading directly to interior corridors, stairwells, dwelling units and utility rooms shall be provided with burglary-resistant glazing as defined in Section 1002A.

**1005A.8 Garage doors.** All doors of the sectional overhead, one-piece overhead, swing or sliding types used on the exterior of a building shall conform to the following standards:

**1005A.8.1** Panels of wood doors shall be at least 5/16-inch (7.94 mm) thick, except sectional overhead doors may have panels 1/4-inch (6.35 mm) thick.

**1005A.8.2** Aluminum doors shall be constructed of at least 0.025-inch (0.635 mm) thick sheet aluminum, riveted, welded or bolted to framing members at least 12 inches (305 mm) on center.

**1005A.8.3** Steel doors shall be constructed of at least 0.023-inch (0.584 mm) thick galvanized steel, riveted, welded or bolted to framing members at least 12 inches (305 mm) on center.

**1005A.8.4** Fiberglass sectional doors shall be constructed of formed fiberglass panels of density of at least 5 1/2 oz. per square foot (1678 g/m$^2$), pressure sealed to aluminum framing members.

**1005A.8.5** Overhead doors shall be made lockable by either:

For doors 16 feet (4877 mm) wide or less, a slide bolt – minimum diameter 3/8-inch (9.5 mm) minimum projection 1-1/2 inches (38 mm) – locking into the door jamb, capable of utilizing a padlock with a minimum 9/32-inch (7.14 mm) shackle. For doors over 16 feet (4877 mm) wide, except sectional doors, two slide bolt locks shall be required. Slide bolt assemblies shall be attached to the door with bolts which are nonremovable from the exterior.

Electrical operator with automatic locking capability, either inherently in the mechanism or as an added feature.

By at least one single-bar lock mounted in the end stile, with locking bar or bolt extending into the receiving guide a minimum of 1 inch (25.4 mm), and with minimum five-pin tumble operation. For doors over 16 feet (4877 mm) wide, except sectional doors, two single-bar locks shall be required.

Center locking-handle devices will require actuating straps to be enclosed by rigid conduits securely fastened to the door.

**1005A.8.6** Swinging garage doors shall be lockable by a cylinder deadbolt.

**1005A.8.7** Doors operated by electrical means shall be provided with manual release capability from the interior, requiring no special effort or knowledge or key.

**1005A.8.8** Manually operated chain-driven garage doors shall require approval of the Authority Having Jurisdiction.

# Chapter 11
# RESERVED

*No San Francisco Building Code Amendments*

# Chapter 11A
# HOUSING ACCESSIBILITY

*No San Francisco Building Code Amendments*

# Chapter 11B
# ACCESSIBILITY TO PUBLIC BUILDINGS, PUBLIC ACCOMMODATIONS, COMMERCIAL BUILDINGS AND PUBLICLY FUNDED HOUSING

*No San Francisco Building Code Amendments*

*Add chapter as follows:*

# Chapter 11C
# RESERVED

*Add chapter as follows:*

# Chapter 11D
# MANDATORY ACCESSIBILITY IMPROVEMENTS FOR BUILDINGS WITH A PLACE OF PUBLIC ACCOMMODATION

## SECTION 1101D – SCOPE

Any building or portion of a building with a Place of Public Accommodation subject to the requirements of Chapter 11B of this Code is within the scope of this Chapter.

**Exception:** A building that was constructed under a building or site permit application filed on or after January 1, 2002.

A building constructed under the Building Code in effect on or after January 1, 2002 is presumed to be accessible to persons with disabilities and will be exempt from this Chapter 11D upon receipt by the Department of a written notice of exemption from the Owner or the Owner's authorized agent that provides a construction permit application number dated on or after January 1, 2002 and contact information for the Owner and/or Owner's authorized agent.

**1101D.1. Compliance with Federal or State Laws.** Nothing in this Chapter 11D is intended to relieve the Owner or the operator of a Place of Public Accommodation of their obligation to comply with the requirements of any Federal or State law, including but not limited to the Americans with Disabilities Act, or to modify or extend the time for compliance with any such law.

**1101D.2. Contractual Obligations.** Nothing in this Chapter 11D is intended to interfere with any contractual obligations between the Owner of a building within the scope of this Chapter and any lessee of space within the building.

## SECTION 1102D – DEFINITIONS

For the purposes of this Chapter 11D, the following definitions shall apply:

*"Accessible Entrance Route."* An identifiable path of travel by means of which a Primary Entry may be approached, entered and exited, and which connects the Primary Entry with an exterior approach (including any adjacent sidewalks, streets and parking areas).

*"Building Official."* The Director of the Department or the Director's designee.

*"California Construction-Related Accessibility Standards Compliance Act."* Sections 55.51 through 55.53 of the California Civil Code as amended from time to time.

*"California Historical Building Code."* Part 8 of Title 24, California Code of Regulations.

*"CASp Inspector."* A person who has been certified by the State of California as a certified access specialist authorized to inspect a Place of Public Accommodation for compliance with construction-related accessibility standards.

117

*"Checklist for Alterations to Commercial Store-front for Accessibility."* A Checklist developed by or with the input of City departments or agencies with review authority over the subject buildings.

*"Department."* The Department of Building Inspection.

*"Design Professional."* A "Registered Design Professional" as defined in Chapter 2 of the Building Code.

*"Disability Access Compliance Unit"* or *"Compliance Unit."* The Unit within the Department established under Section 1112D of this Chapter.

*"Equivalent Facilitation."* As defined in Chapter 2 of the Building Code.

*"Historic Resource."* A building designated pursuant to Articles 10 and 11 of the Planning Code, listed on or determined eligible for listing on the California Register of Historic Resources or the National Register of Historic Places, or that is a 'qualified historical building' as defined in the California Historical Building Code.

*"Inspector."* A CASp Inspector or a Design Professional approved by the Building Official as qualified to evaluate compliance with disability access requirements.

*"Owner."* The owner of a building within the scope of this Chapter 11D.

*"Place of Public Accommodation."* As defined in Chapter 2 of the Building Code and 42 USC Section 12181(7) of the Americans with Disabilities Act of 1990, as amended from time to time.

*"Primary Entry."* As defined in Chapter 2 of this Code, the principal entrance through which most people enter the building, as designated by the Building Official. If there are multiple commercial tenants or spaces, a building may have multiple Primary Entries.

*"Technically Infeasible."* As defined in Chapter 2 of the Building Code.

*"Technical Infeasibility."* A Code requirement is Technically Infeasible.

*"Unreasonable Hardship."* As defined in Chapter 2 of the Building Code. If the Building Official, or the Access Appeals Commission in any unreasonable hardship determination made under Section 1105D, determines that any of the factors that the Building Code requires to be considered in evaluating an Unreasonable Hardship request are not applicable because the required scope of work is limited to the disability access improvements mandated by this Chapter 11D, the Building Official or Access Appeals Commission may supplement the criteria by considering any applicable factor for determining what is an Undue Hardship or is Readily Achievable in Title III of the Americans with Disabilities Act (42 USC Sections 12181 - 12189) and its implementing regulations.

## SECTION 1103D – COMPLIANCE CATEGORIES

The Department shall assign each building within the scope of this Chapter 11D to one of the following four categories. If a building does not clearly fall within one of these categories, the Building Official shall assign it to the category he or she determines is the most appropriate. The Building Official's decision is appealable to the Building Inspection Commission pursuant to Section 77.3(b) of the Administrative Code.

**Category One: The Primary Entry or Entries and the Accessible Entrance Route(s) comply with Code requirements.** A building qualifies under Category One if any of the following descriptions applies:

(a)   A building or portion thereof was constructed or altered under a permit application filed prior to July 1, 1992 and all Primary Entries and Accessible Entrance Routes are in compliance with the requirements of the 1998 California Building Code.

(b)   A building or portion thereof was constructed or altered under a permit application filed on or after July 1, 1992, and prior to January 1, 2002, all Primary Entries and Accessible Entrance Routes are in compliance with the requirements of the 1998 California Building Code or a later Building Code in effect at the time of any permit application for a tenant improvement or other alteration, and the Department gave final approval of the accessible entry work under the construction permit or any alteration permits.

(c)   A building is eligible to use the California Historical Building Code, a permit application was filed on or after January 1, 1995, all Primary Entries and Accessible Entrance Routes are in compliance with the California Historical Building Code in effect at the time of the permit application, and the Department gave final approval of the accessible entry work under the construction permit or any alteration permits.

(d)   A building is within the scope of Chapter 4D of the Existing Building Code, which mandates earthquake retrofit of certain existing Wood-Frame Buildings, and the Owner elected pursuant to Section 1107D to comply with the requirements of this Chapter prior to the compliance deadlines in Table 1107D.

(e)   A building or portion thereof was altered, or is proposed to be altered, under a permit application filed on or after the effective date of this Chapter 11D and the Owner elected pursuant to Section 1107D to comply with the requirements of this Chapter prior to the compliance deadlines in Table 1107D.

**Category Two: There are no steps to the Primary Entry or Entries and one or more elements of the Primary Entry or Entries or the Accessible Entrance Route(s) do not comply with Code requirements.** A building qualifies under Category Two if any of the following descriptions applies:

(a)   A building or portion thereof was constructed or altered under a permit application filed prior to July 1, 1992, the building has a Primary Entry or Entries with no steps, and one or more elements of the Primary Entry or Entries or the Accessible Entrance Route(s) are not in compliance with the requirements of the 1998 California Building Code.

(b)   A building or portion thereof was constructed or altered on or after July 1, 1992 and prior to January 1, 2002, the building has a Primary Entry or Entries with no steps, and one or more elements of the Primary Entry or Entries or the Accessible Entrance Route(s) are not in compliance with the requirements of the 1998 California Building Code or a later Building Code in effect at the time of any permit application for a tenant improvement or other alteration, or the Department did not give final approval of the accessible entry work under the construction permit or any alteration permit.

(c)   A building is eligible to use the California Historical Building Code, a permit application was filed on or after January 1, 1995, the Primary Entry or Entries has no steps, and one or more elements of the Primary Entry or Entries or the Accessible Entrance Route(s) are not in compliance with the California Historical Building Code in effect at the time of permit application, or the Department did not give final approval of the accessible entry work under a construction permit or any alteration permit.

**Category Three: There is one step to the Primary Entry or Entries and one or more elements of the Primary Entry or Entries or the Accessible Entrance Route(s) do not comply with Code requirements.** A building qualifies under Category Three if the building or portion thereof was constructed or altered under a permit application filed prior to July 1, 1992, the Department gave final approval of the work under the permit, the building has a Primary Entry or Entries with one step and one or more elements of the Primary Entry or Entries or the

119

Accessible Entrance Route(s) are not in compliance with the requirements of the 1998 California Building Code.

**Category Four: The building has a Primary Entry or Entries with more than one step and one or more elements of the Primary Entry or Entries and/or the Accessible Entrance Route(s) do not comply with minimum Code requirements.** A building qualifies under Category Four if the building or portion thereof was constructed or altered under a permit application filed prior to July 1, 1992, the building has a Primary Entry or Entries with more than one step, and one or more elements of the Primary Entry or Entries or the Accessible Entrance Route(s) are not in compliance with the requirements of the 1998 California Building Code, or the Department did not give final approval of the accessible entry work under the construction permit.

# SECTION 1104D – INSPECTION AND SUBMISSION OF PRIMARY ENTRY COMPLIANCE CHECKLIST

**1104D.1. Category One Buildings.** The Owner of a building classified in Section 1103D as Category One shall obtain an inspection of the elements on the Department's Category One Primary Entry Compliance Checklist by an Inspector. On or before the time for compliance specified in Section 1107D , the Owner shall submit to the Department's Disability Access Compliance Unit a copy of the Checklist completed and signed by the person who performed the inspection and including his or her business contact information and a professional stamp, CASp number, or California State License Bureau contractor's license number, whichever is applicable.

If any elements on the Checklist are found by the Inspector or licensed general contractor to be not in compliance with the standards for accessible entries set forth in the applicable California Building Code or California Historical Building Code, or the Department did not give final approval of the accessible entry work, the noncomplying elements shall be clearly specified in detail, the building shall be reassigned by the Building Official to the appropriate Category, and the Owner shall comply with all requirements of that Category. The Building Official's decision is appealable to the Building Inspection Commission pursuant to Section 77.3(b) of the Administrative Code.

**Exception:** For Category One subcategories (d) and (e), the Building Official may waive the requirement for an inspection and submittal of the Checklist if the Building Official determines that an inspection or documents submitted under other permit applications are the equivalent of the inspection and Checklist submittal requirements of this Chapter 11D.

**1104D.2. Category Two Buildings.** The Owner of a building classified in Section 1103D as Category Two shall obtain an inspection of the elements on the Department's Category Two Primary Entry Compliance Checklist by an Inspector. On or before the time for compliance specified in Section 1107D , the Owner shall submit to the Department's Disability Access Compliance Unit a copy of the Checklist completed and signed by the person who performed the inspection and including his or her business contact information and a professional stamp or CASp number.

Each element on the Checklist found by the Inspector to be not in compliance with the applicable standards for accessible entries set forth in the applicable Building Code or California Historical Building Code, including a failure to obtain final Department approval of the accessible entry work, shall be specified in detail and one of the following four options selected by the Owner as the method by which the Owner will address the Code deficiency within the time specified for compliance in Section 1107D:

120

(a) **Option 1.** The Owner shall submit to the Disability Access Compliance Unit:

(1) Plans showing how the non-complying element or elements will be brought into full compliance with the applicable standards for accessible entries set forth in either the California Building Code or the California Historical Building Code, and

(2) If the Owner elects to use the California Historical Building Code, documentation showing that the building is qualified to use the California Historical Building Code.

The Owner must subsequently apply for and obtain a building permit to do the required work within the time specified for compliance in Section 1107D.

(b) **Option 2.** The Owner shall submit to the Disability Access Compliance Unit:

(1) Plans, drawings, or other documentation required by the Compliance Unit demonstrating that bringing the non-complying element or elements into full compliance with the applicable Code standards for accessible entries is Technically Infeasible, and

(2) Plans, drawings, a written explanation, or other documentation required by the Compliance Unit showing what Equivalent Facilitation will be provided.

The Owner must subsequently apply for and obtain a building permit to do the work required within the time specified for compliance in Section 1107D.

(c) **Option 3.** The Owner shall submit to the Disability Access Compliance Unit a Request for Approval of an Unreasonable Hardship form together with plans, drawings, a written explanation, or other documentation required by the Compliance Unit showing what Equivalent Facilitation will be provided. The Compliance Unit will review the request and either approve or deny it, and then forward the request and equivalency submittal information to the Access Appeals Commission for a hearing pursuant to Section 1110D and Section 105A.3.3 of this Code.

The Owner must subsequently apply for and obtain a building permit to do the work required within the time specified for compliance in Section 1107D.

(d) **Option 4.** The Owner shall submit to the Disability Access Compliance Unit a statement of intent to request a hearing by the Access Appeals Commission to review the matter pursuant to Section 1110D and Section 105A.3.3 of this Code.

The request for a hearing by the Access Appeals Commission shall be submitted pursuant to the procedures of Section 105A.3 of this Code and in sufficient time to obtain a decision prior to the other compliance timelines in Table 1107D.

**1104D.3. Category Three Buildings.** The Owner of a building classified in Section 1103D as Category Three shall obtain an inspection of the elements on the Department's Category Three Primary Entry Compliance Checklist by an Inspector (as defined in Section 1102D). On or before the time for compliance specified in Section 1107D , the Owner shall submit to the Department's Disability Access Compliance Unit a copy of the Checklist completed and signed by the person who performed the inspection and including his or her business contact information and a professional stamp or CASp number.

