**LAW OFFICE OF YOLANDA HUANG**
Yolanda Huang, SBN 104543
PO Box 5475
Oakland, CA 94605
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

**GREENFIRE LAW, PC**
Rachel Doughty, SBN 255904
Richard Brody, SBN 100379
2748 Adeline Street, Suite A
Berkeley, CA 94703
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
Email: rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| KENYON NORBERT, TROY MCALLISTER, MARSHALL HARRIS, ARMANDO CARLOS, MONTRAIL BRACKENS, MICHAEL BROWN, and JOSE POOT, on behalf of themselves individually and others similarly situated, as a class and Subclass,<br><br>Plaintiffs,<br><br>vs.<br><br>SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSEY; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, CAPTAIN MCCONNELL and John & Jane DOEs, Nos. 1 - 50.<br><br>Defendants. | Case No.: 3:19-cv-02724 SK<br><br>**PLAINTIFFS' OFFER OF PROOF RE PLAINTIFFS' EXHIBIT 0005 (SURVEYS OF CLASS MEMBERS) AND THE TESTIMONY OF DR. CHARLES CZEISLER RELATED TO THE SAME (FRE 103)**<br><br>Dept:  Courtroom C, 15th Floor<br>          Federal District Court<br>          450 Golden Gate Ave.<br>          San Francisco, CA<br><br>Hon. Sallie Kim, presiding<br><br>Trial Date:  August 8, 2023 |

Pursuant to Federal Rule of Evidence 103(a) Plaintiffs submit this Offer of Proof regarding Plaintiffs' Exhibit P0005 and the exclusion of a portion of Plaintiffs' expert Dr. Czeisler's anticipated testimony.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. Description of Excluded Evidence

P0005 (**Exhibit 1**) consists of survey response sheets containing information collected from Class Members regarding topics directly at issue in this litigation, specifically sleep deprivation, mental health issues including anxiety and depression symptoms, lighting in cells including the inability of inmates to control the light brightness in their cells, and the amount of time inmates are or were required to spend in their cells.

Beginning on August 15, 2022, class members were interviewed by Plaintiffs' counsel's legal assistants. Declaration of Yolanda Huang in Support of Motion for Reconsideration (the "Huang Declaration"), ¶7 (ECF No. 330-2). The survey at issue was designed to elicit information concerning sleep deprivation, mental health issues including anxiety and depression symptoms, lighting in cells including the inability of inmates to control the light brightness in their cells, and the amount of time inmates are or were required to spend in their cells. Class members' responses were recorded on survey response sheets. (See ECF 330-2). These interviews were conducted pursuant to the attorney client work product privilege and attorney client privilege. (Huang Decl. ¶ 12). The sheets were anonymized and then provided to Plaintiffs' expert, Charles Czeisler. (*See* "Doughty Decl.," ECF 330-3, ¶¶ 4-7.

### B. Treatment of the Surveys by the Court

The Court had previously excluded the testimony of Plaintiffs' expert Dr. Charles Czeisler offered in support of Plaintiffs' briefs in competing motions for summary judgement. (*See* ECF 325). The grounds given for excluding Dr. Czeisler's testimony were in part that the Court was not provided with the surveys that comprise Exhibit P 0005.[1] (ECF 325, and ECF 330 (summarizing bases for exclusion of Czeisler testimony). Plaintiffs filed a Motion for Leave to file a Motion to

---

[1] Also, on the grounds that Defendants were not provided the surveys, which was incorrect.

Reconsider (ECF 330) which was denied (ECF 332).

Defendants sought to extend the evidentiary rulings on summary judgment (ECF 325) to trial. (*See* ECF 349). Plaintiffs objected, and the argument made in ECF 365. The Court granted Defendants' motion in part, stating relevantly that: "The Court will accept Czeisler's testimony inasmuch as it does not rest on inadmissible survey results." (ECF 387)

On July 26, 2023, Plaintiffs submitted Plaintiffs' Amended 100 Exhibits For Trial (the "Plaintiffs' Exhibit List," ECF No. 413), which included Exhibit P0005 described as "Surveys of class members").

Defendants objected to P 00005 on the following grounds:

> FRE 901 - Authenticy, FRCP 26 - Not Timely disclosed/produced, Combines Multiple Documents, CCSF MIL No. 1 - Apply MSJ Rulings, FRE 401, 402 - Relevance, FRE 805-Hearsay within Hearsay, CCSF MIL No. 4-Claims Not at Issue, CCSF MIL No. 3-Late Disclosed Evidence, FRE 801, 802 – Hearsay

(ECF 413).

