**LAW OFFICE OF YOLANDA HUANG**
Yolanda Huang, SBN 104543
PO Box 5475
Oakland, CA 94605
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

**GREENFIRE LAW, PC**
Rachel Doughty, SBN 255904
Richard Brody, SBN 100379
P.O. Box 9055
Berkeley, CA 94707
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
Email: rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| KENYON NORBERT, TROY MCALLISTER, MARSHALL HARRIS, ARMANDO CARLOS, MONTRAIL BRACKENS, MICHAEL BROWN, and JOSE POOT, on behalf of themselves individually and others similarly situated, as a class and Subclass, <br><br> Plaintiffs, <br><br> vs. <br><br> SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSEY; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, CAPTAIN MCCONNELL and John & Jane DOEs, Nos. 1 - 50. <br><br> Defendants. | Case No.: 3:19-cv-02724 SK <br><br> **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO VARIOUS FILINGS (EC438)** <br><br> Dept.: Courtroom 4, 17th Floor <br>       Federal District Court <br>       450 Golden Gate Ave. <br>       San Francisco, CA <br><br> Hon. Sallie Kim, Presiding <br><br> TRIAL DATE: AUGUST 8, 2023 |

Plaintiffs respond to Defendants' "Omnibus Opposition" (ECF 438):

## I. REQUEST FOR JUDICIAL NOTICE (ECF 430) REGARDING

Defendants object to Plaintiffs' Request for Judicial Notice regarding the State of California's minimum standards for detention construction and operation on the grounds that (1) these provisions are irrelevant, and (2) that they might suffer some prejudice because Plaintiffs prevailed in their Motion in Limine to Exclude Evidence not Disclosed or Provided During Discovery (ECF 342).

### A. THIS COURT GRANTED PLAINTIFFS'S SECOND MOTION IN LIMINE AND SHOULD NOT ALLOW DEFENDANTS TO OFFER A NEW DEFENSE DURING TRIAL

Plaintiffs' Motion in Limine No. 2 ("MIL 2") sought, *inter alia*, to bar the introduction of evidence that Defendants complied with provisions of the California Building Code. (ECF 342.) The basis of Plaintiffs' requested exclusion of evidence was that Defendants failed to raise any means by which it complied with facial requirements of the Building Code as affirmative defenses (presumably by asserting that they were granted some sort of variance or waiver). (*Id.*)

This Court granted that portion of Plaintiffs' MIL 2, but on different grounds, holding that:

> And whether Defendant complied with the California Building Code does not appear to be relevant to the issue of the Fourteenth Amendment. Plaintiffs are reminded that there is no private right of action to challenge a violation of the California Building Code and that violation of a state law does not prove a violation of the Fourteenth Amendment. The Court will take judicial notice of the California Building Code, and the undisputed facts show that Defendant did not comply with the California Building Code in failing to provide an outside exercise area. The Court does not consider the California Building Code to be relevant and thus will not admit any other evidence from either party on this issue.

(ECF 387, p. 2: 21-28). [1]

Plaintiffs do not agree with the Court's conclusion regarding the relevance of the Defendants' policy to build jails without the Building Code's required outdoor space. Nevertheless, Defendants should be precluded from offering evidence of a waiver, on the grounds

---

[1] Additionally, this Court previously confirmed that there are no outdoor recreational facilities at the San Bruno Jail and found that inmates at the San Bruno Jail have no access to direct sunlight or outdoor recreation during their time incarcerated at that facility. (ECF 110, pg. 12:16-18 (Order on Motion to Dismiss and Preliminary Injunction)).

asserted by Plaintiffs in MIL 2, even as Plaintiffs should be allowed to make the argument that Title 24 and Title 15 provide compelling evidence of community standards that define the Constitutional requirements for conditions of confinement.

### B. DEFENDANTS' FAILURE TO COMPLY WITH THE BUILDING CODE IS RELEVANT TO WHETHER DEFEDANTS ARE VIOLATING THE 14TH AMENDMENT.

A fact is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. This Court has already taken Judicial notice of the fact that the California Board of State and Community Corrections' ("BSCC") standards (Title 24) require outdoor space and that the Defendants have disregarded those standards.[2] The content of Title 24 is relevant because the *minimum* standards it contains are strong evidence of contemporary standards of decency which prevail in California.

