**LAW OFFICE OF YOLANDA HUANG**
Yolanda Huang, SBN 104543
PO Box 5475
Oakland, CA 94605
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

**GREENFIRE LAW, PC**
Rachel Doughty, SBN 255904
Richard Brody, SBN 100379
2748 Adeline Street, Suite A
Berkeley, CA 94703
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
Email: rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| MONTRAIL BRACKENS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No.: 3:19-cv-02724 SK<br><br>**DECLARATION OF YOLANDA HUANG SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge: Honorable Sallie Kim<br>Trial Date: Completed |

I, Yolanda Huang, do declare and state:

1. If sworn as a witness, I could and would testify to my personal knowledge of the facts set forth herein.

2. I am an attorney, licensed to practice in the State of California, and admitted to practice before the District Court of the Northern District of California. I was admitted to the Bar in November of 1983. This year, will make the 41st year that I have been a licensed attorney in California.

3. Attached as Exhibit 1 is a true and correct copy of my CV.

4. During this time, I have worked in private practice, generally as a solo practitioner, in both criminal defense and plaintiff's civil litigation. For the past 11 years, I have primarily been litigating claims under 1983 in Federal court. These cases, many of which include challenges to conditions of confinement for county jails, arose out of a realization that many of my criminal defense clients spent years in custody before their day in trial. I had observed how my clients experienced and demonstrated significant mental and emotional deterioration. Clients became less able to verbally communicate. Clients demonstrated loss of vocabulary. I was concerned that clients would be unable to testify, if needed, in their own defense.

5. In 2012, my client Hector spent 3 years in pretrial custody, before we were able to win a dismissal of his murder charge, following a ten week jury trial. (*Peo v. Vilchis*, No. 568-928B, Superior Court, Alameda County) After the dismissal, for the first time, Hector was able to talk about what his life for the past 3 years was like. Following the dismissal of Hector's murder charges, many other inmates came forward, begging and demanding, cajoling, and lamenting, that I look into the conditions that exist in county jails. As a result of this continual demand, I eventually pivoted my practice from criminal defense to conditions of confinement cases. Some of the cases regarding conditions of confinement include, representing women who had miscarriages while in custody (*Mohrbabacher v Alameda. County*, 3:18-cv-00050-JD ND Cal); a woman forced to delivery her baby alone and in isolation (*Steele v. Alameda County*, 3:18-cv-05072 JD, ND Cal.), and holding arrestees for 72 hours in the hallways of Intake because the jail did not have the ability to process large numbers of arrestees (*Angell v. Alameda County*, 3:13-cv-0190 NC, ND. Cal.)

6. In the past decade, it is clear that conditions that do not result in death, have few attorneys stepping up to the plate. This is due in significant part to the Prison Litigation Tort Reform Act, 42 USC 1997(e), which requires a showing of physical injury, which many courts have

interpreted to mean serious physical injury. With death, there is no dispute that a serious physical injury has occurred. As a result, due to the nature, the difficulty of these cases, and the social prejudice against people accused of crime, most of whom are from marginal classes of Black of Hispanic origin, there are very attorneys litigating conditions cases of the type that the present case falls within, chronic conditions that create injuries and harms over a period of time.

7. A further challenge which discourages attorneys from taking on the types of conditions cases represented by this case, is as Dr. Czeisler oft commented, that for example, with cigarettes, it took the legal system 40 years to acknowledge that cigarettes cause cancer, after the U.S. Surgeon General declared that cigarettes are cancer causing. Cases such as the present case which is based upon the inexorable, but slow to be detected, conditions that result in chronic illness, seldom draw legal champions. And this is further hampered by the costs alone, which in this case reached $372,000.00.

8. The costs alone are significant enough to deter most attorneys from representing prisoners in cases such as this. The hourly rate cap in the PLRA is a further deterrent for many attorneys.

