DAVID CHIU, State Bar #189542
City Attorney
JAMES F. HANNAWALT, State Bar #139657
Acting Chief Trial Deputy
SABRINA M. BERDUX, State Bar #248927
KAITLYN MURPHY, State Bar #293309
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3929 [Berdux]
Telephone:     (415) 554-6762 [Murphy]
Facsimile:     (415) 554-3837
E-Mail:        sabrina.m.berdux@sfcityatty.org
E-Mail:        kaitlyn.murphy@sfcityatty.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO and
PAUL MIYAMOTO, IN HIS OFFICIAL CAPACITY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENYON NORBERT, TROY MCALLISTER, MARSHALL HARRIS, ARMANDO CARLOS, MONTRAIL BRACKEN, MICHAEL BROWN AND JOSE POOT, ON BEHALF OF THEMSELVES INDIVIDUALLY AND OTHERS SIMILARLY SITUATED, AS A CLASS AND SUBCLASS, | Case No. 19-cv-02724-SK (LB) |
| | **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 481)** |
| Plaintiffs, | Hearing Date:   December 11, 2023 |
| | Time:          9:30 a.m. |
| vs. | Place:         Remote Via Zoom |
| SAN FRANCISCO COUNTY SHERIFF'S DEPARTMENT, CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO SHERIFF VICKI HENNESSY; CHIEF DEPUTY SHERIFF PAUL MIYAMOTO; CAPTAIN JASON JACKSON, CAPTAIN MCCONNELL AND JOHN AND JANE DOES, NOS. 1 -50, | Trial Date:    August 8, 2023 |
| Defendants. | |

1

## **TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................................ ii

3      I.      Background ........................................................................................ 1

4              A.     Complaint And Motion Practice ................................................ 1

5              B.     Czeisler Inmate Survey Costs Are Unrecoverable ..................... 3

6              C.     Summary Judgment And Plaintiffs' Excessive And Unnecessary Pretrial Work ............................................................................... 3

7              D.     Plaintiffs' Performance At Trial Does Not Support A Multiplier .............. 4

8      II.     Legal Standard ................................................................................. 4

9      III.    Argument ......................................................................................... 5

              A.     Plaintiffs Use The Wrong PLRA Lodestar ................................ 5

10             B.     The Court Must Reduce The Number Of Hours Plaintiffs Claim Because They Include Fees That Were Not Directly And Reasonably Incurred ....... 6

11                  1.     The Court Should Reduce Plaintiffs' Claimed Fees By 50 Percent For Time Expended Pursuing Unsuccessful Claims .......... 6

12

13                  2.     Plaintiffs' Request Includes Excessive, Unnecessary, And Vague Entries ....................................................... 10

14             C.     Plaintiffs' Counsel Is Not Entitled To Any Enhancement Or Multiplier .. 16

15             D.     Plaintiffs Seek To Recover Costs That The Law Does Not Recognize ..... 20

16                  1.     The Expenses Plaintiffs Seek To Recover Are Not Compensable Under 28 U.S.C. § 1920 ......................................... 20

17                  2.     Expert Fees And Miscellaneous Costs Should Not Be Included As Part of Plaintiffs' Claim .................................. 21

18

19      IV.    Conclusion ...................................................................................... 24

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ancora Techs., Inc. v. Apple, Inc.*
  2013 WL 4532927 (N.D. Cal. Aug. 26, 2013) ........................................................20

*Ashker v. Cate*
  2018 WL 3108924 (N.D. Cal. June 25, 2018).............................................4, 5, 17, 18

*Balla v. Idaho State Bd. of Correction*
  2016 WL 6762651 (D. Idaho Feb. 1, 2016)..............................................................19

*Boconvi v. Velocity Express, LLC*
  2018 WL 2248988 (N.D. Cal. May 17, 2018)......................................................10, 15

*Bogan v. City of Bos.*
  489 F.3d 417 (1st Cir. 2007)....................................................................................8

*Bown v. Reinke*
  2016 WL 2930904 (D. Idaho May 19, 2016) ............................................................19

*California Pro-Life Council, Inc. v. Randolph*
  2008 WL 4453627 (E.D. Cal. Sept. 30, 2008)............................................................9

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*
  934 F.3d 238 (2d Cir. 2019) .....................................................................................8

*Curtin v. Cnty. of Orange*
  2018 WL 10320668 (C.D. Cal. Jan. 31, 2018) ....................................................14, 18

*Dannenberg v. Baladez*
  338 F.3d 1070 (9th Cir. 2003) ..................................................................................7

*Dominguez v. City of San Jose*
  2023 WL 2717266 (N.D. Cal. Mar. 29, 2023).................................................6, 14, 21

*Dunlap v. Liberty Nat. Prod., Inc.*
  2016 WL 591759 (D. Or. Feb. 12, 2016) ...................................................................8

*Gates v. Deukmejian*
  987 F.2d 1392 (9th Cir. 1992) ................................................................................21

*Ginest v. Bd. of Cnty. Comm'rs of Carbon Cnty., WY*
  423 F. Supp. 2d 1237 (D. Wyo. 2006)......................................................................19

*Glauser v. GroupMe, Inc.*
  2015 WL 2157342 (N.D. Cal. May 7, 2015)............................................................21

*Goodwin v. Metts*
  973 F.2d 378 (4th Cir. 1992) ..................................................................................12

*Gudenkauf v. Stauffer Commc'ns, Inc.*
   158 F.3d 1074 (10th Cir. 1998) ....................................................................8

*Havens v. Leong P'ship*
   586 B.R. 760 (N.D. Cal. 2018) ....................................................................12

*Hensley v. Eckerhart*
   461 U.S. 424 (1983).................................................................6, 7, 10, 24

*Hernandez v. Grullense*
   2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) ...........................................12

*Johnson v. Hey Now Properties, LLC*
   2019 WL 586753 (E.D. Cal. Feb. 13, 2019)...............................................20

*Kelly v. Wengler*
   822 F.3d 1085 (9th Cir. 2016) ................................4, 5, 16, 17, 18, 19

*Laffey v. Northwest Airlines, Inc.*
   572 F. Supp. 354 (D.D.C. 1983) ................................................................19

*Lopez v. Cook*
   2016 WL 7384021 (E.D. Cal. Dec. 20, 2016) ...........................................23

*Martin v. Hadix*
   527 U.S. 343 (1999).....................................................................................4

*Mays v. Stobie*
   2012 WL 914919 (D. Idaho Mar. 16, 2012) ................................................8

*McCown v. City of Fontana*
   565 F.3d 1097 (9th Cir. 2009) .....................................................................9

*Mendez v. County of San Bernardino*
   540 F.3d 1109 (9th Cir. 2008) .....................................................................9

*Moreno v. City of Sacramento*
   534 F.3d 1106 (9th Cir. 2008) .....................................................................7

*Nadarajah v. Holder*
   569 F.3d 906 (9th Cir. 2009) .....................................................................10

*Nemmers v. City of Dubuque*
   764 F.2d 502 (8th Cir. 1985) .....................................................................21

*Parsons v. Ryan*
   949 F.3d 443 (9th Cir. 2020) ................................................................5, 16

*Perdue v. Kenny A. ex rel. Winn*
   559 U.S. 542 (2010)..............................................................................7, 16

*Prison Legal News v. Schwarzenegger*
    608 F.3d 446 (9th Cir. 2010) ...................................................................19

*Rodriguez v. Barrita, Inc.*
    53 F. Supp. 3d 1268 (N.D. Cal. 2014) .....................................................18

*Sanchez v. Cnty. of San Bernardino*
    2014 WL 12734756 (C.D. Cal. Mar. 10, 2014).........................................20

*Schwarz v. Sec'y of Health & Hum. Servs.*
    73 F.3d 895 (9th Cir. 1995) ........................................................................6

*Taniguchi v. Kan Pac. Saipan, Ltd.*
    566 U.S. 560 (2012).....................................................................................21

*Twentieth Century Fox Film Corp. v. Ent. Distrib.*
    429 F.3d 869 (9th Cir. 2005) ....................................................................10

*United States v. Navarro*
    800 F.3d 1104 (9th Cir. 2015) ...................................................................16

*Washington v. Philadelphia Cnty. Ct. of Common Pleas*
    89 F.3d 1031 (3d Cir. 1996) ........................................................................8

*West Virginia Univ. Hosp. Inc. v. Casey*
    499 U.S. 93 (1991)......................................................................................20

