# EXHIBIT F

```
                                              Volume 6

                                              Pages 1123 - 1349

              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Sallie Kim, Magistrate Judge

MONTRAIL BRACKENS, et al.,     )
                               )
          Plaintiffs,          )
                               )
  VS.                          ) NO. C 19-02724 SK
                               )
CITY AND COUNTY OF             )
SAN FRANCISCO, et al.,         )
                               )
          Defendants.          )
_____)

                               San Francisco, California
                               Wednesday, August 16, 2023
```

**TRANSCRIPT OF BENCH TRIAL PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
            LAW OFFICES OF YOLANDA HUANG
            2748 Adeline Street, Suite A
            Berkeley, California 94703
    **BY:  YOLANDA HUANG, ATTORNEY AT LAW**


            GREENFIRE LAW, PC
            2748 Adeline Street, Suite A
            Berkeley, California 94703
    **BY:  RICHARD A. BRODY, ATTORNEY AT LAW**
         **RACHEL S. DOUGHTY, ATTORNEY AT LAW**


       **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


REPORTED BY:  Ana Dub, RDR, RMR, CRR, CSR No. 7445
              Jennifer Coulthard RMR, CRR, CSR No. 14457
              Official United States Reporters

```
 1  APPEARANCES:  (CONTINUED)

 2  For Defendant:
                            OFFICE OF THE CITY ATTORNEY
 3                          Sixth Floor, Fox Plaza
                            1390 Market Street
 4                          San Francisco, California 94102
                       BY:  SABRINA M. BERDUX, ATTORNEY AT LAW
 5

 6                          OFFICE OF THE CITY ATTORNEY
                            1 Dr. Carlton B. Goodlett Place
 7                          City Hall, Room 234
                            San Francisco, California 94102
 8                     BY:  KAITLYN M. MURPHY, DEPUTY CITY ATTORNEY

 9

10  Also Present:           Chief Deputy Sheriff Lisette Adams
                            Winnie Fong, Paralegal
```

## **I N D E X**

Wednesday, August 16, 2023 - Volume 6

| DEFENDANTS' WITNESSES | PAGE | VOL. |
|---|---|---|
| **TILTON, STEPHEN** (SWORN) | 1131 | 6 |
| Direct Examination resumed by Ms. Berdux | 1131 | 6 |
| Cross-Examination by Ms. Huang | 1215 | 6 |
| Redirect Examination by Ms. Berdux | 1268 | 6 |
| | | |
| **MARTINEZ, JULIAN** (SWORN) | 1293 | 6 |
| Direct Examination by Ms. Berdux | 1293 | 6 |
| Cross-Examination by Ms. Huang | 1320 | 6 |
| | | |
| **MAYER, LAWRENCE** (SWORN) | 1330 | 6 |
| Direct Examination by Ms. Murphy | 1330 | 6 |

## **E X H I B I T S**

| TRIAL EXHIBITS | IDEN | EVID | VOL. |
|---|---|---|---|
| 19, pages 1 through 3 | | 1232 | 6 |
| 1071 | | 1128 | 6 |
| 1080 | | 1157 | 6 |
| 1088 | | 1144 | 6 |
| 1109 | | 1128 | 6 |
| 1110 | | 1128 | 6 |
| 1111 | | 1128 | 6 |
| 1131 | | 1202 | 6 |
| 1180 | | 1273 | 6 |

1  A.   I don't -- I don't hear many prisoners in three years
2  calling it "the hole."
3  Q.   And you understand that when prisoners call ad seg "the
4  hole," it's because they are referring to it as punishment?
5           MS. BERDUX:   Objection.   Lacks foundation.
6           THE COURT:   Sustained as speculation.
7  BY MS. HUANG:
8  Q.   Do you understand, sir, when you hear prisoners calling
9  ad seg "the hole," that they're referring to ad seg as
10 punishment?
11 A.   Absolutely not.  It is an administrative segregation.
12 Ad sep, that is, now.  It is a way of managing the facility.
13 Most incarcerated find their way into ad sep on their own
14 volition and their own actions.
15      So -- and there still are rights and privileges and
16 commissary and phones and TVs and movies and all the various
17 things in ad seg.  So it's -- someone may call it "the hole,"
18 but I strongly disagree with the term "disciplinary."
19 Q.   Now, when you had this lockdown and the gym was closed --
20 A.   Yes, ma'am.
21 Q.   -- is it true that if you had an outside facility, inmates
22 could have gone outside to do cardio and large muscle group
23 exercise?
24           MS. BERDUX:   Lacks foundation.
25           THE COURT:   Overruled.

