EXHIBIT G

```
                                       Volume 7

                                       Pages 1350 - 1601

              UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Sallie Kim, Magistrate Judge

MONTRAIL BRACKENS, et al.,    )
                              )
         Plaintiffs,          )
                              )
  VS.                         ) NO. C 19-02724 SK
                              )
CITY AND COUNTY OF            )
SAN FRANCISCO, et al.,        )
                              )
         Defendants.          )
_____)

                              San Francisco, California
                              Thursday, August 17, 2023
```

**TRANSCRIPT OF BENCH TRIAL PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        LAW OFFICES OF YOLANDA HUANG
        2748 Adeline Street, Suite A
        Berkeley, California 94703
  **BY:  YOLANDA HUANG, ATTORNEY AT LAW**

        GREENFIRE LAW, PC
        2748 Adeline Street, Suite A
        Berkeley, California 94703
  **BY:  RICHARD A. BRODY, ATTORNEY AT LAW**
      **RACHEL S. DOUGHTY, ATTORNEY AT LAW**

      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CSR No. 7445
              Jennifer Coulthard, RMR, CRR, CSR No. 14457
              Official United States Reporters

| | |
|---|---|
| 1 | **APPEARANCES**:  (CONTINUED) |
| 2 | For Defendant: |
| | OFFICE OF THE CITY ATTORNEY |
| 3 | Sixth Floor, Fox Plaza |
| | 1390 Market Street |
| 4 | San Francisco, California 94102 |
| | BY: **SABRINA M. BERDUX, ATTORNEY AT LAW** |
| 5 | |
| 6 | OFFICE OF THE CITY ATTORNEY |
| | 1 Dr. Carlton B. Goodlett Place |
| 7 | City Hall, Room 234 |
| | San Francisco, California 94102 |
| 8 | BY: **KAITLYN M. MURPHY, DEPUTY CITY ATTORNEY** |
| 9 | |
| 10 | Also Present:      **Jose Poot** |
| | **Joshua Beloy** |
| 11 | **Chief Deputy Sheriff Lisette Adams** |
| | **Winnie Fong, Paralegal** |
| 12 | **Nuria de la Fuenta, Spanish Interpreter** |

```
 1                           I N D E X

 2

 3    Thursday, August 17, 2023 - Volume 7

 4
                                                    PAGE   VOL.
 5
      Defense Rests                                 1580    7
 6

 7    PLAINTIFFS' WITNESSES                         PAGE   VOL.

 8    BELOY, JOSHUA
      (SWORN)                                       1581    7
 9    Direct Examination by Ms. Huang               1582    7
      Cross-Examination by Ms. Murphy               1586    7
10    Redirect Examination by Ms. Huang             1589    7
      Recross-Examination by Ms. Murphy             1590    7
11

12

13    DEFENDANTS' WITNESSES                         PAGE   VOL.

14    MAYER, LAWRENCE S. (RECALLED)
      (PREVIOUSLY SWORN)                            1369    7
15    Cross-Examination by Ms. Doughty              1369    7
      Redirect Examination by Ms. Murphy            1432    7
16    Recross-Examination by Ms. Doughty            1442    7

17


18    ROGERS, MICHAEL
      (SWORN)                                       1446    7
19    Direct Examination by Ms. Berdux              1446    7
      Cross-Examination by Mr. Brody                1534    7
20    Redirect Examination by Ms. Berdux            1571    7

21

22

23

24

25
```

1  analysis or some kind of database analysis. So it's to present
2  results to the general scientific community.
3  **Q.** And do you think that the purpose of a complaint filed in
4  a legal case is to present the results of a scientific study to
5  the academic community?
6          **MS. MURPHY:** Objection. Beyond the scope of the
7  witness's expertise.
8          **THE COURT:** Sustained.
9          **MS. DOUGHTY:** Your Honor, may I respond to the
10 objection?
11         **THE COURT:** No.
12 **BY MS. DOUGHTY:**
13 **Q.** And do you know who the audience is for a complaint filed
14 in a legal case?
15 **A.** I assume it's for the defendant and for the judge or the
16 judge and jury, but I don't even know that for sure.
17 **Q.** Okay. And that's a different audience than the audience,
18 generally speaking, of a scientific article -- different
19 primary audience than the audience for a scientific article,
20 generally speaking; is that correct?
21 **A.** In general, yes.
22 **Q.** Okay. And since you've reviewed at least one complaint,
23 you know that a complaint doesn't include the same sort of
24 language and terms necessarily that a scientific paper would
25 include; is that correct?

