LAW OFFICE OF YOLANDA HUANG
Yolanda Huang, SBN 104543
PO Box 5475
Oakland, CA 94605
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

GREENFIRE LAW, PC
Rachel Doughty, SBN 255904
Richard Brody, SBN 100379
P.O. Box 9055
Berkeley, CA 94707
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
Email: rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| MONTRAIL BRACKENS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO. <br> Defendants. | Case No.: 3:19-cv-02724 SK <br><br> DECLARATION OF YOLANDA HUANG IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES |

I Yolanda Huang, declare:

1. I am an attorney licensed to practice in the State of California, and admitted to practice before this Court. Everything stated herein is true of my own knowledge. If called to testify, I can and will testify as stated herein.

2. I am co-counsel for Plaintiffs in this matter. I am also the original attorney on this case, having filed the complaint in May of 2019. I operate a solo law firm and because I practice primarily on behalf of indigent criminal defendants, the financial resources of my firm are limited. My practice is nearly entirely contingent fee based. Borne of financial necessity, as well as ethics, is my general practice to keep fees and costs low.

3. In this particular case there was another factor at issue. Due to the initial posture of the case where Plaintiffs were seeking damages, I made every effort to keep costs low so as to maximize any potential damages recovery for Plaintiffs themselves. This is particularly demonstrated by the extraordinary successful effort I made to seek and obtain donated expert services from preeminent experts in the field, namely Dr. Jamie Zeitzer and Dr. Jess Ghannam. It is rare in litigation to have experts donate so much time. Dr. Jamie Zeitzer not only consulted but traveled to San Francisco to testify at the preliminary hearing, and then travel four (4) times to County Jail 3 in San Bruno to measure lighting in various cells, and then traveled twice to San Francisco to testify at trial. All on a pro bono basis. This demonstrates the effort Plaintiffs made to keep the cost of litigation low, as well as the significance and compelling nature of this issues addressed.

4. Funding this type of litigation is always difficult and expensive, and in this case, it was funded solely out of my own pocket. Relative to the resources of one person, the Defendants in this case had functionally unlimited and expansive resources, which they wielded at every turn to their advantage.

5. As addressed in Plaintiffs' opening brief, litigation of this matter lasted over four years, which litigation included significant written discovery, depositions, site visits, an appeal, numerous motions, and a lengthy trial. The parties twice tried to formally mediate a settlement of the case, to no avail. Instead of focusing on reasonable settlement, Defendants rigorously asserted numerous defenses, which Plaintiffs had to be prepared to address at trial. Many of these defenses

were ones that the Court had ruled against as early as January of 2020, when issuing a preliminary injunction. Regardless of such ruling, the City continued to rely upon these defenses. Throughout this litigation, Defendants have litigated ferociously, without regard to the attorney time or costs required. And yet, they now complain about Plaintiffs' request for fees, where many of their complaints focus on expenditures incurred to respond to Defendants' litigation tactics. I will address some examples below.

6.      **Reply Brief**. Because the parties are in settlement negotiations regarding the fees, Plaintiffs had proposed that the parties agree to delay the requirement that Plaintiffs prepare and file this reply to avoid Plaintiffs' incurring unnecessary fees. If the parties are able to reach a settlement, the fees required by this reply could be avoided. However, even on this simple proposal, Defendants refused to so stipulate and instead insisted that Plaintiffs fully brief the motion. Defendants refusal to stipulate and refusal to save fees where possible is reflected in their litigation strategy through-out the course of this case. Plaintiffs should be compensated for work necessitated by Defendants. Defendants' refusal here and in other instances reflects Defendants' far superior financial resources.

7.      **HVAC Expert.** Defendants object to Plaintiffs consultation with an HVAC expert. This expenditure was required by Defendants' insistence and continued argument throughout the litigation that the HVAC system brought in fresh air and so being inside the jail was comparable to being in fresh air. Defendants attempted to raise this specious argument at trial with the testimony of Captain Ramirez.. This specious argument required that Plaintiffs consult with an expert to review the engineering plans of County Jail 3, understand the air flow system and the air exchange rate. Defendants in fact introduced portions of the engineering plans which the HVAC system. Without the assistance of an HVAC expert, Plaintiffs would not have been able to successfully counter this argument and successfully cross Captain Ramirez.

