**LAW OFFICE OF YOLANDA HUANG**
Yolanda Huang, SBN 104543
PO Box 5475
Oakland, CA 94605
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

**GREENFIRE LAW, PC**
Rachel Doughty, SBN 255904
Richard Brody, SBN 100379
P.O. Box 9055
Berkeley, CA 94707
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
Email: rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| MONTRAIL BRACKENS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br>Defendant. | Case No.: 3:19-cv-02724 SK<br><br>**[Proposed] ORDER HOLDING THAT DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S PROPOSAL (ECF 494) IS NOT COMPLIANT WITH THE COURT'S INJUNCTION** |

On October 17, 2023, the Court issued Findings of Fact and Conclusions of Law following a two-week trial. (ECF No. 478, hereafter "Order".) As part of the Order, the Court required Defendant City and County of San Francisco to provide certain inmates access to direct sunlight. Specifically, the Court ordered:

> [T]he Court rules that Defendant must offer to each inmate who has been incarcerated for longer than a year the following: daily access to direct sunlight, weather permitting and in the absence of an emergency (including but not limited to a global pandemic or prison riot) for least 15 minutes.

(Order at p. 62:10-15.) The Court further stated:

> The Court finds that Defendant violated Plaintiffs' rights under the Fourteenth Amendment of the U.S. Constitution and Article I Section 7 of the California Constitution by failing to provide any access to direct sunlight, defined as access to sunlight without any mediation through glass or plastic or other solid substance that blocks ultraviolet light, and thus orders the injunctive relief noted above.

(Order at p. 67:1-5.) This Court also found that "[i]t is undisputed that, before August 2022, Defendant offered no inmate housed at CJ3 access to the outdoors *and thus no access to direct sunlight*"—making clear that, after trial, this Court equates direct sunlight access with access to the out of doors. (Order at p. 14:15-16, *see also,* Order p. 50:7-8 (discussing outdoor access to sunlight.)

On December 6, 2023, upon the stipulated request of the parties (ECF No. 491), the Court set a briefing schedule regarding San Francisco's proposal to comply with this Court's Order (ECF 492) by providing access by other than allowing access to the outdoors.

Defendant's proposal is to provide sunlight access to each eligible inmate via the existing gym attached to their housing pod.[1] (ECF 494, pp. 2:2-3, 11:8-10, 51.) Defendant San Francisco proposes to remove exterior metal louvers from the two windows in each of the housing units' gym at the County Jail in San Bruno, and install a "heavy-duty woven wire window guard to affix to the exterior of the building." (ECF 484, p. 5:25-26.) Defendant San Francisco further asserts that "[a]ll inmates covered by the injunction in County Jail 3 currently have access to at least 15 minutes per day in a redesigned gym." (ECF 494 p. 2:1-3.) Defendant offered photographs of modified windows in support of their proposal. (ECF 494-7, 494-8, 494-9, 494-10, 494-11, 494-12, 494-13, 494-14, 494-15.) San Francisco asserts that "[r]emoving the louvers and cleaning the windows increases the amount of direct sunlight into the gym." (ECF 494, p. 8:1-2.)

---

[1] CJ3 is rated to hold up to 768 inmates. (ECF 448, Stip. ¶2.)

Defendants' photographs do not demonstrate the presence of direct sunlight in the gyms. San Francisco did not provide light readings to establish whether the light visible in the gym photos was direct sunlight, reflected light, or artificial light. Further, San Francisco asserts that "when the project is complete, both of the gym windows in each pod gym will be redesigned and there will be no need to transport inmates outside of their assigned pod to offer access to direct sunlight." (ECF 494, p. 11:8-10.)

Defendant San Francisco does not discuss or mention:

1) the sun's constant movement during the day;
2) the variation of the sun's angle by season;
3) the directions each gym's window faces;
4) the impact of each gym window's direction, the sun's constant movement and the variation of the sun's angle by season on the times when direct sunlight enters each gym, if at all;
5) the impact of windows in vertical walls, perpendicular to the ground on the amount of sunlight admitted into each gym;
6) the actual location inside the gym that receives direct sunlight (e.g., floor or walls) and the accessibility of that sunlight location to inmates;
7) the scheduling of the qualified inmates so that they have access to the gym when the direct sunlight is shining into each gym; and
8) that the conflicting use of the gyms as an exercise area does not conflict with or impede or prevent qualified inmates' access to direct sunlight and exercise.

Plaintiffs' opposition and objections are on the grounds that the window modifications will not result in sufficient direct sunlight entering the gyms to comply with the Order.

