**LAW OFFICE OF YOLANDA HUANG**
Yolanda Huang, SBN 104543
PO Box 5475
Oakland, CA 94605
Telephone: (510) 329-2140
Facsimile: (510) 580-9410
Email: yhuang.law@gmail.com

**GREENFIRE LAW, PC**
Rachel Doughty, SBN 255904
Richard Brody, SBN 100379
2748 Adeline Street, Suite A
Berkeley, CA 94703
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
Email: rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| MONTRAIL BRACKENS et al, on behalf of themselves individually and others similarly situated, as a class and Subclass, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO. Defendant. | Case No.: 3:19-cv-02724 SK <br><br><br> **DECLARATION OF DR. CHARLES CZEISLER IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO DEFENDANTS' (ECF 501) FOR COMPLIANCE WITH THE COURT'S POST TRIAL ORDER (ECF 478)** <br><br><br> Date:   March 11, 2024 <br> Time:   9:30 a.m. <br> Dept:   Courtroom C, 15th Floor <br><br> Hon. Sallie Kim, presiding |

**- 1 -**

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

1    I, Dr. Charles Czeisler do declare and state:

2        1.      If sworn as a witness, I could and would testify to my personal knowledge of the

3    facts set forth herein.

4        2.      I have read *Defendant's Statement of Proposal to Comply with Injunction (ECF No.*

5    *492)* (ECF 494), as well as the Court's Findings of Fact and Conclusions of Law (ECF 478,

6    referred to in this declaration as the "ORDER").

7        3.      I have looked back at relevant trial exhibits, including those cited in the ORDER

8    and by San Francisco in its documentation of its proposed remedy.

9        4.      I have also accessed Google Earth and reviewed satellite images of 1 Mooreland

10   Drive where the San Francisco Jail at issue in this case—CJ 3--is located. **Exhibits 1 to 4** to this

11   declaration are true and correct reproductions of the imagery available at Google Earth as of

12   January 4, 2024, when the address 1 Mooreland Drive, San Bruno, California is entered into that

13   computer program. In each image the top of the page is north. I have labeled the pods as they are

14   labeled in Trial Exhibit 1071 (reproduced below, paragraph 5).

15       5.      In each gym at CJ 3, the windows are located on one wall, which is to say that the

16   two windows face the same direction. I have added blue arrows to a copy of Trial Exhibit 1071



17

18

19

20

21

22   **North**

23

24

25

26

27

28

- 2 -

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

1  (taken from the ORDER, p. 3), which indicate the wall on which each gym window is located.

2  Because the facility is two stories tall, there are four total windows on each indicated wall—two

3  for the first story gym and two for the second story gym.

4        6.     I have added blue arrows to **Trial Exhibit 1134** (taken from p. 6 of the ORDER),

5  indicating the walls on which the each of the windows is located in each gym in this pod.



20        7.     Below is a photo taken of the outside of CJ3, reproduced from Figure PF3 of my

21  September 2, 2022, Expert Witness Report, with the location of Pod 3B's second story gym's

22  windows indicated with a yellow arrow. Pod 3B's first floor gym's windows are just below, but

23  obscured in this photo by fencing. This photograph was captured sometime in the morning, similar

24  to the time of day at which **Exhibit 1**, as described below, was taken. Note that at the time that this

25  photograph was taken, minimal or no direct sunlight will enter either of the two gym windows of

26  Pod 4A Floor 1 or the two gym windows of Pod 4A Floor 2, all four of which are enshrouded in a

27  shadow that is being cast from the building. As illustrated in this photograph, only the roof of Pod

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

1  4A, which has no skylights, and the south-facing walls of Pod 4A, which has no windows, are

2  receiving direct sunlight at this time of day.



Adapted from: https://www.sfsdhistory.com/research/chronological-list-of-sf-county-jail-locations

accessed September 1, 2022 (Pod numbers and arrow added).

