United States District Court
Northern District of California

1

2

3

4

5                         UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8    MONTRAIL BRACKENS, et al.,                Case No.  19-cv-02724-SK

9              Plaintiffs,

10        v.                                   **ORDER REGARDING DEFENDANT'S
                                               MOTION FOR CLARIFICATION OF
11   CITY AND COUNTY OF SAN                     COURT'S POST-TRIAL ORDER**
     FRANCISCO,
12                                             Regarding Docket No. 501
               Defendant.
13

14        This matter is before the Court on Defendant's Motion for Clarification Regarding

15   Compliance with the Court's Order dated October 17, 2023 (the "Injunctive Relief Order").  (Dkt.

16   No. 501.)  Defendant asks that the Court "confirm that the jail's redesign of the gym windows

17   complies with the Court's post-trial injunction" that required Defendant to provide 15 minutes of

18   direct sunlight to inmates. (Dkt. No. 501.)  Specifically, Defendant has added grates instead of

19   windows with glass or plastic in the gyms and is allowing inmates to go into the gym 15 minutes

20   per day.  Plaintiffs argue that Defendant's modification does not comply with the Injunctive Relief

21   Order and propose a separate plan to comply with Injunctive Relief Order.  Notwithstanding the

22   precise language from the Injunctive Relief Order, Plaintiffs ask the Court to "clarify" that the

23   Injunctive Relief Order requires Defendant to provide access to daily sunlight *outside*.  (Dkt. No.

24   502.)

25        Upon review of the papers, the relevant law, and a site visit on March 7, 2024, the Court

26   hereby finds that Defendant is only partially complying with the Injunctive Relief Order.  The

27   Court declines to find that Defendant must create an outdoor exercise yard, though, as requested

28   by Plaintiffs.

United States District Court
Northern District of California

**BACKGROUND**

1

2          The Court assumes the parties' familiarity of the full factual background and summarizes

3    only the facts relevant here.  Plaintiffs are pretrial detainees (before resolution of their criminal

4    cases) who are housed in County Jail 3 located in San Bruno, California.  (Dkt. No. 478.)

5    Defendant is the City and County of San Francisco, which operates County Jail 3.  (*Id.*)

6    Following a bench trial, the Court issued its Findings of Facts and Conclusions of Law and held

7    that Defendant had deprived Plaintiffs of access to direct sunlight, "defined as access to sunlight

8    without any mediation through glass or plastic or other solid substance that blocks ultraviolet

9    light," in violation of the Fourteenth Amendment and Article I, Section 7 of the California

10   Constitution.  (*Id.*)

11         Regarding the remedy for Defendant's violation, the Court first noted that the Prison

12   Litigation Reform Act "creates a more exacting standard for federal courts to follow," *Gilmore v.*

13   *California*, 220 F.3d 987, 999 1007 (9th Cir. 2000), and "such relief [must] be supported by

14   findings and precisely tailored to what is needed to remedy the violation of a federal right."  *Miller*

15   *v. French*, 530 U.S. 327, 347 (2000) (citations omitted).  A court "shall not grant or approve any

16   prospective relief unless the court finds that such relief is narrowly drawn, extends no further than

17   necessary to correct the violation of the Federal right, and is the least intrusive means necessary to

18   correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A); *see also* 18 U.S.C. §

19   3626(b)(2).  The Court then observed that, although evidence at trial supported that people need

20   access to direct sunlight every day, "there was no admissible evidence about the amount of time

21   each person should have."  (Dkt. No. 478.)  Additionally, "it was not clear . . . how long a person

22   could go without access to direct sunlight before medical harm occurred."  (*Id.* at 62.)  However,

23   the Court found that the evidence demonstrated that "Plaintiffs began suffering medical problems

24   approximately a year after they were incarcerated with no access to direct sunlight."  (*Id.*)  With

25   regard to whether access to direct sunlight should be coupled with exercise, Plaintiffs own expert

26   "opined that it was not necessary for exercise and access to direct sunlight be coupled."  (*Id.*)

27   Therefore, Court ruled that "Defendant must offer to each inmate who has been incarcerated for

28   longer than a year the following: daily access to direct sunlight, weather permitting and in the

1    absence of an emergency (including but not limited to a global pandemic or prison riot) for at least

2    15 minutes." (*Id.*)

3          Following entry of judgment, Plaintiffs moved for attorney's fees and costs. (Dkt. No.

4    480.) Before the hearing on that motion, the parties informed the Court regarding a disagreement

5    over Defendant's compliance with the Court's Order. (Dkt. 491.) The Court continued the

6    hearing on the attorney's fee motion and directed the parties to file a motion regarding the dispute.

