DAVID CHIU, State Bar #189542
City Attorney
JENNIFER E. CHOI, State Bar #184058
Chief Trial Deputy
SABRINA M. BERDUX, State Bar #248927
KAITLYN MURPHY, State Bar #293309
Deputy City Attorneys
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:      (415) 554-3929 [Berdux]
Telephone:      (415) 554-6762 [Murphy]
Facsimile:      (415) 554-3837
E-Mail:         sabrina.m.berdux@sfcityatty.org
E-Mail:         kaitlyn.murphy@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTRAIL BRACKEN, et al., | Case No. 19-cv-02724-SK (LB) |
| Plaintiffs, | **DEFENDANT SAN FRANCISCO'S REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF PLAINTIFFS' REQUEST FOR FEES AND COSTS** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, | Hearing Date:   None Per Local Rule 7-1(b) |
| Defendant. | Time: |
| | Place: |
| | Trial Date:    August 8, 2023 |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PROCEDURAL HISTORY ...............................................................................................1

ARGUMENT .....................................................................................................................2

    I.       Plaintiffs Apply the Wrong PLRA Hourly Rate Cap................................................2

    II.      Plaintiffs' Back-Up Data Reveals Systemic Errors, Inflation, and Reasons to Discount Their Fees and Costs. .................................................................................3

          A.      Plaintiffs' Time Entries Double Dip More Than $400,000 in Fees.............3

          B.      Plaintiffs Bill Up to Seven Times As Long to Perform the Same Task at Different Points in the Case. ....................................................................5

          C.      Plaintiffs Seek to Recover Fees and Costs for Improper Filings. ...............5

          D.      Plaintiffs Inefficiently Staffed Case Assignments. .....................................7

          E.      Plaintiffs Seek Costs They Did Not Support With Documentation.............8

    III.    The Court Should Be Especially Cautious in Awarding Attorneys' Fees to Be Paid From Public Funds.........................................................................................8

    IV.    These Errors Are Representative of Plaintiffs' Overall Billing Practices and Justify an Across-the-Board Reduction. .................................................................9

CONCLUSION..............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Agster v. Maricopa County*
    486 F. Supp. 2d 1005 (D. Ar. 2007) ......................................................................7

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*
    522 F.3d 182 (2d Cir. 2008) ...........................................................................10

*California All. of Child & Fam. Servs. v. Wagner*
    2011 WL 2837423 (N.D. Cal. July 15, 2011)..................................................8

*Christianburg Garment Co. v. Equal Emp. Opportunity Comm'n.*
    434 U.S. 412 (1977)..........................................................................................9

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*
    482 U.S. 437 (1987)..........................................................................................6

*Edmo v. Idaho Dep't of Corr*
    2022 WL 16860011 (D. Idaho Sept. 30, 2022) ...............................................3

*Finkelstein v. Bergna*
    804 F.Supp. 1235 (N.D. Cal. 1992) .................................................................7

*Foley v. City of Lowell, Mass.*
    948 F.2d 10 (1st Cir. 1991)...............................................................................9

*Gates v. Deukmejian*
    987 F.2d 1392 (9th Cir. 1992) ..........................................................................9

*Hensley v. Eckerhart*
    461 U.S. 424 (1983)......................................................................................4, 5

*Lopez v. San Francisco Unified Sch. Dist.*
    385 F.Supp.2d 981 (N.D. Cal. 2005) ...............................................................8

*Marbled Murrelet v. Pacific Lumber Co.*
    163 F.R.D. 308 (N.D. Cal. 1995).....................................................................7

*Martin v. Hadix*
    527 U.S. 343 (1999)..........................................................................................2

*Missouri v. Jenkins*
    491 U.S. 274 (1989)..........................................................................................3

*Ruff v. County of Kings*
    700 F. Supp. 2d 1225 (E.D. Cal. 2010) ...........................................................7

*Sealy, Inc. v. Easy Living, Inc.*
    743 F.2d 1378 (9th Cir. 1984) ..........................................................................4

*United States v. $28,000.00 in U.S. Currency*
    802 F.3d 1100 (9th Cir. 2015) ................................................................................8

*West Virginia Univ. Hosp., Inc. v. Casey*
    499 U.S. 83 (1991)................................................................................................7