Each element on the Checklist found by the Inspector to be not in compliance with the applicable standards for accessible entries set forth in the applicable California Building Code or California Historical Building Code shall be specified in detail and one of the options set forth in Section 1104D.2 (a) through (d) selected by the Owner as the method by which the Owner will address the Code deficiency within the time specified for compliance in Section 1107D.

**1104D.4. Category Four Buildings.** The Owner of a building classified in Section 1103D as Category Four shall obtain an inspection of the elements on the Department's Category Four Primary Entry Compliance Checklist by an Inspector. On or before the time for compliance

specified in Section 1107D , the Owner shall submit to the Department's Disability Access Compliance Unit a copy of the Checklist completed and signed by the person who performed the inspection and including his or her business contact information and a professional stamp or CASp number.

Each element on the Checklist found by the Inspector to be not in compliance with the applicable standards for accessible entries set forth in the applicable California Building Code or California Historical Building Code shall be specified in detail and one of the options set forth in Section 1104D.2(a) through (d) selected by the Owner as the method by which the Owner will address the Code deficiency within the time specified for compliance in Section 1107D.

## SECTION 1105D – EQUIVALENT FACILITATION; TECHNICAL INFEASIBILITY, OR UNREASONABLE HARDSHIP

**1105D.1. Equivalent Facilitation.** The Department shall develop an Approved Barrier Removal Standard in consultation with the Access Appeals Commission, the Planning Department, and the Department of Public Works. The Disability Access Compliance Unit shall maintain the Approved Barrier Removal Standard and review any proposal for Equivalent Facilitation under this Chapter 11D for compliance with that Standard. Any proposal for Equivalent Facilitation that does not comply with the Approved Barrier Removal Standard must be approved by the Access Appeals Commission.

**1105D.2. Technically Infeasible.** A request for a finding that compliance is Technically Infeasible can be based upon either a structural or a non-structural condition.

(a)  **Structural Technical Infeasibility.** A structural Technical Infeasibility is an existing condition of the building where full compliance would require the removal or alteration of a load-bearing structural element that is an essential part of the structural frame.

(b)  **Non-structural Technical Infeasibility.** A non-structural Technical Infeasibility may include conditions where full compliance would require encroaching into the required egress width, interfering with pedestrian use of the sidewalk or a permanent easement, and similar conditions that do not impact the structural elements or frame. The Disability Access Compliance Unit shall compile a list of non-structural conditions that the Department would accept as supporting a request for a finding of Technical Infeasibility and provide other written guidance, and may require that a request based on a non-structural condition be ratified by the Access Appeals Commission pursuant to Section 105A.3.3 of this Code.

**1105D.2.1. Acceptance of previously-granted determinations of Technical Infeasibility.** Under the California Building Code, all findings of Technical Infeasibility must be documented by the Department and can only be made on a case-by-case basis. The Department will accept and record a previously-approved finding of Technical Infeasibility for a building within the scope of this Chapter 11D if: (1) the finding of Technical Infeasibility was approved by the Department and can be documented, (2) the finding of Technical Infeasibility is applicable to the elements covered by this Chapter 11D, and (3) an Inspector has submitted written documentation acceptable to the Department that all conditions and requirements of the Technical Infeasibility are unchanged and remain applicable.

**1105D.3. Unreasonable Hardship.** The Compliance Unit, in consultation with the Access Appeals Commission, shall develop and publish guidelines specifying the conditions under which an Unreasonable Hardship would be approved by the Department. All Unreasonable

Hardships must be ratified by the Access Appeals Commission pursuant to Section 11B-202.4, Exception 8, and Section 1.9.1.5 of the California Building Code.

# SECTION 1106D – BUILDING PERMIT REQUIRED; INSPECTION AND COMPLETION OF WORK; VALUATION APPLIED TO FUTURE PROJECTS; NOTICE TO TENANT(S)

**1106D.1. Building Permit Required.** A building permit is required to make any and all modifications to a building either mandated or authorized by this Chapter 11D. All work required by this Chapter 11D shall be considered by the Department to be barrier removal and no additional path of travel upgrade shall be required. Only those elements that are actually altered will be required to comply with the current requirements of this Code.

If a permit is required to remediate the entryway or the sidewalk, the Owner shall provide written notice to the business tenant or tenants of the building a minimum of 30 days prior to filing the permit application with the Department.

**1106D.1.1. Historic Resources.**

(a)   For a building considered to be a Historic Resource, the plans submitted with the building permit application shall be prepared in conjunction with a Design Professional and in compliance with the California Historical Building Code, requirements of the San Francisco Planning Department, and guidelines developed and published by the Compliance Unit.

(b)   As required by Articles 10 and 11 of the Planning Code, a permit application for a Historic Resource designated pursuant to Article 10 or 11 of the Planning Code must be approved by the Historic Preservation Commission unless delegated for review and approval without a hearing to Planning Department staff.

**1106D.2. Alteration Work That May Be Included in the Permit Application.** The only work that may be included in the permit required by Section 1106D.1 is: (a) the work to a Primary Entry or Accessible Entrance Route mandated by Section 1104D or (b) any voluntary disability access improvements authorized by Section 1109D.

**1106D.3. Inspection of Work.** All work completed by permit under Option 1 of Section 1104D .2 for Category Two, Category Three, and Category Four buildings shall be inspected by the Department's field inspector that is assigned to that district. If the work complies with requirements of this Chapter 11D, the inspector shall issue to the Owner a Certificate of Final Completion stipulating that the work complies with the requirements and shall provide a copy of the Certificate of Final Completion to the Disability Access Compliance Unit. Upon request, the Owner may obtain a final inspection and approval by a Department inspector who is certified as a CASp Inspector; the inspection fee set forth in Table IA-D of Section 110A of this Code shall apply.

All work completed by permit under Options 3 and 4 of Section 1104D.2 for Category Two, Category Three, and Category Four buildings shall be inspected by a Department CASp Inspector. If the work complies with requirements of this Chapter 11D, the inspector shall issue to the Owner a Certificate of Final Completion stipulating that the work complies with the requirements of this Chapter and shall list his or her CASp number where applicable on both the Certificate of Final Completion and the completed job card.

**1106D.4. Completion of Work; Certificate of Final Completion.** Notwithstanding any other provision of this Code, all work mandated by this Chapter 11D must be completed within the time periods specified in Section 106A.4.4 of this Code for Permit Expiration unless an

extension of time is granted pursuant to Section 1108D. Any Certificate issued by the Department upon final completion of the work required by this Chapter 11D shall state that compliance is with Chapter 11D of this Code and not with the requirements of either the Americans with Disability Act or the California Building Code.

**1106D.5. Valuation Applied to Future Projects.** As authorized by the Building Code, the valuation of both the mandatory and the voluntary disability access improvements performed under this Chapter 11D may be used to comply with path of travel upgrade requirements in Building Code Section 11B-202.4 Exception #8 of this Code for any future project within the same building of portion of a building for a period of time not to exceed four years from the completion date of the work; provided, however, that only the valuation of the work described in 1106D .2(a) or (b) shall be allowed for this purpose. In order to use the valuation of voluntary disability improvements for this purpose, the Owner must follow the recommended order of priority for making accessibility improvements set forth in Section 11B-202.4 of this Code.

# SECTION 1107D – COMPLIANCE SCHEDULE; OPTION TO COMPLY WITH CURRENT CODE REQUIREMENTS

The times for compliance with the requirements of this Chapter 11D are set forth in the following Table 1107D. The Owner of a building within the scope of this Chapter must submit all required forms, documents, and permit applications to the Department prior to the deadlines set forth in Table 1107D but may comply with the requirements of this Chapter 11D, or elect to comply with the requirements and procedures of the Building Code then in effect, at any time prior to the deadlines set forth in Table 1107D.

| *TABLE 1107D*<br>*COMPLIANCE SCHEDULE* | | | | |
|---|---|---|---|---|
| *Category* | *Category Description* | *Submit compliance Checklist and specify compliance Option* | *File application for required building permit(s)* | *Obtain required building permit(s)* [1] |
| Category One Buildings | In compliance | June 30, 2022 | N/A | N/A |
| Category Two Buildings | No steps but barriers | June 30, 2022 | December 31, 2022 | September 29, 2023 |
| Category Three Buildings | One step with barriers | June 30, 2022 | December 31, 2022 | September 29, 2023 |
| Category Four Buildings | 1+ step with other barriers | June 30, 2022 | December 31, 2022 | September 29, 2023 |

1. Pursuant to Section 1106D.4, all mandated work must be completed within the time periods specified in Section 106A.4.4 of this Code for Permit Expiration unless an extension of time of time is granted pursuant to Section 1108D

# SECTION 1108D – EXTENSIONS OF TIME

(a)   For good cause shown, the Building Official may grant one extension of time for up to six months from the compliance timelines in Table 1107D. For good cause shown, one or more additional extensions of time may be granted by the Access Appeals Commission pursuant to Section 1110D; provided, however, that in no event shall the Commission extend the time to complete the mandatory work required by this Chapter 11D beyond June 30, 2026. The Commission's decision shall be final.

(b)   A written request for an extension of time shall be submitted to the Department or to the Access Appeals Commission prior to the time for compliance.

(c)   For purposes of this Chapter 11D, good cause may include but is not limited to:

(1)   The pendency of a request for a finding of Equivalent Facilitation or Technical Infeasibility;

(2)   The desirability of coordinating the mandatory work required by this Chapter 11D with voluntary disability access improvements;

(3)   Financial hardship;

(4)   A legal hardship such as an existing lease; or

(5)   A undue procedural delay by the Department or another reviewing City agency.

## SECTION 1109D – VOLUNTARY DISABILITY ACCESS IMPROVEMENTS

In addition to the mandatory requirements of this Chapter 11D, the Owner may elect to make additional corrections to the building or a portion thereof to comply with other State or Federal disability access requirements.

## SECTION 1110D – APPEAL PROCEDURE

Any procedure provided under this Code to appeal accessibility issues is available in order to achieve compliance with this Chapter 11D. In addition, appeals to the Access Appeals Commission may be made in accordance with the provisions of this Chapter 11D and 105A.3 of this Code.

## SECTION 1111D – ENFORCEMENT

Whenever the Owner of a building within the scope of this Chapter 11D fails to undertake or complete any action required by this Chapter within the time for compliance set forth in Table 1107D, the Owner shall be considered to be in violation of this Code and the Building Official is authorized to abate the violation in accordance with Section 102A of this Code.

## SECTION 1112D – DISABILITY ACCESS COMPLIANCE UNIT

The Building Official shall establish within the Department a Disability Access Compliance Unit to enforce this Chapter 11D and to perform such other duties as the Building Official shall require. The Unit shall have at least one CASp Inspector from the Department and such other departmental employees as the Building Official deems appropriate. The Compliance Unit shall consult and coordinate with other City agencies with review authority over the permits necessary to comply with the requirements of this Chapter, including but not limited to the Planning Department and Department of Public Works, and any other City agencies that the Building Official determines are necessary or desirable to achieve the purposes of this Chapter.

The Compliance Unit shall track and maintain records; coordinate review of checklists, documents, and permits; provide information to the owners of buildings subject to this Chapter, tenants of said buildings, and members of the public; provide guidance, training and assistance to the Department's plan review staff and field inspectors; develop the informational material described in Section 1113D; and provide such progress reports on the effectiveness of this Chapter as the Compliance Unit deems appropriate or as the Building Official or the Access Appeals Commission may require.

## SECTION 1113D – COORDINATION WITH OTHER CITY AGENCIES; REPORT TO THE BOARD OF SUPERVISORS

**1113D.1. Coordination with Other Agencies.** The Department shall coordinate with the Planning Department, the Department of Public Works, and other City departments with review authority over the accessibility improvements mandated or authorized by this Chapter 11D, as well as with the Office of Small Business, the Mayor's Office on Disability, and other appropriate City agencies, to develop and implement (1) outreach tools, (2) pre-screening procedures, (3) methods to streamline the process, (4) proposed Code revisions, and (5) administrative bulletins, brochures, checklists, and guidelines or other documents to implement the purpose and objectives of this Chapter. The Checklist for Alterations to Commercial Storefront for Accessibility in existence on the effective date of this Chapter 11D, as amended from time to time, and other guidance documents shall be used to review and approve the disability access improvements mandated or authorized by this Chapter 11D.

**1113D.2. Report to the Board of Supervisors.** After consultation and coordination with other appropriate City departments and agencies, on or before January 31, 2024, the Department shall submit a report in writing to the Board of Supervisors concerning the effectiveness of this Chapter 11D and including recommendations, if any, for amendments to this Chapter. A progress report shall be submitted to the Board of Supervisors once a year thereafter until completion of this Chapter's disability access improvement program.

## SECTION 1114D – NOTICE

The Department shall post on its website the requirements of this Chapter 11D. The Department shall also prepare any administrative bulletins, brochures, or other materials that the Building Official determines are necessary or desirable to notify property owners and tenants about the requirements of this Chapter and shall coordinate with the Office of Small Business and, in the Building Official's discretion, other City departments concerning appropriate methods for providing notice about the requirements.

## ~~SECTION 1115D – [REPEALED.]~~

## Chapter 12
## INTERIOR ENVIRONMENT

## SECTION 1202 – VENTILATION

*1202.5 Add a second paragraph and a third paragraph as follows:*

In other than high-rise buildings, public corridors, public hallways and other public spaces having openings into adjoining dwelling units, guest rooms, or congregate residences within R-1 and R-2 Occupancies, shall be provided with natural ventilation by means of openable exterior openings with an area of not less than 1/25 of the floor area of such rooms or spaces with a minimum of 4 square feet (0.37 m$^2$).

In lieu of required exterior openings for natural ventilation, a mechanical ventilating system may be provided. Such system shall be capable of providing two air changes per hour in public corridors, public hallways and other public spaces having openings into adjoining dwelling units, guest rooms, or congregate residences with R-2 occupancies, with a minimum of 7-1/2 cubic feet per minute (3-1/2 L/s) of outside air per occupant during such time as the building is occupied.

*1202.6 Add a second paragraph as follows:*

For all buildings containing any sensitive land use located within the Air Pollutant Exposure Zone, as determined by the Director of Public Health pursuant to Article 38 of the San Francisco Health Code, that are:

(a)  Newly constructed;

(b)  Undergoing a "Major Alteration to Existing Building" as defined by the San Francisco Green Building Code; or

(c)  Applying for a San Francisco Planning Department-permitted Change of Use, such buildings shall incorporate an enhanced ventilation system designed and constructed to be in compliance with San Francisco Health Code Article 38.

## SECTION 1204 – LIGHTING

*1204.1 Add an exception after the first paragraph:*

**Exception:** Habitable rooms (excluding kitchens, home offices and media rooms) within a dwelling unit or congregate residence shall be provided with natural light by means of exterior glazed openings in accordance with Section 1204.2.

*1204.2.2 Add the following paragraphs after the Exceptions:*

The depth of all structural projections, including balconies, decks, porches, rooms or roofs, shall not exceed 9 feet (2.134 m) when extending over exterior wall openings that provide required natural light or natural ventilation for spaces intended for human occupancy.

The height of a balcony, deck or porch shall not be less than 7 feet (2.134 m) measured from the floor to the lowest projection above.

*1204.4 Revise this section as follows:*

**1204.4 Stairway Illumination.** Stairways within dwelling units and exterior stairways serving a dwelling unit shall have an illumination level on tread runs and landings of not less than 1 footcandle (11 lux). Stairways in other occupancies shall be governed by Chapter 10.