Plaintiffs responded:

> FRE 702-surveys are product of reliable principles and methods; evidence was not obtained in violation of a Court Order (ECF 307, pp. 9:24-10:7), evidence is relevant to harm suffered by Plaintiff Class Members and Class Representatives as a result of excessive lockdowns and lack of exposure to natural sunlight. *See* Plaintiffs' Oppositions to Defendants' MILs 1, 3 and 4.

(ECF 413).

On August 4, 2023, the Court its Order Regarding Plaintiffs' Trial Exhibits (**ECF No. 427**). In this Order, the Court sustained Defendants' objections to Plaintiffs' Exhibit P0005 stating only "sustained."

## II.    OFFER OF PROOF

An offer of proof must state the substance, purpose, and relevance of the proffered evidence. *Mercado v. Austin Police Dept.*, 754 F.2d 1266, 1267 (5th Cir. 1985). The offer of proof must explain what the evidence will show and the grounds upon which the evidence is admissible. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d. 790, 802 (10th Cir. 2001). Plaintiff incorporates herein the arguments previously made, referenced above, regarding the surveys contained in P0005.

### A. THE COURT SHOULD NOT EXCLUDE DR. CZEISLER'S TESTIMONY REGARDING THE SURVEYS OR RELIANT UPON THE SURVEYS FOR REASONS ALREADY PRESENTED TO THE COURT

Plaintiffs incorporate by reference the arguments made in ECF 330-1—Plaintiffs' Proposed Motion to Reconsider, which was not taken up by the Court, as well as the declarations supporting that Motion to Reconsider. Additionally, Plaintiffs incorporate their argument in ECF 365 opposing the extension of the Court's evidentiary rulings at summary judgment to trial.

### B. THE COURT SHOULD ADMIT THE SURVEY RESPONSE SHEETS AS EVIDENCE

The Court's reasons for excluding the survey response sheets stated in the Court's April 5, 2023, summary judgment order, described above, lack merit for the following reasons:

#### 1. The contents of the survey responses are relevant

The survey response sheets contain information collected from Class Members regarding topics directly at issue in this litigation, specifically sleep deprivation, mental health issues including anxiety and depression symptoms, lighting in cells including the inability of inmates to control the light brightness in their cells, and the amount of time inmates are or were required to spend in their cells. The survey response sheets and Dr. Czeisler's opinions regarding the survey response sheets are relevant to the substance of Plaintiffs' complaints of Defendants' denial of fresh air and regular outdoor exercise and recreation, as well as to Plaintiffs' incidental damages as a class. (**ECF No. 1**, pg. 12:9-14; 20:14-23).

#### 2. Plaintiffs' Cannot Be Sanctioned for Speaking to Their Attorney

The Court has only limited ability to interfere in the conversations between attorney and client. Prisoners have a constitutional right under the 14th Amendment to access the judicial system. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Dreher v. Sielaff*, 636 F.2d 1141, 1143 (7th Cir. 1980). Included within this right is the right of prisoners to communicate with their attorneys. *Ching v. Lewis*, 895 F.2d 608, 609-610 (9th Cir. 1990); *Milton v. Morris*, 767 F.2d 1443, 1447 (9th Cir. 1985); *Dreher*, 636 F.2d at 1143. Prisoners also have a First Amendment free speech right to communicate with their attorneys, separate and apart from their rights under the 14th Amendment. *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008). Neither the state nor its

officers may abridge these rights.

Denying a prisoner meaningful access to his attorney can preclude the prisoner from supplying his attorney with evidence that would further his interests. In this regard, a violation of a prisoner's right to access ends up prohibiting effective attorney-client communication. *Ching*, 895 F.2d at 610; *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 435 (E.D.N.Y. 2006). And, for cases involving class actions, the rules governing communications with class members pertain as though each member is a client of the class counsel. *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010).

The importance of effective attorney-client communication is recognized by the privilege accorded such communication. *Lonegan*, 436 F. Supp. 2d at 435. This privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Its purpose is to ensure that attorneys "know all that relates to the client's reasons for seeking representation" and "encourage clients to make full disclosure to their attorneys." *Id.* (internal quotations omitted).

The surveys here were conducted at the direction of class counsel, by legal assistants, and each respondent was a class member—a client. (Huang Decl. ¶¶3-10). Plaintiffs should not be sanctioned for exercising their constitutional right to communicate with their attorney.