In *Inmates of the Riverside County Jail v. Clark* (1983, "*Riverside*"), California's 4th District Court of Appeal court sustained a finding that housing conditions of pretrial detainees was punishment without due process of law in violation of Cal. Const. art. I, § 7, and housing conditions for sentenced prisoners constituted cruel or unusual punishment in violation of Cal. Const. art. I, § 17. The appellate court affirmed the reliance of the court below on the "objective indicia" found in Cal. Code Regs. tit. 15, §§ 1000 et seq. to determine reasonable criteria and contemporary standards of decency.[3] *See* 144 Cal.App.3d 850 at 860-861. In so holding, the California 4th District Court of Appeal noted that although it would be inappropriate for a court to rely inappropriately upon the BSCC's standards "as fixing constitutional minima," "[i]t was proper for the court to accord great weight to the Board of Corrections' minimum standards" and to consider those along with the court's own observations of the facility and testimony regarding

---

[2] These standards are located at 24 Cal. Code of Regs. § 1231 et seq., and, regarding exercise areas specifically, at section 1231.2.10.

[3] Title 15 of the California Code of Regulations defines operating regulations; Title 24 is physical plant regulations. The BSCC's authority under each stems from section 6030 of the California Penal Code, which requires the BSCC to set "minimum standards for local detention facilities" including for "health and sanitary conditions" and for "recreation."

- 3 -

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO VARIOUS FILINGS (EC438)-- Case No.: 3:19-cv-02724 SK**

"contemporary standards of decency which prevail in California."[4] *Inmates of the Riverside Cty. Jail v. Clark*, 144 Cal. App. 3d 850, 861 (1983).

The BSCC's requirement at 24 Cal. Code of Regulations § 1231.2.10 mandates at a minimum that every detention center have outdoor recreational space comports with case law citing the Building Code to establish contemporary standards of decency and establish deliberate indifference on the part of defendants:

1) In *Castro v. City of Los Angeles*, the 9th Circuit held that Los Angeles' adoption of the California Building Code, which contained certain requirements for "sobering cells" which were not complied with at a Los Angeles jail, was "substantial evidence" supporting a finding "that the County knew that its cell design might lead to a constitutional violation among its inhabitants. 833 F.3d 1060, 1076-1077 (9th Cir. 2016). San Francisco has adopted the Building Code, which contains Title 24's requirement for outdoor recreation facilities at all detention facilities. San Francisco Ordinance 225-22 (2022).

2) *Castro* was relied upon in *Grizzle v. Cty. Of San Diego*, in which the court ruled in favor of detainee plaintiff, holding:

> Taking Plaintiff's allegations as true, Sheriff Gore, as the relevant policymaker, had actual and constructive notice that the implemented schedule violated Plaintiff's right to outdoor yard time. *See* CAL. CODE REGS., tit. 24 § 1231.2.10 (2018) ("An outdoor exercise area or areas must be provided in every Type II and Type III facility."). Like in *Castro*, where the county's failure to conform to approved ordinances constituted as deliberate indifference, Plaintiff's allegations that Sheriff Gore failed to conform to the approved requirements suggests the County was deliberately indifferent. Similarly, Plaintiff has sufficiently alleged that Sheriff Gore knew from Plaintiff's notice, and should have known, that the implemented schedule's consequence of forcing detainees to choose between constitutionally protected sleep and exercise violated their rights. Plaintiff alleges sufficient facts that the County, through its schedule and customs derived from it, was deliberately indifferent to his constitutional rights. Plaintiff adequately alleges the County is liable for these claims.

No. 17-CV-813-JLS, 2018 U.S. Dist. LEXIS 131014, at *24-25 (S.D. Cal. Aug. 3, 2018).[5]

---

[4] Note that here the court has also observed the facility. *See* ECF 110, p. 12:16-18.

[55] Notably, the Court also held that the *Grizzle* "Plaintiff has alleged a constitutional violation in being denied outdoor exercise for eight months." 2018 U.S. Dist. LEXIS 131014 at 13. Eight months is far less time than what has been served by many of the class members in this case.