9. As a result, there have been no other cases in the country with counsel litigating prisoners right to sunlight.

10. Initially, plaintiffs obtained the assistance of two experts, who were willing to donate their time, on a pro bono basis. This was Dr. Jamie Zeitzer and Dr. Jess Ghannam. The need to retain Dr. Charles Czeisler was prompted by the Court's finding that Dr. Jamie Zeitzer was a clinician, and therefore, plaintiffs did not meet their burden for showing the causation between the lack of direct sunlight and Plaintiffs' medical problems. (ECF 110; p. 32) The Court specifically found that Dr. Zeitzer was not a medical doctor, had not treated or examined any of the plaintiffs, and that his knowledge was based on "general knowledge and not on any specific medical data." (ECF 110, p. 20) To meet the standard for causation outlined by this Court, plaintiffs sought someone who was well versed in the science of the field of circadian rhythm and the impact of sunlight on humans as well as a medical doctor. These qualifications are of a rarefied field. Plaintiffs were very lucky that the premier doctor and scientist in the United States, Dr. Charles Czeisler, agreed to be an expert

in this case. And to retain Dr. Czeisler required significant funding. However, without the assistance of Dr. Czeisler's highly qualified expertise in this field, plaintiffs would have been hard pressed to meet their burden of proof. Therefore, Dr. Czeisler's participation was essential for plaintiffs in order for plaintiffs to prove their case.

11. After this Court encouraged me to find co-counsel to undertake trial in this case, I contacted upwards of 25 different lawyers, including non-profits ranging from the Center for Constitutional Law in New York, to the ACLU, and there were no takers. Greenfire Law was willing to join in, but I had to agree to the responsibility for all costs.

12. If this Court were to limit the attorneys' fees to the maximum PLRA rate, without thereafter applying a multiplier, it would very significantly deter and dissuade attorneys from undertaking litigation of these types of cases. As it is, this field of law is challenging, and expensive, and not well served by the legal profession. Without adequate attorneys' fees and full reimbursements of expert fees and costs, it would be impossible to demonstrate constitutional violations based upon chronic conditions of confinement.

13. Furthermore, this case was heavily litigated. There were 30 days of depositions, with depositions of the named plaintiffs going close to the full seven (7) hours, in double sessions. The parties engaged in two mediations, extensive discovery, and numerous motions.

**II.     Hours and Fees**

14. In 2021, I received attorneys' fees in a class action on conditions (chronic raw sewage spills in CJ4) in the San Francisco County Jail at the rate of $675 her hour. (*Zayas v. San Francisco Sheriff's Office* Case No. 3:18-06155-JCS). Zayas involved representation of in-custody inmates in the San Francisco County Jail. Neither the San Francisco Sheriff's Office nor the City and County of San Francisco objected to that hourly rate.

15. My time spent in this case is a compilation of contemporaneous records. The actual time spent on video interviews are derived electronically from computer records. The time spent on email correspondence with defense counsel are directly exported from my computer. In calculating the time spent, I assigned .1 (or 6 minutes) to each email, as an average of some emails which required significant time both in drafting and then reading, and those emails which required a brief

time commitment.  The time spent on legal matters were not contemporaneous but periodic (weekly more or less).  Pat Giacometti, Adirah Rodriguez and Joshua Pai maintained contemporaneous time records, which are also used to calculate their paycheck.

16. Attached as Exhibit 2 is a true and correct copy of a spreadsheet summarizing the work performed in this litigation. Each item is correct and has been necessarily incurred in the case, the services for which fees have been charged were actually and necessarily performed, and each is allowable by law.

17. Attached as Exhibit 3 is a true and correct copy of a spreadsheet identifying costs which we are seeking to recover in this action. These costs are correctly stated, were necessarily incurred, and are allowable by law.

18. Attached as Exhibit 4 are the invoices for depositions from Veritext;

19. Attached as Exhibit 5 are the invoices for depositions form Behmke Court reporting;

20. Attached as Exhibit 6 are the invoices for depositions from other court reporting firms;

21. Attached as Exhibit 7 are the request for payment for defense experts for their depositions;

22. Attached as Exhibit 8 are the invoices from plaintiffs' experts.

23. Attached as Exhibit 9 are miscellaneous receipts.

I make this declaration under penalty of perjury under the laws of the State of California, executed this 31st day of October, 2023, in Berkeley, California.

                             _/s/ Yolanda Huang_
                             Yolanda Huang

Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on October 31, 2023, from Yolanda Huang for the filing of this declaration.

                             /s/ *Rachel Doughty*
                             Rachel Doughty
                             ATTORNEY FOR PLAINTIFFS