*Wyatt v. Cole*
    928 F.2d 718 (5th Cir. 1991) ......................................................................8

*Zeigler v. Cnty. of San Luis Obispo*
    2023 WL 3432238 (C.D. Cal. Mar. 1, 2023)...............................8, 12, 14

*Zeleny v. Becerra*
    2022 WL 562824 (N.D. Cal. Feb. 24, 2022) .............................................15

**Federal Statutes**
28 U.S.C. § 1920.............................................................................................5, 20

42 U.S.C. § 1988.................................................................................6, 7, 20, 21

42 U.S.C. § 1988(b) ............................................................................................4

42 U.S.C. § 1997e(d) ..........................................................................................4

42 U.S.C. § 1997e(d)(1)...................................................................................5, 6

42 U.S.C. § 1997e(d)(3)...................................................................................4, 5

**Rules**
Federal Rule of Civil Procedure 23(b)(2) ........................................................9

Federal Rule of Civil Procedure 26 ...............................................................................................23

Federal Rule of Civil Procedure 54(d) ................................................................................5, 20, 21

San Francisco opposes Plaintiffs' motion for fees and costs. The Court should adjust Plaintiffs' demand to $419,899.68 in fees, and $51,068.11 in costs to correct for Plaintiffs' use of the wrong hourly rate and other factors the Ninth Circuit has approved in rightsizing fee awards.

Plaintiffs overinflate their fee request by applying the maximum hourly rate for the year 2023 to all work performed when they should have used the lower 2019, 2020, 2021, and 2022 rates for work completed in those years. Plaintiffs also have not demonstrated any enhancement to the Prison Litigation Reform Act ("PLRA") maximum rate is appropriate.

The Court should reduce Plaintiffs' claimed hours by 50 percent to account for Plaintiffs' limited success at trial. Specifically, Plaintiffs' billing entries do not write off time spent on their unsuccessful out of cell time claims or prayer for monetary relief.

Plaintiffs' back-up data also shows errors in the number of hours claimed. The Court should impose a further 10 percent reduction on the hours claimed by Plaintiffs' 13 attorneys, four paralegals, three law clerks, and legal assistant to account for excessive, unnecessary, and vague time entries. Plaintiffs' records reveal block billing, efforts by attorneys to recover for clerical work, and efforts to recover for unsuccessful motion practice that did not advance Plaintiffs' position in the lawsuit.

The Court should finally deduct from Plaintiffs' claimed costs all expenses that are not compensable by statute, which covers more than 75 percent of Plaintiffs' costs claim, including expert work by witnesses who did not testify as well as time Dr. Charles Czeisler spent working on the inadmissible inmate survey.

## I.     Background

### A.     Complaint And Motion Practice

Plaintiffs filed their lawsuit in 2019 and after San Francisco moved to dismiss, the surviving claims included: Plaintiffs' 14th Amendment and California Constitutional claims against the City and its Sheriff based on two theories: (1) Plaintiffs did not receive sufficient access to direct sunlight and (2) Plaintiffs did not receive sufficient out of cell time. (*Id.*) Plaintiffs sought declaratory, injunctive, and monetary relief, including punitive damages. (ECF No. 1.)

Plaintiffs spent significant time briefing unnecessary and unsuccessful discovery motions. For example, Plaintiffs pursued a request to conduct a blood test and psychiatric survey of hundreds of

inmates. (ECF No. 63.) Plaintiffs doggedly pursued their demands despite their inability to show relevance, proportionality, or sufficient privacy protections for the incarcerated persons. The discovery dispute began on October 15, 2019 (ECF No. 63), and upon failing to meet their burden, the Court offered Plaintiffs the opportunity to provide additional information, which they declined to do. (ECF No. 87.) Ultimately, Plaintiffs were allowed to proceed with a blood test of a maximum of seven inmates, upon providing informed consent, and San Francisco was entitled to obtain its own samples from the same men. (ECF No. 107.) Plaintiffs never did so. Then, Plaintiffs attempted to renew their initial request more than two years later, at the close of fact discovery, and without curing their failure to obtain informed consent. (ECF Nos. 244, 244-1, 246, 322.) The Court again rejected the request.

Plaintiffs also twice demanded—and did not obtain—an order requiring in-person deposition appearances from City witnesses during COVID-19. (ECF Nos. 209, 210, 235-236.) Plaintiffs' counsel also refused to appear for depositions more than once per week, all of which required the parties to spend extensive time meeting and conferring to complete basic discovery. (ECF Nos. 211, 212.)

Plaintiffs also incurred unnecessary attorneys' fees by filing discovery disputes without first engaging in a proper meet and confer, thereby artificially inflating the amount of time required to litigate this matter. On August 3, 2021, Plaintiffs filed a discovery dispute. (ECF No. 224.) Defendants pointed out that Plaintiffs refused to meet and confer rendering court intervention premature. (*Id*.) The Court agreed and required meet and confer efforts. (ECF No. 225.) No further briefing was needed.

Plaintiffs also sought to compel a further deposition and unilaterally filed a letter brief without providing Defendants the opportunity to respond during a meet and confer. (ECF No. 252.) The Court permitted Defendants' response, (ECF No. 253, 255), and Plaintiffs were requested to provide further information and simply failed to do so. (ECF No. 256.)

Plaintiffs also filed multiple unsuccessful substantive motions. Plaintiffs permitted the Court's initial preliminary injunction to expire. More than six months later in January 2021, Plaintiffs moved to renew and expand the injunction. (ECF No. 197.) Plaintiffs did not meet their burden despite significant briefing (ECF Nos. 203, 205), and the motion was denied. (ECF No. 208.)

Plaintiffs also abandoned their Motion for Class Certification by failing to file a reply brief for approximately seven months after its due date; Plaintiffs' delay required the incursion of additional

unreasonable attorney's fees after the Court granted Plaintiffs leave to file the late reply and even then, Plaintiffs' motion was denied.  (ECF Nos. 191, 218.)

Plaintiffs also filed a multitude of motions for reconsideration, some captioned as administrative motions or motions for clarification, that were repetitive and denied repeatedly. (ECF Nos. 330, 332, 333, 394, 387, 419.) The Court admonished Plaintiffs for this practice and yet Plaintiffs continued to file inappropriate motions at whim. (ECF No. 395.) In fact, due to an extensive number of unmeritorious filings by Plaintiffs immediately preceding trial, the Court ordered that no motions could be filed during trial without permission from the Court. (Murphy Decl. Ex. A [Aug. 8 Tr. at 6:25-7:20]; ECF Nos. 430, 430-1 through 430-12; 431-437, 439-442.)

### B.    Czeisler Inmate Survey Costs Are Unrecoverable

San Francisco moved to exclude the testimony of Dr. Czeisler on the grounds that he relied upon information and documents that were not timely identified or produced, including an inadmissible inmate survey he designed and analyzed. (ECF No. 349.) The Court ruled Dr. Czeisler could testify only to the extent that his opinions did not rest on the inadmissible survey results. (ECF No. 387.) Yet, Plaintiffs seek reimbursement of extensive costs incurred for Dr. Czeisler's work on that inadmissible evidence. (ECF No. 481-8.) As an example, Dr. Czeisler seeks reimbursement for 88.6 hours out of 114.8 hours of work performed specifically related to the inadmissible survey. (*Id*.) An additional 58.6 hours are sought for his research assistants' work on the same survey. (*Id*.)

### C.    Summary Judgment And Plaintiffs' Excessive and Unnecessary Pretrial Work

The parties moved for summary judgment and the Court denied Plaintiffs' motion in its entirety and granted Defendants' motion to strike Plaintiffs' prayer for punitive and compensatory damages. (ECF No. 325.)

Plaintiffs identified dozens of exhibits in their pre-trial disclosures that were not produced in discovery, (ECF Nos. 351 through 351-9), then submitted a revised exhibit list paring their exhibits to 100 (ECF No. 413) and even those 100 the Court found "created undue burden for the Court and for opposing counsel." (ECF No. 427.) The exhibits combined numerous documents—sometimes in excess of a thousand pages—in violation of Court orders. (*Id*.)

*///*

### D. Plaintiffs' Performance At Trial Does Not Support a Multiplier

Plaintiffs did not prevail on their out-of-cell time claims and only partially prevailed on their direct sunlight claim, securing an injunction as to persons incarcerated one year or longer, less than half of the CJ3 population. (ECF No. 478.)