1   Q.   And the finding is that by locking people in ad seg, in
2   and of itself, it causes mental health deterioration?
3           MS. BERDUX:   Objection, lacks foundation, beyond the
4   scope of this expert witness's designation, report.
5           THE COURT:   Sustained.
6           MS. HUANG:   I believe we went through this in his
7   deposition.
8           THE COURT:   He didn't testify it here today.
9           MS. HUANG:   Well --
10          THE COURT:   He didn't testify about any issue -- this
11  is beyond the scope of direct.   Your deposition and his report
12  may have been much wider than what's in the direct.
13  BY MS. HUANG:
14  Q.   Well, let me ask you.   You feel -- you've testified today
15  that the use of ad seg was appropriate by San Francisco,
16  correct?
17  A.   I testified that the use of ad seg is -- how San Francisco
18  applies the use of ad seg is similar to other county jails' use
19  of administrative segregation.
20  Q.   You're not giving the opinion that the way they use it is
21  appropriate, it's just similar to what other jails do; is
22  that --
23  A.   Correct.   There is a process in place for individuals to
24  be separated from the general population.
25  Q.   And it's also clear that -- and you would agree that

1   placing individuals in administrative segregation has a
2   detrimental effect on the incarcerated person's mental health?
3   **A.**   I'm not --
4           **MS. BERDUX:**   Objection.
5           **THE WITNESS:**   -- a mental health professional.
6           **THE COURT:**   Stop, stop.  There's an objection.  Sorry.
7           **MS. BERDUX:**   It's beyond this witness's expertise and
8   scope.
9           **THE COURT:**   Sustained.
10  BY MS. HUANG:
11  **Q.**   Now, in terms of the use of the out-of-cell time, you base
12  that on the documents that the jail gave, correct?
13  **A.**   And deposition testimony from the incarcerated persons.
14  **Q.**   And part of what you stated is that they had some use of
15  an indoor gym?
16  **A.**   That is correct.
17  **Q.**   All right.
18      And do you have an opinion whether or not having an indoor
19  space only and no outdoor space complies with Title 24?
20          **MS. BERDUX:**   Objection, this was excluded.
21          **THE COURT:**   Outside the scope of direct also.
22  Sustained.
23  BY MS. HUANG:
24  **Q.**   You talked about staffing, sir, correct?
25  **A.**   Yes.

1   out on COVID sick, quarantine or various other reasons.  It
2   could be also transports to court.  You'd have individuals that
3   are having to provide security coverage for the incarcerated
4   persons that were out in the hospital.  So all of that drives
5   the number of positions that they need.
6   **Q.**   You never evaluated whether or not the Sheriff's
7   recruitment processes were sufficient, did you?
8           **MS. BERDUX:**  Objection, beyond the scope of direct and
9   the expert's designation.
10          **THE COURT:**  Sustained.
11  BY MS. HUANG:
12  **Q.**   Did you look at recruitment processes at all?
13          **MS. BERDUX:**  Same objections.
14          **THE COURT:**  Overruled.
15          **THE WITNESS:**  I looked at what I believed one of the
16  staff members -- I don't know if it was McConnell, but I could
17  find it -- as far as what he reported in his deposition as far
18  as what the Sheriff's Office was doing to recruit and retain,
19  providing, you know, monetary incentives for individuals.  In
20  addition to that, a colleague of mine drafted a report on a
21  staffing analysis for the Sheriff's Association.
22  BY MS. HUANG:
23  **Q.**   That was Patrick McCowan?
24  **A.**   Patrick McCowan, correct.
25  **Q.**   All right.  And you reviewed that in preparation of your

```
 1  report?
 2  A.   I did not.
 3  Q.   But you know about that?
 4  A.   I know about that.
 5  Q.   All right.  And one of the issues in the sheriff's
 6  staffing report -- and tell me if you're aware of this -- is
 7  that County Jail 3 is on 8-hour shifts, correct?
 8           MS. BERDUX:  Objection, this is beyond the scope of
 9  direct, and the witness has testified he did not rely or use
10  that report.
11           THE COURT:  Sustained.
12  BY MS. HUANG:
13  Q.   You're aware that County Jail 3 was on 8-hour shifts?
14  A.   I believe I testified that they have three 8-hour shifts,
15  yes.
16  Q.   And the other downtown jail, did you look at that, had
17  12-hour shifts?
18  A.   I did not look at the other jail, no.
19  Q.   And there are certain inefficiencies resulting from 8-hour
20  shifts in a correctional setting?
21           MS. BERDUX:  Objection, beyond the scope.
22           THE WITNESS:  Overruled.
23           THE COURT:  CDC works on 8-hour shifts, there's
24  multiple sheriff's department that work on 8-hour shifts,
25  there's multiple sheriff's department that work on 12-hour
```

```
 1   Q.   What is the amount of out-of-cell time?
 2   A.   I don't --
 3   Q.   Isn't it 3 hours a day, 21 hours a week?
 4           MS. BERDUX:   Calls for speculation.
 5   BY MS. HUANG:
 6   Q.   Do you know?
 7   A.   I don't know because, again, I do not monitor that portion
 8   of the consent decree.
 9   Q.   Now, I believe you gave an opinion on whether or not the
10   space provided by San Francisco, the yard, was sufficient,
11   correct?
12   A.   That is correct.
13   Q.   And when I asked you in your deposition whether or not you
14   could calculate for me the square footage required by Title 24,
15   you were unable to do so.
16   A.   That is correct.
17   Q.   And in addition, when I -- you gave the opinion that the
18   jail was in compliance with BSCC standards.  Do you remember
19   that?
20           MS. BERDUX:   Objection.   Your Honor, I'd be happy to
21   talk about the BSCC compliance issues but did not do so at the
22   Court's order.
23           THE COURT:   It's beyond the scope of direct.
24   Sustained.
25           MS. HUANG:   No further questions.  Thank you.
```

**CERTIFICATE OF REPORTERS**

We certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Thursday, August 17, 2023

_____

Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter

_____

JENNIFER L. COULTHARD, RMR, CRR

Official Court Reporter

CA CSR#14457