1     **MS. MURPHY:** Objection. Beyond the scope of the
2  witness's expertise.
3     **THE COURT:** Sustained.
4  **BY MS. DOUGHTY:**
5  **Q.** So you reviewed the complaint in this case?
6  **A.** Yes, ma'am.
7  **Q.** And did the complaint in this case appear similar to you
8  to a scientific article?
9  **A.** No, ma'am.
10 **Q.** Okay. And did the language in the complaint -- strike
11 that.
12      Okay. I'm going to move on to some of the process in
13 general for science.
14      So would you agree that, in science, a very important part
15 of the process is defining the question you're asking in a
16 particular study?
17 **A.** Yes, ma'am. It's the critical first step; you have to
18 pose a question.
19 **Q.** Okay. And changes, slight changes even, to the question
20 asked in the design of an experiment can dramatically change
21 the answers your study will return. Do you agree with that
22 statement?
23 **A.** Very much so, yes.
24 **Q.** And when you're doing a literature search, the terms you
25 use significantly impact the number of -- number of studies

1  on the phone to call their lawyers, and so there was a very
2  well-defined how much would that difference be in terms of the
3  risk or the outcomes.  And some of these outcomes, like
4  cerebrovascular events, there are elephants running around that
5  are the causal factors and we're chasing mice; we're chasing
6  little, teeny things.
7      So the idea that if they did not have to use the phone,
8  they would be at decreased risk of fatal cerebrovascular events
9  just -- I didn't find any papers on that.
10 **Q.**  Okay.  So what you were looking for is the length of time
11 of a phone call, if being in the sunlight for that amount of
12 time would make a difference?
13 **A.**  In some rough approximation.  It didn't have to be that
14 time, but were there experiments where some people were given
15 more sunlight than other people and did it show up,
16 particularly in these long-term chronic conditions?  And I
17 didn't find any papers on that.
18 **Q.**  But if you had a case where somebody was totally deprived
19 of sunlight, that would probably put them at long-term risk of
20 disease; is that right?
21 **A.**  And they don't get vitamin D supplements?
22 **Q.**  No.  Just -- that's not part of my question.
23      ==If somebody was totally deprived of sunlight, then that==
24 ==would probably put them at a long-term risk of disease; is that==
25 ==correct?==

1          **MS. MURPHY:** Objection. Incomplete hypothetical,
2  vague, and beyond the scope of the witness's report.
3          **THE COURT:** It is beyond the scope of the report.
4  Sustained.
5          **MS. DOUGHTY:** It's -- he's commenting on
6  Dr. Czeisler's studies of sunlight.
7          **THE COURT:** His comments were not on whether the
8  effects of sunlight affected people. They were on whether the
9  studies that exist are statistically or epidemiologically
10 valid. That's a very different issue, and whether or not
11 Dr. Czeisler's report is epidemiologically valid. Dr. Mayer
12 did not opine on this direct issue.
13         **MS. DOUGHTY:** Your Honor, he did a literature search
14 for "sunlight" and "vitamin D" or some similar string of --
15         **THE COURT:** Overruled.
16         **MS. DOUGHTY:** Okay.
17                  (Pause in proceedings.)
18 **BY MS. DOUGHTY:**
19 **Q.**  So this gets a little at the counterfactual or --
20 counterfactual world idea that you had discussed in your
21 report; is that correct?
22 **A.**  Yes, ma'am.
23     I'm sorry. When you said this gets to it, I should not
24 answer it. I don't know what "this" is. It's dangling so --
25 **Q.**  Fair enough.