8.      **Experts to Counter Genetics Defense.** Defendant objected to expenses incurred related to Dr. Bernstein and PA Fogarty. Their retention was necessary as rebuttal witnesses to defense expert Dr. Mayer. Dr. Mayer is a correctional medical doctor who Defendants retained to make the specious and racist argument that Montrail Brackens' diabetes was due to heredity, as Black

- 3 -

Americans have a statistical higher percentage of diabetes compared to other ethic groups. His opinion was without regard to economic factors which make fruits and vegetables less available due to cost as compared to factory produced highly processed foods and the existence of food deserts in Black communities. This then required Plaintiffs to retain both an endocrinologist (Dr. Bernstein) and a Physicians Assistant (P.A. Fogarty) who is a specialist in diabetes prevention and diabetes maintenance and peer to peer counseling. Montrail Brackens was diagnosed as pre-diabetic (which is reversible) for five (5) years before his diabetes escalated into full insulin dependent diabetes (which is not reversible). During those five years Mr. Bracken's environment was wholly within the control of Defendants, including his access to food, exercise, and direct sunlight. Dr. Bernstein and P.A. Fogarty were able to successfully rebut Dr. Mayer's argument that genetics was a primary determinative factor in the development of Mr. Brackens' insulin dependent diabetes, instead of the environmental factors controlled by Defendants. As a result of this successful rebuttal testimony at deposition, Defendants dropped their specious argument and chose not to call Dr. Mayer to the stand at trial.

9. **Motion Practice and Blood Testing.** The issue and proof of the physiological injury to humans from direct sunlight deprivation had not been litigated in any court of law in the United States prior to this case. And the proof necessary had therefor not been developed. This case is also anomalous because of our lack of access to our clients, this access being strictly controlled by Defendants. Any access required motion practice, but the limitations which arose from Defendants' vigorous opposition and the limitations that the court imposed due to that opposition, made the medical testing impractical and cost prohibitive. And for that reason, ultimately Plaintiffs were forced to proceed with an alternate method of proof—reliance upon existing medical records.

10. **Discovery.** In terms of the discovery issues, particularly Defendants' annoyance that I refused to schedule multiple depositions in a week, this is due to the fact that in order for me to fund the entire cost of this litigation, I had to earn income from other legal work, to support and fund this litigation in addition to maintaining the cost and expenses of my office. As a sole practitioner, I could not dedicate entire weeks to this matter solely. It should be noted that many of the depositions went the full 7 hours, and were held on multiple days, and that a close examination

- 4 -
DECLARATION OF YOLANDA HUANG IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES-- Case No.: 3:19-cv-02724 SK

of the deposition transcripts would show that Defense counsel's questions were unfocused, inefficient, and there was considerable waste of time during these depositions.

11. **Document Review.** Defendants' document production totaled 189,780 bate stamped documents, with hours of recorded jail calls of Plaintiffs with family members. Defendants document dump consisted of 150,000 items in the last 30 days before the discovery cut-off. These items had to be reviewed, catalogued, and organized. Yet, Defendants cavalierly assert that Plaintiffs' efforts to do so as efforts of a "bloated legal team." (ECF 487, p. 18) It would have been a dereliction of legal responsibility to not organize these documents because without organization it would not have been possible to review these documents.

12. **Staffing.** Defendants criticize the size of my team, without noting that the team worked individually and separately on discrete tasks. Work is always pushed to the lowest cost available worker. So, for instance, I used clerks to assemble binders of evidence, contract nurses to review medical records, and reserved attorneys for attorney tasks. Furthermore, due to the challenges of the job market, remote work, and part time choices, some of the individuals on the legal team were only affiliated with the case for a short time; however, the assignments they were given were discrete and of the kind not requiring them to get up to speed on the entire matter. The numbers do not demonstrate a "bloated legal team," as Defendant alleges, but rather reflect reasonable professional judgment.