Plaintiffs assert that there is a difference in being able to visually perceive direct sunlight versus access in the form of direct sunlight exposure on skin. The myriad health risks associated with the lack of exposure to direct sunlight derive from a lack of direct sunlight exposure on skin. (Czeisler testimony, Tr. 357:11-358:14, Czeisler Decl., ECF 497 ¶26.) Plaintiffs assert that Defendant's proposal does not take into account the fact that "the sun constantly moves and

1 changes its position across the sky, and the angle of the sun varies by season." (ECF 495 p. 2:6-7.) The Court agrees.

Dr. Charles Czeisler, Plaintiffs' expert,[2] submitted a detailed declaration (ECF 497, "Czeisler Decl.") discussing the daily and seasonal movements of the sun and the configuration of the physical structure of County Jail 3. He then offered the opinion that "modified pod gyms will not comply with the Court's order to offer inmates 'daily access to direct sunlight . . . for at least 15 minutes. . .without any mediation through glass or plastic or other solid substance that blocks ultraviolet light.'" (Czeisler Decl. ¶ 27 (quoting Order).) Dr. Czeisler concluded that when direct sunlight did enter the gyms, it would range from a sliver to a larger beam that would travel up or down the opposite wall, and that for a portion of the time that the beam was inside the gym, it would be "above the heads of the inmates" and therefore inaccessible and not direct sunlight. (*See* Czeisler Decl. ¶21.) Dr. Czeisler concluded "[a]t no time would direct sunlight fill any of the gyms, regardless of facing direction of the windows…." (*See* Czeisler Decl. ¶22),

Additionally, Plaintiffs assert that scheduling and other conflicting uses of the space present logistical challenges to the proposal that Defendant has not addressed. Dr. Czeisler concluded that an "indoor plan would require Defendant to count for the narrowness of the beams of direct sunlight that could come through the high vertical windows on the walls of the gyms, the potential blocking of a given beam of direct sunlight by another inmate seeking such exposure, and the complexity of the algorithm required to identify in which gyms and where in each gym direct beams of sunlight would be located on a given date and time." San Francisco's submitted plan did not include any discussion of the required planning, or scheduling of the gyms[3] to show that each housing pod's gym has the capacity to provide direct sunlight access for all qualified inmates as required by this Court's Order and Title 15.

Plaintiffs also submitted declarations from current inmates who have been incarcerated for one year or more, each from a different housing pod, who state that they have been denied access

---

[2] Dr. Charles Czeisler, M.D., Ph.D. is as an expert in the field of sleep medicine, circadian rhythm, and the effect of sunlight and light on human physiology. (Tr. 331:6-8, Order p. 41:26-28.)

[3] There was also considerable testimony at trial regarding the frequency of lockdowns, summarized in the Order at p. 18:24-19:14.

to direct sunlight because there was no sunlight in the gym when they have access to the gym due to the time and facing direction of the gym window in their pod; or due to the limitations of the window opening size and location the window, the beam of sunlight was too small or in a location inside the room that made the sunlight inaccessible to them; or they received no direct sunlight because they were not provided gym access when sunlight was inside the gym; or they were unable to access direct sunlight due to conflicting demands for gym space even when sunlight is available in the gym. (ECF 495-2, 495-3, 495-4, 495-6, 497) As a result, inmates have established that they are denied access to 15 minutes of daily sunlight in the gym.

This Court previously held that "Defendant provides no real reason why it cannot build an exercise yard for outdoor exercise that would allow inmates access to direct sunlight." (Order, p. 59:3-4.) Defendant still offers no constitutionally valid reason for the lack of outdoor space at CJ3, despite the ability of other regional jails and prisons to do so and community standards which "show that Defendant's actions are not rational and not reasonably related to a valid penological purposes." (Order, p. 59:14-15.)

The Court holds that Defendant's proposal to provide direct sunlight via the two windows in County Jail 3's gyms by removing glazing and replacing the louvers with woven wire does not comply with this Court's post trial injunction to provide each inmate who has been incarcerated for one year or more, with daily, direct access to sunlight for no fewer than 15 minutes, subject to weather and emergencies. This Court clarifies that compliance with the Order requires that inmates be provided direct sunlight which is defined as unimpeded sunlight; not shaded, blocked, reduced or otherwise limited; and without any mediation through glass or plastic or other solid substance.

Dated: _____, 2024

_____
JUDGE OF THE FEDERAL DISTRICT COURT