      8.      **Exhibit 1** shows CJ3 on February 11, 2011. A blue arrow indicates the location of

the gym windows for Pod 3B. The northwest side of the building is covered with shadows,

suggesting that this image was captured sometime in the morning. The yellow arrow indicates an

approximated location of the sun relative to the building at the time the image was captured. At the

time this image was captured, minimal or no direct sunlight was entering through the two gym

windows of Pod 1A first floor, both of which are blocked from receiving direct sunlight by

shadows from the building located directly to the south of Pod 1A. It would also appear that the

two gym windows of Pod 1A second floor may also be blocked from receiving direct sunlight by

shadows from the building to the south of Pod 1A. As evidenced by shadowing extending well

beyond the walls containing windows, at the time the image was captured, minimal or no direct

sunlight is entering through the two gym windows of Pod 1B first floor or the two gym windows

of Pod 1B second floor, all four of which are blocked from receiving direct sunlight by shadows

from the Pod 1B gym roof and walls. At the time the image was captured, it appears from the

shadows being cast that minimal or no direct sunlight is entering through the two gym windows of

Pod 2A first floor, both of which are blocked from receiving direct sunlight by shadows from the

- 4 -

1   pod itself. It would also appear that the two gym windows of Pod 2A second floor may also be

2   blocked from receiving direct sunlight by shadows from the pod itself. At the time the image was

3   captured, minimal or no direct sunlight is entering through the two gym windows of Pod 2B first

4   floor or the two gym windows of Pod 2B second floor, all four of which are blocked from

5   receiving direct sunlight by shadows from the building. At the time the image was captured,

6   minimal or no direct sunlight is entering through the two gym windows of Pod 3A first floor or the

7   two gym windows of Pod 3A second floor, all four of which are blocked from receiving direct

8   sunlight by shadows from the building itself. As shown in Figure PF3 above, due to the shape of

9   the building, when the gym windows of Pod 3B are exposed to direct sunlight, minimal or no

10  direct sunlight will enter either of the two gym windows of Pod 4A Floor 1 or the two gym

11  windows of Pod 4A Floor 2, all four of which are enshrouded in a shadow that is being cast from

12  the building. In summary, at the time this photograph was taken, minimal or no direct sunlight

13  would be entering the gyms through approximately 24 of the 32 gym windows in CJ3 (or about

14  75% of the gym windows) even though the photograph was taken when it was broad daylight

15  outside, at a time when the outdoor yard illustrated in the lower left hand corner of the photograph

16  was bathed in direct sunlight. Of the 8 gym windows through which direct sunlight could enter at

17  the time that the photograph was taken, even if the louvers and gratings were to be removed, the

18  beams of direct sunlight would only fall on restricted areas of the gym floor or walls, the location

19  of which would be determined by the angle of the sun relative to the vertical window openings,

20  which changes dynamically with the time of day and season of the year.

21       9.      **Exhibit 2** shows CJ3 on September 1, 2017. The northeast side of the building is

22  covered with shadows, suggesting that this image was captured sometime in the early afternoon.

23  The yellow arrow indicates an approximated location of the sun relative to the building at the time

24  the image was captured. As evidenced by shadowing extending well beyond the walls containing

25  windows, at the time this image was captured, minimal or no direct sunlight could have entered

26  through the two gym windows of Pod 1A first floor and Pod 1A second floor, all four of which

27  were blocked from receiving direct sunlight by shadows from the CJ3 building. As evidenced by

28  shadowing extending well beyond the walls containing windows, at the time the image was

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

captured, minimal or no direct sunlight could have entered through the two gym windows of Pod 2B first floor or the two gym windows of Pod 2B second floor, all four of which were blocked from receiving direct sunlight by shadows from the Pod 2B gym roof and walls. At the time the image was captured, it appears from the shadows being cast that minimal or no direct sunlight was entering through the two gym windows of Pod 3A first floor, both of which were blocked from receiving direct sunlight by shadows from the pod itself. It would also appear that the two gym windows of Pod 3A second floor may also be partially blocked from receiving direct sunlight by shadows from the pod itself. At the time the image was captured, minimal or no direct sunlight could have entered through the two gym windows of Pod 3B first floor or the two gym windows of Pod 3B second floor, all four of which were blocked from receiving direct sunlight by shadows from the building. At the time the image was captured, minimal or no direct sunlight could have entered through the two gym windows of Pod 4A first floor or the two gym windows of Pod 4A second floor, all four of which were blocked from receiving direct sunlight by shadows from the CJ3 building itself. In summary, at the time this photograph was taken, minimal or no direct sunlight could have entered the gyms through approximately 20 of the 32 gym windows in CJ3 (or about 62.5% of the gym windows) even though the photograph was taken when it was broad daylight outside. Four of the 32 gym windows--those in the gym for Pod 1B first floor and in the gym for Pad 1B second floor, which face north-northwest, may also have transmitted minimal direct sunlight at the time the photograph was taken. Of the 8-12 gym windows through which direct sunlight could have entered at the time that the photograph was taken, even if the louvers and gratings were to have been removed, the beams of direct sunlight would only have fallen on restricted areas of the gym floor or walls, the location of which would be determined by the angle of the sun relative to the vertical window openings, which changes dynamically with the time of day and season of the year.