7    (Dkt. Nos. 492, 499.) In January 2024, Defendant moved for clarification regarding compliance

8    with the Court's post-trial order. (Dkt. No. 502.) Plaintiffs opposed. (Dkt. No. 502.) The Court

9    determined that a site visit was necessary (Dkt. No. 506), and on March 7, 2024, the Court

10   accompanied counsel for both parties to County Jail 3 and County Jail 3 Annex. On March 11,

11   2024, the Court held a hearing on the matter.

**DISCUSSION**

**I.      The Court's Factual Findings**

14         In the Injunctive Relief Order, the Court found that County Jail 3 is organized into a

15   system of 16 identical pods, with each pod containing 24 two-person cells for a maximum

16   capacity of 48 inmates. (Dkt. No. 478). Each pod has its own gym, measuring 21 feet by 40 feet

17   or approximately 1,000 square feet. (*Id.*) Additionally, each gym has two windows, measuring

18   eight feet by six feet, that allow air flow from the outside. (*Id.*) At the time of trial, these

19   windows allowed some natural light, but they were covered with screens and louvers. (*Id.*)

20         At the close of factual discovery, County Jail 3 housed 532 inmates, of whom

21   approximately 43 percent had been in custody for one year or longer. (*Id.*) Of those in custody

22   for one year or longer, 132 inmates were in general population and 94 inmates were in

23   administrative segregation. (*Id.*)

24         In addition to County Jail 3, the San Bruno facility also has another property referred to as

25   the County Jail 3 Annex (the "Annex"). (*Id.*) Unlike the pod structure of County Jail 3, the

26   Annex is structured as a "dormitory." (*Id.*) Each housing unit has an open housing area where all

27   inmates mix together, as opposed to the individual cells each holding one or two inmates in the

28   pods. (*Id.*) Each unit in the Annex is attached to an outdoor yard, measuring approximately 40

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    feet by 80 feet.  (*Id*.)  At the time of trial, Defendant did not use the Annex to house inmates.  (*Id*.)

2    **II.      Defendant's Redesign and Gym Modification**

3         **A.  County Jail 3**

4         Following this Court's Order, Defendant decided to redesign the windows in the pods'

5    gyms in County Jail 3 in order to allow direct sunlight – not filtered through a windowpane.  (Dkt.

6    No. 501-1, ¶¶ 3, 4.)  Before the redesign, each gym window had an interior metal mesh screen and

7    behind that, a metal louver to keep out precipitation and other weather, and Defendant's plan was

8    to remove the screens to ensure that there will be no glass, plastic, or other windowpane on the

9    gym windows that blocks ultraviolet light from entering the gyms.  (*Id*.)

10        Within two weeks of entry of judgment in this case, Defendant used its own maintenance

11   and facilities staff to remove the louvers from one window on each of the ground floor gyms as

12   part of the redesign.  (*Id*. at ¶ 7.)  Defendant then cleaned the windows and installed a temporary

13   window screen on the outside of the building.  (*Id*. at ¶ 8.)  Removing the louvers and cleaning the

14   windows increases the amount of direct sunlight into the gym.  (*See id*. at ¶ 8, Ex. C.)

15        At the time Defendant filed this motion, at least one gym window had been redesigned for

16   each of the eight pods on the first floor of County Jail 3.  (*Id*. at ¶ 7.)  At the time of filing this

17   motion, Defendant had assessed its housing assignments to ensure that each inmate covered by the

18   Court's injunction was either housed on one of the ground floor pods where the louvers have been

19   removed or, if not, that the inmate is offered the opportunity to be transported daily to one of the

20   redesigned pod gyms for the purpose of having access to direct sunlight.  (*Id*. at ¶ 9.)  Defendant's

21   goal was to ensure that both of the gym windows in each pod would be redesigned so that there

22   would be no need to transport inmates outside of their assigned pod to offer access to direct

23   sunlight.  (*Id*.)

24        **B.  County Jail Annex**

25        Defendant now uses the County Jail 3 Annex to house inmates because of an increase in

26   the jail's population.  (*Id*. at ¶ 13.)  Weather permitting, inmates housed in the Annex have access

27   to the outdoor yard, as described by the Court, for at least 15 minutes per day, seven days per

28   week.  (*Id*. at ¶ 14.)