**Federal Statutes**

42 U.S.C. § 1981 .....................................................................................................7

42 U.S.C. § 1983 .....................................................................................................7

42 U.S.C. § 1988 .....................................................................................................7

42 U.S.C. § 1997 ..................................................................................................2, 5

Plaintiffs repeat the mistakes of their initial motion for attorneys' fees in their supplemental briefing. Specifically, the supplemental briefing (1) requests an hourly rate higher than what the case law and facts require, (2) seeks to recover for duplicative or inefficiently staffed work, (3) seeks to recover for non-compensable work, and (4) seeks to recover for non-compensable costs. These errors justify significant reductions in Plaintiffs' fee request. San Francisco requests the Court apply the same formula to Plaintiffs' supplemental fees and costs request that the City advocated in its opposition to Plaintiffs' initial request. Plaintiffs new recoverable fees and costs would be $13,306.68 and $663.86 respectively applying San Francisco's formula. Combined with the fees and costs calculated in the City's opposition, Plaintiffs' overall fees and costs would be **$433,206.36** in attorneys' fees and **$51,731.97** in costs.

## PROCEDURAL HISTORY

Plaintiffs filed their initial motion for fees and costs on October 31, 2023, and sought $1,923,187.28 in attorneys' fees and $374,185.87 in costs. Dkt. No. 480 at 7:26-28.

San Francisco's November 14, 2023 opposition did not oppose a fee award outright, but requested the Court award $419,899.68 in fees and $51,068.11 in costs. Dkt. Not. 487 at 1:2. The City calculated this figure by (1) rightsizing Plaintiffs' requested fee rate based on the Prison Litigation Reform Act ("PLRA"), (2) reducing Plaintiffs' claimed hours by 50 percent to account for Plaintiffs' limited success at trial, and (3) further discounting Plaintiffs' claim by 10 percent to account for excessive, unnecessary, and vague time entries.

Plaintiffs filed their reply brief on November 21, 2023, and increased their demand by $14,924.82 to $1,938,112.10 to include work performed during the intervening month. Dkt. No. 488 at 17:7-9.

The matter was set for hearing on December 11, 2023. However, approximately one week before the hearing, the parties submitted a proposed stipulation requesting the Court delay hearing on Plaintiffs' attorneys' fee motion while the parties briefed a motion for clarification related to the injunction. Dkt. No. 491. The Court granted the request, vacating the hearing along with any further briefing deadlines to be reset after the Court ruled on the motion for clarification. Dkt. No. 493. The

Court later ruled on the clarification motion and offered both parties an opportunity for supplemental briefing. Dkt. No. 512.

Plaintiffs filed their supplemental brief on March 26, 2024, and increased their attorneys' fee demand by $13,2096.84 to $2,070,208.94 and their costs demand by $6,437 to $380,622.87. Dkt. No. 513 at 3:6. Collectively, Plaintiffs' reply and supplemental briefing seek recovery for 133.2 additional hours of attorneys' fees (4,336.4 hours compared to 4,203.2 hours) and $6,437 in new costs ($380,622.84 compared to $374,185.57).

**ARGUMENT**

**I.      Plaintiffs Apply the Wrong PLRA Hourly Rate Cap.**

The PLRA limits the lodestar hourly rate to "150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). The PLRA rate typically changes yearly. Plaintiffs' supplemental briefing not only continues their inappropriate request to use the hourly rate in effect during 2023 for worked performed as far back as 2019, but seeks to increase their hourly rate to the new one set for 2024. Dkt. No. 513 at 5. This is incorrect.

Supreme Court precedent requires that the Court apply the billing rate applicable when the underlying work was performed, not when the judgment was entered. In *Martin v. Hadix*, 527 U.S. 343, 347, 350 (1999) the plaintiffs filed their jail condition class action lawsuits in 1977 and 1980, well before the April 26, 1996 effective date of the PLRA. Plaintiffs prevailed and the court ordered postjudgment monitoring, which extended past the PLRA effective date. *Id*. at 348. Prior to the PLRA, the attorneys' fees were awarded at a rate of $150 per hour in the lawsuit, but the maximum rate going forward under the PLRA cap was $112.50. *Id*. at 350. Plaintiffs' counsel then submitted a fee request for the period January 1, 1996, through June 30, 1996, mixing work before and after the PLRA date. *Id*. Plaintiffs sought the $150 an hour rate for their work prior April 26, 1996. Defendants opposed arguing that the current PLRA capped rate should apply to all work in the request. The district court disagreed and held that the PLRA rate cap did not limit recovery for work performed prior to April 26, 1996. *Id*. The Sixth Circuit and Supreme Court affirmed, applying the rate in effect at the time the work was performed, not discounting recovery for pre-PLRA work based on the rate applicable when

plaintiffs filed their fee request. Here, Plaintiffs ask the Court to do the opposite—to disregard the fees that would have been appropriate at the time they were incurred and instead replace them with the higher rate now in effect.