**Exception:** An artificial light source is not required at the top and bottom landing, provided an artificial light source is located directly over each stairway section.

# SECTION 1206 – SOUND TRANSMISSION

*1206 Add the following sections:*

**1206.6 Definitions.** The following definitions apply to Sections 1206.4 through 1206.9 of this Code.

*COMMUNITY NOISE EQUIVALENT LEVEL (CNEL)* is a metric similar to the Ldn, except that a 5 dB adjustment is added to the equivalent continuous sound exposure level for evening hours (7 p.m. to 10 p.m.) in addition to the 10 dB nighttime adjustment used in the Ldn.

*DAY-NIGHT AVERAGE SOUND LEVEL (Ldn)* is the A-weighted equivalent continuous sound exposure level for a 24-hour period with a 10 dB adjustment added to sound levels occurring during nighttime hours (10 p.m. to 7 a.m.).

*NORMALIZED A-WEIGHTED SOUND LEVEL DIFFERENCE (Dn)* means for a specified source room sound spectrum, the difference, in decibels, between the average sound levels produced in two rooms after adjustment to the expected acoustical conditions when the receiving room under test is normally furnished.

*1206.7 Exterior Sound Transmission Control.*

**1206.7 Exterior Sound Transmission Control.**

**1206.7.1 Application.** Residential structures located in noise critical areas, such as in proximity to highways, county roads, city streets, railroads, rapid transit lines, airports, nighttime entertainment venues, or industrial areas, shall be designed to prevent the intrusion of exterior noises beyond levels prescribed by the Municipal Code. Proper design to accomplish this goal shall include, but not be limited to, orientation of the residential structure, setbacks, shielding, and sound insulation of the building.

**1206.7.2 Allowable interior noise levels.** Interior noise levels attributable to exterior sources shall not exceed 45 dB in any habitable room. The noise metric shall be either the day-night average sound level (Ldn) or the community noise equivalent level (CNEL), whichever results in a higher measurement of noise level.

**1206.7.3 Other noise sources.** Residential structures to be located where the Ldn or CNEL exceeds 60 dB shall require an acoustical analysis showing that the proposed design will limit exterior noise to the prescribed allowable interior level. The Planning Department's map titled Areas Potentially Requiring Noise Insulations, and similar maps and guidance produced by the Planning Department, shall be used where possible to identify sites with noise levels potentially greater than 60 dB.

**1206.8 Compliance.**

(a)   Evidence of compliance with Section 1206.7 shall consist of submittal of an acoustical analysis report, prepared under the supervision of a person experienced in the field of acoustical engineering, with the application for a building permit. The report shall show topographical relationships of noise sources and dwelling sites, identification of noise sources and their characteristics, predicted noise spectra and levels at the exterior of the proposed dwelling structure considering present and future land usage, the basis or bases for the prediction (measured or obtained from published data), noise attenuation measures to be applied and an analysis of the noise insulation effectiveness of the proposed construction showing that the prescribed interior noise level requirements are met.

(b)   If interior allowable noise levels are met by requiring that windows be unopenable or closed the design for the structure must also specify a ventilation or air-conditioning system to provide a habitable interior environment. The ventilation system must not compromise the dwelling unit or guest room noise reduction.

**1206.9 Field Testing.**

(a)   When inspection indicates that the construction is not in accordance with the approved design, or that the noise reduction is compromised due to sound leaks or flanking paths, field testing may be required. A test report showing compliance or noncompliance with prescribed interior allowable levels shall be submitted to the building official.

(b)   Field measurements of outdoor sound levels shall generally follow the guidelines prepared by the American Society for Testing and Materials (ASTM) in ASTM E1014.

(c)   Field measurements of the A-weighted airborne sound insulation of buildings from exterior sources shall generally follow the guidelines prepared by the American Society for Testing and Materials (ASTM) in ASTM E966.

(d)   For the purpose of this Section 1206.9, sound level differences measured in unoccupied units shall be normalized to a receiving room reverberation time of one-half second. Sound level differences measured in occupied units shall not be normalized to a standard reverberation time.

**1206.10** The Department of Building Inspection shall consult with the Planning Department to ensure that notice to sponsors of residential development projects affected by Sections 1206.6 through 1206.9 are provided with notice of the requirements of this Section as soon as practicable in the project approval process.

## SECTION 1208 – INTERIOR SPACE DIMENSIONS

*1207.4 1208.4 Revise paragraph 1 of this section and add paragraphs 5 and 6 of this section as follows:*

**1208.4. Efficiency dwelling units.**  Efficiency dwelling units shall comply with the following:

1.   The unit shall be occupied by no more than two persons and have a living room of not less than 150 square feet of floor area. An additional 100 square feet (9.3 m²) of floor area shall be provided for each occupant of such unit in excess of two.

2.   The unit shall be provided with a separate closet.

3.   For other than Accessible, adaptable dwelling units, the unit shall be provided with a kitchen sink, cooking appliance and refrigerator, each having a clear working space of not less than 30 inches (762 mm) in front. Light and ventilation conforming to this code shall be provided.

4.   The unit shall be provided with a separate bathroom containing a water closet, lavatory and bathtub or shower.

5.   The total area of the unit shall be no less than 220 square feet, which area shall be measured from the inside perimeter of the exterior walls of the unit and shall include closets, bathrooms, kitchen, living, and sleeping areas.

6.   Subsections 1 - 5 apply only to new construction of a structure or building. For purposes of the preceding sentence, new construction shall mean the creation of an entirely new structure or building and shall not apply to improvement, renovation, rehabilitation, or any other change to an existing structure or building. Existing buildings or structures are subject only to Subsections 1 - 4 except that for purposes of Subsection 1 the unit shall have a living room of not less than 220 square feet (20.4 m²) of floor area for up to two occupants.

# SECTION 1210 – TOILET, BATHROOM AND LACTATION ROOM REQUIREMENTS

*1209 1210* Add ~~a section as follows~~ the following sections:

~~1209~~1210.4. **Baby diaper-changing accommodations.** At least one Baby Diaper-Changing Accommodation that is open and available for use by women and one that is open and available for use by men, or a single Baby Diaper-Changing Accommodation that is open and available for use by all genders, shall be installed and maintained in a newly constructed or substantially renovated Public Service Establishment at each floor level containing a toilet room available for use by the public.

*Exceptions:*

1.   A Baby Diaper-Changing Accommodation shall not be required if the Building Official, or his or her designee, determines that it cannot be installed and comply with City, State, or Federal laws relating to access to persons with disabilities, including Section 11B-226.4 of this Code.

2.   A Baby Diaper-Changing Accommodation shall not be required if the Building Official, or his or her designee, determines that the installation is infeasible due to spatial or structural limitations.

~~1209.4.1~~1210.4.1. **Definitions.** For purposes of this Section ~~1209~~1210.4, the following definitions shall apply.

"Baby Diaper-Changing Accommodation" shall mean a safe, sanitary, and convenient baby diaper- changing station, or similar amenity. Such accommodations may include, but are not limited to, work surfaces, stations, decks, and tables in women's and men's toilet rooms or all-gender toilet rooms.

"Public Service Establishment" shall mean a facility as specified in Subsections (2), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), and (13) of the definition of Place of Public Accommodation in Chapter 2 of this Code, but shall not include any such facility where entry by minors is prohibited by law.

"Substantially Renovated" shall be limited to renovation of a toilet room, and shall mean any addition, alteration, or repair project to toilet rooms, performed under a building permit with a cost of construction of $50,000 or more for renovation of one or more toilet rooms.

~~1209.4.2~~ 1210.4.2. **Signage.** Each Public Service Establishment subject to Section ~~1209~~ 1210.4 shall provide signage at or near its entrance stating "Baby Diaper-Changing Accommodation Inside." This signage shall be posted in compliance with Section 11B-216.2 of this Code. In a building encompassing multiple establishments and having a central directory, the location of all such accommodations shall be indicated on the directory.

~~1209.4.3~~ 1210.4.3. Nothing in this Section 1210.4 shall be construed as requiring or authorizing (1) a reduction in the number of toilet facilities that are required by Title 24 of the California Code of Regulations or (2) a reduction in the number of toilet facilities accessible to persons with disabilities that are otherwise required under either Title 24 of the California Code of Regulations or the Federal Americans with Disabilities Act.

~~1209.5~~ 1210.5. **Lactation Rooms.**

(a)   **Specifications.** A Lactation Room shall meet the following requirements. The room shall be at least 50 square feet. It shall include at least one electrical outlet per lactation station and an additional outlet per room for a refrigerator, a sink with hot and cold running water, and a door that can be locked from the inside. The room shall be located no more than 500 feet or within

two adjacent floors from the farthest employee workspace that it is designated to serve. The room shall meet all applicable local, state, and federal accessibility requirements, including requirements under the Americans with Disabilities Act and Chapter 11B of the ~~California~~ Building Code.

(b)   **Required Construction of Lactation Rooms.** A Project Sponsor shall construct Lactation Room(s) in buildings designated for Group A, B, E, F, I, M, or R-1 use as defined by Chapter 3 of the Building Code when there are tenant improvements of the building that meet the following criteria:

(1)   when there is tenant improvement project for the interior of the building, and

(2)   the gross square footage of the interior space designated for Employee only use (i.e., space not designated for public use) and included in the project is at least 15,000 square feet, and

(3)   the estimated cost of the project stated in the building application is over $1,000,000.

If these three requirements are met, the project shall include a Lactation Room(s), as follows:

| *Employee Occupancy Load of Building* | *Number of Lactation Rooms or Stations* |
|---|---|
| 50-150 | 1 |
| 151-300 | 2 |
| 301-500 | 3 |
| 501-1000 | 4 |
| 1001-2000 | 8 |
| 2001-4000 | 11 |
| For each additional 900 Employees in excess of 4000 | 1 |

If the tenant improvement project contains existing Lactation Rooms that comply with this Section, such rooms may fulfill the requirements of this subsection (b).

(c)   The requirement for a Lactation Room to have a sink, as specified by subsection (a) of this Section shall not apply where the project does not involve plumbing work.

(d)   **Lactation Stations.** Where multiple Lactation Rooms are required for a project under subsection (b), the Project Sponsor may fulfill the requirement by merging the required rooms and the square footage specified under subsection (a) and providing one room with multiple lactation stations or multiple rooms with multiple lactation stations. The total square footage provided must meet the minimum for the number of rooms required by subsection (b). The room(s) must otherwise satisfy the requirements of this Section ~~1209~~ 1210.5, except that only one sink is required in a room with multiple lactation stations.

(e)   **Other Requirements of Lactation Rooms.** Any Lactation Room required by this Section shall be designated for purposes of lactation and shall not be converted for any other use. Each room shall have a sign outside the door indicating that it is a Lactation Room. The sign shall comply with Section 11B-216.2 of the Building Code. The room may be temporarily used for purposes other than lactation only when the room is not being used by any employee to accommodate the employee's request for lactation accommodation under Article 33I of the Police Code. Each lactation station shall have an electrical outlet and each Lactation Room shall have one additional electrical outlet to accommodate a refrigerator for purposes of storing breastmilk.

(f)   For purposes of this Section ~~1209~~ 1210.5, "Project Sponsor" means the party that constructs the tenant improvements for an end user's occupancy.

## Chapter 13
## ENERGY EFFICIENCY

*No San Francisco Building Code Amendments*

*Add chapter~~s~~ as follows:*

# Chapter 13A
# COMMERCIAL WATER CONSERVATION

*(**NOTE:** The time limits for compliance with the provisions of Chapter 13A have passed but the ordinance and the time limits therein are still in effect.)*

## SECTION 1301A – TITLE

This chapter shall be known as the "Commercial Water Conservation Ordinance."

## SECTION 1302A – INTENT

It is the intent of this chapter to conserve existing water supplies by managing the overall demand for water in commercial buildings, including tourist hotels and motels, by requiring the installation of water conservation devices in commercial buildings upon the occurrence of specific events and in any event no later than January 1, 2017.

## SECTION 1303A – DEFINITIONS

For the purpose of this chapter, certain terms are defined as follows:

*ACCESSIBLE* means there is sufficient space in which to install the specified water and energy conservation measure without significant alteration to the structure. For ducts, plenums or pipes, "accessible" shall mean all ductwork, plenums or pipes located in mechanical rooms, on roofs and around all air handling units. In addition, pipes located above movable ceiling panels shall be considered accessible, but not ducts or plenums.

*ACCESSIBLE ATTIC SPACE* means a space between a ceiling joist and roof rafter where the vertical clear height from the top of the bottom chord of the truss or ceiling joist to the underside of the roof sheeting at the roof ridge is greater than 18 inches (957 mm).

*BUILDING OCCUPANCY* means *OCCUPANCY* as defined in Chapter 3 of this code and shall also, where practicable, include the primary business activity of the property as classified by Standard Industrial Classification (SIC).

*BUILDING TYPE* means the type of building construction, as defined in Chapter 6 of this code, and shall take into consideration whether the building is a high-rise building as defined by Section 403 of this code.

*COMMERCIAL BUILDING* means any privately owned building except those residential buildings and portions of mixed residential- commercial buildings that are subject to the energy or water conservation requirements of Chapter 12 or Chapter 12A of the San Francisco Housing Code (Residential Energy Conservation Ordinance and Residential Water Conservation Ordinance).

132

*COST-EFFECTIVE* means having a simple economic payback that does not exceed four years or the expected life of an energy conservation measure, whichever is shorter.

*ESTABLISHED CONTRACTOR'S COST* means the contractor's fee, including labor and material, plus the engineer's fee to do the required work, provided that the engineer's fees do not exceed the schedule of fees provided by the Building Official.

*PERMIT APPLICANT* means the person listed on the building permit application as the owner or lessee of the building.

*QUALIFIED INSPECTOR* means an inspector defined in Section 1314A, who is authorized to perform a water conservation inspection.

*QUALIFIED PROFESSIONAL* means a person regularly engaged in the field of making repairs, adjustments and inspection of energy-using equipment contained in HVAC, lighting or service hot water systems.

*SERVICE HOT WATER* means the supply of hot water for domestic or commercial purposes other than comfort heating.

*SIMPLE ECONOMIC PAYBACK* means the time needed to recover a conservation investment on the basis of expected energy savings at current energy costs. Simple economic payback is expressed in years, and is calculated by dividing the established contractor's cost of a conservation measure by the estimated dollar savings in the first year. Available tax credits, incentives and future energy costs are not considered in the calculation.

*WATER CONSERVATION INSPECTION* means inspection of a commercial building for compliance with the requirements of this chapter.

## SECTION 1304A – RULES AND GUIDELINES

**1304A.1 Adopt rules.** The Building Official, in cooperation with the General Manager of the Public Utilities Commission and other advisors as the Building Official may deem appropriate, shall adopt reasonable rules and guidelines implementing the provisions and intent of this chapter and shall make them available to the public along with the informational brochure described in Section 1307A. The Building Official, in cooperation with the General Manager of the Public Utilities Commission, may amend these rules and guidelines from time to time after considering public input.

**1304A.2 Inspection procedures.** The Building Official shall include coverage of this chapter's requirements in the Water Inspection Procedures established by the Department.

## SECTION 1305A – CIVIL REMEDIES

**1305A.1 Abatement.** A commercial building shall constitute a nuisance under the terms of Section 102A of this code when the installation of a water conservation measure in a commercial building is required pursuant to this chapter and the water conservation measure has not been installed.

The nuisance shall be abated by civil action pursuant to procedures set forth in Section 102A of this code for unsafe buildings; provided, however, that in no event shall any violation constitute a misdemeanor.