### 3. Defendants Received All of the Response Sheets and are Not Prejudiced

Plaintiffs provided Defendants with exactly the same anonymized survey response sheets that were provided to Dr. Czeisler. The Defendants received everything in the same format and manner as received and reviewed by Dr. Czeisler. These documents were produced with Bates Numbers Czeisler 001320 to 001693. (Doughty Decl., ¶¶3-4).

Moreover, Defendants are not entitled to discovery they did not seek. Defendants never sought the de-anonymized surveys through discovery nor moved this Court to order their production, despite having ample time to do so. The Ninth Circuit has declined to conclude that "a lack of discovery, without more, constitutes prejudice" especially where a district court could have reopened the discovery period, "and prejudice must relate to the difficulty a party may face in proving its case at trial." Conlon v. United States, 474 F.3d 616, 624 (9th Cir. 2007) (internal citations omitted).

- 5 -
**PLAINTIFFS' OFFER OF PROOF RE PLAINTIFFS' EXHIBIT 0005 AND CZEISLER TESTIMONY
CASE NO.: 3:19-CV-02724 SK**

Defendants requested and received a lengthy, two and a half month extension to complete their depositions of Plaintiffs' experts, after receiving all of the information upon which Dr. Czeisler relied, including the anonymized surveys. (ECF 287, p. 1; ECF 294). Defendants, having elected not to pursue the de-anonymized communications, cannot claim prejudice.

### 4.  Plaintiffs Did Not Violate the Court's Order When Conducting the Survey

Contrary to this Court's conclusion, the surveys generating the survey response sheets were not human subject testing; they were interviews performed in the context of the attorney-client relationship. These interviews were not designed nor intended for use in research and were not done in connection with any institute of higher learning. (Huang Decl. ¶ 6). Dr. Czeisler, a world renowned scientist, testified under oath in deposition that he does not characterize the surveys as a human subject examination or study. (Doughty Decl., ¶8, Exhibit D). Therefore, the Court's characterization of these interviews as human subjects research is an error of fact, and exclusion of testimony should not be based upon that error.

Attached as Exhibit B to the Huang Declaration is the consent agreement provided to the class members. This consent agreement clearly specifies that the use of their information is for this lawsuit. The fact that plaintiffs did not intend to violate the Court order is demonstrated by the end of the consent agreement, which specifically states that Plaintiffs' counsel would only attempt to do medical testing if the court issues an order allowing it. (*See also*, Huang Decl., ¶¶ 7-12).

### 5.  Hearsay Objections Are Inapposite

Plaintiffs offer the surveys not for the truth of the material they contain, but instead as a evidence for the trier of fact of a partial basis for Dr. Charles Czeisler's opinion (as well as Dr. Ghannam's). Federal Rule of Evidence 703 (Bases of an Expert) allows for the introduction of other wise inadmissible data and facts:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, <u>they need not be admissible for the opinion to be admitted</u>. But if the facts or data would <u>otherwise</u> be inadmissible, the <u>proponent of the opinion may disclose them</u> to the jury only <u>if their probative value in helping the jury evaluate the opinion</u> substantially outweighs their prejudicial effect.

Here there is no jury so there is little risk of prejudice to outweigh the probative value of the surveys and Dr. Czeisler's testimony reliant upon the same. And if the material is before the Court, then the Court acting as trier of fact may decide what weight to assign the surveys and the elements of Plaintiffs' expert opinion reliant upon the same.

Finally, Defendants plan to call an expert, Dr. Mayer, in part to challenge the bases of Plaintiffs' asserted injuries. Dr. Mayer stated in his expert report that he planned to testify, *inter alia*, that: "many of the conditions described [in Plaintiffs' complaint] are present for only one (or two) of the inmates listed. Epidemiology can not [sic] study claims made about a single (or two) individual(s). Such claims fall under the heading of Specific Causation while epidemiology is a powerful tool for studying General Causation." Excluding the surveys and Plaintiffs' experts' testimony on the same could suggest a gap in the experts' analyses that did not in fact exist.

## IV.    CONCLUSION

For all of these reasons, the survey response sheets (Plaintiffs' Exhibit P0005) and Dr. Czeisler's and Dr. Ghannam's testimony in reliance on the same should be admitted as evidence.

August 7, 2023                                           GREENFIRE LAW, PC

                                                         By:    */s/ Rachel S. Doughty*
                                                                Rachel Doughty