- 4 -

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO VARIOUS FILINGS (EC438)-- Case No.: 3:19-cv-02724 SK**

3)      The Northern District of California, in *Pierce v. City and Cnty. of San Francisco*, relied in part upon Title 15 of the Code of Regulations, which are also promulgated by the BSCC to establish minimum standards for local detention facilities, to determine the constitutionality of conditions of confinement in another San Francisco detention facility.[6] *See Pierce*, No. 19-cv-07659-JSW, 2022 U.S. Dist. LEXIS 218869, at *8 (N.D. Cal. Dec. 5, 2022).

Additionally, the California Attorney General issued an opinion that the BSCC's standards do not impose an unfunded mandate or a "new program" on localities, but simply establish what is objectively "suitable" for conditions of confinement in California.[7] California Attorney General Opinion 99-1214 (May 2, 2000). In other words, the BSCC's standards simply memorialize current community standards of decency. The Attorney General's opinion cited to *Riverside* for the principle that "minimum standards set by Board for local detention facilities reflect constitutional requirements." *Id.* That 2000 Attorney General opinion, which dealt with juvenile facilities, noted that the BSCC's "minimum standards" "constitute objective criteria which are needed to ensure that facilities remain suitable places for the confinement of minors." *Id.*

### C.    THERE IS NO PREJUDICE TO DEFENDANTS

Defendants next argue that the Court should decline Plaintiffs' RJN because an apparently unrelated exhibit of Defendants' was excluded and because Defendants made a decision to not call a witness that they previously planned to call. Finally, Defendants argue that they have elected not to offer expert testimony on what the law is. None of these arguments is an appropriate ground for denying a request for judicial notice. Nonetheless, Plaintiffs address these arguments below.

#### 1.    THE EXCLUDED EXHIBIT DEFENDANTS CITE TO CONTAINS NO CONTRADICTORY EVIDENCE

Defendants objected that some of their exhibits relevant to this case were excluded based upon Plaintiffs' objection. They point to Exhibit 1063 in particular. But that exhibit contains *no*

---

[6] In other respects, the circumstances of *Pierce* are distinguishable, fact based, and offer at most, persuasive authority. *See NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1069 (9th Cir. 2007) ("a district court opinion does not have binding precedential effect")

[7] Opinions of the Attorney General, while not necessarily controlling, should be accorded "great weight" as to the meaning of a constitutional provision or statute. *City of San Diego v. Shapiro*, 228 Cal. App. 4th 756, 773 (2014); *Cty. of Fresno v. Clovis Unified Sch. Dist.*, 204 Cal. App. 3d 417, 427 (1988); *Cent. Delta Water Agency*, 653 F.Supp. 2d at 1079 (such opinions are "judicially noticeable persuasive, but non-binding authority").

apparent information about Title 24's outdoor exercise area requirement or Title 15's mandatory out of cell time—the subject matter of Plaintiffs' RJN. So it is unclear how excluding this unrelated document prejudices Defendants. Defendants may make their own offer of proof if they disagree with the Court's evidentiary ruling. *See* Fed. R. Evid. 103; *see* section II below.

### 2. EXPERT TESTIMONY IS NOT NEEDED TO INTERPRET THE LAW

This Court is equipped to take notice of the materials that Plaintiffs requested, and in fact has done so for many of the documents already in this case. No expert witness is needed.

#### a) A LOCALITY CANNOT AMEND THE BUILDING CODE TO BE LESS PROTECTIVE OF HEALTH AND SAFETY, AND SAN FRANCISCO HAS NOT ATTEMPTED TO DO SO

The City and County of San Francisco has adopted Title 24 as part of its triennial adoption of the California Building Code. (Ordinance 225-22 (Nov. 1, 2022).) San Francisco has no jurisdiction to adopt standards that are less stringent than those in Title 24 of the State Building Code. *Bldg. Indus. Ass'n v. City of Livermore*, 45 Cal. App. 4th 719, 724-726 (1996); *see also* San Francisco Ordinance 225-22 (Nov. 1, 2022). San Francisco has not attempted to amend Title 24 to eliminate BSCC's minimum requirements for exercise facilities. (San Francisco Ordinance 225-22 (Nov. 1, 2022); San Francisco Building Code, 2022 Ed.)