Plaintiffs' trial presentation and performance does not substantiate their request for a multiplier. On numerous occasions, Plaintiffs failed to properly lay a foundation for questions or documents. (Murphy Decl. Exs. A, F [Tr. at 35:7-9; 39:13-18; 534:5-17; 971:14-21; 1260: 3-5].) Plaintiffs attempted to admit documents into evidence that were not timely produced or not identified on their exhibit list. (Murphy Decl. Exs. C, D [Tr. at 596:5-598:15; 974:9-11; 464:25-465:25-466:23.) Plaintiffs also sought to introduce evidence that was beyond the scope of direct examinations or witness disclosures. (Murphy Decl. Exs. A-F [Tr. at 1321:1-12; 112:14-21; 377:8-14; 377:20-378:2; 378:8-13; 378:23-379:15; 3921:22-393:1; 418:11-15; 456: 3-7; 704:18-20; 710: 3-19; 712:24-713:6; 723:19-724:1; 742: 3-12; 727:13-21; 734:25-735:7; 737:4-12; 739:1-5; 739:7-13; 740:6-15; 1321:1-5; 1321:25-1322:9; 1324:6-10; 1325:5-11; 1328:17-24.) And Plaintiffs attempted to solicit testimony beyond that disclosed in their expert reports. (Murphy Decl. Ex. G [Tr. at 1382: 3-8; 1382:22-1383:3; 1407:23-1408:4; 1413:21-1414:16; 1415:15-23.)

## II. Legal Standard

The Court may, but is not required, to award fees to a prevailing civil rights attorney. 42 U.S.C. § 1988(b). When courts award fees, they "employ the 'lodestar' method to determine a reasonable attorney's fees award." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). Using the lodestar method, the court multiplies the "number of hours reasonably expended on a case by a reasonable hourly rate" to calculate the "lodestar figure." *Id.* at 1099 (citation omitted). Plaintiff "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Ashker v. Cate*, No. 09-CV-05796-CW (MEJ), 2018 WL 3108924, at *3 (N.D. Cal. June 25, 2018), o*rder amended*, No. 09-CV-05796-CW (MEJ), 2018 WL 3777168 (N.D. Cal. Aug. 9, 2018).

The PLRA narrows the recoverable fees in prison condition lawsuits two ways. 42 U.S.C. § 1997e(d). First, the PLRA limits the lodestar hourly rate to "150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3);

1    *Martin v. Hadix*, 527 U.S. 343, 353-54 (1999) (holding the PLRA "sets substantive limits by

2    prohibiting the award of fees based on hourly rates greater than a specified rate"). Second, it limits

3    recoverable hours to time on work that was "directly and reasonably incurred in proving an actual

4    violation of the plaintiff's rights" *and* either (1) "the amount of the fee is proportionately related to the

5    court ordered relief for the violation," or (2) the fee was directly and reasonably incurred in enforcing

6    the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1).

7         Once the Court calculates the lodestar, it "determines whether to modify" the figure using an

8    enhancement. *Kelly*, 822 F.3d at 1100. "There is a strong presumption," however, "that the lodestar is

9    a reasonable fee" and enhancement is inappropriate. *Ashker*, 2018 WL 3108924, at *3 (quoting *Stetson*

10   *v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).) Plaintiff "bears the 'burden of proving that an

11   enhancement is necessary' and 'must produce specific evidence that supports the award'" in the

12   exceptional circumstances where enhancement applies. *Kelly*, 822 F.3d at 1102 (citations omitted).

13        A prevailing party may also recover specifically enumerated costs—such as court reporter

14   fees—as described in Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920.

15   **III.   Argument**

16        **A.    Plaintiffs Use The Wrong PLRA Lodestar**

17        All parties agree the PLRA caps the maximum hourly rate Plaintiffs' counsel can recover.

18   Plaintiffs based their calculations on the 2023 rate of $246 per hour for all work performed on the

19   case. This is not the correct rate for work performed in earlier years. *Parsons v. Ryan*, 949 F.3d 443,

20   465 (9th Cir. 2020) (remanding "with instructions to recalculate the fee award" by "determining the

21   correct rates for each year"). The Court's website lists the CJA rate for the relevant years, which can

22   be multiplied by 1.5 to calculate the maximum PLRA rate:[1]

| 42 U.S.C. § 1997e(d)(3) – PLRA Hourly Rate Cap | | |
|---|---|---|
| **For Services Performed** | **Maximum CJA Rate** | **Maximum PLRA Rate** |
| 01/01/2023 through present | $164 | $246 |
| 01/01/2022 through 12/31/2022 | $158 | $237 |
| 01/01/2021 through 12/31/2021 | $155 | $232.5 |
| 01/01/2020 through 12/31/2020 | $152 | $228 |

[1] https://cand.uscourts.gov/about/court-programs/criminal-justice-act-cja/cja-compensation-rates/.

| 02/15/2019 through 12/31/2019 | $148 | $222 |
| --- | --- | --- |

Plaintiffs applied the maximum 2023 rate for all work on the case. They should have used a blended rate—adjusting the PLRA rate based on the year they performed the work. Plaintiffs did not provide San Francisco with the back-up excel file to perform its own blended rate calculation, but applying the 2019 $222 rate to Plaintiffs' billed entries reduces their lodestar to $933,110.40.

**B.     The Court Must Reduce The Number Of Hours Plaintiffs Claim Because They Include Fees That Were Not Directly And Reasonably Incurred**

Courts "cannot uncritically accept the Plaintiffs' representations of hours expended; rather, the Court must assess their reasonableness" and "can reduce hours when documentation is inadequate, or when the requested hours are redundant, excessive, or unnecessary." *Dominguez v. City of San Jose*, No. 18-CV-04826-BLF, 2023 WL 2717266, at *6 (N.D. Cal. Mar. 29, 2023). Here, a careful assessment of the supporting documentation shows Plaintiffs artificially inflated their demand in two ways: (1) the request includes bills for time and resources spent on unsuccessful claims and prayers for relief and (2) the bills show attorneys billing for tasks the Ninth Circuit has held non-compensable. Consistent with well-established precedent, the Court should reduce Plaintiffs' claimed fees by 50 percent for the first error and an additional 10 percent for the second.

**1.     The Court Should Reduce Plaintiffs' Claimed Fees By 50 Percent For Time Expended Pursuing Unsuccessful Claims**

Civil rights plaintiffs often bring multiple theories of recovery in the same lawsuit and may ultimately only succeed on a sliver of the claims originally alleged. In those circumstances, the law does not entitle plaintiffs to recover fees for work they performed on unsuccessful claims. Instead, courts reduce the fee award in proportion to the plaintiffs' degree of success. This is because where the plaintiff achieves "only partial or limited success" the "hours reasonably expended on the litigation as a whole" are "excessive  . . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983); *see also Schwarz v. Sec'y of Health & Hum. Servs.,* 73 F.3d 895, 901 (9th Cir. 1995) (applying *Hensley*). This rule, which applies in all litigation under 42 U.S.C. § 1988 is even more necessary in PLRA cases because of the statute's independent requirement than any fee award be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d)(1).

The reduction in hours to account for time spent on unsuccessful claims is appropriate here considering Plaintiffs' failure to succeed at trial on their out-of-cell claims and their prayer for monetary relief, as well as their limited success on the direct sunlight claim.

In reducing a fee award to reflect time spent on Plaintiffs' unsuccessful claims, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. The purpose of this reduction is to "avoid [a] windfall to counsel" who would not have been permitted to recover for fees for their unsuccessful claims if they had been brought in a separate lawsuit. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, (2010) ("Section 1988's aim is to enforce the covered civil rights statutes, not to provide a form of economic relief to improve the financial lot of attorneys.").

"'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Dannenberg v. Baladez*, 338 F.3d 1070, 1075 (9th Cir. 2003); *see also* 42 U.S.C. § 1997e(d)(1); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("On review, we conclude that the district court properly exercised its discretion because 'the relief, however significant, is limited in comparison with the scope of the litigation as a whole.'").