| | |
|---|---|
| 1 | because they're in a confined situation, yes. |
| 2 | **Q.** And so it's relatively easy to do the study? |
| 3 | **A.** Well, you have to be careful when you say "it's relatively |
| 4 | easy." There also -- the informed consent process to |
| 5 | experiment on inmates is extremely complicated, as it should |
| 6 | be, because they're not -- I mean, if we can get into a |
| 7 | discussion of free will. They don't have free will to consent. |
| 8 | They feel coerced to consent. |
| 9 | **Q.** So would you say that you're surprised that there haven't |
| 10 | been more studies on prison populations? |
| 11 | **A.** I'm surprised there's not been more analysis of prison |
| 12 | populations. They don't have to be controlled experiments. |
| 13 | You would think there'd be cases in which one cellblock gets |
| 14 | more sunlight and the other cellblock gets less sunlight, where |
| 15 | we could compare the two over a relatively large population. |
| 16 | **Q.** Okay. Do you agree that smoking causes lung cancer? |
| 17 | **A.** Yes, ma'am. |
| 18 | **Q.** And lung cancer is not a signature disease; right? |
| 19 | **A.** Explain -- there are a lot of definitions of "signature |
| 20 | disease." Explain what you mean. |
| 21 | **Q.** Okay. If I talk about mesothelioma, what do you |
| 22 | understand a signature disease to mean? |
| 23 | **A.** Mesothelioma. |
| 24 | **MS. MURPHY:** Objection, Your Honor. |
| 25 | **THE WITNESS:** Sorry. |

1  **MS. MURPHY:** Beyond the scope of the witness's report.

2  **THE COURT:** Sustained.

3  **MS. DOUGHTY:** Your Honor, may I respond to the objection?

5  **THE COURT:** You may.

6  **MS. DOUGHTY:** Okay. As an offer of proof, he has discussed the causation -- the lack of a causal link between the impacts to the plaintiffs and the conditions of confinement, and there are relatively few human diseases in which you can establish a firm causal link, which I believe he is aware of, and I would like to establish that.

12  **THE COURT:** So he didn't testify at all about the other human diseases. Dr. Czeisler did. And Dr. Mayer did not offer any rebuttal in his direct testimony about Dr. Czeisler's opinions. So, no, I'm not going to allow this because it is beyond the scope of his direct.

17  (Pause in proceedings.)

18  **THE COURT:** Dr. Mayer, would you like some water?

19  **THE WITNESS:** I have some.

20  **THE COURT:** Okay.

21  **THE WITNESS:** The lawyer brought me some water. Thank you, ma'am.

23  **BY MS. DOUGHTY:**

24  **Q.** Okay. You talked about Dr. Zeitzer briefly yesterday, Dr. Zeitzer, with a Z?

**A.** Yes, ma'am.

**Q.** Okay. And you complained about his spot-checks of lights; is that correct?

    **MS. MURPHY:** Objection, Your Honor. Misstates testimony.

    **THE COURT:** Overruled.

  But you can answer.

    **THE WITNESS:** I have no complaints about what -- Dr. Zeitzer did very detailed measurements. Dr. Zeitzer, with a Z, did very detailed measurements of the degree of light people got in different cells and different areas and all that. I have no complaints about what he did. I'm sorry you felt that I complained.

**BY MS. DOUGHTY:**

**Q.** Okay. So let me just understand, then.

  You believe that Dr. Zeitzer's measurements resulted in an accurate assessment of the strength and type of light that was in the cells of the class members; is that correct?

**A.** Well, I'm not --

    **MS. MURPHY:** Objection.

    **THE WITNESS:** I'm not -- I'm sorry.

    **MS. MURPHY:** Beyond the scope of the witness's report.

    **THE COURT:** Sustained.

    **MS. DOUGHTY:** The report addresses, Dr. Zeitzer says he did just spot-checks on the light and couldn't tell anything

1  **MS. MURPHY:** Thanks.

2  (Proceedings adjourned at 3:11 p.m.)

3  ---o0o---

4  **CERTIFICATE OF REPORTERS**

5  We certify that the foregoing is a correct transcript
6  from the record of proceedings in the above-entitled matter.

8  DATE: Friday, August 11, 2023

_____

Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter

_____

JENNIFER L. COULTHARD, RMR, CRR

Official Court Reporter

CA CSR#14457