13. **"Block Billing".** What Defendants disparage as block billing is not block billing. The billing is in fact discrete. Block billing takes place when large blocks of time, 3 to 4 hours are notated with multiple entries. Instead, my billing statements are for short, limited periods of time, and usually contain only one or related two tasks. For example, one entry on 3/23/2022 states "Review and organize Defendants' discovery production."  My notes are purposely general to not reveal attorney work product . Suffice it to say that in Spring, 2022, depositions were under way, including Plaintiffs' depositions of Defendants' 30(b)(6) witnesses, and review of discovery production was an appropriate and necessary legal task.

14. **Witness Preparation Consultant Leigh Johnson**.  Montrail Brackens was denied all human contact except for meeting with lawyers from March 2020 until Spring of 2023.   Because

- 5 -

DECLARATION OF YOLANDA HUANG IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES-- Case No.: 3:19-cv-02724 SK

Montrail had no children, he was unable to have video visits until 2023 because inmates with minor children were given the priority access to video visit. As a result, Montrail's ability to communicate with people, to interact with human beings severely and visibly deteriorated. This was also true for all the inmates incarcerated. Trial requires the ability to communicate and describe, and these are dependent and maintained through regular human interaction, which Defendants denied these individuals. Therefore, it was essential to have a witness prep consultant. Plaintiffs waited until the Friday before the week of trial before finally incurring this expense. Leigh Johnson is a licensed lawyer in the State of California (SB227014). She is an African American woman, who is very familiar and knowledgeable about the impacts of incarceration, she is a trial consultant. Wealthy litigants regularly use her services to prepare for trial, particularly defendants charged with white collar crime. As a measure of her generosity, Leigh Johnson donated one hour of her time, and gave this case a discount rate. Witness preparation in this case was essential because of the extreme sensory and human contact deprivation that defendants imposed on plaintiffs.

15. From my perspective, obtaining a preliminary injunction requires overcoming a high hurdle. The Court gave Defendants clear guidelines and direction. Yet, Defendants did nothing for three and a half years to implement any changes to protect the constitutional right to direct sunlight of those in their charge. What Defendants did instead during the years following the order on the preliminary relief, was to litigate ferociously, leveraging their superior resources to offer multiple defenses, many of dubious soundness which were not brought forth at trial. The cost of litigation could have been vastly reduced if Defendants had been reasonable, chosen to implement changes after the preliminary injunction. Defendant avers that "Plaintiffs did not provide San Francisco with the back-up excel file" for Plaintiffs' counsel's time. ECF 478, p. 12:4-5. In fact, counsel for Defendant requested a spreadsheet format of Ms. Huang's hours only from Ms. Doughty, and the same was provided by Ms. Doughty upon the same day in which the request was made— November 6, 2023, over a week before counsel for Defendant filed their opening brief. Attached as **Exhibit 1**, is a true and correct copy of the transmittal correspondence in response to this oral request.

- 6 -

DECLARATION OF YOLANDA HUANG IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES-- Case No.: 3:19-cv-02724 SK

16. Since the motion for fees was filed, additional time has been expended in attempting to settle this matter, evaluate potential appeal points, and prepare the briefing in support of this motion. Those additional hours are attached hereto in **Exhibit 2**. The total fee demand for these additional hours is $14,924.82. Plaintiffs anticipate a further additional 5 hours to prepare for and attend the hearing on the fee motion.

I make this declaration under penalty of perjury under the laws of the State of California. Executed this 20th day of November, 2023, in Berkeley, California.

/s/ *Yolanda Huang*
YOLANDA HUANG

Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on October 31, 2023, from Yolanda Huang for the filing of this declaration.

/s/ Rachel Doughty
Rachel Doughty
ATTORNEY FOR PLAINTIFFS