10.     **Exhibit 3** shows CJ3 on June 6, 2019. There is relatively little shadowing in this image, suggesting the image was likely captured late morning near mid-day. Ironically, on this summer day when the sun was high in the sky at midday, minimal direct sunlight would have entered any of the 32 windows in the 16 gyms servicing the 8 pods of CJ3, even if the louvers had

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

1    been removed. That is because when the sun is nearly directly over CJ3, direct sunlight is blocked

2    from entering the 2nd floor gyms by the roof of the gyms, and direct sunlight is blocked from

3    entering the first floor gyms by the floor of the second floor gyms. At that time of day, only a

4    small sliver of direct sunlight would be expected to enter the gyms through a vertical window

5    opening, landing on the floor directly adjacent to the windows, and then only if the wall width is

6    narrow, as I will discuss below, in paragraph 14.

7           11.      **Exhibits 4A, 4B, 4C, 4D, and 4E** all show the currently displayed images of CJ3

8    available on Google Maps as of January 4, 2024

9    ([https://maps.app.goo.gl/1WUSArMbKUjv1dQ98](https://maps.app.goo.gl/1WUSArMbKUjv1dQ98)), as the image is rotated to view the building

10   from different angles: 4A, directly overhead, and 4B, 4C, 4D and 4E at an angle, with the direction

11   north indicated by a red arrow. In this instance angled views of CJ3 shown in 4B, 4C, 4D, and 4E

12   all appear to be images taken at the exact or nearly exact same time of day as the overhead view in

13   Exhibit 4A, based upon the shadowing. As in Exhibit 2, the northeast side of the building is

14   covered with shadows in overhead view **Exhibit 4A**, suggesting that all of the Exhibit 4

15   imageswere captured sometime in the early afternoon. However, the smaller shadows in the

16   Exhibit 4 images indicate an earlier time of day than the overhead image in Exhibit 2.

17          12.      As evidenced by shadowing extending beyond the walls containing windows, at the

18   time the image in **Exhibit 4A** was captured, minimal or no direct sunlight could have entered

19   through the two gym windows of Pod 1A first floor and the two gym windows of Pod 1A second

20   floor, all four of which were blocked from receiving direct sunlight by shadows from the CJ3

21   building. **Exhibit 4B** shows an angled side-view image of Pod 1A first floor and Pod 1A second

22   floor at the exact or near exact time of day as Exhibit 4A. Exhibit 4B reveals that all four of the

23   Pod 1A windows are enshrouded in a shadow cast from the opaque roof and concrete walls of the

24   gym. No direct sunlight would enter the gym through those four windows at this time of day even

25   if the louvers had been removed.

26          13.      As evidenced by shadowing extending well beyond the walls containing windows,

27   at the time the image in **Exhibit 4A** was captured, minimal or no direct sunlight was entering

28   through the two gym windows of Pod 2B first floor or the two gym windows of Pod 2B second

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

floor, all four of which were blocked from receiving direct sunlight by shadows from the Pod 2B gym roof and walls. This conclusion is confirmed by **Exhibit 4C**, which shows a side-view image of Pod 2B first floor and Pod 2B second floor, revealing that those four windows are enshrouded in a shadow cast from the opaque roof and concrete walls of the Pod 2B gym. No direct sunlight would enter the gym through those four windows at this time of day even if the louvers had been removed.

14.     At the time the image in **Exhibit 4A** was captured, minimal or no direct sunlight could have entered through the two gym windows of Pod 3B first floor, both of which were blocked from receiving direct sunlight by shadows from the building. This conclusion is confirmed by **Exhibit 4D**, which shows a side-view image of Pod 3B first floor and Pod 3B second floor, and reveals that the two gym windows of Pod 3B first floor were enshrouded in a shadow cast from the Pod 3B building, while the two gym windows in Pod 3B second floor may be receiving some direct sunlight exposure, although the intensity of the light shining on these two south southeast-facing windows was much lower than windows facing west, as shown in Exhibit 4E.

15.     At the time the image in **Exhibit 4A** was captured, minimal or no direct sunlight could have entered through the two gym windows of Pod 4A first floor or the two gym windows of Pod 4A second floor, all four of which were blocked from receiving direct sunlight by shadows from the roof and walls of the Pod 4A gym and the CJ3 building itself. This conclusion is confirmed by **Exhibit 4D**, which shows a side-view image of Pod 4A first floor and Pod 4A second floor, revealing that the two gym windows of Pod 4A first floor and the two gym windows of Pod 4A second floor are enshrouded in a shadow cast from the Pod 4A gym and building. No direct sunlight would enter the gym through those four windows at this time of day even if the louvers had been removed.