4

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**III.    Site Visit**

As noted above, on March 7, 2024, the Court and lawyers for both Plaintiffs and Defendant visited County Jail 3 and saw each gym, the "catwalk" that connects the main building to the Annex, and the two outdoor yards attached to the Annex.  At the time of the site visit, all but one of the windows had been modified to allow sunlight to pass through a grate with nothing between the outdoor light and indoor gym.  The Court observed that the windows on the walls allowed sunlight to pass through without a barrier but that the placement of the windows and time of day affected whether any sunlight shone directly into the gym.  And given the size of the windows (two windows each six feet by eight feet), the sunlight that did come through the windows only appeared in patches and did not cover the entire gym.  In some gyms, there appeared to be no direct sunlight in the gym.

**IV.    Legal Standard**

Although neither Defendant nor Plaintiffs refer to any specific case law or statute to support the motion to clarify, the Court interprets this motion as a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(5).  *See, e.g., In re Int'l Fibercom, Inc.*, 503 F.3d 933, 938 (9th Cir. 2007) (affirming bankruptcy court's analysis of motion to clarify after summary judgment order under Rule 60(b)); *Napoli v. Town of New Windsor*, 600 F.3d 168, 170 (2d Cir. 2010) (affirming district court's construing plaintiff's request for clarification as a motion under Rule 60 of the Federal Rules of Civil Procedure); *In re Walter*, 282 F.3d 434, 439 (6th Cir. 2002) (concluding that the party's "Motion to Clarify" was properly analyzed under Rule 60).  "Rule 60(b)(5) permits a court to relieve a party from final judgment if 'the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.'"  *Flores v. Huppenthal*, 789 F.3d 994, 1001 (9th Cir. 2015), quoting Fed. R. Civ. P. 60(b)(5).  When determining whether a judgment has been satisfied, the main objective of a Rule 60(b)(5) inquiry is whether the objectives of the original order have been achieved.  *Id.*  In undertaking this inquiry, the Court has wide latitude to accept evidence and rule on the relief requested.  *See id.*, *affirming Flores v. Arizona*, No. 92-cv-596-TUC-RCC, 2013 WL 10207656, at \*2 (D. Ariz. Mar. 29, 2013).  "A [district] court abuses its

United States District Court
Northern District of California

1    discretion when it refuses to modify an injunction or consent decree in light of 'a significant

2    change either in factual conditions or in law' that 'renders continued enforcement detrimental to

3    the public interest.'" *Id.*, quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009).

4          The Court notes that this case involves injunctive relief regarding institutional reform, and

5    as such, the Supreme Court has noted that these types of cases are significant because they "often

6    remain in force for many years, and the passage of time frequently bring about changed

7    circumstances." *Horne*, 557 U.S. at 447-48.  The Supreme Court has also observed the inherent

8    federalism concerns in these types of cases and that injunctive relief can only come from violation

9    of a federal law or flow from such a violation.  *Id*. at 448.  Therefore, the federal courts are

10    empowered to take a "flexible approach" to lawsuits regarding institutional reform.  *See id*.; *Rufo*

11    *v. Inmates of Suffolk County Jail*, 502 U.S. 367, 381 (1992).

12    **V.**    **Defendant's Objections to Plaintiff's Introduction of New Evidence**

13          In support of their position, Plaintiffs have provided seven declarations, including one

14    from expert Charles Czeisler[1] and six current inmates.  Defendant opposes the introduction of the

15    declarations and other records to which those declarations refer.  Defendant argues that Plaintiff's

16    attempt to introduce this evidence is inconsistent with the Federal Rules of Civil Procedure and the

17    Federal Rules of Evidence.  However, given the wide latitude the Court has to consider evidence

18    for this motion, the Court accepts some but not all of the evidence that Plaintiffs proffer.

19          **A.  Declaration of Charles Czeisler**

20          Plaintiff attacks Defendant's efforts to redesign the gyms' windows by offering evidence

21    in the declaration from Czeisler regarding the rotation of the Earth, solar hour angles, solar altitude

22    angles, and the direction of the Sun.  (Dkt. No. 502.)  Czeisler also opines that Defendant's

23    proposed plan regarding the redesign of the gym windows is "grossly inefficient." (*Id*. at 5.)

24    Defendant notes that this information was not present at any stage of discovery or at trial.  (Dkt.

25    No. 503.)  It is accurate that this evidence is new, but it would have been impossible for Plaintiffs

26    to predict that Defendant would take this approach to complying with the Injunctive Relief Order.

27

28          [1] Czeisler was an expert at trial on sunlight's effect on human physiology, sleep medicine, and Circadian rhythm.  (Tr. 331: 6-8.)

1    The Court accepts one opinion from Czeisler's new declaration: "Seeing ambient reflected

2    light – on a wall or on the floor – would not mitigate the adverse health impacts of failing to have

3    daily skin exposure to daily light[.]" (Dkt. No. 502-3 (Czeisler Decl.) ¶ 26.)  This opinion is

4    consistent with his testimony at trial that sunlight "on skin" is necessary for a person to receive the

5    health benefits of ultraviolet light in sunlight.  (Tr. 357:11 – 358:23; 360:3-22, 376:21-23.)