The cases Plaintiffs cite do not require otherwise. *Missouri v. Jenkins*, 491 U.S. 274 (1989) was decided seven years before the PLRA went into effect and does not analyze the effect of the PLRA on attorneys' fee claims, and *Edmo v. Idaho Dep't of Corr.,* No. 1:17-CV-00151-BLW, 2022 WL 16860011, at *3 (D. Idaho Sept. 30, 2022), is a district court opinion where there is no evidence the parties briefed the question of which fee rate applied in the case. Further, the Court issued its opinion in September 2022, but applied the 2021 fee rate, demonstrating that it did not apply the most recent PLRA rate to all claims in the case. *Id*. at *3. Plaintiffs in this case apply the wrong hourly rate.

## II.   Plaintiffs' Back-Up Data Reveals Systemic Errors, Inflation, and Reasons to Discount Their Fees and Costs.

Plaintiffs' supplemental briefing does not identify which of the 113 pages of back-up data relate to billing entries that were missing from their initial October 31, 2023 motion. Dkt. No. 514-1. However, it appears the only time entries and costs that post-date Plaintiffs' initial motion are limited to pages 3-4, 82-88, and 113-11 of docket entry 514-1. San Francisco accordingly limits its reply to the supporting data on those pages.

### A.    Plaintiffs' Time Entries Double Dip More Than $400,000 in Fees.

Plaintiffs' billing records include substantial "double dipping," billing for the same activity twice. Attorney Huang's billing records include undated lump sum time entries of 490 hours for "communications"; 261.3 hours for "video visits with Clients/Plaintiffs/Class," and 71 hours for "Collect Phone Calls From Class Members," (ECF No. 514-1 at 113), while she also has specific dated billing entries for these same types of communications in her supporting documentation. *See e.g.,* ECF No. 481-2 at 20 [6/22/22], 21 [7/11/22, 7/13/22], 22 [7/20/22, 7/22/22], 45 [1/25/23], 51 [5/5/23], 53 [5/16/23], 54 [5/26/23], 59 [6/21/23], 61 [7/5/23], 67 [8/2/23]. These entries are a significant portion of the recovery Plaintiffs seek. Attorney Huang's 822.3 hours of lump sum undated time entries—at her requested rate of $516 per hour, nets $424,306.80. These hundreds of thousands of dollars represent thirty-four percent of the total 2,395.9 of recoverable hours Plaintiffs attribute to Attorney Huang for the case overall. Dkt. No. 514-1 at 1 [Summary Sheet]. In making its determination, the

Court can reduce hours when documentation is inadequate, or when the requested hours are redundant, excessive, or unnecessary, and should do so here. *Hensley v. Eckerhart*, 461 U.S. 424, 433-434 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the hours accordingly").

Even if these lump sum entries were not intended to be duplicative of the other similar dated time entries elsewhere in Attorney Huang's back-up data, the lump sum time entries would be unrecoverable because they are not sufficiently specific for the Court to use them to assess the reasonableness of the demand. The Court cannot "uncritically" accept the plaintiff's representations of hours expended and Plaintiffs bear the burden of showing their fee demanded is reasonable. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984).

There is no evidence of reasonableness here. Attorney Huang stated that rather than actually tracking how long she spent on correspondence with defense counsel she instead calculated the total number of emails (sent *and* received) with defense counsel and allocated six minutes to each. Dkt. No. 481 ¶ 15. Putting that her billing records also include specific dated entries for email correspondence with defense counsel as cited above, it is not reasonable to assume she spent six minutes reading and reviewing every email the City sent her in this case. She made no effort to show that this lump sum approximation method was a common or even acceptable practice. It is not. It stands in contrast to the billing practices of her colleagues on this case, who tracked their time spent on communications each day, and assigned the actual time they spent rather than an estimated lump sum. Attorney Huang herself did not apply this same approach in connection with her communications with other parties, such as co-counsel or Plaintiff's experts, and there was no reason for her to treat correspondence with defense counsel differently.