## SECTION 1306A – REQUIREMENTS

**1306A.1 Building additions.** For building additions where the sum of concurrent building permits by the same permit applicant would increase the floor area of the space in a building by

more than ten percent, the permit applicant shall obtain a valid water conservation inspection and shall comply with the applicable water conservation measures required by this chapter as a condition for issuance of a Certificate of Final Completion and Occupancy by the Department upon completion of the addition.

**1306A.1.1 Scope.** This subsection shall apply to the entire building.

**1306A.2 Building alterations and improvements.**

**1306A.2.1** For alterations or improvements where the total construction cost estimated in the building permit is greater than $150,000, as a condition for issuance of a Certificate of Final Completion and Occupancy, or final permit sign off, by the Department upon completion of the alterations or improvements, the permit applicant shall obtain a valid water conservation inspection and shall install the applicable water conservation devices required by this chapter that serve the specific area of alteration or improvement.

**1306A.2.2** Notwithstanding Section 1306A.2.1, for any alterations or improvements to a room containing any of the water conservation devices identified in Section 1313A, as a condition for issuance of a Certificate of Final Completion and Occupancy or final permit sign off by the Department upon completion of the alterations or improvements, the permit applicant shall install the applicable water conservation devices required by this chapter in that room.

**1306A.3** On or before January 1, 2017, all commercial buildings shall be in compliance with this chapter, and the owner or the owner's authorized representative shall cause a water conservation inspection to be completed, and shall have a certificate of compliance on file with the Department for the entire building, or the entire portion of the mixed residential and commercial building that is subject to the required water compliance measures identified in Section 1313A.

## SECTION 1307A – INFORMATIONAL BROCHURE

**1307A.1** The Department shall make available to the public an informational brochure specifying the water conservation requirements.

## SECTION 1308A – POSTPONEMENTS OF REQUIREMENTS

**1308A.1 Postponement for demolition.** The duty of an owner or permit applicant to comply with inspection and water conservation requirements applicable to any portion of a building subject to this chapter shall be postponed for one year from the date of issuance of a demolition permit for said building. If the building is demolished and a certificate of completion is issued by the Department before the end of the one-year postponement, the requirements of this chapter shall not apply. If the building is not demolished after the expiration of one year, the provisions of this chapter shall apply, subject to appeal, even though the demolition permit is still in effect or a new demolition permit has been issued.

## SECTION 1309A – EARLY COMPLIANCE WITH WATER CONSERVATION MEASURES

**1309A.1 Early compliance.** To encourage early compliance with the requirements of this chapter, compliance pursuant to Section 1311A may be completed at any time before compliance would otherwise be required. In the event of early compliance, a water conservation inspection shall be completed and a certificate of compliance shall be filed with the Department in accordance with Section 1311A.

# SECTION 1310A – WATER CONSERVATION INSPECTIONS

**1310A.1 Inspections.** A water conservation inspection which satisfies the requirements of this chapter shall be performed as required by this chapter.

# SECTION 1311A – PROOF OF COMPLIANCE WITH WATER CONSERVATION MEASURES

**1311A.1 Inspection form.** The Department shall provide standardized forms, that may be paper and/or electronic suitable for conducting a valid water conservation inspection and certifying compliance with the requirements of this chapter. The inspection form shall be completed and signed by a qualified inspector, furnished to the permit applicant, building owner or the owner's authorized representative, and submitted to the Department in accordance with this Section.

**1311A.2 Certificate of compliance.** When all of the water conservation requirements have been met, a certificate of compliance shall be signed and submitted to the Department.

**1311A.3 Public records.** Water conservation inspection results and certificates of compliance shall be public information, shall be available for inspection by any interested person during regular business hours at the Department, and may be made available electronically via the internet.

**1311A.4 Fees.** Reasonable fees may be required to pay for, but not exceed, the costs of implementing this chapter. Such fees shall be established by the Board of Supervisors upon recommendation of the Director of the Department and shall include:

1. The cost of inspections performed by the Department;
2. The cost of the appeal process and the request for exemption process;
3. The cost of filing and processing documents at the Department;
4. The cost of printing forms and informational brochures by the Department;
5. Other expenses incurred by the City and County of San Francisco in implementing this Chapter.

**1311A.4.1 Fee schedule.** See Building Code Section 110A, Table 1A-N for the applicable fees, once established.

**1311A.4.2 Fee review.** The Director of the Department of Building Inspection shall cause an annual report of fees to be made and filed with the Controller as set forth in Section 3.17-2 of the San Francisco Administrative Code. The Controller shall review the report and file it with the Board of Supervisors along with a proposed ordinance readjusting the fee rates as necessary.

# SECTION 1312A – APPEALS FROM RESULTS OF A WATER CONSERVATION INSPECTION OR REQUEST FOR EXEMPTION

**1312A.1 Notice of appeal.** Any person with an interest in the property subject to a water conservation inspection who contests the determination of a qualified inspector regarding required water conservation measures may appeal said decision to the Director within ten working days from the date the completed inspection form was filed with the Department. The notice of appeal shall state, clearly and concisely, the grounds upon which the appeal is based. The burden of proof shall be on the applicant to demonstrate that the water conservation measure is not required under this chapter. The determination of the Director may be appealed to the

Building Inspection Commission pursuant to the appeal procedures established in the Administrative Code Chapter 77.

**1312A.2 Exemptions.** Any person with an interest in the property subject to a water conservation inspection who claims an exemption pursuant to Section 1313A.3 and 1313A.4 of this chapter may request a determination of exemption from the Director by filing the request and stating the basis for the claim. The burden of proof shall be on the applicant to demonstrate the qualifications for the exemption. The determination of the Director may be appealed to the Building Inspection Commission pursuant to the appeal procedures established in the Administrative Code Chapter 77. Any appeal or request for exemption to the Director pursuant to this Section shall be accompanied by payment of a filing fee, pursuant to Section 1216 of the San Francisco Housing Code.

# SECTION 1313A – REQUIRED WATER CONSERVATION MEASURES

The following water conservation measures are required for commercial buildings:

**1313A.1 Showerheads.** Replace all showerheads having a maximum flow rate exceeding 2.5 gallons (9.46 liters) per minute, with showerheads not exceeding the maximum flow rate established by the California Energy Commission, as set forth in the Appliance Efficiency Regulations, California Code of Regulations, Title 20, Sections 1601 to 1608, as it may be amended. Showers shall have no more than one showerhead per valve. For purposes of this subsection, the term "showerheads" includes rain heads, rain tiles, or any other fitting that transmits water for purposes of showering.

**1313A.2 Faucet aerators.** Replace all faucets and faucet aerators having a maximum flow rate exceeding 2.2 gallons per minute at a water pressure of 60 pounds per square inch, with plumbing fittings not exceeding the maximum flow rate established by the California Energy Commission, as set forth in the Appliance Efficiency Regulations, California Code of Regulations, Title 20, Sections 1601 to 1608, as it may be amended. Health-care facilities that are required by this chapter to install faucet aerators may satisfy that requirement by installing other flow restricting devices, such as laminar flow control devices.

**1313A.3 Water closets.** Replace all water closets that have a rated water consumption exceeding 1.6 gallons per flush with fixtures not exceeding the rated maximum water consumption established in the San Francisco Plumbing Code Chapter 4, Section 402.2, as it may be amended. An owner of a commercial building may request an exemption from replacing a water closet in the building if the replacement would detract from the historical integrity of the building, as determined by the Director of the Department of Building Inspection pursuant to the California Historic Building Code and Section 1312A.2.

**1313A.4 Urinals.** Replace all urinals that have a flow rate exceeding one gallon per flush with fixtures not exceeding the maximum flow rate established in the San Francisco Plumbing Code, Section 402.3, as it may be amended. An owner of a commercial building may request an exemption from replacing a urinal in the building if the replacement would detract from the historical integrity of the building, as determined by the Director of the Department of Building Inspection pursuant to the California Historical Building Code and Section 1312A.2.

**1313A.5 Leak repair.** All water leaks shall be located and repaired. To determine the existence of leaks, the following is required.

136

1.  Visual inspection or water meter registration. If water meter registration is used, compliance is achieved if there is no meter movement for ten minutes while all fixtures are shut off.

2.  All tank type water closets shall be tested with leak detector tablets or dye to detect slow valve leaks and all flushometer type fixtures shall be visually checked for proper operation with respect to timing and leaks.

# SECTION 1314A – WATER CONSERVATION INSPECTIONS

**1314A.1 Inspections.** Inspections to determine compliance with the water conservation requirements of this chapter may be conducted by one of the following:

1.  An authorized inspector of the Department;

2.  A private inspector authorized by the Building Official pursuant to established rules and guidelines;

3.  A private inspector hired by the Department, or Public Utilities Commission, on a contractual basis under terms and fees to be recommended by the Departments and established by the Board of Supervisors.

**1314A.2 Qualified inspector duties.** The duties of a qualified inspector shall be as follows:

1.  To inspect portions of a building that are subject to this chapter to determine whether the water conservation standards specified in Section 1313A have been met and, if met, to sign a certificate of compliance, pursuant to Section 1311A, and to furnish it to the permit applicant, building owner or owner's agent;

2.  To record on an official inspection form, pursuant to Section 1311A, all measures required by this chapter for which the building is in noncompliance, and to sign the inspection form and furnish it to the permit applicant, building owner or owner's agent.

**1314A.3 Private water inspectors.** Private inspectors shall be required to demonstrate financial responsibility by being insured and/or bonded in amounts to be determined by the Building Official.

**1314A.4 Conflict of interest.** No authorized inspector may conduct a water inspection on any building in which that inspector has a financial interest. For the purposes of this section, an inspector shall be deemed to have a financial interest in a building if the inspector:

1.  Is an owner of the building or the property upon which the building is located in full or in part;

2.  Is a full- or part-time employee of the building or its owners;

3.  Is regularly placed on the building staff by a company that provides building engineering, operations and maintenance, or other building services to the property.

**1314A.5 Inspector as employee.** No inspector may approve a certificate of water conservation compliance for a building where that inspector is an employee or officer of a company that performed construction or repair work required by this chapter.

**1314A.6 Limitation.** Water conservation inspections are intended to enforce the provisions of this chapter only, and are not intended to determine compliance or noncompliance with any other portions of this code.

*Add chapter as follows:*

# Chapter 13B
# CONSTRUCTION AND DEMOLITION DEBRIS RECOVERY PROGRAM

## SECTION 1301B – TITLE

This chapter shall be known as the "Construction and Demolition Debris Recovery Program."

## SECTION 1302B – RECOVERY OF CONSTRUCTION AND DEMOLITION DEBRIS

Under the requirements set forth herein and in Chapter 14 of the Environment Code, all construction and demolition debris in amounts of one cubic yard or greater generated in the course of a construction or demolition project must be transported off the site by a registered transporter, unless transported by the owner of the site, and handled, processed and otherwise managed by a registered facility for recovery of the materials. All persons subject to these requirements, including an applicant for any building or demolition permit shall comply with the requirements for construction and demolition debris recovery set forth in Chapter 14 of the Environment Code.

## SECTION 1303B – DEFINITIONS

*"Construction and demolition debris"* shall mean building materials and solid waste generated from construction and demolition activities, including, but not limited to, fully-cured asphalt, concrete, brick, rock, soil, lumber, gypsum wallboard, cardboard and other associated packaging, roofing material, ceramic tile, carpeting, fixtures, plastic pipe, metals, tree stumps, and other vegetative matter resulting from land clearing and landscaping for construction, deconstruction, demolition or land developments. This term does not include refuse regulated under the 1932 Refuse Collection and Disposal Initiative Ordinance or sections of the Municipal Code that implement the provisions of that ordinance; materials from the public right-of-way; or, unless specified in Chapter 14 of the Environment Code, materials source separated for reuse or recycling. Hazardous waste, as defined in California Health and Safety Code section 25100 *et seq.*, as amended, is not Construction and Demolition Debris for purposes of this Chapter.

*"Registered Transporter"* or *"Registered Facility"* shall mean a person who holds a valid registration issued by the Director of the Department of the Environment pursuant to Chapter 14 of the Environment Code. *"Transporter"* does not include a person that owns and operates only vehicles with no more than two axles and no more than two tires per axle.

## SECTION 1304B – PERMIT CONDITION

The provisions of Chapter 14 of the Environment Code and any approvals or conditions imposed in writing by the Department of the Environment are conditions of the permit issued by the Department under Section 106A.1, and a violation of Chapter 14 or such approvals or conditions shall be deemed non-compliance with the permit.

## SECTION 1305B – PERMIT NOTIFICATION

Permit application materials shall bear notice of and reference to the above requirements and the owner's responsibility for compliance with such requirements.

---

*Add chapter as follows:*

---

# Chapter 13C
# [RESERVED]

**Note:**
*For Green Building Requirements, see the San Francisco Green Building Code.*

---

*Add chapter as follows:*

---

# Chapter 13D
# COMMERCIAL LIGHTING EFFICIENCY

The City and County of San Francisco adopts the following Chapter 13D for the purpose of reducing public demand for electricity and the associated detriment to the environment of energy production and delivery by requiring commercial buildings to install or adopt more energy efficient lighting measures.

## SECTION 1301D – TITLE

This Chapter shall be known as the "Commercial Lighting Efficiency Ordinance."

## SECTION 1302D – PURPOSE

The purpose of this Chapter is to reduce public demand for electricity and the associated detriment to the environment of energy production and delivery by requiring commercial buildings to install or adopt more energy efficient lighting measures.

## SECTION 1303D – SCOPE

The provisions of this Chapter shall apply to all privately owned non-residential buildings, including school facilities, the non-residential portions of mixed-use commercial and residential buildings, tourist hotels, and the common areas of residential hotels and multiple-unit residential buildings, all as herein defined.

**EXCEPTIONS:**
The provisions of this Chapter do not apply to:
1.  Residential buildings and residential hotels, except that it shall apply to their common areas.
2.  The residential portions of mixed-use commercial and residential buildings, except that it shall apply to their common areas.

## SECTION 1304D – DEFINITIONS

For the purpose of this Chapter, certain terms are defined as follows:

139

**COMMERCIAL BUILDING** is any privately owned building that is occupancy group A, B, E, F, H, I, L, M or S as defined in this Code and any tourist hotels, as herein defined. When a building is designated for more than one type of occupancy, **"Commercial Building"** shall mean those spaces within the mixed use building designated as A, B, E, F, H, I, L, M or S or tourist hotel, as herein defined. Except for tourist hotels as herein defined, **"Commercial Building"** shall include only the common areas of any R ("residential") occupancy buildings for the common areas of any R ("residential") occupancy portions of mixed use buildings.

**COMMON AREA** is any area, space or room of a building that is made available to the general public as either a client or guest.

**DIRECTOR** is the Director of the Department of Building Inspection, or his or her designee.

**EXIT SIGNS** are signs located and illuminated as required by the Building Code.

**LINEAR FLUORESCENT LAMP** is a "tube" or "bulb" formed in a straight shape, as distinguished from a circular or u-shape, but not including linear specialty lamps such as black lights.

**LUMEINAIRE** is an interior or exterior complete lighting unit, including internally or externally illuminated signs, consisting of the lamp and the parts designed to distribute the light, to protect the lamp, and to connect the lamp to the power supply, but not including illuminated utilization equipment or exit signs as defined herein.

**OCCUPANCY SENSOR CONTROL DEVICE** is a device that automatically turns off a luminaires or series of luminaires not more than 30 minutes after it senses that the area is vacated.