#### b) ANY BSCC WAIVER PROVISION WOULD BE AN ILLEGAL UNDERGROUND REGULATION AND WOULD BE VOID

BSCC has no authority to grant a variance or waiver of Title 24's requirements. The authority to grant a variance, 15 Cal. Code Regs. § 1011, was revoked in 1987—long before the 2006 date of occupancy of CJ3, as can be confirmed by a review of the notes to the current regulations.

#### c) ANY UNCODIFIED WAIVER WOULD BE AN ILLEGAL AND VOID UNDERGROUND REGULATION.

Even if Defendants were able to dig up some waiver or point to some inference of a waiver procedure on the part of BSCC (and they do not point to any particular document, making this whole argument reek of speculation), wholly aside from the lack of authority upon which to base

- 6 -

such a waiver, it would be an illegal underground regulation on the grounds of failure to comply with California's Administrative Procedure Act ("APA").

Under California law a regulation is defined as "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Cal. Gov. Code § 11342.600.) State agencies are required to adopt regulations following the procedures established in the State's APA and are prohibited from issuing and enforcing underground regulations. (Cal. Gov. Code § 11340.5.) "Underground" regulations, which are not adopted as regulations under APA procedures, are void and unenforceable. (*See Capen v. Shewry*, 155 Cal. App. 4th 378, 382, (2007) (agency's interpretation of ambiguous statute constituted regulation because it was not the sole "legally tenable" interpretation; because agency did not comply with APA procedures, its interpretive regulation was void); *United Sys. of Ark., Inc. v Stamison* (1998) 63 CA4th 1001; *NBS Imaging Sys. v State Bd. of Control* (1997) 60 CA4th 328.)

## II.   OFFERS OF PROOF (ECF NOS. 432, 434)

Defendants object to Plaintiffs' offers of proof. But Plaintiffs are entitled to submit offers of proof pursuant to Federal Rule of Evidence 103, which states in pertinent part:

> (a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
>
> (1) if the ruling admits evidence, a party, on the record:
>
> (A) timely objects or moves to strike; and
>
> (B) states the specific ground, unless it was apparent from the context; or
>
> (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.
>
> (b) Not Needing to Renew an Objection or Offer of Proof. Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.
>
> (c) Court's Statement About the Ruling; Directing an Offer of Proof. The court may make any statement about the character or form of the evidence, the

- 7 -

> objection made, and the ruling. The court may direct that an offer of proof be made in question-and-answer form.

USCS Fed Rules Evid R 103 (2023). Plaintiffs must be allowed to make their record where they may need to make a claim of error on appeal. The Court need not rule on an offer of proof.

Plaintiffs inquired about offers of proof at the Pre-Trial Conference and were instructed that either oral or written offers would be allowed.

### III.   EXPERT REPORT

Mr. Mirkarimi's expert report may be admissible as evidence of the materials which he has relied upon in reaching his opinions in this case. Plaintiffs have filed their Motion for Relief to preserve their ability to offer this expert report into evidence should it be appropriate during the trial.

### IV.   DEFENDANTS' STREAMLINING REQUEST WILL ACCOMPLISH THE OPPOSITE IF GRANTED

Defendants' request that the parties be required to obtain permission from the Court prior to filing written offers of proof or pocket briefs is in contravention of Fed. R. Evid. 103(a), which contains no requirement that a party first obtain permission from the Court before filing an offer of proof. Plaintiffs have filed written offers of proof to clearly preserve the record by concisely identifying the testimony or exhibit at issue, the relevance of such testimony or exhibit, and the reasons why such testimony or exhibit is admissible at trial.

Requiring an additional hearing during a busy trial day has the potential to cause unnecesary delay in the trial. For example, if one party raises the issue of needing to do an offer of proof on a particular issue, the other party may well say that they need time to conduct research on the issue, thus delaying any hearing while the same research work that would be done to address the issue in written form is performed. Plaintiffs have filed written offers of proof as a way to expedite trial, not delay it.

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO VARIOUS FILINGS (EC438)-- Case No.: 3:19-cv-02724 SK**

Respectfully Submitted by:

Dated: 8/8/2023    GREENFIRE LAW, PC

By: */s/ Rachel Doughty*
Rachel Doughty