A district court must consider the time expended pursuing unsuccessful claims and should make reductions accordingly. For example, in *Dannenberg*, a prisoner sued officials over his transfer, alleging that the transfer was retaliatory and resulted in a denial of adequate medical care. The district court awarded fees for all hours counsel expended on the case based "on the fact that [the prisoner] prevailed on his 'principle [sic] contention.'" *Dannenberg*, 338 F.3d at 1075. The Ninth Circuit remanded, finding that "unless [prisoner]'s counsel expended *no* time pursuing the claims on which [he] was unsuccessful, the district court's conclusion that all [ ] hours were 'directly and reasonably incurred in proving an actual violation of plaintiff's rights,' . . . cannot be correct." *Id.*

Where a plaintiff only succeeds on some of their claims or recovers only injunctive rather than monetary relief, courts consistently reduce their fee award by 50 percent. *See e.g., Steward v. Cnty. of Santa Clara*, No. 18-cv-04119-SI, 2022 WL 94911, at *2 (N.D. Cal. Jan. 10, 2022) (reducing lodestar by 50 percent "to account for plaintiff's limited success"); *Zeigler v. Cnty. of San Luis Obispo*, No. CV

17-9295-MWF (AFMx), 2023 WL 3432238, at *1 (C.D. Cal. Mar. 1, 2023) (50 percent reduction in injunctive relief case because plaintiffs only achieved partial success); *Dunlap v. Liberty Nat. Prod., Inc.*, No. 3:12-CV-01635-SI, 2016 WL 591759, at *6 (D. Or. Feb. 12, 2016), *aff'd*, 878 F.3d 794 (9th Cir. 2017) (50 percent reduction based on limited success); *Mays v. Stobie*, No. 3:08-CV-552-EJL, 2012 WL 914919, at *3 (D. Idaho Mar. 16, 2012) (recommending 75 percent reduction).

This approach from courts in the Ninth Circuit aligns with sister circuits that have also affirmed a 50 percent reduction based on unsuccessful claims or prayers for relief in circumstances like those here. S*ee e.g., Bogan v. City of Bos.*, 489 F.3d 417, 430 (1st Cir. 2007) (50 percent reduction); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 245 (2d Cir. 2019) (50 percent reduction where, although injunctive and monetary relief prayers were intertwined and plaintiff "achieved a legal victory and was awarded significant injunctive relief," it was also "denied much of the disputed injunctive relief it requested and failed to support a claim for money damages."); *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1034, 1044 (3d Cir. 1996) (50 percent reduction where party "hardly won a decisive victory in this case"); *Wyatt v. Cole*, 928 F.2d 718, 724 (5th Cir. 1991), *rev'd*, 504 U.S. 158 (1992) (50 percent reduction to account for limited success of the plaintiff on claims that arose from "a common core of facts and involve related legal theories"); *Gudenkauf v. Stauffer Commc'ns, Inc.,* 158 F.3d 1074, 1085 (10th Cir. 1998) (50 percent reduction based on limited degree of success).

Plaintiffs alleged San Francisco violated their rights because it "did not provide them with sufficient time out of their cells" and sought "an order requiring that each inmate get at least four hours of out-of-cell time per day." (ECF No. 478 at 62-63.)  This claim was "separate from" their direct sunlight claims and based on an entirely different nucleus of facts. (*Id*.)  The Court certified a separate "confinement class," consisting of all pretrial detainees in County Jail 3 who "have fewer than (1) one hour per 24-hour period of time out of their cell as part of their incarceration in San Francisco County Jail 3." (ECF No. 238 at 2.) The Court rejected Plaintiffs' claim that the jails policies regarding out-of-cell time violated the Fourteenth Amendment, holding "the evidence that Defendant proffered about the serious manner in which Defendant sought to protect the lives of inmates . . . balanced against the total lack of evidence from Plaintiffs that there was some alternative

method for providing more out-of-cell access during the COVID-19 pandemic," failed to meet Plaintiffs' burden. (ECF No. 478 at 63, 64.) Plaintiffs received no relief for the confinement class.

Plaintiffs also sought monetary as well as injunctive relief, which the Court rejected at summary judgment. (ECF No. 325 at 14-19.) The Court struck Plaintiffs' prayer for compensatory and punitive damages, finding monetary damages ill-fitting to the Rule 23(b)(2) class certified and that Plaintiffs had "fail[ed] to meet their burden" to show the type of malicious, wanton, or oppressive conduct required for punitive damages. (*Id*. at 18.)

Additionally, Plaintiffs' success on their direct sunlight claim was significantly less far-reaching than they sought—receiving an injunction that applied to less than half of the class. (ECF No. 478 at 8 [statistics on inmate population], 62 [order applies to inmates in custody one year or longer].) "Although the Supreme Court has disavowed a test of strict proportionality, it also suggested that a comparison of damages awarded to damages sought is required." *McCown v. City of Fontana*, 565 F.3d 1097, 1104-05 (9th Cir. 2009) (recognizing that a plaintiff who received $20,000 and no other relief had "clearly fell far short of his goal" when he demanded a $251,000 settlement.)

Despite these losses, Plaintiffs made no effort to distinguish between work connected with their out-of-cell time claims or prayer for monetary relief from work connected with their direct sunlight claims. Plaintiffs' fee motion does not deny that they seek to recover time spent on these unsuccessful claims. Their fee should be reduced by 50 percent accordingly. *See e.g., California Pro-Life Council, Inc. v. Randolph*, No. CIV S-00-1698 FCD GGH, 2008 WL 4453627, at *11 (E.D. Cal. Sept. 30, 2008) ("if a plaintiff obtained a result that was favorable, but only partially successful, full compensation for all the hours expended in litigation may be excessive").

The cases Plaintiffs cite do not require a different conclusion. (Mot. at 11.) *Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008) proves San Francisco's point because instead of scrutinizing and reducing the attorney's fees claim, the district court denied the motion for attorney's fees outright, even though the opposing party acknowledged that some fees were appropriate. The Ninth Circuit found that it was error to decline to award any fees and remanded "for a determination of a reasonable award," specifically authorizing the district court to do just what San Francisco seeks here—reduce the award for attorney's fees based on the facts of the case and counsel's conduct. *Id*. at

1130. And the portion of *Twentieth Century Fox Film Corp. v. Ent. Distrib.*, 429 F.3d 869, 884 (9th Cir. 2005), Plaintiffs' quote concerns an argument San Francisco does not advance—that "the district court was without jurisdiction to award appeal fees." *Id.*

## 2. Plaintiffs' Request Includes Excessive, Unnecessary, And Vague Entries

Not all time expended by an attorney is compensable. The Court should exclude "hours that were not reasonably expended," such as those that apportion attorney time for clerical tasks, duplicative work, block billing, or vague and ambiguous time entries. *Hensley* 461 U.S. at 433. Plaintiffs' billing records contain each type of error.

**Clerical Tasks Performed By Attorneys.** "[C]lerical tasks" such as "preparing binders, calling the clerk's office, filing documents, printing copies, creating folders and setting up video conferencing equipment" and document organization time are not compensable. *Boconvi v. Velocity Express, LLC*, No. 17-cv-02623-JST, 2018 WL 2248988, at *3 (N.D. Cal. May 17, 2018) (citing *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). Plaintiffs seek fees for non-compensable clerical tasks, billed at the maximum PLRA rate for attorneys:

| Date | Hours | Hours | Task | Biller | Detail |
|------|-------|-------|------|--------|--------|
| 6/3-6/6/23 | 40 | 40.0 | Assembly -Trial Exhibits into 3 hole punch | Student Clerk | |
| 8/3/2023 | 8 | 8.0 | Assembly -Trial Exhibits into 3 hole punch | Adirah Rodriguez | |
| 8/4/2023 | 4 | 4.0 | Deliver and serve trial subpoena Dr. Lisa Pratt | Adirah Rodriguez | |
| 8/4/2023 | 2.5 | 2.5 | Serve trial subpoena on SFGH custodian of records, medical records review | Adirah Rodriguez | |
| 9/30/2021 | 4.0 | 4.0 | Review Norbert Complaint | Pat Giacommetti | |
| 10/3/2022 | 6.0 | 6.0 | Index and organize defendants' exhibits 37085-61909 | Pat Giacommetti | |
| 10/4/2022 | 7.0 | 7.0 | Index and organize defendants' exhibits 37085-61909 | Pat Giacommetti | |
| 10/6/2022 | 7.0 | 7.0 | Index and organize defendants' exhibits 37085-61909 | Pat Giacommetti | |
| 10/7/2022 | 6.0 | 6.0 | Index and organize defendants' exhibits 37085-61909 | Pat Giacommetti | |