16.     **Exhibit 4E** shows a side-view image of Pods 2A and 1B. Each of these west-facing gym pods would receive some direct sunlight at the time of image capture.

17.     In summary, at the time the Exhibit 4 photographs were taken, minimal or no direct sunlight could have entered the gyms through approximately 16 of the 32 gym windows in CJ3 (or

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

about half of the gym windows), even though the photograph was taken when it was broad

daylight outside. Of the gym windows through which direct sunlight could enter at the time that

the photograph in Exhibit 4A was taken, even if the louvers and gratings were to be removed, the

beams of direct sunlight would have only fallen on restricted areas of the gym floor or wall, the

location of which would be determined by the angle of the sun relative to the vertical window

openings, which changes dynamically with the time of day and season of the year.

18.     At the time that the Exhibit 4 photographs were taken, the outdoor yard illustrated

in the lower left-hand corner of the photograph in Exhibit 4A was bathed in direct sunlight.

19.     The windows in each gym are high on the wall, with the bottom of the window at

approximately the height of the rim of the basketball hoop (which, if regulation height, would be

10 feet off the floor), as is shown in **Trial Exhibit 1171**, reproduced below.



**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

20.     Below is a photograph taken of Dr. Jamie Zeitzer in a gym at CJ3 on July 18, 2022, sometime between approximately 2:45 pm and 3:30 pm. Again, the photo shows the height of the windows.



21.     The windows are in line with the vertical walls, which is to say that they are perpendicular to the ground. Because the walls are vertical, little or no direct sunlight will enter the gyms when the sun is high in the sky, as the roof and floor block direct sunlight from entering the first and second floor gyms at that time. As the sun moves from the high noon position, a sliver of light would be expected to shine onto the floor of the gym adjacent to west-facing windows (assuming no exterior obstruction such as walls or trees). As the sun moves lower in the sky, the size of the beams of sunlight entering the building would grow, but also move towards and then up the wall opposite the window, ultimately traveling above the heads of the inmates in the gym during the late afternoon, during which time the amount of ultraviolet light provided by sunlight is relatively low. The opposite would be true for east-facing windows. Any unobstructed beams of direct sunlight traveling through east-facing windows would start high on the wall in a large quadrilateral above the heads of the inmates in the gym in the early morning hours, during which time the ultraviolet content of the light is relatively low, and then move down the wall as the day progresses, ultimately becoming a sliver of light on the floor of the gym directly adjacent to east-

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

facing windows before disappearing sometime before noon. The photo below shows how light would enter an unobstructed window around noon—at the winter and summer solstice.[1]



22.      At no time would direct sunlight fill any of the gyms, regardless of facing direction of the windows, in the same way that it would in an exercise yard where the inmates would be bathed in direct sunlight during their entire time outside, weather permitting.

23.      Because the windows are high above the heads of all people at standing height, and the gyms themselves are relatively narrow—about 21 feet wide per **Trial Exhibit 1134**—for much of the time that light might enter the windows, direct sunlight would be expected to shine on the opposite wall rather than the floor of the gym.

///

///

///

---

[1] This picture was taken from the Louisiana Department of Natural Resources website on January 3, 2024: https://www.dnr.louisiana.gov/assets/TAD/education/ECEP/constr/d/d.htm.

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

1      24.     The timing and availability of direct sunlight exposure through each of the gym

2   windows will change seasonally as well. In the winter, the sun sits lower relative to the horizon.

3   As a result, in summer months, less direct sunlight will enter any of CJ3's vertical windows, as

4   demonstrated by the diagram below.[2]



Angle of the sun in summer and winter.

25.     San Francisco did not apparently test how much direct sunlight was entering

through the grates, but it appears that even when there is direct sunlight through the windows, the

window grates proposed by the Defendant will occlude approximately 20 percent of the entering

light.

26.     Seeing ambient reflected light—on a wall or on the floor—would not mitigate the

adverse health impacts of failing to have daily skin exposure to direct sunlight, which I estimate to

be equivalent to the adverse health impact of smoking. I testified about this at trial (Transcript, p.

357, starting at line 11).