6    Much of Czeisler's statements in his new declaration submitted for this motion merely

7    provides non-expert factual evidence that is based on either common sense or basic scientific

8    principles.  For this reason, the Court takes judicial notice of those facts, located in paragraphs 2,

9    3, 25,  27, 28, 29, 30,[2] 31, and 32 of Czeisler's declaration (Dkt. No. 502-3) and strikes all other

10   portions of his declaration (other than paragraph 26 discussed above) as irrelevant to this motion.

11   **B. Declarations from Inmates**

12   Six current inmates submitted declarations explaining their experience in County Jail 3

13   since Defendant changed the windows.  (Dkt. Nos. 501-1, 502-2, 502-4, 502-5, 502-6, 502-7.)

14   The Court considers them only to the extent that they address whether direct sunlight, as defined

15   by the Court, is available in the gyms.  The inmates explain that only six inmates are allowed in

16   the gym at a time, and given the angle of the sun, placement of the windows on the side walls, and

17   the time of day, they are often not able to see or feel sunlight on their skin during the times they

18   are allowed into the gym.  (Dkt. Nos. 501-1, 502-2, 502-4, 502-5, 502-6, 502-7.)  The declarations

19   contain other opinions and facts that the Court excludes because they are irrelevant to the issue

20   before the Court on this motion.  Thus, the Court strikes paragraph 2 of the Declaration of Jose

21   Alvarez (Dkt. No. 502-1), paragraphs 2-3 and 13 of the Declaration of Leonard Colvin (Dkt. No.

22   502-2); paragraphs 3, 5, 6, 7, 8, 9, 10, and 11 of the Declaration of Erick Garcia-Pena (Dkt. No.

23   502-4), and paragraphs 3, 4 and 5 of the Declaration of Zuri Wilson (Dkt. No. 502-7).

24   / / /

25

26   _____

27   [2] The Court finds that Czeisler's reference (Dkt. No. 502-3 at ¶ 30) to the trial testimony of Jose Poot that he could not feel sunlight on his skin when he was in the catwalk other than when he placed his hand through a gap in the fence to be particularly inappropriate, given that Czeisler did not view the catwalk, and the Court did visit the catwalk and found that Poot's testimony was not accurate.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    **VI.    Defendant's Partial Compliance with the Court's Order.**

2    The Court finds that Defendant's attempt to adhere to the Order is only partially

3    successful.  The Court finds that sunlight provided through the mesh grates that the Court viewed

4    on the site visit can provide direct access to sunlight.  Some inmates who are in the gym at the

5    right time of day can have exposure to sunlight on their skin, but given that only six inmates at a

6    time can go into the gym and given the angle of the windows, many inmates do not get 15 minutes

7    of direct sunlight on a daily basis.

8    Defendant argues that the Court's Order was not clear in ordering that the access to direct

9    sunlight be to direct sunlight on the inmate's skin.  To clarify any confusion, the Court holds that,

10   because the medical evidence demonstrated that sunlight – unfiltered through any substance – on

11   skin specifically is necessary to avoid negative medical effects, Defendant must provide access to

12   direct sunlight – unfiltered through any substance – such that the direct sunlight touches the skin

13   of the inmates.  The Court declines to find that Defendant must provide an outdoor exercise yard

14   for all inmates, even though that alternative may be the most practical one.

15                                          **CONCLUSION**

16   Based on the forgoing, the Court GRANTS IN PART and DENIES IN PART Defendant's

17   motion for clarification.  Although placing metal grates over a window allows direct sunlight to

18   enter County Jail 3, the method that Defendant has chosen does not allow each inmate 15 minutes

19   of access to direct sunlight each day.

20   Unless the parties provide good cause otherwise, the Court will begin its consideration of

21   Plaintiff's motion for attorney's fees. (Dkt. No. 480.)  The Court DIRECTS Plaintiff to file any

22   supplemental briefing, not to exceed ten pages, regarding the motion for attorney's fees by March

23   26, 2024.  Defendant may reply in a brief not to exceed ten pages, no later than April 5, 2024.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

8

1      Pursuant to Civil Local Rule 7-1(b), the Court has decided to make a determination on this

2  motion without a hearing.

3      **IT IS SO ORDERED**.

4  Dated: March 13, 2024

5  _____

6  SALLIE KIM
   United States Magistrate Judge

United States District Court
Northern District of California

9