San Francisco cannot confirm whether Attorney Huang's entries actually track with dates and times the parties communicated without further detail. The lack of documentation here is especially egregious because Plaintiffs' counsel held themselves out to be to be experienced civil rights attorneys and should have known from the outset they were expected to produce detailed time records to recover attorneys' fees.

Although these hundreds of hours should be disregarded in their entirety, rather than separately discount these entries one by one, San Francisco requests the Court factor them in as one of many reasons to apply the general fee reduction calculation the City proposes.

**B.      Plaintiffs Bill Up to Seven Times As Long to Perform the Same Task at Different Points in the Case.**

There are also places where Plaintiffs bill inconsistently for the same activity. For example, Ms. De la Fuente included many time entries for updating the docket after a filing. On some occasions she completed this task in six minutes while on other occasions she billed between 24 and 42 minutes for the same task without explanation. *Compare* Dkt. No. 51-1 at 35 [1/30/23], 46 [5/31/23], 61 [7/21/23] with *id.* at 82 [11/1/23], 83 [11/13/23], 84 [12/8/23], 85 [12/5/23, 1/6/24].

Her billing entries further include activities that do not make sense in the context of the case, including a December 4, 2023 entry for "conference room reservations for depos" where there were no upcoming depositions and the trial concluded four months earlier. Dkt. No. 514-1 at 84 [12/4/23]. These entries are not recoverable.

This style of error is not limited to support staff. Attorney Huang has a two-hour entry to "gather & review cost receipts" on November 1, 2023—the day *after* Plaintiffs filed their fee motion. Dkt. No. 514-1 at 113 [11/1/23]. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary*." *Hensley*, 461 U.S. at 434 (quotations omitted). No client would be expected to pay for these kind of time entries without further explanation. And neither should San Francisco.

**C.      Plaintiffs Seek to Recover Fees and Costs for Improper Filings.**

Plaintiffs seek fees and costs for time spent on work that was unnecessary or in appropriate. The PLRA limits recoverable hours to time on work that was "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" *and* either (1) "the amount of the fee is proportionately related to the court ordered relief for the violation," or (2) "the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1). Unsuccessful motions, filings disallowed by the local rules, or evidence to which the Court sustained the defendant's objections cannot satisfy this standard, yet all of those appear in Plaintiffs' billing records.

Plaintiffs' seek to recover for time spent on a request to bring a light meter to the March 2024 jail visit. Dkt. No. 514-1 at 86 [2/28/24], 87 [2/28/24, 2/29/24, 3/1/24]. This time is not compensable because Court rejected their request. Dkt. No. 508. Plaintiffs offer no explanation for why this time would be recoverable given the outcome of their motion.

Plaintiffs also spent time preparing and filing a procedurally improper "reply" to San Francisco's evidentiary objections to new evidence submitted in Plaintiffs' filing. Dkt. No. 514-1 at 84 [11/29/23]. This is also not compensable for the same reason.

This issue was not limited to Plaintiffs' attorneys' fee claim. Plaintiffs make the same error in their cost demand. Plaintiffs seek $2,850 for Dr. Czeisler's declaration submitted in connection with the motion for clarification, yet ignore that the Court sustained San Francisco's objections to the majority of his declaration and struck it from consideration. Dkt. No. 512 at 6:6-10. The time spent on this declaration—by Dr. Czeisler and Plaintiffs' counsel—was therefore unnecessary and not compensable under the PLRA. Additionally, the time Dr. Czeisler billed for purportedly drafting, reviewing, and revising his declaration, Dkt. No. 515-1, is unreasonable given that Attorney Doughty herself spent 11.6 hours "preparing," "revis[ing]," and collecting exhibits for the same declaration. Dkt. No. 514-1 at 85 [dates 12/26/23 through 1/5/24].

The same is true of the seven hours Attorney Huang spent drafting and finalizing class member declarations submitted with Plaintiffs' response to the Motion for Clarification Dkt. No. 514-1 at 113 [11/29/23 and 1/4/24], where the Court ultimately struck much of these declarations and considered them "only to the extent that they address whether direct sunlight, as defined by the Court, is available in the gyms." Dkt. No. 512 at 7:12-23. The time Attorney Huang spent on these declarations is not recoverable.