**TOURIST HOTEL** is any residential building, or portion thereof, which is occupied as a hotel, motel or inn and which has a certificate of use for tourist occupancy, or any portion of a residential building which is converted to tourist hotel use pursuant to the Residential Hotel Conversion Ordinance (S.F. Administrative Code, Article 41) or other City law.

**UTILIZATION EQUIPMENT** is commercial, retail or industrial equipment, including but not limited to refrigeration equipment, fully enclosed retail display cases, vending machines, printing equipment or conveyors, which uses 4-foot or 8-foot linear fluorescent lamps as an integral part of such equipment. "Utilization Equipment" shall not include furniture or workstations.

## SECTION 1305D – COMPLIANCE REQUIREMENTS

**1305D.1 Compliance Deadline.** No later than December 31, 2011 ("Compliance Deadline"), the owner of each building subject to this Chapter shall self-certify that the entire building meets the standards specified in this Chapter 13D, and if the building is not certified, the building owner shall make such repairs as may be required to conform to this Chapter.

**1305D.2 Stay of compliance deadline.** The Compliance Deadline stated in Section 1305D.1 shall be stayed for up to two years from the date of an application for a demolition permit for any building subject to this Chapter. If the building is demolished and a Certificate of Completion issued by the Department before the end of the two-year postponement, the requirements of this Chapter shall not apply. If the building is not demolished after the expiration of two year, the provisions of this Chapter 13D shall apply even though the demolition permit is still in effect or a new demolition permit has been issued.

## SECTION 1306D – LIGHTING EFFICIENCY MEASURES

**1306D.1. Mercury Content.** The mercury content of each 4-foot linear fluorescent lamp installed after the Compliance Deadline in a luminaires in a building subject to this Chapter shall not exceed 5 mg. The mercury content of each 8-foot linear fluorescent lamp installed after the Compliance Deadline in a luminaires in a building subject to this Chapter shall not exceed 10 mg.

**1306D.2. Energy efficiency.** The lamp and ballast system in each luminaire that utilizes one or more 4-foot or 8-foot linear fluorescent lamp to provide illumination in a building subject to this Chapter 13D must meet at least one of the following requirements:

1.   The lamp and ballast system emits 81 or more lumens per watt of electricity consumed.

2.   The luminaire is controlled by an occupancy sensor control device that does not control an area in the building of more than 250 square feet.

3.   The luminaire is fitted with a lighting efficiency measure approved by the Director as equivalent to the measures in subsection (1) or (2).

4.   The Director finds, based on the facts of the particular building and luminaire, that the energy savings from installing lighting efficiency measures meeting the requirements of this Section will be so insignificant over the life of the luminaire that the measure is not cost efficient.

5.   If the owner of a Commercial Building elects to meet the requirements of this Section 1306D.2 with measures that require permits, such permits shall comply with all other applicable requirements of this Code and all other applicable state and local laws.

## SECTION 1307D – ENFORCEMENT

Any building maintained in violation of this Chapter shall constitute a public nuisance under the terms of Section 102A of this Code and such nuisance may be abated pursuant to the procedures set forth in Section 102A of this code for unsafe buildings.

## SECTION 1308D – RULES

The director, after consulting with the Department of the Environment, and in accordance with Section 104A.2.1 of this Code, shall adopt, and may amend, reasonable rules, guidelines and forms for implementing the provisions and intent of this Chapter.

## SECTION 1309D – UNDERTAKING FOR THE GENERAL WELFARE

In undertaking the enforcement of this Chapter, the City and County of San Francisco is assuming an undertaking only to promote the general welfare. It is not assuming, nor is it imposing on its officers and employees, an obligation for breach of which it is liable in money damages to any person who claims that such breach proximately caused injury.

## SECTION 1310D – PREEMPTION

Nothing in this Chapter shall be interpreted or applied so as to create any power or duty in conflict with any federal or state law or regulation.

## SECTION 1311D – SEVERABILITY

If any provision or clause of this Chapter or the application thereof to any person or circumstance is held to be unconstitutional or to be otherwise invalid by any court of competent jurisdiction, such invalidity shall not affect other provisions, and clauses of this Chapter are declared to be severable.

## Chapter 14
## EXTERIOR WALLS

## SECTION 1402 – PERFORMANCE REQUIREMENTS

*1402.8* 1402 *Add a section as follows:*

**1402.8 Projections and appendages.** Provisions shall be made at the outer edge of all projections and appendages to control rainwater backflow under the projection. Ventilation shall be provided for all enclosed spaces of exposed soffits, bays and other projections in wood framed construction.

Where an uncovered balcony or deck with an impervious surface exceeds 200 square feet (18.58 m$^2$) in area, drainage shall be conveyed directly to a building drain or building sewer or be conveyed to an approved alternate location based on approved geotechnical and engineering design.

## Chapter 15
## ROOF ASSEMBLIES AND ROOFTOP STRUCTURES

## SECTION 1501 – GENERAL

*1501.1 Add a second paragraph as follows:*

For qualified historical buildings or properties, see ~~2019~~ 2022 California Historical Building Code.

## SECTION 1502 – ROOF DRAINAGE

*1502.1 Add a second paragraph as follows:*

All storm- or casual water from roof areas which total more than 200 square feet (18.58 m$^2$) shall drain or be conveyed directly to the building drain or storm drain or to an approved alternate location based on approved geotechnical and engineering design. Such drainage shall not be directed to flow onto adjacent property or over public sidewalks. Building projections not exceeding 12 inches (305 mm) in width are exempt from drainage requirements without area limitations.

## SECTION 1505 – FIRE CLASSIFICATION

*1505.1 Revise the second sentence as follows:*

**1505.1 General.**
Class A  **[← ]**  or B  **[← ]**  roof assemblies and roof coverings required to be listed by this section shall be tested in accordance with ASTM E108 or UL 790.

*1505.1 Add the following at the end of the first paragraph:*

Class B or better roof coverings shall be used on all buildings.

*1505.1 Add the following second exception:*

2.   Detached accessory structures with a roof of less than 200 square feet (18.58 m$^2$) may have roof coverings of Class A, B or C.

*Table 1505.1 Revise the table as follows:*

**TABLE 1505.1 – MINIMUM ROOF COVERING CLASSIFICATION FOR TYPES OF CONSTRUCTION**

| *IA* | *IB* | *IIA* | *IIB* | *IIIA* | *IIIB* | *IV* | *VA* | *VB* |
|------|------|-------|-------|--------|--------|------|------|------|
| B | B | B | B | B | B | B | B | B |

# SECTION 1507 – REQUIREMENTS FOR ROOF COVERINGS

*1507.8 1507.8.5 Add the following sentence at the end of the paragraph:*

Untreated wood shingles shall not be permitted.

*1507.9 1507.9.6 Add the following sentence at the end of the paragraph:*

Untreated wood shakes shall not be permitted.

# SECTION 1511 – ROOF TOP STRUCTURES

*1510.2.2 1511.2.2 Add the following sentence at the end of this section:*

Penthouses shall be of a size no larger than the minimum clearances required for the mechanical equipment to be installed or no larger than the vertical shaft opening in the roof.

*1510.10 1511 Add the following section:*

**1510.10 1511.10 Occupied Rroof decks.** Occupiable roof decks Mmay be constructed of wood when the following conditions are met:

1.   The occupied roof deck is less than 500 square feet (46.45 m$^2$) in area.
2.   The deck boards are spaced not greater than 1/8 inch (3.2 mm) apart.

3.   Any open space around the perimeter between the deck and the roof surface shall be enclosed to within 1 inch (25.4 mm) of the roof surface.

4.   The decking is constructed of fire-retardant- treated wood approved for exterior use, or 2-inch (50.8 mm) nominal all heart redwood. Guardrails and fences may be constructed of any material permitted by this code.

5.   The deck is installed on top of a Class A or B fire-resistive roof assembly. The deck shall not be considered part of such roof assembly.

## Chapter 16
## STRUCTURAL DESIGN

## SECTION 1604 – GENERAL DESIGN REQUIREMENTS

*1604.11 Add the following section:*

**1604.11 Earthquake Recording Instrumentation.** The City and County of San Francisco adopts Appendix L.

## SECTION 1607 – LIVE LOADS

*Table 1607.1 Add the following footnote p to Occupancy or Use 29, Sidewalks and Driveways*

~~p   Driveways subject to vehicle loading shall be designed in accordance with the American Association of State Highway and Transportation Officials (AASHTO) HS-20 Standard Specification for Highways and Bridges. Sidewalks subject to vehicle loading shall be designed for a concentrated load of 10,000 pounds placed upon any space 2½ feet (762 mm) square, wherever this load upon an otherwise unloaded sidewalk would produce stresses greater than those caused by the uniform load of 250 psf required therefor.~~

*1607.20 Revise this section as follows:*

**1607.20 Sidewalks, vehicular driveways, and yards subject to trucking or vehicle loading.** The live loading indicated in Table 1607.1 for sidewalks, vehicular driveways, and yards subject to trucking or vehicle loading shall comply with the requirements of this section.

*1607.20 Add the following section:*

**1607.20.3 Driveways and sidewalks subject to vehicle loading.** Driveways subject to vehicle loading shall be designed in accordance with the American Association of State Highway and Transportation Officials (AASHTO) HS-20 Standard Specification for Highways and Bridges. Sidewalks subject to vehicle loading shall be designed for a concentrated load of 10,000 pounds placed upon any space 2½ feet (762 mm) square, wherever this load upon an otherwise unloaded sidewalk would produce stresses greater than those caused by the uniform load of 250 psf required therefor.

## Chapter 16A
## STRUCTURAL DESIGN

*No San Francisco Building Code Amendments*

# Chapter 17
# SPECIAL INSPECTIONS AND TESTS

## SECTION 1704 – SPECIAL INSPECTIONS AND TESTS, CONTRACTOR RESPONSIBILITY AND STRUCTURAL OBSERVATION

*1704.2 Replace Exception 2 as follows:*

2.   The special inspections and verifications for foundation concrete, other than cast-in-place drilled piles or caissons, are not required for occupancies in Group R-3 and occupancies in Group U that are accessory to a residential occupancy, but not limited to, those listed in Section 312.1.

This exception shall not apply to foundations serving as retaining walls of soil over 5 feet (1829 mm) in height measured from the base of the foundation, or the structural design of the footing based on a specified compressive strength, f'c, greater than 2,500 pounds per square inch (psi) (17.2 MPa), regardless of the compressive strength specified in the construction documents or used in the footing construction.

## SECTION 1705 – REQUIRED SPECIAL INSPECTIONS AND TESTS

*1705.1.1 Add item 4 as follows:*

4.   Work which, in the opinion of the Director, involves unusual hazards or conditions such as underpinning~~under- pinning~~, shoring, removal of hazardous materials and new construction methods not covered by this code.

*~~1705.4.3 Add the following section:~~*

**~~1705.4.3 Exterior facing.~~** ~~Special inspection is required during fastening of all exterior veneer and ornamentation facing units constructed of concrete, masonry, stone or similar materials, and all curtain walls weighing more than 15 pounds per square foot (73.23 kg/m²) of wall.~~
**~~EXCEPTIONS:~~**
~~1.   Veneers weighing less than 5 pounds per square foot (24.46 kg/m²) located less than 15 feet (4.57 m) above grade.~~
~~2.   Anchored veneer located less than 10 feet (3.048 m) above grade.~~

*1705.4 ~~.4~~ Add the following section:*

**~~1705.4.4~~ 1705.4.3 Retrofit of unreinforced masonry bearing wall buildings.** Special inspection is required:

1   During the testing of mortar quality and performance of masonry shear tests.

2   During repointing operations.
3   During the installation of new shear bolts.
4   Prior to the placement of the bolt and grout or adhesive for embedded bolts.
5   During the prequalification tests.

*1705.5 ~~.7~~ Add the following section:*

**1705.5.7~~8~~ Shear walls and floor systems used as shear diaphragms.** Special inspection is required for all ~~All~~ connections, including nailing, tie-downs, framing clips, bolts and straps, ~~for those parts of a~~ as part of the lateral force resisting system utilizing the following components:

1   Plywood diaphragms, where shear values exceed 2/3 the values in Tables ~~2306.3.1~~ 2306.3(1) ~~and~~ ~~2306.3.2~~.

2   Double sheathed shear walls, in all cases.

3   Plywood shear walls, wherever nailing or hardware are not visible to the district inspector at the time of cover-up inspection.

    If nailing is not visible to the inspector at the called inspection, or if the special inspector has not inspected the work prior to the concealment, all work concealing such nailing shall be removed in order to permit a complete inspection.

4   Gypsum wallboard shearwalls where shear values exceed one-half of the values in ~~permitted by Footnote a of~~ Table ~~2306.4.5~~ 2306.3(3).

5   Fiberboard shearwalls where shear values exceed one-half of the values in Table ~~2306.4.4~~ 2306.3(2).

~~6   Particle-board diaphragms, where shear values exceed one-half of the values in Table 2306.4.3.~~

*1705.13.5 Revise this section as follows:*

**1705.13.5 Architectural components.** Periodic special inspection is required for the erection and fastening of exterior cladding, interior and exterior nonbearing walls, interior and exterior veneer, appendages, and ornamentation in structures assigned to Seismic Design Category D, E or F.

**Exception**: Periodic special inspection is not required for the following:

1.   Exterior cladding, interior and exterior nonbearing walls and interior and exterior veneer weighing 15 psf (0.72 kN/m$^2$) or less and located less than 10 feet (3048 mm) above grade or walking surface.

2.   Exterior cladding and interior and exterior veneer weighing 5psf (0.24 kN/m$^2$) or less and located less than 15 feet (4572 mm) above grade.

3.   Interior nonbearing walls weighing 15 psf (0.72 kN/m$^2$) or less.

*1705.~~20~~ Add the following sections:*

**1705.~~20~~21 Demolition.** For ~~D~~ demolition of buildings more than two stories or 25 feet (7.62 m) in height~~.~~, ~~S~~see Section 3303 for demolition requirements.

   *EXCEPTION:* Type V buildings.

*1705.21 Add the following section:*

**1705.21~~22~~** Construction subject to the Slope Protection Act, created by Section 106A.4.1.4; or construction of a new building or structure, or alterations that involve a substantial increase in the envelope of an existing building or structure within the Edgehill Mountain Slope Protection Area, created by Building Code Section 106A.4.1.2, or the Northwest Mt. Sutro Slope Protection Area, created by Building Code Section 106A.4.1.3; provided, however, that, until the special inspection reports required by Building Code Section 1704.2.4 are submitted to and approved by the Department, the phase of construction subsequent to the phase or element for which the report was completed cannot commence.

*1705.22 Add the following section:*

**1705.22~~23~~ Crane Safety.** No owner or other person shall operate, authorize or permit the operation of a tower crane on a high-rise building structure until a signed Crane Site Safety Plan, Submittal Form and Crane Safety Compliance Agreement have been accepted by the Building Official.