| 10/10/2022 | 4.0 | 4.0 | Index and organize defendants' exhibits 61910-86307 | Pat Giacommetti | |
| 10/11/2022 | 0.5 | 0.5 | TC w/ YH re indexing | Pat Giacommetti | |
| 10/12/2022 | 7.0 | 7.0 | Index and organize defendants' exhibits 61910-86307 | Pat Giacommetti | |
| 10/13/2022 | 6.5 | 6.5 | Index and organize defendants' exhibits 61910-86307 | Pat Giacommetti | |
| 10/14/2022 | 7.0 | 7.0 | Index and organize defendants' exhibits 61910-86307 | Pat Giacommetti | |
| 1`0/17/2022 | 6.0 | 6.0 | Index and organize defendants' exhibits 86308-97871 | Pat Giacommetti | |
| 10/18/2022 | 7.0 | 7.0 | Index and organize defendants' exhibits 86308-97871 | Pat Giacommetti | |
| 10/20/2022 | 6.5 | 6.5 | Index and organize defendants' exhibits 86308-97871 | Pat Giacommetti | |
| 10/21/2022 | 7.0 | 7.0 | Index and organize defendants' exhibits 86308-97871 | Pat Giacommetti | |
| 10/24/2022 | 4.0 | 4.0 | Input Nativ files for 0001 #42293-42341 | Pat Giacommetti | |
| 10/25/2022 | 7.0 | 7.0 | Input Nativ files for 0001 #42293-42341 | Pat Giacommetti | |
| 10/20/2022 | 0.1 | 0.1 | Review | Yolanda Huang | Confirm Deposition dates and times for each expert and Calendar depositions to all involved. |
| 10/21/2022 | 0.4 | 0.4 | Review/Draft | Yolanda Huang | Review and process depo notices for plaintiff rebuttal witnesses |
| 8/3/2023 | 0.7 | 0.7 | Admin | Yolanda Huang | Assist with box.com for printer; locate health record documents |
| 8/3/2023 | 0.3 | 0.3 | Admin | Yolanda Huang | Assist Copy Shop in accessing documents |
| 8/3/2023 | 0.8 | 0.8 | Trial Prep/Support | Yolanda Huang | Organize Exhibits for Trial: duplication; assembly, supervise staff, organize delivery |

**Unnecessary And Duplicative Conferences.** The size of Plaintiffs' legal team also led to inefficiencies. The Ninth Circuit has "approved of reductions in fees for unnecessary and duplicative

intra-office conferences" like the kind required by bloated legal teams. *Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *10 (N.D. Cal. Apr. 30, 2014). In a lawsuit where two attorneys primarily defended San Francisco at all stages of litigation, Plaintiffs seek to recover fees for 13 attorneys, four paralegals, three student law clerks, and one secretary. (Mot. at 14-15.) Courts routinely cut time for bringing new or unnecessary attorneys up-to speed as would be required given the size and breadth of Plaintiffs' litigation team. *See e.g., Goodwin v. Metts*, 973 F.2d 378, 384 (4th Cir. 1992) (affirming 50 percent reduction in lodestar based on "time that new lawyers spent becoming familiar with the facts and law of the case and overstaffing of attorneys").

**Block Billing.** Courts have also approved "[r]eductions of fees between 10–30% for block billing." *Havens v. Leong P'ship*, 586 B.R. 760, 768 (N.D. Cal. 2018), *aff'd*, 788 F. App'x 526 (9th Cir. 2019); *Zeigler*, 2023 WL 3432238, at *1 (reduction for "vague billing entries, block-billing and excessive entries"). Block billing is especially problematic in a case like this one, where Plaintiffs achieve only limited success at trial, and some work is attributable to the claims upon which Plaintiffs did not prevail. Additionally, a number of block-billed entries expressly encompass non-compensable clerical tasks, but Plaintiffs fail to identify how much time was spent on each task:

| Date | Hours | Hours | Task | Biller | Detail |
|------|-------|-------|------|--------|--------|
| | 490 | 490.0 | Communications | Yolanda Huang | Email Communications with Defense Counsels 2019-6-6- to end of Trial 8-17-2023; 4900 emails total |
| 11/8/2021 | 1.47 | 1.5 | Case Management | Yolanda Huang | Discovery Review & Organization |
| 11/12/2021 | 0.85 | 0.9 | Communications | Yolanda Huang | scheduling video visits, communications with expert, co-counsel |
| 11/13/2021 | 0.45 | 0.5 | Communications | Yolanda Huang | scheduling video visits, communications with expert, co-counsel |
| 11/24/2021 | 0.5 | 0.5 | Communicate | Yolanda Huang | weekly check in call: jury instruction analysis, depositions, and other discovery matters |
| 11/24/2021 | 0.26 | 0.3 | Communications | Yolanda Huang | w/ P.. G re document production |
| 11/24/2021 | 0.5 | 0.5 | Meetings | Yolanda Huang | w/ P. G re document production and discovery analysis |
| 12/3/2021 | 0.3 | 0.3 | Communicate | Yolanda Huang | Weekly meeting re discovery strategy; query re sentencing status discovery |
| 1/5/2022 | 0.9 | 0.9 | Communicate | Yolanda Huang | Weekly call to address discovery plans and efforts as well as |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | document management; discussion of remedies desired and claims; discussion of information gleamed from interviews with potential class members; discuss status of class designation |
| 3/3/2022 | 0.8 | 0.8 | Communicate | | Yolanda Huang | Set up translation services for client TC |
| 3/9/2022 | 1 | 1.0 | Communicate | | Yolanda Huang | Planning experimental design; discussing potential experts |
| 3/9/2022 | 1 | 1.0 | Communicate | | Yolanda Huang | Weekly call with co counsel and client; discussed experts, data collection/discovery, remedy calculations, and potential partners |
| 3/9/2022 | 0.2 | 0.2 | Review | | Yolanda Huang | Brief review of docket 216 and 232 |
| 3/23/2022 | 1.5 | 1.5 | Discovery | | Yolanda Huang | Review and organize defendants' discovery production |
| 4/7/2022 | 0.3 | 0.3 | Communicate | | Yolanda Huang | Exchange corr with co counsel re discovery workflow, file management, and acronyms |
| 8/4/2022 | 0.4 | 0.4 | Communications | | Yolanda Huang | emails |
| 8/29/2022 | 0.8 | 0.8 | Communicate | | Yolanda Huang | emails (15) re class member interviews |
| 10/6/2022 | 0.8 | 0.8 | Review/Communicate | | Yolanda Huang | Review Bernstein Draft report, email response |
| 3/29/2023 | 4.33 | 4.3 | Pleadings | | Yolanda Huang | pretrial schedule |
| | | | | | | |
| 3/29/2023 | 1.86 | 1.9 | Pleadings | | Yolanda Huang | pretrial schedule |
| 5/15/2023 | 2.54 | 2.5 | Communications | | Yolanda Huang | Jail Letter to CJ# |
| 5/15/2023 | 8.17 | 8.2 | Communications | | Yolanda Huang | Jail Letter to CJ# |
| 6/15/2023 | 2 | 2.0 | Trial Plannng/Communicate | | Yolanda Huang | Review/revise Joint Exhibit List, phone calls with RSD and RB re: Joint Exhibit List, Joint Witness List and Trial Brief, revise Joint Exhibit List, Joint Witness List and Joint Depo Designations, finalize and forward to defense counsel, review/revise Joint Pretrial Statement and forward to Defense Counsel |
| 6/16/2023 | 1.5 | 1.5 | Trial Plannng/Communicate | | Yolanda Huang | Review/revise Plaintiffs' Trial Brief |
| 6/16/2023 | 1 | 1.0 | Trial Plannng/Communicate | | Yolanda Huang | Reproduction/Delivery of Plaintiffs' Disputed Trial Evidence |
| 8/1/2023 | 1.5 | 1.5 | Trial prep | | Yolanda Huang | prep subpoena, locate witnesses, and TC process server - subpoena of trial witnesses |
| 8/2/2023 | 0.4 | 0.4 | Trial Prep | | Yolanda Huang | re: subpoenas |

**Vague And Ambiguous Descriptions Of Work Performed.** "Vague and ambiguous descriptions of work performed prevent the . . . court from assessing the reasonableness of the work, and should be eliminated or reduced." *Curtin v. Cnty. of Orange*, No. SACV16-00591-SVW-PLA, 2018 WL 10320668, at *14 (C.D. Cal. Jan. 31, 2018); *Dominguez*,  2023 WL 2717266, at *7 (reducing attorney's fee award where descriptions were "so general and/or repetitive" the Court "cannot properly discern the nature of the work performed . . . or the reasonableness of the time expended."). "[C]ourts routinely apply across-the-board reductions to address problems such as vagueness and excessive or duplicative billing." *Curtin*, 2018 WL 10320668, at *14.