27.     It is my opinion, based upon my experience and education, that the proposal to

expose inmates to direct sunlight in modified pod gyms will not comply with the Court's order to

offer inmates "daily access to direct sunlight . . . for at least 15 minutes. . .without any mediation

through glass or plastic or other solid substance that blocks ultraviolet light." ORDER, pp. 62, 67.

---

[2] This diagram was taken from the website for Build.com.au on January 3, 2024: https://build.com.au/window-orientation-and-placement

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

28.     Exposure to reflected light that bounces off the floor or walls of the gym would not satisfy the injunctive relief ordered by the Court because this is not direct sunlight and does not provide the same health protective effects as direct sunlight.

29.     Because of the configuration of CJ3 and the pod gyms, in order for inmates to be exposed to direct sunlight on the skin, even in the minority of gyms that would have windows through which direct sunlight would pass for a few hours each day, an inmate would need to stand at a specific time of day in a specific spot within the gym. The location of that spot would vary with both the time of day and the season of the year, and the inmate would have to move slowly as the sun traversed the sky to keep that beam of direct sunlight on their skin. Moreover, if one inmate were to stand in that beam of light, the shadow from that inmate would block other inmates in the same gym from being exposed to direct sunlight on their skin. That is because of the directionality imposed by the relatively small and very high window openings in the gym walls, which occupy less than 5 percent of the total square footage of the gym walls, even before taking into account the occlusion of the grates over the windows.

30.     In contrast to the natural direct sunlight exposure to which the inmates would be exposed if they were outside, the roof of each of the gyms prevents most of the available direct sunlight from shining on the inmates' skin. This principle was vividly illustrated by the trial testimony of Jose Poot. Mr. Poot testified that he had been taken to a catwalk that was covered by a roof but open on the sides except for a chain link fence. The open chain link fence of the catwalk would provide much greater potential exposure to direct sunlight than the walls of the gym. This is because the chain link fence sides of the catwalk occupy 100 percent of the walls of the catwalk, including at the same height as an inmate's body. The gym windows occupy less than 5 percent of the walls of each gym and are far above the height of an inmate's body. Nevertheless, the roof of the catwalk blocks exposure to direct sunlight at most times of day when the sun is overhead. Mr. Poot testified that when he was in the catwalk, "it stressed him out to be in an area where he can see the sun **but not feel sunlight on his skin other than if he places his hand in a gap in the fence** (Tr. 178:17-180:18 [emphasis added])." ORDER, p. 28. Sunlight access from within the 16 gyms would be even worse than what Mr. Poot described most of the time. This is because the

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

1  very high windows would provide inmates with minimal or no direct exposure to sunlight, even

2  through windows facing due east in the early morning after sunrise. Beams through an east-facing

3  window would be cast on the opposite wall of the gym early in the morning, over the heads of the

4  inmates and bouncing off the opposite wall of the gym—visible, but inaccessible for purposes of

5  the health protective effects of direct sunlight.

6        31.     In short, Defendant's proposal is grossly inefficient and difficult to manage

7  compared to providing each inmate with 15 minutes of access to direct sunlight in an outdoor yard.

8  The indoor plan would require Defendant to account for the narrowness of the beams of direct

9  sunlight that could come through the high vertical windows on the walls of the gyms, the potential

10  blocking of a given beam of direct sunlight by another inmate seeking such exposure, and the

11  complexity of the algorithm required to identify in which gyms and where in each gym direct

12  beams of sunlight would be located on a given date and time. I estimate that the Defendant's

13  proposal would require more than one order of magnitude more time--10 to 20 times more time

14  than the 15 minutes per inmate per day specified in the ORDER--and would require that many of

15  the inmates be transported to more than one gym each day in order to achieve the injunctive relief

16  ordered.

17        32.     In my opinion, compliance with the injunctive relief ordered by the Court would

18  best be achieved by giving inmates access to an outdoor yard, without substantial shadow, such as

19  the former exercise yard shown in the lower left hand corner of Exhibit 4A.

20

21       I make this declaration under penalty of perjury under the laws of the United States of

22  America, executed this 5th day of January, 2024 in Rancho Mirage, California.

23

24                         By:  */s/ Dr. Charles Czeisler*

25                               **DR. CHARLES CZEISLER**

26

27

28

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained

approval, on January 5, 2024, from Dr. Charles Czeisler for the filing of this declaration.


            /s/ *Yolanda Huang*
Yolanda Huang
ATTORNEY FOR PLAINTIFFS

**DECLARATION OF DR. CHARLES CZEISLER -- 3:19-CV-02724 SK**