But more importantly, in connection with Plaintiffs' request for costs related to Dr. Czeisler's work, Plaintiffs ignore that expert costs remain non-compensable in a Section 1983 action like theirs regardless of whether the Court relied on the underlying evidence. In *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 439 (1987), the Supreme Court held that expert witness fees are only recoverable pursuant to a contract or statutory authority. Four years later the Supreme Court held that section 1988 did not authorize the shifting of expert witness fees to the losing party. *West Virginia*

*Univ. Hosp., Inc. v. Casey,* 499 U.S. 83, 102 (1991). Congress then amended section 1988 to provide for the recovery of expert witness fees in cases brought under 42 U.S.C. §§ 1981 and 1981a. *See* 42 U.S.C. § 1988(c) ("In awarding an attorney's fee ... in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."). Claims brought under § 1983 are not covered by this amendment. *Ruff v. County of Kings,* 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010) ("The Court's research indicates that cases are uniform that Section 1988(c) does not apply to a Section 1983 action, relying on the plain wording of the statute and *West Virginia University Hospitals v. Casey*"); *Agster v. Maricopa County,* 486 F. Supp. 2d 1005, 1019 (D. Ar. 2007) (because Congress did not amend section 1988 to include section 1983 cases, the *Casey* decision stands in regard to § 1983 cases). Accordingly, all of the costs Plaintiffs seek to recover on behalf of Dr. Czeisler are improper and should be discounted for this separate and independent reason.

### D.      Plaintiffs Inefficiently Staffed Case Assignments.

Plaintiffs' time entries include multiple attorneys billing for a task that could have been accomplished by one attorney. For example, Plaintiffs had two counsel attend the March 2024 jail site visit, each billing 4 hours, Dkt. No. 514-1 at 87, 113, while defense counsel only assigned one attorney to the task. In *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308, 324 (N.D. Cal. 1995), the court subtracted the time of a second attorney who attended depositions. For the same reasons, it was unreasonable for counsel to double-staff the straightforward site visit in this case.

Plaintiffs' records also show attorneys billing for work that could have been performed by staff with a lower billing rate. Attorney Doughty's records show time spent downloading images from Googlemaps to be used in Dr. Czeisler's declaration. Dkt. No. 514-1 at 85 [1/2/24]. Gathering documents is either a non-compensable client responsibility or a paralegal task. An attorney should be compensated at a level commensurate to the tasks actually performed, not simply based on years since law school graduation. *Lopez v. SFUSD*, 385 F. Supp. 2d 981, 992 (N.D. Cal. 2005) (discounting the rates of counsel with decades of experience to that of an attorney with seven years of experience because the tasks she performed involved supervising junior attorneys). In *Finkelstein v. Bergna*, 804 F. Supp. 1235, 1238 (N.D. Cal. 1992), this court held that when an experienced solo practitioner takes

on all aspects of the case, they are not compensated at their peak rate for all work performed since they are necessarily doing the type of work that would otherwise be performed by junior associate at a larger firm. The Court rejected counsel's requeted rate of $300 for all work he performed because "[w]hile a rate of $300 for a senior partner is reasonable, it is reasonable only in an environment where that senior partner participates only in higher-level tasks, and delegates the more mundane tasks to lower-paid employees," but the solo practitioner had no lower paid employee to delegate those tasks to *Id*. Plaintiffs here overbilled for these projects because one of their highest billing attorneys performed work that could have been handled by support staff.

### E. Plaintiffs Seek Costs They Did Not Support With Documentation.

Plaintiffs seek to recover for costs that have no supporting receipts. The clearest example of this is Plaintiffs' request for fees to be paid to the photographer who accompanied them on the March 2024 jail site visit. Plaintiffs seek $300 in costs, but did not submit any receipts or documentation justifying that fee. (*See* ECF No. 515-5). This omission makes it the task non-compensable.