## Chapter 17A
## SPECIAL INSPECTIONS AND TESTS

*No San Francisco Building Code Amendments*

## Chapter 18
## SOILS AND FOUNDATIONS

*No San Francisco Building Code Amendments*

## Chapter 18A
## SOILS AND FOUNDATIONS

*No San Francisco Building Code Amendments*

## Chapter 19
## CONCRETE

*No San Francisco Building Code Amendments.*

## Chapter 19A
## CONCRETE

*No San Francisco Building Code Amendments*

## Chapter 20
## ALUMINUM

*No San Francisco Building Code Amendments*

# Chapter 21
# MASONRY

*No San Francisco Building Code Amendments*

# Chapter 21A
# MASONRY

*No San Francisco Building Code Amendments*

# Chapter 22
# STEEL

*No San Francisco Building Code Amendments*

# Chapter 22A
# STEEL

*No San Francisco Building Code Amendments*

# Chapter 23
# WOOD

## SECTION 2304 – GENERAL CONSTRUCTION REQUIREMENTS

*2304.12.1.5 Add the following second paragraph:*

Walls not accessible for maintenance shall have exterior covering of siding or plywood that are either treated wood or wood of natural resistance to decay. Plywood shall be exterior type, C-C Grade minimum, and not less than 1/2-inch (12.7 mm) thickness unless applied over sheathing. Plywood manufactured with redwood or cedar faces but with inner plys of other species conforming to DOC Standard PS1-95 may be used, provided the exposed outer face is plugged and not grooved or patterned.

*2304.12.2.3 Add the following 2nd paragraph with exception, and 3rd paragraph:*

Weather-exposed stairways constructed with concrete, masonry, brick, tile or terrazzo shall be supported on hot-dipped galvanized steel or reinforced concrete stringers.

***EXCEPTION:*** In Group R, Division 3 Occupancies, wood construction on masonry or concrete foundations may be used as supports, and the area under the stair shall be ventilated in compliance with 2304.12. 74.

Weather-exposed stairs of precast concrete or metal pan treads may be supported on wood stringers, provided the entire stairway is exposed and the treads are connected to the stringers by hot-dipped galvanized steel or other approved corrosion-resistant fasteners.

*2304.12.3.2* *2304.12.2.6 Add the following section:*

~~**2304.12.3.2**~~ **2304.12.2.6.2.  Wood structural members.** Wood structural members that support moisture permeable floors or roofs that are exposed to the weather, such as concrete or masonry slabs, shall be of naturally durable or preservative-treated wood unless separated from such floors or roofs by an impervious moisture barrier extending up the walls not less than 4 inches (101.6 mm) or shall otherwise be adequately flashed and counter flashed.

Regardless of finish flooring type or structural materials, the wood sub-floor of toilet rooms and bathrooms shall be protected by a waterproof membrane. Where a single ply sheet membrane is used, all adhesives shall be of a waterproof type and shall be applied so as to form a full unbroken coat between the backing and the membrane being applied. All seams and joints shall be thoroughly sealed.

***Exception:*** Interior floors in Group R, Division 3 Occupancies.

## Chapter 24
## GLASS AND GLAZING

## SECTION 2405 – SLOPED GLAZING AND SKYLIGHTS

*2405.3 Revise this exception as follows:*

3.  Any glazing material, including annealed glass, is permitted to be installed without screens in the sloped glazing systems of commercial or detached noncombustible greenhouses used exclusively for growing plants and not open to the public, provided that the height of the greenhouse at the ridge does not exceed 30 feet (9144 mm) above grade except that for R-3 occupancies and townhouses, the greenhouse height at the ridge does not exceed 20 feet (6096 mm) above grade. [CRC R308.6.6]

## Chapter 25
## GYPSUM BOARD, GYPSUM PANEL PRODUCTS AND PLASTER

*No San Francisco Building Code Amendments*

## Chapter 26
## PLASTIC

## SECTION 2603 – FOAM PLASTIC INSULATION

*2603.3 Revise the first sentence of Exception 3 as follows:*

3.   Foam plastic insulation that is part of a Class A  or B, roof-covering assembly provided  the assembly with the foam plastic insulation satisfactorily passes NFPA 276 or UL 1256.

---

*2603.4.1.5 Revise this section as follows:*

---

**2603.4.1.5 Roofing.** A thermal barrier is not required for foam plastic insulation that is part of a Class A, B, or C roof covering assembly that is installed in accordance with the code and the manufacturer's instructions and is either constructed as described in item 1 or tested as described in Item 2.

1.   The roof assembly is separated from the interior of the building by wood structural panel sheathing not less than 0.47 inch (11.9 mm) in thickness bonded with exterior glue, and identified as Exposure 1 with edges supported by blocking, tongue-and-groove joints, other approved type of edge support or an equivalent material.

The assembly with the foam plastic insulation satisfactorily passes NFPA 276 or UL1256.

---

*2603.6 Revise this section as follows:*

---

**2603.6 Roofing.** Foam plastic insulation meeting the requirements of Sections 2603.2, 2603.3 and 2603.4 shall be permitted as a part of a roof-covering assembly, provided the assembly with the foam plastic insulation is a Class A or B, roofing assembly where tested in accordance with ASTM E108 or UL 790.

# Chapter 27
# ELECTRICAL

*No San Francisco Building Code Amendments*

# Chapter 28
# MECHANICAL SYSTEMS

*No San Francisco Building Code Amendments*

# Chapter 29
# PLUMBING SYSTEMS

*No San Francisco Building Code Amendments*

# Chapter 30
# ELEVATORS AND CONVEYING SYSTEMS

---

*3010 Add the following section:*

---

# SECTION 3010 – PRIVATE RESIDENCE ELEVATORS

**3010.1** *PRIVATE RESIDENCE TYPE ELEVATOR* is a power passenger elevator which is limited in size, capacity, rise and speed and is installed in a private residence or in a multiple dwelling as a means of access to a private residence.

**3010.2 Construction.** The construction and installation of private residence elevators, dumbwaiters, and private residence special access lifts shall comply with ANSI/ASME 17.1 ~~2016~~ 2019.

[ *Note:* For other than private residence elevators, dumbwaiters, and private residence special access lifts, see Title 8, California Code of Regulations, California Elevator Safety Regulations.]

## Chapter 31
## SPECIAL CONSTRUCTION

# SECTION 3103 – TEMPORARY STRUCTURES

*3103.1.~~1~~2 Add this sentence to the end of the paragraph.*

See Section 106A.1.7 for permit requirements.

# SECTION 3107 – SIGNS

*Replace this section with the following sections:*

**3107.1 General.**  Except as otherwise provided herein, all signs placed upon or attached to any building, structure or property shall comply with this chapter and shall be installed under a valid sign permit.

The electrical portion of the sign shall be constructed in accordance with the requirements of the Electrical Code, and an electrical permit shall be obtained in accordance with that code.

Plans shall be filed with the application for a permit for any sign. When required, computations shall be provided.

**3107.1.1 Exempt signs.** The following signs are exempt from the requirements of this code:

1.   Signs painted on structures. However, such signs must comply with the San Francisco Planning Code, and an application shall be filed with the Department.

2.   Bulletin boards for public, charitable or religious institutions, when such boards are located on the premises of said institutions.

3.   Real estate signs advertising the sale, rental or lease of the premises on which they are maintained, which do not exceed 15 square feet (1.39 m$^2$) in size, and which are mounted flush to the building.

4.   Professional occupation signs denoting only the name and profession of an occupant in a commercial building, public institutional building or dwelling house, and not exceeding 3 square feet (0.278 m$^2$) in area for each occupant.

**3107.1.2 Prohibitions.** The following prohibitions apply to signs:

1.   No signs shall be erected, relocated or maintained so as to block any exits or required windows. No sign shall be attached to a standpipe, gutter drain, stairway or fire escape, or

interfere with the function or operation of any standpipe or fire escape. No roof sign shall be located within 6 feet (1.829 m) of a standpipe outlet.

2.   No sign shall be increased in size, altered in shape or changed by the addition of other signs or advertising matter not specifically allowed by the provisions of this code and the San Francisco Planning Code.

3.   No wall sign shall extend across or in front of any window or other exterior opening located above the first story of a building, except as approved by the Building Official.

4.   No wall sign erected on a wall adjacent to and facing a street, public space or yard shall project above the parapet walls.

*EXCEPTIONS:*

1.   On a building located on a corner lot, a wall sign may project a maximum of 7 feet (2.134 m) above the roof line on only one street.

2.   On any frontage, signs not more than 10 feet (3.048 m) long for any 40-foot (12.19 m) frontage and occupying no more than 25 percent of the lot frontage may project a maximum of 7 feet (2.134 m) above the roof line.

**3107.1.3 Permit number on sign.** Every sign shall have the permit number clearly painted and maintained on its face or edge, and of such size and location as to be legible from the sidewalk level, ground level or an easily accessible location. Electric signs may have an approved metal tag attached to them instead of painted characters.

**3107.1.4 Revocable permits.** The permit for any sign over public property may be revoked. A permit granted under Chapter 1A and this chapter for a sign over public property shall not be construed to create any perpetual right but is a revocable license which may be terminated by revocation by the Board of Supervisors.

**3107.1.5 Existing signs.** This chapter shall not render unlawful the existence or maintenance of any sign erected or maintained by a lawful permit issued prior to the adoption of this ordinance.

*EXCEPTION:* Signs for which lawful permits were issued and which, due to a sidewalk narrowing or street widening project, no longer conform to the requirements of Section 3107.3 shall be altered to conform not later than 90 days following completion of such project.

**3107.2 Definitions.** For the purposes of this chapter, certain terms are defined as follows:

*APPROVED PLASTIC* is a plastic material found to be suitable functionally for the purpose for which it is intended and which complies with the requirements of Chapter 26. For outdoor signs, the approval of the plastic shall be based upon considerations of flame spread value only. For indoor signs, the approval shall be based upon flame spread and smoke density values.

*AREA OF A SIGN* is that area of exposed vertical surface which is included within a rectangle enclosing all the features of the sign. In cases of an irregular sign, it is the sum of the areas of the enclosing rectangles estimated to the nearest 5 square feet (0.465 m$^2$).

*BUSINESS SIGN* is a sign which directs attention to a business, commodity, service, industry or other activity which is sold, offered or conducted on the premises upon which such sign is located, or to which it is affixed.

*SIGN* is any structure, part thereof, or device or inscription which is located upon, attached to or painted, projected or represented on the exterior of any building or structure, including an awning, canopy, marquee or similar appendage, or affixed to the glass on the outside or inside of a window so as to be seen from the outside of the building, and which displays or includes any numeral, letter, word, model, banner, emblem, insignia, symbol, device, light, trademark or other representation used as, or in the nature of, an announcement, advertisement or designation by or of any person, firm, group, organization, place, commodity, product, service, business,

profession, enterprise or industry. A sign includes the support, uprights and framework of the display.

**3107.3 Height, projection, and location.**

Height, projection and location of all signs shall be as specified in Article 6 of the San Francisco Planning Code. No sign shall project past the curbline of any street, alley or public way.

The minimum vertical clearance of signs over public sidewalks shall be 10 feet (3.048 m). Additionally, signs or portions within the outer one- third of a sidewalk shall have 12-foot (3.658 m) clearance, and when within 2 feet (0.61 m) of the curbline shall have 14-foot (4.267 m) clearance.

Roof signs shall be not less than 5 feet (1.524 m) above the roof. Supports shall be spaced at least 6 feet (1.829 m) apart.

**3107.4 Design.**

The design shall make allowances for the effects of corrosion and lack of maintenance.

No anchor or support of any sign shall be connected to, or suspended by, an unbraced parapet wall, unless such wall is designed in accordance with the requirements for parapet walls specified in Chapter 16.

Fasteners and braces shall be of noncombustible construction, except that stringers for attachment of roof signs may be of 6-inch (152.4 mm) minimum dimension redwood or approved preservative-treated lumber.

**3107.5 Construction.**

**3107.5.1 General.** All signs shall be constructed of noncombustible materials except that approved plastics may be used in sign facings as described in Section 3107.5.2. All ferrous metal and all fastenings used in construction or installation, excluding stainless steel, shall be hot-dipped galvanized, porcelain-enameled or otherwise protected in an approved manner against corrosion.

Aluminum may only be used for minor internal members, such as stiffeners and closures, and for sign faces and nonstructural trim. The minimum thickness shall be 0.0299 inch (0.76 mm).

Steel shapes or plates used for primary support shall be not less than 3/16 inch (4.76 mm) in thickness. Sheet metal formed integrally with the sign face or used as cabinet cover shall be not less than 0.0239 inch (24 gauge). Secondary support members not formed integrally with the design face shall be not less than 0.1046 inch (12 gauge) inch.

The minimum material thickness requirements in this section pertain to the base metal before application of protective covering and need not apply to signs located inside a building.

**3107.5.2 Plastics.** Where plastics are included in a sign, the application to install a sign shall set forth the manufacturer's trade name, or the common name of the plastic material to be used in the sign, thickness of plastic, aspect ratio, corrugation type, if any, and span. The plastic employed in the signs shall be identified as set forth in Chapter 26 with the manufacturer's trade name, or with the common name of the plastic material.

Plastic sign facing shall conform to the provisions of this section. Plastic sign faces, formed or flat, letters and decorations shall be of sufficient thickness or so formed or supported that they will withstand all loads required by this code.

Plastic facing shall be mounted in a metal frame. Proper provision shall be made for the difference in thermal expansion between plastic members and the frame.

**3107.5.3 Electric plastic signs.** Every electric sign containing approved plastics shall comply with the minimum requirements set forth in the Standard for Electric Signs, UL No. 48. The

attachment of Underwriters Laboratories label, or other approved laboratory per the Electrical Code, shall be sufficient proof that a sign has complied with the requirements of the Electrical Code.

**3107.5.4 Wood-faced signs.** Projecting signs with wood facing or backing are permitted on any building.

Plywood used for signs shall be exterior grade and not less than 5/8-inch (15.88 mm) thickness. Lumber shall be not less than 1-inch (25.4 mm) nominal and shall be finished to provide a weather- resistant finish.

**3107.6 Ground signs.**

**3107.6.1 Height.** The maximum height of a ground sign constructed with wood supports shall be 30 feet (9.14 m), as measured from the top of the sign to the sidewalk in front of the sign or the existing ground under the sign, whichever is higher.

**3107.6.2 Design and construction.** The design and construction of wood signs shall comply with Chapters 16 and 23 of this code. All wood within 12 inches of the ground shall be pressure-treated wood.

**3107.7 Removal of business signs.** It shall be unlawful for any person to allow any business sign to remain posted more than 180 days after the activity for which the business sign has been posted has ceased operation on the premises if such person (1) owns, leases or rents the property on which the sign is posted, or (2) owns or operates such business, service, industry or other activity.

# SECTION ~~3114~~ <u>3116</u> – WOODBURNING APPLIANCES

> *~~3114~~ <u>3116</u> Add a section as follows*

**~~3114.1~~ <u>3116.1</u> Woodburning appliances.** All woodburning appliances installed in new buildings or woodburning appliances being added, reconstructed or replaced in existing buildings shall comply with this section.

Gas fireplaces shall be exempt from the requirements of this section. However, the conversion of a gas fireplace to burn wood shall constitute the installation of a woodburning appliance and shall be subject to the requirements of this section.

**~~3114.2~~ <u>3116.2</u> Definitions.** The definitions set forth in this section shall govern the application and interpretation of this section.

*BAY AREA AIR QUALITY MANAGEMENT DISTRICT* means the air quality agency for the San Francisco Bay Area established pursuant to California Health and Safety Code Section 40200.

*EPA* means the United States Environmental Protection Agency.

*EPA CERTIFIED WOOD HEATER* means any wood heater that meets the standards in Title 40, Part 60, Subpart AAA, Code of Federal Regulations in effect at the time of installation and is certified and labeled pursuant to those regulations.

*FIREPLACE* means any permanently installed masonry or factory-built appliance that burns wood, except a pellet-fueled wood heater, designed to be used with an air-to-fuel ratio greater than or equal to 35 to one.