Plaintiffs' counsels' overly vague and general time entries make it impossible for the Court to identify the specific hours expended on unsuccessful claims as compared to their successful claims. Under such circumstances, a 50 percent reduction of the lodestar is appropriate. *See Steward*,  2022 WL 94911, at *2  (finding "it appropriate to reduce plaintiff's lodestar by 50% to account for plaintiff's limited success" and citing Ninth Circuit cases that "Courts may, in their discretion, reduce a fee award to reflect limited success, such as when a plaintiff only prevails on some claims, or only against one of several defendants"); *Zeigler* 2023 WL 3432238, at *1  ("the Court reduces the lodestar figure by 50% based on the results obtained").

**Time Related To Excluded Evidence Or Unsuccessful Motions.** Plaintiffs seek fees for tasks unrelated to litigating this case, or otherwise deemed irrelevant and inadmissible, including the inmate survey, time spent with witnesses who were excluded at trial, and preparing government claim forms for future litigation.

| Date | Hours | Hours | Task | Biller | Detail |
|------|-------|-------|------|--------|--------|
| 10/10/2022 | 0.3 | 0.3 | Review | Yolanda Huang | Filled out sleep questionnaire |
| 10/29/2022 | 0.75 | 0.8 | Communicate | Yolanda Huang | MW paralegal & JDM: organization& content of survey results |
| 10/29/2022 | 0.8 | 0.8 | communicate | Yolanda Huang | Communication w/ inmate - survey participants |
| 10/31/2022 | 0.2 | 0.2 | Communicate | Yolanda Huang | email w/ JDM re survey data |
| 11/9/2022 | 0.4 | 0.4 | Communicate | Yolanda Huang | Glucose monitors (2) |
| 1/6/2023 | 1.7 | 1.7 | Meeting | Yolanda Huang | w/ SB & Loni Hancock video/document review |

| 1/6/2023 | 0.1 | 0.1 | Communicate | Yolanda Huang | w/ SB re research project |
|---|---|---|---|---|---|
| 1/9/2023 | 0.1 | 0.1 | Communicate | Yolanda Huang | Email CORR w/ SB re Loni Hancock production |
| 1/10/2023 | 0.2 | 0.2 | Review | Yolanda Huang | Loni Hancock bates set for production |
| 1/13/2023 | 3.5 | 3.5 | Deposition | Yolanda Huang | Defend - Defense Deposition. L. Hancock |
| 1/24/2023 | 0.1 | 0.1 | Communicate | Yolanda Huang | Email CORR w/ SB re Loni Hancock production |
| 5/15/2023 | 0.5 | 0.5 | Draft/revise | Yolanda Huang | Prep Tort Form Claims |
| 7/26/2023 | 1 | 1.0 | Communicate | Yolanda Huang | Meet with Tommy McDonald (media) |
| 7/26/2023 | 0.25 | 0.3 | Review | Yolanda Huang | Review media consultant proposal |
| 7/27/2023 | 0.4 | 0.4 | Trial Prep/Communication | Yolanda Huang | Discuss press extent of action |
| 7/28/2023 | 0.2 | 0.2 | Communicate | Yolanda Huang | Discuss press extent of action |
| 8/2/2023 | 1 | 1.0 | Communicate | Yolanda Huang | Meet with press coordinator |
| 8/2/2023 | 0.1 | 0.1 | Trial prep | Yolanda Huang | Meet with press coordinator |

Accordingly, the Court should reduce Plaintiffs' requested hours by at least 10 percent considering the breadth and scope of the issues raised. "'[B]illing judgment' is an important component in fee setting and fee awards. Sometimes lawyers in private practice are ethically required to reduce hours they actually worked—even on successful claims—if the fees would be excessive for a given task. Again, determining how much is nearly impossible given the records are imperfect, with some entries being overly vague. This imperfect recordkeeping itself gives cause to reduce the lodestar amount." *Zeleny v. Becerra*, No. 17-cv-07357-RS, 2022 WL 562824, at *6 (N.D. Cal. Feb. 24, 2022) (imposing "a roughly 5–10% further reduction"). "The Ninth Circuit has held that a district court may impose a. . . 10 percent . . . haircut. . .  based on its exercise of discretion and without a more specific explanation." *Boconvi*, 2018 WL 2248988, at *4. Such a reduction is appropriate here.

These deductions based on Plaintiffs fuzzy and inadequate time entries are further supported by evidence that prior courts have found Plaintiffs' counsel "engaged in multiple incidents of improper conduct" regarding "billing" by seeking reimbursement as defense counsel in a criminal lawsuit for work that was actually performed in a separate civil action, going so far as to instruct an employee

who had done work on both cases "to change the cover sheet for all of her invoices, and to put [the case caption for the criminal matter] on the cover sheets . . . . including the invoice for work on the civil case." *See* Murphy Decl. Ex. H, *In re Hoeft-Edenfield*, Alameda County Sup. Ct., Case No. 159202 (Apr. 29, 2014) at p. 15, see also *id.* at 2 (noting "the breathtaking level of disingenuousness, evasiveness and apparent dishonesty exhibited by [counsel] throughout her representation of Petitioner up to and including trial, after the trial in her dealings with Judge Morris Jacobson on ancillary fee payments, and while testifying in this court during the evidentiary hearing.").[2] This is especially true where Plaintiffs' counsel's billing entries include time for projects that appear unrelated to this litigation—for example, a 05/15/2023 entry for "Prep Tort Form Claims," which refers to government tort claim act forms that are required before a plaintiff files a claim for money damages against a public entity. The 2023 date suggests Plaintiffs have included in their fees calculation work unrelated to this lawsuit. Accordingly, a further 10 percent reduction in Plaintiffs' fees is appropriate.

### C.    Plaintiffs' Counsel Is Not Entitled To Any Enhancement Or Multiplier

Plaintiffs are not entitled to any multiplier of the PLRA hourly rate and have not met their burden to provide "specific evidence" that one is appropriate. *Perdue*, 559 U.S. at 543. Yet, Plaintiffs seek an enhancement, not just for each of the 13 attorneys working on the case, but also for a legal assistant and a paralegal, whose alleged "market rate" billing rates are already at or above the PLRA cap for attorneys. (Mot. at 14-15.) They have not met their burden to justify this request.

There is "[a] strong presumption" that "the lodestar figure represents a reasonable fee." *Parsons*, 949 F.3d at 467 (citations omitted). In PLRA cases, 150 percent of the CJA rate is the lodestar and enhancements cannot be "based on considerations already subsumed in the PLRA rate." *Kelly*, 822 F.3d at 1102. Enhancements "are available only 'in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Id.* (citation omitted)). Plaintiff "bears 'the burden of proving that an enhancement is necessary,'" relying on "specific evidence." *Id.* (citation omitted). They have not done so here.

---

[2] San Francisco requests judicial notice of the Alameda County Superior Court's holdings in *In re Hoeft-Edenfield*, pursuant to Rule 201 of the Federal Rules of Evidence. Court orders are the type of judicially noticeable facts that are not subject to reasonable dispute. *United States v. Navarro*, 800 F.3d 1104, 1109 n.3 (9th Cir. 2015) (taking judicial notice of unpublished court orders).

Plaintiffs' argument that the PLRA's rate cap "does not represent the marketplace," is essentially a challenge to the PLRA itself because through the PLRA, Congress set the rate for attorney's fees in prison litigation lower than the otherwise market rate. (Mot. at 17.) If the fact that the PLRA rate is below the market rate alone was a justification for enhancing the lodestar, the PLRA rate cap would be meaningless and enhancement would be appropriate in all PLRA cases, which is not the law.

The same is true of Plaintiffs' argument based on the time and labor expended. There is no need to use an enhancement to account for the time and labor expended because these criteria are already baked into the fee calculation, which considers hours reasonably expended on successful claims. For example, Plaintiffs argue an enhancement is appropriate because the parties had two unsuccessful mediations, but the time spent on mediation cannot be a basis for any enhancement because Plaintiffs' counsel is already seeking recovery for the time they spent participating in the mediation. (Mot. at 21.) Using this same work to support an enhancement would result in a windfall.