### III. The Court Should Be Especially Cautious in Awarding Attorneys' Fees to Be Paid From Public Funds.

Although courts always have a duty to scrutinize fee requests, the level of scrutiny is higher in cases like this when the requested fees come from public funds because courts in this district "endorse[] the principle that courts should avoid awarding excessive fees against government agencies since such expenditures can adversely impact the populace by diverting scarce resources away from beneficial programs." *California All. of Child & Fam. Servs. v. Wagner*, No. C 09-04398 MHP, 2011 WL 2837423, at *1 (N.D. Cal. July 15, 2011). The Court can and should weigh as part of its fee award consideration the fact that any award to counsel here would come from public funds that could otherwise be used for jail modifications or upgrades in service of the injunctive relief Plaintiffs sought at trial. *Lopez*, 385 F. Supp. 2d at 986-87 (considering the fact that an award of attorneys' fees from a school district would "reduce the resources that the District can use to provide an education to the class members"). As Judge Reinhardt stated in *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1109 (9th Cir. 2015), the district court may exercise its authority "to ensure fairness in cases like this one, in which the fee will be paid out of the public fisc. This is not because governmental entities

are unsophisticated litigants—generally quite the opposite is true—but because the court has a separate interest in preserving society's confidence that public funding of litigation is implemented wisely." *Id.* (J., Reinhardt, concurring.) This is consistent with sister circuits, like the First Circuit, which held that "[a]t least where public funds are involved or the public interest is otherwise implicated, the court has a duty to consider the [fee] application critically to ensure overall fairness." *Foley v. City of Lowell, Mass.*, 948 F.2d 10, 19 (1st Cir. 1991); s*ee, e.g., Christianburg Garment Co. v. Equal Emp. Opportunity Comm'n.,* 434 U.S. 412, 422 n. 20 (1977) ("[E]very attorney's fee assessment ... will inevitably divert resources from the agency's enforcement.").

## IV.   These Errors Are Representative of Plaintiffs' Overall Billing Practices and Justify an Across-the-Board Reduction.

The court's explanation for reducing a fee request need not include an hour-by-hour analysis. "[T]he district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (internal quotation omitted). Percentages are an acceptable and perhaps necessary tool for fashioning reasonable fee awards. *Id.* at 1400. Pervasive improper billing in this case supports applying the same formula the City advocated for in their opposition brief to the 133.2 additional hours of attorneys' fees and $6,437 in new costs Plaintiffs seek. San Francisco proposes the following calculations for Plaintiffs' additional fees and costs requests:

**Fees.** Plaintiffs' new 133.2 additional hours of attorneys' fees should be compensated at a rate of $222 per hour, and the total should be reduced by 50 percent to account for their unsuccessful claims, and then a further 10 percent to account for  the errors and inefficiencies in Plaintiffs' fee requests, which brings the total additional fees to $13,306.68.

**Costs.** San Francisco opposes Plaintiffs' new expert fees for Dr. Czeisler ($2,700) and the site visit photographer ($300) for the reasons described above, but does not oppose the remaining correspondence ($601.96) and Pacer charges ($61.90), for a total of $663.86 in new costs.

///

///

|  | FEES | COSTS |
|---|---|---|
| Fees and Costs Calculated In San Francisco's Opposition (ECF No. 487) | $419,899.68 | $51,068.11 |
| New Fees and Costs Calculated in San Francisco's Response Briefing | $13,306.68 | $663.86 |
| **Sum** | **$433,206.36** | **$51,731.97** |

## CONCLUSION

The court's task in determining fees is to "enforce market discipline, approximating the negotiation that might ensue were the client actually required to pay the attorney's fees." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections,* 522 F.3d 182, 192 (2d Cir. 2008).[1] The court should apply rates "just high enough to attract competent counsel," without anything more. *Id.* at 193 (quotation omitted). Here, that calculation should award Plaintiffs put forward bills that they would not expect a client to pay acknowledging the statutory constraints on recovery, the skill and experience of Plaintiffs' counsel, and the quality of Plaintiffs' billing entries submitted with their motion. The Court should calculate the appropriate fees and costs accordingly.

Dated:  April 5, 2024

DAVID CHIU
City Attorney
JENNIFER E. CHOI
Chief Trial Deputy
SABRINA M. BERDUX
KAITLYN MURPHY
Deputy City Attorneys

By:  */s/  Kaitlyn Murphy*
_____
KAITLYN MURPHY

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

---

[1]  The three-judge panel that decided *Arbor Hill* included Hon. Sandra Day O'Conner, sitting by designation.