*GARBAGE* means all solid, semisolid and liquid wastes generated from residential, commercial and industrial sources, including trash, refuse, rubbish, industrial wastes, asphaltic

products, manure, vegetable or animal solids and semisolid wastes, and other discarded solid and semisolid wastes.

*GAS FIREPLACE* means any device designed to burn natural gas in a manner that simulates the appearance of a woodburning fireplace.

*PAINTS* means all exterior and interior house and trim paints, enamels, varnishes, lacquers, stains, primers, sealers, undercoatings, roof coatings, wood preservatives, shellacs, and other paints or paint-like products.

*PAINT SOLVENTS* means all original solvents sold or used to thin paints or to clean up painting equipment.

*PELLET-FUELED WOOD HEATER* means any appliance that burns wood and operates exclusively on wood pellets.

*RECONSTRUCTION* means the complete rebuilding of the woodburning appliance such that all or a substantial portion of its parts are new. It does not include repairs made to the appliance in order to make it safer or more efficient.

*SOLID FUEL* means wood or any other nongaseous or nonliquid fuel.

*TREATED WOOD* means wood of any species that has been chemically impregnated, painted or similarly modified to improve resistance to insects or weathering. It does not include products such as Duraflame or Presto logs that are specifically designed and sold to be burned in a woodburning appliance.

*WASTE PETROLEUM PRODUCTS* means any petroleum product other than gaseous fuels that has been refined from crude oil and has been used, and as a result of use has been contaminated with physical or chemical impurities.

*WOODBURNING APPLIANCE* means fireplace, wood heater, or pellet-fueled wood heater or any similar device burning any solid fuel used for aesthetic or space-heating purposes.

*WOOD HEATER* means a stove that burns wood.

~~3114.3~~ **3116.3 Unauthorized appliances prohibited.** No person shall install a woodburning appliance that is not one of the following:

1. A pellet-fueled wood heater;
2. An EPA-certified wood heater; or
3. A fireplace certified by the Northern Sonoma Air Pollution Control District.

*Exceptions:*

1. Woodburning appliances that are designed primarily for food preparation in new or existing restaurants or bakeries.

2. Historic woodburning appliances installed in historic structures, as determined by the Building Official of the Department of Building Inspection in consultation with the Director of the Department of Planning.

~~3114.4~~ **3116.4 Prohibited fuels.** The following fuels are prohibited from use in a woodburning appliance:

1. Garbage;
2. Treated wood;
3. Plastic products;
4. Rubber products;
5. Waste petroleum products;
6. Paints or paint solvents;
7. Coal;
8. Glossy or colored paper;

9. Particle board; or
10. Saltwater driftwood.

~~**3114.5**~~ **3116.5 Certification.** Any person who plans to install a woodburning appliance must submit documentation to the Building Official demonstrating that the appliance is a pellet-fueled wood heater, a certified wood heater, or a fireplace certified by Northern Sonoma Air Pollution Control District.

*NOTE:* Ordinance 13-02, adopted 1-14-2002, which amended Section 3102.8, contained the following findings:

(a)   In 1982, the State Air Resources Board (ARB) adopted a particulate matter (PM10) Ambient Air Quality Standard (AAQS). Levels for the PM10 AAQS were selected pursuant to California Code of Regulations Title 17 Section 70200 to protect the health of people who are sensitive to exposure to fine particles.

(b)   Research indicates that wood smoke is a significant contributor to PM10 levels that pose significant health risks.

(c)   The City and County of San Francisco desires to lessen the risk to life and property from air pollution from woodburning appliances.

(d)   The City and County of San Francisco finds that the proposed regulation will significantly reduce the increases in particulate emissions from future installation and construction activities.

(e)   The City and County of San Francisco finds a need exists to adopt regulations which apply to woodburning combustion emissions.

# Chapter 31A
# SYSTEMS FOR WINDOW CLEANING OR EXTERIOR BUILDING MAINTENANCE

*No San Francisco Building Code Amendments*

# Chapter 31B [DPH]
# PUBLIC SWIMMING POOLS

*No San Francisco Building Code Amendments*

# Chapter 31C [DPH]
# RADIATION

*No San Francisco Building Code Amendments*

# Chapter 31D [DPH]
# FOOD ESTABLISHMENTS

*No San Francisco Building Code Amendments*

# Chapter 31E
# RESERVED

*No San Francisco Building Code Amendments*

# Chapter 31F [SLC]
# MARINE OIL TERMINALS

*No San Francisco Building Code Amendments*

# Chapter 32
# ENCROACHMENTS INTO PUBLIC RIGHT-OF-WAY

## SECTION 3201 – GENERAL

*3201.4 Revise this section as follows:*

**3201.4 Drainage.** Drainage water collected from a roof, awning, canopy or marquee, and condensate from mechanical equipment shall be conducted to the building drain or building sewer, and shall not flow over a public walking surface.

## SECTION 3202 – ENCROACHMENTS

*3202.3.1 Replace this section as follows:*

**3202.3.1 Awnings, canopies, marquees and signs.** Awnings, canopies, marquees and signs shall be constructed so as to support applicable loads as specified in Chapter 16. Canopies shall be allowed only over entrance doorways and only for Occupancy Groups A, B, F-1, M, S-1, S-2 and R. Canopies may be constructed as awnings and with the same limitations except that:

1.   The maximum width shall be 10 feet (3.048 m); and
2.   The maximum extension over public sidewalk may be to a point 2 feet (0.61 m) from the curb; and
3.   The outer column support shall be located in the outer one-third of the sidewalk.

*3202.3.2 Replace this section as follows:*

**3202.3.2 Windows, balconies, architectural features and mechanical equipment.**
   A 3-foot (0.914 m) projection shall be permitted for bay and oriel windows when the clearance above grade is at least 10 feet (3.048 m) and the width of the sidewalk is greater than 9 feet (2.74 m). Where the sidewalk width is 9 feet (2.74 m) or less, the projection shall not exceed 2 feet (0.61 m).

   For all other appendages, a 2-foot (0.61 m) projection is permitted when the clearance above grade is at least 10 feet (3.048 m). The projection may be increased 1 inch (25.4 mm) for each additional foot of clearance over 10 feet (3.048 m), to a maximum of 4 feet (1.219 m).

*3202.3.4 Add the following after the first paragraph as follows:*

   A covered pedestrian walkway may be constructed over a street between buildings of only Types I-A and I-B construction. Permission from the Board of Supervisors and approval of the

157

Department of Public Works and Planning Commission is required. The pedestrian walk-way shall comply with the following conditions:

   1.  The pedestrian walkway shall be equipped with an automatic sprinkler system. The supporting structure shall be three-hour fire-resistive construction. Columns located within 8 feet (2.438 m) of the curb, or otherwise vulnerable to vehicle impact, shall either be designed for such impact or protected from the impact.

   2.  The openings in the exterior walls of the buildings at the ends of the pedestrian walkway shall be protected by 1½ hour fire assemblies.

# SECTION 3203 – SIDEWALK CONSTRUCTION

*3203 Add a section as follows:*

**3203.1 General.** Sidewalks shall be constructed in accordance with the Public Works Code.
   Sidewalks over excavated areas shall be supported on noncombustible construction with 3-hour fire-rated protection. The sidewalk shall be waterproofed by use of a hot mopped asphalt membrane or other approved means.

**3203.2 Openings in Sidewalks.**

**3203.2.1 Sidewalk trapdoor.** Every basement extending under the sidewalk shall have an approved sidewalk trapdoor. The minimum size of the trapdoor opening shall be 4 feet by 4 feet (1.219 m by 1.219 m). However, trapdoors shall not be required where the basement is provided with an automatic sprinkler system.

**3203.2.2 Sidewalk elevators.** All openings hereafter constructed in sidewalks for sidewalk elevators shall be located in the outer half of the sidewalks, next to the curb. The outer edges of the openings shall be not more than 30 inches (762 mm) from the outer line of the curb. The length of the sides of the openings at right angles to the curb shall not exceed one-half of the width of the sidewalk and in no case shall it exceed 5 feet (1.524 m).

**3203.2.3 Any other purpose.** Openings on the sidewalks for any other purpose, if placed outside the property line, shall be covered with approved gratings having a maximum opening between bars of ½ inch (12.7 mm), or with covers having a rough surface, and rabbeted flush with the sidewalk. When a cover is placed in any sidewalk, it shall be placed as near as practicable to the line of the curb. All spaces under sidewalks shall be thoroughly ventilated.

**3203.2.4 Framing.** All framing supporting only the sidewalk opening shall be of noncombustible material.

**3203.2.5 Guards.** Metal guards will be required for openings in sidewalks in accordance with the Police Code.

**3203.3 Electrical Transformers.** No portion of any electrical transformer pad shall be constructed, nor electrical transformer installed on the surface of any portion of any public sidewalk.

## Chapter 33
## SAFEGUARDS DURING CONSTRUCTION

# SECTION 3302 – CONSTRUCTION SAFEGUARDS

*3302 Add a section as follows:*

**3302.4 Fencing.** Provide for the enclosing, fencing, and boarding up or by fire watch or other means of preventing access to the site by unauthorized persons when work is not in progress.

## SECTION 3303 – DEMOLITION

*3303.1 Add sections as follows:*

**3303.1.1 Buildings other than Type V.** The demolition of structures of Types I, II, III and IV construction greater than two stories or 25 feet (7.62 m) in height shall comply with the requirements of this section.

The requirements of this section shall also apply to the demolition of post-tensioned and pre-tensioned concrete structures.

**3303.1.2 Required plans.** Prior to approval of an application for a demolition permit, two sets of detailed plans shall be submitted for approval, showing the following:

1. The sequence of operation floor by floor, prepared by a registered civil engineer or licensed architect.
2. The location of standpipes.
3. The location and details of protective canopies.
4. The location of truck crane during operation.
5. Any necessary fence or barricade with lights.
6. Any floor or wall left standing.
7. The schedule of the days when the demolition will be done, i.e., on weekdays or on Sundays.

*3303.4 Replace this section with the following:*

**3303.4 Vacant Lot.** When a building is demolished, the permittee must remove all debris and remove all parts of the structure above grade except those parts that are necessary to provide support for the adjoining property.

*3303.8 Add a section as follows:*

**3303.8 Special inspection.** A registered civil engineer or licensed architect shall supervise the demolition work in accordance with rules and regulations adopted by the Building Official pursuant to Section 104A.2.1 to assure the work is proceeding in a safe manner and shall submit written progress reports to the Department in accordance with Section 1704.2.4.

## SECTION 3304 – SITE WORK

*3304.1 Add a second paragraph as follows:*

The City and County of San Francisco adopts Appendix J for the purpose of regulating excavation and grading.

*3304.1 Add a third paragraph as follows:*

159

Temporary wood shoring and forms. All wood used for temporary shoring, lagging or forms that will be backfilled against or otherwise left permanently in place below grade shall be treated wood as defined in Section 2302.

## SECTION 3306 – PROTECTION OF PEDESTRIANS

*3306.10 Add a section as follows:*

**3306.10 Chutes.** Chutes for the removal of materials and debris shall be provided in all parts of demolition operations that are more than 20 feet (6.096 m) above the point where the removal of material is effected. Such chutes shall be completely enclosed. They shall not extend in an unbroken line for more than 25 feet (7.62 m) vertically but shall be equipped at intervals of 25 feet (7.62 m) or less with substantial stops or offsets to prevent descending material from attaining dangerous speeds.

The bottom of each chute shall be equipped with a gate or stop with a suitable means for closing or regulating the flow of material.

Chutes, floors, stairways and other places affected shall be watered sufficiently to keep down the dust.

*3306.11 Add a section as follows:*

**3306.11 Falling debris.** Wood or other construction materials shall not be allowed to fall in large pieces onto an upper floor. Bulky materials, such as beams and columns, shall be lowered and not allowed to fall.

*3306.12 Add a section as follows:*

**3306.12 Structure stability.** In buildings of wood frame construction, the supporting structure shall not be removed until the parts of the structure being supported have been removed.

In buildings with basements, the first floor construction shall not be removed until the basement walls are braced to prevent overturning, or an analysis acceptable to the Building Official is submitted which shows the walls to be stable without bracing.

## SECTION 3307 – PROTECTION OF ADJOINING PROPERTY

*3307.1 Insert a note at the end of this section as follows:*

**3307.1 Protection required.** Adjoining public and private property shall be protected from damage during construction, remodeling and demolition work. Protection must be provided for footings, foundations, party walls, chimneys, skylights and roofs. Provisions shall be made to control water runoff and erosion during construction or demolition activities. The person making or causing an excavation to be made shall provide written notice to the owners of adjoining buildings advising them that the excavation is to be made and that the adjoining buildings should be protected. Said notification shall be delivered not less than 10 days prior to the scheduled starting date of the excavation.

*Note:* Other requirements for protection of adjacent property of adjacent and depth to which protection is requested are defined by California Civil Code Section 832, and is reprinted herein for convenience.

**Section 832.** Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land, subject to the right of the owner of the adjoining land to make proper and usual excavations on the same for purposes of construction or improvement, under the following conditions:

1.   Any owner of land or his lessee intending to make or to permit an excavation shall give reasonable notice to the owner or owners of adjoining lands and of buildings or other structures, stating the depth to which such excavation is intended to be made, and when the excavating will begin.

2.   In making any excavation, ordinary care and skill shall be used, and reasonable precautions taken to sustain the adjoining land as such, without regard to any building or other structure which may be thereon, and there shall be no liability for damage done to any such building or other structure by reason of the excavation, except as otherwise provided or allowed by law.

3.   If at any time it appears that the excavation is to be of a greater depth than are the walls or foundations of any adjoining building or other structure, and is to be so close as to endanger the building or other structure in any way, then the owner of the building or other structure must be allowed at least 30 days, if he so desires, in which to take measures to protect the same from any damage, or in which to extend the foundations thereof, and he must be given for the same purposes reasonable license to enter on the land on which the excavation is to be or is being made.

4.   If the excavation is intended to be or is deeper than the standard depth of foundations, which depth is defined to be a depth of nine feet below the adjacent curb level, at the point where the joint property line intersects the curb and if on the land of the coterminous owner there is any building or other structure the wall or foundation of which goes to standard depth or deeper then the owner of the land on which the excavation is being made shall, if given the necessary license to enter on the adjoining land, protect the said adjoining land and any such building or other structure thereon without cost to the owner thereof, from any damage by reason of the excavation, and shall be liable to the owner of such property for any such damage, excepting only for minor settlement cracks in buildings or other structures.

# SECTION 3311 – STANDPIPES

*3311.2 Replace this section and title with the following:*

**3311.2 Fire Safety During Demolition.** All existing dry standpipes shall be maintained in an operative condition and with all inlets and outlets accessible for use within two floors of the highest remaining portion of a floor of the building. The inlets shall be so identified at the street level as to be easily located by the Fire Department. They shall be removed in place with floor removal and the upper ends capped above the highest remaining valve. The remaining system on the lower floors shall continue operative until all construction above the third floor has been removed.