Plaintiffs also argue they entitled to a multiplier because of the alleged undesirability of this case. Plaintiffs, however, provide no evidence that no other competent attorney was willing to take on their case. And there is specific evidence to the contrary. At the same time Plaintiffs litigated this case, there were two other cases pending in the Northern District, challenging access to direct sunlight in San Francisco's jails. S*ee Pierce et al. v. City and County of San Francisco et al.,* Case No. 4:19-cv-07659-JSW (N.D. Cal. filed May 1, 2020) and *Vincent v. City and County of San Francisco*,  Case No. 1:20-cv-03129 (N.D. Cal. filed Dec. 14, 2020). "The Ninth Circuit is clear that an enhancement is permitted only upon a showing of 'specific evidence that no competent attorney is willing to take on a meritorious civil rights case because of insufficient fees.' Absent such evidence, Plaintiffs fail to show an enhancement is needed to encourage competent attorneys to represent clients in meritorious civil rights cases." *Ashker* 2018 WL 3108924, at *23 (quoting *Kelly*, 822 F.3d at 1104).

And while Plaintiffs' motion claims this case concerns a novel issue, this is an about-face from the position Plaintiffs have consistently taken arguing that the outcome here was controlled by well-established and binding Ninth Circuit precedent. In support of their initial preliminary injunction in 2019, Plaintiffs argued: "Complete denial of outdoor exercise for extended periods of time like in the

present case has been held to constitute" a constitutional violation," citing to Ninth Circuit caselaw over 20 years old. (ECF No. 8-1 at 12.)

Ultimately, Plaintiffs fail to produce any specific evidence of any factor supporting an enhancement that is not already subsumed by the lodestar analysis. "[T]he skill of counsel, difficulty and novelty of the underlying legal issues, and the contingent nature of the fee award are already baked into the unadorned lodestar" and therefore cannot justify a fee enhancement. *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1286-87 (N.D. Cal. 2014); *see also Ashker* 2018 WL 3108924, at *21 ("the PLRA rate generally subsumes the factors relevant to the determination of a reasonable attorney's fee, including the novelty and complexity of the case and the quality of the attorney's performance" (quoting *Kelly*, 822 F.3d at 1103)). The lodestar also "already reflects" the "risk in litigating this complex case from start to finish" and "achiev[ing] a result that benefits both its client and the general public." *Rodriguez*, 53 F. Supp. 3d at 1286-87. Plaintiffs present no "evidence of critical maneuvering or insight by Plaintiffs' counsel that would amount to rare and exceptional work," which is required to support an enhancement. *Curtin*, 2018 WL 10320668, at *13. Counsel's performance—in terms of their record both on paper and at trial —reveals the opposite—that Plaintiffs routinely ignored Court requests for further documentation, filed unsuccessful motions, and continued to misuse "Motions for Clarification" so frequently that the Court prevented the parties from filing anything in the case during trial without Court approval to cut down on frivolous filings.

The declaration from Richard Drury does not require otherwise because he makes no specific mention of fees awarded in PLRA cases—as opposed to other types of civil rights litigation not impacted by the PLRA—and although he claims to be "familiar with this litigation," did not review any of the trial transcripts or most of the court filings referenced above, showing Plaintiffs' counsels' failure to comply with Court orders and pursuit of failed claims and prayers for relief. (ECF No. 483 Paragraph 21.) It appears Plaintiffs cherrypicked filings for Mr. Drury to review, omitting those that were critical of their performance, making his opinion unreliable. For example, Mr. Drury reviewed Plaintiffs' motion for a preliminary injunction, but not the City's opposition or the Ninth Circuit Order denying their appeal. (*Id*.) He reviewed Plaintiffs' proposed findings of fact and conclusions of law, but not San Francisco's competing proposal. (*Id*.) And he did not review any of Plaintiffs' class

certification briefing. (*Id.*) Absent a review of the portions of the casefile critical of Plaintiffs'

positions and performance, Mr. Drury lacks the ability to make a credible recommendation regarding

any appropriate enhancement, which is ultimately a matter within the Court's discretion.

Similarly, Plaintiffs ask this Court to consider the *Laffey* matrix, *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), even though the Ninth Circuit rejected it as a basis for determining reasonable rates. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.").

And the string cite of extraordinary cases Plaintiffs cite where courts applied enhancements in the context of the PLRA, (Mot. At 14), only stand in contrast to Plaintiffs' performance here. *Kelly*, at 1100  (in 26 days, counsel had "engaged in extensive motion practice, writing numerous pre-trial briefs," while interviewing, deposing and preparing "numerous witnesses in three states" and reviewing 7,000 pages of discovery, most of which were produced "only five days before the beginning of the hearing"); *Bown v. Reinke*, No. 1:12-CV-262-BLW, 2016 WL 2930904, at *1, 2 (D. Idaho May 19, 2016) (awarding a multiplier as a "sanction" to opposing party whose conduct "wasted not only the time and efforts of [plaintiff's] counsel but also that of the Court"); *Balla v. Idaho State Bd. of Correction*, No. CV-81-1165-S-BLW, 2016 WL 6762651, at *11 (D. Idaho Feb. 1, 2016) (recognizing "[i]n most cases, the lodestar amount generally may not be enhanced on the basis of an attorney's performance" but finding enhancement appropriate because counsel's "exceptional" performance included a successful motion for sanctions "uncover[ing] substantial evidence that [defendant] altered, destroyed, and fabricated medical evidence"); *Ginest v. Bd. of Cnty. Comm'rs of Carbon Cnty., WY*, 423 F. Supp. 2d 1237, 1241 (D. Wyo. 2006) (recognizing defendants did not "object[] to the amount of fees requested" and only applying a 1.25 multiplier despite recognizing that out-of-state counsel's unique expertise was so valuable "it is highly unlikely" in-state counsel "could have similarly and efficiently performed these tasks"). All but one of these cases awarded an enhancement of *less* than the 2.0 multiplier Plaintiffs' seek for themselves. (Mot. at 14.) Plaintiffs have not shown any enhancement appropriate, let alone the specific and aggressive enhancement they seek.

**D.    Plaintiffs Seek To Recover Costs That The Law Does Not Recognize**

    **1.    The Expenses Plaintiffs Seek To Recover Are Not Compensable Under 28 U.S.C. § 1920**

Plaintiffs seek $374,185.87 in costs under Rule 54(d). (Mot. at 22.)  More than three-quarters of that comes from non-compensable expenses, such as expert fees and hotels for counsel who work fewer than 10 miles from the courthouse. "The types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920." *Ancora Techs., Inc. v. Apple, Inc.*, No. 11-CV-06357 YGR, 2013 WL 4532927, at *1 (N.D. Cal. Aug. 26, 2013); *see also Zeigler*,  2023 WL 3432238, at *2, *17  ("As several courts have recognized, in *West Virginia Univ. Hosp. Inc. v. Casey*, 499 U.S. 93, 102 (1991), the Supreme Court held that § 1988 does not convey authority to shift expert fees in civil rights litigation to the losing party"); *Johnson v. Hey Now Properties, LLC*, No. 2:16-cv-02931WBS KJN, 2019 WL 586753, at *4 (E.D. Cal. Feb. 13, 2019) ("Plaintiff cannot recover as costs of his litigation expenses for investigation and expert fees because they fall outside of the purview of Section 1920."). 28 U.S.C. Section 1920 defines recoverable costs as limited to:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1928 of this title.

 "As a result, prevailing parties cannot recover more than the witness fees authorized by § 1920 for experts who testified; they can recover nothing for services of experts in a non-testimonial capacity." *Sanchez v. Cnty. of San Bernardino*, No. CV 10-09384 MMM (OPx), 2014 WL 12734756, at *20 (C.D. Cal. Mar. 10, 2014). Plaintiffs' request for compensation for expert work—including for witnesses who did not testify—and hotel bills—are therefore not compensable costs. (ECF No. 481-3.) Exhibit J to the Murphy declaration includes a highlighted version of Plaintiffs' cost chart (ECF No. 481-3), indicating with a yellow highlight which of Plaintiffs' claimed costs San Francisco agrees are compensable. These total $51,068.11. The remainder are not compensable.