# Chapter 34
# RESERVED

*No San Francisco Building Code Amendments*

# Chapter 34A
# EXISTING STRUCTURES

No San Francisco Building Code Amendments

# Chapter 35
# REFERENCED STANDARDS

No San Francisco Building Code Amendments

*Add the following chapter:*

# Chapter 36
# CALIFORNIA RESIDENTIAL CODE (CRC)

**(CRC) CHAPTER 1**
**SCOPE AND APPLICATION**
*Replace this chapter with Chapter 1 & 1A of the San Francisco Building Code.*
*See Chapter 1A for the Administration provisions of the San Francisco Building Code.*
**(CRC) CHAPTER 2**
**DEFINITIONS**
*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code.*
**(CRC) CHAPTER 3**
**BUILDING PLANNING**
*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*
**(CRC) CHAPTER 4**
**FOUNDATIONS**
*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*
**(CRC) CHAPTER 5**
**FLOORS**
*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*
**(CRC) CHAPTER 6**
**WALL CONSTRUCTION**
*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*
**(CRC) CHAPTER 7**
**WALL COVERING**
*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*
**(CRC) CHAPTER 8**
**ROOF-CEILING CONSTRUCTION**

*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*

**(CRC) CHAPTER 9**

**ROOF ASSEMBLIES**

*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*

**(CRC) CHAPTER 10**

**CHIMNEYS AND FIREPLACES**

*Replace this chapter with Chapter 2 through 35 of the San Francisco Building Code*

**(CRC) CHAPTER 44**

**REFERENCED STANDARDS**

*Replace this chapter with Chapter 35 of the San Francisco Building Code*

**(CRC) APPENDIX ~~A~~ AA**

**RESERVED ~~SIZING AND CAPACITIES OF GAS PIPING~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~B~~ AB**

**RESERVED ~~SIZING OF VENTING SYSTEMS SERVING APPLIANCES EQUIPPED WITH DRAFT HOODS, CATEGORY 1 APPLIANCES, AND APPLIANCES LISTED FOR USE WITH TYPE B VENTS~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~C~~ AC**

**RESERVED ~~EXIT TERMINALS OF MECHANICAL DRAFT AND DIRECT-VENT VENTING SYSTEMS~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~D~~ AD**

**RESERVED ~~RECOMMENDED PROCEDURE FOR SAFETY INSPECTION OF AN EXISTING APPLIANCE INSTALLATION~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~E~~ AE**

**RESERVED ~~MANUFACTURED HOUSING USED AS DWELLINGS~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~F~~ AF**

**RADON CONTROL METHODS**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~G~~ AG**

**RESERVED ~~PIPING STANDARDS FOR VARIOUS APPLICATIONS~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~H~~ AH**

**PATIO COVERS**

*Replace this chapter with Appendix I of the San Francisco Building Code*

**(CRC) APPENDIX ~~I~~ AI**

**PRIVATE SEWAGE DISPOSAL**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~J~~ AJ**

**EXISTING BUILDINGS AND STRUCTURES**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~K~~ AK**

**SOUND TRANSMISSION**

163

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~L~~ AL**

**PERMIT FEES**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~M~~ AM**

**RESERVED ~~HOME DAY CARE—R-3 OCCUPANCY~~**

*This appendix is not adopted in San Francisco or applicable in California*

**(CRC) APPENDIX ~~N~~ AN**

**RESERVED ~~VENTING METHODS~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~O~~ AO**

**AUTOMATIC VEHICULAR GATES**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~P~~ AP**

**RESERVED ~~SIZING OF WATER PIPING SYSTEM~~**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~Q~~ AQ**

**TINY HOUSES**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~R~~ AR**

**LIGHT STRAW-CLAY CONSTRUCTION**

[1]

**(CRC) APPENDIX ~~S~~ AS**

**STRAWBALE CONSTRUCTION**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX ~~T~~ AT**

**SOLAR-READY PROVISIONS – DETACHED ONE- AND ~~TOW~~ TWO-FAMILY[1] DWELLINGS AND TOWN HOUSES**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX AU**

**COB CONSTRUCTION (MONOLITHIC ADOBE)**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX AV**

**BOARD OF APPEALS**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX AW**

**3D-PRINTED BUILDING CONSTRUCTION**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX AX**

**SWIMMING POOL SAFETY ACT**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX AY**

**AREAS PROTECTED BY THE FACILITIES OF THE CENTRAL VALLEY FLOOD PROTECTION PLAN**

*This appendix is not adopted in San Francisco*

**(CRC) APPENDIX AZ**

**EMERGENCY HOUSING**

*This appendix is not adopted in San Francisco*
*Add the following appendices:*

# CALIFORNIA BUILDING CODE (CBC) APPENDICES

**(CBC) APPENDIX A**
**EMPLOYEE QUALIFICATIONS**
*This appendix is not adopted in San Francisco*
**(CBC) APPENDIX B**
**BOARD OF APPEALS**
*This appendix is not adopted in San Francisco*
**(CBC) APPENDIX C**
**GROUP U–AGRICULTURAL BUILDINGS**
*No San Francisco Building Code Amendments*
**(CBC) APPENDIX D**
**FIRE DISTRICTS**
*This appendix is not adopted in San Francisco*
**(CBC) APPENDIX E**
**RESERVED**
*This appendix is not adopted in San Francisco*
**(CBC) APPENDIX F**
**RODENTPROOFING**
*This appendix is not adopted in San Francisco*
**(CBC) APPENDIX G**
**FLOOD-RESISTANT CONSTRUCTION**
*This appendix is not adopted in San Francisco*
**(CBC) APPENDIX H**
**SIGNS**
*This appendix is not adopted in San Francisco*
**(CBC) APPENDIX I**
**PATIO COVERS**
*No San Francisco Building Code Amendments*

# APPENDIX J
# GRADING

*San Francisco adopts Appendix J as amended below for grading in San Francisco*

## SECTION J103 – PERMITS REQUIRED

*J103.2 Add the following five exemptions:*

8.   An excavation that (1) is less 2 feet (610 mm) in depth or (2) does not create a cut slope greater than 5 feet (1524 mm) in height and steeper than 1 unit vertical in 1-1/2 units horizontal (66.7% slope).

9.   A fill less than 1 foot (305 mm) in depth and placed on natural terrain with a slope flatter than 1 unit vertical in 5 units horizontal (20% slope), or less than 3 feet (914 mm) in depth, not intended to support structures, that does not exceed 50 cubic yards (38.3 m$^3$) on any one lot and does not obstruct a drainage course.

10.   Grading performed incidental to and in connection with the construction of a building or structure on a single lot, pursuant to a valid building permit issued therefor. The cost of such grading shall be included in the total valuation of the building for determining permit fees, and a separate grading permit will not be required.

11.   Grading necessary for and incidental to and in connection with the construction of any parks, public streets or roadways, or the construction of sewers, or utilities under or within the boundaries of such roadways or streets when such work is under the direct supervision of the Recreation and Park Department, the Department of Public Works, the Public Utilities Commission or other governmental agencies.

12.   Grading operations which in the opinion of the Director are of such a minor nature that the proposed work will not affect the adjoining land, or any existing structures, either those on the same or adjoining land. For such grading operations, the requirements of this chapter may be waived in whole or in part.

## SECTION J104 – PERMIT APPLICATION AND SUBMITTALS

*J104.3 Replace the exception as follows:*

**Exception:**  Grading conforming to all of the following requirements:

1.   No cut section is greater than 10 feet (3.048 m) in vertical height.

2.   No cut slope is steeper than 2 horizontal to 1 vertical.

3.   The tops of cut banks are separated from any structure or major improvement by a distance, measured horizontally, equal to not less than the height of the bank.

4.   Not more than 5,000 cubic yards (3825 m$^3$) shall be involved in grading.

5.   Grading performed at a site outside the limits of known slide areas.

All other grading shall require soils report and the grading plans shall include, but not limited to, the following information:

(1)   The design of retaining walls or other structures used to support cuts or fills. Such retaining walls or structures, except when part of a building, may be constructed under this permit, provided the cost of same is included in the valuation shown on the application.

(2)   The sequencing of cut and fill operations in a manner that assures interim stability of the site.

## SECTION J106 – EXCAVATIONS

*J106.1 Delete all exceptions.*

## SECTION J109 – DRAINAGE AND TERRACING

*J109 Add the following section:*

**J109.5 Surface Drainage.** All areas which are surfaced with asphalt, concrete or other paving of similar imperviousness, and which exceed a total area of 200 square feet (18.58 m$^2$), shall have storm- and casual water drained directly to a public sewer or storm drain.

Drainage shall not be directed to flow onto adjacent property or to drain onto public sidewalks. See Section 1502.1 for roof drainage.

## SECTION J112 – GRADING FEES

*J112 Add the following section:*

### SECTION J112 GRADING FEES

The permit and the plan review fees shall be per Section 110A, Table 1A-F – Specialty Permit Fees, Table 1A-A – Building Permit Fees. The valuation shall be based on the volume of earthwork.

**(CBC) APPENDIX K**
**GROUP R-3 AND GROUP R-3.1 OCCUPANCIES PROTECTED BY THE FACILITIES OF THE CENTRAL VALLEY FLOOD PROTECTION PLAN**
*This appendix is not adopted in San Francisco*

**(CBC) APPENDIX L**
**EARTHQUAKE RECORDING INSTRUMENTATION**
*No San Francisco Building Code Amendments*

**(CBC) APPENDIX M**
**TSUNAMI-GENERATED FLOOD HAZARDS**
*This appendix is not adopted in San Francisco*

**(CBC) APPENDIX N**
**REPLICABLE BUILDINGS**
*This appendix is not adopted in San Francisco*

**(CBC) APPENDIX O**
**PERFORMANCE-BASED APPLICATION**
*This appendix is not adopted in San Francisco*

## (CBC) APPENDIX P
## EMERGENCY HOUSING

*San Francisco adopts Appendix O P subject to the modifications set forth below.*

## SECTION P101 – GENERAL

*OP101.1 Revise this section as follows:*

**P101.1 Scope.** This appendix shall be applicable to emergency housing and emergency housing facilities, as defined in Section P102. The provisions and standards set forth in this appendix shall be applicable to emergency housing established pursuant to the declaration of a shelter crisis under Government Code section 8698 *et seq.* and located in new or existing buildings, structures, or facilities owned, operated, erected, or constructed by, for, or on behalf of the City and County of San Francisco on land owned or leased by the City and County of San Francisco.

## SECTION P103 – EMERGENCY HOUSING

> *~~O~~P103.2.1 Add exception 2 as follows:*

**P103.2.1 New additions, alterations, and change of occupancy.** New additions, alterations, and change of occupancy to existing buildings shall comply with the requirements of the California Building Standards Code effective at the time of addition, alteration, or change of occupancy. The requirements shall apply only to and/or within the specific area of the addition, alteration, or change of occupancy.

**Exceptions:**

1. Existing buildings and structures used for emergency housing and emergency housing facilities may not be required to comply with the California Energy Code, as determined by the enforcing agency.

2. Change in occupancy shall not mandate conformance with new construction requirements set forth in the California Building Standards Code, provided such change in occupancy meets the minimum fire and safety requirements set forth in Section ~~O~~P111 of this appendix.

> *~~O~~P103.7 Add a section as follows:*

**~~O~~P103.7 Electrical.** Emergency housing shall be provided with all of the following installed in compliance with the California Electrical Code:

1. Continuous source of electricity.

    **Exception:** The source of electricity may be solar power or emergency generator.

2. At least one interior lighting fixture.

## SECTION P110 – EMERGENCY HOUSING FACILITIES SANITATION REQUIREMENTS

> *~~O~~P110.2 Revise this section as follows:*

**P110.2 Kitchens and food facilities.** Where provided, kitchens and food facilities, as defined in Section 113789 of the California Health and Safety Code, which support emergency housing sites, shall comply with applicable food safety provisions of Sections 113980–114094.5 of the California Health and Safety Code.

Where occupants of dependent units are permitted or required to cook for themselves, a separate area shall be equipped and maintained as a common use kitchen. Refrigerated storage shall be provided for safe storage of food.

## SECTION P111 – EMERGENCY HOUSING FIRE AND LIFE SAFETY REQUIREMENTS

> *~~O~~P111 Add the following sections:*

**~~O~~P111.1 Location on property.** Buildings or structures used for emergency housing, including sleeping cabins, shall be located in accordance with the requirements of Table 602 and Section 705 of the California Building Code, based on their type of construction and fire-resistance ratings of the exterior walls. During a shelter crisis, the fire separation distances are permitted to

be measured to the existing buildings on the adjacent parcels rather than to the interior lot lines, provided the open spaces are to remain unobstructed for the duration of the shelter crisis.

~~O~~P111.2 **Buildings on same lot.** Buildings or structures used for emergency housing, including sleeping cabins, shall be separated from each other and from other buildings on the same lot as set forth in Section 705.3 of the California Building Code. The Building Official and Fire Marshal may accept reasonable alternatives to these requirements provided reasonably equivalent fire and life safety is achieved.

~~O~~P111.3 **Means of egress.** Buildings or structures used for emergency housing shall be provided with means of egress complying with Chapter 10 of the California Building Code, unless modified elsewhere in this appendix.

~~O~~P111.4 **Emergency escape and rescue.** Each area of a building or structure used for sleeping purposes in emergency housing shall be provided with an emergency escape and rescue opening in accordance with Section 1030 of the California Building Code, unless modified elsewhere in this appendix.

~~O~~P111.5 **Smoke alarms.** Buildings or structures used for emergency housing, which provide sleeping accommodations, shall be equipped with single station battery powered smoke alarms installed in accordance with the location requirements of Section 907.2.11 of the California Fire Code, unless modified elsewhere in this appendix.

~~O~~P111.6 **Carbon monoxide alarms.** Buildings or structures used for emergency housing, which provide sleeping accommodations, and equipped with fuel-burning appliances shall be provided with carbon monoxide detection in accordance with Section 915 of the California Fire Code, unless modified elsewhere in this appendix.

~~O~~P111.7 **Fire alarm.** A manual fire alarm system capable of arousing sleeping occupants in accordance with Section 907 of the California Fire Code shall be installed in buildings, structures, or groups of buildings or structures used for emergency housing.

   **Exception:** Individual buildings or structures in a group of buildings or structures with sufficient separation distances to allow each building or structure to function independently in case of a fire, as approved by the Fire Marshal.

~~O~~P111.8 **Automatic sprinkler systems.** Fire sprinklers shall be provided for new and existing buildings or structures used for emergency housing, including sleeping cabins, which provide sleeping facilities, as required by Section 903.3 of the California Fire Code. Strict compliance with the requirements of Section 903.3 may not be required when approved by the Fire Marshal. The Fire Marshal is authorized to accept reasonably equivalent alternatives to the installation provisions of Section 903.3 when dealing with buildings or structures used for emergency housing.

~~O~~P111.9 **Fire extinguishers.** Portable fire extinguishers shall be provided in accordance with Section 906.1 of the California Fire Code.

~~O~~P111.10 **Flammable or combustible liquids.** The possession or storage of any flammable or combustible liquids or gases shall not be permitted (intact cigarette lighters excepted). The use of any type of open flame indoors is prohibited unless conditionally approved by the Fire Chief.

~~O~~P111.11 **Storage in attics, under-floor, and in concealed spaces.** Combustible materials, including but not limited to the possessions of occupants, users, and staff shall not be stored in attics, under-floor spaces, or within other concealed spaces of buildings or structures used for emergency housing with sleeping accommodations.

169

**O̶P111.12 Fire department access.** Fire Department access to building and premises used for emergency housing shall be in compliance with Section 503, Appendix D and Section 504 of the California Fire Code, as approved by the Fire Chief.

**O̶P111.13 Water supply.** An approved fire protection water supply complying with Section 507 of the California Fire Code, or as approved by the Fire Chief, shall be provided for each structure, group of structures or premises used for emergency housing.

## SECTION P112 – ALTERNATIVES AND MODIFICATIONS

*O̶P112 Add the following section:*

**O̶P112.1 Alternatives and modifications.** Alternative compliance and/or modifications that are reasonably equivalent to the requirements in this appendix may be granted by the Local Administrative Authority in individual cases when dealing with buildings or structures used for emergency housing.