Plaintiffs devote less than one full page in their motion to justifying their costs and neither of the two cases they cite support the categories of costs in dispute here. *Nemmers v. City of Dubuque*,

764 F.2d 502 (8th Cir. 1985) was decided before the Ninth Circuit's opinion in *Gates v. Deukmejian*, 987 F.2d 1392, 1407 (9th Cir. 1992) holding it is reversible error to award expert fees to the prevailing party in a civil rights case. The Ninth Circuit in *Gates* found the district court's award of expert fees clearly erroneous because Section 1988 "does not convey authority to shift expert fees in civil rights litigation to the losing party." *Id*. at 1407. Earlier this year, Judge Freeman denied expert fees to a prevailing party in a civil rights action as non-recoverable on precisely these grounds. *Dominguez*, 2023 WL 2717266, at *8  ("Defendants object to certain identified costs as being unrecoverable expert fees. Plaintiffs concede that expert fees are not recoverable. And the Court agrees.") (citations omitted). Similarly, *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 2157342 (N.D. Cal. May 7, 2015), cannot justify Plaintiffs' claim for expert fees as costs because it did not address the issue; "the only cost in dispute relate[d] to the expedited delivery charge for [a] deposition transcript." *Id*. At *3. San Francisco allows the costs Plaintiffs seek to recover categorized as "delivery fee."

That Plaintiffs incurred *expenses* which are not compensable *costs* is not unique. Rule 54(d) costs have a "narrow scope," and are "limited to relatively minor, incidental expenses." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012). The Supreme Court explained: "Although 'costs' has an everyday meaning synonymous with 'expenses,' the concept of taxable costs under Rule 54(d) is more limited. . . Taxable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators. It comes as little surprise, therefore, that 'costs almost always amount to less than the successful litigant's total expense in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (citation omitted). Plaintiffs have not and cannot show that the vast majority of what they claim as costs in their Motion are compensable. Accordingly, Plaintiffs' cost request should be reduced to only those expenses for transcripts, reproduction and binding, interpreters, filing fees, and delivery frees.

### 2.   Expert Fees And Miscellaneous Costs Should Not Be Included As Part Of Plaintiffs' Claim

For the above-stated reasons, the majority of Plaintiffs' costs claim should be denied outright. But the costs should also be denied because they were not reasonably incurred in prosecuting Plaintiffs' successful claims.

**Costs Associated With Dr. Czeisler.** The only argument Plaintiffs make in support of their cost claim relates to two charges from Dr. Charles Czeisler—which collectively total $255,092.51. (ECF No. 481-3 at 2.) Dr. Czeisler's detailed bills are included as ECF No. 481-8 at 2-7 and 10-15. Plaintiffs argue that "without his assistance, the result obtained would seem highly unlikely." (Mot. at 22.) This explanation is inadequate to support his expenses because Plaintiffs ignore that the lion's share of Dr. Czeisler's time was devoted to an excluded survey and other otherwise inadmissible work that in no way contributed to the trial court's order regarding direct sunlight.

The majority of time Dr. Czeisler billed was also related to work he did to prepare and analyze survey data, which the Court excluded because Plaintiffs failed to comply with this Court's prior orders regarding inmate confidentiality and discovery. (ECF No. 387 at 4.)

The Court consistently and repeatedly held that this survey data was inadmissible. (ECF No. 325 at 2-4.) The Court found Plaintiffs' violation of the discovery order prejudicial to the City and potentially harmful to the inmates because there was no information given to participants about "how the information from the evaluation and testing would be used, and both the Federal Public Defender and San Francisco County Public Defender, who submitted amici curiae briefs, stated their concern about the potential effect of those tests on pending criminal cases." (*Id*. at 5.) The Court only permitted Dr. Czeisler to testify "insomuch as [his testimony] does not rest on inadmissible survey results." (ECF No. 387 at 4.)

It would be inappropriate for Dr. Czeisler to recover hundreds of thousands of dollars for designing and implementing a survey that so clearly violated the Court's orders and was excluded from trial and during summary judgment briefing. Many of Dr. Czeisler's time entries are also block-billed, preventing San Francisco and the Court from assessing how much time he spent on each task and parsing out any compensable time from non-compensable time entries.

Additionally, Dr. Czeisler's billing records seek to recover approximately $20,000 for multiple research assistants and "doctoral colleagues"—charging a rate of $125 and $450 per hour, respectively. (ECF No. 481-8 at 7.) Yet, Plaintiffs never identified these individuals or their rates as part of their expert disclosure. (ECF Nos. 350-7; 350-9; 350-10.) Further, Dr. Czeisler testified under

oath at his deposition that he had not discussed the substance of his testimony on this case with anyone other than Plaintiffs' counsel and Dr. Jamie Zeitzer. (Murphy Decl. Ex. I [Dep. Tr. 16:7-11].)

Dr. Czeisler also seeks to recover for additional work he did on this case after expert discovery closed. This includes entries for "follow-up review of literature," "preparation for inmate interviews," "interviews of inmates," "review of defense expert report," "preparation of questions for Attorney Yolanda Huang to ask inmates," "preparation of inmate questions," "completion of proposed questions for inmates," "preparation of sides for trial," and "preparation of slides with medical record summaries for testimony." (ECF No. 841-8 at 10-15.) From these records, it appears Plaintiffs' counsel and Dr. Czeisler intended to perform new fact-finding and demonstrative creation after the close of expert discovery in violation of Rule 26, which requires an expert to disclose all the bases of their opinions and any demonstratives. Accordingly, this work could not have been—and indeed was not— admissible at trial because any demonstratives were required to be disclosed with his expert report and he could not offer any opinions at trial based on new research and interviews he performed after his deposition. Of course, many experts spend time between their depositions and trial reviewing their report and transcript, but Dr. Czeisler's records reveal not just that he refreshed his recollection about the opinions he had already reached, but that he performed new work on the case. This is not a compensable expense.

**All Other Costs.** Plaintiffs say nothing in support of the multitude of other expenses they shoehorn into the costs. For example, Plaintiffs seek to recover costs associated with three experts who did not testify: Mr. Fogarty ($3,500), Dr. Bernstein ($13,566.60)--both of whom the Court precluded from testifying in response to San Francisco's Motion in Limine No. 1 (ECF No. 387 at 4)--and one additional expert, who not only did not testify, but who Plaintiffs never disclosed as potential trial witnesses: an HVAC consultant "Drenowski" ($350.) (ECF No. 481-3 at 2; ECF Nos. 350-7; 350-9; 350-10.) These costs were unnecessary, did not advance Plaintiffs' case, and are not recoverable. *See e.g., Lopez v. Cook*, No. 203CV01605KJMEFB, 2016 WL 7384021, at *6 (E.D. Cal. Dec. 20, 2016), order vacated on other grounds (disallowing fees for experts who did not testify at trial).

Plaintiffs also have 12 entries seeking to recover for downloading documents from PACER related to this lawsuit, (ECF No. 481-3 at 3), but all parties receive a free copy of any case filing and

so this cost was unnecessary and not reasonably incurred. They also included thousands of dollars in hotel fees during trial for attorneys whose business addresses are in Berkeley and Oakland.

Similarly, Plaintiffs seek recovery in their "costs" time a 14th attorney—Leigh Johnson—spent on the case, despite not including any CV or further information about this attorney or any effort to justify their billing rate—which exceeds the PLRA cap.

Accordingly, Plaintiffs' costs should be reduced to $51,068.11

## IV.     Conclusion

"Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill." *Hensley*, 461 U.S. at 436. This Court should drastically reduce Plaintiffs' motion for fees and costs based upon the foregoing. Any fee award should be no greater than $419,899.68 and any cost award should no greater than $51,068.11, calculated as follows:

| | |
|---|---|
| **Attorney's Fees**: | **$419,899.68** |
| Plaintiffs' claimed total hours after billing judgment reduction: | 4,203.2 |
| Multiplied by 2019 PLRA maximum rate ($222): | $933,110.40 |
| Adjusted to account for unsuccessful claims and relief (50%): | $466,555.20 |
| Adjusted to account for vague and block billed entries (10%): | $419,899.68 |
| **Costs**: | **$51,068.11** |

Dated:  November 14, 2023                                  DAVID CHIU
                                                                              City Attorney
                                                                              JAMES F. HANNAWALT
                                                                              Acting Chief Trial Deputy
                                                                              SABRINA M. BERDUX
                                                                              KAITLYN MURPHY
                                                                              Deputy City Attorneys

                                                                      By: */s/ Kaitlyn Murphy*
                                                                              KAITLYN MURPHY

                                                                              Attorneys for Defendants
                                                                              CITY AND COUNTY OF SAN FRANCISCO and
                                                                              SHERIFF PAUL MIYAMOTO, IN HIS OFFICIAL
                                                                              CAPACITY